Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AARON GREENSPAN, <br><br> Plaintiff, <br><br> v. <br><br> OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC., <br><br> Defendants. | Case No. 3:20-cv-03426-JD <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR COSTS AND EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2) FOR SERVICE ON ELON MUSK** <br><br> Judge: Hon. James Donato <br> Complaint Filed: May 20, 2020 |

Counsel for Defendant Elon Musk argues that he should not be liable for the cost of service of process under Federal Rule of Civil Procedure 4(d)(2) because the waiver request was never received.  At its core, this argument is a semantic game that Defendant Musk is playing with the Court—and it is not a particularly clever one.

Notably, not once do Tesla Defendants argue that e-mail was not a "reliable means" under Rule 4(d)(1)(G) or that there was some sort of miscalculation on Plaintiff's part.  That is because Plaintiff meticulously followed Rule 4(d) and provided invoices for each expense, and because e-mail turned out to be quite reliable: the messages were received and stored.  They were just deliberately stored in the "security29" account, a place where Defendant Musk could plausibly deny that he ever saw them, even though he was still responsible for the intentional diversion and ultimately for checking whether anything important had landed there, much in the way that most e-mail users periodically check a "spam" folder.  "[T]he district court did not

abuse its discretion in concluding that 'sending court communications to the spam folder' does not constitute excusable neglect under Rule 60(b)." *Trevino v. City of Ft. Worth*, 944 F. 3d 567, 572 (5th Cir. 2019). Nor does intentionally routing court documents to the "security29" account constitute excusable neglect here under Rule 4(d), where the standard for "good cause" is at least the standard for "excusable neglect" under Rule 60(b). "[A]t a minimum, 'good cause' means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). In other words, even if Tesla Defendants were able to show excusable neglect—which they cannot—they would need additional facts weighing in their favor to meet the standard of "good cause."

False and misleading statements, on the other hand, weigh in the opposite direction. At first, on June 30, 2020, Attorney Jackman told Plaintiff that his messages had simply been "blocked." ECF No. 21-1 at 18. By the time she filed her Opposition to the instant Motion nine days later, she had performed a full 180-degree turn: "His emails were ***not*** blocked from reaching Tesla; they were blocked from reaching individual Tesla employees and ***re-routed*** to information security" (emphasis added). ECF No. 35 at 3, Footnote 3. Blocking and re-routing are not the same thing, as blocked messages are not stored by the intended recipient and are therefore unreadable and irretrievable, whereas re-routed messages merely land in an alternate location, are readable, and can be retrieved. A true e-mail blocking rule would also ultimately yield an SMTP error and a "bounce-back" message to alert the sender that there was a delivery problem, putting the sender on notice. As stated in Plaintiff's June 25, 2020 Declaration in support of this Motion, Plaintiff's e-mails to Defendant Musk did not "bounce." ECF No. 14-1.

Not only were Plaintiff's waiver request messages "received," but they were even delivered to a specific account. Not only were they delivered to a specific account, but they were delivered to a specific account actively monitored by at least two information security professionals checking for certain kinds of content. And not only were these professionals on the lookout, but they actually *read* the messages on the intended recipients' behalf.

The cases cited in Defendant Musk's defense are all totally inapposite. Here, Tesla Defendants themselves present concrete evidence that the messages were literally "received," a

necessary precursor for their apparent deliberate tampering with the "To:" field.  ECF No. 35-2.

According to both Plaintiff's server's SMTP logs *and Defendant Musk's own Mimecast e-mail logs*, the messages in question were marked "Received OK" and "Received (inbound),"

respectively.  *Id*.  Defendant Musk was still employed in the office where the messages were

received.  In fact, he *ran* it, and in his capacity as CEO, Defendant Musk had access to, authority

over and ultimate responsibility for every resource belonging to Tesla, Inc., including the

security29@tesla.com e-mail account.[1]

Plaintiff did not mis-address the e-mails or send them in error to Defendant Musk's

attorney or to a corporation alone.  In fact, Plaintiff sent the messages to both Defendant Musk

personally and Tesla, Inc. Acting General Counsel Al Prescott to be absolutely certain that they

would be seen even if Defendant Musk's e-mail inbox was overflowing due to his prominence.

