1  COOLEY LLP
   JOHN C. DWYER (136533) (dwyerjc@cooley.com)
2  3175 Hanover Street
   Palo Alto, CA  94304-1130
3  Telephone:    (650) 843-5000
   Facsimile:    (650) 849-7400
4
   AARTI REDDY (274889) (areddy@cooley.com)
5  REECE TREVOR (316685) (rtrevor@cooley.com)
   101 California Street, 5th Floor
6  San Francisco, CA  94111-5800
   Telephone:    (415) 693-2000
7  Facsimile:    (415) 693-2222
8  Attorneys for Defendants
   ELON MUSK and TESLA, INC.
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

14  AARON GREENSPAN,                      Case No. 3:20-cv-03426-JSC

15          Plaintiff,                    **NOTICE OF MOTION, MOTION,
                                          AND MEMORANDUM OF POINTS
16      v.                                AND AUTHORITIES IN SUPPORT
                                          OF TESLA DEFENDANTS' MOTION
17  OMAR QAZI, SMICK ENTERPRISES, INC.,   TO DISMISS PLAINTIFF'S FIRST
    ELON MUSK, and TESLA, INC., Defendants. AMENDED COMPLAINT**
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF RELIEF SOUGHT ................................................................................ 1

STATEMENT OF ISSUES ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I.      INTRODUCTION ................................................................................................... 2

II.     BACKGROUND ..................................................................................................... 3

    A.      PLAINTIFF'S EFFORTS TO "EXPOSE" TESLA AND MR. MUSK. .................... 3

    B.      PLAINTIFF'S ALLEGATIONS AGAINST MR. QAZI. ............................. 4

    C.      PLAINTIFF'S CLAIMS AGAINST THE TESLA DEFENDANTS. .................... 4

III.    LEGAL STANDARD ON A MOTION TO DISMISS ......................................... 5

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL PER SE. ...................... 5

    A.      MR. MUSK IS NOT VICARIOUSLY LIABLE FOR MR. QAZI'S ALLEGED LIBEL. .................................................................................... 5

    B.      THE ALLEGED STATEMENTS BY MR. MUSK ARE NOT ACTIONABLE. ................................................................................ 7

V.      PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE UCL. ................. 11

VI.     PLAINTIFF FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS. ............. 13

    A.      THE FAC FAILS TO PLEAD RELIANCE. .............................................. 14

    B.      THE FAC FAILS TO PLEAD LOSS CAUSATION. ................................. 16

    C.      THE FAC FAILS TO IDENTIFY ANY ACTIONABLE REPRESENTATION. ................................................................... 18

        1.      THE FAC'S "OMISSIONS" ARE NOT LINKED TO ALLEGED MISLEADING STATEMENTS. ................................... 19

        2.      TO THE EXTENT THE FAC IDENTIFIES ANY STATEMENTS, IT FAILS TO PLEAD FALSITY. ......................... 20

    D.      THE FAC FAILS TO RAISE A STRONG INFERENCE OF SCIENTER. ............. 23

VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION ............... 24

VIII.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A). ........................... 25

IX.     PLAINTIFF'S INJUNCTIVE RELIEF "CLAIM" SHOULD BE DISMISSED. .............. 25

X.      CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3226701 Canada, Inc. v. Qualcomm, Inc.*,
No. 15CV2678, 2017 WL 4759021 (S.D. Cal. Oct. 20, 2017)...............................................23

*Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*,
583 F.2d 426 (9th Cir. 1978) ..........................................................................................13

*Anderson v. Abbott Labs.*,
140 F. Supp. 2d 894 (N.D. Ill. 2001) ...........................................................................19

*Aronson v. Kinsella*,
58 Cal. App. 4th 254 (1997) .............................................................................................8

*Art of Living Found. v. Does*,
No. 10-CV-05022-LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011) ................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................5, 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................24, 25

*Barnes-Hind, Inc. v. Super. Ct.*,
181 Cal. App. 3d 377 (1986) ...........................................................................................10

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................................14, 15

*Bofi Holding, Inc. Sec. Litig.*,
302 F. Supp. 3d 1128 (S.D. Cal. 2018)............................................................................16

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ..........................................................................................19

*Brown v. Comcast Corp.*,
No. EDCV16-00264, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) .....................................6

*Cal. Public Emps.' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)............................................................................................21

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
65 F. Supp. 3d 840 (N.D. Cal. 2014) ...............................................................................20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..........................................................................................22

*Collier v. Aksys Ltd.*,
No. 3:04CV1232(MRK), 2005 WL 1949868 (D. Conn. Aug. 15, 2005)................................18

# TABLE OF AUTHORITIES

Page(s)

*Correia v. Santos*,
191 Cal. App. 2d 844 (1961) ..................................................................................8

*Curry v. Yelp Inc.*,
14-CV-03547, 2015 WL 7454137 (N.D. Cal. Nov. 24, 2015) ..............................21

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ..............................................................................21

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ........................................................................14, 16

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................14, 16, 17

*Eade v. InvestorsHub.com, Inc.*,
No. LACV11-1315, 2011 WL 13323344 (C.D. Cal. July 12, 2011)......................8

*Eisenberg v. Alameda Newspapers, Inc.*,
74 Cal. App. 4th 1359 (1999) ...............................................................................8

*Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.*,
183 F.R.D. 487 (E.D. Va. 1998) ..........................................................................15

*Gilford Partners, L.P. v. Sensormatic Elec. Corp.*,
No. 96 C 4072, 1997 WL 570771 (N.D. Ill. Sept. 10, 1997)................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)..............................................................................................15

*Hampton v. root9B Techs., Inc.*,
897 F.3d 1291 (10th Cir. 2018) ............................................................................21

*In re Harmonic Inc. Sec. Litig.*,
163 F. Supp. 2d 1079 (N.D. Cal. 2001) ...............................................................20

*Henderson v. Equilon Enters., LLC*,
40 Cal. App. 5th 1111 (2019) .................................................................................6

*In re Herbalife Sec. Litig.*,
CV 95-400, 1996 U.S. Dist. LEXIS 11484 (C.D. Cal. Jan. 24, 1996) .................23

*Hoesl v. United States*,
451 F. Supp. 1170 (N.D. Cal. 1978) .......................................................................7

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ..............................................................................25

*J.L. v. Children's Inst., Inc.*,
177 Cal. App. 4th 388 (2009) .................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).................................................................................21

*Khan v. 7-Eleven, Inc.*,
No. EDCV14-00522, 2015 WL 12781203 (C.D. Cal. May 6, 2015) ....................................11

*Krinsky v. Doe 6*,
159 Cal. App. 4th 1154 (2008) ...........................................................................9

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ...................................................................................11

*Leidholdt v. L.F.P. Inc.*,
860 F.2d 890 (9th Cir. 1988) ............................................................................8

*Lieberman v. Fieger*,
338 F.3d 1076 (9th Cir. 2003) ......................................................................8, 10

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ....................................................................16, 18

*Long v. Playboy Enters. Int'l, Inc.*,
No. LACV11-02128, 2012 WL 12869314 (C.D. Cal. Mar. 7, 2012) ...........................6

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ...........................................................................17

*Mangindin v. Wash. Mut. Bank*,
637 F. Supp. 2d 700 (N.D. Cal. 2009) ...............................................................25

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ............................................................................5

*In re Merrill Lynch Auction Rate Sec. Litig.*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010).................................................................25

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
540 F.3d 1049, 1068 (9th Cir. 2008) .................................................................24

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ........................................................................17

*Miller v. PCM, Inc.*,
No. 17-3364, 2018 U.S. Dist. LEXIS 148930 (C.D. Cal. Jan. 3, 2018) .....................17

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ...........................................................................13

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .........................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

*Padron v. Moreno*,
   No. 15CECG03521, 2016 WL 4611489 (Cal. Super. Apr. 28, 2016) ......................................9

*People v. Toomey*,
   157 Cal. App. 3d 1 (1984) ....................................................................................................12

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
   953 F.2d 724 (1st Cir. 1992) ..................................................................................................9

*Philips v. Ford Motor Co.*,
   No. 14-CV-02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ..........................................13

*In re Read-Rite Corp. Sec. Litig.*,
   115 F. Supp. 2d 1181 (N.D. Cal. 2000) ................................................................................24

*In re Rigel Pharm.*,
   697 F.3d 869 (9th Cir. 2012) ............................................................................................24, 25

*In re Rigel Pharm., Inc. Sec. Litig.*,
   2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ......................................................................19

*Rockridge Tr. v. Wells Fargo, N.A.*,
   985 F. Supp. 2d 1110 (N.D. Cal. 2013) ................................................................................25

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
   86 A.D.3d 32 (N.Y. App. Div. 2011) ......................................................................................9

*SEC v. McGinnis*,
   No. 13-CV-1047 AVC, 2013 WL 6500268 (D. Conn. Dec. 11, 2013) ...................................4

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) ...................................................................................................7

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................................................23

*Sonner v. Premier Nutrition Corp.*,
   962 F.3d 1072 (9th Cir. 2020) ..............................................................................................13

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..................................................................................................5

*Standing Comm. on Discipline v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ..................................................................................................9

*Stark Trading v. Falconbridge Ltd.*,
   552 F.3d 568 (7th Cir. 2009) ................................................................................................16

