1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **AARON GREENSPAN**, | Case No. 3:20-cv-03426-JD |
| Plaintiff, | |
| v. | **DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CIV. PROC. CODE §425.16, AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| **OMAR QAZI**, et al., | |
| Defendants. | |

Time:      10:00 a.m.
Date:      October 1, 2020
Before:   The Hon. James Donato
Ctrm.:    11, 19th Floor

*(sidebar, vertical text)* KRONENBERGER ROSENFELD | 150 Post Street, Suite 520 San Francisco, CA 94108

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on October 1, 2020, at 10:00 a.m., or as soon

3    thereafter as the matter may be heard, in the above-titled Court, in Courtroom 11, 19th

4    Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Omar

5    Qazi and Smick Enterprises, Inc. ("Smick Defendants"), by and through counsel, will and

6    hereby do make the following motions:

7    • Special Motion to Strike under Code of Civil Procedure ("CCP") §425.16

8    ("anti-SLAPP"): The Court should strike the following claims as to the Smick Defendants:

9    a) Count I for Libel Per Se, b) Count III for Intentional Infliction of Emotional Distress

10   ("IIED"), and c) Count VI for Violation of the California Unfair Competition Law ("UCL").

11   The Court should strike these claims under the anti-SLAPP statute because the conduct

12   at issue arises from protected activity, and Plaintiff cannot show a probability of prevailing

13   on the claims as pled in his First Amended Complaint ("FAC"), including because the

14   statements at issue constitute non-actionable rhetoric and opinion. If they prevail on this

15   motion, the Smick Defendants will seek their attorney's fees and costs under CCP

16   §425.16(c)(1).

17   • Motion to Dismiss Pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6): The Court

18   should dismiss all claims against the Smick Defendants pursuant to Rule 12(b)(6) for

19   failure to state a claim upon which relief can be granted. If the Court does not strike

20   Counts I, III, and VI under anti-SLAPP, the Court should dismiss these claims because:

21   a) Plaintiff's libel claim (Count I) is based on non-actionable rhetoric and opinion, b)

22   Plaintiff's IIED claim (Count III) is duplicative of Plaintiff's libel claim, and Plaintiff has not

23   identified outrageous conduct or severe emotional harm, and c) Plaintiff's UCL claim is

24   not based on a "business practice," and Plaintiff has not alleged a loss of money or

25   property or that the Smick Defendants obtained ill-gotten gains from him. The Court

26   should also dismiss Count IV for Copyright Infringement, Count V for Removal of

27   Copyright Management Information, Count VIII for Violation of Section 10(b) of the

28   Exchange Act and Rule 10b-5, and Count X for Injunctive Relief because: a) Plaintiff does

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

not have copyright registrations for the alleged copyrights other than for the text of one book, and the publication of snippets of the text alongside commentary constitutes fair use, and b) there are no allegations showing that the Smick Defendants made material misrepresentations causing Plaintiff losses under federal securities laws. If they prevail on this motion, the Smick Defendants will seek their attorney's fees and costs for the infringement claim under 17 U.S.C. §505.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities and declaration, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

Respectfully Submitted,

DATED: August 18, 2020          **KRONENBERGER ROSENFELD, LLP**

By: _____ s /Karl S. Kronenberger _____
          Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.

1

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF THE ISSUES ................................................................................ 2

STATEMENT OF FACTS .......................................................................................... 2

   A.  The Parties ...................................................................................................... 3

   B.  The Parody Twitter Accounts, Websites, and Related Conduct ..................... 4

   C.  Plaintiff's Ongoing Public Disputes with the Smick Defendants.................... 6

   D.  Procedural History and Plaintiff's Claims..................................................... 7

ARGUMENT .............................................................................................................. 7

   A.  Standard of Law .............................................................................................. 7

   B.  The state law claims should be stricken under anti-SLAPP............................ 8

      1. The conduct at issue arises from protected activity .................................. 9

      2. Plaintiff cannot show a probability of prevailing on his state law claims.......... 10

         a. Plaintiff has not stated a claim for libel per se. ................................ 10

            i. The statements are non-actionable opinion and rhetoric........................ 11

            ii. Certain claims are barred by the statute of limitations ........................... 15

         b. Plaintiff has not stated a claim for IIED....................................... 15

            i. Plaintiff's IIED claim is duplicative of his libel claim ......................... 15

            ii. Plaintiff has not alleged "outrageous" conduct...................................... 16

            iii. Plaintiff has not alleged severe emotional distress ............................... 16

         c. Plaintiff does not allege a claim for Count VI under the UCL.................... 17

   C.   Plaintiff has not stated any sufficient claim against the Smick Defendants........ 19

      1. Plaintiff's Count I for libel per se fails to state a valid claim............................ 19

      2. Plaintiff's Count III for IIED fails to state a valid claim. .................................. 19

      3. Plaintiff's Count VI for copyright infringement fails to state a claim................ 19

         a. Plaintiff's claim fails without valid copyright registrations........................... 19

         b. Commentary on limited book text constitutes fair use as a matter of law .. 20

      4. Plaintiff's Count V for copyright information fails to state a claim.................... 21

      5. Plaintiff's Count VI under the UCL fails to state a claim.................................. 22

      6. Plaintiff's Count VIII for securities violations fails to state a claim.................. 22

      7. Plaintiff's Count X for injunctive relief fails to state a claim ............................ 23

      8. Plaintiff's request for attorney's fees should be stricken ................................. 23

CONCLUSION .......................................................................................................... 23

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3
4
*Archer v. United Rentals, Inc.*,
   195 Cal. App. 4th 807 (2011)...................................................................... 17
*Balzaga v. Fox News Network, LLC*,
5
   173 Cal. App. 4th 1325 (2009)..................................................................... 12
*Becerra v. Dr Pepper/Seven Up, Inc.*,
6
   945 F.3d 1225 (9th Cir. 2019)........................................................................ 8
7
*Century Sur. Co. v. Prince*,
   782 F. App'x 553 (9th Cir. 2019).................................................................... 7
8
*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991) ................................................................................ 17
9
*Cochran v. Cochran*,
10
   65 Cal. App. 4th 488 (1998) ....................................................................... 16
*Cont'l Airlines, Inc. v. Intra Brokers, Inc.*,
11
   24 F.3d 1099 (9th Cir. 1994)....................................................................... 23
12
*Couch v. San Juan Unified Sch. Dist.*,
   33 Cal. App. 4th 1491 (1995) ..................................................................... 16
13
*Cusano v. Klein*,
   264 F.3d 936 (9th Cir. 2001)....................................................................... 15
14
*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009)....................................................................... 22
15
*Eade  v.  InvestorsHub.com,  Inc.*,
16
   No.  LACV11-1315, 2011  WL 13323344 (C.D. Cal. July 12, 2011) ............ 11
*Falkner v. Gen. Motors LLC*,
17
   393 F. Supp. 3d 927 (C.D. Cal. 2018) ........................................................ 21
*Farrar v. Hobby*,
18
   506 U.S. 103 (1992) ................................................................................... 23
*Fauley v. Wash. Mut. Bank FA*,
19
   No. 3:13-CV-00581-AC, 2014 WL 1217852 (D. Or. Mar. 21, 2014).......... 23
*Ferlauto v. Hamsher*,
20
   74 Cal. App. 4th 1394 (1999) ..................................................................... 12
21
*Fisher v. Dees*,
   794 F.2d 432 (9th Cir. 1986)....................................................................... 20
22
*Fitbug Ltd. v. Fitbig, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) ........................................................ 18
23
*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019) ................................................................................. 19
24
*Franklin v. Dynamic Details, Inc.*,
   116 Cal. App. 4th 375 (2004)...................................................................... 13
25
*Free Speech Sys., LLC v. Menzel*,
26
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...................................................... 20
*Gilbert v. Sykes*,
27
   147 Cal. App. 4th 13 (2007)......................................................................... 9
*Grenier v. Taylor*,
28
   234 Cal. App. 4th 471 (2015) ................................................................. 9, 10

