Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AARON GREENSPAN,<br><br>    Plaintiff,<br><br>    v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC.,<br><br>    Defendants. | Case No. 3:20-cv-03426-JD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FRCP 11 SANCTIONS ON KRONENBERGER ROSENFELD LLP AND DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.**<br><br>Time:     10:00 A.M.<br>Date:     October 1, 2020<br>Courtroom:  11, 19th Floor<br><br>Judge: Hon. James Donato<br>FAC Filed: July 2, 2020 |

**TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF THE ISSUE ................................................................................... 2

III. FACTUAL BACKGROUND ....................................................................................... 2

IV.  ARGUMENT ................................................................................................................ 4

    A.   Counsel for the Qazi Defendants Failed To Conduct a Reasonable Inquiry, Filing Court Documents Totally Lacking Evidentiary Support ............................................... 5

        1.   Defendant Qazi Lied Under Penalty of Perjury About Learning Of This Lawsuit "Only" "On Around July 3, 2020" ............................................................................. 5

        2.   Counsel Filed An Inaccurate Certificate of Interested Entities Pursuant to Civil Local Rule 3-15 and Failed to Amend It ............................................................. 7

    B.   Counsel for the Qazi Defendants Misrepresented Facts To The Court Even When Facts Were Self-Evident ............................................................................................. 8

        1.   Counsel Falsely Claimed That the Qazi Defendants Were Never Served With the FAC, Then Falsely Claimed Service Was Improper ............................................. 8

        2.   Counsel for the Qazi Defendants Knowingly Misrepresented a Deadline Pursuant to Rule 4(d) by Abusing Language and Math ................................................... 10

    C.   Counsel for the Qazi Defendants Brazenly Lied To Plaintiff Via E-Mail ................. 11

    D.   The Qazi Defendants Have Escalated Their Unlawful Conduct Since The Commencement of This Litigation ............................................................................. 12

        1.   While In Default, Defendant Qazi Lied Publicly About a Non-Existent Court Ruling In This Case and Used That Lie To Raise Money ................................. 12

        2.   The Qazi Defendants Set Up a Russian Server To Facilitate Unlawful Conduct After the First Amended Complaint Was Filed .................................................. 13

V.   CONCLUSION ........................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990) ................................................ 4

*Employee Painters' Trust v. Ethan Enterprises*, 480 F. 3d 993 (9th Cir. 2007) ..................... 9

*Oganyan v. Square Two Fin.*, No. CV 11-10226 RGK (VBKx), 2012 WL 4466607, at *3 (C.D. Cal. Sept. 26, 2012) ............................................................. 4

*Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*, 987 F.2d 594 (9th Cir. 1993) ..... 4

*Phigenix, Inc. v. Genentech, Inc.*, Case No. 5:15-cv-01238-BLF (N.D. Cal. October 31, 2016) .. 4

*Superior Consulting Services, Inc. v. Steeves-Kiss*,
   Case No. 3:17-cv-06059-EMC (N.D. Cal. May 11, 2018) ........................................................ 4

**Other Authorities**

FED. R. CIV. P. 11 Advisory Comm. Notes (1993 Amendments) ..................................................... 9

**Rules**

Federal Rule of Civil Procedure 4 ................................................................................................ 8, 11

Federal Rule of Civil Procedure 4(d)(1)(F) ...................................................................................... 11

Federal Rule of Civil Procedure 4(d)(2) ........................................................................................... 12

Federal Rule of Civil Procedure 4(d)(3) ........................................................................................... 11

Federal Rule of Civil Procedure 4(e)(2)(A) ....................................................................................... 2

Federal Rule of Civil Procedure 4(h)(1)(B) ....................................................................................... 2

Federal Rule of Civil Procedure 5(a)(2) ......................................................................................... 8, 9

Federal Rule of Civil Procedure 5(b)(1) ......................................................................................... 3, 9

Federal Rule of Civil Procedure 5(b)(2)(C) ................................................................................ 2, 3, 9

Federal Rule of Civil Procedure 5(b)(2)(E) ................................................................................ 3, 4, 11

Federal Rule of Civil Procedure 6(a)(1)(C) ........................................................................................ 3

Federal Rule of Civil Procedure 6(d) ................................................................................................... 3

