1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**AARON GREENSPAN**,

        Plaintiff,

    v.

**OMAR QAZI**, et al.,

        Defendants.

Case No. 3:20-cv-03426-JD

**DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CIV. PROC. CODE §425.16, AND MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Time:    10:00 a.m.
Date:    December 10, 2020
Before:  The Hon. James Donato
Ctrm.:   11, 19th Floor

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE** that on December 10, 2020 at 10:00 a.m., in the above-titled

3  Court, in Courtroom 11, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, CA

4  94102, Defendants Omar Qazi and Smick Enterprises, Inc. (collectively, "Smick Defendants"), by

5  and through counsel, will and hereby do make the following motions:

6      • Special Motion to Strike Under Code of Civil Procedure ("CCP") §425.16 ("anti-

7  SLAPP"): The Court should strike the following claims in Plaintiff's Second Amended Complaint

8  ("SAC") as to the Smick Defendants: a) Count I for Libel Per Se, b) Count III for Intentional

9  Infliction of Emotional Distress ("IIED"), c) Count IV for stalking, and d) Count VIII for Violation

10  of the California Unfair Competition Law ("UCL"). If they prevail, the Smick Defendants will

11  seek their attorney's fees and costs under CCP §425.16(c)(1).

12      • Motion to Dismiss Pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6): The Court should

13  dismiss all claims in the SAC against the Smick Defendants, which are not stricken under anti-

14  SLAPP, pursuant to Rule 12(b)(6) for failure to state a claim. If they prevail on their motion to

15  dismiss Counts V, VI, or VII, the Smick Defendants will seek their attorney's fees and costs under

16  17 U.S.C. §§505 and 1203.

17      This motion is based on this notice of motion and motion, the supporting memorandum of

18  points and authorities, the declaration of Karl S. Kronenberger in support of this motion, the

19  pleadings and other papers on file in this action, and any other evidence that may be offered at a

20  hearing if necessary.

21

22  Respectfully Submitted,

23  DATED: September 25, 2020              **KRONENBERGER ROSENFELD, LLP**

24

25                                        By:  ____s/ Karl S. Kronenberger____
                                                 Karl S. Kronenberger
26

27                                        Attorneys for Defendants Omar Qazi and Smick
                                          Enterprises, Inc.
28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................2

STATEMENT OF FACTS ...........................................................................................2

A.  The Parties ...........................................................................................................2

B.  The Parody Twitter Accounts, Websites, and Related Conduct ...........................3

ARGUMENT ...............................................................................................................5

A.  Standard of Law .................................................................................................5

B.  The state law claims should be stricken under anti-SLAPP...............................6

   1.   The conduct at issue arises from protected activity .....................................6

   2.   Plaintiff cannot show a probability of prevailing on his state law claims ...................7

      a.   Plaintiff has not stated a claim for libel per se.......................................8

         i. The statements are non-actionable opinion and rhetoric. ...................8

         ii. Certain claims are barred by the statute of limitations .....................11

      b.   Plaintiff has not stated a claim for IIED ...............................................11

         i. Plaintiff's IIED claim is duplicative of his libel claim .....................11

         ii. Plaintiff has not alleged "outrageous" conduct ...............................12

         iii. Plaintiff has not alleged severe emotional distress..........................12

   c.   Plaintiff has not stated a claim for stalking under Civil Code §1708.7 ...................13

   d.   Plaintiff has not alleged a claim under the UCL......................................14

C.   Plaintiff has not stated any viable claim against the Smick Defendants........................15

   1.   Plaintiff has failed to state a claim for copyright infringement. ...................15

   2.   Plaintiff has failed to state a claim for removing copyright management information under 17 U.S.C. §1202(b) ...................16

   3.   Plaintiff fails to state a claim for DMCA misrepresentation ...................17

   4.   Plaintiff fails to state a claim for securities market manipulation ...................18

CONCLUSION...............................................................................................................18

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) .................................................................................. 6

4

*Blazheiev v. Ubisoft Toronto Inc.*,
    2018 WL 3417481 (N.D. Cal. July 13, 2018) ........................................................ 13

5

*Bolton v. City of Berkeley*,
    2019 WL 6250927 (N.D. Cal. Nov. 22, 2019) ....................................................... 13

6

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ................................................................................................ 16

7

*Century Sur. Co. v. Prince*,
    782 F. App'x 553 (9th Cir. 2019) ............................................................................. 6

8

*Chaker v. Mateo*,
    209 Cal. App. 4th 1138 (2012) ................................................................................. 9

9

*Christensen v. Superior Court*,
    54 Cal. 3d 868 (1991) ............................................................................................ 12

10

*Equals Three, LLC v. Jukin Media, Inc.*,
    139 F. Supp. 3d 1094 (C.D. Cal. 2015) .................................................................. 16

11

*Falkner v. Gen. Motors LLC*,
    393 F. Supp. 3d 927 (C.D. Cal. 2018) .................................................................... 17

12

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019) ............................................................................................. 15

13

*Free Speech Sys., LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) .................................................................. 16

14

*Ganske v. Mensch*,
    2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) .......................................................... 2

15

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007) ..................................................................................... 7

16

*Grenier v. Taylor*,
    234 Cal. App. 4th 471 (2015) ............................................................................... 7, 8

17

*Groupion, LLC v. Groupon, Inc.*,
    859 F. Supp. 2d 1067 (N.D. Cal. 2012) .................................................................. 14

18

*Heimrich v. Dep't of the Army*,
    947 F.3d 574 (9th Cir. 2020) .................................................................................... 6

19

*Henderson v. Office & Prof'l Employees Int'l Union*,
    143 F. App'x 741 (9th Cir. 2005) ........................................................................... 12

20

*Hernandez v. Specialized Loan Servicing, LLC*,
    2015 WL 350223 (C.D. Cal. Jan. 22, 2015) .......................................................... 14

21

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) .................................................................................... 7

22

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) ................................................................................... 11, 12

23

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) .................................................................... 14

