1   COOLEY LLP
    JOHN C. DWYER (136533) (dwyerjc@cooley.com)
2   3175 Hanover Street
    Palo Alto, CA  94304-1130
3   Telephone:    (650) 843-5000
    Facsimile:    (650) 849-7400
4
    AARTI REDDY (274889) (areddy@cooley.com)
5   REECE TREVOR (316685) (rtrevor@cooley.com)
    101 California Street, 5th Floor
6   San Francisco, CA  94111-5800
    Telephone:    (415) 693-2000
7   Facsimile:    (415) 693-2222

8   Attorneys for Defendants
    ELON MUSK and TESLA, INC.
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14   AARON GREENSPAN,                          Case No. 3:20-cv-03426-JD

15              Plaintiff,                      **NOTICE OF MOTION, MOTION,
                                                AND MEMORANDUM OF POINTS
16        v.                                    AND AUTHORITIES IN SUPPORT
                                                OF TESLA DEFENDANTS' MOTION
17   OMAR QAZI, SMICK ENTERPRISES, INC.,        TO DISMISS PLAINTIFF'S SECOND
     ELON MUSK, and TESLA, INC., Defendants.    AMENDED COMPLAINT**
18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

                                                                           **Page**

NOTICE OF MOTION AND MOTION ........................................................................................... 1

STATEMENT OF RELIEF SOUGHT .......................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.       BACKGROUND .................................................................................................. 2

II.      LEGAL STANDARD ON A MOTION TO DISMISS. ........................................ 3

III.     PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL PER SE. ...................... 3

        A.     Mr. Musk Is Not Vicariously Liable for Mr. Qazi's Alleged Libel. ........... 3

        B.     The Alleged Statements by Mr. Musk Are Not Actionable. ....................... 4

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL STALKING. ................ 7

V.      PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE UCL. .... 8

VI.     PLAINTIFF FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS. ............... 9

        A.     The SAC Fails to Plead Falsity. ................................................................. 10

        B.     The SAC Fails to Raise a Strong Inference of Scienter. ........................... 13

        C.     The SAC Fails to Plead Reliance. ............................................................. 14

        D.     The SAC Fails to Plead Loss Causation. ................................................... 16

VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION ............... 18

VIII.   CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Art of Living Found. v. Does,*
No. 10-cv-05022, 2011 WL 2441898 (N.D. Cal. June 15, 2011)...........................................4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................3, 9, 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)...........................................................................................18

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988)...........................................................................................15, 16

*Bidart v. Huber,*
9 F. App'x 746 (9th Cir. 2001) ...........................................................................................4

*Blazheiev v. Ubisoft Toronto Inc.,*
No. 17-cv-07160, 2018 WL 3417481 (N.D. Cal. July 13, 2018) .............................................8

*In re Bofi Holding, Inc. Sec. Litig.,*
302 F. Supp. 3d 1128 (S.D. Cal. 2018)...................................................................................17

*Brown v. Comcast Corp.,*
No. EDCV16-00264, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) ......................................4

*In re Century Aluminum Co. Sec. Litig.,*
729 F.3d 1104 (9th Cir. 2013) ...........................................................................................13

*cf. Metzler Inv. GmbH v. Corinthian Colls., Inc.,*
540 F.3d 1049 (9th Cir. 2008) ...........................................................................................12

*In re Cornerstone Propane Partners, L.P., Sec. Litig.,*
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...................................................................................13

*Correia v. Santos,*
191 Cal. App. 2d 844 (1961) ...........................................................................................5

*In re Cutera Sec. Litig.,*
610 F.3d 1103 (9th Cir. 2010) ...........................................................................................12

*In re Daou Sys., Inc.,*
411 F.3d 1006 (9th Cir. 2005) ...........................................................................................14, 16

*Dura Pharm., Inc. v. Broudo,*
544 U.S. at 342...........................................................................................18

**TESLA DEFS.' MOTION TO DISMISS SAC
CASE NO. 3:20-cv-03426-JD**

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Eade v. InvestorsHub.com, Inc.*,
No. LA CV11-1315, 2011 WL 13323344 (C.D. Cal. July 12, 2011).......................................6

*Eisenberg v. Alameda Newspapers, Inc.*,
74 Cal. App. 4th 1359 (1999) ...............................................................................................5

*Gilford Partners, L.P. v. Sensormatic Elecs. Corp.*,
No. 96 C 4072, 1997 WL 570771 (N.D. Ill. Sept. 10, 1997)...............................................15

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ..........................................................................................11, 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)..............................................................................................................15

*In re Harmonic, Inc. Sec. Litig.*,
163 F. Supp. 2d 1079 (N.D. Cal. 2001) ...............................................................................11

*Hoesl v. United States*,
451 F. Supp. 1170 (N.D. Cal. 1978) ......................................................................................5

*J.L. v. Children's Inst., Inc.*,
177 Cal. App. 4th 388 (2009) ................................................................................................3

*Jones v. Intelli-Check, Inc.*,
274 F. Supp. 2d 615 (D.N.J. 2003) ......................................................................................15

*Krinsky v. Doe 6*,
159 Cal. App. 4th 1154 (2008) ...............................................................................................5

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ...........................................................................................................8

*Lieberman v. Fieger*,
338 F.3d 1076 (9th Cir. 2003) ............................................................................................5, 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ................................................................................................3

*In re Merrill Lynch Auction Rate Sec. Litig.*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010)..................................................................................18

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ................................................................................................18

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...................................................................................10

*O'Connor v. Franke*,
   No. CV 16-3542, 2017 WL 1908154 (C.D. Cal. May 9, 2017) ..................................8

*Padron v. Moreno*,
   No. 15CECG03521, 2016 WL 4611489 (Cal. Super. Apr. 28, 2016) .........................5

*People v. Toomey*,
   157 Cal. App. 3d 1 (1984) .........................................................................................9

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
   953 F.2d 724 (1st Cir. 1992) .....................................................................................6

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F. Supp. 2d 1105 (N.D. Cal. 2013) ...................................................................10

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...................................................................15

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .............................................................................10, 14

*In re Rigel Pharm., Inc. Sec. Litig.*,
   No. C 09-00546, 2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) .............................11

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
   No. Civ.A. 00-5965, 2005 WL 1366025 (D.N.J. June 8, 2005) ..............................17

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
   86 A.D.3d 32 (N.Y. App. Div. 2011) ........................................................................6

*Barnes-Hind, Inc. v. Super. Ct.*,
   181 Cal. App. 3d 377 (1986) .....................................................................................7

*SEC v. McGinnis*,
   No. 13-CV-1047, 2013 WL 6500268 (D. Conn. Dec. 11, 2013).............................3

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .............................................................................13, 14

*Standing Comm. on Discipline v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) .....................................................................................5

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

4

*Stark Trading v. Falconbridge Ltd.*,
   552 F.3d 568 (7th Cir. 2009) ..........................................................................15

