Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA 94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN,<br><br>    Plaintiff,<br><br>    v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC.,<br><br>    Defendants. | Case No. 3:20-cv-03426-JD<br><br>**PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY KRONENBERGER ROSENFELD LLP AND DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC. SHOULD NOT BE HELD IN CONTEMPT OF COURT**<br><br>Time:        10:00 A.M.<br>Date:        November 5, 2020<br>Courtroom:  11, 19th Floor<br><br>Judge: Hon. James Donato<br>SAC Filed: August 26, 2020 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF ISSUES ................................................................................................. 3

III. FACTUAL BACKGROUND .............................................................................................. 4

IV. ARGUMENT ....................................................................................................................... 4

    A.  Legal Standard ............................................................................................................. 4

    B.  Qazi Defendants' Conduct Prior To the Issuance of the Civility Order ........................ 5

    C.  Qazi Defendants' Conduct After the Issuance of the Civility Order ............................. 7

V.  CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) ..................................... 4

*In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) .......................... 5

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ....... 5

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
    774 F.3d 935, 945 (9th Cir. 2014) ........................................................................................... 5

*Montgomery Glob. Advisors V LLC*, 2006 WL 950102 ................................................................ 5

*Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*,
    Case No. 5:16-cv-06370-EJD (N.D. Cal. July 2, 2020) ........................................................... 5

*Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) ....................................... 5

*Spallone v. United States*, 493 U.S. 265, 276 (1990) .................................................................... 4

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) ............... 5

**Other Authorities**

Northern District of California Guideline for Professional Conduct 8 .......................................... 3

Northern District of California Guideline for Professional Conduct 18(b) ................................... 9

Northern District of California Guideline for Professional Conduct 18(c) ................................... 9

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 5, 2020 at 10:00 A.M., or as soon thereafter as the matter may be heard, in the above-titled Court, in Courtroom 11, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102—or in the alternative, via digital videoconference pursuant to this Court's General Order 72-5—Plaintiff Aaron Greenspan ("Plaintiff") will and hereby does move the Court for an Order to Show Cause why Kronenberger Rosenfeld LLP and Defendants Omar Qazi and Smick Enterprises, Inc. (the "Qazi Defendants") should not be held in contempt of court.

The Court should grant Plaintiff's motion because Kronenberger Rosenfeld LLP and the Qazi Defendants have repeatedly violated the Court's September 2, 2020 Order Re Default and Civility and the Qazi Defendants have recklessly sought to harass and endanger members of the public and Plaintiff.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Aaron Greenspan respectfully moves the Court for an Order to Show Cause why Kronenberger Rosenfeld LLP and Defendants Omar Qazi and Smick Enterprises, Inc. should not be held in contempt of court for violating the clear directives of the Court's September 2, 2020 Order Re Default and Civility (the "Civility Order").

The Court's Civility Order explicitly required all parties and counsel to conform to both the spirit and the letter of the Northern District of California Guidelines for Professional Conduct. ECF No. 72. The Court noted that "failure to adhere to the guidelines may result in sanctions." In the Civility Order, the Court correctly noted "an unusually high degree of friction

between the parties, particularly pro se plaintiff Greenspan and defendant Qazi." Such friction exists because Defendant Qazi has been attacking Plaintiff in public since January 2019 in a manner that extends far beyond the typical nastiness one can easily find on social media. Even after the filing of the instant lawsuit, and even despite the Civility Order, Defendant Qazi has continued to engage in many of the same dangerous and unlawful behaviors directed primarily toward Plaintiff and his family that are described in detail in the Second Amended Complaint ("SAC").

