**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **AARON GREENSPAN**,<br><br>Plaintiff,<br><br>v.<br><br>**OMAR QAZI**, et al.,<br><br>Defendants. | Case No. 3:20-cv-03426-JD<br><br>**DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S AND KRONENBERGER ROSENFELD, LLP'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY KRONENBERGER ROSENFELD LLP AND DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC. SHOULD NOT BE HELD IN CONTEMPT OF COURT**<br><br>Time:    10:00 a.m.<br>Date:    November 5, 2020<br>Before:  The Hon. James Donato<br>Ctrm.:   11, 19th Floor |

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is a case with an "unusually high degree of friction between the parties," as the Court previously noted. [D.E. No. 72.] Plaintiff's Motion for Order to Show Cause Why Kronenberger Rosenfeld, LLP and Defendants Omar Qazi and Smick Enterprises Should Not Be Held in Contempt (the "Motion") exemplifies that friction. More specifically, Plaintiff's Motion seeks to weaponize this Court's September 2, 2020 Order re: Default and Civility (the "Order")—ironically intended to minimize procedural quibbling—into a gag order against Mr. Qazi and Smick Enterprises (collectively, the "Smick Defendants"). Plaintiff's interpretation of the Order, in addition to robbing Defendants of due process, would only serve to increase the friction and inefficiencies that already plague this case. Thus, Plaintiff's reliance on this Court's Order as a weapon for restraining speech is misplaced, and the Motion should be denied.

### STATEMENT OF THE ISSUES

1. Whether the Court's September 2, 2020 Order re: Default and Civility [D.E. No. 72] was intended to enjoin party speech unrelated to the prosecution or defense of this action; and

2. Whether the Smick Defendants or Kronenberger Rosenfeld, LLP ("Kronenberger Rosenfeld") violated the Order, and if so, whether the severe remedy of contempt is the appropriate remedy?

### STATEMENT OF FACTS

On September 2, 2020, in response to the parties' "inability to work out an agreement on . . . simple procedural matters," the Court issued its Order. [D.E. No. 72.] Referencing a number of "entirely unnecessary disputes over technical issues of service and default in connection with the complaint," the Order sought to chart a course "for avoiding further misuse of time, money, and judicial resources in this case." [D.E. No. 72 at 1:13-19.]

Lamenting that these minor procedural issues could not be resolved between the parties, the Court ordered that "all parties and their attorneys in this action are directed to read the District's guidelines on civility and professionalism," and admonished that all parties and counsel would be "held accountable for conforming to the letter and spirit of the guidelines, including pro se litigant

Greenspan." [D.E. No. 72 at 4:1-5.]

Thereafter, Plaintiff became frustrated by tweets he associated with the Smick Defendants, which criticized and lampooned Plaintiff. None of these tweets comprise any filing or correspondence with the Court, consist of communications between Plaintiff and Defendants' counsel, relate to the prosecution or defense of this action, or concern procedural issues in this action. Rather the conduct that Plaintiff argues warrants a finding of contempt includes the following:

- A tweet from the @WholeMarsBlog Twitter account on September 25, 2020, stating, "Justice is coming Aaron. You thought you were too smart, and the rules didn't apply to you. They do." (Mot. at 2:8-11);
- A response to that tweet (also by the @WholeMarsBlog Twitter account), dated that same day, stating, "[W]hat aaron does to people is worse than murder IMHO / he threatens them until they want to kill themselves." (Mot. at 2:12-13)[1];
- A tweet from the @WholeMarsBlog Twitter account that "referred to Plaintiff as a 'criminal' and encouraged readers to 'please notify Twitter, local law enforcement, and the FBI.'" (Mot. at 3:6-7);
- Mr. Qazi's alleged "social media fabrication of an as-yet-non-existent Order against Plaintiff in this case to help with [Mr. Qazi's] legal defense fundraising efforts." (Mot. at 3:11-12);
- The alleged September 9, 2020 "breach of an agreement between the parties." (Mot. at 3:18-21)[2];
- The submission of a DMCA notice to Twitter that Plaintiff believes was invalid. (Mot. at

---

[1] Plaintiff himself concedes he does not know whether the Smick Defendants even authored the Tweets, stating "it seems likely" the first was authored by Mr. Qazi, while the second "was authored by non-party Scott Woods, who created the Twitter account." (Mot. at 2:17-20.) Presumably, Plaintiff does not know who actually authored the other Tweets referenced in the Motion, either.

