Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AARON GREENSPAN,<br><br>    Plaintiff,<br><br>        v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC.,<br>ELON MUSK, and TESLA, INC.,<br><br>    Defendants. | Case No. 3:20-cv-03426-JD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY KRONENBERGER ROSENFELD LLP AND DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC. SHOULD NOT BE HELD IN CONTEMPT OF COURT** |

Time:           10:00 A.M.
Date:           November 5, 2020
Courtroom:   11, 19th Floor

Judge: Hon. James Donato
SAC Filed: August 26, 2020

The opposition brief ("Opposition," ECF No. 78) filed by counsel for Defendants Omar Qazi and Smick Enterprises, Inc. (together, "Qazi Defendants") perfectly illustrates the fundamental problem that led to both the filing of this Motion and the avoidable procedural disputes that preceded it: Qazi Defendants' fundamental belief that rules do not apply to them.

Rather than simply agreeing to any of the polite but firm requests Plaintiff sent via e-mail to ask that Qazi Defendants halt their manifestly unprofessional rhetoric to ensure the safety of all parties (and non-parties), Qazi Defendants vowed to get "louder" to prove that they can not be

1  "silence[d]," using each request as a pretext to ratchet up their dangerous and performative

2  misconduct.  ECF No. 77-1 at 62.

3  They now misconstrue Plaintiff's requests to comply with this Court's simple and

4  eminently reasonable September 2, 2020 Order (the "Civility Order"), for all parties and counsel

5  to abide by the Northern District of California's Guidelines for Professional Conduct

6  ("Guidelines"), as a "vague" "presumptively impermissible restraint on speech" akin to a

7  "preliminary injunction."  Opposition at 4-6.  In doing so, they paint Plaintiff as irrationally

8  requesting relief that Plaintiff has not asked for—itself a violation of Guideline 8(a).[1]

9  In fact, Plaintiff has followed the proper procedures to request that Qazi Defendants and

10  their counsel simply act like professionals pursuant to the Civility Order, which inexorably

11  involves their speech.  The Guidelines enforced by the Civility Order are, if nothing else, a set of

12  recommended restraints on speech.  This is because the practice of law itself is for the most part

13  a rigid, systematized form of speech.[2]

14  Counsel for Qazi Defendants, Karl Kronenberger—who wrote "I do not believe" that

15  making repeated false statements "is a violation of the NDCAL rules," and accordingly took no

16  action—has been admitted to the Bar of the State of California for over seventeen years, since

17  July 15, 2003.  ECF No. 77-1 at 27-33.  Aside from the above, he is assuredly aware by now that

18  even with the robust guarantees provided by the First Amendment, free speech is not absolute,

19  and especially not for lawyers and litigants in the context of the courtroom.

20  "The United States Supreme Court has held that 'in the courtroom itself, during a
judicial proceeding, whatever right to `free speech` an attorney has is extremely

21  circumscribed.' *Gentile v. State Bar*, 501 U.S. 1030, 1071, 111 S.Ct. 2720, 115

22

23  [1] Qazi Defendants' opposition brief could be misinterpreted to suggest that Plaintiff contacted
counsel "after the publication of each Tweet by the @WholeMarsBlog Twitter account."
Opposition at 3.  Plaintiff has contacted counsel primarily about potential safety issues, leaving

24  hundreds of posts merely critical of Plaintiff unaddressed.  The @WholeMarsBlog account has
now authored over 62,100 tweets since its creation on May 21, 2020 at 8:26 A.M., or an average

25  of approximately 423 posts *per day*.

26  [2] Some courts have described the practice of law as "conduct," as opposed to speech.  Yet even if
some limited aspects of practicing law, e.g. accepting payment, constitute "conduct," the

27  conveyance of legal advice and argumentation is a matter of formulating and expressing speech.
Michele Cotton, *Improving Access to Justice by Enforcing the Free Speech Clause*, 83 BROOK.

28  L. REV. (2017).

1    L.Ed.2d 888 (1991).  In a non-public forum such as a courthouse, content-based
2    restrictions on speech are permissible as long as they are reasonable in light of the
     purpose served by the forum and viewpoint neutral.  See *Sammartano v. First*
3    *Judicial Dist. Court*, 303 F.3d 959, 966 (9th Cir.2002).  Even outside these
     contexts, the Supreme Court has observed that lawyers are not 'protected by the
4    First Amendment to the same extent as those engaged in other businesses.'
5    *Gentile*, 501 U.S. at 1073, 111 S.Ct. 2720.  The task for a court in analyzing out-
     of-court attorney speech is to 'engage[] in a balancing process, weighing the
6    State's interest in the regulation of a specialized profession against a lawyer's
     First Amendment interest in the kind of speech ... at issue.'  *Id*."

