**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **AARON GREENSPAN**, <br><br> Plaintiff, <br><br> v. <br><br> **OMAR QAZI**, et al., <br><br> Defendants. | Case No. 3:20-cv-03426-JD <br><br> **DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CIV. PROC. CODE §425.16, AND MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)** <br><br> Date: December 10, 2020 <br> Time: 10:00 a.m. <br> Before: The Hon. James Donato <br> Ctrm.: 11, 19th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ERRORS IN KARL KRONENBERGER'S DECLARATION ................................................2

ARGUMENT ..........................................................................................................................3

    A. The Smick Defendants have satisfied prong one of anti-SLAPP by showing both that Plaintiff is a public figure and that the Tweets concern an issue of public interest.............3

    B. Plaintiff's libel claim should be stricken or dismissed because no reasonable person would believe the Tweets are assertions of fact.............................................................5

    C. The conduct allegedly supporting Plaintiff's IIED claim was not directed at Plaintiff and/or merely caused Plaintiff embarrassment and indignity ..............................................6

    D. Plaintiff has not stated a stalking claim under Civil Code §1708.7 when he has not alleged plausible fear or Mr. Qazi's violation of a restraining order ..................................8

    E. Plaintiff does not address the defects in his UCL claim .....................................................9

    F. Because the Smick Defendants' alleged infringement did not usurp demand for Plaintiff's book or photograph, the alleged infringement constitutes a fair use ...................................9

    G. Plaintiff has not alleged that Mr. Qazi intended to misrepresent his use of Plaintiff's work in a DMCA counternotice in violation of 17 U.S.C. §512(f) ............................................10

    H. Plaintiff has not alleged that the Smick Defendants intended to remove CMI in order to infringe, as is necessary to state a claim under 17 U.S.C. §1202(b).................................11

    I. Plaintiff fails to state a claim for securities market manipulation ......................................11

CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Blazheiev v. Ubisoft Toronto Inc.*,
  No. 17-CV-07160-EMC, 2018 WL 3417481 (N.D. Cal. July 13, 2018) .................................. 8
*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ........................................................................................................ 10
*City of Carlsbad v. Shah*,
  850 F. Supp. 2d 1087 (S.D. Cal. 2012) ............................................................................ 11
*de Fontbrune v. Wofsy*,
  409 F. Supp. 3d 823 (N.D. Cal. 2019) ............................................................................... 9
*Dickinson v. Cosby*,
  37 Cal. App. 5th 1138 (2019) ............................................................................................ 5
*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 (2019) ..................................................................................................... 3, 4
*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) ........................................................................................... 10
*Haley v. Cohen & Steers Capital Mgmt., Inc.*,
  871 F. Supp. 2d 944 (N.D. Cal. 2012) ............................................................................... 7
*Herring Networks, Inc. v. Maddow*,
  445 F. Supp. 3d 1042 (S.D. Cal. 2020) .......................................................................... 3, 5
*In re DMCA Subpoena to Reddit, Inc.*,
  441 F. Supp. 3d 875 (N.D. Cal. 2020) .......................................................................... 9, 10
*Karimi v. Golden Gate Sch. of Law*,
  361 F. Supp. 3d 956 (N.D. Cal. 2019) ............................................................................... 8
*McGarry v. Univ. of San Diego*,
  154 Cal. App. 4th 97 (2007) ............................................................................................. 5
*Peterman v. Republican Nat'l Comm.*,
  369 F. Supp. 3d 1053 (D. Mont. 2019) ............................................................................ 10
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir.) ...................................................................................................... 3
*Rand Res., LLC v. City of Carson*,
  6 Cal. 5th 610 (2019) ........................................................................................................ 4
*Rivero v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*,
  105 Cal. App. 4th 913 (2003) ............................................................................................ 3
*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*,
  804 F. App'x 668 (9th Cir. 2020) .................................................................................... 11
*Silbersher v. Valeant Pharm. Int'l, Inc.*,
  445 F. Supp. 3d 393 (N.D. Cal. 2020) ............................................................................... 8
*Whitlock v. Pepsi Americas*,
  681 F. Supp. 2d 1116 (N.D. Cal. 2010) ............................................................................. 7
*ZL Techs., Inc. v. Does 1–7*,
  13 Cal. App. 5th 603 (2017) ............................................................................................. 5