And in fact, the messages *were* seen and even examined personally by Defendant Tesla's

security team, which then allegedly said nothing—though no one who actually read the messages

was willing to state as much under penalty of perjury.  Instead, Defendant Tesla offered only the

declaration of Lisa Rager, a supervisor relaying information second-hand, and a poorly annotated

log allegedly derived from Mimecast's software that still noted the messages as received *with

attachments*, which were United States District Court documents.

Were our modern world purely analog as it was a century ago, in this situation the

envelopes containing each packet of paper would have made their way safely to Defendant

Musk's corporate mailroom, where he maintains his personal mailbox.  But what then?

 To be precise, Defendant Musk's counsel argues that rather than making their way to the

mailbox labeled "Elon Musk," the envelopes were intercepted—on account of a policy imposed

by Defendant Musk himself to, at best, silence any legitimate criticism.  According to the

Declaration of Lisa Rager, which for the first time discloses when the alleged re-routing rule was

put in place, "On or about August 9, 2019, because of the volume and abusive nature of the

correspondence sent from the aaron.greenspan@plainsite.org account, Tesla's information

---

[1] In Defendant Musk's words, "I am the largest shareholder in the company.  And I can just call for a shareholder vote and get anything done that I want."  First Amended Complaint ¶ 272.

technology team implemented a protocol to block further emails from aaron.greenspan@plainsite.org from reaching intended recipients in the manner described above, redirecting such correspondence to the security29@tesla.com account." The "volume" described is then specified as "at least a dozen distinct emails" in the following paragraph. ECF No. 35-1.

In fact, according to Plaintiff's e-mail records, over the course of nearly a year, Plaintiff initiated exactly 8 unique e-mail threads involving 14 messages sent by Plaintiff to Tesla, Inc. domain names through August 9, 2019, none of them threatening in any way:

| Thread Count* | Thread Start Date | Subject | tesla.com / teslamotors.com Recipient(s) | Response |
|---|---|---|---|---|
| 1 | November 8, 2018 | Request for Comment | lshelby@teslamotors.com, elon@teslamotors.com, emusk@teslamotors.com, rdenholm@teslamotors.com, | No |
| 1 | January 22, 2019 | Test | customersupport@tesla.com | No |
| 1 | March 13, 2019 | Musk Private Foundation | elon@teslamotors.com, emusk@teslamotors.com, elonmuskoffice@teslamotors.com, elonm@teslamotors.com | No |
| 1 | March 14, 2019 | Musk Private Foundation | emdesk@tesla.com | No |
| 1 | March 14, 2019 | Fwd: ***URGENT*** Dangerous Tesla Autopilot Issue | jchang@teslamotors.com | No |
| 1 | April 26, 2019 | Letter Regarding Case Nos. 1:18-cv-08865-AJN and 1:18-cv-08947-AJN | emdesk@tesla.com | No |
| 7 | August 7, 2019 | Musk Private Foundation Inquiry | agracias@tesla.com, bbuss@tesla.com, emdesk@tesla.com, erm@tesla.com, ermt@tesla.com, iehrenpreis@tesla.com, kmusk@tesla.com | Yes: 6 responses from Elon Musk |
| 1 | August 7, 2019 | Additional Questions | erm@tesla.com, iehrenpreis@tesla.com | No |

* Thread Count refers to unique messages sent by Plaintiff through August 9, 2019.

No reasonable person would consider this low volume of e-mail over nearly a full year regarding different topics to be "harassing," "spamming," or anything remotely close. Defendant Musk likely gets far more e-mail from fans and critics alike in an hour.

Now, to evade their obligations under Rule 4(d)(2), the Tesla Defendants are attempting to spin a completely innocuous on-the-record series of inquiries, to which Defendant Musk responded with, "Appreciate the note," as, "harassing, abusive, or threatening," "voluminous, abusive, or otherwise concerning," and "abusive." What was so harassing, abusive, threatening, and otherwise concerning about Plaintiff's polite conversation with Defendant Musk leading up to August 9, 2019? The answer is extremely simple: Plaintiff dared to question him.[2]