*Sullins v. Exxon/Mobil Corp.*,
   No. C 08-04927, 2010 WL 338091 (N.D. Cal. Jan. 20, 2010) .............................................11

# TABLE OF AUTHORITIES

**Page(s)**

*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) ............................................................................9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...............................................................................................14

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
   233 Cal. App. 4th 1321 (2015) ...............................................................................11

*Underwager v. Channel 9 Austl.*,
   69 F.3d 361 (9th Cir. 1995) ....................................................................................10

*Violette v. Shoup*,
   16 Cal. App. 4th 611 (1993) .....................................................................................6

*Van't Rood v. County of Santa Clara*,
   113 Cal. App. 4th 549 (2003) ...................................................................................6

*Webb v. SolarCity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ..................................................................................24

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
   818 F. Supp. 2d 744 (S.D.N.Y. 2011) ....................................................................18

*Wilcox v. Super. Ct.*,
   27 Cal. App. 4th 809 (1994) .....................................................................................6

*Zlotnick v. TIE Commc'ns*,
   836 F.2d 818 (3d Cir. 1988) ...................................................................................15

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..................................................................................23

**Statutes**

15 U.S.C.
   § 78t .........................................................................................................................25
   § 78u–4 ...............................................................................................................14, 23
   §§ 78u-5 ...................................................................................................................21

18 U.S.C.
   § 371.........................................................................................................................12
   § 1512.......................................................................................................................12
   § 2261A.....................................................................................................................12

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................................1, 12

Cal. Civ. Code § 2298 ........................................................................................................6

**TESLA DEFS.'MOTION TO DISMISS**
**CASE NO. 3:20-cv-03426-JSC**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3   Fed.R.Civ.P.
      § 8.............................................................................................................................1
4      § 9(b)..............................................................................................................1, 14, 20
      § 12(b)(6) ...................................................................................................................1, 5
5

6   **Other Authorities**

7   17 CFR § 240.10b–5(b) ..............................................................................................22

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TESLA DEFS.'MOTION TO DISMISS**
**CASE NO. 3:20-cv-03426-JSC**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT,** on September 17, at 10:00 am in Courtroom 11 of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Judge James Donato presiding, defendants Tesla, Inc. ("Tesla") and Elon Musk (collectively, "Tesla Defendants") will, and hereby do, move this Court, pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"), for an order dismissing plaintiff Aaron Greenspan's ("Plaintiff's") First Amended Complaint ("FAC") with prejudice. The Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of John C. Dwyer ("Dwyer Decl.") and supporting exhibits, the Request for Judicial Notice, all of the papers on file in this action, and upon such other and further evidence or argument that the Court may consider.

**STATEMENT OF RELIEF SOUGHT**

The Tesla Defendants seek dismissal with prejudice of all claims asserted against them in the FAC for failure to state a claim upon which relief may be granted under Rule 12(b)(6).

**STATEMENT OF ISSUES**

1.     Whether Plaintiff has stated a claim against the Tesla Defendants for libel per se under California law (Count II).

2.     Whether Plaintiff has stated a claim against Mr. Musk for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (Count VI).

3.     Whether Plaintiff has stated a claim against the Tesla Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 (Count VII).

4.     Whether Plaintiff has stated a claim against the Tesla Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 for market manipulation (Count VIII).

5.     Whether Plaintiff has stated a claim against Mr. Musk under Section 20 of the Exchange Act (Count IX).

6.     Whether Plaintiff has stated a standalone claim for injunctive relief against the Tesla Defendants (Count X).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff's allegations against the Tesla Defendants are not new.  Plaintiff has been making the same unsubstantiated and incendiary accusations—on Twitter, in purported online exposés, and in public and private communications—for years.  What is new is Plaintiff's attempt to transform his conspiracy theories, baseless suspicions, and Internet "research" into a federal lawsuit.  Also new is Plaintiff's apparent view that people should not use hyperbolic language or return his insults on the Internet, and Plaintiff's claim that Mr. Musk's dismissive commentary to and about him somehow damaged his reputation (even as he republished those statements himself).  As even a cursory review of the FAC shows, all of Plaintiff's claims fail for multiple reasons and must be dismissed.

*First*, Plaintiff has not pled libel per se.  He alleges no facts that would subject Mr. Musk to vicarious liability for Defendant Omar Qazi's statements, and the three allegedly defamatory statements that Plaintiff attributes to Mr. Musk are constitutionally protected opinions.

*Second*, Plaintiff's UCL claim fails, among other reasons, because his alleged injuries—less than $35 for parking and gas in connection with filing a police report against Mr. Qazi, and roughly "100 hours" apparently spent generating evidence for this lawsuit—do not confer statutory standing.

*Third*, Plaintiff fails to plead virtually every element of his securities fraud claims.  Plaintiff cannot seriously contend that he relied on any alleged misstatements because he is a short-seller who bet against Tesla and believed—even before he purchased his first put options—that Tesla's stock price was artificially inflated and had been "manipulated." Plaintiff likewise fails to plead loss causation, among other reasons, because the FAC does not identify a single corrective disclosure that purportedly caused his losses.  Finally, Plaintiff has not identified a single actionable misstatement, or pled that the Tesla Defendants recklessly or intentionally misled investors.

*Fourth*, Plaintiff's market manipulation claim fails as he does not adequately plead reliance, loss causation, or scienter, and because he does not allege any manipulative act with particularity.

*Fifth*, Plaintiff's Section 20 claim fails he has not pled a viable securities claim against Tesla.

*Finally,* Plaintiff's standalone claim for injunctive relief must be dismissed because—as numerous courts have recognized—injunctive relief is a remedy, not an independent cause of action.

**TESLA DEFS.' MOTION TO DISMISS
CASE NO. 3:20-CV-03426-JSC**

## II.     BACKGROUND[1]

### A.     Plaintiff's Efforts to "Expose" Tesla and Mr. Musk.

Plaintiff is a short-seller of Tesla stock who has dedicated years of his life to "exposing" alleged fraud by Tesla and Mr. Musk.  Plaintiff is a self-described "data journalist," who runs an online "legal information service," PlainSite, in partnership with his non-profit (Think Computer Foundation). (¶¶ 21, 56, 85-86, 172.) Plaintiff attempts to cast PlainSite as a neutral "host[]" of court documents and company profiles, "one of which happens to be Defendant Tesla." (¶ 21.) Since Plaintiff "became interested" in Tesla in 2018 (Dwyer Decl. Ex. 1 at 55), however, he has used both PlainSite and Twitter to further his short-seller agenda—putting his own misleading spin on Tesla-related news and court filings, spreading disinformation about Tesla and Mr. Musk, and sharing his "discoveries" of "fraud" in real time with his followers on Twitter.  (*See, e.g.*, *id.* Ex. 2 (August 2018: "this stock has been manipulated by Elon Musk for days"), Ex 3 (September 2018: "the market is overvaluing Tesla [] by about $46-48 billion"); Ex. 4 (March 2019: "Tesla [] writes false, misleading or material tweet[s] designed to manipulate stock price").

Plaintiff's allegations in the FAC are an extension of his broader smear campaign dating back years.[2]  Along with his voluminous tweets, exhibits to the FAC show he was emailing Tesla's board of directors about the same "fraud" alleged in the FAC as early as summer 2019—raising, for example, his unfounded suspicions about Tesla's reporting of vehicle "deliveries" (rather than "sales"), alleged Solarglass "imports" from China, Tesla's refund policies, and its relationship with "social media influencers." (*Compare, e.g.*, Ex. L at 3 and Ex. A, *with* FAC Issues 4, 6-7, 14, 36; *see also* Dwyer Decl. Ex. 5 (email accusing Mr. Musk of "lying" about numerous issues in August 2019).) And in January 2020, Plaintiff (through PlainSite) published and then tweeted a purported exposé about Tesla, *Reality Check*, which includes virtually every accusation in the FAC, ranging from Mr. Musk's purported ties to drug cartels, to Plaintiff's skepticism about robotaxis, to his various accusations of accounting fraud. (*See* Ex. 1 & Appendix A (comparing FAC Issues with Plaintiff's prior, public allegations).)

---

[1] Unless otherwise noted, all "¶" references are to the FAC, all emphasis is added, and citations and internal quotation marks are omitted. All FAC "Issues" refer to the Issues pled in ¶¶ 246-250.
[2] For the Court's convenience, Defendants have prepared Appendix A, which summarizes the allegations in the FAC and shows where and when Plaintiff previously alleged the same misconduct.

Concurrent with his efforts to "expose" Tesla's alleged fraud, from at least September 2018, Plaintiff repeatedly bet against Tesla stock by purchasing "put options"—a short-selling strategy.[3]  (¶ 20 & Ex. S.)  This, of course, contradicts Plaintiff's claim that he "would not have purchased TSLA put options at the prices he did" had he known the stock price was "artificially and falsely inflated." (¶ 263.) Having failed to make money on his short sales, Plaintiff seeks to recoup his losses through this lawsuit. (¶ 263 & Ex. S.)