*Groupion, LLC v. Groupon, Inc.*,
  859 F. Supp. 2d 1067 (N.D. Cal. 2012) .................................................................. 18

*Heimrich v. Dep't of the Army*,
  947 F.3d 574 (9th Cir. 2020) ...................................................................................... 8

*Henderson v. Office & Prof'l Employees Int'l Union*,
  143 F. App'x 741 (9th Cir. 2005) ............................................................................. 16

*Hernandez v. Specialized Loan Servicing, LLC*,
  No. CV 14-9404-GW JEMX, 2015 WL 350223 (C.D. Cal. Jan. 22, 2015) ................ 18

*Hughes v. Pair*,
  46 Cal. 4th 1035 (2009) ..................................................................................... 15, 16

*Iglesia Ni Cristo v. Cayabyab*,
  No. 18-CV-00561-BLF, 2018 WL 4674603 (N.D. Cal. Sept. 26, 2018) ...................... 9

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..................................................................... 17

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..................................................................................... 17, 18

*Krinsky v. Doe 6*,
  159 Cal. App. 4th 1154 (2008) ................................................................... 11, 13, 14

*Leidholdt v. L.F.P. Inc*,
  860 F.2d 890 (9th Cir. 1988) .................................................................................... 14

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
  780 F. Supp. 1283 (N.D. Cal. 1991) ........................................................................ 20

*Lieberman v. Fieger*,
  338 F.3d 1076 (9th Cir. 2003) ........................................................................... 11, 15

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ...................................................................................................... 11

*Morningstar, Inc. v. Superior Court*,
  23 Cal. App. 4th 676 (1994) ..................................................................................... 12

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ............................................................... 12, 14

*Obsidian Fin. Grp., LLC v. Cox*,
  740 F.3d 1284 (9th Cir. 2014) ..................................................................... 11, 12, 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ............................................................................ 7, 8, 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................................................... 8

*Powers v. Caroline's Treasures Inc.*,
  382 F. Supp. 3d 898 (D. Ariz. 2019) ........................................................................ 21

*Price v. Operating Engineers Local Union No. 3*,
  195 Cal. App. 4th 962 (2011) ................................................................................... 10

*Ramachandran v. City of Los Altos*,
  359 F. Supp. 3d 801 (N.D. Cal. 2019) ....................................................................... 7

*Rockridge Tr. V. Wells Fargo, N.A.*,
  985 F. Supp. 2d 1110 (N.D. Cal. 2013) .................................................................... 23

*RoyaltyStat, LCC v. IntangibleSpring Corp.*,
  No. CV PX 15-3940, 2018 WL 348151 (D. Md. Jan. 10, 2018) ............................... 20

*Rudwall v. BlackRock, Inc.*,
  289 F. App'x 240 (9th Cir. 2008) ............................................................................. 16

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ................................................................... 7
*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   56 F. Supp. 3d 1121 (C.D. Cal. 2014) ...................................................... 8
*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015) .................................................. 22
*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798  (2002) ............................................................. 9, 12
*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*,
   344 F. Supp. 3d 1075 (D. Ariz. 2018) .................................................. 21
*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*,
   804 F. App'x 668 (9th Cir. 2020) .......................................................... 21
*Sonoma Media Investments, LLC v. Superior Court*,
   34 Cal. App. 5th 24 (2019) .................................................................... 9
*That v. Alders Maint. Assn.*,
   206 Cal. App. 4th 1419 (2012) ............................................................. 17
*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
   953 F.3d 638 (9th Cir. 2020) ................................................................ 20
*Twitter, Inc. v. Sessions*,
   263 F. Supp. 3d 803 (N.D. Cal. 2017) .................................................. 18
*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
   814 F. Supp. 2d 1033 (S.D. Cal. 2011) ................................................... 8
*Wong v. Jing*,
   189 Cal. App. 4th 1354 (2010) ......................................................... 9, 16
*World Wide Rush, LLC v. City of Los Angeles*,
   606 F.3d 676 (9th Cir. 2010) ................................................................ 19

**Statutes**

15 U.S.C. §78j(b) ........................................................................................ 22
15 U.S.C. §78u-4(b) ..................................................................................... 8
17 U.S.C. §107 ............................................................................................ 20
17 U.S.C. §411(a) ....................................................................................... 19
17 U.S.C. §501 ............................................................................................ 19
17 U.S.C. §505 .............................................................................................. 2
17 U.S.C. §1202(b) ............................................................................... 21, 22
42 U.S.C. §1988 .......................................................................................... 23
Bus. & Prof. Code §17200 ................................................................... *passim*
Code Civ. P. §340(c) .................................................................................. 15
Code Civ. P. §425.16 ........................................................................... *passim*

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................... 8
Fed. R. Civ. P. 12(b)(6) ........................................................................ *passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3       Defendants Omar Qazi and Smick Enterprises, Inc. ("Smick Defendants") request

4   that the Court strike portions of and dismiss the entirety of the First Amended Complaint

5   ("FAC") of Plaintiff Aaron Greenspan ("Plaintiff"), filed on July 2, 2020 [D.E. 20], without

6   leave to amend.

7       The parties, who have opposing viewpoints about Tesla stock, have a history of

8   engaging in public debate and exchanging insults on Twitter and other websites. Plaintiff,

9   who has attracted both praise and enemies online, alleges that the Smick Defendants'

10  Twitter posts (i.e., "Tweets") and other online content defamed and harassed him.

11  However, Plaintiff only reads the statements literally and overlooks the fact that these

12  internet postings must be read in their broad context. Parody, hyperbole, and

13  argumentative Tweets and blog entries claiming that Plaintiff is a "rule breaker," "fake,"

14  "clown," and "criminal" who engaged in "tax fraud" are classic examples of non-actionable

15  rhetoric and hyperbole. While such language may be distasteful to some, no reasonable

16  reader would understand these statements as assertions of fact. As such, Plaintiff's

17  claims based on these statements fail.

18      Thus, the Smick Defendants request that the Court strike Plaintiff's state law claims

19  against the Smick Defendants (libel, IIED, and violation of the UCL) under California's

20  anti-SLAPP statute, CCP §425.16, as the conduct at issue arises from protected activity,

21  and Plaintiff cannot show a probability of prevailing on the claims based on the FAC,

22  including because the posts at issue constitute non-actionable rhetoric and opinion. The

23  Smick Defendants further request that the Court dismiss all remaining claims against the

24  Smick Defendants without leave to amend pursuant to Rule 12(b)(6) for failure to state a

25  claim upon which relief can be granted. Plaintiff's claims fail as a matter of law for the

26  following reasons:

27  •   Libel: Plaintiff's libel claim fails because the statements at issue are non-actionable

28      rhetoric and opinion;

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   • IIED: Plaintiff's IIED claim fails because the claim is almost entirely duplicative of

2     his libel claim, the remaining conduct is not "outrageous" as a matter of law, and

3     Plaintiff has not alleged severe emotional distress arising from that conduct;

4   • UCL: Plaintiff's UCL claim fails because Plaintiff has not alleged that the Smick

5     Defendants engaged in a "business practice," has not alleged that he lost any

6     money or property as a result of that practice, and has not alleged that the Smick

7     Defendants obtained ill-gotten gains from Plaintiff;

8   • Copyright: Plaintiff's copyright claims fail because Plaintiff does not have copyright

9     registrations for the alleged copyrights other than for the text of one book, and the

10    publication of a few snippets from that book alongside commentary constitutes fair

11    use;

12  • Exchange Act §10(b) and Rule 10b-5: Plaintiff's market manipulation claim fails

13    because there are no allegations that the Smick Defendants made material

14    misrepresentations causing Plaintiff loss under federal securities laws or that

15    Plaintiff suffered any injury as a result.

16  Because Plaintiff cannot remedy these deficiencies, the FAC's state law claims

17  should be stricken, and the remainder of the FAC dismissed, without leave to amend. The

18  Smick Defendants will be entitled to their fees and costs for the anti-SLAPP motion under

19  CCP §425.16(c)(1) and for the infringement claim under 17 U.S.C. §505.

20  **STATEMENT OF THE ISSUES**

21  Whether: (1) Plaintiff's state law claims against the Smick Defendants should be

22  stricken under California's anti-SLAPP statute, CCP §425.16; and (2) whether all of

23  Plaintiff's claims against the Smick Defendants, which are not stricken under anti-SLAPP,

24  should be dismissed under Rule 12(b)(6).