Federal Rule of Civil Procedure 11 ................................................................................................. 2, 4

Federal Rule of Civil Procedure 11(b)(3) ............................................................................... 1, 5, 11, 12

Federal Rule of Civil Procedure 11(c)(1) ............................................................................................ 4

Federal Rule of Civil Procedure 11(c)(2) ............................................................................................ 4

Federal Rule of Civil Procedure 15(a)(3) ............................................................................................ 3

Northern District of California Guideline of Professional Conduct 8 ...................................... 1, 12

Standing Order for Civil Cases Before Judge James Donato ¶ 23 ........................................... 1, 11

State Bar of California Rule of Professional Conduct 4.1 ......................................................... 1, 12

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 1, 2020 at 10:00 A.M., or as soon thereafter as the matter may be heard, in the above-titled Court, in Courtroom 11, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102—or in the alternative, via digital videoconference pursuant to this Court's General Order 72-5—Plaintiff Aaron Greenspan ("Plaintiff") will and hereby does move the Court to enter sanctions against Defendants Omar Qazi, Smick Enterprises, Inc. (the "Qazi Defendants") and their counsel, Kronenberger Rosenfeld LLP.

The Court should grant Plaintiff's motion because the Qazi Defendants and their counsel have knowingly made false statements and misrepresentations to this Court and to Plaintiff on several occasions in violation of numerous rules and obligations.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Qazi Defendants engaged in outrageous and unlawful behavior leading up to this litigation as described in the First Amended Complaint ("FAC"). Now—finally represented by counsel after failing to respond and failing to appear before the Court—the Qazi Defendants' newfound counsel have made a number of false statements to the Court and to Plaintiff in an attempt to wriggle their way out of serial default through any means necessary. In only eight days, the Qazi Defendants and their counsel managed to violate Federal Rule of Civil Procedure ("Rule") 11(b)(3), State Bar of California Rule of Professional Conduct 4.1, Northern District of California Guideline of Professional Conduct 8, and ¶ 23 of the Standing Order for Civil Cases Before Judge James Donato. The statements in question are not subjective matters of opinion or

law that fall into so-called gray areas. They are black-and-white points of fact where the Qazi Defendants and their counsel deliberately lied. Consequently, sanctions are in order.

## II.    STATEMENT OF THE ISSUE

The issue raised by this motion is whether the Qazi Defendants' statements and the statements of their counsel in ECF No. 44, ECF No. 46, via e-mail, and on social media merit Rule 11 sanctions.

## III.    FACTUAL BACKGROUND

On October 20, 2019, Plaintiff e-mailed Karl Kronenberger and Jeff Rosenfeld of Kronenberger Rosenfeld, LLP seeking representation in a potential lawsuit involving Omar Qazi and Smick Enterprises, Inc. Neither attorney responded to Plaintiff's inquiry.

The initial Complaint in this case was filed on May 20, 2020. Plaintiff requested via e-mail that the Qazi Defendants waive service on May 21, 2020, but received no response after 15 days. On June 6, 2020, Plaintiff engaged M&R Process Service, LLC ("M&R") to serve the Qazi Defendants. On June 8, 2020, M&R independent contractor Erin Houck informed Plaintiff via text message that the Qazi Defendants had been served in person on June 7, 2020 in San Francisco pursuant to Rule 4(e)(2)(A) for Defendant Qazi and Rule 4(h)(1)(B) for Defendant Smick Enterprises, Inc. On June 9, 2020, Plaintiff filed the Proof of Service documents provided by M&R with the Court. ECF No. 11.

The Qazi Defendants did not respond to the initial Complaint by June 29, 2020 or at all. Plaintiff requested the entry of default on the Qazi Defendants on June 30, 2020. The Clerk of Court rejected default on an erroneous basis on July 1, 2020, but at first refused to clarify its decision or to correct its error. On July 2, 2020, Plaintiff filed a FAC and served it on the Qazi Defendants at their last known address via U.S. Mail pursuant to Rule 5(b)(2)(C). On July 3, 2020, Defendant Qazi began posting excerpts of and discussing the FAC on social media, signifying actual notice. On July 7, 2020, the Clerk of Court finally explained its unwritten

rationale for rejection of default,[1] and Plaintiff again requested the entry of default with regard to the initial Complaint on the Qazi Defendants, which the Clerk entered the same day. The Qazi Defendants were accordingly in default as of July 7, 2020.