24

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................................... 14

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

*Krinsky v. Doe 6*,
    159 Cal. App. 4th 1154 (2008)................................................................ 8, 9, 10

*Leidholdt v. L.F.P. Inc*,
    860 F.2d 890 (9th Cir. 1988) ........................................................................ 10

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
    780 F. Supp. 1283 (N.D. Cal. 1991) .............................................................. 16

*Lieberman v. Fieger*,
    338 F.3d 1076 (9th Cir. 2003) ....................................................................... 11

*Maloney v. T3Media, Inc.*,
    94 F. Supp. 3d 1128 (C.D. Cal. 2015) ............................................................. 6

*Mattel, Inc. v. Walking Mountain*,
    353 F.3d 792 (9th Cir. 2003) ......................................................................... 16

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ....................................................... 9, 10

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) ........................................................................ 7

*Obsidian Fin. Grp., LLC v. Cox*,
    740 F.3d 1284 (9th Cir. 2014) ...................................................................... 8, 9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ........................................................................ 6, 8

*Powers v. Caroline's Treasures Inc.*,
    382 F. Supp. 3d 898 (D. Ariz. 2019) ............................................................. 17

*Price v. Operating Engineers Local Union No. 3*,
    195 Cal. App. 4th 962 (2011) .......................................................................... 8

*Rios v. Bank of Am.*,
    2013 WL 6199145 (E.D. Cal. Nov. 27, 2013) ............................................... 14

*RoyaltyStat, LCC v. IntangibleSpring Corp.*,
    2018 WL 348151 (D. Md. Jan. 10, 2018) ...................................................... 15

*Rudwall v. BlackRock, Inc.*,
    289 F. App'x 240 (9th Cir. 2008) .................................................................. 11

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ........................................................................... 6

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*,
    804 F. App'x 668 (9th Cir. 2020) .................................................................. 17

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 (N.D. Cal. 2011) ......................................................... 18

*Shropshire v. Canning*,
    2011 WL 90136 (N.D. Cal. Jan. 11, 2011) .................................................... 18

*That v. Alders Maint. Assn.*,
    206 Cal. App. 4th 1419 (2012)....................................................................... 14

*Twitter, Inc. v. Sessions*,
    263 F. Supp. 3d 803 (N.D. Cal. 2017) ........................................................... 15

*Underwager v. Channel 9 Australia*,
    69 F.3d 361 (9th Cir. 1995)............................................................................. 8

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019)................................................................... 15, 16

*Wong v. Jing*,
    189 Cal. App. 4th 1354 (2010)....................................................................... 12

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*World Wide Rush, LLC v. City of Los Angeles*,
  606 F.3d 676 (9th Cir. 2010) ...................................................................................... 15

**Statutes**

17 U.S.C. §107 ............................................................................................................ 15
17 U.S.C. §411(a) ....................................................................................................... 15
17 U.S.C. §501 ............................................................................................................ 15
17 U.S.C. §505 .............................................................................................................. 1
17 U.S.C. §512(f) ................................................................................................... 17, 18
17 U.S.C. §1202(b) .................................................................................................. 1, 17
17 U.S.C. §1203 ............................................................................................................ 1
Bus. & Prof. Code §17200 ......................................................................................... 14
Civ. Proc. Code §340(c) ............................................................................................. 11
Civ. Proc. Code §425.16, *et seq.* .......................................................................... *passim*
Civ. Code §1708.7 .................................................................................................. 1, 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KRONENBERGER ROSENFELD**
150 Post Street, Suite 520 San Francisco, CA 94108

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendants Omar Qazi and Smick Enterprises, Inc. request that the Court strike portions of and dismiss the entirety of Plaintiff's Second Amended Complaint as to the Smick Defendants.

The parties, who have opposing viewpoints about Tesla stock, have a history of engaging in raucous public debate and exchanging insults on Twitter and other websites. Plaintiff, who has attracted both praise and enemies online, alleges that the Smick Defendants' Tweets and other online content defamed and harassed him.

However, "[i]f the Internet is akin to the Wild West, as many have suggested, Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire. It is in this context of battle by tweet that the conduct at issue in this defamation case was born." *Ganske v. Mensch*, No. 19-CV-6943 (RA), 2020 WL 4890423, at *1 (S.D.N.Y. Aug. 20, 2020).

The Smick Defendants' alleged Tweets, which claim that Plaintiff is a "rule breaker," "fake," "clown," and "criminal" who engaged in "tax fraud" through a "fake charity," "stole DoD documents," and "extorted $250,000 from Mark Zuckerburg" are classic examples of non-actionable rhetoric and hyperbole occurring in a virtual "shooting gallery." While such language may be distasteful to some, no reasonable reader would understand these statements as assertions of fact. As such, the Court should strike Plaintiff's state law claims against the Smick Defendants (i.e. libel, IIED, stalking, and violation of the UCL) under California's anti-SLAPP statute, CCP §425.16. Further, the Court should dismiss all claims against the Smick Defendants, which are not stricken, pursuant to Rule 12(b)(6) for failure to state a claim because they are based on the same, non-actionable rhetoric, hyperbole, and parody.

### STATEMENT OF FACTS

While the Smick Defendants dispute Plaintiff's factual allegations, including claims that Mr. Qazi posted or made certain statements, Plaintiff's allegations are outlined below.

**A.    The Parties**

Defendant Elon Musk is the CEO of Defendant Tesla, Inc. (collectively, "Tesla Defendants"). (SAC ¶2.) Mr. Qazi is a Tesla shareholder and customer. (SAC ¶7.) Mr. Qazi

2

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

operates Smick Enterprises, Inc. (SAC ¶6.) Plaintiff is a data journalist who runs the website www.plainsite.org. (SAC ¶23.) Plaintiff has been the subject of numerous internet posts and online debates, many of which include fiery insults. (SAC ¶¶128, 151 & Exs. B & I.) For example, Plaintiff alleges that he was publicly referred to by third parties as a "psychopathic incel" and a "likely mass shooter." (SAC ¶¶128, 151 & Exs. B & I.)