5

*Steginsky v. Xcelera, Inc.*,
   No. 3:12-cv-188, 2015 WL 1036985 (D. Conn. Mar. 10, 2015) ....................15, 16

6

7

*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) ......................................................................6, 7

8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ....................................................................................10

9

10

*In re Tesla, Inc. Sec. Litig.*,
   No. 18-cv-04865, 2020 WL 1873441 (N.D. Cal. Apr. 15, 2020) ....................17

11

12

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
   233 Cal. App. 4th 1321 (2015) ......................................................................8

13

*United States v. Petruk*,
   781 F.3d 438 (8th Cir. 2015) ..........................................................................9

14

15

*Webb v. SolarCity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ........................................................................14

16

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
   818 F. Supp. 2d 744 (S.D.N.Y. 2011) ..........................................................17

17

18

*Zlotnick v. TIE Commc'ns*,
   836 F.2d 818 (3d Cir. 1988) ........................................................................15

19

20

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................13

21

**Statutes & Rules**

22

15 U.S.C. § 78t ................................................................................................10

23

15 U.S.C. § 78u–4 ..................................................................................1, 11, 13

24

15 U.S.C. § 78u–5 ............................................................................................12

25

18 U.S.C. § 371 ..................................................................................................9

26

18 U.S.C. § 1512 ................................................................................................9

27

28

**TESLA DEFS.' MOTION TO DISMISS SAC**
                                                CASE NO. 3:20-cv-03426-JD

1

**TABLE OF AUTHORITIES**
**(continued)**

2
Page(s)

3

4
18 U.S.C. § 1515 .................................................................................................................... 9

5
18 U.S.C.§ 2261A .................................................................................................................. 9

6
Fed. R. Civ. P. 8 ..................................................................................................................... 1

7
Fed. R. Civ. P. 9 ................................................................................................................ 1, 10

8
Fed. R. Civ. P. 12 ............................................................................................................... 1, 3

9
Cal. Bus. & Prof. Code § 17204 ............................................................................................ 8

10
Cal. Civ. Code § 1708.7 ..................................................................................................... 1, 7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT,** on December 10, 2020 at 10:00 am in Courtroom 11 of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Judge James Donato presiding, Defendants Tesla, Inc. ("Tesla") and Elon Musk (collectively, "Tesla Defendants") will, and hereby do, move this Court, pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"), for an order dismissing Plaintiff Aaron Greenspan's ("Plaintiff's") Second Amended Complaint ("SAC") with prejudice. The Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; the accompanying Declaration of Aarti G. Reddy ("Reddy Decl."), supporting exhibits, and the Request for Judicial Notice; all of the papers on file in this action; and such other and further evidence or argument that the Court may consider.

**STATEMENT OF RELIEF SOUGHT**

The Tesla Defendants seek dismissal with prejudice of all claims asserted against them in the SAC for failure to state a claim upon which relief may be granted under Rule 12(b)(6).

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff has stated a claim against the Tesla Defendants for libel per se under California law (Count II).

2.      Whether Plaintiff has stated a claim against the Tesla Defendants for violation of California Civil Code § 1708.7 (Count IV).

3.      Whether Plaintiff has stated a claim against Mr. Musk for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (Count VIII).

4.      Whether Plaintiff has stated claims against the Tesla Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, and against Mr. Musk under Section 20 of the Exchange Act (Counts IX, X, XI).

**MEMORANDUM OF POINTS AND AUTHORITIES**

The SAC, like the two complaints before it, contains the same baseless and incendiary accusations Plaintiff has been making against the Tesla Defendants for years. The SAC attempts to

transform Plaintiff's conspiracy theories and Internet "research" into a federal lawsuit, seeks to hold the Tesla Defendants liable for the conduct of an unrelated third party (Mr. Qazi), and asserts that Mr. Musk's dismissive commentary to and about Plaintiff on the Internet somehow libeled him (even as Plaintiff republished the "offending" statements himself).  After three attempts to plead claims against the Tesla Defendants—including with the benefit of the Tesla Defendants' motion to dismiss the First Amended Complaint in hand—Plaintiff still has not stated a single viable claim, and the SAC should be dismissed with prejudice.

## I.    BACKGROUND

Plaintiff is a short-seller of Tesla stock who has dedicated years of his life to "exposing" alleged fraud by the Tesla Defendants. A self-described "data journalist," Plaintiff runs an online "legal information service," PlainSite, in partnership with his nonprofit, Think Computer Foundation. (¶¶ 23, 57, 151.) Since Plaintiff "became interested" in Tesla in 2018 (Ex. 1 at 55[1]), he has used both PlainSite and Twitter to further his short-seller agenda by putting his own misleading spin on Tesla-related news and court filings and by spreading false and misleading information about Tesla and Mr. Musk. (*See, e.g.*, Ex. 2 (Aug. 2018: "this stock has been manipulated by Elon Musk for days"), Ex. 3 (Sept. 2018: "the market is overvaluing Tesla [] by about $46-48 billion"); Ex. 4 (March 2019: alleging "a false, misleading and material tweet designed to manipulate stock price" by Tesla and Mr. Musk).

Plaintiff concedes that he knew about most of Tesla's alleged fraud even as he was investing in Tesla securities. (¶ 324.) Indeed, exhibits to the SAC show he was emailing Mr. Musk, other Tesla executives, and various journalists and government agencies about the same "fraud" alleged in the SAC as early as the summer of 2019—raising, for example, his unfounded suspicions about Tesla's reporting of vehicle "deliveries" (rather than "sales"), alleged Solarglass "import[s]" from China, Tesla's refund policies, and its relationship with "social media 'influencers.'" (*Compare* Ex. L *with* ¶¶ 306-307, 310, Issues 4, 7-9, 39-40 and Ex. A *with* ¶ 309 Issue 15; *see also* Ex. 5 (email accusing Mr. Musk of "lying" about numerous issues in August 2019).) And in January 2020, Plaintiff (through PlainSite) published and then tweeted a purported exposé about Tesla, titled "Reality Check," which includes virtually every

---

[1] All references to numbered exhibits are to the exhibits to the Reddy Declaration. References to exhibits with a letter designation are to the exhibits to the SAC, and ¶ references are to the SAC.

accusation in the SAC, ranging from Mr. Musk's purported ties to drug cartels, to various accusations of accounting fraud. (*See* Ex. 1.) Concurrent with his efforts to "expose" the fraud at Tesla, Plaintiff repeatedly bet against Tesla stock by purchasing "put options," a short-selling strategy.[2] (¶ 22 & Ex. W.) This, of course, contradicts Plaintiff's claim that he "would not have purchased TSLA put options at the prices he did" had he known the stock price was "artificially and falsely inflated." (¶ 324.)

Unable to convince the public of Tesla's "fraud," Plaintiff now pursues his conspiracy theories through a federal lawsuit, asserting various California state-law claims and alleging violations of the federal securities laws. For the reasons set forth below, each of those claims fails.