The most urgent and alarming issue is that on September 25, 2020 at 8:38 P.M., Defendant Qazi's @WholeMarsBlog Twitter account posted a warning directed at Plaintiff, without communicating through counsel: "Justice is coming Aaron. You thought you were too smart, and the rules didn't apply to you. They do." The account then responded to its own post five minutes later, writing, "what aaron does to people is worse than murder IMHO / he threatens them until they want to kill themselves." (Plaintiff denies making *any* threats except the obvious threat in 2019 to file this action.) At first, Plaintiff believed that this note, obliquely suggesting that Defendant Qazi might be contemplating suicide, had been entirely authored by Defendant Qazi himself. Plaintiff e-mailed counsel for Qazi Defendants about the post and received no response. Upon further analysis, it seems likely that the first 8:38 P.M. post targeted at Plaintiff was authored by Defendant Qazi while the 8:43 P.M. reply discussing suicide was authored by non-party Scott Woods, who created the Twitter account for Defendant Qazi in order to enable him to use the platform despite his ban, and to obfuscate the authorship of its vitriolic posts.

No matter who authored which post, this situation is problematic and regrettably necessitates the Court's attention for a number of reasons. First, if the threat of suicide is serious then the Court should quickly ensure that Defendant Qazi is safe and receiving professional care. If it is not, however, the Court must make clear that suicide is not a joking matter. As Defendant Qazi well knows, Plaintiff's friend Aaron Swartz committed suicide in 2013 after being named as a defendant in an ill-conceived and baseless criminal prosecution in the District of Massachusetts. Second, if the post was meant as a joke and Defendant Qazi was aware of it—

and it would seem impossible that he was not—there should be repercussions. Third, Defendant Qazi should be communicating with Plaintiff through counsel (unless counsel has withdrawn), if at all, not making direct threats on social media. Fourth, Defendant Qazi should not be using Twitter at all, let alone to harass Plaintiff, and let alone in a manner where he has plausible deniability due to the involvement of a third party. As Plaintiff was drafting this motion, Defendant Qazi's Twitter account again falsely referred to Plaintiff as a "criminal" and encouraged readers to "please notify Twitter, local law enforcement, and the FBI." *See* the contemporaneously filed Declaration of Aaron Greenspan ("Greenspan Declaration") Exhibit B.

Unfortunately, this conduct is just the latest episode in a long pattern of what can fairly be described as a continuous violation of Guideline for Professional Conduct 8 and contempt of court, starting with Defendant Qazi's social media fabrication of an as-yet-non-existent Order against Plaintiff in this case to help with Defendant Qazi's legal defense fundraising efforts. ECF No. 66 at 12. There has been a manifest failure to adhere to the Guidelines on the part of Qazi Defendants, even since the Civility Order was issued. Apart from the reference to suicide above (which hopefully was not genuine), in one recent instance, this has led to a threat of violence toward Plaintiff directly caused by Defendant Qazi's social media posts. In another, Defendant Qazi put Plaintiff's family members in Ohio at risk by deliberately spreading false information that is already the general subject of separate criminal proceedings. In addition, counsel for Qazi Defendants admitted to a violation of the Civility Order, in the form of a breach of an agreement between the parties, in a voicemail left on Plaintiff's telephone number on September 9, 2020 at 3:10 P.M. Greenspan Declaration Exhibit A.

## II. STATEMENT OF ISSUES

The issue raised by this motion is whether Qazi Defendants and/or their counsel should be sanctioned and/or held in contempt of court for violating the Court's September 2, 2020 Civility Order.

## III. FACTUAL BACKGROUND

Twitter, Inc. banned Defendant Qazi from the use of its platform on or around October 24, 2019. The initial Complaint in this case was filed on May 20, 2020. The First Amended Complaint ("FAC") was filed on July 2, 2020. ECF No. 20. With the consent of the parties, the SAC was filed on August 26, 2020. ECF No. 70. Between the filing of the initial Complaint and the FAC, a number of avoidable issues arose that led to the Qazi Defendants questioning the status of their own default. ECF No. 51. The Court resolved these issues in an Order Re Default and Civility issued on September 2, 2020 and directed all parties and counsel to act in a professional manner consistent with the Northern District of California Guidelines for Professional Conduct. ECF No. 72. Consistent with the Civility Order and as a gesture of good will, Plaintiff withdrew a previously pending motion for Rule 11 sanctions against Qazi Defendants and their counsel on September 9, 2020, even despite Qazi Defendants having violated and admitted to violating an agreement between the parties earlier the same day. ECF Nos. 66, 74.