[2] The agreement in question, as Plaintiff explains later in his Motion, was that the settlement discussions would be communications subject to Federal Rules of Evidence Rule 408. (Mot. at 7:18–8:2.)

8:9-11);

- A series of tweets from the @WholeMarsBlog Twitter account on September 19, 2020, including one stating that federal agencies were investigating Plaintiff and others suggesting that Plaintiff's house was bugged.[3] (Mot. at 8:15-21);

- A tweet from the @WholeMarsBlog Twitter account on September 21, 2020 referring to Plaintiff as "twice as evil as Trevor [Milton]." (Mot. at 8:22-24);

- A tweet from the @WholeMarsBlog Twitter account on September 23, 2020 stating that Plaintiff had had the Twitter account of a Tesla owner suspended. (Mot. at 9:1-6);

- A tweet from the @WholeMarsBlog Twitter account on September 24, 2020 that linked to a document authored by a non-party. (Mot. at 9:7-11); and

- Defendants' filing of their motion to dismiss in this case on September 25, 2020 (Motion at 9:12-16)

(the "Tweets"). As Plaintiff notes, after the publication of each Tweet by the @WholeMarsBlog Twitter account, Plaintiff sent an email to Kronenberger Rosenfeld demanding action regarding the Tweet and/or a justification for the Tweet, and expressing his belief that the publication of the Tweet violated the Court's Order. Ironically, Plaintiff's demands have increased the friction between Plaintiff on the one hand and Kronenberger Rosenfeld and the Smick Defendants on the other hand in litigating this case. The parties now find themselves once again before the Court on a collateral issue, diverting time and resources away from the resolution of the underlying case.

**ARGUMENT**

**A.   Standard of Law**

  **1.   Because civil contempt is a severe remedy, it is only warranted where a party violates a specific and definite order.**

Contempt is a severe remedy designed to coerce compliance with the specific terms of a

---

[3] Of note, Plaintiff claims that these Tweets "led to a death threat" against him by a third party. (Mot. at 8:19–20.) This third-party tweet, which is attached to Plaintiff's declaration in support of the Motion, claims no affiliation to Mr. Qazi or the Smick Defendants, stating only: "@WholeMarsBlog Who tf is Aaron Greenspan and can he respawn if he gets died?" (Decl. of Aaron Greenspan at 20).

1  court's order. Naturally, then, a prerequisite to contempt is a court order that either requires or
2  forbids a particular action, which the contemnor then disobeys. "When civil contempt is at issue,
3  the party moving for a contempt finding bears the burden of showing by clear and convincing
4  evidence that contemnors violated a specific and definite order of the court." *Calvillo Manriquez*
5  *v. Devos*, 411 F. Supp. 3d 535, 540 (N.D. Cal. 2019), citing *F.T.C. v. Affordable Media*, 179 F.3d
6  1228, 1239 (9th Cir. 1999). This is the case because civil contempt is, ultimately, a coercive
7  remedy designed to ensure obedience with a court's order. *Id.* at 539. The remedy itself is then
8  purposefully tailored to accommodate those private or public rights that the decree sought to
9  protect in the first place. *Id.* Thus, coercive sanction of contempt may only be imposed "after a
10 reasoned consideration of the character and magnitude of the harm threatened by the continued
11 contumacy, and the probable effectiveness of the suggested sanction in bringing about the result
12 desired." *Parsons v. Ryan*, 949 F.3d 443, 457 (9th Cir. 2020) (internal citations omitted).