*Canatella v. Stovitz*, 365 F. Supp. 2d 1064, 1071 (N.D. Cal. 2005).  Notably, the Civility Order

deemed that all parties, including Defendant Qazi and his corporation, would be held to the same

standards as lawyers subject to the Guidelines going forward.  This same standard should also

apply to non-party Scott Woods, the initial creator of the @WholeMarsBlog Twitter account for

Defendant Qazi's benefit, who is clearly also aware of the Civility Order.  Plaintiff asks only that

Qazi Defendants, counsel, and Mr. Woods be as respectful to him during these proceedings as he

has been to them, even despite disagreeing with their conduct and arguments in the strongest

terms possible.

Nonetheless, Qazi Defendants reject their obligation to act in a respectful or even safe

manner, and point to *Wood v. Georgia*, 370 U.S. 375, 389 (1962) for the principle that contempt

proceedings should be limited to those circumstances where there is a "clear and present

danger," meaning that "the substantive evil must be extremely serious and the degree of

imminence extremely high before utterances can be punished."  Opposition at 5.  Since then, the

California Supreme Court has remarked on the issues raised in *Wood* as follows:

"[W]e long ago explained that contempt is an act, committed in or out of the
court's presence, 'which tends to impede, embarrass or obstruct the court in the
discharge of its duties.' (*In re Shortridge* (1893) 99 Cal. 526, 532 [34 P. 227].)
The contempt power represents 'the inherent power of a trial court to exercise a
reasonable control over all proceedings connected with the litigation before it, a
power which . . . `should be exercised by the courts in order to insure the orderly
administration of justice.` [Citations.]' (*Cooper v. Superior Court* (1961) 55
Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274].)"

*In re Nolan W.* (2009) 45 Cal.4th 1217, 1231.

1    Yet Plaintiff brought this Motion because the potential "substantive evil" was as high as

2    it gets: an account controlled in part by Defendant Qazi made a public assertion that merely by

3    virtue of litigating this case, Plaintiff might inadvertently drive Defendant Qazi to kill himself—a

4    warning sign of suicide.  On top of that, one of Defendant Qazi's followers suggested that

5    Plaintiff should die—a death threat.  And all of this followed Defendant Qazi and/or his non-

6    party co-conspirator Mr. Woods mistakenly targeting a named woman for scorn and ridicule with

7    no connection to this lawsuit whatsoever, before which Defendant Qazi invented and publicized

8    a fake order of this Court to raise money, etc.  These acts would tend to "impede, embarrass or

9    obstruct the court in the discharge of its duties" and are in part intended to prejudice Plaintiff,

10   with the @WholeMarsBlog account brazenly posting on October 13, 2020, "the more people

11   make fun of [Plaintiff] the closer we get to winning." *Id*. *See*

12   https://twitter.com/WholeMarsBlog/status/1316212512744902657.

13   Incredibly, counsel for Qazi Defendants has not responded to these "extremely serious"

14   matters with a humble apology, some brief form of explanation, clarity on who wrote what, or at

15   the very least, an assurance that his client is healthy and that the suicide reference was a joke.  In

16   many cases he did not respond at all.  He instead now offers the Court an incomplete and

17   misconstrued[3] list of bullet points and insists that his clients had a right under the First

18   Amendment, *and under the Guidelines pursuant to this Court's Order*, to incite others to attack

19   Plaintiff and/or random members of the public because of this lawsuit, and to openly warn of

20   suicide because of this lawsuit in such a way that the Court supposedly need not be concerned.

21   To add insult to injury, counsel flaunts Defendant Qazi's plausible deniability as to who

22   wrote the statements (without denying that his client actually did), and then attempts in his

23

24   [3] Plaintiff obviously does not object in general to the routine filing of Qazi Defendants' Motion
     to Dismiss.  Counsel's inclusion of this bullet point suggests a deliberate intent to falsely portray
25   Plaintiff as unreasonable.  As is clear from the motion, Plaintiff specifically objects to counsel's
     choice of the "virtual shooting gallery" metaphor in the context of all that has transpired, as well
26   as various other aspects of the Motion to Dismiss that will be outlined in Plaintiff's forthcoming
     opposition brief.  Counsel knew or should have known that his Motion would be promoted to
27   Defendant Qazi's social media followers, some of whom may own firearms, and many of whom
     often misinterpret Qazi Defendants' motions and/or whims as actual orders of the Court.
28   Counsel can zealously advocate for his clients while maintaining a modicum of common sense.