**Statutes**

17 U.S.C. §512(f) ............................................................................................................ i, 2, 10

17 U.S.C. §1202 ................................................................................................................ 2, 11
Bus. & Prof. C. §17200 ............................................................................................................ 1
Code Civ. Proc. §425.16(e)(3) .............................................................................................. 1, 3
Civ. Code §1708.7 ...................................................................................................... i, 1, 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1

## INTRODUCTION

There is little question that Plaintiff Aaron Greenspan has been embarrassed by the alleged conduct of Defendants Omar Qazi and Smick Enterprises, Inc. (the "Smick Defendants"). Assuming the Smick Defendants published caustic criticism about Plaintiff on Twitter, pretended to be a phone technician, superimposed Plaintiff's head on a pornographic image, excerpted and made fun of Plaintiff's autobiography, and contacted Plaintiff's father and brother under false pretenses, it is understandable that Plaintiff would be embarrassed, even humiliated. However, Plaintiff's hurt feelings do not amount to a viable legal claim. Plaintiff's Opposition does nothing to cure the defects in his Second Amended Complaint ("SAC"), as summarized below.

- **Anti-SLAPP Applies**: Contrary to Plaintiff's Opposition, Code of Civil Procedure ("CCP") §425.16 ("anti-SLAPP") applies to the Tweets where Plaintiff has voluntarily placed himself in the public eye (including by repeatedly claiming he created Facebook), and where the Tweets concern an issue of widespread interest (*i.e.*, criticizing the critics of Tesla and Elon Musk).

- **The Tweets Are Protected Hyperbole:** The fact that the word "truth" appears in the Tweets does not make them defamatory when no reasonable person would understand them as asserting provable facts.

- **No IIED:** Plaintiff has not stated a claim for intentional infliction of emotional distress ("IIED") when the conduct supporting his claim was directed at others, involved mere insults and indignities, and/or did not cause Plaintiff severe emotional distress.

- **No Stalking Claim:** Plaintiff has not alleged a viable claim for stalking under Civil Code §1708.7 where he not alleged that Mr. Qazi violated a restraining order, and where Plaintiff's allegation that Mr. Qazi's text message placed him in fear is not plausible.

- **No UCL Claim:** Plaintiff's Opposition does not address the fact that he has not alleged a "business practice," lost money or property, or the right to restitution, as needed to state a claim under Business and Professions Code §17200 ("UCL").

- **No Copyright Infringement:** The Smick Defendants' alleged use of excerpts from Plaintiff's autobiography is protected by the fair use doctrine. When lethal criticism or parody kills demand for an original work, that use does not produce a harm under the Copyright Act.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1. • **No DMCA Violation:** Plaintiff has not stated a claim under the DMCA's takedown/counternotice provision (17 U.S.C. §512(f)) or the Copyright Management Information ("CMI") provision (17 U.S.C. §1202(b)). The Smick Defendants did not make any misrepresentations about fair use and did not remove CMI with the intent to infringe.

For all of these reasons, and as explained in more detail herein, the Court should strike Plaintiff's state law claims and dismiss the remainder of the SAC.

## ERRORS IN KARL KRONENBERGER'S DECLARATION

As Plaintiff has pointed out, the Declaration of Karl S. Kronenberger in support of the Smick Defendants' opening brief [D.E. No. 75-1] contains some errors. While these errors do not affect the Smick Defendants' arguments and were evident from the exhibits attached to the declaration, the Smick Defendants wish to clarify any continued misunderstanding that may have resulted from the errors. The Smick Defendants' counsel apologize for any confusion caused by the errors outlined below.