Defendant Musk's antipathy toward journalists is legendary bordering on paranoid. First Amended Complaint ¶ 63. Because Plaintiff merely *questioned* Defendant Musk's warped logic, such as his A) likening a graduate student napping in the Tesla Fremont factory's parking lot to an *attempted murderer* for slowly driving away when asked to leave by security guards; and B) wrongly stating to Plaintiff that, "You are unequivocally attempting to mislead the public," presumably because Plaintiff had filed public records requests, Defendant Musk immediately sought revenge. He performed a cursory internet search of Plaintiff's name and found a website called ComplaintsBoard, owned by Seychelles-based Mediolex Ltd. and in turn run by a Latvian national named Sergejs Kudrjavcevs[3] and a smattering of Russian employees.[4] On ComplaintsBoard, Defendant Musk noted at least one post of hundreds containing false information about Plaintiff written and/or inspired by convicted murderer Diego MasMarques, Jr. (the same target of Plaintiff's restraining order described in First Amended Complaint ¶¶ 22-25), and wrote back to Plaintiff, "Your true colors …" at 11:13 P.M. on August 8, 2019 with a low-resolution screenshot attached. Then, presumably, Defendant Musk referred Plaintiff's e-

---

[2] The e-mails in question are attached to the contemporaneously filed Declaration of Aaron Greenspan as Exhibit A.

[3] The Anglicized Russian spelling of Mr. Kudrjavcevs's name is Sergei Kudriavtsev.

[4] *See Xcentric Ventures LLC et al v. Smith*, District of Arizona Case No. 2:17-cv-01686-DJH, ECF No. 5-15.

mails to his security team, because the re-routing rule was apparently imposed the very next day as just disclosed by the Tesla Defendants.

While this kind of behavior on the part of the CEO of a company nominally worth $327 billion (up $40 billion so far today alone) is hard to believe—and is worlds apart from the Tesla Defendants' false and misleading description of Plaintiff as worthy of monitoring for violent threats—it is entirely in keeping with a documented pattern of behavior on the part of Defendant Musk, who has in the past described himself as a "narcissist;"[5] relied on a *different* convicted felon's disinformation to attempt to discredit another mild critic, Vernon Unsworth, who also sued Defendant Musk for libel;[6] and attempted to portray a whistleblower at his Nevada factory as posing an imminent threat of gun violence when he clearly did not, putting that whistleblower's life at risk when law enforcement attempted to find him.  *See Vernon Unsworth v. Elon Musk*, California Central District Court Case No. 2:18-cv-08048-SVW-JC.  *See also Tesla, Inc. v. Tripp*, Nevada District Court Case No. 3:18-cv-00296-LRH-CLB.  While Plaintiff was lucky to avoid the "Be On the Lookout" (BOLO) poster and visit from the local Sheriff that befell Martin Tripp, the re-route rule imposed on Plaintiff was similar in character to Defendant Musk's many unjustified retaliatory actions against his critics, both on-line and off.

Even more to the point, after this Motion was filed, Defendant Musk wrote on July 4, 2020 on Twitter, "I only block people as a direct insult," accompanied by a doctored graphic from the television show "The Simpsons" intended to humiliate journalist Ken Klippenstein. Klippenstein had publicly called Defendant Musk a, "massive fucking baby."[7,8]

In short, there was absolutely no good cause for the Tesla Defendants to attempt to block, re-route, tamper with, or otherwise manipulate Plaintiff's communications, all of which were entirely reasonable, made in good faith, and unthreatening.  Rather, Defendant Musk's

---

[5] *See* Exhibit B to the contemporaneously filed Declaration of Aaron Greenspan.
[6] *See* Exhibit C to the contemporaneously filed Declaration of Aaron Greenspan.
[7] *See* Exhibit B to the contemporaneously filed Declaration of Aaron Greenspan.
[8] Even though Plaintiff's e-mails were *not* technically "blocked," it is clear that Tesla Defendants and especially Defendant Musk are not precise with their terminology, and Defendant Musk may have believed that his staff had successfully "blocked" Plaintiff's e-mails.

extensively documented inability to entertain criticism from even a polite, sympathetic

correspondent such as Plaintiff led him to take drastic and unwarranted action—Defendant

Musk's way of lobbing an "insult"—which his counsel and employees then proceeded to

rationalize by misrepresenting Plaintiff to this Court as "harassing, vitriolic, and inflammatory."