## B.   Plaintiff's Allegations Against Mr. Qazi.

Plaintiff alleges that since January 2019, Defendants Qazi and Smick Enterprises, Inc. ("Smick") have engaged in a campaign of "criminal harassment" against Plaintiff and his family. (¶¶ 36-154.)  Notably, Plaintiff's FAC reveals that he has had almost no direct contact with the Tesla Defendants. (*See generally* FAC ¶¶ 1-140.)  Instead, the FAC focuses on Plaintiff's interactions with Mr. Qazi on Twitter, by telephone, and facsimile. (¶¶ 36-154.) While the FAC speculates about ties between Mr. Qazi and Mr. Musk, Plaintiff tacitly admits he is not aware of such a relationship, other than alleged interactions on Twitter and in the media. (*See, e.g.*, FAC ¶¶ 8, 10, 59, 61 & Ex. A (email to Tesla's board of directors asking about relationship between Mr. Qazi and Mr. Musk).)

## C.   Plaintiff's Claims Against the Tesla Defendants.

The claims in the FAC include only slight variations on Plaintiff's prior accusations:

***Libel per se:***  Plaintiff alleges that Mr. Musk is vicariously liable for some 32 different allegedly libelous statements made by Mr. Qazi (¶ 148), apparently because Mr. Musk allegedly told Mr. Qazi, "[y]our Twitter is awesome!" (¶ 156).  Ignoring his own sharp commentary on Twitter (*see infra* Section IV), Plaintiff also alleges that Mr. Musk libeled him directly using the epithets "psych ward," "online bully," "fake charity," "nut but," and "major issues," and by writing in a private email that Plaintiff "sued Zuckerberg" (when he actually sued Facebook).  (¶¶ 68, 162, 174 & Ex. F.) Notably, Plaintiff republished at least two of the challenged statements, thus undercutting any argument that he was damaged by them in any way.  *See infra* Section IV.

---

[3] "'Put options' give the holder the right to sell an underlying asset at a specified price (the strike price). The seller (or writer) of the put option is obligated to buy the stock at the strike price. Put options can be exercised at any time before the option expires. Investors buy puts if they think the share price of the underlying stock will fall[.]" *SEC v. McGinnis*, No. 13-CV-1047 AVC, 2013 WL 6500268, at *2 n.5 (D. Conn. Dec. 11, 2013).

***UCL Claim:*** Plaintiff's UCL claim is based largely on the conduct of Mr. Qazi and Smick, but alleges Mr. Musk joined them in committing "[c]onspiracy to commit offense or to defraud [the] United States," "stalking," "witness tampering," and libel. (¶¶ 236(f)-(g), 237.) Plaintiff further alleges he was harmed because he paid $4.25 for parking, bought gas, and spent time "documenting" the activities of unspecified "Defendants" in order to file a police report. (¶¶ 238-39.) Plaintiff told police, however, that he believes Mr. Qazi alone was responsible for the conduct in that police report, and neither the FAC nor its exhibits attribute any of that conduct to Mr. Musk.  (¶¶ 234-36 & Ex. J.)

***Securities Fraud Claims:*** These claims largely repackage Plaintiff's prior allegations of fraud, alleging a morass of over 40 "misrepresentations" and "omissions," few of which are tethered to any actual statements made by the Tesla Defendants. As with his prior accusations, Plaintiff's "evidence" of fraud is largely based on his own research and opinions, anecdotes on Twitter, court documents, news articles, other short-sellers' opinions, and even a declaration from his father. (*See, e.g.*, ¶¶ 246-50 & Ex. P.) Plaintiff does not identify any disclosure of alleged fraud to the market, but complains that Tesla's fraud has kept its share price "artificially inflated for a prolonged period of time." (¶ 263.)

## III.   LEGAL STANDARD ON A MOTION TO DISMISS

In considering a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court should not accept conclusory statements, unwarranted deductions, or allegations contradicted by judicially noticed facts or documents incorporated by reference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL PER SE.

Plaintiff cannot state a claim for libel per se under either a "vicarious" or direct liability theory.

### A.   Mr. Musk Is Not Vicariously Liable for Mr. Qazi's Alleged Libel.

Plaintiff alleges Mr. Musk is "vicariously liable for all libelous statements published by Mr. Qazi . . . through at least October 9, 2019," pointing to Mr. Musk's comment "Your Twitter is awesome!" (¶ 156.)  Plaintiff fails to state a claim for vicarious liability under any theory.

To plead an agency theory of vicarious liability—the apparent basis for his claim—Plaintiff

must allege that Mr. Musk made Mr. Qazi his "actual" or "ostensible" agent. Cal. Civ. Code § 2298. To plead actual agency, which "typically arises by express agreement," a plaintiff must plead facts permitting the inference that the agent "is really employed by the principal" such that the agent will "act on his behalf and subject to his control." *van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 570-71 (2003). To plead ostensible agency, the plaintiff must plead facts showing that the "principal cause[d] or allow[ed] a third person to [reasonably] believe that the agent possesses" legal authority to act on his behalf. *See J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 403 (2009).

Plaintiff tacitly concedes that he is not aware of any relationship between Mr. Musk and Mr. Qazi, and the FAC pleads no facts that could conceivably establish such a relationship. *See supra* Section V; Exs. A & J.  In addition to the alleged compliment (¶ 156), the only other alleged "facts" pertaining to their relationship include: (1) a factually-unsupported claim that Mr. Musk and Mr. Qazi "at times worked as a tag team," with Mr. Qazi acting "on behalf of" Mr. Musk on social media, (2) Musk's alleged appearance on a podcast co-hosted by Mr. Qazi, (3) Mr. Qazi's alleged attendance at "invite only" Tesla events, and (4) Mr. Qazi's alleged use of the Tesla trademark on Twitter. (¶¶ 8, 10, 61, 132-33, 157.)  Conspicuously absent is any fact suggesting that Mr. Musk could exercise control over Mr. Qazi, and "[i]n the absence of the essential characteristic of the right of control, there is no true agency." *van't Rood*, 113 Cal. App. 4th at 572. Furthermore, no reasonable observer could construe these facts as a legal authorization to act on the endorser's behalf.  Indeed, given that even close friendship cannot be a basis for agency liability, the banal interactions alleged in the FAC are plainly insufficient. *Brown v. Comcast Corp.*, No. EDCV16-00264, 2016 WL 9109112, at *4 (C.D. Cal. Aug. 12, 2016) (no agency existed between "friends and housemates"; to base agency authority on friendship "could lead to absurd results"); *see also Violette v. Shoup*, 16 Cal. App. 4th 611, 615 (1993) (social acquaintance who introduced plaintiffs to financial planner as a favor not their agent).[4]

Because his claims are not viable under any theory, Plaintiff's attempt to hold Mr. Musk

---

[4] Plaintiff does not allege even in passing that Mr. Musk had the "right to control the manner and means" of Mr. Qazi's actions, as required to allege a respondeat superior theory. *Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111, 1118 (2019).  Nor does Plaintiff allege a conspiracy or aiding-and-abetting theory, which would require him to plead, *inter alia*, the existence of an agreement and specific knowledge or intent. *Wilcox v. Super. Ct.*, 27 Cal. App. 4th 809, 828 (1994); *Long v. Playboy Enters. Int'l, Inc.*, No. LACV11-02128, 2012 WL 12869314, at *3 (C.D. Cal. Mar. 7, 2012).

1    vicariously liable for Mr. Qazi's statements must fail.

2    **B.    The Alleged Statements by Mr. Musk Are Not Actionable.**

3    Plaintiff's libel per se claims against the Tesla Defendants fail because virtually all of the

4    challenged statements are "constitutionally protected opinions rather than verifiable facts." *Art of*

5    *Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *7 (N.D. Cal. June 15, 2011).

6    "Rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and language

7    used in a loose, figurative sense have all been accorded constitutional protection." *Seelig v. Infinity*

8    *Broad. Corp.*, 97 Cal. App. 4th 798, 809, 810 (2002).  "Whether a statement is an assertion of fact or

9    opinion is a question of law for the court." *Art of Living Found.*, 2011 WL 2441898 at *5.  To ascertain

10   whether a statement "implies an assertion of fact," courts in the Ninth Circuit consider: (1) the broad

11   context of the statement, which includes the "general tenor," "setting," and "format" of the entire

12   work; (2) the specific context of the statement, such as "figurative or hyperbolic language used and

13   the reasonable expectations of the audience," and (3) "whether the statement is sufficiently factual to

14   be … proved true or false." *Id.* at *5.  None of the challenged statements is actionable under this rubric.

15   ***Mr. Musk's October 9, 2019 Email.***  On October 9, 2019—after making baseless accusations

16   against Mr. Musk and Tesla for more than a year—Plaintiff emailed a "Notice of Intent to Sue and

17   Evidence Preservation Notice" to Mr. Musk, the general counsels of Tesla and SpaceX, and Mr. Qazi,

18   copying or blind copying the SEC, NBC, and the *L.A. Times*. (FAC, Ex. E.)  Plaintiff demanded, *inter*

19   *alia*, that Tesla "export" evidence and "shut down all social media accounts" of essentially anyone

20   who ever worked for a Musk-affiliated company. (*Id.*) Minutes later, Mr. Musk responded, tongue in

21   cheek, "[d]oes the psych ward know you have a cell phone? Just curious." Mr. Qazi responded to

22   Plaintiff's email with "Lol," and Mr. Musk replied "with two laugh/crying emojis." (¶¶ 67-68, Ex. F.)

23   Mr. Qazi posted Mr. Musk's comment to Twitter (¶ 162, No. 34), and Plaintiff reposted it twice more

24   (Dwyer Decl. Exs. 6, 7) and even reprinted the statement again in *Reality Check*.  (Ex. 1 at 55.)