25  **STATEMENT OF FACTS**

26  While the Smick Defendants dispute Plaintiff's factual allegations, including claims

27  that Mr. Qazi posted certain content, Plaintiff's allegations are outlined below.

28  //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**A.     The Parties**

Defendant Elon Musk is the CEO of Defendant Tesla, Inc. (collectively, "Tesla Defendants"). (FAC ¶2.) Mr. Qazi is a Tesla shareholder and customer. Mr. Qazi operates Smick Enterprises, Inc. (FAC ¶6.)

Plaintiff is a data journalist who runs the website www.plainsite.org, which hosts over 16 million court dockets. (FAC ¶21.) Plaintiff has been the subject of numerous internet posts and online debates, many of which include fiery insults. (FAC ¶¶127, 150 & Exs. B & I, *passim*.) For example, Plaintiff alleges that he was publicly referred to by third parties as a "psychopathic incel" and a "likely mass shooter." (FAC ¶¶127, 150 & Exs. B & I, *passim*.)

Plaintiff has sought out and been covered by major media outlets over the years (in addition to soliciting media about the instant lawsuit). (FAC Ex. E (copying "russ.mitchell@latimes.com" on Notice of Intent to Sue); Declaration of Karl S. Kronenberger in Support of the Smick Defendants' Anti-SLAPP Motion and Motion to Dismiss ("Kronenberger Decl.") ¶¶2–33 & Exs. A–FF.) Launching his notoriety, Plaintiff was widely publicized in around 2007, including by The New York Times and other major news outlets, for his claim that he came up with the idea for Facebook. (Kronenberger Decl. ¶¶22, 31 & Exs. U & DD.) As a further example, in 2019, Business Insider and BBC News covered Plaintiff's claim that more than half of Facebook's users are fake (Kronenberger Decl. ¶¶24, 25 & Exs. W & X.) In 2018, The Sun published an article titled, "Social Killer—Facebook has caused 'countless deaths', says original founder Aaron Greenspan." (Kronenberger Decl. ¶28 Ex. AA.) Plaintiff was later featured by various reporters about purported claims that he was unfairly omitted from the film *The Social Network* (about the history of Facebook) and was chronicled in 2013 for another suit against Facebook. (Kronenberger Decl. ¶17 & Ex. P.) In 2010, TechCrunch published an article titled "From 'Face Book' to FaceCash: How Aaron Greenspan Is Tackling Mobile Payments." (Kronenberger Decl. ¶33 & Ex. FF.)

Plaintiff has also used his own websites, www.aarongreenspan.com and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

www.plainsite.org, to report on claimed issues within the tech industry. (Kronenberger Decl. ¶¶2–9 & Exs. A–H.) Plaintiff used the www.plainsite.org website to publicize a "Reality Check" article about Tesla, Inc. in 2020 as well as a letter to a California State Senator in 2019. (Kronenberger Decl. ¶¶3–4 & Exs. B & C.) Likewise, Plaintiff has used his PlainSite Twitter account to disseminate numerous posts about Elon Musk and Tesla, including by "tagging" Mr. Musk in a number of posts, which are viewable by Mr. Musk's over 35 million followers; and both pre- and post-lawsuit articles have reported on Plaintiff's dispute with Mr. Musk, Tesla, and Mr. Qazi. (Kronenberger Decl. ¶¶10–12 & Exs. I–K.)

Finally, this lawsuit itself has generated substantial coverage in major media outlets. (Kronenberger Decl. ¶¶18–21 & Exs. Q–T.)

## B.    The Parody Twitter Accounts, Websites, and Related Conduct

Plaintiff attributes a number of allegedly defamatory Twitter posts to Mr. Qazi. (FAC ¶¶8–9.) The primary Twitter account associated with these Tweets is a pseudonymous "parody" account—the @Tesla_Truth Twitter account—which was operated under the name and photograph of the deceased Apple founder "Steve Jobs Ghost." (FAC ¶¶27, 142, 158, Ex. B.) The @Tesla_Truth Twitter account is followed by at least 10,000-20,000 Twitter users. (FAC ¶59.) As Exhibit B to the FAC shows, the @Tesla_Truth account is used to engage in back-and-forth disputes with fiery language and insults about a variety of topics, including Plaintiff. (FAC Ex. B.) Plaintiff claims that Mr. Qazi, through the @Tesla_Truth parody Twitter account:

- Posted documents from Plaintiff's restraining order proceedings with third party Diego MasMarques, Jr. (FAC ¶¶27–33, 37, 39, 43–44, 64–65, 112, 121 & Exs. D & I);

- Hurled insults, such as "Rule breaker / law breaker," "he killed me for saying he didn't invent facebook," "learning disability due to aspergers," "moron" and "After he dies I'll keep telling people he sucked" (FAC ¶¶65, 72, 96, 123, 148 & Ex. B at p.4–25);

- Made unfounded "fraud" claims, such as "complete fraud," "fraudulently registered as a non-profit charity," "fraudulent 'Think Foundation' . . . and they can deduct

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

donations from their income tax!!!," ""How will Aaron Greenspan, a criminal guilty of felony tax fraud with no lawyer, do in court against two guys with a lot more money than him?," "clown who thinks he invented facebook and comited felony tax fraud" and "previously stole DoD documents" (FAC ¶148 & Ex. B at 4–25);

- Posted in response to a third-party comment about Plaintiff: "The only thing that has been revealed here is that Aaron Greenspan has child pornography at his house" (FAC ¶148, Ex. B p. 5); and

- Displayed Plaintiff's Notice of Intent to Sue with a screenshot of Mr. Musk's reply email stating "Does the psych ward know you have a cell phone?" (FAC ¶¶68–71).

Plaintiff also claims Mr. Qazi created the @PlainShite Twitter account, which mocked Plaintiff's PlainSite website, containing statements such as, "It's plain to see – we are full of shit," "It took a lot of hard work to break every single one of these rules with our fraudulent charity," and "we are running a fraudulent non-profit." (FAC ¶¶52, 62, 148 & Ex. B p. 26.) Plaintiff likewise claims Mr. Qazi created the websites www.plainshit.com, www.plainshit.org, and www.plainsiite.org, which displayed Plaintiff's copyrighted photographs and made claims such as "This fraudulent charity is FULL OF SHIT . . . Have you been harassed, intimidated, threatened or targeted for extortion by Aaron Greenspan . . ." (FAC ¶¶81, 101–102, 107–108.)

Plaintiff further alleges Mr. Qazi posted about him from the @WholeMarsBlog Twitter account and the wholemars.org website, stating "It's time for the board of Plainsite to face justice for their crimes," "Plainsite's tax fraud, harassment of Tesla customers, and short and distort fraud," "Maybe one day he'll be charged too . . . he is a criminal," "Why does Aaron Greenspan threaten his critics . . . while suppressing positive voices through intimidation," "Aaron Greenspan abuses his charity . . . he must pay back the taxes he illegally avoided," and "Aaron Greenspan is a cyberstalker who has been threatening and harassing Omar and others . . ." These statements attracted comments and fiery insults from other parody accounts for "Elon," "Musk," and "Tesla." (FAC ¶148 & Ex. B at p.30-–39.)