On July 13, 2020, Plaintiff for the first time received an e-mail from attorney Karl Kronenberger—one of the same attorneys Plaintiff had written to months before about the then-hypothetical case—requesting a stipulation to lift default on behalf of the Qazi Defendants. On July 14, 2020, Plaintiff responded, declining to stipulate. On July 16, 2020, counsel for the Qazi Defendants formally appeared before the Court and filed a Motion to Lift Clerk's Entry of Default. ECF No. 44. About two hours later, Plaintiff received a Digital Millennium Copyright Act ("DMCA") Counter-Notice from Defendant Qazi stating, "I will accept service of process from [Plaintiff] or an agent of such person." On July 17, 2020, Plaintiff received a second DMCA Counter-Notice from Defendant Qazi stating, "I agree to accept service of process from [Plaintiff]."

On July 20, 2020, the deadline for the Qazi Defendants to respond to the FAC pursuant to Federal Rules of Civil Procedure 15(a)(3), 6(d), and 6(a)(1)(C) expired without the Qazi Defendants having filed any response. On July 21, 2020, Plaintiff filed an Application for Entry of Default against the Qazi Defendants specifically regarding the FAC. ECF No. 45. Counsel for the Qazi Defendants responded with an opposition brief the same day. ECF No. 46. Plaintiff also filed a reply brief the same day. ECF No. 47. Also on July 21, 2020, after the briefs had been filed, and even though their clients had already been served with the FAC pursuant to Rule 5(b)(2)(C) on July 2, 2020, and even though Defendant Qazi had twice thereafter accepted service of process in writing, counsel for the Qazi Defendants confirmed their own duplicative acceptance of service of the FAC via e-mail pursuant to an agreement between the parties under Rules 5(b)(1) and 5(b)(2)(E). On July 23, 2020, Plaintiff filed a Request for Judicial Notice in support of his Application for Entry of Default. ECF No. 48.

---

[1] The Clerk of Court expected a recitation of the specific documents served, though Civil Local Rule 4-2 does not explicitly require one, and the cited California state statute was inapplicable.

On July 25, 2020, Plaintiff served the instant Motion on the Qazi Defendants without filing it with the Court pursuant to Rules 11(c)(2) and 5(b)(2)(E).  On July 28, 2020, Qazi Defendants filed an amended Certificate of Interested Entities and an administrative motion to clarify the status of default, extend time, and increase page limits.  ECF Nos. 50-51.  On August 12, 2020, counsel for Qazi Defendants e-mailed Plaintiff stating, "we dispute that there has been any unlawful or sanctionable conduct," and refused to withdraw ECF Nos. 44 and 46.  On August 18, 2020, Qazi Defendants filed a combined Motion to Dismiss and Anti-SLAPP Special Motion to Strike in response to the FAC in excess of standard page limits even though the Court had not yet ruled on their prior motions, ECF Nos. 44 and 51.  ECF No. 65.

## IV.     ARGUMENT

Rule 11 exists to deter dishonest and unethical conduct.  The Court has considerable flexibility in how it should be applied.

> "Rule 11 sanctions may be imposed 'on any attorney, law firm, or party' that violated Rule 11 or who is responsible for the violation.  Fed. R. Civ. P. 11(c)(1). Sanctions may be imposed against the client alone, the attorney alone, or both the client and the attorney based on their relative responsibility.  *See*, e.g., *Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*, 987 F.2d 594 (9th Cir. 1993) (imposing sanctions on client because client was catalyst, was 'well-positioned to investigate the facts,' and failed to make appropriate inquiry); *Oganyan v. Square Two Fin.*, No. CV 11-10226 RGK (VBKx), 2012 WL 4466607, at *3 (C.D. Cal. Sept. 26, 2012) (imposing sanctions on plaintiff's counsel because he failed to make even a cursory investigation into underlying facts or law)."