Over the years, Plaintiff has sought out and been covered by major media outlets about a variety of topics, including the New York Times, Business Insider, BB News, the Sun, and TechCrunch. (Declaration of Karl S. Kronenberger in Support of Smick Defendants' Anti-SLAPP Motion and Motion to Dismiss ("Kronenberger Decl.") ¶¶2–33 & Exs. A–FF.) Additionally, Plaintiff sought major media coverage about his dispute with the Smick Defendants and this lawsuit. (SAC Ex. E (copying LA Times, Wall Street Journal, Bloomberg, and Business Insider on Notice of Intent to Sue.) Plaintiff has also used his own websites, www.aarongreenspan.com and www.plainsite.org, to report on claimed issues within the tech industry. (Kronenberger Decl. ¶¶2–9 & Exs. A–H.) As an example, Plaintiff has used his PlainSite Twitter account to disseminate numerous posts about Elon Musk and Tesla, including by "tagging" Mr. Musk in a number of posts, which are viewable by Mr. Musk's over 35 million followers. (Kronenberger Decl. ¶¶10–12 & Exs. I–K.) Finally, this lawsuit itself has generated substantial coverage in major media outlets. (Kronenberger Decl. ¶¶18–21 & Exs. Q–T.)

**B.     The Parody Twitter Accounts, Websites, and Related Conduct**

Plaintiff attributes a number of allegedly defamatory and harassing Tweets and other online communications to Mr. Qazi, as outlined below.

@Tesla_Truth. Plaintiff alleges that Mr. Qazi used the "parody" Twitter account, @Tesla_Truth, to publish defamatory and harassing statements. (SAC ¶¶145, 151 & Ex. B.) The @Tesla_Truth account was operated under the name and photograph of the deceased Apple founder, i.e. "Steve Jobs Ghost." (SAC Ex. B.) The @Tesla_Truth Twitter account was followed by at least 10,000–20,000 Twitter users. (SAC ¶60.) As Exhibit B to the SAC shows, the @Tesla_Truth account was used to engage in back-and-forth squabbles using fiery language and insults about a variety of topics, including Plaintiff. (SAC Ex. B.) Plaintiff claims that Mr. Qazi

did the following through the @Tesla_Truth parody Twitter account:

- Posted documents from Plaintiff's restraining order proceedings with third party Diego MasMarques, Jr. (SAC ¶¶27–33, 40, 121 & Ex. H);

- Hurled insults, such as "Rule breaker / law breaker," "he killed me for saying he didn't invent facebook," "learning disability due to aspergers," "moron," and "After he dies I'll keep telling people he sucked" (SAC ¶¶66, 151 & Ex. B);

- Made unfounded "fraud" claims, such as "complete fraud," "fraudulently registered as a non-profit charity," "fraudulent 'Think Foundation' . . . and they can deduct donations from their income tax!!!," "How will Aaron Greenspan, a criminal guilty of felony tax fraud with no lawyer, do in court against two guys with a lot more money than him?," "clown who thinks he invented facebook and comited felony tax fraud," and "previously stole DoD documents" (SAC ¶151 & Ex. B);

- Posted "The only thing that has been revealed here is that Aaron Greenspan has child pornography at his house" (SAC ¶151 & Ex. B);

- Posted that Plaintiff "is a serial rapist. He enters his victims lives unannounced and unexpected, and rapes them while they're going about their lives, with their friends" (SAC ¶151 & Ex. B);

- Displayed Plaintiff's Notice of Intent to Sue with a screenshot of Mr. Musk's reply email stating "Does the psych ward know you have a cell phone?" (SAC ¶¶69–71).

@PlainShite. Plaintiff claims that Mr. Qazi created the @PlainShite Twitter account, which mocked Plaintiff's PlainSite website and contained statements such as, "It's plain to see – we are full of shit," "It took a lot of hard work to break every single one of these rules with our fraudulent charity," and "we are running a fraudulent non-profit." (SAC ¶¶63, 105, 151 & Ex. B.)

www.plainshit.com, www.plainshit.org, and www.plainsiite.org. Plaintiff claims that Mr. Qazi created the websites www.plainshit.com, www.plainshit.org, and www.plainsiite.org, which displayed Plaintiff's copyrighted photographs and made claims such as "This fraudulent charity is FULL OF SHIT . . . Have you been harassed, intimidated, threatened or targeted for extortion by Aaron Greenspan . . ." (SAC ¶¶82, 147 & Ex. H.)

4

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

@WholeMarsBlog & wholemars.org. Plaintiff claims that Mr. Qazi posted about Plaintiff from the @WholeMarsBlog Twitter account and the wholemars.org website, stating "It's time for the board of Plainsite to face justice for their crimes," "Plainsite's tax fraud, harassment of Tesla customers, and short and distort fraud," "Maybe one day he'll be charged too . . . he is a criminal," "Why does Aaron Greenspan threaten his critics . . . while suppressing positive voices through intimidation," "Aaron Greenspan abuses his charity . . . he must pay back the taxes he illegally avoided," "Aaron Greenspan is a cyberstalker who has been threatening and harassing Omar and others . . . ," and "What's better than making boatloads of money on TSLA stonk? Knowing it came directly out of the bank accounts of those arrogant asshole shorts. Suck our balls Aaron!" These statements attracted comments and insults from other parody accounts for "Elon," "Musk," and "Tesla." (SAC ¶151 & Ex. B.)

vagfoundation.org. Plaintiff claims that Mr. Qazi posted about him on the website vagfoundation.org, stating "Have you been a victim of harassment, intimidation, extortion, sexual assault, identity theft, or cyberstalking by Aaron Greenspan? . . . The victims of Aaron Greenspan Foundation is gathering evidence of Aaron Greenspan's crimes . . ." (SAC Ex. H.)