## II.   LEGAL STANDARD ON A MOTION TO DISMISS.

In considering a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court should not accept conclusory statements, unwarranted deductions, or allegations contradicted by judicially noticed facts or documents incorporated by reference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL PER SE.

### A.   Mr. Musk Is Not Vicariously Liable for Mr. Qazi's Alleged Libel.

Plaintiff alleges that Mr. Musk is "vicariously liable for all libelous statements published by Defendant Qazi" under an ostensible agency theory. (¶¶ 160, 224.) Plaintiff is wrong.

Plaintiff alleges no facts showing that Mr. Musk "cause[d] or allow[ed]" Plaintiff or anyone else to believe that Mr. Qazi had legal authority to act on his behalf. *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 403 (2009). The only allegations about the relationship between the Qazi Defendants and Mr. Musk are: (1) Mr. Musk's purported "endorsement" of Mr. Qazi's remarks, such as telling Mr. Qazi, "Your Twitter is awesome!"; (2) a conclusory assertion that Mr. Musk and Mr. Qazi "at times worked as a tag team" on social media; (3) an email exchange involving Mr. Qazi and Mr. Musk; (4) Mr. Musk's appearance on a podcast co-hosted by Mr. Qazi; (5) Mr. Qazi's

---

[2] "'Put options' give the holder the right to sell an underlying asset at a specified price (the strike price). . . . Investors buy puts if they think the share price of the underlying stock will fall[.]" *SEC v. McGinnis*, No. 13-CV-1047, 2013 WL 6500268, at *2 n.5 (D. Conn. Dec. 11, 2013).

attendance at "invite-only" Tesla events and early access to Tesla software features; and (6) Mr. Qazi's use of the Tesla "trademark" on Twitter (apparently because his Twitter handle @tesla_truth included the word "tesla"). (¶¶ 9, 12, 60, 62, 64, 109, 133-34, 160-61.) But no reasonable observer would interpret these "facts" to mean Mr. Qazi was *a spokesperson, authorized to speak* for Tesla or Mr. Musk. *See Bidart v. Huber*, 9 F. App'x 746, 748 (9th Cir. 2001) (rejecting ostensible agency theory of libel in part because "nothing suggests that the public somehow relied upon [the alleged agent's] apparent authority [to speak]."). Indeed, given that even close friendship cannot be a basis for agency liability, the banal interactions alleged in the SAC are plainly insufficient. *See Brown v. Comcast Corp.*, No. EDCV16-00264, 2016 WL 9109112, at *4 (C.D. Cal. Aug. 12, 2016) (to find agency authority based on mere friendship "could lead to absurd results.").

### B.     The Alleged Statements by Mr. Musk Are Not Actionable.

Mr. Musk's alleged statements are not actionable as they assert "constitutionally protected opinions rather than verifiable facts." *Art of Living Found. v. Does*, No. 10-cv-05022, 2011 WL 2441898, at *7 (N.D. Cal. June 15, 2011). To ascertain whether a statement "implies an assertion of fact,"[3] courts in the Ninth Circuit consider: (1) its broad context, which includes its "general tenor," "setting," and "format"; (2) its specific context, such as "figurative or hyperbolic language used and the reasonable expectations of the audience"; and (3) whether it is "sufficiently factual to be . . . proved true or false." *Id.* at *5. Plaintiff has not pled libel under this rubric.

*Mr. Musk's October 9, 2019 Email.*  After making baseless accusations against Mr. Musk and Tesla for more than a year, Plaintiff emailed what he called a "Notice of Intent to Sue and Evidence Preservation Notice" to Mr. Musk and Mr. Qazi, copying numerous other individuals and organizations. (¶ 67, Ex. E.) Plaintiff demanded, *inter alia*, that Tesla "export" evidence and "shut down all social media accounts" of essentially anyone who ever worked for a Musk-affiliated company. (*Id.*) Mr. Musk responded to that email, tongue-in-cheek, "Does the psych ward know you have a cell phone? Just curious." (¶ 69.) Mr. Qazi posted Mr. Musk's comment to Twitter (¶ 167, Issue 47), and Plaintiff, remarkably, republished it (Ex. 1 at 55).

---

[3] "Whether a statement is an assertion of fact or opinion is a question of law for the court."  *Art of Living Found.*, 2011 WL 2441898, at *5.

"California courts have refused to hold defamatory on its face or defamatory at all an imputation of mental disorder which is made in an oblique or hyperbolic manner." *Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978), *aff'd*, 629 F.2d 586 (9th Cir. 1980). Indeed, the Ninth Circuit has rejected defamation claims premised on the words "Looney Tunes," "crazy," "nuts," and "mentally imbalanced" because they are expressions of opinion, "constitutionally-protected by the First Amendment," and no "reasonable viewer would" interpret them as factual. *Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003). Here, Mr. Musk plainly was not asserting facts, but reacting to Plaintiff's campaign against Tesla broadly, and his email and legal demand in particular—following up "with two laugh/crying emojis." (¶¶ 68-69, Ex. F.) Like the "Looney Tunes" and "mentally unbalanced" references in *Lieberman*, Mr. Musk's hyperbolic "psych ward" epithet was an expression of opinion, "not provable as false," and thus not actionable. 338 F.3d at 1080; *see also Correia v. Santos*, 191 Cal. App. 2d 844, 853 (1961) (reference to "insanity" did not describe "plaintiff as a person who was mentally ill but as one who was unreasonable in his actions and his demands").[4]

***Mr. Musk's October 12 Tweet.*** In October 2019, Mr. Qazi tweeted a link to an article discussing Plaintiff's use of PlainSite (which is jointly run by Plaintiff's nonprofit) to criticize Tesla and "[a]ttack[] [p]eople [o]nline" and reported that an *L.A. Times* reporter had donated to Plaintiff's nonprofit. (¶¶ 86, 91.) Mr. Musk responded, tagging the Twitter handle of the owner of the *L.A. Times*: "are you aware that one of your senior journalists (Russ Mitchell) is openly funding a fake charity run by an online bully?" (¶¶ 91, 167.) Mr. Musk's words, again, are not actionable.

The phrases "online bully" and "fake charity" do not conceivably assert facts, as opposed to opinions. Courts have consistently held that the term "bully" cannot be "prove[n] or disprove[n]" and is thus an opinion. *Padron v. Moreno*, No. 15CECG03521, 2016 WL 4611489, at *5, *7 (Cal. Super. Apr. 28, 2016); *see also Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) ("bully" was "rhetorical hyperbole, incapable of being prove[n] true or false"). Calling a charity "fake" similarly has no precise or objective meaning. *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159-60

---

[4] Mr. Musk's response to Plaintiff's pre-litigation demand is also absolutely privileged. *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1378 (1999) (describing absolute privilege for "communications *preliminary* to a *proposed* judicial proceeding" (citation omitted)).