After the withdrawal of the Rule 11 sanctions motion, as before, Plaintiff notified counsel for Qazi Defendants repeatedly of various barbs and threats publicly issued by Defendant Qazi, including some that contradicted counsel's previous representations to Plaintiff. While counsel promised to "raise" some of these issues with his client and has historically denied knowledge of others, the degree of hostility and alarming conduct publicly emanating from Qazi Defendants has escalated since the Civility Order was issued, culminating in the discussion of suicide on September 25, 2020.

## IV. ARGUMENT

### A. Legal Standard

"District courts have the inherent power to enforce their orders through civil contempt. *Spallone v. United States*, 493 U.S. 265, 276 (1990); *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). 'Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to

comply.' *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ('A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order.') (citation, quotation marks, and alterations omitted). 'The contempt `need not be willful,` and there is no good faith exception to the requirement of obedience to a court order.' *In re Dual-Deck Video*, 10 F.3d at 695 (citing *In re Crystal Palace*, 817 F.2d at 1365)." *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*, Case No. 5:16-cv-06370-EJD (N.D. Cal. July 2, 2020).

Civil sanctions are intended to be remedial, with the ultimate goals of forcing compliance with a court order and providing restitution for any injured parties. *Id*. Notably, a District Court's authority to impose sanctions extends to non-parties who are aware of a court order. "[A] non-party can be liable for contempt where the non-party has notice of the order and (1) aids the party in violating the court order or (2) is legally identified with him. *Montgomery Glob. Advisors V LLC*, 2006 WL 950102, at *2 (citing *Peterson*, 140 F.3d at 1323. 'The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by `clear and convincing evidence,` not merely a preponderance of the evidence.' *In re Dual-Deck Video*, 10 F.3d at 695 (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982))."

**B.    Qazi Defendants' Conduct Prior To the Issuance of the Civility Order**

The SAC documents in detail how Defendant Omar Qazi and his company, Defendant Smick Enterprises, Inc., have, with the assistance of non-party Scott Woods,[1] contravened Defendant Qazi's lifetime ban on the Twitter social network in order to continue promoting Defendant Tesla's stock and products, and to continue attacking all of Defendants' critics unabated. The SAC also documents the fact that Plaintiff is one of those often attacked.

---

[1] Mr. Woods is a Virginia resident and is to the best of Plaintiff's knowledge, a convicted felon.

On August 22, 2020 at 5:55 P.M. Pacific Daylight Time, Defendant Qazi directed his approximately 12,000 followers to the website of a Dean of Academic Affairs and Professor at Harvard University, who happens to be named Janet Doe.[2]  Dean Doe's contact information is listed on her Harvard website.  Defendant Qazi highlighted Dean Doe to his followers repeatedly because he erroneously believed that she was one of Plaintiff's Harvard classmates from 2001 through 2004 with the same name, briefly mentioned in Plaintiff's autobiography.[3]

Janet Doe is not Plaintiff's Harvard classmate from 2001 also named Janet Doe.  Plaintiff has never met Dean Doe or *vice-versa* and has no relationship to her in any known context.  In sum, Defendant Qazi recklessly attempted to turn the scorn of the on-line mob that follows him, and which has threatened Plaintiff with physical harm repeatedly due to Defendant Qazi's posts, on a random person—simply to attempt to cause Plaintiff distress by attacking others he knows.

Such tactics are indeed distressing.  However unlikely or inadvertent, Plaintiff does not want members of the public to suffer any harm, or even inconvenience, as a result of this litigation.  Shortly after Plaintiff contacted counsel for Qazi Defendants via e-mail to make them aware of the situation, the @WholeMarsBlog account removed the initial post about Dean Doe and replaced it *with an image of the e-mail about the matter that Plaintiff sent to counsel*, which still unnecessarily highlighted the name of Plaintiff's college classmate to Defendant Qazi's followers for absolutely no reason.  Defendant Qazi then fabricated an imaginary quote supposedly from Plaintiff's classmate ("He always was a creep") and posted it on Twitter as well, unwilling to let go of his attempt to humiliate Plaintiff and anyone Plaintiff has ever met.