13  Under this framework, it follows that the remedy of civil contempt "should not be resorted
14 to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct."
15 *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019), quoting *California Artificial Stone Paving Co.*
16 *v. Molitor*, 113 U.S. 609, 618 (1885) (emphasis original). The "potent" and "deadly" power of
17 judicial contempt is not appropriately wielded to enforce a vague decree. *Int'l Longshoremen's*
18 *Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). Instead, contempt
19 is only an appropriate remedy where the court has "frame[d] its orders so that those who must obey
20 them . . . know what the court intends to require and what it means to forbid." *Id.* Given the severity
21 of a contempt finding, "basic fairness requires that those enjoined receive explicit notice" of "what
22 conduct is outlawed" before being held in contempt for non-compliance. *Schmidt v. Lessard*, 414
23 U.S. 473, 476 (1974). In other words, contempt is an inappropriate remedy where it is unclear what
24 specific conduct (or lack thereof) would violate a court's order in the first place.

25  **2.    Contempt cannot be used to restrain speech absent a showing that the speech**
26  **poses an imminent threat to the administration of justice.**

27  Contempt is not an appropriate remedy to restrain undesirable speech—except in very
28 narrow circumstances. Our courts' stated deference to individuals' First Amendment rights is

axiomatic, even in the specific context of contempt proceedings:

> Men are entitled to speak as they please on matters vital to them; errors in judgment or unsubstantiated opinions may be exposed, of course, but not through punishment for contempt for the expression. Under our system of government, counterargument and education are the weapons available to expose these matters, not abridgment of the rights of free speech and assembly.

*Wood v. Georgia*, 370 U.S. 375, 389 (1962). Because the First Amendment provides robust protections for the right to free speech, out-of-court publications are governed by the clear and present danger standard, described as "a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished." *Id.* at 384 (quoting *Bridges v. State of Cal.*, 314 U.S. 252, 262 (1941)). To justify contempt sanctions in the speech context, "[t]he fires which [the speech] kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." *Craig v. Harney*, 331 U.S. 367, 376 (1947).

In summary, to prevail on his Motion, Plaintiff must satisfy three prongs: (1) that the Court's Order forbade the Smick Defendants and Kronenberger Rosenfeld from engaging in specific conduct; (2) that the Smick Defendants and Kronenberger Rosenfeld engaged in the prohibited conduct, in violation of the Court's Order; and (3) that contempt is the appropriate remedy for such purported violations. Plaintiff cannot establish any of these elements and, for that reason, his Motion fails.

**3. The Order did not enjoin the Smick Defendants from exercising their First Amendment rights.**

Plaintiff's Motion requires the assumption, at its core, that the underlying Order intended to restrain speech in the first place—an assumption that in the present case would transform this Court's civility order into a preliminary injunction issued *sua sponte* against the Smick Defendants without notice or an opportunity to be heard. The law would not support such an order and, for that reason, Plaintiff's erroneous interpretation of the Order cannot serve as the basis for a finding of contempt.

To obtain a preliminary injunction, a moving party must establish: (1) the likelihood of success on the merits of the underlying case; (2) a likelihood of irreparable harm to the moving

party if the preliminary injunction is not ordered; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief requires satisfaction of all four of the *Winter* prongs. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). It also requires a showing of time-sensitivity; the moving party must show that there is an immediate threatened injury. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); Fed. R. Civ. P. 65(b)(1)(A) (plaintiff must face both "immediate and irreparable harm."). Even under such circumstances, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Courts must first consider other alternative forms of relief, such as "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal citation and quotation marks omitted).

Perhaps most importantly, a court cannot grant injunctive relief against future speech save in the most exceptional and grave circumstances, *e.g.*, to prohibit the disclosure of military secrets during time of war. *See Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 728 n.6 (C.D. Cal. 1996) In other words, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." *Id.* Thus, such prior restraints are "presumptively unconstitutional," and a "heavy burden of justification rests on anyone seeking a prior restraint on the right of free speech." *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) (quoting *Balboa,* 40 Cal. 4th 1141, 1165 (2007) (Kennard, J., concurring and dissenting).