1  footnote 2 to retract the words in his September 9, 2020 voicemail in order to suggest that there

2  was never any violated agreement between the parties regarding confidentiality—only one

3  around Federal Rule of Evidence 408.[4]  In other words, to argue that he and his clients should not

4  be subject to contempt proceedings, counsel for Qazi Defendants tells another lie while omitting

5  some of his clients' most concerning acts from his opposition brief (namely, publicly linking to

6  internet posts targeting Plaintiff authored by a restrained party and criminal defendant; and

7  targeting Plaintiff's family members).

8      In this context, Qazi Defendants' lamentations regarding a supposed lack of "due

9  process" ring hollow.  Qazi Defendants have made their arguments pursuant to typical motion

10  practice under the Federal Rules of Civil Procedure and Civil Local Rule 7 in the standard

11  timeframe and could have used additional pages or attached a declaration enumerating various

12  facts if they so desired.  They did not.  Similarly, their arguments suggesting a "waste of

13  resources" ignore the countless hours Plaintiff has wasted handling Qazi Defendants' unrelenting

14  abuse and false accusations.[5,6]  Plaintiff only brought this matter to the Court's attention at the

15  point at which the potential safety implications were too dire to ignore.  Aaron Swartz's

16  unexpected 2013 suicide due to his prosecutor's ignorance and/or indifference is a stark

17  precedent and it is more than enough to warrant caution and a very minimal use of judicial

18

19  [4] Counsel's voicemail, accessible at http://www.aarongreenspan.com/20200909.voicemail.mp3,
20  directly references his client's "breach of our private agreement here regarding confidentiality."
    *See also* Motion at 7:18-8:2, not referenced in Qazi Defendants' Opposition.
21  [5] Defendant Qazi continues to mock the Court even as of the filing of this Reply, having posted
    his Opposition on one of his personal websites at the URL
22  https://heyamifat.com/tesla/aaron-greenspan-huge-moron.pdf, subsequently advertised to his
    15,000+ social media followers.  While he would normally be perfectly free to call Plaintiff a
23  "huge moron," this attempt to further incorporate these proceedings into Defendant Qazi's
    supposed comedy routine on social media once again violates Guideline 8, which reads, "A
24  lawyer should at all times be civil, courteous, and accurate in communicating with opponents or
    adversaries, whether in writing or orally."
25  [6] Plaintiff's Motion adheres to Guideline 10, which states, "Motions should be filed or opposed
    only in good faith and when the issue cannot be otherwise resolved."  Prior to filing the Motion,
26  Plaintiff e-mailed counsel Karl Kronenberger over 20 times from August 22, 2020 through
    September 26, 2020 hoping that Qazi Defendants would voluntarily cease and desist their
27  harassing and deeply unprofessional actions.  ECF No. 77-1.  Plaintiff specifically avoided
    requesting a temporary restraining order or a permanent injunction due to the strain such motions
28  place on the Court's calendar.

1    resources.  Frankly, counsel's argument that "[n]one of these tweets" are material to the

2    proceedings, even where they may concern his own client's *life*, is preposterous.

3          In conclusion, Qazi Defendants' recalcitrance, premised on a misplaced belief in absolute

4    freedom of speech under the First Amendment, must stop.  Plaintiff does not expect that

5    everyone must like him or say nice things about him; some disagreements are inevitable in life.

6    But Plaintiff does expect that taking an issue to court should not require anyone to risk their

7    safety to any significant degree, and Qazi Defendants' actions have too often crossed the line.

8    The Northern District of California's Guidelines for Professional Conduct were not intended to

9    encourage maybe-serious-maybe-not warnings about litigants committing suicide, the vengeful

10   targeting of attorneys' and/or parties' family members, death threats, offshore websites, hostile

11   written missives, carefully orchestrated finger-pointing, broken agreements, outright lies,

12   anonymous funding, and extra billable hours for the attorneys doing nothing to curtail all of the

13   above in response to repeated requests to cease and desist.  Quite the opposite, as none of those

14   acts could be considered "professional conduct" by any reasonable person.  Accordingly, an

15   Order to Show Cause Why Kronenberger Rosenfeld LLP and Defendants Omar Qazi and Smick

16   Enterprises, Inc. Should Not Be Held In Contempt of Court is regrettably necessary.

17

18   Dated: October 14, 2020              Respectfully submitted,

19

20

21

22                                       Aaron Greenspan
                                         956 Carolina Street
23                                       San Francisco, CA  94107-3337
                                         Phone: +1 415 670 9350
24                                       Fax: +1 415 373 3959
                                         E-Mail: aaron.greenspan@plainsite.org
25

26

27

28