- Kronenberger Decl. ¶¶11–12 incorrectly refer to Exhibits J and K as articles "about the instant lawsuit." Exhibits J and K are not about the instant lawsuit. Rather, Exhibits J and K describe a different defamation lawsuit against Elon Musk, in which Musk exchanged the allegedly defamatory emails with Aaron Greenspan. Exhibits J and K describe how Aaron Greenspan then published the email exchange on Twitter, where it received over 400,000 impressions by Twitter users.
- MPA at 3:17–18 states, "Finally, this lawsuit itself has generated substantial coverage in major media outlets. (Kronenberger Decl. ¶¶18–21 & Exs. Q–T.)" The sentence and citation are incorrect. They should have stated "Finally, this lawsuit itself has generated substantial coverage in media outlets. (Kronenberger Decl. ¶10 & Ex. I.)"
- MPA at 7:22–23 states, "Finally, the news coverage generated by Plaintiff's filing of this lawsuit indicates that there is widespread interest in the statements underlying the lawsuit. (Kronenberger Decl. ¶¶10–12 & Exs. I–K.)" The citation is incorrect. It should have stated: ("Kronenberger Decl. ¶10 & Ex. I.)

//

# ARGUMENT

**A.    The Smick Defendants have satisfied prong one of anti-SLAPP by showing both that Plaintiff is a public figure and that the Tweets concern an issue of public interest.**

A defendant moving under anti-SLAPP must show that the plaintiff's suit arises from protected activity. A defendant may satisfy this requirement by showing that the plaintiff's suit involves a written statement made in a public forum in connection with an issue of public interest. *See* CCP §425.16(e)(3). Plaintiff does not dispute that several of his claims arise from written statements made in a public forum. (Opp. at 6:24.) Thus, the only question is whether the Tweets concern an issue of public interest.[1]

A statement is of public concern when it is addresses a topic of widespread, public interest. *See Rivero v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003). The "public interest" requirement is construed broadly to include "any issue in which the public is interested." *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1048 (S.D. Cal. 2020). While a statement that is not of interest to the public cannot become one merely by referring to a subject of widespread public interest, when the statement itself is of widespread public interest, prong one of anti-SLAPP is satisfied. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150–52 (2019) ("a statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue," "incorporating considerations of context—including audience, speaker, and purpose" (brackets in original)).

---

[1] Plaintiff appears to argue that because the Smick Defendants submitted evidence regarding anti-SLAPP's first prong, Plaintiff is entitled to conduct discovery under *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018). Plaintiff's argument does not make sense because evidence regarding whether the Smick Defendants' alleged statements concern an issue of public concern is by definition publicly available. Even if the Court were to treat the Smick Defendants' anti-SLAPP motion as a motion for summary judgment, to postpone disposition of a summary judgment motion under Rule 56(d), the non-movant must show by affidavit or declaration that he cannot present facts essential to his opposition. Here, Plaintiff has not made, and could not make, any such showing that he needs discovery to address the first prong of anti-SLAPP.

Plaintiff also argues that the Smick Defendants did not transmit their anti-SLAPP motion to the Judicial Council as required under CCP §425.16(j). To the extent this procedural rule applies in federal court, the Smick Defendants satisfied it by transmitting their anti-SLAPP motion to the Judicial Council on October 19, 2020.

Case No. 3:20-cv-03426-JD           3           SMICK DEFENDANTS' REPLY ISO MTN TO STRIKE AND DISMISS

Importantly, whether a statement contributes to a debate on an issue of public interest "does not turn on a normative evaluation of the substance of the speech." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150–51 (2019). As the California Supreme Court held:

> We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest.

*Id.* Here, Plaintiff concedes that the Tweets were of interest to the public when they were "read by a wide audience of at least 10,000-20,000 Twitter followers." (SAC ¶60.) While the Tweets may not be tasteful to some, making fun of, criticizing, and satirizing critics of Tesla and Elon Musk (including Aaron Greenspan) is a topic of widespread public interest. Thus, the Tweets themselves are of widespread public interest and satisfy prong one of anti-SLAPP.