While Defendant Musk may not have imposed the re-routing policy specifically in order

to evade Rule 4(d)(2) as litigation had not yet been threatened on August 9, 2019, the fact that he

relied and continues to rely on Defendant Tesla's staff to both represent his legal interests and

manage some of his personal affairs, including his e-mail and personal security, simply means

that he had an additional responsibility to properly train that staff to alert him to matters relating

to litigation, and not only threats of physical harm.  It defies credulity that someone actively

preparing for a major trial, constantly being deposed, and fighting off lawsuits in multiple federal

and state jurisdictions would *not* have trained his staff to always "Be On the Lookout" for legal

documents—especially since Tesla Defendants admit that "Tesla did not block emails from

Plaintiff's greenspan@post.harvard.edu email" in footnote 2 of their Opposition.  ECF No. 35.

Rather than alert his information technology staff to Plaintiff's Notice of Intent to Sue (ECF No.

20-5), Defendant Musk found an excuse to insult and libel Plaintiff some more, in a way that was

instantly and deliberately made public to a wide audience.  First Amended Complaint ¶¶ 66-68.

Yet Defendant Musk kept the re-routing rule in place, and now peddles the fiction that he had no

way to know that a request for waiver of service might be headed his way.

Allowing Defendant Musk to evade responsibility for his own deliberate and unwarranted

actions here would set a dangerous precedent that would fundamentally erode the effectiveness

of Rule 4(d).  Ruling in Defendant Musk's favor would signal to every executive in the United

States that so long as they instruct their mailrooms, information technology departments,

assistants—or any delegate, for that matter—to re-route, recycle, burn, black-hole, or otherwise

vanish received correspondence from anyone expressing criticism or with whom they disagree at

all, including but not limited to those sending court documents, they can never be held to account

for failing to comply with the Federal Rules of Civil Procedure.

1    Such a ruling in Defendant Musk's favor would also cement his status as being

2 comfortably above the law.  After all, Defendant Musk is on the record as having no "respect"

3 for the staff of the United States Securities and Exchange Commission.  First Amended

4 Complaint ¶ 258(d).  On July 2, 2020, after the filing of the instant Motion, he went so far as to

5 publicly suggest that its staff should "SEC, three letter acronym, middle word is Elon's," clearly

6 intending for readers to intuit a vulgarity.[9]  He might also have strong disagreements with the

7 United States Internal Revenue Service, or the federal judiciary itself.  So long as his security

8 staff is told in advance to make communications from anyone—Plaintiff, a new critic on

9 television or Twitter, or the federal government—disappear on the basis of these disagreements

10 so that he can insult them, should that allow Defendant Musk to escape liability under any part of

11 the Federal Rules of Civil (or Criminal) Procedure?  Of course not.  The mere notion is absurd.

12    In summary, Plaintiff respectfully asks that his Motion be granted.  Games involving

13 "insults," fragile ego, unwarranted reliance upon disinformation from convicted felons,

14 ridiculing the sender of a Notice of Intent to Sue, misleading the Court and attempting to opt out

15 of the rule of law do not constitute "good cause" for Defendant Musk to have failed to respond to

16 Plaintiff's May 21, 2020 request for a waiver of service of process, or his June 19, 2020 reminder

17 thereof.  Defendant Musk should be made to pay $930.33 as required by Rule 4(d)(2).

19 Dated: July 13, 2020                    Respectfully submitted,

22

23 Aaron Greenspan
24 956 Carolina Street
   San Francisco, CA  94107-3337
25 Phone: +1 415 670 9350
   Fax: +1 415 373 3959
26 E-Mail: aaron.greenspan@plainsite.org

28 [9] *See* Exhibit B to the contemporaneously filed Declaration of Aaron Greenspan.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 13, 2020, he caused this **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR COSTS AND EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2) FOR SERVICE ON ELON MUSK** to be served via First Class Mail by depositing this document, postage pre-paid, in the U.S. Mail addressed to:

> Omar Qazi
> 2625 Hyde Street
> San Francisco, CA  94109
> *Defendant and Officer of Defendant Smick Enterprises, Inc*.

All other parties are registered for the CM/ECF system and have been served electronically.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 13, 2020.


Dated: July 13, 2020

Aaron Greenspan