25   Mr. Musk's statement is not actionable. "California courts have refused to hold defamatory on

26   its face or defamatory at all an imputation of mental disorder which is made in an oblique or hyperbolic

27   manner." *Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978), *aff'd*, 629 F.2d 586 (9th

28   Cir. 1980). Likewise, the Ninth Circuit has rejected defamation claims premised on the words "Looney

Tunes," "crazy," "nuts," and "mentally imbalanced" because they are expressions of opinion that are "constitutionally-protected by the First Amendment" and no "reasonable viewer would" interpret them as factual. *Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003).[5]

Mr. Musk plainly was not asserting facts, but instead expressing how he felt about Plaintiff's campaign against Tesla broadly, and his email and legal demands more narrowly. He even punctuated his further response with two laughing emojis. (¶ 59.) Like the "Looney Tunes" and "mentally imbalanced" epithets at issue in *Lieberman*, Mr. Musk's "psych ward" epithet is hyperbole and "not provable as false." 338 F.3d at 1080. Moreover, Plaintiff's repeated republication of the statement belies any claim that Plaintiff himself construed it as a factual assertion capable of damaging his reputation. The statement is thus an opinion, and cannot be defamatory as a matter of law.[6]

***Mr. Musk's October 12 Tweet***. In October 2019, Mr. Qazi tweeted a link to an article (¶ 85), that discussed Plaintiff's use of PlainSite (which is jointly run by Plaintiff's nonprofit) to criticize Tesla and "attack people online" described a donation to Plaintiff's non-profit by *L.A. Times* reporter Russ Mitchell. Mr. Musk responded, tagging the Twitter handle of the owner of the *L.A. Times*: "are you aware that one of your senior journalists (Russ Mitchell) is openly funding a fake charity run by an online bully?" (Dwyer Decl. Ex. 8.) Plaintiff did nothing about the article (¶ 88), and quoted the tweet twice in *Reality Check*. (Dwyer Decl. Ex. 1 at 54-55.)

Here too, it is plain that Mr. Musk was not making a factual assertion. As to the context of the statement, "[c]ourts generally have found that internet bulletin boards and chat room postings lend themselves to constitutional protection." *Eade v. InvestorsHub.com, Inc*., No. LACV11-1315, 2011 WL 13323344, at *6 (C.D. Cal. July 12, 2011) (collecting cases). Readers in these contexts "expect

---

[5] *See also Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 894 (9th Cir. 1988) ("It strains credulity to accept that" the words "wacko" and "twisted" were assertions "that [plaintiff] is mentally ill"); *Correia v. Santos*, 191 Cal. App. 2d 844, 853 (1961) (reference to "insanity" was not describing "plaintiff as a person who was mentally ill but as one who was unreasonable in his actions and his demands").

[6] As Mr. Musk was responding to Plaintiff's pre-litigation demand, his email (copying Plaintiff's initial recipients) is also absolutely privileged. *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, (1999) (under California law, "attorneys, parties and witnesses are *absolutely privileged* 'to publish defamatory matter concerning another in communications *preliminary* to a *proposed* judicial proceeding'"). While Plaintiff argues that Mr. Musk's email was not "substantive" enough to be privileged (¶ 68), the privilege extends to communications with "some relation to an anticipated lawsuit," *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 262 (1997), and plainly encompasses Mr. Musk's rejection of Plaintiff's demand here.

**TESLA DEFS.' MOTION TO DISMISS
CASE NO. 3:20-CV-03426-JSC**

to see strongly worded opinions rather than objective facts," *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012), and "give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts," *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 44 (N.Y. App. Div. 2011). Notably, Plaintiff has used language online that is even harsher than the alleged defamation here, tweeting, for example, that Mr. Musk is "a narcissistic sociopath," "not physically capable of behaving normally," and "a societal menace." (Dwyer Decl. Exs. 9, 10.)

Further, the phrases "online bully" and "fake charity" do not conceivably assert facts, as opposed to opinions. Courts have consistently held that the term "bully" is relative and expresses an opinion. *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) ("bully" epithet was "rhetorical hyperbole, incapable of being proven true or false"); *Padron v. Moreno*, No. 15CECG03521, 2016 WL 4611489, at *5, *7 (Cal. Super. Apr. 28, 2016) ("bully" claim cannot be "prove[n] or disprove[n] . . . and thus [defendant]'s statement is nothing more than an opinion"). "[F]ake charity" similarly has no precise or objective meaning. *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159 (2008) ("crooks" and "fake medical degree" are non-actionable opinions); *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) (calling theater production "fake," was "unprovable" since it is subject to "numerous interpretations"). Indeed, the FAC and exhibits themselves demonstrate the unfixed meaning of these terms, showing, for example, that others on Twitter consider Plaintiff to be a an online "bully,"[7] and that Plaintiff himself ascribes various meanings to "fake."[8] And again, Plaintiff's reprinting of Mr. Musk's words undermines any claim that they were either factual or defamatory. Thus, these statements are protected opinion as well.

---

[7] While Plaintiff invites the Court to search through "Plaintiff's Twitter history," which he says is "searchable and devoid of bullying" (¶ 172), he recently made his personal account private. (*See* https://twitter.com/AaronGreenspan.) Thus, the tweets authored by Plaintiff and included in Tesla Defendants' Motion and Request for Judicial Notice are limited to those retrievable on the public @Plainsite account.  However, the exhibits to the FAC show Twitter users criticizing Plaintiff for "threaten[ing] his critics, and Tesla customers" (Ex. B at 32), and being a "plain obnoxious bully that makes it his life work to destroy others" (*id.*). And replies to Plaintiff's Twitter account (which remain public) show even more examples.  (*See* Dwyer Decl., Exs. 11-13 ("you are the bully"; "Would you please stop harassing Tesla and Elon Musk supporters?"; "Stop being a Twitter bully, for God's sake!"; and "Aaron isn't it exactly tweets/statements like these that makes people think of you as a bully?").).

[8] *See* ¶ 47 (referring to a "fake fax number," presumably because it **did not exist**); ¶¶ 74, 79 (alleging Qazi created "fake" Twitter accounts to **impersonate** others); ¶¶ 76, 110 (referring to Qazi's "fake," i.e., **anonymous** social media accounts), Ex. L (alleging "fake" sales, presumably because they were **accidental**); Ex. M (alleging "fake" delivery figures because they are allegedly **incorrect**).

***Mr. Musk's October 23 Email***. On October 23, 2019, Mr. Qazi emailed Twitter's CEO, Jack Dorsey, copying Mr. Musk.  (¶¶ 109, 174-76.) Plaintiff does not plead the contents of Mr. Qazi's email, but complains about Mr. Musk's response directed to Mr. Dorsey:

> Jack, what Omar is saying is accurate to the best of my knowledge. There has been an orchestrated and sophisticated attempt to drive down Tesla stock through social media, particularly Twitter. This always increases around our earnings call, which is this afternoon. Aaron Greenspan in particular has major issues. He's the same nut but that claimed he was the founder of Facebook and sued Zuckerberg, among many other things. Never seen anything like it. (¶¶ 9, 109, 162 No. 36, 174-76.)

As with his other statements, Mr. Musk's reference to Plaintiff as a "nut but" with "major issues" is nonactionable opinion. These phrases cannot reasonably be interpreted as factual assertions that Plaintiff suffers from an actual mental illness. Nor does either phrase have an objective meaning, such that it is "susceptible of being proved true or false." *Lieberman*, 338 F.3d at 1079–80; *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 367 (9th Cir. 1995) ("intrinsically evil" not verifiable).

The alleged "sued Zuckerberg" comment is not actionable for two additional reasons. First, "suing Zuckerburg" is not conduct that would "expose[] [Plaintiff] to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'" *Barnes-Hind, Inc. v. Super. Ct.*, 181 Cal. App. 3d 377, 386–87 (1986).  Hundreds, if not thousands, of people, entities, and governments have done the same.[9]

Second, the "sued Zuckerberg" statement is substantially true. "The law does not require [a defendant] to justify the literal truth of every word of the allegedly defamatory content," and overlooks a "slight inaccuracy in the details, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012). There is little daylight—and no reputational difference—between the "sued Zuckerberg" statement, which Plaintiff claims is false, and Plaintiff's affirmative claims that he developed "The Facebook," filed suit against Facebook, and settled with Mr. Zuckerberg and Facebook.  (¶¶ 148 No. 11, 176.)

---

[9] Even if the statement were capable of being defamatory, it "cannot be libel per se," since Plaintiff relies on extrinsic facts about the alleged "truth" to explain the purported defamation. *Barnes-Hind, Inc.*, 181 Cal. App. 3d at 382, 387 ("Libel per se . . . is defamatory of the plaintiff without the necessity of explanatory matter . . . . Defamatory language not libelous on its face is not actionable unless the plaintiff alleges . . . he has suffered special damage[.]").