Plaintiff likewise alleges Mr. Qazi posted about him on the website vagfoundation.org, stating "Have you been a victim of harassment, intimidation, extortion, sexual assault, identity theft, or cyberstalking by Aaron Greenspan? . . . The victims of Aaron Greenspan Foundation is gathering evidence of Aaron Greenspan's crimes . . ." (FAC Ex. H, p. 2–3.)

Plaintiff also claims Mr. Qazi published a 17,600-word "screed"—which reads like a personal blog and starts with "Written by Steve Jobs . . . Steve Jobs is Dead." (FAC ¶¶135–136, 148 & Ex. I at p. 2, 39.) The "screed" contains claims such as "Greenspan became more and more enraged, and also became worried about my allegations of his tax fraud and misconduct." (FAC ¶¶135–136, 148 & Ex. I p. 2, 39.) In this "screed," third parties added judgmental asides, such as that Plaintiff had "tertiary syphilis," "kidney stones," and "anal pain chlamydia." (FAC Ex. I, p. 25–26.)

Finally, Plaintiff alleges Mr. Qazi or others harassed him anonymously by making a phone call, communicating with his disabled brother, using the PlainSite Contact Us form with the message "M0ron," subscribing Plaintiff to a "Psych Central Newsletter," creating a profile for Plaintiff on the website Pornhub, and adding false content about Plaintiff on the Wikipedia website. (FAC ¶¶36, 45–47, 113–114, 119.)

## C.   Plaintiff's Ongoing Public Disputes with the Smick Defendants

The FAC's exhibits provide a glimpse into the heated public arguments between the parties. For example, the @PlainSite Twitter account posted "Mr. Qazi sent text messages" with a screenshot of messages from an unidentified author, "presenting Omar Qazi (@OmarQazi), the 'failure' pretending to be Steve Jobs (@tesla_truth)," "While he's not making false statements on Twitter pretending to be Steve Jobs, Omar Qazi is raising capital . . .," "Omar Qazi, who also goes by 'Steve Jobs' on Twitter . . . posted this video which he then deleted . . .," and "Does Elon Musk have thyroid cancer." (FAC ¶40 & Ex. B. at p. 3, Ex. I at p. 22, 36, 38.) Further, the @AaronGreenspan Twitter account re-posted an @Tesla_Truth post stating "Now I'm going to drag his name through the mud until the day he does [sic]' Says the guy potentially looking at a libel claim . . ." (FAC Ex.

6

1  B at p. 17.) Plaintiff also sent a direct message to Mr. Qazi stating "I have your IP address
2  now . . ." and Plaintiff cc'd and bcc'd the press on multiple emails, including bbc'ing
3  "russ.mitchell@latimes.com" with his Notice of Intent to Sue to Mr. Musk and Mr. Qazi.
4  (FAC Ex. E at p. 2, Ex. I at p. 34, Ex. L at p. 2.)

5  **D.    Procedural History and Plaintiff's Claims**

6      Plaintiff filed an initial Complaint [D.E. 1] on May 20, 2020. Plaintiff filed a First
7  Amended Complaint ("FAC") [D.E. 20] on July 2, 2020. The FAC, which is 82 pages plus
8  19 exhibits totaling more than 1,500 pages, alleges defamation and securities claims
9  against all Defendants as well as copyright, IIED, and UCL claims against the Smick
10 Defendants.

**ARGUMENT**

11 **A.    Standard of Law**

12     The Smick Defendants move to strike Plaintiff's state law claims under California's
13 anti-SLAPP statute, CCP §425.16. The anti-SLAPP statute provides for striking state law
14 claims where: (1) the defendant makes a prima facie showing that the claims arise from
15 protected activity, and (2) if such a showing is made, the plaintiff fails to demonstrate
16 legally sufficient claims to sustain a favorable judgment. *See Sarver v. Chartier*, 813 F.3d
17 891, 901 (9th Cir. 2016). Federal Courts review anti-SLAPP motions under Rule 12(b)(6)
18 if the defendant only challenges the legal sufficiency of the plaintiff's claim (and otherwise
19 as a summary judgment motion under Rule 56). *See Planned Parenthood Fed'n of Am.,
20 Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018); *Ramachandran v. City
21 of Los Altos*, 359 F. Supp. 3d 801, 811 (N.D. Cal. 2019) (noting a 12(b)(6) motion to strike
22 considers whether a claim is properly stated); *Century Sur. Co. v. Prince*, 782 F. App'x
23 553, 557 (9th Cir. 2019) (confirming a plaintiff is not entitled to discovery where a special
24 motion to strike does not challenge the factual sufficiency of the claims). With their anti-
25 SLAPP motion, the Smick Defendants only challenge the FAC under the Rule 12(b)(6)

1   standard.[1]

2       The Smick Defendants move to dismiss any claims not stricken under anti-SLAPP

3   pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss for failure to state

4   a claim, a complaint must contain sufficient factual matter, accepted as true, to state a

5   claim for relief that is plausible on its face. *See Heimrich v. Dep't of the Army*, 947 F.3d

6   574, 577 (9th Cir. 2020). A plaintiff must allege more than labels and conclusions and do

7   more than state a formulaic recitation of the elements of a claim. *Weiland Sliding Doors*

8   *& Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1040 (S.D. Cal.

9   2011). Moreover, claims sounding in fraud are subject to the heightened pleading

10  standard of Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to state with particularity

11  the circumstances constituting the fraud or mistake. *See Becerra v. Dr Pepper/Seven Up,*

12  *Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). A securities fraud claim, including one for

13  market manipulation, must satisfy both the pleading requirements of the Private

14  Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(b) ("PSLRA"), and the

15  heightened pleading standard of Rule 9(b). *See Police Ret. Sys. of St. Louis v. Intuitive*

16  *Surgical, Inc.*, 759 F.3d 1051, 1057 (9th Cir. 2014); *ScripsAmerica, Inc. v. Ironridge Glob.*

17  *LLC*, 56 F. Supp. 3d 1121, 1160 (C.D. Cal. 2014).

18  **B.      The state law claims should be stricken under anti-SLAPP.**

19      The Court should grant the Smick Defendants' anti-SLAPP motion because

20  Plaintiff's state law claims arise from protected activity, e.g., public posts about Plaintiff

21

22  _____

    [1] Because the Smick Defendants only rely on external evidence regarding the first prong
23  of anti-SLAPP, this motion is not transformed into a summary judgment motion. *See*
    *Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 833. (finding that where an anti-
24  SLAPP motion is based only on legal deficiencies in the plaintiff's claim, the plaintiff is not
    required to present prima facie evidence supporting its claims, but if it is a factual
25  challenge, then the motion must be treated as though it were a motion for summary
    judgment and discovery must be permitted).
26
        If the case proceeds, the Smick Defendants anticipate contesting the attribution of
27  a significant number of the alleged defamatory statements to the Smick Defendants, filing
    a motion for summary judgment, and asserting counterclaims relating to Plaintiff's
28  misconduct.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   on public fora, and Plaintiff cannot show a probability of prevailing on his claims.

2   **1.    The conduct at issue arises from protected activity.**

3   Pursuant to CCP §425.16(e)(3), a statement is protected if it is made in a public

4   forum in connection with an issue of public interest.

5   <u>Public Forum</u>: The statements at issue were made in a public forum (Twitter and

6   public websites). Courts have routinely held that websites accessible to the public qualify

7   as public fora under anti-SLAPP. *See, e.g., Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-

8   00561-BLF, 2018 WL 4674603, at *3 (N.D. Cal. Sept. 26, 2018) (finding defendants

9   satisfied the first step where the state law claims were based at least in part on posts on

10  defendants' websites and on Twitter and other social media websites); *Wong v. Jing*, 189

11  Cal. App. 4th 1354, 1367 (2010). Plaintiff concedes that the statements at issue were

12  published on Twitter and other publicly-available websites. (FAC ¶¶142–144, 149.)