*Superior Consulting Services, Inc. v. Steeves-Kiss*, Case No. 3:17-cv-06059-EMC (N.D. Cal. May 11, 2018).  Here, both the Qazi Defendants and their counsel are responsible for various sanctionable acts conducted in bad faith.

"In determining whether Rule 11 has been violated, a 'court must consider factual questions regarding the nature of the attorney's pre-filing inquiry and the factual basis of the pleading.'  *Cooter*, 496 U.S. at 399."  *Phigenix, Inc. v. Genentech, Inc.*, Case No. 5:15-cv-01238-BLF (N.D. Cal. October 31, 2016).  These questions are addressed herein.

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR FRCP 11 SANCTIONS

### A. Counsel for the Qazi Defendants Failed To Conduct a Reasonable Inquiry, Filing Court Documents Totally Lacking Evidentiary Support

Rule 11(b)(3) requires that "factual contentions have evidentiary support" when presented to the Court unless some disclaimer states that support will be forthcoming. Simply put, counsel for the Qazi Defendants and Defendant Qazi signed their names to filings that they knew or should have known contained and/or relied upon numerous false statements, some of which were made under penalty of perjury. Any kind of rudimentary inquiry prior to filing would have revealed these statements to be false.

#### 1. Defendant Qazi Lied Under Penalty of Perjury About Learning Of This Lawsuit "Only" "On Around July 3, 2020"

In support of the Qazi Defendants' Motion to Lift Clerk's Entry of Default ("Motion"), counsel submitted a declaration signed by Defendant Qazi under penalty of perjury (the "Qazi Declaration"). ECF No. 44-1. Counsel relied on this declaration for factual statements made in its accompanying Motion. ECF No. 44.

In the Qazi Declaration, there are at least four provably false statements and at least one statement of questionable veracity.[2] Most importantly, Defendant Qazi states, "I was only made aware of this action on around July 3, 2020, when I was contacted by a co-Defendant about the action."[3] Yet there is ample evidence to the contrary, aside from Plaintiff's e-mails to the Qazi Defendants regarding waiver of service from May 21, 2020. Understanding the evidence requires some brief background about the various shifting identities Defendant Qazi has used on the internet, which counsel for the Qazi Defendants apparently failed to ascertain.

On the personal "sub-Reddit" devoted to Defendant Qazi, accessible at https://www.reddit.com/r/omarqazi/, there are four headings: "Posts," "Whole Mars Blog," "Smick," and "Third Row Tesla." It is not surprising, then, that after being banned from Twitter as @omarqazi (under the name Omar Qazi) and @tesla_truth (under the name "Steve Jobs"),

---

[2] Two of these false statements in ¶ 3 of the Qazi Declaration concern receipt of e-mails from Plaintiff. While these statements are not the focus of this motion, the fact that they are false weighs in favor of sanctions.

[3] The reason for Defendant Qazi's deliberate opacity surrounding which of the other three co-Defendants contacted him and why is unclear and further suggests bad faith on his part.

Defendant Qazi began using the @wholemarsblog handle, which matches the second header on his sub-Reddit page. In fact, Defendant Qazi's sub-Reddit mostly features near real-time links to posts on Twitter by the @wholemarsblog Twitter account. The account has often responded to points or questions about Defendant Qazi in the first person, using words such as "me," "my" and "I," and even referred to Defendant Qazi's 2018 mug shot as "my photo," indicating that Defendant Qazi is the account's operator. *See* ECF Nos. 47-1 and 48.

On May 23, 2020, two days after receiving Plaintiff's e-mail regarding waiver of service, Defendant Qazi used the @wholemarslog (which at the time lacked the "B" in "blog") account to post a modified song lyric: "Call me a fanboy, mock me, sue me…" Two days later on Memorial Day, May 25, 2020, Defendant Qazi's acknowledgement of the lawsuit against him was explicit. At 12:12 P.M. Pacific Time—two minutes before Plaintiff's father received an unexpected telephone call in Ohio from a male caller identified as "Private" purporting to be from Quinn Emanuel regarding this lawsuit—Defendant Qazi wrote, "It's time for the board of Plainsite to face justice for their crimes."[4] In response to that Twitter post, a convicted felon named Shawn Anthony Joyce (also known as Shawn Wylde) using Twitter as "@AFMusk" responded, "Is that lawsuit against Tesla & Omar legit? I can't imagine Greenspan not receiving a Rule 11 violation." Defendant Qazi responded two minutes later, "He will, but the lawyers he's opposing are pushing for criminal charges." Greenspan Declaration Exhibit A.