Screed. Plaintiff claims Mr. Qazi published a 17,600-word "screed"—which reads like a personal blog and starts with "Written by Steve Jobs . . . Steve Jobs is Dead." (SAC ¶¶112, 136–137 & Ex. I at p. 2, 39.) The "screed" contains statements such as "Greenspan became more and more enraged, and also became worried about my allegations of his tax fraud and misconduct." (SAC ¶151 & Ex. I at 52.) Third parties added judgmental asides, such as that Plaintiff had "tertiary syphilis," "kidney stones," and "anal pain chlamydia." (SAC Ex. I at 38.)

Other Communications. Finally, Plaintiff alleges Mr. Qazi or others harassed him anonymously by making a phone call pretending to be AT&T, communicating with his disabled brother, using the PlainSite Contact Us form with the message "M0ron," subscribing Plaintiff to a "Psych Central Newsletter," creating a profile for Plaintiff on Pornhub, and adding false content about Plaintiff on Wikipedia. (SAC ¶¶38, 103, 113–114, 117, 119.)

## ARGUMENT

**A.    Standard of Law**

The Smick Defendants move to strike Plaintiff's state law claims under California's anti-SLAPP statute, CCP §425.16. Anti-SLAPP provides for striking state law claims where: (1) the defendant makes a prima facie showing that the claims arise from protected activity, and (2) if such a showing is made, the plaintiff fails to demonstrate legally sufficient claims to sustain a favorable judgment. *See Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). Federal Courts review anti-SLAPP motions under Rule 12(b)(6) if the defendant only challenges the legal sufficiency of the plaintiff's claim. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018); *Century Sur. Co. v. Prince*, 782 F. App'x 553, 557 (9th Cir. 2019) (plaintiff not entitled to discovery where anti-SLAPP motion does not challenge the factual sufficiency of claims). With their anti-SLAPP motion, the Smick Defendants only challenge the SAC under the Rule 12(b)(6) standard.[1]

The Smick Defendants further move to dismiss all remaining claims against them pursuant to Rule 12(b)(6), which requires sufficient factual matter to state a claim for relief that is plausible on its face. *See Heimrich v. Dep't of the Army*, 947 F.3d 574, 577 (9th Cir. 2020). Moreover, claims sounding in fraud are subject to the heightened standard of Rule 9(b), which requires the plaintiff to state with particularity the circumstances constituting the fraud. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).

**B.      The state law claims should be stricken under anti-SLAPP.**

The Court should strike Plaintiff's state law claims under anti-SLAPP because Plaintiff's claims arise from protected activity, and Plaintiff has not stated legally viable claims.

**1.      The conduct at issue arises from protected activity.**

Under CCP §425.16(e)(3), a statement is protected if it is made in a public forum in connection with an issue of public interest. Both elements are satisfied here.

Public Forum: Publicly-accessible websites qualify as public fora under anti-SLAPP. *See Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th

---

[1] Because the Smick Defendants only rely on external evidence regarding the first prong of anti-SLAPP, this motion is not transformed into a summary judgment motion. *See Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 833.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Cir. 2017). Because the statements at issue were published on Twitter and other publicly-accessible websites, they were made in public fora.

Issue of Public Interest: California's anti-SLAPP law does not define "an issue of public interest." *See Grenier v. Taylor*, 234 Cal. App. 4th 471, 481–82 (2015). However, the public interest requirement must be construed broadly so as to encourage participation by all segments of our society in vigorous public debate related to issues of public interest. *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007). California courts have defined an issue of public interest as "any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). Given this broad meaning, California courts have found that a public issue is implicated if the subject of the statement or activity underlying the claim (1) is a person in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involves a topic of widespread, public interest. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010)

Here, Plaintiff has repeatedly thrust himself into the public eye as evidenced by his solicitation of news coverage from major media outlets. (Kronenberger Decl. ¶¶2–33 & Exs. A–FF.) Moreover, Plaintiff concedes that the statements at issue involve a topic of widespread interest, alleging, "[t]hese harassing statements were read by a wide audience of at least 10,000-20,000 Twitter followers." (SAC ¶60.) Further, Plaintiff concedes that "[m]any of these statements were published specifically to promote Defendant Tesla's stock, its products, and its CEO, Defendant Musk . . . ," an issue of public concern. (SAC ¶60.) Finally, the news coverage generated by Plaintiff's filing of this lawsuit indicates that there is widespread interest in the statements underlying the lawsuit. (Kronenberger Decl. ¶¶10–12 & Exs. I–K.) In fact, Plaintiff voluntarily solicited major media coverage of this dispute. (SAC Ex. E.)

Because Plaintiff thrust himself into the public eye and admits that the statements at issue are of widespread, public interest, the Smick Defendants have satisfied anti-SLAPP's first prong.

**2.      Plaintiff cannot show a probability of prevailing on his state law claims.**

To withstand the Smick Defendants' anti-SLAPP motion, Plaintiff must demonstrate a

probability of prevailing on his state law claims. *See* CCP §425.16(b)(1). Because the anti-SLAPP motion attacks the pleadings, Plaintiff must show that each challenged cause of action is legally sufficient to sustain a favorable judgment. *See Planned Parenthood Fed'n of Am.*, 890 F.3d at 834. The Court should grant the anti-SLAPP motion because Plaintiff has not alleged legally sufficient state law claims, all of which are based on opinion-laden, hyperbolic, and rhetorical statements.

### a.   Plaintiff has not stated a claim for libel per se.

A claim for libel requires a showing of: (1) a statement of fact, (2) about plaintiff, (3) that is published, (4) false, (5) defamatory, (6) unprivileged, (7) with fault, and (8) causes harm. *See Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011); *Grenier*, 234 Cal. App. 4th at 486. Plaintiff has not alleged a viable claim for libel because the statements at issue constitute non-actionable statements of opinion, hyperbole, and rhetoric, rather than statements of fact, and certain statements are barred by the statute of limitations.