(2008) ("fake medical degree" was a non-actionable opinion); *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) (calling theater production "phony" and "fake" was "unprovable" since it is subject to "numerous interpretations"). Indeed, the SAC itself demonstrates the unfixed meaning of these terms, showing, for example, that Plaintiff uses the term "fake" to apply in myriad different situations. (*See* ¶¶ 48, 75, 77, 80, 259.)

Plaintiff appears to suggest that Mr. Musk's "fake charity" comment was a factual assertion that the organization was not a registered 501(c)(3) nonprofit. (¶¶ 87-88, 91-92 177-79.) But that is not what Mr. Musk wrote, and Plaintiff's allegation is not a plausible interpretation, since the article on which Mr. Musk was commenting **acknowledges** that "Think Computer Foundation . . . is a 501(c)3 [*sic*] nonprofit organization[.]"  (¶ 86.) Given this context, "fake charity" much more plausibly refers to opinions that, for instance, Plaintiff's nonprofit "[a]ttacks [p]eople [online]" (¶ 86), does not serve a useful social purpose, **should not have** 501(c)(3) status, and has been weaponized to hurt Tesla. (*See id.*) All of these logical interpretations are not facts, but constitutionally protected opinions.

This conclusion is reinforced by the context of Mr. Musk's statement: a comment on Twitter, an online forum in which readers "expect to see strongly worded opinions rather than objective facts[,]" *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012), since they "give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts," *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 44 (N.Y. App. Div. 2011); *see also Eade v. InvestorsHub.com, Inc.*, No. LA CV11-1315, 2011 WL 13323344, at *6 (C.D. Cal. July 12, 2011) (collecting cases) ("Courts generally have found that internet bulletin boards and chat room postings lend themselves to constitutional protection."). For this reason too, the claim fails.

***Mr. Musk's October 22 Email***. On October 22, 2019, Mr. Qazi emailed Twitter's CEO, copying Mr. Musk. (¶¶ 109, 180-82.) Plaintiff omits the contents of Mr. Qazi's email, but complains about Mr. Musk's response, which allegedly lamented "an orchestrated attempt to drive down Tesla stock through social media" and referred to Plaintiff as having "major issues" and being "the same nut but that claimed he was the founder of Facebook and sued [Mark] Zuckerberg . . . ." (¶¶ 109, 167, Issue 49, 180-82.) Here too, Mr. Musk's hyperbolic use of "nut but" and "major issues" cannot reasonably be interpreted as factual assertions that Plaintiff is mentally ill, as opposed to rhetorical

expressions of opinion that Plaintiff is unreasonable. *See Lieberman*, 338 F.3d at 1079–80.

The alleged "sued Zuckerberg" comment is not actionable for two additional reasons. <u>First,</u> a statement that someone filed a lawsuit does not inherently "expose[] [that] person to hatred, contempt, ridicule, or obloquy" or otherwise constitute libel *per se. Barnes-Hind, Inc. v. Super. Ct.*, 181 Cal. App. 3d 377, 386–87 (1986). Because Plaintiff's libel claim instead depends on his account of what happened (¶ 182), he has not pled libel *per se. See Barnes-Hind*, 181 Cal. App. 3d at 382. <u>Second,</u> the statement is "substantially true," and thus not actionable. *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012). Plaintiff alleges that he developed "The Facebook," sued Facebook, and settled the suit, which does not materially differ from Mr. Musk's alleged statement. (¶¶ 128, 151, Issue 14, 182.)

***Mr. Musk's July 3 Tweet***. On July 3, 2020, the day after Plaintiff filed the First Amended Complaint, Mr. Musk tweeted that "[Plaintiff] is crackers, bananas, barky & ten cards short of a full deck." (¶ 167, Issue 50.) Plaintiff again claims Musk's epithets are libelous because "they promot[e] the narrative that Plaintiff is mentally ill." (¶ 189.) Again, these are hyperbolic opinion statements, not provably true or false, and thus protected by the First Amendment. *Lieberman*, 338 F.3d at 1079–80.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL STALKING.

California Civil Code § 1708.7(a) requires Plaintiff to plead (1) with "independent corroborating evidence" that the Tesla Defendants "engaged in a pattern of conduct with intent to follow, alarm, or harass" him; (2) that resulted in reasonable fear for his or a family member's safety or substantial emotional distress; (3) that the Tesla Defendants "made a credible threat with the intention of placing the plaintiff in reasonable fear," and (4) that at least once, the plaintiff "clearly and definitively" demanded that the defendant stop that pattern of conduct.

Once again, the SAC largely alleges conduct by Mr. Qazi for which the Tesla Defendants are not liable. (¶¶ 224, 232.) As for Tesla, Plaintiff claims only that Tesla (1) hires "convicted felons" and others to "monitor critics and whistleblowers," and (2) "[u]pon information and belief . . . ordered that Plaintiff be surveilled, investigated and/or baselessly referred to criminal law enforcement." (¶¶ 227-31.) But these allegations lack any "corroborating evidence," identify no harassing "conduct" by the Tesla Defendants, describe no "credible threat" that could produce "reasonable fear," and allege no demand that the Tesla Defendants stop the unspecified conduct. Cal. Civ. Code § 1708.7(a). Plaintiff's

1   lack of specificity, as shown by his pleading on "information and belief," requires dismissal. *See*

2   *Blazheiev v. Ubisoft Toronto Inc.*, No. 17-cv-07160, 2018 WL 3417481, at *8 (N.D. Cal. July 13,

3   2018) (no claim because plaintiff did not explain "*how* Defendants had stalked him"); *O'Connor v.*

4   *Franke*, No. CV 16-3542, 2017 WL 1908154, at *6 (C.D. Cal. May 9, 2017) (no claim where Plaintiff

5   alleged that "she 'hope[s] [d]iscovery will give her answers' as to" alleged stalking (citation omitted)).

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE UCL.

7        Plaintiff's UCL claim against Mr. Musk fails for multiple, independent reasons.

8        ***First***, Plaintiff lacks statutory standing to pursue either restitution or injunctive relief, the sole

9   remedies available under the UCL. Plaintiff's alleged economic injury consists of *de minimis* costs of

10  about $35 for parking and gas to file a police report and roughly 100 hours spent "documenting

11  Defendants' misconduct." (¶¶ 295-97.) Those injuries fail to meet the UCL's dual requirements for

12  statutory standing:  (1) "a loss or deprivation of money or property sufficient to qualify as injury in

13  fact, i.e., *economic injury*, and (2) . . . that [the] economic injury was the result of, i.e. *caused by*, the

14  unfair business practice" at issue.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).