A few hours later, late at night on August 23, 2020 at 1:58 A.M., still determined to humiliate and scare Plaintiff by attacking those around him, referring to Plaintiff's father, Defendant Qazi posted that, "We've reached out to Case Western Reserve University to inquire about why a member of their faculty is sitting on the Board of Directors of a 'charity' that has

---

[2] To avoid any further potential harm, this is a pseudonym.
[3] The SAC discusses how approximately 10% of this book is currently posted on multiple servers controlled by Defendant Qazi in the United States and Ukraine, but also previously in Russia. This was not the case prior to the filing of this lawsuit.

relentlessly harassed Tesla employees and customers, in violation of university policy." Simply put, the notion that Plaintiff goes around harassing "Tesla employees and customers" is a complete fiction. Document- and data-driven journalism and "harassment" are not the same thing.

But Defendant Qazi was not done. At 2:26 A.M., Defendant Qazi posted a video clip of Plaintiff's family from a 2018 local news broadcast concerning Plaintiff's disabled brother, with whom Defendant Qazi has previously attempted to communicate in order to harass and intimidate Plaintiff. SAC ¶ 103. Two days later, on August 25, 2020, Defendant Qazi posted a photograph of Plaintiff's parents as the header image for his @WholeMarsBlog Twitter account, which was at the time followed by 12,103 other accounts.

While the First Amendment permits Defendant Qazi to criticize Plaintiff, there is no reason why Plaintiff's family members, their employers, Plaintiff's disabled brother, Plaintiff's college classmates, and random people Plaintiff does not even know should be victimized just to satisfy Defendant Qazi's compulsive urge to deride others. On August 22, 2020 at 6:48 P.M., Plaintiff contacted counsel for Qazi Defendants again asking him to call immediately in order to avoid the involvement of the Court. Counsel for Qazi Defendants did not respond.

### C. Qazi Defendants' Conduct After the Issuance of the Civility Order

On September 8, 2020, counsel for Qazi Defendants e-mailed Plaintiff asking if Plaintiff would be willing to engage in a conversation about settlement. Plaintiff agreed. Both parties further agreed via telephone that the conversation would be subject to Federal Rule of Evidence 408 and confidential. Plaintiff offered to follow up with a summary of the conversation by e-mail and specific settlement terms. That e-mail was sent to counsel the same day at 3:55 P.M.

The next morning, on September 9, 2020, without Plaintiff's permission, and without making any kind of counter-offer, Defendant Qazi *again* posted several key portions of the e-mail to his counsel concerning the proposed settlement (which he requested) on the @WholeMarsBlog Twitter account. Plaintiff notified counsel via e-mail that his client had breached their confidentiality agreement. Counsel called and left a voicemail for Plaintiff

stating, "I am very upset about what happened. It should not have happened," and admitting to the "breach of our private agreement here regarding confidentiality."

If counsel was "upset," it is not clear that he expressed that sentiment to his client. Though Defendant Qazi did delete only the specific Twitter posts that included images of the e-mail, he left several others discussing the e-mail posted. Then, on September 18, 2020, Defendant Qazi further re-posted the key points of Plaintiff's settlement proposal as a summary, negating the effect of having deleted them in the first place after having violated the agreement. At 11:37 A.M., Plaintiff notified counsel.

Shortly thereafter, at 1:19 P.M., Defendant Qazi sent Twitter an invalid DMCA Notice (for the second time) concerning an image that had been posted under fair use doctrine over a year prior. Greenspan Declaration Exhibit C. This had the effect of locking the @PlainSite Twitter account due to a supposed but non-existent violation of copyright law. Plaintiff again notified counsel and filed a DMCA Counter-Notice. Twitter unlocked the account once Plaintiff agreed to read its copyright policy, which he was already aware of and had already read.

The next day, September 19, 2020, Defendant Qazi posted a communication to Plaintiff: "Multiple federal agencies are investigating you for securities fraud, tax fraud, criminal harassment, cyberstalking, and extortion." Plaintiff again notified counsel.