No such motion, showing, or consideration occurred here to justify a presumptively impermissible restraint on speech, as Plaintiff construes the Order. The Court's Order makes no factual findings regarding the need for immediate relief or the irreparable harm that would result to any of the parties should one not be enjoined from speaking out. There is no reference to the

*Winter* prongs or analysis of the adequacy of alternative remedies, nor is there any discussion of how the presumption of unconstitutionality has been overcome. Instead, the Court's directive is clear: parties and their attorneys are to read the District's guidelines on civility and professionalism and are placed on notice that they will be held accountable for conforming to the letter and spirit of those guidelines. [D.E. No. 72 at 4:1-5.] In other words, the Order's stated purpose is not to prevent irreparable harm under grave circumstances, but rather to "avoid future incidents" such as the "multiplicity of unwarranted filings and attendant waste of resources, including the Court's." [D.E. No. 72 at 3:27-4:1.]

Had the Court intended the Order to serve as an injunction to restrain speech, the Smick Defendants have every confidence the Court would have first afforded them the due process to which they are entitled under the law. Instead, the Order is a straightforward one: to read the Guidelines and conform to the letter and the spirit thereof. Nothing in either the Order or the Guidelines forbids speech over which Plaintiff seeks a finding of contempt. Thus, the Court should deny the Motion with respect to Kronenberger Rosenfeld and the Smick Defendants alike.

**4. Even if the Court intended the Order to restrain speech, neither the Smick Defendants nor Kronenberger Rosenfeld violated such a restraint.**

The facts described above do not describe a sanctionable course of conduct. To begin, Plaintiff admits that he does not actually know which (if any) of the Tweets were authored by Mr. Qazi. None of the Tweets threatens Plaintiff or creates a risk of harm. And if Plaintiff contends that it was sanctionable for the Smick Defendants to file a motion to dismiss, the appropriate vehicle for resolution is for him to file a motion under Rule 11, not to attempt to have the Smick Defendants or their counsel held in contempt for a "lack of civility."

Indeed, with respect to Kronenberger Rosenfeld, it is unclear what Plaintiff believes counsel did wrong. The only reference to the firm's actions appears to be the representation that settlement discussions would remain confidential subject to Federal Rules of Evidence Rule 408. But Rule 408 does not prohibit confidential settlement communications from being disclosed; rather, Rule 408 provides that settlement communications cannot be used as evidence to prove or disprove the amount of a disputed claim or for purposes of impeachment. Indeed, such

communications are readily discoverable in litigation provided they are not privileged. *See Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008). Regardless, Plaintiff does not contend that Kronenberger Rosenfeld disclosed the settlement communications other than to its clients (as required under CA ST RPC Rule 1.4.1). Thus, it is unclear what actions Plaintiff believes the Kronenberger Rosenfeld undertook that warrant a finding of contempt.

In summary, Plaintiff has failed to identify how the alleged conduct violated the Court Order, even assuming that Plaintiff had shown that the conduct at issue was attributable to the Smick Defendants. Thus, even if the Court's Order functions as a prior restraint on speech (as Plaintiff argues), Plaintiff has fallen far short of showing by clear and convincing evidence that the Smick Defendants and Kronenberger Rosenfeld violated the Order.

## CONCLUSION

The standard for holding a party in contempt is a stringent one, designed to restrict the application of the severe sanction of contempt to those situations where a party's willful defiance of a Court's order necessitates the intervention to coerce compliance. It is not a remedy to be deployed lightly—particularly in response to a party's exercise of First Amendment rights. Nor do basic principles of fairness allow for the imposition of such a severe sanction for a party's noncompliance with a vague order. Here, Plaintiff's interpretation of the Court's Order would turn it into a vague prior restraint of speech, and Plaintiff would have the Court sanction the Smick Defendants and their counsel for non-compliance, despite the fact that there has never been a hearing and no finding that the parties' speech constituted a risk of immediate or irreparable harm to Plaintiff. For these reasons, the Court should deny Plaintiff's Motion.

Respectfully Submitted,

DATED: October 13, 2020

**KRONENBERGER ROSENFELD, LLP**

By: <u>   s/Karl S. Kronenberger   </u>
     Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.