The Tweets also concern an issue of public interest because Plaintiff has voluntarily placed himself in the public eye. A statement is protected under anti-SLAPP when it concerns a person in the public eye. *See Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 621 (2019). As explained in the Smick Defendants' opening brief, Plaintiff has solicited attention from major media outlets over the course of a decade, including by repeatedly claiming that he came up with the idea for Facebook—a nearly trillion-dollar social media behemoth. (Kronenberger Decl. Ex. P.) When Columbia Pictures released a major movie about the founding of Facebook, Plaintiff sued it for "Defamation by Omission," arguing that he was significantly harmed by the film's implication that he had no role in the creation of Facebook. (Kronenberger Decl. Ex. P.) Moreover, Plaintiff has authored and sells his autobiography, which purportedly has a sufficient market to be harmed by the alleged copyright infringement. (SAC ¶236.) Thus, Plaintiff has placed himself in the public eye. Plaintiff argues that a defendant, charged with defamation, cannot create a defense by making the claimant a public figure. (Opp. at 7:11–13.) Here, however, Plaintiff himself sought nearly all of the cited media attention, including by repeatedly claiming he created Facebook, by publishing and selling his autobiography, and by soliciting media coverage of this dispute. Plaintiff cannot seek public attention and then deny that he is in the public eye.

In sum, because there is widespread public interest in the Tweets, and because Plaintiff has

put himself in the public eye, the Smick Defendants have satisfied anti-SLAPP's first prong.

**B.     Plaintiff's libel claim should be stricken or dismissed because no reasonable person would believe the Tweets are assertions of fact.**

The Tweets are not defamatory because they do not comprise false assertions of fact. In other words, nobody would understand the Tweets as asserting provable facts when they were published in a virtual shooting gallery, using juvenile and distasteful language. In response, Plaintiff argues that a reasonable viewer would understand the Tweets as true because they contain statements such as "100% true" and "true story" (even though these allegations are not in the SAC). (Opp. at 10:25–11:2.) Plaintiff's argument fails.

In determining whether a statement comprises an actionable assertion of fact or protected hyperbole, a court must ask whether a reasonable person could conclude that the statement declares or implies a provably false assertion of fact. *See Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1163 (2019). A court must analyze the extent of figurative and hyperbolic language and the reasonable expectations of the audience in that particular situation. *See Herring Networks, Inc.*, 445 F. Supp. 3d at 1050–51. Where the language used is loose, figurative, or hyperbolic, this tends to negate the impression that a statement contains an assertion of verifiable fact. Crude and ungrammatical language, satirical tone, and vituperative, juvenile name-calling all provide additional support for the conclusion that offensive statements are nonactionable opinion. *See ZL Techs., Inc. v. Does 1–7*, 13 Cal. App. 5th 603, 624 (2017). Whether a statement is couched as opinion or fact is not dispositive; rather the dispositive question is whether a reasonable fact finder could conclude that the statement declares or implies a provably false assertion of fact. *See McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 113 (2007).

Here, the Smick Defendants allegedly posted the following statements in connection with the Tweets:

- "If you read the tweet you replied to, you'll notice I said I'm not aligning myself with anyone. Aaron definitely seems like a dick though." (SAC Ex. B at 2.)
- "Strange how Aaron mentions that he think Diego wants to 'get in his pants'. Sounds like may be revealing some deeper desires there." (SAC Ex. B at 2.)

Case No. 3:20-cv-03426-JD     5     **SMICK DEFENDANTS' REPLY ISO MTN TO STRIKE AND DISMISS**

- "I did make the joke post about Aaron getting beat up by kids or whatever with his contact info I got from PlainSite. Did it for fun because he posted tweeted about me. Deleted it later that day. Nothing personal against Aaron." (SAC Ex. B at 3.)
- "It's plain to see — we are full of shit. Please donate to our charity before IRS revokes our tax exempt status (Tax accountant, Parody)." (SAC Ex. B at 5.)
- "It took a lot of hard work to break every single one of these rules with our fraudulent charity, but we pulled it off." (SAC Ex. B at 5.)
- "DONT MAKE FUN OF ME I WILL SUE YOU." (SAC Ex. B at 6.)
- "Norman, supposedly a 'dog' frequently appears in videos and tweets in an effort to artificially drive up Tesla's stock price. Today we are announcing we are suing Norman for securities fraud. My daddy will help me file the lawsuit today. We wont rest until he's in doggy jail twitter.com/28delayslater/…" (SAC Ex. B at 6.)
- "LMFAOOOOO I'm dying what a fucking moron." (SAC Ex. B at 18.)
- "If you would like to contact Aaron for pranks you can email or call him using the info listed below. Remember that all pranks will be recorded, so give it your best shot." (SAC Ex. B at 19.)
- "to the police: if I am found dead in mysterious circumstances, it was almost certainly aaron greenspan he killed me for saying he didn't invent facebook (he didn't)." (SAC Ex. B at 28.)