**TESLA DEFS.' MOTION TO DISMISS**
**CASE NO. 3:20-cv-03426-JSC**

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE UCL.

Plaintiff's UCL claim against Mr. Musk likewise fails for multiple, independent reasons.

*First*, Plaintiff lacks statutory standing under the UCL, which requires (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) . . . that [the] economic injury was the result of, i.e. *caused by*, the unfair business practice" at issue.   *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320–21 (2011). Plaintiff's alleged economic injury consists of *de minimis* costs for parking and gas to file a police report, and time spent "documenting Defendants' misconduct." (¶¶ 238-40.)   These allegations fail both prongs of the UCL's standing test.

Standing to bring a UCL claim "is limited to individuals who suffer losses of money or property that are ***eligible for restitution***." *Sullins v. Exxon/Mobil Corp.*, No. C 08-04927, 2010 WL 338091, at *3-4 (N.D. Cal. Jan. 20, 2010). "Restitution under the UCL is the return of money or property obtained through an unfair business practice," *id.*, and "that money or property must have been acquired ***by the defendant***," *Khan v. 7-Eleven, Inc.*, No. EDCV14-00522, 2015 WL 12781203, at *3 (C.D. Cal. May 6, 2015).   Here, Plaintiff does not purport to seek restitution, nor could he, since he does not allege he paid any amounts, directly or indirectly, to Mr. Musk. *See Sullins*, 2010 WL 338091, at *4 (dismissing UCL claim where plaintiff had paid money to an unrelated third party, since those amounts were not recoverable as restitution). Plaintiff's alleged gas and parking costs are, instead, in the nature of consequential damages, which are "not within the 'limited relief' available under the UCL." *Khan*, 2015 WL 12781203, at *3 (citation omitted).

Further, Plaintiff's time spent "documenting" Defendants' activities here cannot confer standing, since Plaintiff concedes he did at least some of this work "in case pressing criminal charges or filing a civil lawsuit might ultimately be necessary." (¶¶ 197, 240.) Costs to "generate evidence" for a lawsuit do not confer standing "because they are not an economic injury caused by the business practices." *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1334 (2015).

Even if Plaintiff had properly alleged economic injury, he would still lack standing because he has not pled any facts showing his purported losses were "the result of, i.e. *caused by*" Mr. Musk. *Kwikset*, 51 Cal. 4th at 322.   None of the fees Plaintiff purportedly incurred in making a police report can plausibly be tied to Mr. Musk because that report describes conduct that Plaintiff attributes to Mr.

**TESLA DEFS.' MOTION TO DISMISS
CASE NO. 3:20-cv-03426-JSC**

Qazi alone—"harassing phone calls, texts, emails, Internet posts and facsimiles," and a pornography-related incident. (Ex. J at 2-4; FAC ¶¶ 36-84.)  Indeed, Plaintiff told police "he believes that Omar Qazi is responsible for **all or most** of the harassment he has been the victim of," and could only speculate that Mr. Musk "has some kind of relationship" with Mr. Qazi or "**could be** directly aware of and approving of the ongoing harassment." (Ex. J at 4.) Likewise, as to his time spent "documenting" alleged misdeeds by "Defendants," Plaintiff does not even claim he did such work for the police report (as opposed to his other Tesla "research" or for litigation), or that it related to Mr. Musk (rather than to Mr. Qazi).  (*See* ¶ 197 (alleging "hundreds" of hours spent documenting Mr. Qazi's conduct), ¶ 240 (alleging "at least 100 hours" spent documenting "Defendants' misconduct").)  Thus, Plaintiff has not sufficiently alleged standing, and his UCL claim fails on this basis alone.

*Second*, Plaintiff has not alleged any facts demonstrating "unlawful, unfair, or fraudulent" conduct by Mr. Musk.  Cal. Bus. & Prof. Code § 17200 *et seq.*  Most of Plaintiff's allegations catalogue alleged bad acts by Defendants Smick and Mr. Qazi. (¶¶ 234-236(f).)  But Plaintiff alleges no basis to hold Mr. Musk liable under the UCL for the alleged third-party conduct, including Mr. Qazi's alleged statements.  *See supra* Section IV; *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984) (UCL liability must be premised on "defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal").  Plaintiff also tries to predicate his UCL claim on purported "widely publicized libelous statements to discredit Plaintiff's research" (¶ 237), but those claims fail as to Mr. Musk for the reasons discussed in Section IV, *supra.*

Apparently to support an unlawful-prong UCL claim, Plaintiff nonsensically alleges that Mr. Musk (along with Mr. Qazi) violated 18 U.S.C. § 371, which criminalizes conspiracy "either to commit any offense against the United States, or to defraud the United States," and committed criminal stalking, 18 U.S.C. § 2261A.  But he fails to allege the elements of either criminal statute, and does not specifically attribute **any** of the alleged predicate conduct to Mr. Musk.  (*See* ¶ 236(f).) Plaintiff also alleges that Mr. Musk violated the "witness tampering" statute, "18 U.S.C. § 1512(b)(2)(A) and/or (B)" (FAC ¶ 236(g)), which criminalizes*, inter alia*, the use of intimidation and threats to "cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object from an official proceeding; [or] (B) alter, destroy, mutilate or conceal an object with intent to impair the

**TESLA DEFS.' MOTION TO DISMISS
CASE NO. 3:20-cv-03426-JSC**

object's integrity or availability for use in an official proceeding[.]" Plaintiff claims, without evidence, that Mr. Musk made the "online bully"/"fake charity" comment somehow to force Plaintiff to withdraw his challenge to the confidential treatment of documents in unrelated litigation. (FAC ¶ 236(g).) But Plaintiff alleges no facts that would connect Mr. Musk's email to those proceedings, and has failed to establish even facial plausibility for this theory. *Iqbal*, 556 U.S. at 678. Even if he had, and even if Mr. Musk's tweet were not constitutionally protected speech (*see* Section IV *supra*), Plaintiff was not slated to be a witness or other source of documentary evidence in any official proceeding, making the "witness tampering" statute facially inapplicable.

*Third*, Plaintiff has not pled that he lacks an adequate legal remedy. *See Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072, 1081 (9th Cir. 2020) (holding that, in federal court, restitution is only available under the UCL if the plaintiff "establish[es] that she lacks an adequate remedy at law."); *see also Philips v. Ford Motor Co.*, No. 14-CV-02989, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (dismissing UCL claim on same basis). Plaintiff does not explain why his purported losses are not recoverable as damages under another theory, and in fact seeks a legal remedy at least for the alleged libel. (¶ 237.) *Sonner* thus provides an independent basis to dismiss the UCL claim.

## VI.    PLAINTIFF FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS.

Plaintiff's securities claims cut against the very purpose of the federal securities laws, which "were designed to provide for the disclosure of information to those who invested risk capital and to protect them from fraud." *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 432 (9th Cir. 1978). These laws provide a remedy when an innocent investor, relying on the defendant's fraud, makes trades and suffers losses based on information later revealed to be false. Not surprisingly, Plaintiff—a short-seller, who for years has tried to persuade the public of fraud at Tesla, and made bets that he was right—cannot state federal securities fraud claims.

To state a Section 10(b) or Rule 10b-5 claim, a plaintiff must allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020). All elements must satisfy the particularity requirements of Rule 9(b). *Id.* at 414. A plaintiff must also meet the PSLRA's

1    heightened pleading standards by "specify[ing] each statement alleged to have been misleading, [and]

2    the reason or reasons why the statement is misleading" and "stat[ing] with particularity facts giving

3    rise to a strong inference that the defendant acted with the required state of mind" for scienter. *Tellabs,*

4    *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

5    　　　　Plaintiff's claims fail on virtually all of these elements. ***First***, Plaintiff does not and could claim

6    that relied on any alleged false statements because he believed that Tesla was engaged in fraud ***during***

7    ***the entire time he was betting against the Tesla stock***.   "[A]llowing recovery in the face of [such]

8    affirmative evidence of nonreliance—would effectively convert Rule 10b-5 into a scheme of

9    investor's insurance." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (citation

10   omitted). ***Second***, Plaintiff has not even tried to tie his losses to any purported fraud that was revealed

11   to the market, and instead generally alleges that Tesla's stock price was "artificially inflated for a

12   prolonged period of time" (¶ 263)—a loss causation theory the Supreme Court has expressly rejected.

13   *See Dura*, 544 U.S. at 343. ***Third***, Plaintiff haphazardly pleads more than 40 alleged "Issues"—

14   regurgitating his conspiracy theories and bizarre suspicions that virtually everything and everyone at

15   Tesla is a fraud—but largely does not attempt to tether these "Issues" to identifiable statements by the

16   Defendants, much less explain the who, what, where, when, and how of the alleged fraud. 15 U.S.C.

17   § 78u–4(b)(1), (2).   ***Fourth***, the FAC is utterly devoid of "particular[] facts" giving rise to a strong

18   inference of scienter. *Tellabs, Inc.*, 551 U.S. at 321.