13  <u>Issue of Public Interest</u>: California's anti-SLAPP law does not define "an issue of

14  public interest." *See Grenier v. Taylor*, 234 Cal. App. 4th 471, 481–82 (2015). However,

15  the public interest requirement must be construed broadly so as to encourage

16  participation by all segments of our society in vigorous public debate related to issues of

17  public interest. *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007). The Legislature

18  inserted the "broad construction" provision out of concern that judicial decisions were

19  construing that element of the statute too narrowly. *See id.*

20  California cases establish that a public issue is implicated if the subject of the

21  statement or activity underlying the claim (1) is a person or entity in the public eye; (2)

22  could affect large numbers of people beyond the direct participants; or (3) involves a topic

23  of widespread, public interest. *See Sonoma Media Investments, LLC v. Superior Court*,

24  34 Cal. App. 5th 24, 34 (2019); *see, e.g.*, *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007)

25  (prominent and well-respected plastic surgeon thrust himself into the public eye); *Seelig*

26  *v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002) ("By having chosen to participate

27  as a contestant in [a reality television show], plaintiff voluntarily subjected herself to

28  inevitable scrutiny and potential ridicule by the public and the media.").

1    Here, Plaintiff has repeatedly and voluntarily thrust himself into the public eye as

2    evidenced by the significant news coverage of his conduct. (Kronenberger Decl. ¶¶–33 &

3    Exs. A–FF.) Moreover, Plaintiff concedes that the statements at issue involve a topic of

4    widespread interest, alleging, "[t]hese harassing statements were read by a wide

5    audience of at least 10,000-20,000 Twitter followers." (FAC ¶59.) Further, Plaintiff

6    concedes that "[m]any of these statements were published specifically to promote

7    Defendant Tesla's stock, its products, and its CEO, Defendant Musk . . . ," an issue of

8    public concern. (FAC ¶59.) Finally, the news coverage generated by Plaintiff's filing of

9    this lawsuit indicates that there is widespread interest in the statements underlying the

10   lawsuit. (Kronenberger Decl. ¶¶10–12 & Exs. I–K.)

11   Because Plaintiff has thrust himself into the public eye and has admitted that the

12   statements at issue were of widespread, public interest, the Smick Defendants have

13   satisfied the first prong of the anti-SLAPP inquiry.

14   **2.    Plaintiff cannot show a probability of prevailing on his state law**

15   **claims.**

16   To withstand the Smick Defendants' anti-SLAPP motion, Plaintiff must

17   demonstrate a probability of prevailing on his state law claims. *See* CCP §425.16(b)(1).

18   Because the anti-SLAPP motion attacks the pleadings, Plaintiff must show that each

19   challenged cause of action is legally sufficient to sustain a favorable judgment. *See*

20   *Planned Parenthood Fed'n of Am.* 890 F.3d at 834. The Court should grant the Smick

21   Defendants' anti-SLAPP motion because Plaintiff has not alleged a legally sufficient claim

22   for defamation, IIED, or violation of the UCL, all of which are based on multiple opinion-

23   laden, hyperbolic, and rhetorical online statements.

24   **a.    Plaintiff has not stated a claim for libel per se.**

25   A claim for defamation/libel requires a showing of: (1) a statement of fact, (2) about

26   plaintiff, (3) that is published, (4) false, (5) defamatory, (6) unprivileged, (7) with fault, and

27   (8) causes harm. *See Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th

28   962, 970 (2011); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 486 (2015). Plaintiff has not

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   alleged a viable claim for libel because the statements at issue constitute non-actionable

2   statements of opinion, hyperbole, and rhetoric, rather than statements of fact, and certain

3   statements are barred by the statute of limitations.

4               **i.      The statements are non-actionable opinion and rhetoric.**

5       To state a claim for libel, a plaintiff must allege a statement is provably false, i.e.,

6   one that can reasonably be interpreted as stating actual facts about the plaintiff. "When a

7   defamation action arises from debate or criticism that has become heated and caustic, as

8   often occurs when speakers use Internet chat rooms or message boards, a key issue

9   before the court is whether the statements constitute fact or opinion." *Krinsky v. Doe 6*,

10  159 Cal. App. 4th 1154, 1174 (2008). In determining whether a statement contains an

11  assertion of objective facts or constitutes opinion, rhetoric, or hyperbole, courts consider:

12  (1) whether the general tenor of the entire work negates the impression that the defendant

13  was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic

14  language that negates that impression, and (3) whether the statement in question is

15  susceptible of being proved true or false. *See Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d

16  1284, 1293 (9th Cir. 2014) (reviewing decision from the district court in Oregon, which

17  has a similar anti-SLAPP statute to California); *see also Lieberman v. Fieger*, 338 F.3d

18  1076, 1080 (9th Cir. 2003) (applying these factors under the totality of the circumstances

19  and agreeing that the broad context, such as the general tenor of the work, showed

20  constitutionally-protected opinion); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990);

21  *Eade v. InvestorsHub.com, Inc.*, No. LACV11-1315, 2011 WL 13323344, at *6 (C.D.

22  Cal. July 12, 2011) (noting courts have generally found that internet bulletin boards and

23  chat room postings lend themselves to constitutional protection).

24      In *Obsidian,* the Ninth Circuit reviewed blog posts accusing individuals of "illegal

25  activity," including "corruption," "fraud," "deceit on the government," "money laundering,"

26  "defamation," "harassment," "tax crimes," and "fraud against the government," and

27  claiming that one individual paid off "media" and "politicians" and may have hired a hit

28  man to kill her. 740 F.3d at 1293. Reviewing the three factors relating to factual assertions,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

the court found that: (1) the general tenor of the blog posts negated the impression that the author was asserting objective facts, including as the website obsidianfinancesucks.com led readers to be predisposed to view the statements with a certain amount of skepticism and understanding that they will likely be one-sided viewpoints rather than assertions of provable facts, (2) hyperbolic language, such as "immoral," "really bad," "thugs," "evil doers," and "hired a hit man to kill her," or that "the entire bankruptcy court system is corrupt," dispel any reasonable expectation that the statements assert facts, and (3) in the context of a non-professional website containing consistently hyperbolic language, the posts were not sufficiently factual to be proved true or false. *See id.* at 1293–94.

Other cases have similarly afforded constitutional protection for rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, caricature, opinion, parody, imaginative expression, and language used in a loose, figurative sense. *See, e.g., Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (in context, defendant's online statements that plaintiff was a "fraud," "criminal," had acted illegally, had committed perjury, was dishonest, was "manipulative," and carried on "exploitative business relationships" were hyperbole and not defamatory); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401–4 (1999) (affirming the sustaining of demurrer without leave to amend and finding statements such as "Kmart Johnnie Cochran," "creepazoid, and "loser wannabe lawyer," while name-calling, were not actionable and not to be taken literally); *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 687 (1994) (holding failure to state a cause of action where article titled "Lies, Damn Lies, and Fund Advertisements" was protected imaginative expression or rhetorical hyperbole); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 811 (2002) (finding anti-SLAPP motion should have been granted where terms like local loser and big skank were not actionable as no reasonable listener would take them as factual pronouncements); *Balzaga v. Fox News Network, LLC,* 173 Cal. App. 4th 1325, 1342 (2009) (concluding insufficient basis for a factfinder to conclude that "Manhunt at the Border" caption, when viewed in context, was actionable);

12

**SMICK DEFENDANTS' NTC OF MTN AND MTN TO STRIKE AND DISMISS; MPA**

1   *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 389 (2004) (statements that an

2   individual "stole" copyrighted material, "compromised" DDi, and "plagiarized" data were

3   rhetorical hyperbole in context); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159 (2008)

4   (finding "crooks" and "fake medical degree" non-actionable opinions).