Ironically, Defendant Qazi was promising his thousands of followers on May 25, 2020 that Plaintiff would face Rule 11 sanctions in this lawsuit—the same one Defendant Qazi stated he "only" knew about on July 3, 2020 under penalty of perjury. This public conversation continued, full of false statements and misapprehensions about the legal system, but it was quite clear that Defendant Qazi knew exactly which lawsuit involving "Omar" and "Greenspan" Mr. Joyce was referring to, as there has only ever been one: this lawsuit.[5] Unprompted, Defendant

---

[4] Plaintiff's father is a Director of Think Computer Corporation and Think Computer Foundation, which run PlainSite.
[5] Under the name Shawn Wylde, Mr. Joyce later became the single largest known donor to the Qazi Defendants' legal defense fund, contributing at least $15,000 via GoFundMe.

Qazi further joked on Twitter about Plaintiff suing people—calling him "the inventor of suing"—on June 20, 2020. *Id*. Accordingly, Defendant Qazi had actual notice of this lawsuit at least as early as May 25, 2020, but possibly even on May 23rd—well before July 3, 2020.

Despite being aware of the lawsuit in May 2020, Defendant Qazi neither entered a *pro se* appearance on his own behalf nor began searching for legal representation to assist him and his company. Rather, he waited. With purchasing power of $15,408.01 in his Robinhood brokerage account as of June 4, 2020—which Defendant Qazi advertised on Twitter as part of a video ridiculing Tesla competitor Nikola Motors as he filmed himself buying put options on its stock— he had plenty of money, some of it undoubtedly thanks to gains in his TSLA shares, with which to hire counsel. Greenspan Declaration Exhibit B. Instead, he opted to wait a full month before launching a crowd-funding campaign on false pretenses so that he could pay the lawyers he needed with other people's money, not his own. Therefore, his counsel's further representation that the Qazi Defendants hired lawyers "[p]romptly on learning of this action" is simply false. ECF No. 44 at 4:3.

### 2. Counsel Filed An Inaccurate Certificate of Interested Entities Pursuant to Civil Local Rule 3-15 and Failed to Amend It

On July 16, 2020, counsel filed the required Certificate of Interested Entities pertaining to Defendants Qazi and Smick Enterprises, Inc., identifying "no such interest to report" "other than the named parties." ECF No. 43. This certification was false.

Defendant Qazi started an on-line GoFundMe campaign dedicated to his and his company's legal defense in this case, or in his words, to combat "deranged Tesla short-seller Aaron Greenspan," on July 6, 2020, and then promised his donors that they would receive refunds in the event of a legal victory. Greenspan Declaration Exhibit C. This promise cemented a "financial interest of any kind in the subject matter in controversy or in a party to the proceeding" for each donor as described by Civil Local Rule 3-15(a)(1)(i). Yet counsel for the Qazi Defendants disclosed none of the over 300 donors to the campaign to the Court, let alone the existence of the campaign itself. Many of the donors were anonymous, making the lack of disclosure particularly problematic.

When confronted with their lack of disclosure, counsel for the Qazi Defendants admitted, "You raise an interesting issue," but waited until after being served with this Motion to amend the filing. Even then, the amendment failed to accurately represent the interested entities or Qazi Defendants' conduct to the Court.

### B.  Counsel for the Qazi Defendants Misrepresented Facts To The Court Even When Facts Were Self-Evident

The Qazi Defendants were properly served with the FAC on July 2, 2020. Even before counsel formally appeared, they made every effort to deny and complicate that simple fact.