### i.   The statements are non-actionable opinion and rhetoric.

To state a claim for libel, a plaintiff must identify a provably false statement, i.e., one that can reasonably be interpreted as stating actual facts about the plaintiff. "When a defamation action arises from debate or criticism that has become heated and caustic, as often occurs when speakers use Internet chat rooms or message boards, a key issue before the court is whether the statements constitute fact or opinion." *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1174 (2008). In determining whether a statement contains an assertion of objective facts or constitutes opinion, rhetoric, or hyperbole, courts consider: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).

In *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1293 (9th Cir. 2014), the Ninth Circuit reviewed blog posts accusing individuals of "illegal activity," including "corruption," "fraud," "deceit on the government," "money laundering," "harassment," "tax crimes," and "fraud against the government," and claiming that one individual paid off "media" and "politicians" and may

have hired a hit man to kill her. 740 F.3d at 1293. Reviewing the three factors relating to factual assertions, the court found that: (1) the general tenor of the blog posts negated the impression that the author was asserting objective facts, (2) hyperbolic language, such as "immoral," "really bad," "thugs," "evil doers," and "hired a hit man to kill her," or that "the entire bankruptcy court system is corrupt," dispelled any reasonable expectation that the statements asserted facts, and (3) in the context of a non-professional website containing consistently hyperbolic language, the posts were not sufficiently factual to be proved true or false. *See id.* at 1293–94.

Other cases have similarly afforded constitutional protection for rhetorical hyperbole, vigorous epithets, and lusty and imaginative language, particularly on the internet. *See, e.g., Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (defendant's online statements that plaintiff was a "fraud," "criminal," had acted illegally, had committed perjury, was dishonest, was "manipulative," and carried on "exploitative business relationships" were hyperbole); *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1149 (2012) (ex-girlfriend's mother's online statements that ex-boyfriend was "deadbeat dad," "may be taking steroids," people "should be scared" of him, and that he had picked up street walkers and homeless drug addicts, were non-actionable opinion); *Krinsky v. Doe 6*, 159 Cal. App. 4th at 1159 (finding "crooks" and "fake medical degree" non-actionable opinions).

Here, the Smick Defendants' alleged statements, including "Statements 1-45" (SAC ¶151), are non-actionable rhetoric, opinion, and hyperbole made in the context of a "virtual shooting gallery." No reasonable person would understand these statements as assertions of facts. First, the general tenor of the Twitter accounts and related websites, such as "vagfoundation.org" and the "screed" starting with "Written by Steve Jobs . . . Steve Jobs is Dead," negate the impression that the publishers were asserting objective facts. Second, the statements must be viewed in the context of the ongoing online disputes in which they were posted, and which include regular insults about Plaintiff couched in loose and figurative language from multiple authors. Third, the specific statements at issue use loose, figurative, and hyperbolic language, negating any impression of an assertion of fact. As examples, the statements hurled insults, such as "clown," "Rule breaker," "he killed me for saying he didn't invent facebook," and "After he dies I'll keep telling people he

**SMICK DEFENDANTS' NTC OF MTN AND MTN TO STRIKE AND DISMISS; MPA**

sucked." Given this context, a reasonable viewer would understand the statements as "sticks and stones" insults hurled as part of an online squabble, as summarized below.

Fraud: Plaintiff alleges that the Smick Defendants made numerous statements accusing him of fraud and other non-specific criminal activity (e.g., "It took a lot of hard work to break every single one of these rules with our fraudulent charity, but we pulled it off"; "he did, it's fraudulently registered as a non-profit charity."). Courts have held that loose online accusations of criminal conduct, including fraud, may well be understood as non-actionable hyperbole. *See, e.g.*, *Nicosia*, 72 F. Supp. 2d at 1104 (in context, defendant's assertions on her website that plaintiff was a "fraud," a "criminal," and had acted illegally were mere hyperbole).

Sex, Rape, and Child Pornography: Plaintiff alleges that the Smick Defendants made statements accusing Plaintiff of possessing child pornography and having certain sexual fixations (e.g., "Strange how Aaron mentions that he think *[sic]* Diego wants to 'get in his pants'. Sounds like may be revealing some deeper desires there"; "The only thing that has been revealed here is that Aaron Greenspan has child pornography at his house. I do not."). Plaintiff also claims that the Smick Defendants accused him of rape, "Aaron Greenspan is a serial rapist. He enters his victims lives unannounced and unexpected, and rapes them while they're going about their lives, with their friends." In the context of a heated online debate, accusations of far-fetched sexual deviance are not taken seriously by readers. *See, e.g.*, *Krinsky*, 159 Cal. App. 4th at 1176–77 (no reasonable reader would take internet post seriously, though unquestionably vulgar and insulting, which stated "I will reciprocate felatoin [*sic* ] with Lisa even though she has fat thighs, a fake medical degree, 'queefs' and has poor feminine hygiene."); *Leidholdt v. L.F.P. Inc*, 860 F.2d 890, 894 (9th Cir. 1988) (in context, statements that plaintiff was "sexually repressed," believed "sex is humiliating," and hated men, sex, and herself would be understood as exaggerated criticism).

Inventing Facebook: Plaintiff claims that the Smick Defendants falsely stated that Plaintiff did not invent Facebook. These statements could only be viewed as opinions. Moreover, no reasonable person believes that Plaintiff invented Facebook.

Asperger's Syndrome/Psych Ward: Plaintiff claims that Defendants published statements that Plaintiff has Asperger's syndrome and is held in a psychiatry ward. A statement that a person

10

has Asperger's is not defamatory because there is nothing disparaging about having that medical condition. More importantly, loose and rhetorical criticisms of a person's mental health in online disputes are not taken seriously by reasonable people. *See, e.g.*, *Lieberman v. Fieger*, 338 F.3d 1076, 1079–80 (9th Cir. 2003) (attorney's reference to psychiatrist as "Looney Tunes," "crazy," "nuts," and "mentally imbalanced," were not actionable where no reasonable viewer would have taken the statements as factual).