15       Plaintiff has not pled an economic loss because the time and money spent filing a police report

16  and "documenting" Defendants' supposed activities "in case pressing criminal charges or filing a civil

17  lawsuit might . . . be necessary" cannot confer standing. (¶ 215.) Costs to "generate evidence" for a

18  lawsuit do not confer standing "because they are not an economic injury caused by the business

19  practices." *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1334 (2015). This

20  makes good sense: the standing requirement would be meaningless if every plaintiff could

21  manufacture standing by incurring costs in performing a pre-suit investigation. *See id.*

22       Plaintiff has not adequately pled causation, as he fails to allege any facts showing his purported

23  losses were "***as a result of***" Mr. Musk's actions. *Kwikset*, 51 Cal. 4th at 322 (quoting Cal. Bus & Prof.

24  Code § 17204 ). As to the police report, he attributes all of the offending conduct—"harassing phone

25  calls, texts, emails, Internet posts and facsimiles," and a pornography-related incident—to Mr. Qazi

26  alone. (Ex. J at 2-4; ¶¶ 38-108.) Indeed, Plaintiff told police "he believes that Omar Qazi is responsible

27  for ***all or most*** of the harassment," and could only speculate that Mr. Musk "has some kind of

28  relationship" with Mr. Qazi or "***could be*** directly aware of and approving of the ongoing harassment."

(Ex. J at 4 (emphasis added).) Also unavailing is Plaintiff's vague reference to "lost income" from spending less time "improving and maintaining PlainSite." (¶¶ 297, 298.) Even if this theory of causation were viable, Plaintiff does not specify how his "lost time" related to Mr. Musk, rather than to Mr. Qazi. (*See* ¶ 215 (alleging "hundreds" of hours documenting Mr. Qazi's conduct), ¶ 297 (referring to "Defendants' misconduct").) To the extent Plaintiff spent time documenting "the promotion of Defendant Tesla's stock and products," his own allegations demonstrate these efforts were part of his maintenance of PlainSite, where he routinely posts his "findings" about Tesla. (¶¶ 290, 306.)

**Second**, Plaintiff has failed to allege any predicate "unlawful, unfair, or fraudulent" conduct by Mr. Musk to support his UCL claim. *See* Cal. Bus. & Prof. Code § 17200 *et seq*. Indeed, virtually all of the purported "facts" underlying the UCL claim—including alleged violations of 18 U.S.C. §§ 371 and 2261A—pertain exclusively to the alleged misconduct of the Qazi Defendants and cannot plausibly be linked to Mr. Musk. (¶¶ 291-293(f); *supra* Section III.A; *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984) (UCL liability must be premised on "defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal").[5]

Apparently to support an unlawful-prong UCL claim, Plaintiff alleges that Mr. Musk violated the federal "witness tampering" statute, 18 U.S.C. § 1512. (¶ 293(g).) Plaintiff claims that Mr. Musk made the "online bully"/"fake charity" comment somehow to force Plaintiff to withdraw a challenge to confidential treatment of documents in unrelated litigation in Delaware court. (¶ 293(g).) But Plaintiff does not allege he was slated to be a witness in those proceedings; as such, any allegation that Mr. Musk's tweet was a form of intimidation to "cause or induce [him] to [] withhold testimony" is facially implausible. 18 U.S.C. § 1512(b)(2)(A). Plaintiff also alleges no facts linking Mr. Musk's tweet to the Delaware proceedings. He instead alleges the tweet came weeks **after** the court ruled on his filing (¶ 293(g)), rendering his theory utterly nonsensical.[6] *Iqbal*, 556 U.S. at 678.

## VI. PLAINTIFF FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS.

---

[5] While Plaintiff tries to predicate his UCL claim on purported "libelous statements" (¶ 294), those claims fail as to Mr. Musk for the reasons discussed in Section III, *supra.*

[6] Plaintiff's theory also fails because 18 U.S.C. § 1515(a)(1) excludes state court proceedings from the definition of "official proceeding."  *See United States v. Petruk*, 781 F.3d 438, 444-45 (8th Cir. 2015) (holding that, for purposes of Section 1515, a "state proceeding" is not an "official proceeding").

1    The federal securities laws protect an innocent investor who suffers losses by trading in

2    reliance on representations that are later proven false or misleading. Not surprisingly, Plaintiff—a

3    short-seller who for years has bet against Tesla and tried to persuade the public that the Tesla

4    Defendants were committing fraud—does not state a viable claim for securities fraud.

5    To state a Rule 10b-5 claim, a plaintiff must allege "(1) a material misrepresentation or

6    omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase

7    or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Nguyen v. Endologix,*

8    *Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citation omitted). All elements must satisfy the particularity

9    requirements of Rule 9(b). *Id.* at 414. Plaintiff must also meet the PSLRA's heightened pleading

10   standards by "specify[ing] each statement alleged to have been misleading" and "the reason or reasons

11   why the statement is misleading" and "stat[ing] with particularity facts giving rise to a strong inference

12   that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

13   551 U.S. 308, 321 (2007) (citations omitted). Plaintiff's claims fail on virtually all of these elements.[7]

14   ### A.    The SAC Fails to Plead Falsity.

15   Even after two amendments, none of the alleged "Issues" pled in the SAC remotely resemble

16   viable securities fraud claims. Plaintiff challenges literally ***thousands*** of statements, apparently based

17   on his belief that nearly everything the Tesla Defendants have ever said about the Company's sales,

18   accounting, and business practices has been fraudulent. (¶¶ 306-314.) While Plaintiff has no cohesive

19   theory of fraud, all of the allegations share one common feature—they are defective and fail to plead

20   a materially false or misleading statement. *See* Appendix A (summarizing pleading deficiencies).[8]

21   The SAC suffers from a fundamental problem that dooms the entirety of Plaintiff's securities

22   claims: it is an incomprehensible "puzzle pleading" that leaves it "up to [D]efendants and the court to

23   try to figure out exactly what the misleading statements are, and to match the statements up with the

24   reasons they are false or misleading." *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105,

25   1111 (N.D. Cal. 2013) (citation omitted). For instance, in his first three Issues alone, Plaintiff alleges

26   that "[a]ll figures associated with 'cash' and 'cash and cash equivalents' in investor disclosures" were

---

[7] Because Plaintiff has failed to plead a primary securities law claim, his Section 20(a) claim fails. *See*
15 U.S.C. § 78t(a); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

[8] Defendants enclose Appendix A solely for the Court's convenience to use at its discretion.

fraudulent, and identifies as many as two years' worth of SEC filings that presumably constitute the relevant "disclosures." (¶ 306, Issues 1-3.) But the term "cash," to take just one example, appears at least ***1,321 times*** in those filings, and it is impossible for the Tesla Defendants or the Court to determine which "figures associated with" each mention of "cash" Plaintiff alleges to be misleading and why. (Reddy Decl. ¶ 2.) Tesla's Form 10-K for 2019, for example, notes that "[e]ffective March 2016, California implemented regulations phasing out a $2,500 cash rebate on qualified electric vehicles for high-income consumers." (Ex. R at 104.) Plaintiff may contend that this statement was false or misleading, e.g., because Tesla "was repeatedly drawing down its credit lines," or "refus[ing] to pay vendors and/or government agencies," (Issues 1, 3) but it is impossible to tell whether and how this, or any of the other 1,320 references to "cash" in Tesla's SEC filings, are allegedly actionable. If "extensive block quotes with multiple statements" are deficient under the PSLRA, Plaintiff's rote citations to unidentified statements in years of SEC filings are more deficient still. *In re Rigel Pharm., Inc. Sec. Litig.*, No. C 09-00546, 2009 WL 5125344, at *7 (N.D. Cal. Dec. 21, 2009); *see also In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1090-92 (N.D. Cal. 2001) (dismissing complaint that highlighted terms in various documents but did not "identify specific statements that were false").