Also on September 19, 2020, Defendant Qazi wrote a number of Twitter posts, including one stating that Plaintiff's house was "bugged" by the Federal Bureau of Investigation, which led to a death threat against Plaintiff by a third party responding to Defendant Qazi.[4] Plaintiff again notified counsel.

On September 21, 2020, Defendant Qazi referred to Plaintiff as "twice as evil as Trevor [Milton]," the former Nikola Motors executive who Defendant Qazi had referred to as having "mollested *[sic]* his 15 year old cousin after a funeral," just 12 minutes prior. Plaintiff again notified counsel.

---

[4] Later, Twitter suspended the account that issued the threat.

On September 23, 2020, Defendant Qazi made another public false accusation against Plaintiff regarding a Tesla-related Twitter account Plaintiff had no interaction with. Plaintiff again notified counsel. Counsel finally replied, stating, "I do not believe that that is a violation of the NDCAL rules." When pressed, he could not and did not cite any authority for his position that it is permissible to make false public statements under Northern District of California Guidelines for Professional Conduct 18(b) and (c).

On September 24, 2020, the @WholeMarsBlog account posted a link to approximately 57 pages of lies and conspiracy theories authored in large part by non-party Diego MasMarques, Jr., which included Plaintiff's family's contact information, photographs of Plaintiff's family members, and a photograph of Plaintiff's parents' house in Ohio. Plaintiff again notified counsel, this time concluding, "I am seriously concerned that someone will get hurt or worse."

On September 25, 2020, counsel filed a motion to dismiss on behalf of Qazi Defendants, shockingly choosing the metaphor of a "virtual shooting gallery" to describe social media just hours after being informed in writing that Plaintiff was concerned about the threat of real violence. ECF No. 75 at 2, 9. Later on September 25, 2020, the discussion of suicide appeared on the @WholeMarsBlog Twitter account.

The conduct described above on behalf of Qazi Defendants and their counsel does not comply with the "letter and spirit" of the Guidelines for Professional Conduct in the Northern District of California, despite the Civility Order mandating such compliance. What's more, Qazi Defendants and their counsel do not pretend that there is any excuse for their conduct. They have admitted to violating an agreement, and have chosen to remain silent on all other aspects. This is inexcusable.

Even having repeatedly asked Defendant Qazi to cease and desist, directly, via Twitter's reporting functions, via law enforcement, and through counsel, he simply will not stop. At this point, Plaintiff is concerned that public safety is at issue since it impossible to know who Defendant Qazi will choose to target next, how, and who will believe him. Plaintiff is also concerned about his own safety, and given the discussion of suicide, Defendant Qazi's safety.

Counsel seems only too happy to fan the flames of conflict by invoking the most inappropriate metaphors possible and remaining as ignorant as possible of his client's constant misconduct.

## V. CONCLUSION

Plaintiff does not seek in any way to waste the Court's time or resources. However, the matters described herein are inescapable, serious, and must be addressed in some fashion, especially as Qazi Defendants threaten that, "any attempts to silence us will only make us louder." This is the opposite of the Court's order for "the civility and professionalism that counsel *and parties* typically bring to their cases" (emphasis added). If anything, the message of the Civility Order was that the volume was already excessive, and unusually so.

In the interest of protecting all involved from his menacing behavior, the Court should at least restrain Qazi Defendants' use of all social media until the final disposition of this case, which is exactly what Twitter sought to do with its ban on Defendant Qazi's use of its platform in the first place. This is not a call for prior restraint on speech, but rather for enforcement of an *existing* restraint that a platform has already formally imposed, though its technical ability has clearly fallen short in light of the workarounds being employed by Qazi Defendants.

For all the reasons stated, Plaintiff respectfully requests that the Court enter an Order to Show Cause why Kronenberger Rosenfeld LLP and Qazi Defendants should not be held in contempt of the Court's September 2, 2020 Order Re Default and Civility.

Dated: September 28, 2020          Respectfully submitted,

*/s/ Aaron Greenspan*
Aaron Greenspan
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org