The above-referenced statements reflect figurative, loose, and hyperbolic language, including crude and ungrammatical usage and offensive statements. Moreover, the above-referenced statements either comprise the allegedly defamatory Tweets or were published alongside the Tweets. The extremely hyperbolic nature of these statements guts any argument that a reasonable person would understand the Tweets as asserting facts. As such, the Tweets are non-actionable rhetoric and hyperbole.

**C.   The conduct allegedly supporting Plaintiff's IIED claim was not directed at Plaintiff and/or merely caused Plaintiff embarrassment and indignity.**

Plaintiff identifies a laundry list of conduct that supposedly caused him severe emotional

distress. However, this conduct was either not directed at Plaintiff and/or involved mere insults and indignities. Moreover, Plaintiff has not alleged severe emotional distress.

- **Conduct Not Directed At Plaintiff:** A plaintiff asserting an IIED claim must show that the defendant's conduct was directed at that particular plaintiff, and it is not enough to show that the defendant knew that other people may be affected by the defendant's conduct. *See Whitlock v. Pepsi Americas*, 681 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010). Several of the bases for Plaintiff's IIED claim were directed at others:
   - Impersonating a lawyer in a call to Plaintiff's father (Opp. at 14, subp. (b));
   - Impersonating Plaintiff's brother and father on websites (Opp. at 14 subps. (c) and (d);
   - Posting a photograph of Plaintiff's parents' house (Opp. at 15 subp. (j)); and
   - Posting videos of Plaintiff's family on social mediate sites (Opp. at 15 subp. (k)).

- **Embarrassment, Indignities, and Threats:** Liability for IIED does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *See Haley v. Cohen & Steers Capital Mgmt., Inc.*, 871 F. Supp. 2d 944, 960 (N.D. Cal. 2012). The conduct allegedly directed at Plaintiff could only viewed as insults, indignities, and annoyances, and includes:
   - Impersonating a phone company technician in a call to Plaintiff where Plaintiff "refused to divulge any information." (Opp. at 14, subp. (a));
   - Creating a Twitter account in the name of Plaintiff's business and linking it to a pornographic website (Opp. at 15, subp. (e));
   - Pasting a photograph of Plaintiff's face on top of a pornographic image on a publicly-accessible website (Opp. at 15, subp. (f));
   - Altering a restraining order Plaintiff had obtained to identify "Little Billy Watkins," 5-years-old, as the restrained party (Opp. at 15, subp. (g));
   - Communicating with a party against whom Plaintiff had obtained a restraining order (Opp. at 15, subp. (h)); and
   - Posting links to Plaintiff's address and contact information (Opp. at 15, subp. (j)).

- **No Severe Emotional Distress:** The degree of injury required to state an IIED claim is high: severe emotional distress means emotional distress of such substantial quality or enduring

quality that no reasonable person should be expected to endure it; assertions that a plaintiff suffered discomfort, worry, anxiety, concern, and agitation do not meet that bar. *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 980–81 (N.D. Cal. 2019). Here, Plaintiff alleges that he suffered "grave concern," "horror," "alarm," "chagrin," and "fear" as a result of the above-described conduct. Even if one includes all of the above-referenced conduct, the resulting alleged harm still does not rise to the level of "severe emotional distress" as a matter of law.

**D. Plaintiff has not stated a stalking claim under Civil Code §1708.7 when he has not alleged plausible fear or Mr. Qazi's violation of a restraining order.**

To state a stalking claim under Civil Code §1708.7, a plaintiff must allege, among other things, that the defendant made a credible threat with the intent to place the plaintiff in reasonable fear of his safety or the safety of an immediate family member or the defendant violated a restraining order. In evaluating the plausibility of Plaintiff's claim, the Court must undertake a "context-specific" analysis and use its "common sense." *Silbersher v. Valeant Pharm. Int'l, Inc.*, 445 F. Supp. 3d 393, 400 (N.D. Cal. 2020). Plaintiff's stalking allegations are not legally supported or plausible, and the Court can so rule on a motion to dismiss. *See, e.g.*, *Blazheiev v. Ubisoft Toronto Inc.*, No. 17-CV-07160-EMC, 2018 WL 3417481, at *8 (N.D. Cal. July 13, 2018) (dismissing §1708.7 claim where plaintiff did not provide details about supposed stalking).