19   　　　**A.　　The FAC Fails to Plead Reliance.**

20   　　　　To plead reliance, Plaintiff must allege that "but for the fraud, [he] would not have engaged in

21   the transaction at issue." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005). Here, Plaintiff

22   does not claim to have relied directly on any of the 40+ "Issues" identified in the FAC, and instead

23   invokes the "fraud on the market" presumption. (¶ 243.) But as a short-seller who has claimed that

24   Tesla's stock price was artificially inflated even before he began betting against Tesla, Plaintiff cannot

25   avail himself of that presumption, and has not pled reliance.

26   　　　　In *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988), the Supreme Court recognized a rebuttable

27   presumption of reliance on the integrity of market prices where a plaintiff plausibly alleges that the

28   stock was traded on an efficient market.  The *Basic* presumption assumes that, in an efficient market,

14

the stock's price will incorporate and react to fraud. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). If applicable, the presumption dispenses with a plaintiff's burden to plead "how he would have acted if omitted material information had been disclosed." *Basic*, 485 U.S. at 245.

As numerous courts have recognized, however, short sellers like Plaintiff cannot rely on the *Basic* presumption. The basis for that rule is clear: "An investor . . . sells short **because he believes** the price of a stock overestimates its true value," whereas the premise of the fraud-on-the-market presumption is that investors rely on the market to **reflect** a stock's true value. *Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 823 (3d Cir. 1988) (short-seller was not entitled to fraud-on-the-market presumption); *see also, e.g.*, *Gilford Partners, L.P. v. Sensormatic Elec. Corp.*, No. 96 C 4072, 1997 WL 570771, at *8 (N.D. Ill. Sept. 10, 1997) (granting 12(b)(6) motion and explaining that "the facts alleged in the complaint preclude [the short-seller plaintiff] from raising the evidentiary presumption of the fraud-on-the-market theory" because he "not only distrusted the integrity of the market price, but affirmatively believed that information had been fraudulently . . . withheld from the market"); *Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.*, 183 F.R.D. 487, 491 (E.D. Va. 1998) ("[G]ambling on a predicted loss is precisely what a short-seller seeks to do. . . [S]hort-sellers . . . cannot logically use a fraud on the market theory to obviate the need for positive proof of individual reliance.").

Even if Plaintiff could invoke the fraud-on-the-market presumption, it would be conclusively rebutted because the Plaintiff plainly "would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud." [10] *Halliburton Co.*, 573 U.S. at 269. Plaintiff falsely contends that he bought put options "without knowledge of the omitted or misrepresented facts." (¶ 243(g).) But Plaintiff was claiming that Tesla's stock price was fraudulently inflated **before he purchased his first put options in 2018.** (*See* Ex. S; Dwyer Decl. Exs. 2, 14 (August 2018 tweets from Plaintiff's @PlainSite account asserting that "Elon Musk has a habit of communicating false information," and "[Tesla] stock has been manipulated by Elon Musk for days").) Further, Plaintiff was publicly complaining about the very same fraud alleged in the FAC **even as he was actively purchasing put options over the next two years**. (*See* Ex. S; Dwyer Decl. Ex. 1 (*Reality Check* article

---

[10] For the same reasons, Plaintiff also could not claim that he directly relied on Defendants' alleged misrepresentations. *Halliburton*, 573 U.S. at 269.

cataloging, *inter alia*, alleged safety issues, misclassifications of vehicle repairs, and connections between Mr. Musk and Pablo Escobar).[11] As Appendix A shows, Plaintiff "knew" of virtually all of the alleged fraud before his 2020 investments, and was tweeting about much of the "fraud" before his 2018 and 2019 investments. He thus cannot credibly claim that he "relied" on any misstatement. *See Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 571 (7th Cir. 2009) (rejecting reliance claim where plaintiffs wrote a letter alleging "most of the facts that their complaint charge[d] as fraud."). Plaintiff's securities claims fail on this basis alone. And because no amendment could cure this defect, his claims should be dismissed with prejudice. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) (affirming dismissal with prejudice because Plaintiffs "cannot cure the flaws in their pleading").

## B. The FAC Fails to Plead Loss Causation.

To show loss causation, Plaintiff must allege a "causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered[.]" *In re Daou Sys.*, 411 F.3d at 1025. The FAC fails to plead loss causation in at least three ways.

***First***, Plaintiff does not purport to identify any "corrective disclosure" that "revealed the fraud, or at least some aspect of the fraud, to the market"—the linchpin of pleading loss causation. *Bofi Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1135 (S.D. Cal. 2018) (citation omitted). Instead, Plaintiff alleges that Tesla's stock price has been "artificially inflated for a prolonged period of time, leading to losses on TSLA put options that expired . . . but otherwise would not have." (¶¶ 263.)[12]

The Supreme Court rejected this very theory in *Dura*. In that case, the Court held that plaintiffs could not demonstrate loss causation merely by showing that "the price ***on the date of purchase*** was inflated because of the misrepresentation." 544 U.S. at 342. In so holding, the Court explained that "an initially inflated purchase price *might* mean a later loss," but that "is far from inevitably so," because such a loss could be the result of other factors. *Id.* (emphasis original). The Court thus affirmed

---

[11] *See generally* Appendix A; *compare, e.g.*, Ex. L (October 2019 and February 2020 emails to Tesla Board regarding various business practices), *with* ¶¶ 246-49 Issue Nos. 4, 6-7, 9, 36 (alleging same practices were fraudulent); Ex. A (August 2019 concerns about Tesla's relationships with "social media influencers"), *with* ¶ 249 Issue No. 14 (alleging same were fraudulent). Plaintiff has not alleged when he actually "learned" about the "fraud" alleged in the FAC, but his broad claim of ignorance at all of the various times he invested in Tesla put options (¶ 263) is clearly implausible.
[12] Indeed, Plaintiff even tacitly suggests that some of the alleged fraud has *never* been revealed. (*See* ¶ 243 (alleging Plaintiff held securities before "the true facts were disclosed (if *ever*).")

that loss causation requires a showing that plaintiff sustained losses *because the truth came to light* about a misrepresentation. *Id.* at 342–43. After *Dura*, therefore, a plaintiff "must plausibly allege that the defendant's fraud was revealed to the market and *caused* the resulting losses." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).

Plaintiff does not identify any fraud that was disclosed to the market and caused his resulting losses, and instead posits that: (1) Tesla was committing fraud when he bought his options (which he "knew" about, *see* Section VI(A), *supra*), (2) Tesla should have disclosed the "truth" before Plaintiff's options expired, and (3) had Tesla done so, Plaintiff would have made money. (¶ 263.) But that theory fails the test of *Dura*, since in Plaintiff's scenario, Tesla's stock price was inflated by alleged fraud both when he bought options *and* when they expired—such that the "fraud" could not be the "proximate caus[e]" of Plaintiff's "loss." *Dura*, 544 U.S. at 346.

**Second,** Plaintiff cannot plausibly claim that the FAC pleads a corrective disclosure, since all of its contents are merely repackaged from the public domain. As a matter of settled law, when a security trades in an efficient market, no fraudulent practice is "revealed" by a disclosure "derived entirely from public filings and other publicly available sources of which the stock market was presumed to be aware." *Loos*, 762 F.3d at 889. Plaintiff does not allege he is a Tesla insider, does not purport to have confidential sources, and does not otherwise allege access to insider information. He instead has based his "research" on public sources and information "of which the stock market was presumed to be aware." *Miller v. PCM, Inc.*, No. 17-3364, 2018 U.S. Dist. LEXIS 148930, at *33 (C.D. Cal. Jan. 3, 2018); *see infra* Section VI(C). Having alleged that Tesla's stock traded in an efficient market (*see* ¶ 243(c)), Plaintiff must accept that this information would have been digested and "incorporated into the market price" of Tesla's stock long prior to his investments, with a "dire— and indeed fatal—effect on [his] ability to demonstrate loss causation." *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013); *see, e.g.*, *Miller*, 2018 U.S. Dist. LEXIS 148930, at *35 (internet post that "was gleaned entirely from public filings and information" not a corrective disclosure) (collecting authorities).

**Third**, the core premise of the FAC—that Tesla was concealing *negative* information to artificially inflate Tesla's stock price at the time he bought put options—precludes a showing of loss

17

causation as a matter of law. Because a short-seller is betting that stock prices will decrease, rather than increase, the role of the corrective disclosure "is inverted" in the "short-selling setting." *Collier v. Aksys Ltd.*, No. 3:04CV1232(MRK), 2005 WL 1949868, at *11 (D. Conn. Aug. 15, 2005).

As the court in *Wilamowsky v. Take-Two Interactive Software, Inc.* explained:

> The actionable misstatement in the short-selling context ***would conceal positive rather than negative information*** about the company—such as the pendency of a favorable merger—***and would depress rather than inflate stock prices***. An investor short selling stock at these artificially low prices would plainly suffer an economic loss when the truth was revealed to the market, boosting the prices at which he was forced to cover…. ***By contrast, where, as alleged here, a company concealed* negative *information about its economic condition, a short seller who sold at artificially inflated prices and covered after the corrective disclosure would actually* profit *from the fraud*.