5          Here, all of the Smick Defendants' alleged statements, including "Statements 1-

6   32" (FAC ¶148), are non-actionable rhetoric, opinion, and hyperbole made in the context

7   of informal online banter, which no reasonable person would understand as assertions of

8   objective facts. First, the general tenor of the content from the "parody" @Tesla_Truth,

9   @PlainShite, and @WholeMarsBlog Twitter accounts and related websites, such as

10  "vagfoundation.org," and a "screed" starting with "Written by Steve Jobs . . . Steve Jobs

11  is Dead," negate the impression that the publishers were asserting objective facts. The

12  statements must be viewed in the context of the ongoing online disputes and fiery

13  language, which includes regular insults about Plaintiff from multiple authors. (FAC ¶112

14  & Exs. B & I, *passim*.) Second, the statements repeatedly use figurative and hyperbolic

15  language, negating any impression of an assertion of fact. As examples, the statements

16  hurled insults, such as "clown," "Rule breaker," "he killed me for saying he didn't invent

17  facebook," and "After he dies I'll keep telling people he sucked." Moreover, that the

18  statements were made in the context of heated debate and were often posted as

19  rhetorical questions, further demonstrate the statements were opinion. (*See* FAC ¶¶65,

20  72, 96, 123, 148 & Ex. B *passim*.) Third, in the context of non-professional Twitter and

21  website posts containing consistently hyperbolic language and repeatedly engaging in

22  debate and argument, the statements are not susceptible of being proved true or false.

23  *See Obsidian Fin. Grp., LLC*, 740 F.3d at 1293. Thus, the broad context demonstrates

24  that the statements were made as "sticks and stones" insults by someone with opposing

25  viewpoints from, and with a strong bias against, Plaintiff. The statements were general in

26  nature without any specific-enough allegations to imply a provable factual assertion.

27         While Plaintiff identifies numerous allegedly unlawful statements, they fall into a

28  few general categories, summarized below.

Statements of Fraud: Plaintiff alleges that the Smick Defendants made numerous statements accusing him of fraud and other non-specific criminal activity (e.g. "It took a lot of hard work to break every single one of these rules with our fraudulent charity, but we pulled it off"; "he did, it's fraudulently registered as a non-profit charity."). However, courts have held that loose and vague online accusations of criminal conduct, including fraud, may well be understood as non-actionable hyperbole. *See, e.g.*, *Nicosia*, 72 F. Supp. 2d at 1104 (in context, defendant's assertions on her website that plaintiff was a "fraud," a "criminal," and had acted illegally were mere hyperbole).

Statements About Sex and Child Pornography: Plaintiff alleges that the Smick Defendants published statements accusing Plaintiff of possessing child pornography and having certain sexual fixations (e.g., "Strange how Aaron mentions that he think *[sic]* Diego wants to 'get in his pants'. Sounds like may be revealing some deeper desires there"; "The only thing that has been revealed here is that Aaron Greenspan has child pornography at his house. I do not."). However, in the context of a heated internet debate, accusations of far-fetched sexual conduct would not be taken seriously by a reader. *See, e.g.*, *Krinsky*, 159 Cal. App. 4th at 1176–77 (no reasonable reader would take internet post seriously, though unquestionably vulgar and insulting, which stated "I will reciprocate felatoin [*sic* ] with Lisa even though she has fat thighs, a fake medical degree, 'queefs' and has poor feminine hygiene."); *Leidholdt v. L.F.P. Inc*, 860 F.2d 890, 894 (9th Cir. 1988) (in context, statements that plaintiff was "sexually repressed," believed "sex is humiliating," and hated men, sex, and herself would be understood as exaggerated criticism).

Inventing Facebook: Plaintiff claims that the Smick Defendant made multiple statements that Plaintiff did not invent Facebook. These statements could only be viewed as opinions on the issue. Moreover, no reasonable person believes that Plaintiff invented Facebook.

Asperger's Syndrome/Psych Ward: Plaintiff claims that Defendant published statements that Plaintiff has Asperger's syndrome and is held in a psychiatry ward. As an

14

initial matter, a statement that a person has Asperger's syndrome is not defamatory because there is nothing disparaging about having that medical condition. More importantly, loose and rhetorical criticisms of a person's mental health in online disputes are not taken seriously by reasonable person. *See, e.g.*, *Lieberman v. Fieger*, 338 F.3d 1076, 1079–80 (9th Cir. 2003) (attorney's reference to psychiatrist as "Looney Tunes," "crazy," "nuts," and "mentally imbalanced," were not actionable where no reasonable viewer would have taken the statements as factual).

Miscellaneous Statements: Finally, Plaintiff alleges that a few peculiar statements were unlawful, such as "I didn't worry when Aaron Greenspan said Elon paid me to kill him because it wasn't true"; and "to the police: if I am found dead in mysterious circumstances, it was almost certainly aaron greenspan he killed me for saying he didn't invent facebook (he didn't)." Contrary to Plaintiff's allegations, no reasonable person would believe from these statements that Plaintiff is a murderer or that Plaintiff accused Defendant Musk of hiring an assassin to kill him.

While clearly not the kindest words, no reasonable person would take any of these statements as factual pronouncements given the context. Thus, the statements are protected hyperbole or opinion and do not support a libel claim.

### ii.      Certain claims are barred by the statute of limitations.

Defamation claims have a one-year statute of limitations. CCP §340(c); *see also Cusano v. Klein*, 264 F.3d 936, 949 (9th Cir. 2001). Therefore, claims prior to the statute of limitations, such as "Statement 1" from January 2019, are time barred. (FAC ¶148.)

### b.      Plaintiff's has not stated a claim for IIED.

A claim for IIED requires: (1) outrageous conduct, (2) at plaintiff, (3) with intent or reckless disregard, (4) causing (5) severe emotional distress. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009). Here, Plaintiff has failed to state a viable IIED claim.

### i.      Plaintiff's IIED claim is duplicative of his libel claim.

When claims for infliction of emotional distress are based on the same factual allegations as those of a simultaneous libel claim, they are superfluous and must be

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    dismissed. *See Rudwall v. BlackRock, Inc.*, 289 F. App'x 240, 242 (9th Cir. 2008) (quoting

2    *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1504 (1995)). Because the

3    vast majority of Plaintiff's IIED claim is based on the same factual allegations of his libel

4    claim, Plaintiff's IIED claim must be dismissed. (FAC ¶185.) As discussed below, the few

5    remaining bases for Plaintiff's IIED claim do not constitute outrageous conduct and are

6    not linked to any severe emotional harm.

7              ii.        **Plaintiff has not alleged "outrageous" conduct.**

8              Outrageous conduct must be so extreme as to go beyond all bounds of decency

9    tolerated by society; mere indignities, insults, threats, annoyances, petty oppressions and

10   the like are not enough. *See Hughes*, 46 Cal. 4th at 1050–51*; see also Cochran v.*

11   *Cochran*, 65 Cal. App. 4th 488, 494 (1998) (outrageousness is judged objectively). In

12   some circumstances, a district court can properly decide whether conduct is outrageous

13   as a matter of law. *See Henderson v. Office & Prof'l Employees Int'l Union*, 143 F. App'x

14   741, 744 (9th Cir. 2005).

15             When one strips away the bases for Plaintiff's IIED claim that are duplicative of

16   his defamation claim, the remaining conduct does not constitute outrageous conduct as

17   a matter of law. Specifically, the alleged misconduct that remains is: a) a prank phone call

18   to Plaintiff impersonating the phone company (FAC ¶¶36, 185); b) a communication with

19   Plaintiff's brother where Mr. Qazi supposedly wrote, "hi simon / how are you?"; and c) the

20   creation of an account in Plaintiff's name on a pornographic website. Given the realities

21   of internet banter, particularly when one, such as Plaintiff, voluntarily thrusts himself into

22   the blogosphere, and given the context of the parties' insults against each other, the

23   above-referenced conduct is not "outrageous" beyond mere "sticks and stones" insults

24   and indignities. Thus, Plaintiff has not stated a viable IIED claim.