#### 1.  Counsel Falsely Claimed That the Qazi Defendants Were Never Served With the FAC, Then Falsely Claimed Service Was Improper

The last page of the FAC, page 82 of ECF No. 20, is incontrovertibly a Certificate of Service, accurately reflecting that the document was served on the Qazi Defendants on July 2, 2020 via U.S. Mail. Incredibly, in their Motion, counsel for the Qazi Defendants made the false and misleading statement of supposed fact that, "Plaintiff has not served Defendants with the Amended Complaint." ECF No. 44 at 4:2. Counsel also wrote, "Plaintiff has not served the Amended Complaint on Defendants." ECF No. 44 at 5:7. Five days later, in their opposition to Plaintiff's application for default with regard to the FAC, counsel for the Qazi Defendants shifted their stance, instead writing, "Defendants were not *properly* served with the Amended Complaint" (emphasis added). ECF No. 46 at 2:2. This later formulation contains within it an implicit admission that the Qazi Defendants *were* served—just not in a manner to counsel's liking.

Counsel's underlying rationale for why service was supposedly improper is styled as Plaintiff's purported failure to comply with Rule 5(a)(2) in both ECF No. 44 (at 5:4-7) and ECF No. 46 (at 2:4-6). Rule 5(a)(2) states, "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." In ECF No. 46, signed and filed by counsel on July 21, 2020, counsel specifically wrote, "Pursuant to Federal Rule of Civil Procedure ('Rule') 5(a)(2), full service must be made under Rule 4 where, as here, a defendant is in default and the plaintiff

asserts a new claim for relief against such a party." This was intended to mislead the Court, because even though the Qazi Defendants were in default on July 21, 2020, they were *not* in default *at the time of service* on July 2, 2020.[6]

Courts should "test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." FED. R. CIV. P. 11 Advisory Comm. Notes (1993 Amendments). Counsel knew that their clients were not in default at the time of service, rendering Rule 5(a)(2) inapposite and making service on their clients' last known address under Rule 5(b)(2)(C) effective as of July 2, 2020. In their Motion, they explicitly stated, "On June 30, 2020, Plaintiff applied for default against Defendants [D.E. No. 15], but his application was denied. [D.E. No. 16.] Thereafter, on July 2, 2020, Plaintiff filed an Amended Complaint. [D.E. No. 20.]" ECF No. 44 at 24-26.

There is no ambiguity that serving an amended complaint at a defendant's last known address constitutes valid service:

> "Because Rule 5 and not Rule 4 applies, service of the amended complaint was complete when plaintiffs sent it via first class mail. *See* FED. R. CIV. P. 5(b)(2)(B) (permitting service by '[m]ailing a copy to the *last known address* of the person served') (emphasis added). Proof of such service is clear from the record, as the trusts' attorney 'deposited copies of the [Amended Complaint] with the United States Post Office, directed to said Defendants at the last known address.' As a result, appellants' argument that the default judgment was void for lack of service fails."

*Employee Painters' Trust v. Ethan Enterprises*, 480 F. 3d 993 (9th Cir. 2007).

Counsel's subtle but important misrepresentations to the Court are significant and material. To start, these misrepresentations are the last li[n]e of defense between the Qazi Defendants and proper entry of default on both the initial Complaint *and* the FAC. Furthermore, they form the only legal basis for the Qazi Defendants' Motion. ECF No. 44 at 3:5-8. The

---

[6] Theoretically, Rule 5(a)(2) would only have been properly invoked in this case from the point at which the Clerk of Court entered default against the Qazi Defendants on July 7, 2020 until the point at which counsel for the Qazi Defendants e-mailed their introductory letter to Plaintiff on July 13, 2020, at which point Rule 5(b)(1) superseded Rule 5(a)(2). Since no pleadings were served on the Qazi Defendants during this brief seven-day window, Rule 5(a)(2) was never invoked, and never should have been.

argument that the filing of a FAC supersedes any default on an initial Complaint might have enough merit to cause a judge to set aside that entry of default—unless, of course, the defendants in question are *also* in default with regard to that FAC. That argument in turn hinges on whether the FAC was properly served. Without the argument that it was not, the entire Motion falls apart. Counsel for the Qazi Defendants made the deliberate decision to file their Motion knowing full well that it had no legal or factual basis whatsoever, and that they had no intent of responding to the FAC by the July 20, 2020 deadline (already reflecting a four-day extension built into the Federal Rules of Civil Procedure), instead blaming Plaintiff for failing to stipulate to an extension of time they did not merit due to their and their clients' bad faith. ECF No. 44. Then, they decided to file a similarly toothless Opposition on July 21, 2020 falsely claiming improper service, after the responsive pleading deadline had passed. ECF No. 46.