<u>Miscellaneous Statements</u>: Finally, Plaintiff claims that a few peculiar statements were defamatory, such as "I didn't worry when Aaron Greenspan said Elon paid me to kill him because it wasn't true"; and "to the police: if I am found dead in mysterious circumstances, it was almost certainly aaron greenspan he killed me for saying he didn't invent facebook (he didn't)." Contrary to Plaintiff's allegations, no reasonable person would believe from these statements that Plaintiff is a murderer or that Plaintiff accused Defendant Musk of hiring an assassin to kill him.

In summary, because no reasonable person would understand Plaintiff's alleged statements as factual pronouncements, they do not support a libel claim.

### ii.     Certain claims are barred by the statute of limitations.

Defamation claims have a one-year statute of limitations. CCP §340(c). Thus, claims prior to the statute of limitations, such as "Statement 1" from January 2019, are time barred. (SAC ¶151.)

### b.     Plaintiff has not stated a claim for IIED.

A claim for IIED requires: (1) outrageous conduct, (2) at plaintiff, (3) with intent or reckless disregard, (4) causing (5) severe emotional distress. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009). Here, Plaintiff has failed to state a viable IIED claim.

### i.     Plaintiff's IIED claim is duplicative of his libel claim.

When an IIED claim is based on the same factual allegations as a libel claim, the IIED claim must be dismissed. *See Rudwall v. BlackRock, Inc.*, 289 F. App'x 240, 242 (9th Cir. 2008). Because most of the bases for Plaintiff's IIED claim are the same as for Plaintiff's libel claim (9 of 14 categories of listed behavior), Plaintiff's IIED claim must be dismissed. (SAC ¶194.) The few remaining bases for Plaintiff's IIED claim do not constitute outrageous conduct and did not cause Plaintiff severe emotional harm, as discussed below.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

### ii.    Plaintiff has not alleged "outrageous" conduct.

2       Outrageous conduct must be so extreme as to go beyond all bounds of decency tolerated

3   by society; mere indignities, insults, threats, annoyances, petty oppressions, and the like are not

4   enough. *See Hughes*, 46 Cal. 4th at 1050–51. In some circumstances, a district court can properly

5   decide whether conduct is outrageous as a matter of law. *See Henderson v. Office & Prof'l*

6   *Employees Int'l Union*, 143 F. App'x 741, 744 (9th Cir. 2005).

7        When Plaintiff's IIED claim is stripped of conduct that also serves as a basis for his

8   defamation claim, the remaining conduct does not constitute outrageous conduct as a matter of

9   law. Specifically, the remaining alleged misconduct is: a) a prank phone call to Plaintiff

10  impersonating the phone company, b) a communication with Plaintiff's brother where Mr. Qazi

11  supposedly wrote, "hi simon / how are you?", c) the imitation of Plaintiff's family on websites, d)

12  the creation of an account in Plaintiff's name on a pornographic website; and e) the use of

13  expletives in computer code. Given the realities of internet banter and the context of Plaintiff's

14  online sparring with Mr. Qazi, the above-referenced conduct is not "outrageous" beyond mere

15  "sticks and stones" insults and indignities. Thus, Plaintiff has not stated a viable IIED claim.

16

### iii.    Plaintiff has not alleged severe emotional distress.

17       To show severe emotional distress for an IIED claim is a "high bar." *See  Hughes*, 46 Cal.

18  4th at 1051; *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010) (lost sleep, upset stomach, and

19  generalized anxiety, along with conclusory allegation of suffering "severe emotional damage," did

20  not reflect severe emotional distress). Moreover, the cause of the emotional distress must have

21  been directed toward the plaintiff. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903–06

22  (1991).

23       As an initial matter, Plaintiff has not linked his supposed emotional distress to conduct that

24  is not duplicative of Plaintiff's libel claim. (SAC ¶¶194, 199, & 211–212.) Moreover, while

25  Plaintiff claims that he lost "work hours" documenting the alleged misconduct, was gravely

26  concerned that Mr. Qazi was communicating with third party Diego MasMarques, Jr., and was

27  further gravely concerned about Mr. Qazi's communications with Plaintiff's brother who is

28  severely disabled, such allegations do not reflect severe emotional distress. Finally, several of

12          **SMICK DEFENDANTS' NTC OF MTN AND**
                                                                                         **MTN TO STRIKE AND DISMISS; MPA**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    Plaintiff's allegations are not actionable as they relate to conduct by anonymous actors and/or

2    towards Plaintiff's family members rather than Plaintiff. (*e.g.*, SAC ¶209.) Thus, Plaintiff's IIED

3    claim fails.

4          **c.      Plaintiff has not stated a claim for stalking under Civil Code §1708.7.**

5          "To state a claim for stalking under California Civil Code § 1708.7, a plaintiff must allege

6    that: (1) defendant engaged in a pattern of conduct the intent of which was to follow, alarm, or

7    harass the plaintiff; (2) as a result that pattern of conduct, plaintiff reasonably feared for his or her

8    safety; and (3) defendant either made a credible threat with intent to place the plaintiff in

9    reasonable fear or violated a restraining order." *Bolton v. City of Berkeley*, No. 19-CV-05212-

10   WHO, 2019 WL 6250927, at *4 (N.D. Cal. Nov. 22, 2019). Courts may decide, as a matter of law,

11   that a defendant's conduct did not amount to a "credible threat," that the plaintiff's allegations do

12   not support an inference of willfulness, and that a stalking claim lacks plausibility. *See Blazheiev*

13   *v. Ubisoft Toronto Inc.*, No. 17-CV-07160-EMC, 2018 WL 3417481, at *8 (N.D. Cal. July 13,

14   2018) ("The stalking claims lack plausibility.").

15         Plaintiff has not alleged that Mr. Qazi violated a restraining order or made a credible threat.

16   Regarding the "credible threat" requirement, Plaintiff only offers the conclusory statement, "As a

17   result of Defendant Qazi's public conduct and his apparent contact with the restrained party in the

18   Civil Harassment Case, Plaintiff reasonably feared for his and his family's safety after receiving

19   messages, text messages and telephone calls that he and others perceived as threats." (SAC ¶223.)