In many instances, Plaintiff does not even ***try*** to identify, as the law requires, an actual statement rendered materially misleading by an omission. For example, as to three Issues, Plaintiff pleads that "[e]ach statement made by a proxy for Defendants Musk and Tesla who did not disclose their full relationship to investors" was misleading. (Issues 15-17.) But Plaintiff does not allege what those statements were, let alone when and where they were made or which "proxies" made them. (*Id.*) This, too, falls short of the PSLRA's requirement that "[a] securities fraud complaint must . . . 'specify each statement alleged to have been misleading'" and "'the reason or reasons why.'" *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting 15 U.S.C. § 78u–4(b)(1)).[9]

In those rare instances where the SAC purports to identify a particular statement that was rendered materially misleading by some omission, it relies on facts too thin and reasoning too illogical to support a securities fraud claim. For example, Plaintiff alleges that a statement in a 2018 SEC filing

---

[9] *See also* Issue 13 (describing as a "[m]isleading [s]tatement" that "Tesla has engaged in a scheme to record repairs as 'goodwill' for years"); Issues 43, 44 (not identifying any statement).

**TESLA DEFS.' MOTION TO DISMISS SAC
CASE NO. 3:20-cv-03426-JD**

that Tesla "intend[s] to comply with the terms and requirements of [an SEC] settlement" was misleading both because of Defendants' failure to disclose their "relationship with the family of deceased drug kingpin Pablo Escobar" and because Tesla "us[es] and abus[es] confidentiality provisions . . . in lawsuits." (Issues 18, 38; *see also* Ex. R at 68.) Plaintiff makes no attempt to allege how the statements are even ***related*** to the alleged omissions, much less explain how they were rendered misleading by their omission. This failure is dispositive. *Gompper*, 298 F.3d at 895-96.

Finally, Plaintiff attacks statements that are plainly protected by the PSLRA safe harbor or otherwise non-actionable. The PSLRA's safe harbor extends to forward-looking statements (1) that are accompanied by "meaningful cautionary statements," ***or*** (2) that are not "made with actual knowledge" of their falsity. 15 U.S.C. §§ 78u-5(c)(1)(A)(i), (1)(B)(i); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). As one example, Plaintiff challenges Mr. Musk's statement (for which Plaintiff omits all context) that his "best guess for demand of Model 3 worldwide" was "in a strong economy . . . on the order of 700,000 or 800,000 units a year" but as low as "40% less" in a recession. (Issue 21.) Plaintiff cites a 2019 tax application that he claims "directly contradicted" Mr. Musk's "guess." (*Id.*) But Plaintiff does not plausibly allege the purpose or context of the application or that Mr. Musk knew about it, and relies only on his opinion that Mr. Musk "routinely makes up false figures" and must have known of the purported discrepancy because "[a]ll sales information is immediately available" to him. (*Id.*); *cf. Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter[.]"). Similarly unavailing is Plaintiff's challenge to Mr. Musk's April 22, 2019 statement that he "feel[s] very confident predicting that there will be autonomous robotaxis from Tesla next year," which cannot be proven false (since it is still 2020), and which Mr. Musk specifically noted was forward-looking in other disclosures that Plaintiff omits. (Issue 23; *see also* Ex. 7 at 39.) Plaintiff's only "evidence" of falsity is an email purportedly "confirm[ing]" that Tesla "never actually raised the matter of 'robotaxis' with its autonomous driving regulators" in California. (Issue 23.) But Mr. Musk never assured regulatory approval in California in 2020, and repeatedly said "we won't have regulatory approval everywhere" and that "[r]egulatory approval is the big unknown." (*Id.*) Thus, even if Mr. Musk's prediction proves

**TESLA DEFS.' MOTION TO DISMISS SAC
CASE NO. 3:20-cv-03426-JD**

1   inaccurate at the end of this year, it included meaningful cautionary language and was not knowingly

2   false when made.

3           **B.      The SAC Fails to Raise a Strong Inference of Scienter.**

4           To adequately allege scienter under the PSLRA's heightened pleading standards, Plaintiff

5   "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless

6   or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999);

7   *see also* 15 U.S.C. § 78u–4(b)(2). Although a court should view scienter allegations "holistically, even

8   such a comprehensive perspective . . . cannot transform a series of inadequate allegations into a viable

9   inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).

10  After two rounds of amendments, Plaintiff does not come close to meeting these standards.

11          ***First***, many of Plaintiff's allegations of scienter merely repackage his speculative claims of

12  falsity. For instance, Plaintiff alleges Mr. Musk's June 10, 2020 statement that "[p]roduction of the

13  battery and powertrain [for the Tesla Semi] will take place at Giga Nevada," was false based on

14  Plaintiff's unsupported assertion that "[t]here are no concrete plans to develop the Tesla Semi[.]"

15  (Issue 31.) He then alleges Mr. Musk made this statement with scienter because the Semi is merely "a

16  prop for investor presentations." (Issue 31.) This allegation and others like it are tautological: Plaintiff

17  speculates the statement was false and then contends that Mr. Musk knew it was false because it was

18  false. This falls far short of Plaintiff's burden to "allege 'factual content that allows the court to draw

19  the reasonable inference that the defendant is liable . . . .'" *In re Century Aluminum Co. Sec. Litig.*,

20  729 F.3d 1104, 1107 (9th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

21          ***Second***, the only purported "evidence" of scienter in the SAC is Plaintiff's strained

22  interpretation of social media posts, news articles, and filings in other lawsuits. These allegations do

23  not survive "the strong mandate in the PSLRA to avoid speculation" and "conjecture," *In re*

24  *Cornerstone Propane Partners, L.P., Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005), much

25  less to "create [] an inference of scienter more cogent or compelling than an alternative innocent

26  inference," *Zucco*, 552 F.3d at 999–1000. For instance, Plaintiff cites a handful of Twitter posts about

27  accidental purchases as the basis for his speculation that Tesla "intentionally designed" its mobile app

28  "to encourage accidental one-tap purchases" so it could "refuse[] to refund these large amounts and