<u>Restraining Order</u>: Plaintiff argues that he alleged that Mr. Qazi violated a restraining order by providing assistance to a restrained party. (Opp. at 16:8–12.) Even if Mr. Qazi were bound by the restraining order against Mr. MasMarques (and he is not), Plaintiff's allegations about Mr. Qazi's conduct are so vague as to not be plausible (*i.e.*, Mr. Qazi agreed "to assist him by serving as a conduit for the restrained party's harassment toward Plaintiff, in violation of the various restraining orders . . ."). (SAC ¶222.)

<u>Reasonable Fear</u>: Plaintiff also argues that he was placed in reasonable fear for his safety when Mr. Qazi accused him of possessing child pornography and stated that "[w]e will call the police tomorrow." (Opp. at 16:12–14.) Given Plaintiff's allegations about the numerous Tweets, which involve hyperbolic, juvenile, and aggressive language, no reasonable person would have understood this particular statement as a threat to Plaintiff's safety.

Case No. 3:20-cv-03426-JD | 8 | SMICK DEFENDANTS' REPLY ISO MTN TO STRIKE AND DISMISS

Because Plaintiff has not alleged sufficient facts to show a violation of a restraining order or reasonable fear, the Court should strike or dismiss Plaintiff's section 1708.7 claim.

**E.  Plaintiff does not address the defects in his UCL claim.**

Plaintiff has not stated a UCL claim because: a) he has not alleged that the Smick Defendants engaged in a "business practice," and b) he has not alleged that he lost money or property as a result of the Smick Defendants' conduct. Plaintiff does not address either of these problems in his Opposition. Plaintiff also appears to concede that he is not entitled to restitution from the Smick Defendants under the UCL. Finally, Plaintiff's request for non-monetary injunctive relief under the UCL fails because Plaintiff has not explained how his requested injunctions could survive the constitutional prohibitions against prior restraints on speech. Thus, the Court should strike or dismiss Plaintiff's UCL claim.

**F.  Because the Smick Defendants' alleged infringement did not usurp demand for Plaintiff's book or photograph, the alleged infringement constitutes a fair use.**

Plaintiff alleges that the Smick Defendants infringed Plaintiff's copyrights when they copied portions of Plaintiff's autobiography, *Authoritas*, and added captions, such as "How Never to Get Laid" and "Yer a Wizard Aaron," and commentary such as, "The sad story of a smart coder who failed time and time again because of his terrible social skills. He has never changed. He doesn't know how to talk to people, only threaten them. That's why he'll always be a huge loser, in my opinion." (SAC Ex. U.)

Plaintiff argues that the Smick Defendants copied far more of *Authoritas* than was necessary to criticize plaintiff and qualify for fair use protection. (Opp. at 17:18–19.) However, in analyzing fair use, the effect of the alleged infringement on the market value of the copyrighted work is undoubtedly the single most important element. *See de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 843 (N.D. Cal. 2019). As this Court itself has noted, a use that has no demonstrable effect upon the potential market for, or the value of, a copyrighted work need not be prohibited to protect the incentive to create. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 885–86 (N.D. Cal. 2020). As this Court further noted, "a diversion or suppression of demand from criticism is not a cognizable copyright harm. There is a crucial difference between '[b]iting criticism [that

merely] suppresses demand [and] copyright infringement[, which] usurps it.'" *Id.* (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 593 (1994) (brackets in original)). As an example, "when a lethal parody, like a scathing theater review, kills demand for the original, it does not produce a harm cognizable under the Copyright Act." *Campbell*, 510 U.S. at 591–92. "[T]he role of the courts is to distinguish between "[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it. *Id.* (quoting *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986) (brackets in original)).