818 F. Supp. 2d 744, 753 (S.D.N.Y. 2011). Without exception, Plaintiff claims that Defendants were artificially ***inflating*** Tesla's stock price either through alleged misrepresentations that painted a rosier picture than was warranted or by concealing negative information, the disclosure of which would have deflated Tesla's stock price. (*See, e.g.*, ¶¶ 7 (complaining of the "unprecedented artificial inflation of Tesla's stock price"), 263 (alleging losses because the Tesla stock price was "artificially inflated"), 249-51 (similar).)   Accordingly, the factual predicate of Plaintiff's claim—that the alleged fraud concealed ***negative*** information—is nonsensical in the short-selling context.[13]  *Wilamovsky*, 818 F. Supp. 2d at 753.  "[A]llowing [Plaintiff] to state a claim under these circumstances would permit a short seller under *any* standard misrepresentation case to either win big in the marketplace by covering after a corrective disclosure, or win in court by 'transform[ing] a private securities action into a partial downside insurance policy." *Id.* at 759.  Because the securities laws "do not stand for such a result," *id.*, Plaintiff's factual allegations are fundamentally incompatible with proof of loss causation, and his claims must be dismissed with prejudice.  *Lipton*, 284 F.3d at 1039.

## C.     The FAC Fails to Identify Any Actionable Representation.

Because Plaintiff has failed to plead reliance and loss causation, the Court need not address the various allegedly fraudulent "Issues" pled in the FAC. Those "Issues" do not remotely resemble viable securities fraud claims, and instead repackage Plaintiff's unsubstantiated suspicions developed over

---

[13] Indeed, Plaintiff's claim that he somehow overpaid for his put options (¶ 263) makes no economic sense, since an "inflated" stock price would have made his options *cheaper.*

his years-long disinformation campaign. They range from the absurd (e.g., Tesla's illegal wiretapping of employees' devices) to the fantastic (e.g., Mr. Musk's opinions about COVID-19 and Neuralink have defrauded investors), and challenge virtually everything Defendants have said about Tesla's sales, accounting, and business practices. (¶¶ 246-54.) While Plaintiff has no cohesive theory of fraud, all of the allegations share one common feature—they are not actionable. *See* Appendix A.

### 1.    The FAC's "Omissions" Are Not Linked to Alleged Misleading Statements.

"To be actionable under Section 10(b) and Rule 10b-5, an alleged omission must render some affirmative public statement misleading." *In re Rigel Pharm.*, *Inc. Sec. Litig.*, 2009 WL 5125344, at *7 (N.D. Cal. Dec. 21, 2009) (claims dismissed where "Plaintiff fail[ed] to specifically identify what affirmative public . . . statements the alleged omissions rendered misleading"). A misleading statement "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Virtually all of Plaintiff's "omissions"-based claims fail because Plaintiff has not identified any specific misleading statement with particularity. Plaintiff does not even ***attempt*** to identify a specific statement that was rendered false or misleading by the "omissions" identified in **Issues 1, 2, 3, 8, 9, 13, 14, 15, 16, 17, 30, 31, 32, 33, 34, 35, 37, 38, 39, 40**. This includes Plaintiff's allegations that Tesla has been "drawing down its credit lines" at the end of various quarters, "failing to distinguish between cash accessible for use in the [U.S.] and cash restricted for use only within [China]," "working with highly visible television personalities . . . to push a false and misleading narrative about Tesla's future prospects," conducting a "stealth recall of fire-prone solar panel parts," and hiding both "the amount of scrap and/or waste materials at Tesla's factories" and the "theft and storage of raw materials." (**Issues 1, 2, 15, 31, 32, 37**.)  The list goes on, but for each allegation, the pleading defect is the same: Plaintiff points to a slew of SEC filings, but fails to specify each statement alleged to have been misleading.  This alone is "fatal to [his] claims."  *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 903-04 (N.D. Ill. 2001) (dismissing complaint that generally alleged 10-Qs were misleading).

In a similar vein, Plaintiff's repeated references to stray phrases within the 10-Ks and 10-Qs, such as "customer deposits," "cash," and "deliveries" (**Issues 4, 6, 7, 8**), and various accounting line items, such as "Accounts Receivable," "Cost of Goods Sold," "gross margin," and "net income"

(**Issues 10, 11, 12, 18**) do not meet the particularity standards of the PSLRA or Rule 9(b). He again does not identify specific misleading statements or explain why they are misleading. *See, e.g., In re Harmonic Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1090-92 (N.D. Cal. 2001) (dismissing complaint that highlighted terms in various documents but did not "identify specific statements that were false.")

### 2. To the Extent the FAC Identifies Any Statements, It Fails to Plead Falsity.

Even had Plaintiff adequately identified actual statements, his falsity allegations still would fail because they are based on speculation and unreliable sources, and suffer from myriad other defects.

*First*, various "Issues" are not actionable because the allegations of fraud are supported only by Plaintiff's own speculative inferences, such as his observation of "unexplained shift[s] from SG&A to COGS" in certain SEC filings, and his claim that Tesla "deliberately under-book[ed] its warranty reserve for repairs," based on his purported analysis of "approximately twenty lemon lawsuits filed by Tesla customers." (**Issues 12, 19**.) He similarly relies on his lay analysis and inferences for at least **Issues 2, 5, 9, 10, 11, 13, 17, 18, 28, and 30**. Such highly "speculative allegations … are no substitute for factual allegations demonstrating Defendants' actual assumptions were false, and accordingly do not rise to the level of particularity required by the PSLRA." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 853 (N.D. Cal. 2014).

Plaintiff also contends that the Tesla Defendants have misled investors about "Tesla's sales" in various SEC filings by reporting vehicle "deliveries" as opposed to sales and allegedly "overstating" such deliveries. (**Issues 6, 7**.) Again, Plaintiff's offers only his speculative opinion that "the market has misinterpreted" that term and his undisclosed analysis of vehicle registration data. Here too, such threadbare theories cannot support a securities fraud claim. *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 156 (3d Cir. 2004) ("[A]necdotal examples of profitable customers lost or policies renewed at flat or slightly raised rates does not demonstrate that the rate initiative was failing").[14]

*Second*, Plaintiff cites numerous unreliable sources—including unverified tweets, inapposite deposition testimony, unspecified or speculative emails, thinly-sourced news articles, and other

---

[14] In at least one instance, Plaintiff's own exhibits disprove his allegations. Plaintiff contends that Mr. Musk falsely characterized "orders" for Cybertrucks as "sales." The FAC shows the market's understanding that these "orders" were ***not*** "firm sales" and ***were*** fully refundable. (*See, e.g.*, **Issue 25** (citing @MatchasmMatt ("I can just cancel and get my money back")).)

**TESLA DEFS.' MOTION TO DISMISS
CASE NO. 3:20-cv-03426-JSC**

unreliable evidence—as supposed evidentiary support for his fraud claims. (*See, e.g.*, **Issues 1, 4, 6, 10, 22, 23, 24, 25, 26, 27, 28, 31, 32, 33, 34, 35, 36, 37, 38, 39**.)  For example, Plaintiff refers to commentary from another short seller and a "business reporter" to support his claims about Tesla's accounts receivable balance and alleged product safety issues (**Issues 10, 37, 38**), and cites a sworn declaration from his father to refute Mr. Musk's statements about Neuralink and COVID-19 (Ex. P; **Issues 24, 26, 27**). Such conclusory, self-serving "evidence" cannot support falsity. *See Curry v. Yelp Inc.*, 14-CV-03547, 2015 WL 7454137, at *6 (N.D. Cal. Nov. 24, 2015) ("unsubstantiated . . . consumer complaints" not sufficient to show falsity); *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1302-03 (10th Cir. 2018) (blog post authored by "cybersecurity expert" did not show falsity).

   ***Finally***, Plaintiff's scattershot securities fraud claims fail for miscellaneous additional reasons.

   *Statements not made by Defendants (**Issues 14-16, 28-29**)*. Plaintiff seeks to hold Defendants liable for leaked emails related to Tesla battery production and COVID-19, as well as omissions by everyone from "ex-convicts" to "television personalities." But liability only attaches to "the person or entity with ultimate authority over the statement, including . . . how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Because Plaintiff has not credibly alleged that Defendants were responsible for communicating these statements, his claims fail.

   *Forward-looking statements (**Issues 20, 22, 23, 24, 27, ¶251**)*. The PSLRA precludes liability for forward-looking statements if they (1) were accompanied by "meaningful cautionary statements," *or* (2) were not "made with actual knowledge" of their falsity.  15 U.S.C. §§ 78u-5(c)(1)(A)(i), (1)(B); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).  Here, Plaintiff has not alleged that Mr. Musk had "actual knowledge" of falsity as to various forward-looking statements.  The only alleged "evidence" of such knowledge relates to Mr. Musk's purported statement (for which Plaintiff omits all context) that his "best guess . . . for demand of Model 3 worldwide is" was "in a strong economy . . . on the order of 700,000 or 800,000 units a year" but as low as "40% or less" in a recession.  (**Issue 20**.) Plaintiff cites a 2019 tax application purportedly showing that Tesla's "Delivery Plan Model 3" was 250,000 per year, which he claims "directly contradicted" Mr. Musk's "guess."  (*Id.*) But Plaintiff pleads no facts about the tax submission, such as its purpose, underlying assumptions, or Mr. Musk's

1    knowledge of it. He thus has not plausibly alleged that Mr. Musk knowingly misled the market about

2    his off-the-cuff "guess" about future Model 3 demand in different economic conditions.