25             iii.       **Plaintiff has not alleged severe emotional distress.**

26             To show severe and enduring emotional distress for an IIED claim is a "high bar."

27   *See  Hughes*, 46 Cal. 4th at 1051; *Wong*, 189 Cal. App. 4th at 1377 (lost sleep, upset

28   stomach, and generalized anxiety, along with conclusory allegation of suffering "severe

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  emotional damage," did not reflect severe emotional distress). Moreover, the cause of the

2  emotional distress must have been directed toward the plaintiff. *See Christensen v.*

3  *Superior Court,* 54 Cal. 3d 868, 903–06 (1991).

4      As an initial matter, Plaintiff has not linked his supposed emotional distress to the

5  conduct that is not duplicative Plaintiff's libel claim. In fact, most of the alleged emotional

6  distress relates to conduct that also serves as bases for Plaintiff's libel claim. (FAC ¶¶187,

7  188, 189, 191, 192.) Moreover, while Plaintiff claims that he lost "work hours"

8  documenting the alleged misconduct, was gravely concerned that Mr. Qazi was

9  communicating with third party Diego MasMarques, Jr., and was further gravely

10  concerned about Mr. Qazi's communications with Plaintiff's brother who is severely

11  disabled, such allegations do not reflect severe emotional distress. Finally, several of

12  Plaintiff's allegations are not actionable as they relate to conduct by anonymous actors

13  and/or towards Plaintiff's family members rather than Plaintiff. (*E.g.,* FAC ¶185.) Thus,

14  Plaintiff's IIED claim fails for this reason as well.

15          **c.      Plaintiff does not allege a claim for Count VI under the UCL.**

16      The UCL, Bus. & Prof. Code §17200 et seq., prohibits unlawful, unfair, or fraudulent

17  business acts and practices. *See* Bus. & Prof. Code §17200. While the UCL covers a wide

18  range of conduct, it is limited to conduct that can properly be called a business practice.

19  *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1143 (2003).

20  Significantly, "[t]he UCL's purpose does not require the same broad construction of the

21  word 'business.'" *That v. Alders Maint. Assn.*, 206 Cal. App. 4th 1419, 1427 (2012). Where

22  a dispute is not related to any activity that might be deemed in the least bit commercial, it

23  is not within the scope of the UCL. *See id.* Here, Plaintiff's allegations against the Smick

24  Defendants are not tied to any commercial activity. Rather, the allegations reflect a highly

25  personal, non-business dispute between Plaintiff and the Smick Defendants.

26      Moreover, to state a UCL claim, a private plaintiff must allege an injury in fact and

27  loss of money or property as a result of the unfair competition. *See In re Adobe Sys., Inc.*

28  *Privacy Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014); *Archer v. United Rentals, Inc.*,

195 Cal. App. 4th 807, 816 (2011) (alleged collection of information in violation of privacy laws did not equate to lost money or property); *Fitbug Ltd. v. Fitbig, Inc.*, 78 F. Supp. 3d 1180, 1197 (N.D. Cal. 2015) (no evidence that critical online reviews caused lost money or property). For example, in *Hernandez v. Specialized Loan Servicing, LLC*, No. CV 14-9404-GW JEMX, 2015 WL 350223, at *8 (C.D. Cal. Jan. 22, 2015), the court found that expending time and resources providing documents and court costs and fees of pursing a case did not satisfy the standing requirement. Plaintiff's UCL claim fails because he has not alleged any cognizable loss of money or property. Although Plaintiff imaginatively claims that he was forced to pay for parking and gas fees for going to the police station and spent hours "documenting misconduct" (FAC ¶¶238–40), those fees and hours are not lost money or property as a result of unfair competition. Moreover, the allegations either do not relate to any unlawful business practice (FAC ¶¶235–37), or Plaintiff fails to identify the causal connection to his alleged injury, such as the purported failure of Smick Enterprises to register in California, or calling, posting about, or impersonating Plaintiff's family. (FAC ¶¶234–36.)

Finally, the only monetary remedy available under the UCL is restitution. *See Korea Supply Co.*, 29 Cal. 4th at 1146. Restitution is defined as an order compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken. *See id.* at 1144–45; *see also Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012) (holding restitution was unavailable where defendant had not obtained money from plaintiff and plaintiff did not otherwise have an ownership interest in defendant's profits). Here, Plaintiff has not alleged that the Smick Defendants received any ill-gotten gains as a result of any unlawful business practice. Thus, Plaintiff is not entitled to any monetary relief under the UCL.[2]

---

[2] Regarding injunctive relief, Plaintiff seeks an injunction barring the Smick Defendants from making further libelous statements, from impersonating others, and from operating the Smick Sites. (FAC Prayer.) However, the requested injunction constitutes a prior restraint on speech, which is "the most serious and the least tolerable infringement on First Amendment rights." *Twitter, Inc. v. Sessions*, 263 F. Supp. 3d 803, 809 (N.D. Cal.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

    Summary of anti-SLAPP Motion: The Smick Defendants have made a prima facie showing that the state law claims (libel, IIED, and violation of the UCL) arise from protected activity. Plaintiff has not alleged legally sufficient claims. Thus, the Court should strike the FAC's state law claims.

**C.     Plaintiff has not stated any sufficient claim against the Smick Defendants.**

    In addition to the Smick Defendants' basis for striking the state law claims under California's anti-SLAPP statute, all of the claims against the Smick Defendants should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Given the legal deficiencies and Plaintiff's already detailed allegations in the FAC with no foreseeable cure, Plaintiff's claims should be dismissed without leave to amend.

    **1.     Plaintiff's Count I for libel per se fails to state a valid claim.**

    The Smick Defendants incorporate the arguments in Section B.2.a, *supra*. As outlined above, Plaintiff's libel cause of action fails to state a claim because it is based on non-actionable statements of opinion and rhetoric, rather than statements of fact.

    **2.     Plaintiff's Count III for IIED fails to state a valid claim.**

    The Smick Defendants incorporate the arguments in Section B.2.b, *supra*. As outlined above, Plaintiff's IIED claim is duplicative of his libel claim, and Plaintiff fails to sufficiently allege outrageous conduct or resulting severe emotional distress.

    **3.     Plaintiff's Count VI for copyright infringement fails to state a claim.**

    Plaintiff has failed to state a claim for copyright infringement because Plaintiff lacks valid copyright registrations and any limited re-posting of his book text was fair use.

    **a.     Plaintiff's claim fails without valid copyright registrations.**

    A claim for copyright infringement under 17 U.S.C. §501 requires a valid copyright registration. *See* 17 U.S.C. §411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com,*

_____

2017). Under the prior restraint doctrine, a law cannot condition the free exercise of First Amendment rights on the unbridled discretion of government officials. *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 687 (9th Cir. 2010). Plaintiff has not alleged sufficient facts to support the least tolerable infringement on the Smick Defendants' First Amendment rights.

*LLC*, 139 S. Ct. 881, 886 (2019). Importantly, a text-only registration for a book does not cover photos included in the book. *See, e.g.*, *RoyaltyStat, LCC v. IntangibleSpring Corp.*, No. CV PX 15-3940, 2018 WL 348151, at *3 (D. Md. Jan. 10, 2018) ("Defendants correctly note that the '781 Registration solely asserts copyright in 'text'").