No deep inquiry into the facts of the case was necessary for the Qazi Defendants' counsel to get this right. They chose to deliberately ignore the Certificate of Service on the last page of the FAC; to deliberately gloss over the fact, which they knew, that their clients were *not* in default on July 2, 2020; to deliberately insist upon the application of an inapplicable Rule to the Court, twice; and to posture as though their acceptance of service of process was somehow conditional upon Plaintiff stipulating to a waiver or the Court setting aside default. Their actions were deliberate, intended to deceive, and intended to take advantage of Plaintiff's *pro se* status.

### 2. Counsel for the Qazi Defendants Knowingly Misrepresented a Deadline Pursuant to Rule 4(d) by Abusing Language and Math

Counsel for the Qazi Defendants also twice attempted to use deceit in order to convince Plaintiff to agree to a belated service of process waiver. First, in their July 13, 2020 introductory letter, counsel for the Qazi Defendants offered to "promptly complete the Waiver of Service of Summons form for the Amended Complaint, which would make our clients' responsive pleading due within 60 days," even though their clients already ignored one such waiver request and the FAC clearly states that it was served via U.S. Mail at the Qazi Defendants' last known address, making the responsive pleading deadline July 20, 2020. Greenspan Declaration Exhibit D. Then, in their Motion, counsel for the Qazi Defendants falsely proposed that "Defendants would

have had at least 30 days to complete the waiver of service form for, plus 60 days to respond to, the original Complaint under Federal Rule of Civil Procedure 4 (i.e., until August 19, 2020)." Motion at 7.

This kind of deceptive lawyer's trick—failing to specify any sub-section of Rule 4 and then abusing the word "plus" to justify bad math—is expressly forbidden pursuant to Rule 11(b)(3) and ¶ 23 of the Standing Order for Civil Cases Before Judge James Donato ("Misrepresentations of law or fact, however subtle, may result in sanctions and a referral to the District's Standing Committee on Professional Conduct."). In actuality, pursuant to Rule 4(d)(1)(F), which requires "a reasonable time of at least 30 days after the request was sent" for a defendant in the United States to return a waiver form; and pursuant to Rule 4(d)(3), which then specifies a deadline for a defendant in the United States answering the complaint "60 days after the *request* was sent" (emphasis added), the proper deadline would again, and only coincidentally, be July 20, 2020 for a request sent May 21, 2020. Tellingly, counsel for the Qazi Defendants acknowledged the 60-day interval in their initial letter to Plaintiff before misrepresenting it as a 90-day interval to the Court.

### C.  Counsel for the Qazi Defendants Brazenly Lied To Plaintiff Via E-Mail

Once Plaintiff forced counsel for the Qazi Defendants to acknowledge that they could not escape service of the FAC under Rule 5(b)(2)(E) given that they were registered with CM/ECF, causing counsel to needlessly accept service again by e-mail, they lied some more. In response to their e-mailed request for an extension of time to respond to the FAC, Plaintiff wrote:

> "That depends. Are you willing to admit that Omar Qazi placed the phone call to my parents' home on May 25th falsely representing himself as a law firm employee and/or lawyer, which would indicate—in addition to other evidence—that he has had two full months to analyze the various documents in this case, including the First Amended Complaint?"

Counsel responded:

> "Omar did not place any call to your parents on May 25th or any other date. Will you agree to stipulate to the requested extension of time?"

Plaintiff pointed out that this statement was provably false, replying with a recorded voicemail left for Plaintiff's father at his workplace by Defendant Qazi on October 15, 2019, which is referenced in ¶ 97 of the FAC.  Counsel responded with a "correction:"

> "I don't believe Omar placed a call to your parents on May 25.  I have not researched any other dates.  Will you agree to the requested extension of time?"

This response indicated both that counsel had no actual knowledge as to whether or not their client placed the phone call to Plaintiff's father on May 25th, in contrast to what was first represented ("Omar did not place any call"), and that counsel had no actual knowledge regarding other dates.  In other words, counsel's first statement was a total and complete lie made in violation of Rule 11(b)(3), State Bar of California Rule of Professional Conduct 4.1, and Northern District of California Guideline of Professional Conduct 8.  Greenspan Declaration Exhibit E.