20   This allegation does not establish a "credible threat" by Mr. Qazi. To the contrary, Plaintiff's

21   allegations, when read as a whole, show that Plaintiff and Mr. Qazi were engaged in a prolonged

22   online quarrel, involving ridiculous claims and hyperbolic language, which no reasonable person

23   would construe as a credible threat.

24         Moreover, a defendant's pattern of harassment, alone, does not give rise to a stalking claim

25   under section 1708.7. Rather, liability may only be imposed where a plaintiff reasonably feared

26   for his safety or that of an immediate family member, or where the plaintiff suffered substantial

27   emotional distress. Civ.  Code §1708.7(a)(2). While Plaintiff claims that he so feared, he fails to

28   provide any explanation for why his fears were reasonable. In fact, Plaintiff's claim of fear is not

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

plausible given his consistent and voluntary participation in online written warfare with Mr. Qazi and others.

### d.    Plaintiff has not alleged a claim under the UCL.

The UCL, Bus. & Prof. Code §17200 et seq., is limited to conduct that can properly be called a business practice. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). Significantly, "[t]he UCL's purpose does not require the same broad construction of the word 'business.'" *That v. Alders Maint. Assn.*, 206 Cal. App. 4th 1419, 1427 (2012). Where a dispute is not related to activity that might be deemed commercial, it is not within the scope of the UCL. *See id.* Here, Plaintiff's allegations against the Smick Defendants are not tied to any commercial activity. Rather, the allegations reflect a highly personal dispute.

Moreover, to state a UCL claim, a private plaintiff must allege an injury in fact and loss of money or property as a result of the unfair competition. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014). Litigation expenses, including investigative costs, are "insufficient to meet the economic injury requirement of the UCL." *Rios v. Bank of Am.*, No. 2:12-CV-02439-KJM-AC, 2013 WL 6199145, at *7 (E.D. Cal. Nov. 27, 2013); *see Hernandez v. Specialized Loan Servicing, LLC*, No. CV 14-9404-GW JEMX, 2015 WL 350223, at *8 (C.D. Cal. Jan. 22, 2015) ("the Court rejects Hernandez's attempt to bootstrap the costs and fees of pursuing this case into UCL standing."). While Plaintiff imaginatively claims he was forced to pay for parking and gas to travel to the police station and spent hours "documenting misconduct" and lost tax benefits resulting from Smick Enterprises, Inc.'s failure to make tax payments (SAC ¶¶295–299), those fees and hours are not lost money or property as a result of unfair competition. Moreover, Plaintiff's allegations either do not relate to any unlawful business practice, or Plaintiff has failed to identify the causal connection to his alleged injury.

Finally, the only monetary remedy available under the UCL is restitution. *See Korea Supply Co.*, 29 Cal. 4th at 1146. Restitution is defined as an order compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken. *See id.* at 1144–45; *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012). Here, Plaintiff has not alleged Defendants' receipt of any ill-gotten gains

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    to support monetary relief under the UCL.[2]

2        Summary of anti-SLAPP Motion: The Smick Defendants have made a prima facie showing

3    that the state law claims arise from protected activity, and Plaintiff has not alleged legally sufficient

4    claims. Thus, the Court should strike the SAC's state law claims under anti-SLAPP.

5    **C.    Plaintiff has not stated any viable claim against the Smick Defendants.**

6        In addition to the Smick Defendants' bases for striking the state law claims under anti-

7    SLAPP, all of the remaining claims against the Smick Defendants should be dismissed under Rule

8    12(b)(6) for failure to state a claim. The deficiencies in Plaintiff's state law claims are outlined in

9    Section B, *supra*. Plaintiff's remaining claims are addressed below.

10       **1.    Plaintiff has failed to state a claim for copyright infringement.**

11       A claim for copyright infringement under 17 U.S.C. §501 requires a valid copyright

12   registration. *See* 17 U.S.C. §411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,

13   139 S. Ct. 881, 886 (2019). A text-only registration for a book's text does not cover photos in the

14   book. *See, e.g.*, *RoyaltyStat, LCC v. IntangibleSpring Corp.*, No. CV PX 15-3940, 2018 WL

15   348151, at *3 (D. Md. Jan. 10, 2018) ("Defendants correctly note that the '781 Registration solely

16   asserts copyright in 'text'"). Here, Plaintiff concedes that he only has a copyright registration

17   covering the text (and not photographs) of his book. (SAC ¶235 & Ex. K.) Thus, Plaintiff's

18   copyright claims relating to photographs and other elements and works fail.

19       Regarding the Smick Defendants' alleged misuse of text from Plaintiff's book, the fair use

20   doctrine applies. The fair use doctrine permits the use of copyrighted works without the copyright

21   owner's consent in certain situations. *See* 17 U.S.C. §107; *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d

22   723, 739 (9th Cir. 2019). The Copyright Act outlines four non-exclusive factors for analyzing fair

23   use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount

24   and substantiality of the portion used; and (4) the effect of the use upon the potential market for or

25   _____

26   [2] Plaintiff also seeks an injunction barring the Smick Defendants from making libelous statements,
     from impersonating others, and from operating the Smick Sites. (SAC Prayer.) However, the

27   requested injunction constitutes an impermissible prior restraint on speech. *See Twitter, Inc. v.
     Sessions*, 263 F. Supp. 3d 803, 809 (N.D. Cal. 2017); *World Wide Rush, LLC v. City of Los Angeles*,

28   606 F.3d 676, 687 (9th Cir. 2010).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

value of the copyrighted work. *See id.* These factors are assessed on a case-by-case basis and weighed together in light of the purposes of copyright. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174 (N.D. Cal. 2019). Though the fair use defense is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute. *See id*.