13

recognize[] the funds as revenue." (Issue 4.) Even taking these anecdotal complaints as true, they reveal nothing about the Tesla Defendants' state of mind or their intent regarding revenue recognition. Similarly, Plaintiff alleges that Mr. Musk did not "actually believe[]" his public statements about COVID-19 based on reports that Mr. Musk expressed concern that his son might have been exposed to COVID-19. (Issue 29.) That Mr. Musk might have worried for his son's health is not evidence that his later, more general statement regarding COVID-19 was knowingly (or materially) false. In other instances, Plaintiff's use of "evidence" is affirmatively misleading. For example, Plaintiff challenges a July 2019 statement by Mr. Musk that he was "[h]oping to manufacture ~1000 solar roofs/week by end of this year." (Issue 24.) But his only proof is a report showing that Tesla encountered production challenges years and months *earlier*—between 2017 and the first quarter of 2019. (Issue 24.) It does not follow that Mr. Musk's later statement was knowingly false, and Plaintiff's speculation is a far cry from "strong circumstantial evidence" of scienter. *Silicon Graphics*, 183 F.3d at 974.

*Third*, Plaintiff's "motive" and opportunity" allegations are mostly personal attacks on Mr. Musk's character.  Plaintiff claims, without plausible support, that Mr. Musk "routinely makes up false figures" or was "motivated" by a purported belief that "lying is necessary for survival," "lying is 'cute,'" and "rules do not apply to him"; "animosity toward short-sellers"; and "his possible connections to Mexican drug cartels." (Issue 21; ¶ 318.) The remainder of his motive allegations are precisely the sort of generalized "motive" and "opportunity" allegations that the Ninth Circuit has rejected, including those related to Mr. Musk's "compensation package," "Tesla's constant need for outside investor cash," and the desire "to give the illusion of profitability" or "quell investor fears." (Issues 19, 29, ¶¶ 317-18); *see Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("motive to boost the company's profitability and stock prices . . . are not 'specific' or 'particularized'"); *Rigel Pharm.*, 697 F.3d at 884 (allegations of "higher salaries, bonuses, and stock options" inadequate).

### C.    The SAC Fails to Plead Reliance.

To plead reasonable reliance, Plaintiff must allege that "but for the fraud, [he] would not have engaged in the transaction at issue." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005). But far from relying on the alleged fraud, Plaintiff chose to short-sell Tesla securities *because* he suspected the company was "a Ponzi scheme" (¶ 4) and believed the stock would drop when the "truth" came

1  out. That is the opposite of reliance, and Plaintiff's claims fail for this independent reason.

2  In securities fraud cases, courts recognize a rebuttable presumption of reliance on the integrity

3  of market prices where a plaintiff plausibly alleges that the stock was traded in an efficient market.

4  *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). The logic of this presumption is straightforward: if

5  a company commits fraud and its stock goes up, an unsuspecting investor who purchases stock "rel[ies]

6  on the price of the stock as a reflection of its value," and by extension, relies on the fraud. *Basic*, 485

7  U.S. at 244 (citation omitted). But it is equally straightforward that, when an investor instead trades

8  based on the belief that defendant's fraud ***has already tainted the market price***, he is not relying on

9  the belief that the market "reflects all public, material information." *Halliburton Co. v. Erica P. John*

10 *Fund, Inc.*, 573 U.S. 258, 268 (2014). "Courts do not presume reliance where a plaintiff voluntarily

11 transacts with her deceivers after detecting the alleged fraud," *Steginsky v. Xcelera, Inc.*, No. 3:12-cv-

12 188, 2015 WL 1036985, at *7 (D. Conn. Mar. 10, 2015), or where she "affirmatively believed that

13 [the fraud] had been . . . withheld from the market[,]" *Gilford Partners, L.P. v. Sensormatic Elecs.*

14 *Corp.*, No. 96 C 4072, 1997 WL 570771, at *8 (N.D. Ill. Sept. 10, 1997) (holding that short-seller was

15 not entitled to fraud on the market presumption).[10]

16 This is consistent with the well-settled legal rule that "no one who saw through [an alleged]

17 fraud," as Plaintiff believed he had, "would be able to sue for fraud, for he could not have relied

18 directly or indirectly" on the allegedly fraudulent statement. *Stark Trading v. Falconbridge Ltd.*, 552

19 F.3d 568, 573 (7th Cir. 2009); *see also Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 634 (D.N.J.

20 2003) (plaintiff failed to plead reliance where "[i]t was [the plaintiff's] hope that when others acquired

21 the same awareness of [the defendant's] past misstatements, there would be heavy selling resulting in

22 a drop in the market and profit on his short position" (citation omitted)).

23 Applying these principles here, it is clear that Plaintiff has failed to plead reliance. Plaintiff

24

---

[10] Applying this logic, one Court of Appeals has refused to extend the fraud on the market presumption
25 to short-sellers at all. *See Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 822-23 (3d Cir. 1988). And those
courts that do apply the presumption to short-sellers have still observed that it would not apply where
26 the investor suspects fraud. They reason that "[a]n investor may hold the conviction that the
marketplace has inaccurately predicted the earning potential of a company, and yet still enter a
27 transaction"—unlike Plaintiff—"relying, in part, on the assumption that the market has not been
artificially inflated or depressed by material, false information disseminated by corporate insiders." *In*
28 *re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1264 (S.D. Cal. 2010).

**TESLA DEFS.' MOTION TO DISMISS SAC**
                                                                   **CASE NO. 3:20-cv-03426-JD**

1    falsely claims that he bought put options "without knowledge of the omitted or misrepresented facts."

2    (¶ 303(g).) But this allegation cannot be credited, even at the pleadings stage: Plaintiff *also* alleges

3    that he knew about the purported fraud described in the SAC since at least October 2018.[11] (¶ 324.)

4    Indeed, Plaintiff was complaining that Tesla's stock price was "manipulated" and that "Elon Musk

5    ha[d] a habit of communicating false information" as early as August 2018—*before he purchased his*

6    *first put options in September 2018*.[12] Plaintiff publicly complained about the same fraud alleged in

7    the SAC *even as he was actively purchasing put options over the next two years*. (*See* Ex. W; Ex. 1

8    ("Reality Check" article cataloging, *inter alia*, alleged safety issues, misclassifications of vehicle

9    repairs, and connections between Mr. Musk and Pablo Escobar).)[13] In these circumstances, Plaintiff

10    cannot plausibly allege that he "relied" on Tesla's supposed fraud or avail himself of the fraud on the

11    market presumption. *Steginsky*, 2015 WL 1036985, at *7. And even if the presumption were available

12    to Plaintiff here, it would be conclusively rebutted because his belief that Tesla was engaged in fraud

13    "severs the link between the alleged misrepresentation and either the price received (or paid) . . . or

14    his decision to trade at a fair market price." *Basic*, 485 U.S. at 248.