Here, Plaintiff tacitly concedes that the alleged infringement did not displace the market for *Authoritas*, alleging that his "reputation and goodwill" were damaged as a result of the use, not that he lost sales of *Authoritas*. Even if Plaintiff had lost sales of *Authoritas* as a result of the alleged infringement, any lost sales did not arise from market displacement but rather from the biting criticism of Plaintiff's autobiography. *See Peterman v. Republican Nat'l Comm.*, 369 F. Supp. 3d 1053, 1066 (D. Mont. 2019) ("even in the unlikely situation that the Work's value to Peterman had decreased because of the RNC's use, any decrease in value is not displacement"). Thus, Plaintiff's copyright infringement claim is barred by the fair use doctrine.

**G.    Plaintiff has not alleged that Mr. Qazi intended to mispresent his use of Plaintiff's work in a DMCA counternotice in violation of 17 U.S.C. §512(f).**

Plaintiff claims that: a) Mr. Qazi published portions of Plaintiff's autobiography *Authoritas*, b) Plaintiff submitted a DMCA takedown notice, and c) Mr. Qazi submitted a fraudulent DMCA counternotice, in which he misrepresented that his use of portions of *Authoritas* was a fair use. (SAC ¶285.) As described above, Mr. Qazi's alleged use *Authoritas* was a fair use, thereby gutting Plaintiff's argument that Mr. Qazi falsely claimed that his use was a fair use. Even if the Court were to find that Mr. Qazi's alleged use of *Authoritas* was not a fair use, Plaintiff has still not adequately alleged Mr. Qazi's intent to misrepresent his use. At a minimum, genuine questions exist as to whether Mr. Qazi's alleged use of *Authoritas* was a fair use. Given these questions, Mr. Qazi could not have falsely claimed that his use of *Authoritas* was a fair use.

//

//

**H.  Plaintiff has not alleged that the Smick Defendants intended to remove CMI in order to infringe, as is necessary to state a claim under 17 U.S.C. §1202(b).**

Plaintiff claims that the Smick Defendants violated 17 U.S.C. §1202 by removing CMI from Plaintiff's "Purple Shirt Photograph." To state a claim under 17 U.S.C. §1202, a plaintiff must allege that the defendant knew or had reason to know that the removal of CMI would induce, enable, facilitate, or conceal an infringement. *See* 17 U.S.C. §1202(b). As discussed above, the Smick Defendants' alleged use of *Authoritas* and the Purple Shirt Photograph was a fair use. Thus, the Smick Defendants could not have intended to induce infringement by removing the CMI. Plaintiff does not address this defect in his Opposition.

Moreover, Plaintiff has not alleged that the Smick Defendants removed any actual CMI because the claimed CMI was in Plaintiff's website footer and not on the Purple Shirt Photograph. *See SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670–71 (9th Cir. 2020). While Plaintiff argues that this situation is distinguishable from *SellPoolSuppliesOnline.com, LLC*, the facts appear similar.

Finally, Plaintiff argues that the Smick Defendants engaged in new instances of using the Purple Shirt Photograph after Plaintiff affixed CMI to the actual photograph; Plaintiff alleges that the Smick Defendants' subsequent use of the photo is not to be governed by *SellPoolSuppliesOnline.com, LLC*. However, "[t]he first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1102 (S.D. Cal. 2012). While courts in the Ninth Circuit have not addressed whether this principle applies to a §1202(b) claim, the court's reasoning applies just the same. Thus, Plaintiff's argument that the Smick Defendants misused CMI actually affixed to the Purple Shirt Photo fails.

**I.  Plaintiff fails to state a claim for securities market manipulation.**

The Smick Defendants join in the Tesla Defendants' reply brief to their motion to dismiss as it relates to Plaintiff's market manipulation claim.

//

//

# CONCLUSION

For the reasons set forth above, the Court should strike Plaintiff's state law claims under California's anti-SLAPP statute and dismiss all of Plaintiff's remaining claims under Rule 12(b)(6).

Respectfully Submitted,

DATED: November 6, 2020

**KRONENBERGER ROSENFELD, LLP**

By: _____s/Karl S. Kronenberger_____
      Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.