3         Similarly unavailing is Plaintiff's challenge to Mr. Musk's April 22, 2019 prediction that he

4    "feel[s] very confident predicting that there will be autonomous robotaxis from Tesla next year…"

5    (**Issue 23**.) Mr. Musk plainly said "we won't have regulatory approval everywhere" in 2020 (*id.*), and

6    in portions of the statement Plaintiff omits, noted his statement was forward-looking. (Dwyer Decl.

7    Ex. 15.) Plaintiff's only "evidence" of falsity is an undisclosed email "confirm[ing]" that Tesla "never

8    actually raised the matter of 'robotaxis' with its autonomous driving regulators" in California.  (**Issue**

9    **23**.)  But Mr. Musk never assured regulatory approval in California in 2020, and often said "Regulatory

10   approval is the big unknown."  (*Id.*) Thus, even if Mr. Musk's prediction proves wrong (it is still 2020,

11   so too soon to tell), it was not knowingly false when made.

12        *Opinion statements (Issues 21, 24, 26, ¶254).* Plaintiff's claims regarding Mr. Musk's opinions

13   of various matters similarly fail.  (*See, e.g.*, **Issue 21** ("I *think* the most profound thing is if you buy a

14   Tesla today, I *believe* you are buying an appreciated asset"); **24** ("So, Neuralink, I *think* at first, will

15   solve a lot of brain-related diseases"); **26** ("I *think* this will turn out to be comparable to other forms

16   of influenza").)  To allege an opinion statement is actionable, a plaintiff must show that (1) the speaker

17   did not hold the belief expressed ***and*** (2) the belief is objectively untrue.  *City of Dearborn Heights*

18   *Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017).  Here too,

19   Plaintiff pleads no facts showing that Mr. Musk knew his statements were false, much less that they

20   were objectively so, and only speculates about Mr. Musk's motives—*i.e.*, that his comments were

21   "intended to spark a speculative frenzy for Tesla vehicles" and "quell investor fears." (**Issues 21, 26.**)

22        *Not "in connection with" Tesla securities transactions (Issues 24, 26, 27).* Plaintiff also points

23   to commentary by Musk that bears no relationship to Tesla or its stock price. (*See, e.g.*, **Issue 24**

24   (commentary re Neuralink), 26 (commentary regarding "[a]ctual [COVID-19] virality"), 27 (similar).

25   Plaintiff has failed to allege that these statements were made "in connection with" the purchase or sale

26   of his put options—a necessary element of a 10b-5 claim. *See* 17 CFR § 240.10b–5(b).

27        *No duty to disclose (Issues 2, 3 5).* Plaintiff also contends that Defendants fraudulently

28   "refused to discuss the cash balance on any day but the final day of the quarter." (**Issue No. 5**.)

**TESLA DEFS.' MOTION TO DISMISS**
**CASE NO. 3:20-CV-03426-JSC**

Plaintiff's claim fails because he alleges no facts "sufficient to prove that [defendant] had a duty to disclose" financial information outside of its normal quarterly reporting cycle (it does not).  *In re Herbalife Sec. Litig.*, CV 95-400, 1996 U.S. Dist. LEXIS 11484, at *11 (C.D. Cal. Jan. 24, 1996). Plaintiff's allegations in at least **Issues 2 and 3** are similarly deficient.

### D.   The FAC Fails to Raise a Strong Inference of Scienter.

To adequately allege scienter under the PSLRA's heightened pleading standards, Plaintiff "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." [15] *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999); *see also* 15 U.S.C. § 78u–4(b)(2). Although a court should view scienter allegations "holistically, even such a comprehensive perspective . . . cannot transform a series of inadequate allegations into a viable inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009). Whether viewed individually or holistically, the FAC falls far short of these exacting standards.

**No credible evidence.** To the extent Plaintiff cites purported "evidence" of scienter, he relies on his own speculative inferences based on news articles (*see, e.g.*, **Issues 1, 10, 34, 37, 38**), publicly filed lawsuits and court documents (*see, e.g.*, **Issues 3, 8, 12, 14, 17, 31, 32, 39**), social media posts (*see, e.g.*, **Issue 4**), publicly available data (*see, e.g.*, **Issue 7**), and Tesla's SEC filings (*see, e.g.*, **Issues 6, 30**).  None of this purported evidence "create[s] [] an inference of scienter" at all, much less one "more cogent or compelling than an alternative innocent inference." *Zucco Partners,* 552 F.3d at 999–1000. For instance, Plaintiff relies on a handful of complaints against Tesla from largely unidentified Twitter users, with no supporting details or corroborating evidence. (**Issue 4**.) But "unspecific and speculative" accounts ***even from confidential witnesses*** "do not contribute to an inference of scienter." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1061 (9th Cir. 2014). And even if any of his cited evidence were credible (it is not) Plaintiff does nothing to link it to Mr. Musk's scienter, again falling short of PLSRA standards.

---

[15] Tesla is a corporation, so its scienter can only be established through its employees. *3226701 Canada, Inc. v. Qualcomm, Inc.*, No. 15CV2678, 2017 WL 4759021, at *22 (S.D. Cal. Oct. 20, 2017). And because the FAC only attempts to allege scienter as to Mr. Musk, Plaintiff cannot state a claim against Tesla unless he has raised a strong inference that Mr. Musk possessed the requisite scienter. *Id.* As to the two statements ascribed to Ms. Laurie Shelby and Mr. Zach Kirkhorn, Plaintiff does not allege that Ms. Shelby acted with scienter, **Issue 29**, and his allegations against Mr. Kirkhorn are deficient. *See infra* at 24.

**No knowledge of contradictory information.** Plaintiff also does not meaningfully allege that Mr. Musk knew *any* statement was false, much less with "particular allegations which strongly imply Defendants' contemporaneous knowledge" that any statement was false or misleading when made. *In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1184 (N.D. Cal. 2000). Plaintiff does not, for example, allege the existence of reports, warnings, or witnesses showing that Mr. Musk knew information that contradicted Tesla's public statements. Plaintiff offers his bare assertion that, because Mr. Musk and Mr. Kirkhorn comprise Tesla's "management," both had access to Tesla's "financials and sales records" and would have known the about the allegedly fraudulent statements. (¶ 256.) As the Ninth Circuit "has noted on more than one occasion," however, "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter." *Metzler Inv. GmbHv. Corinthian Colls.,Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008); *see also Read-Rite*, 115 F. Supp. 2d at 1184 (rejecting "an inference of scienter . . . from generic allegations concerning what [defendants] *would* know by virtue of their positions").

**No Motive**. Plaintiff relies extensively on the sort of generalized "motive" and "opportunity" allegations that the Ninth Circuit has repeatedly rejected, including those related to Mr. Musk's "compensation package," and "Tesla's constant need for outside investor cash." *E.g.*, ¶¶ 257-58; *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("motive to boost the company's profitability and stock prices . . . are not 'specific' or 'particularized'"); *In re Rigel Pharm.*, 697 F.3d 869, 884 (9th Cir. 2012) (allegations of "higher salaries, bonuses, and stock options" inadequate).

Moreover, most of Plaintiff's allegations are far weaker than those rejected in *Webb* and *Rigel*, including that Mr. Musk was "motivated" by a purported belief that "lying is necessary for survival," "lying is 'cute,'" and "rules do not apply to him"; "animosity toward short-sellers"; and "his possible connections to Mexican drug cartels." (¶¶ 258-260.) These allegations are devoid of factual support and are insufficient as a matter of law to create a strong inference of scienter. Plaintiff's securities claims thus fail for this additional reason.

## VII. PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION.

Plaintiff's market manipulation claim must be dismissed because he has not sufficiently alleged reliance, loss causation, or scienter, as set forth above. *See ATSI Commc'ns, Inc. v. Shaar*

**TESLA DEFS.' MOTION TO DISMISS
CASE NO. 3:20-CV-03426-JSC**

*Fund, Ltd.*, 493 F.3d 87, 101-102 (2d Cir. 2007). In addition, Plaintiff fails to specifically allege any manipulative conduct, "such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010). Nor can he rely on the alleged "Issues" identified in connection with his Rule 10b-5 claim, because a market manipulation claim "cannot be based solely upon misrepresentations or omissions." *ATSI Comm'cns*, 493 F.3d at 101.

## VIII.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A).

A plaintiff may only state a claim for "control person liability," *see* 15 U.S.C. § 78t(a), if he shows "a primary violation of federal securities laws," *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Because Plaintiff has failed to plead a primary securities law violation, his Section 20(a) claim necessarily fails. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 886.

## IX.   PLAINTIFF'S INJUNCTIVE RELIEF "CLAIM" SHOULD BE DISMISSED.

Plaintiff's standalone claim for injunctive relief must be dismissed because "[i]njunctive relief is a remedy and not, in itself, a cause of action." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1167 (N.D. Cal. 2013) (dismissing injunctive relief cause of action with prejudice); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 709 (N.D. Cal. 2009) ("injunctive relief [is] not [an] independent cause[] of action").

## X.   CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.


Dated: July 31, 2020                    COOLEY LLP


                                        By: */s/ John C. Dwyer*
                                           John C. Dwyer

                                        Attorneys for Defendants
                                        Tesla, Inc.
                                        Elon Musk

230343021