Here, Plaintiff concedes that he only has a copyright registration covering the text (and notably, not photographs) of his book. (FAC ¶201 & Ex. K.) Thus, Plaintiff's claims relating to the book photographs and other elements fail, and any allegations about Plaintiff's DMCA takedown notices relating to non-registered copyrights are irrelevant.

### b.   Commentary on limited book text constitutes fair use as a matter of law.

The fair use doctrine is an equitable rule of reason that permits courts to avoid rigid application of the copyright statute when it would stifle the very creativity that the law is designed to foster. *See* 17 U.S.C. §107; *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 647–48 (9th Cir. 2020). Section 107 of the Copyright Act outlines four non-exclusive factors for analyzing fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *See id.* These factors are assessed on a case-by-case basis and weighed together in light of the purposes of copyright. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174 (N.D. Cal. 2019).

Though the fair use defense is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute. *See Free Speech Sys., LLC*, 390 F. Supp. 3d at 1174. With regards to parodies and satire, while the actual amount of content taken is a factual issue susceptible of proof, it is a question of law whether the taking is excessive under the circumstances. *See Fisher v. Dees*, 794 F.2d 432, 438 n.4 (9th Cir. 1986); *see also Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283, 1294 (N.D. Cal. 1991), *aff'd*, 964 F.2d 965 (9th Cir. 1992) (noting an "obvious" example of fair use is an unfavorable book review containing

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  quotations from the copyrighted work, along with criticism which may suppress demand,
2  and that another example is a parody).

3      In this case, Plaintiff claims Mr. Qazi posted "segments" of Plaintiff's book from the
4  @Tesla_Truth parody Twitter account, "generally ridiculing the book," amounting to
5  "quotes" from eight pages (FAC ¶¶202–03, 206.) This is classic parody and fair use that
6  is not actionable as infringement as a matter of law. Because the claim cannot be
7  remedied, it should be dismissed without leave to amend.

8      **4.    Plaintiff's Count V for copyright information fails to state a claim.**

9      The DMCA, 17 U.S.C. §1202(b), provides that no person shall "intentionally
10  remove or alter any copyright management information" ("CMI"), such as the title, author,
11  or terms identifying information set forth in a copyright notice, "knowing, or . . . having
12  reasonable ground to know, that it will induce, enable, facilitate, or conceal an
13  infringement of any right under this title." *See also Falkner v. Gen. Motors LLC*, 393 F.
14  Supp. 3d 927, 938 (C.D. Cal. 2018) (noting lack of authority that failing to include CMI,
15  such as by the framing of a scene, rather than by editing or defacing CMI, constitutes
16  removal or alteration; and noting intent element requires knowledge of existence of CMI
17  and knowledge that CMI has been removed or altered); *SellPoolSuppliesOnline.com, LLC*
18  *v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670–71 (9th Cir. 2020) (finding a notice is
19  not CMI if it is not conveyed in connection with the copyrighted content, such as when the
20  notice is at the bottom of a website, rather than on a photograph at issue).

21      Plaintiff's §1202(b) claim fails for multiple reasons. First, Plaintiff fails to allege the
22  requisite intent for his claim. As discussed in detail above, the Smick Defendants did not
23  infringe any of Plaintiff's copyrights. As such, the Smick Defendants could not have an
24  intent to induce, enable, facilitate or conceal an infringement. *See Powers v. Caroline's*
25  *Treasures Inc.*, 382 F. Supp. 3d 898, 903–04 (D. Ariz. 2019). Second, Plaintiff has not
26  alleged that any Defendant removed or altered any CMI because the claimed copyright
27  notices were on the websites (on the footer) and not on the photographs in question.
28  (FAC ¶¶208–11.) *See SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*, 344

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

F. Supp. 3d 1075, 1083 (D. Ariz. 2018), *aff'd,* 804 F. App'x 668 (9th Cir. 2020)  ("The copyright notice is not in the body of, or the area around, the work at issue, the photographs, and so it was not 'conveyed in connection with' the work in a way that makes that information CMI."). Thus, Plaintiff's claim under 17 U.S.C. §1202(b) fails.

### 5.    Plaintiff's Count VI under the UCL fails to state a claim.

The Smick Defendants incorporate the arguments in Section B.2.c, *supra*. In particular, Plaintiff's UCL claim fails to state a claim because Plaintiff has not alleged, and cannot allege, that the Smick Defendants engaged in a business practice, that Plaintiff lost money or property as a result of that practice, or that the Smick Defendants received ill-gotten gains from Plaintiff as a result of that practice.

### 6.    Plaintiff's Count VIII for securities violations fails to state a claim.

To state a claim under Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, for market manipulation, a plaintiff must show: (1) the use or employment of a manipulative or deceptive device or contrivance, (2) scienter, (3) connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation, i.e., a causal connection. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938-39 (9th Cir. 2009); *see also ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1236–37 (C.D. Cal. 2015) (noting the plaintiff must allege the defendant engaged in manipulative acts, the plaintiff suffered damage caused by reliance on an assumption that the market was free of manipulation, and the defendant acted with scienter and that there was some market activity, such as wash sales, matched orders, or rigged prices).

Plaintiff fails to allege sufficient factual allegations as to the Smick Defendants, let alone with the particularity required by Rule 9(b) and the PSLRA. Plaintiff has not alleged facts supporting the elements of reliance, loss causation, and scienter, and Plaintiff has failed to specifically allege any actionable manipulative conduct. For example, Plaintiff states Defendants "engaged in manipulative acts that drove the price of TSLA shares to artificially high levels" and that "market manipulation caused Plaintiff's losses." (FAC ¶265–66.) However, Plaintiff has not identified any specific acts by the Smick Defendants

1  constituting market manipulation (other than general claims of publicly supporting Tesla).

2  Because there are no tenable amendments, this claim should be dismissed without leave

3  to amend.

4  **7.    Plaintiff's Count X for injunctive relief fails to state a claim.**

5  Injunctive relief is not a standalone cause of action. *See Rockridge Tr. V. Wells*

6  *Fargo, N.A.*, 985 F. Supp. 2d 1110, 1167 (N.D. Cal. 2013) (dismissing claim for injunctive

7  relief with prejudice); *Fauley v. Wash. Mut. Bank FA*, No. 3:13-CV-00581-AC, 2014 WL

8  1217852, at *9 (D. Or. Mar. 21, 2014) (finding the claim "actually a prayer for relief  . . .").

9  Further, to obtain equitable relief, there must generally be no adequate legal remedy.

10  *Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104 (9th Cir. 1994).

11  Plaintiff's claim for injunctive relief should be dismissed as an improper cause of

12  action to the extent it is based on other dismissed claims, and because Plaintiff has failed

13  to allege facts showing inadequate legal remedies.

14  **8.    Plaintiff's request for attorney's fees should be stricken.**

15  Plaintiff perplexingly seeks attorney's fees under 42 U.S.C. §1988, which relates

16  to proceedings in vindication of civil rights. *See also Farrar v. Hobby*, 506 U.S. 103, 109

17  (1992). This statute is completely inapplicable, and the request by Plaintiff (pro per) for

18  attorney's fees should be stricken from the FAC.

19  **CONCLUSION**

20  For the reasons set forth above, the Court should (1) strike Plaintiff's state law

21  claims against the Smick Defendants under California's anti-SLAPP statute, CCP

22  §425.16, and award the Smick Defendants their related attorney's fees and costs, and (2)

23  dismiss all of Plaintiff's claims against the Smick Defendants under Rule 12(b)(6) and

24  award the Smick Defendants their attorney's fees and costs for the copyright infringement

25  claim.

26  //

27  //

28  //

23

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    Respectfully Submitted,

2    DATED: August 18, 2020                    **KRONENBERGER ROSENFELD, LLP**

3

4                                              By:  _____s/ Karl S. Kronenberger_____
                                                      Karl S. Kronenberger
5
                                              Attorneys for Defendants Omar Qazi and
6                                             Smick Enterprises, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28