### D.  The Qazi Defendants Have Escalated Their Unlawful Conduct Since The Commencement of This Litigation

#### 1.  While In Default, Defendant Qazi Lied Publicly About a Non-Existent Court Ruling In This Case and Used That Lie To Raise Money

Defendant Qazi began lying to the Court from the moment he belatedly appeared in this case. But Defendant Qazi's clearest, most obviously false statement is not actually found in the documents filed before this Court.  It is a lie he told the investing public *about* this Court, on July 13, 2020, before his counsel formally appeared, confirming that he had been closely following the proceedings even while in default.  At 12:38 P.M. Pacific Time, he wrote on his @wholemarsblog Twitter account unprompted, "The judge denied Aaron's motion and he will have to pay his own costs," alongside a screenshot of Plaintiff's own Twitter account specifically referring to ECF No. 39 (Plaintiff's Reply In Support Of Motion for Costs and Expenses Pursuant to Federal Rule of Civil Procedure 4(d)(2) for Service on Elon Musk) in this case.  Greenspan Declaration Exhibit F.

In fact, there was no such decision or anything remotely resembling such a decision. Neither Judge Donato nor any other judge had ruled upon that motion either way as of July 13,

2020, and the motion remains outstanding as of the filing of this Opposition. Defendant Qazi's statement was an unabashed lie designed to deliberately mislead the investing public about Plaintiff's chances of success in this case—a case Defendant Qazi had yet to appear in, despite being a named party.[7] And while Plaintiff's motion may certainly still be denied, the fact that Defendant Qazi would lie about the existence and substance of a supposed federal judicial decision *affecting a case he had himself at that point failed to appear in* is staggeringly dishonest and a clear indication of his bad faith.

After his false statement about the Court's ruling on Plaintiff's motion for costs, the Qazi Defendants were able to raise an additional $5,800 via GoFundMe for their legal defense. Greenspan Declaration Exhibit C.

### 2. The Qazi Defendants Set Up a Russian Server To Facilitate Unlawful Conduct After the First Amended Complaint Was Filed

Since the FAC was filed, Defendant Qazi has made dozens more false and misleading statements concerning Plaintiff, including many of the same false claims that are already part of the FAC, but also including some new fabrications that are particularly contemptible and completely baseless. Furthermore, in defiance of the copyright claim already in the FAC and numerous DMCA takedown notices, Defendant Qazi published 32 images of pages taken wholesale from Plaintiff's copyrighted book. Initially these images were published in the United States, but after his *third* internet service provider removed infringing content pursuant to 17 U.S.C. § 512(c), he notified his Twitter followers that he had created a "backup copy" of the infringing images on a different server, which he collectively misconstrued as a book "reivew" *[sic]*. Greenspan Declaration Exhibit G. Defendant Qazi shielded that server's IP address by using the CloudFlare distributed network of servers, but a DMCA request sent to CloudFlare revealed its host to be hostkey.ru, located in Moscow in the Russian Federation. Greenspan Declaration Exhibit H.

---

[7] At 12:38 P.M. when Defendant Qazi authored the post, his counsel had not yet sent their opening letter to Plaintiff. That letter was transmitted by e-mail at 5:35 P.M.

Although it is premature to argue whether the Qazi Defendants' content, directed at users in the United States but hosted on a Russian server, falls within this Court's jurisdiction for the purposes of the Copyright Act, the fact is that the content only arrived in Russia because of the Qazi Defendants' deliberate bad faith efforts to introduce a jurisdictional quandary for this Court where previously there was none.  Counsel should be required to explain their role in these events, if any.

## V.   CONCLUSION

Counsel for the Qazi Defendants only formally appeared in this case on July 16, 2020.  Since then, they have made false and misleading representations virtually non-stop, as have their clients.  This Court should use its authority under Rule 11 to send a clear message that this kind of behavior will not be tolerated.  ECF Nos. 44 and 46 should be stricken from the record and the Qazi Defendants and their counsel should be made to pay a combined monetary sanction of not less than $10,000 to the Court.

Dated: August 19, 2020

Aaron Greenspan
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org