A parody is a classic form of fair use. A parody is a new work that uses elements of a prior work to comment on that prior work. *See Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1104 (C.D. Cal. 2015). "An obvious example is an unfavorable book or movie review containing quotations from the copyrighted work, along with criticism which may suppress demand. This capacity to injure does not impede a finding of fair use." *See Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 780 F. Supp. 1283, 1294 (N.D. Cal. 1991). While a lethal parody, like a scathing theater review, may kill demand for the original work, it does not produce a harm cognizable under the Copyright Act. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591–92 (1994). Because parody may quite legitimately aim at garroting the original, destroying it commercially as well as artistically, the role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps it. *See id.* The issue of whether a work is a parody is a question of law. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 801 (9th Cir. 2003).

Plaintiff alleges that the Smick Defendants displayed portions of Plaintiff's book online "to satirize Plaintiff." (SAC ¶¶240–241, 262 & Ex. U.) The parodical nature of the Smick Defendants' alleged use of Plaintiff's book is self-evident, including because the parody includes titles such as "How Never to Get Laid" and "Yer a Wizard Aaron," and ends with the following: "The sad story of a smart coder who failed time and time again because of his terrible social skills. He has never changed. He doesn't know how to talk to people, only threaten them. That's why he'll always be a huge loser, in my opinion." (SAC Ex. U.) Because no reasonable person could believe that the Smick Defendants' alleged use of Plaintiff's book usurped demand for the book, the fair use doctrine bars Plaintiff's copyright claim.

**2.   Plaintiff has failed to state a claim for removing copyright management information under 17 U.S.C. §1202(b).**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

The DMCA, 17 U.S.C. §1202(b), provides that no person shall "intentionally remove or alter any copyright management information" ("CMI"), such as the title, author, or terms identifying information set forth in a copyright notice, "knowing, or . . . having reasonable ground to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." *See also Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018) (noting intent element requires knowledge of existence of CMI and that CMI has been removed or altered).

Plaintiff has not stated a viable claim for violations of §1202(b). First, Plaintiff cannot allege the requisite intent for his claim. As discussed above, the Smick Defendants parodied, and did not infringe, Plaintiff's works. As such, the Smick Defendants did not have an intent to induce, enable, facilitate, or conceal an infringement. *See Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 903–04 (D. Ariz. 2019). Second, Plaintiff has not alleged that the Smick Defendants removed or altered any CMI because the claimed CMI was on Plaintiff's website footer and not on the photograph in question at the time of alleged misuse. *See SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670–71 (9th Cir. 2020) ("The copyright notice is not in the body of, or the area around, the work at issue, the photographs, and so it was not 'conveyed in connection with' the work in a way that makes that information CMI."). Apparently, after the Smick Defendants raised this flaw in their original motion to dismiss, Plaintiff sought to add CMI to the photographs at issue. (*Compare* First Amended Complaint ("FAC") [D.E. No. 20 ¶22] *with* SAC ¶276.) However, the alleged misuse of the CMI occurred before Plaintiff affixed the CMI to the photograph. (SAC ¶253.) Thus, Plaintiff's claim under 17 U.S.C. §1202(b) fails.

### 3.    Plaintiff fails to state a claim for DMCA misrepresentation.

As described above, the fair use doctrine protects the Smick Defendants' parody of Plaintiff's book. Even so, Plaintiff claims that Mr. Qazi violated 17 U.S.C. §512(f) by "materially misrepresenting" that he had a good-faith basis for claiming that the fair use doctrine applied in his DMCA counternotices. (SAC ¶¶283, 285). Plaintiff also argues that Mr. Qazi materially misrepresented his address in those counternotices. (SAC ¶¶284, 286.)

Liability under §512(f) only attaches against persons who materially misrepresent either: (1) that material is infringing when it is not, or (2) that material was removed by mistake or

17

1  misidentification. Here, Plaintiff has not alleged that Mr. Qazi made either type of

2  misrepresentation. Rather, Plaintiff alleges that the Mr. Qazi misrepresented his address and the

3  fact that the fair use defense applied. (SAC ¶¶283–286.)

4        Even if Mr. Qazi's invocation of the fair use doctrine in his counternotice could serve as a

5  basis for Plaintiff's §512(f) claim, Plaintiff has not plausibly alleged that Mr. Qazi's invocation of

6  the fair use doctrine was a misrepresentation. A representation by a defendant in a counternotice

7  that he believes his work was a "fair use" is not a sufficient allegation, by itself, of a

8  misrepresentation under §512(f). *See Shropshire v. Canning*, No. 10-CV-01941-LHK, 2011 WL

9  90136, at *6 (N.D. Cal. Jan. 11, 2011); *see also Shropshire v. Canning*, 809 F. Supp. 2d 1139,

10  1148 (N.D. Cal. 2011) (in context, counternotice that referred to protection under fair use doctrine

11  did not contain an actionable misrepresentation). As discussed above, Mr. Qazi's use of portions

12  of Plaintiff's book is protected by the fair use defense as a matter of law. Thus, the potential

13  applicability of the fair use defense to Mr. Qazi's parody was self-evident, and Mr. Qazi's reliance

14  on the fair use doctrine in his counternotice could not have been an intentional misrepresentation.

15        Thus, the Court should dismiss Plaintiff's claim under 17 U.S.C. §512(f).

16        **4.        Plaintiff fails to state a claim for securities market manipulation.**

17        The Smick Defendants join in the Tesla Defendants' motion to dismiss as it relates to the

18  market manipulation claim. For the reasons stated therein, the claim should be dismissed.

19                          **CONCLUSION**

20        For the reasons set forth above, the Court should strike Plaintiff's state law claims under

21  California's anti-SLAPP statute and dismiss all of Plaintiff's remaining claims under Rule 12(b)(6).

22

23  Respectfully Submitted,

24  DATED: September 25, 2020                **KRONENBERGER ROSENFELD, LLP**

25

26                                  By:  _____s/ Karl S. Kronenberger_____
                                              Karl S. Kronenberger

27

28                                  Attorneys for Defendants Omar Qazi and Smick
                                    Enterprises, Inc.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108