15    **D.     The SAC Fails to Plead Loss Causation.**

16    Finally, Plaintiff cannot allege a "causal connection between the deceptive acts that form the

17    basis for the claim of securities fraud and the injury suffered[.]" *Daou Sys.*, 411 F.3d at 1025. Plaintiff

18    offers a highly speculative theory of loss causation that posits that the Tesla Defendants have been

19    committing various acts of fraud for years, and, if that fraud had ever been revealed, Tesla's stock

20    would have declined and Plaintiff's put options would not have expired worthless. (¶ 323.)

21    *First*, Courts have recognized that the factual predicate of Plaintiff's claim—that the alleged

---

22    [11] Plaintiff's SAC provides a chart purporting to detail his "awareness" of Tesla's allegedly fraudulent
practices in relation to his put option transactions, and alleges that his "knowledge . . . was acquired

23    gradually over time such that at no point when he purchased TSLA put options was he fully aware of
the extent of Defendants' fraudulent actions." (¶ 324.) But Plaintiff's "awareness" is not at issue—

24    reasonable reliance is. By confirming that he purchased put options long after he first suspected Tesla
was committing fraud, Plaintiff's own allegations *refute* any inference of reasonable reliance.

25    [12] *See* Ex. W; Exs. 2, 6 (August 2018 tweets from Plaintiff's @PlainSite account asserting that "Elon
Musk has a habit of communicating false information," and "[Tesla] stock has been manipulated by

26    Elon Musk for days").

27    [13] *Compare, e.g.*, Ex. L (October 2019 and February 2020 emails to Tesla Board regarding various
business practices), *with* ¶¶ 306-307, 310, Issues 4, 7-9, 39-40 (alleging same practices were
fraudulent); Ex. A (August 2019 concerns about Tesla's relationships with "social media

28    'influencers'"), *with* ¶ 309 Issue 15 (alleging same were fraudulent).

**TESLA DEFS.' MOTION TO DISMISS SAC
CASE NO. 3:20-cv-03426-JD**

fraud concealed *negative* information—is incompatible with pleading loss causation in analogous short-selling contexts. A short-seller stands to make money when a company's stock price goes down and lose money when the stock price goes up. Thus, any "actionable misstatement in the short-selling context would conceal positive rather than negative information" because the concealed information would push "artificially *low* prices" up when revealed and make the short-seller's gamble unprofitable by forcing the investor to "cover" the options. *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 753 (S.D.N.Y. 2011) (emphasis added). "By contrast, where, as alleged here, a company [allegedly] concealed negative information about its economic condition, a short seller who sold at artificially inflated prices and covered after the corrective disclosure" pushed prices down "would actually profit from the fraud." *Id.* These principles establish the only way that Plaintiff could plausibly plead loss causation: (1) that Tesla concealed *positive* information when he purchased his put options; (2) the revelation of that positive information drove the stock price *up*; and (3) his put options expired worthless as a result. Instead, Plaintiff posits that: (1) Tesla was concealing *negative* information; (2) Tesla's stock price would eventually *drop* if that information was revealed; and (3) when no such revelation came and his put options expired, he lost money (and brought this lawsuit).[14] It is clear that "allowing [Plaintiff] to state a claim under these circumstances would permit a short seller under *any* standard misrepresentation case to either win big in the marketplace" when the truth came out and the stock dropped "or win in court by transform[ing] a private securities action into a partial downside insurance policy." *Id.* at 759 (internal quotation marks and citation omitted).

**Second**, the SAC fails to allege the linchpin of loss causation: any form of corrective disclosure that "reveal[ed] some piece of previously undisclosed information showing the falsity" of the statements it challenges. *In re Bofi Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1135 (S.D. Cal. 2018). Plaintiff alleges that Tesla's stock price has been "artificially inflated for a prolonged period

---

[14] Short-seller plaintiffs have sometimes pled loss causation by showing that a fraudulent statement artificially inflated stock prices and forced them to "cover" to prevent further losses. *See In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2020 WL 1873441, at *23 (N.D. Cal. Apr. 15, 2020) (plaintiff may plead loss causation "by alleging false statements forced investors to cover transactions at a significant loss"); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, No. Civ.A. 00-5965, 2005 WL 1366025, at *7 (D.N.J. June 8, 2005) (holding that plaintiffs plausibly alleged loss causation by alleging the misrepresentations "artificially inflated [Defendant's] stock, which, in turn, forced Plaintiffs to make cover transactions and incur significant losses"). But this is not Plaintiff's theory.

**TESLA DEFS.' MOTION TO DISMISS SAC**
**CASE NO. 3:20-CV-03426-JD**

1    of time, leading to losses on TSLA put options that expired worthless but otherwise would not have."

2    (¶ 323.) But the Supreme Court rejected this very theory in *Dura Pharm., Inc. v. Broudo*, holding that

3    plaintiffs cannot demonstrate loss causation merely by showing that "the price ***on the date of purchase***

4    was inflated because of the misrepresentation." 544 U.S. at 342 (emphasis added) (citation omitted).

5    In so holding, the Court explained that "an initially inflated purchase price *might* mean a later loss,"

6    but that "is far from inevitably so," because such a loss could be the result of other factors. *Id.* The

7    Court thus affirmed that loss causation requires a showing that plaintiff sustained losses ***because the***

8    ***truth came to light*** about a misrepresentation. *Id.* at 342–43. In other words, because "it is the

9    underlying facts concealed by fraud that affect the stock price[,]" some revelation of either the fraud

10   or related facts, and a resulting loss, is necessary to establish loss causation. *Mineworkers' Pension*

11   *Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). Plaintiff pleads none. The SAC does

12   not identify any information that was disclosed to the market and caused Plaintiff's losses.

13   **VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION.**

14          Plaintiff's market manipulation claim must be dismissed because he has failed to allege

15   reliance, loss causation, or scienter, as set forth above.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

16   493 F.3d 87, 101-02 (2d Cir. 2007). Further, Plaintiff fails to specifically allege any manipulative

17   conduct attributable to the Tesla Defendants and that was "intended to mislead investors by artificially

18   affecting market activity." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389

19   (S.D.N.Y. 2010) (citation omitted).  Even assuming the Qazi Defendants' alleged conduct (*see* ¶¶ 327-

20   28) constitutes market manipulation, Plaintiff asserts no basis for holding the Tesla Defendants

21   vicariously liable. Nor can he rely on his Rule 10b-5 allegations; a market manipulation claim "cannot

22   be based solely upon misrepresentations or omissions." *ATSI Comm'cns*, 493 F.3d at 101.

23   **VIII.   CONCLUSION**

24          For the foregoing reasons, the SAC should be dismissed with prejudice.

25   Dated: September 25, 2020                COOLEY LLP

26                                           By: */s/ Aarti Reddy*
                                                 Aarti Reddy

27
                                             Attorneys for Defendants
28   233036330                               Tesla, Inc. and Elon Musk