COOLEY LLP
JOHN C. DWYER (136533) (dwyerjc@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

AARTI REDDY (274889) (areddy@cooley.com)
REECE TREVOR (316685) (rtrevor@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendants
TESLA, INC. and ELON MUSK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN,<br><br>         Plaintiff,<br><br>   v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC.,<br><br>         Defendants. | Case No. 3:20-cv-03426-JD<br><br>**TESLA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date: December 10, 2020<br>Time: 10:00 a.m.<br>Courtroom: 11, 17th floor<br><br>Judge: Hon. James Donato<br>Trial Date: None Set<br>Date Action Filed: May 20, 2020 |

**TABLE OF CONTENTS**

Page

I. PLAINTIFF'S LIBEL ARGUMENTS IGNORE CONTEXT AND CASE LAW. ............ 1
   A. Plaintiff Has Not Come Close to Pleading that Mr. Qazi Acted as Mr. Musk's Agent. ............................................................................................. 1
   B. Plaintiff's Efforts to Recast Mr. Musk's Opinions as Statements of Fact Fail .................................................................................................................. 2
II. PLAINTIFF FAILS TO PLEAD THE ECONOMIC LOSS, CAUSATION, OR UNDERLYING VIOLATION REQUIRED FOR A UCL CLAIM. ................................. 6
III. PLAINTIFF'S VICARIOUS LIABILITY CLAIM FOR CIVIL STALKING FAILS. ............................................................................................................................... 7
IV. THE SAC FAILS TO PLEAD EVERY ELEMENT OF A RULE 10B-5 CLAIM ........... 7
   A. The SAC's Falsity Allegations Are Fatally Speculative and Lack Particularity. .................................................................................................... 7
   B. The SAC's Scienter Allegations are Deficient. .............................................. 9
   C. The SAC Fails to Plead Reasonable Reliance. ............................................. 10
   D. The SAC Fails to Plead Loss Causation. ..................................................... 11
V. PLAINTIFF FAILS TO PLEAD MARKET MANIPULATION. ..................................... 12
VI. CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**Cases**

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232 (2007) .................................................................................................. 3

*Art of Living Found. v. Does*,
  No. 10-CV-05022-LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011) ........................... 4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ............................................................................................ 12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................................ 10, 11

*Crinkley v. Holiday Inns, Inc.*,
  844 F.2d 156 (4th Cir. 1988) ........................................................................................... 2

*Doe v. Uber Technologies, Inc.*,
  No. 19-cv-03310-JSC, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) .............................. 2

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................ 11, 12

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................................................ 8

*Gurary v. Winehouse*,
  190 F.3d 37 (2d Cir. 1999) ............................................................................................ 11

*Hoesl v. United States*,
  451 F. Supp. 1170 (N.D. Cal. 1978) ............................................................................... 3

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) .......................................................................................................... 5

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..................................................................................... 2, 3

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) .................................................................................................... 6

*Lieberman v. Fieger*,
  338 F.3d 1076 (9th Cir. 2003) ................................................................................ 3, 5, 6

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Lockheed Martin Corp. Sec. Litig.*,
　272 F. Supp. 2d 928 (C.D. Cal. 2002) .................................................................................. 10

*In re Merrill Lynch Auction Rate Sec. Litig.*,
　704 F. Supp. 2d 378 (S.D.N.Y. 2010) .................................................................................. 12

*Mineworkers' Pension Scheme v. First Solar Inc.*,
　881 F.3d 750 (9th Cir. 2018) ................................................................................................ 12

*Mortg. Elec. Registration Sys., Inc. v. Koeppel*,
　No. 5:18-cv-03443-EJD, 2020 WL 1233925 (N.D. Cal. Mar. 13, 2020) ........................... 7, 8

*Newby v. Enron Corp.*,
　338 F.3d 467 (5th Cir. 2003) .................................................................................................. 7

*Nunez v. Bank of Am., N.A.*,
　No. C 11-0081, 2011 WL 1058545 (N.D. Cal. Mar. 22, 2011) .............................................. 8

*In re Oak Tech. Sec. Litig.*,
　No. 96-20552, 1997 WL 448168 (N.D. Cal. Aug. 1, 1997) .................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
　575 U.S. 175 (2015) ................................................................................................................ 9

*Or. Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*,
　774 F.3d 598 (9th Cir. 2014) .................................................................................................. 7

*In re Rigel Pharm., Inc. Sec. Litig.*,
　697 F.3d 869 (9th Cir. 2012) ................................................................................................ 10

*Roth v. Jennings*,
　489 F.3d 499 (2d Cir. 2007) ................................................................................................. 10

*Silberg v. Anderson*,
　50 Cal. 3d 205 (1990) ............................................................................................................. 3

*Stark Trading v. Falconbridge Ltd.*,
　552 F.3d 568 (7th Cir. 2009) ................................................................................................ 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ................................................................................................................ 7

*In re Tesla, Inc. Sec. Litig.*,
　No. 18-CV-04865, 2020 WL 1873441 (N.D. Cal. Apr. 15, 2020) ............................... 9, 10, 12

*van't Rood v. County of Santa Clara*,
　113 Cal. App. 4th 549 (2003) ................................................................................................. 2

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

- iii -

TESLA DEFS' REPLY ISO MTD SAC
CASE NO. 3:20-CV-03426-JD

# TABLE OF AUTHORITIES
(continued)

Page

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .................................................................................................. 10

*World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) (Donato, J.) ................................................................ 12

*Zlotnick v. TIE Communications, Inc.*,
    836 F.2d 818 (3d Cir. 1988) .................................................................................................... 10

**Statutes & Rules**

15 U.S.C. § 78u-4 ............................................................................................................................ 7

18 U.S.C.
    § 371 .......................................................................................................................................... 6
    § 1515(a)(1) .............................................................................................................................. 6
    § 2261A ..................................................................................................................................... 6

Federal Rules of Civil Procedure
    Rule 8 ........................................................................................................................................ 7
    Rule 9(b) ................................................................................................................................... 7

Cal. Civ. Code § 2330 ..................................................................................................................... 7

**Other Authorities**

Internal Rev. Serv., Tax-Exempt Organization Complaint, Form 13909 (Dec.
    2016), *available at* https://www.irs.gov/pub/irs-pdf/f13909.pdf ............................................. 4

Defendants Tesla, Inc. and Elon Musk ("Tesla Defendants") respectfully submit this reply in further support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion").

Plaintiff's Opposition to the Tesla Defendants' Motion doubles down on the SAC's myriad flaws. The Opposition largely fails to engage with the Tesla Defendants' key arguments. Where it does, it relies on unpled allegations, implausible speculation, and inapposite authority. Even after two rounds of amendment, each of Plaintiff's conspiratorial allegations against the Tesla Defendants fail. **First**, Mr. Musk is not vicariously liable for Mr. Qazi's alleged libel based on their casual interactions. Plaintiff has no convincing argument to the contrary, and his position that Mr. Musk's constitutionally-protected opinions were libelous assertions of fact is meritless. **Second**, Plaintiff fails to identify any economic injury, causation, or predicate acts necessary to state a UCL claim. **Third**, Plaintiff asserts only the same defective theory of vicarious liability as to California's stalking statute, abandoning his claim for direct liability against the Tesla Defendants. **Fourth**, the SAC does not remotely meet the applicable pleading standards to support a securities fraud claim.[1]

## I.   PLAINTIFF'S LIBEL ARGUMENTS IGNORE CONTEXT AND CASE LAW.
### A.   Plaintiff Has Not Come Close to Pleading that Mr. Qazi Acted as Mr. Musk's Agent.

Plaintiff's Opposition confirms that he has not pled that Mr. Musk is vicariously liable for Mr. Qazi's actions. Plaintiff fails to cite a single case suggesting that a reasonable third party would have construed Mr. Musk's limited actions here—mainly enthusiasm for Mr. Qazi's tweets—as implying that Mr. Qazi spoke for the Tesla Defendants. *See* Opp'n at 25 (arguing that Mr. Musk's characterization of Mr. Qazi's Twitter account as "awesome" establishes agency). Instead of citing relevant law, Plaintiff piles on further attenuated and unexplained "proof" of agency, including that Mr. Musk continues to interact with Mr. Qazi on social media, and that Tesla "dissolved" its public relations department. Opp. at 24 n.23. Even if the Court were to consider these unpled allegations, they are too speculative to constitute plausible "evidence of conduct on [Mr. Musk's] part that would justify a belief on [a third party's] part that [Mr. Qazi] was authorized" to speak on his behalf.

---

[1] As Tesla Defendants have informed Plaintiff, undersigned counsel is not likely to be a witness here. Decl. of Aarti Reddy ¶ 4. Plaintiff identifies no basis for his insinuation to the contrary. Opp'n at 18 n.17. If counsel has any knowledge of the facts relevant to this case, she acquired it either during her current representation or her previous role as in-house counsel at Tesla, and the attorney-client and work-product privileges would apply. Reddy Decl. ¶ 3.

*van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 575 (2003); *see also* Mot. at 3-4.

Plaintiff also focuses on the fact that Mr. Qazi allegedly tweeted under the handle @tesla_truth.  Opp'n at 25. But Plaintiff's own allegations and exhibits establish that no reasonable observer would have concluded based on Mr. Qazi's Twitter handle that he was Tesla's agent, ***since the account itself made clear that it was not an official Tesla platform***. Plaintiff concedes that the name prominently featured on the @tesla_truth account was "Steve Jobs [*sic*] Ghost," ¶ 39, and also accurately points out that this "clarif[ied] its role as a so-called 'parody' account." SAC ¶ 39. In case any lingering doubt remained, the account's biography—visible to every user who visited its page—unambiguously stated that it was a "[f]an parody."[2] SAC Ex. B at 18.

### B. Plaintiff's Efforts to Recast Mr. Musk's Opinions as Statements of Fact Fail.

Faced with the First Amendment's formidable protection again libel claims for "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual," Plaintiff goes to great lengths to contort the challenged comments into factual assertions. *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) (alteration in original) (citation omitted). Each of these efforts fails. Considering the "totality of the circumstances," Mr. Musk's statements were at most "'loose, figurative' language," and no reasonable observer could have thought otherwise. *Id.* at 1074-75.

***Mr. Musk's October 9, 2019 Email.*** After Plaintiff emailed a series of unfounded allegations against Tesla and threatened to file a lawsuit, Mr. Musk allegedly responded, "Does the psych ward know you have a cell phone?" ¶ 167. This cannot be libel. Plaintiff's Opposition ignores well-established case law demonstrating that a hyperbolic, figurative assertion of mental illness is constitutionally-protected opinion, and none of his other arguments are persuasive. *See* Mot. at 4-5. ***First***, while Plaintiff argues that "imputation of severe psychological problems" ***may*** be defamatory as an assertion of fact, the only case on which Plaintiff relies for that proposition is

---

[2] Plaintiff cites inapposite cases in which the alleged agent behaved exactly in the manner a consumer would expect the alleged principal to have authorized.  *See* Opp'n at 25-26.  The agent in *Crinkley v. Holiday Inns, Inc.* was a Holiday Inn franchisee, 844 F.2d 156, 166 (4th Cir. 1988), and the alleged agent in *Doe v. Uber Technologies, Inc.* drove a car adorned with an Uber-issued decal that Uber had failed to reclaim after barring the driver from its platform, No. 19-cv-03310-JSC, 2019 WL 6251189, at *2 (N.D. Cal. Nov. 22, 2019).  A reasonable person could surely expect that a hotel is run by the company with its name over the door and that a car bearing an Uber logo is affiliated with Uber.  It hardly follows that every social media user that features a trade name speaks for the affiliated company.

wholly inapposite. Opp'n at 20 (quoting *Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978)). The defendant in *Hoesl* was **a psychiatrist** who had prepared a report wrongly diagnosing the plaintiff with a mental disability. 451 F. Supp. at 1171. Mr. Musk's tongue-in-cheek rejection of Plaintiff's litigation demand bears no resemblance to the statements in *Hoesl*, which involved "unambiguous and considered publication," by a mental health professional, regarding "a specified mental disorder." *Id.* at 1172-73.

***Second***, Plaintiff argues that because others have allegedly echoed Mr. Musk's sentiment, "[p]lenty of reasonable viewers . . . actually *did* read his statement as fact." Opp'n at 20. That argument makes no sense, as one may easily repeat an opinion, and the very comments to which Plaintiff refers underscore that Mr. Musk's statements were construed in a non-literal manner. *See* ¶ 128 (alleging that Mr. Musk's comments resulted in other tweets referring to Plaintiff as "a pile of garbage" and stating that he "selectively publishes only things he things [*sic*] will hurt Tesla (e.g. that he can profit from)"); *see also Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003).³

***Third***, Plaintiff also attempts to bypass the litigation privilege by arguing that the challenged statement lacked a "connection or logical relation" to potential litigation, but this is implausible: Mr. Musk was responding to an email literally ***threatening a lawsuit***. Opp'n at 20; Exs. E, F.⁴ Plaintiff also contends the privilege does not apply because Mr. Musk's statement was not to "put out the fire" of the potential lawsuit but to "pour on kerosene," but that argument fails. Opp'n at 21. This requirement is "in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action" and "was never intended as a test of a participant's motives, morals, ethics or intent."⁵ *Silberg v. Anderson*, 50 Cal. 3d 205, 219-20 (1990).

***Finally***, Plaintiff's various arguments related to Mr. Musk's Twitter account are particularly

---

³ Plaintiff also suggests that that Mr. Musk's statement was factual because he allegedly, at some point in the past, expressed the general "belief that short sellers are criminals." Opp'n at 20. But there is neither a legal relationship nor a factual one between those two statements, and it can hardly be construed as context for Mr. Musk's October 9 email regarding **Plaintiff**. *See Knievel*, 393 F.3d at 1076 (noting that "all parts of the communication that are ordinarily heard or read with it" constitute the context in which a court should evaluate it (citation omitted)).
⁴ Plaintiff confusingly claims that Mr. Musk's response was "a restatement of his August 8, 2019 e-mail to Plaintiff." Opp'n at 20. This argument makes little sense since that email does not appear to have contained any challenged statement. *See* ¶ 56 (describing August 8, 2019 email).
⁵ Plaintiff is wrong that the privilege is "*not* absolute." Opp'n at 20. "This privilege is absolute in nature." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).

1  inapposite because Mr. Musk did not tweet the challenged comment—he emailed it. ¶ 167, Statement 46. In any event, there is no logic to Plaintiff's assertion that because Mr. Musk's Twitter account is a source of factual information about Tesla, *everything* he tweets is a purported fact. Opp'n at 20. Nor does Plaintiff explain how "having tens of millions of followers," *id.*, somehow signaled that Mr. Musk's tweets were always factual.

***Mr. Musk's October 12, 2019 Tweet.*** Plaintiff's Opposition also confirms that the "fake charity" comment is non-actionable opinion. To avoid dismissal, Plaintiff generally argues that the Think Computer Foundation "is indeed real" because it is "registered with" the IRS and other government agencies and "contributes to the community." Opp'n at 21. This argument misses the point entirely.[6] As the Tesla Defendants explained in their Motion, Mr. Musk may have been asserting the opinion the Foundation ***should not*** have tax-exempt status, and not the provable fact that it ***does not***. Indeed, Mr. Musk was commenting on an article that acknowledged "Think Computer Foundation . . . is a 501(c)(3) [sic] nonprofit," and thus his comments are most logically understood as opinions that Plaintiff had improperly weaponized his nonprofit to attack Tesla. *See* Mot. at 6; ¶ 86. Plaintiff does not address this crucial context of Mr. Musk's statement, which is dispositive of his claim. *See Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *8 (N.D. Cal. June 15, 2011) ("I am fully convinced that AOL is front-end name for a group of fraudulent NGOs" was a constitutionally-protected statement of opinion.).

To support his view that the challenged statement was factual, Plaintiff argues that "at least one person reported that they consequently *did* file IRS Form 13909 as a result" of Mr. Musk's statement. Opp'n at 21. But that form is used to document complaints against organizations that already hold tax-exempt status.[7] As such, that someone may have filed such a complaint actually ***supports*** the Tesla Defendants' argument that the most logical interpretation of Mr. Musk's statements is that he was using "fake" to convey the opinion Plaintiff's organization was unjustly tax-exempt, and was urging others to contest the Foundation's 501(c)(3) status by drawing the IRS's attention to its activities. Likewise, because Mr. Musk acknowledged that Plaintiff's

---

[6] Plaintiff appears to concede that describing him as a "bully" was not libelous, calling Tesla Defendants' arguments on that point "moot" and offering no response. Opp'n at 22.

[7] Internal Rev. Serv., Tax-Exempt Organization Complaint, Form 13909 (Dec. 2016), *available at* https://www.irs.gov/pub/irs-pdf/f13909.pdf.

organization was already tax-exempt, his statement cannot be construed as alleging that Plaintiff was engaged in criminal tax avoidance. Opp'n at 22.

*Mr. Musk's October 22, 2019 Email*. Plaintiff's efforts to give a factual gloss to Mr. Musk's characterization of Plaintiff as a "nut but" all fail. The law is clear that "the proper context" of allegedly defamatory remarks is relevant to determining whether they are actionable and that, accordingly, terms related to mental illness are often non-literal and non-defamatory. *Lieberman*, 338 F.3d at 1080-82. *Lieberman*, which held nonactionable the phrases "Looney Toons" and "mentally unbalanced," is closely analogous to this case. *Id.* Plaintiff's only response is that *Lieberman* involved "heated discussion" and "over-the-top commentary." Opp'n at 23 (citing 338 F.3d at 1080). But *Lieberman*'s reasoning did not turn on those specific facts and instead illustrates the more general proposition that context may show that a suggestion of mental illness is not literal. Here, Plaintiff points to nothing in the SAC plausibly alleging that Mr. Musk's emailed statements to Mr. Dorsey could, in context, "reasonably have been interpreted as stating actual facts." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988). To the contrary, according to Plaintiff, Mr. Musk stated that Plaintiff "sued Zuckerberg" to provide "evidence" for the characterization of Plaintiff as a "nut," Opp'n at 23, which confirms Mr. Musk was not asserting that Plaintiff had a mental illness. Filing a frivolous lawsuit against Mark Zuckerberg would indicate unreasonable behavior and demands, not mental illness, and that is exactly what Mr. Musk was conveying.

Finally, Plaintiff asserts the challenged statement was factual by falsely claiming that Mr. Musk told Mr. Dorsey "that it was 'accurate' that Plaintiff was a 'nut' with 'major issues.'" Opp'n at 23. The inclusion of the word "accurate" does not automatically render the comment factual, since one may be convinced that an opinion is true. *Cf. Art of Living Found.*, 2011 WL 2441898, at *8 (statement prefaced by "I am fully convinced" was one of opinion). In any event, Plaintiff misstates Mr. Musk's actual words: Mr. Musk wrote, "Jack, **what Omar is saying** is accurate to the best of my knowledge"—not that his own description of Plaintiff as a "nut but" in the next paragraph of his email was "accurate." SAC ¶ 167 Statement 49 (emphasis added).

*Mr. Musk's July 3, 2020 Tweet.* Plaintiff recycles the same flawed reasoning to argue that Mr. Musk's tweet that Plaintiff was "crackers, bananas, barky & ten cards short of a full deck" was

factual. *See* Opp'n at 23-24. It was not. *See* Mot. at 7; *see also Lieberman*, 338 F.3d at 1079-80. No reasonable person would have construed this as an actual medical diagnosis. *See supra* at 1-2.

## II. PLAINTIFF FAILS TO PLEAD THE ECONOMIC LOSS, CAUSATION, OR UNDERLYING VIOLATION REQUIRED FOR A UCL CLAIM.

Plaintiff's primary argument to avoid dismissal of his UCL claim is that ineligibility for restitution is not a basis to deny standing for injunctive relief. The Tesla Defendants do not actually make this argument, *see* Mot. at 8-10, so Plaintiff's position is a non-sequitur that does not save his claim. As explained in the Motion, Plaintiff has failed to plead "an economic loss" that was "a result of" Mr. Musk's actions, both of which are unquestionably required for *either* injunctive or restitutionary relief under the UCL. Mot. at 8; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011). Plaintiff offers no serious rebuttal to the Tesla Defendants' argument that he has not pled that his injuries were more than *de minimis* or caused by Mr. Musk. Plaintiff instead points to a single line in the SFPD report that "Qazi has some kind of relationship" to Mr. Musk. Opp'n at 27. Such a vague and highly speculative inference is insufficient to plead causation and the UCL claim must be dismissed for that reason alone. ¶¶ 295-297.

Furthermore, Plaintiff's Opposition confirms the implausibility of his allegations that Mr. Musk engaged in any predicate unlawful conduct. Plaintiff contends without elaboration that Mr. Qazi and Mr. Musk's "combined conduct" constituted conspiracy to defraud the United States, *see* 18 U.S.C. § 371, and stalking, *id.* § 2261A, but he in no way explains those allegations, much less how any purported unlawful conduct was committed by Mr. Musk as opposed to Mr. Qazi alone. Opp'n at 27; *see also* Mot. at 9. Plaintiff's efforts to rehabilitate his claim that Mr. Musk violated a federal witness-tampering statute by supposedly making the "online bully"/"fake charity" comment to force Plaintiff to withdraw a confidentiality challenge in Delaware court also fail. **First**, Plaintiff concedes that he alleges only that Mr. Musk interfered in a state court proceeding and does not dispute that the relevant statute is facially inapplicable to such proceedings. *See* Mot. at 9 n.6; 18 U.S.C. § 1515(a)(1) (defining "official proceeding" to exclude state actions). **Second**, while Plaintiff attempts to buttress his claim by citing additional filings from that proceeding that are absent from the Complaint, those documents do not reveal anything at all about Mr. Musk's motives. Opp'n at 27. For all these reasons, the UCL claim fails.

### III. PLAINTIFF'S VICARIOUS LIABILITY CLAIM FOR CIVIL STALKING FAILS.

Plaintiff has evidently abandoned his attempt to hold the Tesla Defendants directly liable for civil stalking, and now exclusively contends that they are vicariously liable for Mr. Qazi's alleged conduct. Opp'n at 24-26; *see also Mortg. Elec. Registration Sys., Inc. v. Koeppel*, No. 5:18-cv-03443-EJD, 2020 WL 1233925, at *3 (N.D. Cal. Mar. 13, 2020) (noting that a court may treat arguments not addressed in opposition to a motion to dismiss as conceded). As discussed, there is no ostensible agency relationship between Mr. Musk and Mr. Qazi. *See supra* at 1-2; Mot. at 3-4, 7-8. Even if there were, Plaintiff does not allege any facts permitting an inference that Mr. Musk indicated that Mr. Qazi was authorized to **stalk** Plaintiff on his behalf. *See* Cal. Civ. Code § 2330 (principal's liability is limited to "the scope of [the agent's] actual or ostensible authority").

### IV. THE SAC FAILS TO PLEAD EVERY ELEMENT OF A RULE 10B-5 CLAIM.

Plaintiff's SAC comes nowhere close to stating a viable securities fraud claim. In an effort to avoid this inescapable conclusion, Plaintiff renews his request to have the Court set aside the PSLRA pleading standards in ruling on the Motion. The PSLRA plainly applies to "***any*** private action," no matter the plaintiff's identity. 15 U.S.C. § 78u-4(b) (emphasis added). This Court, like every other considering similar arguments, has already rejected that reading and found the PSLRA applicable. ECF No. 63; *see also, e.g., Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003) (holding subsection (b) "applicable to '*any* private action'" (citation omitted)). In any event, regardless of whether the Court applies the PSLRA, Rule 9(b), or even general Rule 8 standards, Plaintiff fails to state a claim. *See Or. Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to all elements of a securities fraud action.").

#### A. The SAC's Falsity Allegations Are Fatally Speculative and Lack Particularity.

Plaintiff's efforts to salvage the SAC's falsity allegations confirm it is a textbook puzzle pleading that fails to "specify each statement alleged to have been misleading," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007), with "particularity," Fed. R. Civ. P. 9(b).

***First***, in his attempt to avoid dismissal, Plaintiff instructs the Tesla Defendants and the Court to scan thousands of pages of SAC exhibits, parse which of those statements contain "figures associated with 'cash' or 'cash and cash equivalents,'" Issue 1, and then (somehow) determine which

of those references relate to "Tesla's cash position." Opp'n at 28. But "[a]rguments in briefs are not part of [a] complaint and cannot save a deficient pleading." *Nunez v. Bank of Am., N.A.*, No. C 11-0081, 2011 WL 1058545, at *2 n.3 (N.D. Cal. Mar. 22, 2011). Even if they could, it is hard to imagine a clearer example of placing the burden "on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims." *In re Oak Tech. Sec. Litig.*, No. 96-20552, 1997 WL 448168, at *5 (N.D. Cal. Aug. 1, 1997).

**Second**, Plaintiff complains that Tesla Defendants have "cherry-picked" other illustrations of the SAC's failings, but does not argue that these Issues comply with the PSLRA or state a claim. Opp'n at 28 n.28; *see also* Mot. at 11-12 & n.9 (explaining defects in, by way of example, Issues 13, 15-18, 38, 43, and 44). Because Plaintiff fails to respond to Tesla Defendants' challenge to those claims, they may be dismissed. *Mortg. Elec. Registration Sys.*, 2020 WL 1233925, at *3.

**Third**, Plaintiff does not contest that certain challenged statements were forward-looking, but instead invokes rank speculation and unpled allegations to argue that Mr. Musk made these statements with actual knowledge of their falsity. *See* Issues 21, 23. For example, Plaintiff claims that Mr. Musk's January 2019 statement that annual demand for Model 3 would reach "700,000 or 800,000 units . . . in a strong economy," was knowingly false, but both the SAC and Plaintiff's opposition are devoid of any evidence suggesting that Mr. Musk believed that prediction to be false. Plaintiff's only factual support for this allegation is a regulatory filing with a California agency purportedly showing projections for Model 3 demand. Issue 21. Plaintiff's Opposition offers no basis to infer that Mr. Musk knew the details of that filing at the time he made the statement, other than his unpled contention that the agency at issue was "created for [Mr. Musk's] personal benefit." Opp'n at 29. This Court "generally may not look beyond the four corners of the complaint," and thus should reject this unpled allegation out of hand. *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 794 (N.D. Cal. 2011). Plaintiff also cites testimony from unrelated litigation by Mr. Musk regarding his decision to "focus [Tesla] on the Model 3 program." Opp'n at 29. Again, the Court should not consider such unpled allegations, but even if it did, there is no inconsistency between Mr. Musk's supposed commitment to focus on Model 3 production and his prediction regarding annual demand. In both instances, Plaintiff's speculation cannot plausibly support the conclusion that Mr. Musk's

forward-looking statement was knowingly false. As another example, Plaintiff challenges Mr. Musk's April 2019 statement predicting the launch of "autonomous robotaxis from Tesla next year," but "not in all jurisdictions because we won't have regulatory approval everywhere." Issue 23. Plaintiff invokes another unpled fact: that Tesla purportedly had not applied for regulatory approval in California *as of August 2020*. Opp'n at 29. Even if the Court considered this unpled allegation, it would not make plausible the inference that Mr. Musk knew a statement made *16 months earlier* was false. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

*Finally*, Plaintiff offers no meaningful response to the Tesla Defendants' argument that many of the statements challenged in the SAC in which Mr. Musk uses the phrases "I think" or "I believe" are non-actionable expressions of opinion. Opp'n at 29, Issues 21, 22, 27, 29; *see also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015) (A "reasonable person . . . recognizes the import of words like 'I think' or 'I believe,' and grasps that they convey some lack of certainty."). Plaintiff's primary response to this longstanding rule is an ad hominem reference to Mr. Musk's supposed "speech patterns." Opp'n at 29. Plaintiff also invokes speculative inferences that fall short of applicable pleading standards. For example, Plaintiff claims that Mr. Musk did not hold the belief in April 2019 that Tesla vehicles would appreciate in value because he made a general statement in August 2018 that new technologies often grow "better and cheaper" over time. ¶ 309 Issue 22; *see also* Opp'n at 29. Mr. Musk's broad commentary regarding the progress of technology cannot yield the inference that—eight months later—he did not believe Tesla vehicles were appreciating assets.

### B. The SAC's Scienter Allegations are Deficient.

Plaintiff's leading rebuttal as to scienter is to claim that Mr. Musk "has *already* been found to have acted with scienter." Opp'n at 30 (citing *In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865, 2020 WL 1873441, at *19 (N.D. Cal. Apr. 15, 2020)). This argument fails for many reasons. To start, Plaintiff mischaracterizes an order denying *dismissal* of a securities complaint brought by *different* plaintiffs challenging *different* statements.[8] A denial of a motion to dismiss does not

---

[8] The adequately-pleaded complaint in *In re Tesla* only illustrates how dramatically the SAC here falls short. The plaintiffs in that case challenged statements regarding plans to take Tesla private and they pointed to "numerous detailed factual allegations," such as nearly-contemporaneous emails stating that going private was a "non-starter" and "really difficult." 2020 WL 1873441, at

reflect factual findings, *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[A] ruling on a motion for dismissal . . . is not an occasion for the court to make findings of fact"), and that principle is especially true where the cases at issue involve wholly different facts and allegations. Moreover, even if the pleadings-stage order Plaintiff cites constituted a finding of scienter as to the statements at issue in that case, it would not establish "scienter for each alleged misrepresentation" at issue in *this* case. *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 931 (C.D. Cal. 2002).

Only speculative allegations of motive and opportunity remain. Plaintiff's argument that he has pled scienter because he claims Mr. Musk sought to secure handsome compensation and Tesla is unprofitable is again conclusory and based on unpled allegations. And Ninth Circuit courts have repeatedly rejected such allegations. *See* Mot. at 13-14. "[E]very company . . . wants to maximize its apparent profitability . . . and to maintain a high share price," *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018), and "it is common for executive compensation . . . to be based partly on the executive's success." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012).

### C. The SAC Fails to Plead Reasonable Reliance.

Plaintiff acknowledges that, as the SAC pleads, he was aware of "the various frauds that Defendant Musk had been accused of at the time of each purchase of put options." Opp'n at 31-32; *see also id.* at 32 ("At each point when Plaintiff purchased put options, he was always relying in large part on the presumption that the market had incorporated all available information, ***including past fraudulent acts***." (emphasis added)). These admissions end the inquiry into reliance and Plaintiff's securities fraud claims should be dismissed on this basis alone.[9]

Despite this concession, Plaintiff tries to invoke the *Basic* presumption by arguing that the Court should individually assess whether to apply that presumption to each of the 44 "Issues" identified in the SAC, asking only whether and when Plaintiff was aware of the specific alleged

---

*19 (citation omitted). Plaintiff's Opposition fails to cite any similarly "detail[ed]" or "factual" allegations because the SAC contains none. Mot. at 13. Similarly, the *In re Tesla* complaint referred to a settlement with the SEC *for the same challenged statements*. 2020 WL 1873441, at *21. That settlement has nothing to do with the statements here, so Plaintiff's suggestion that it advances his claims is meritless. *See* Opp'n at 30.

[9] Plaintiff misconstrues the Tesla Defendants' citation to *Zlotnick v. TIE Communications, Inc.*, 836 F.2d 818 (3d Cir. 1988), in a footnote. *See* Mot. at 15 & n.10. *Zlotnick* held that short-sellers may never rely on the presumption. *See id.* Tesla Defendants do not make such a broad argument, but instead contend that Plaintiff *here* may not because he suspected fraud at every point.

fraud pled with each "Issue" and traded in reliance on it. Plaintiff fails to cite a single case applying the *Basic* presumption in this manner. With good reason: that is not the law. *See Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009) ("[N]o one who saw through the fraud would be able to sue for fraud, for he could not have relied directly or indirectly.").

Crucially, Plaintiff's reliance cannot have been ***reasonable***. *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). *Basic* requires that a plaintiff "trade in ignorance of the fact that the price was affected by the alleged manipulation," so its presumption cannot apply here. *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999). Even if Plaintiff's proposed statement-by-statement application of the *Basic* presumption were otherwise tenable, it is illogical here because he alleges an ongoing, interrelated fraud. *See, e.g.*, ¶ 12 (alleging "one of the largest securities frauds in American history"). Plaintiff, drawn to Tesla because he was "[i]ntrigued by the SEC's charges" of securities violations, believed he had discovered fraud that the market had not yet detected and shorted Tesla stock based on that belief. Opp'n at 3; *see also* Mot. at 16; Exs. 2, 3 (Plaintiff's pre-purchase tweets alleging falsehoods and manipulation at Tesla). It is implausible that Plaintiff did not believe additional fraud would follow: in fact, he was counting on it as he continued to purchase Tesla put options. His contrary arguments attempt to transform the securities laws into "investor's insurance" for his short sales, permitting him to trade in reliance on his suspicions of fraud, then disclaim them after they prove unprofitable. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

### D. The SAC Fails to Plead Loss Causation.

Plaintiff's theory of loss causation depends on the speculative chain of inferences that the Tesla Defendants had been committing fraud for years, and had that fraud ever been revealed, Tesla's stock would have declined and Plaintiff's put options would not have expired worthless. Mot. at 16; ¶ 323. Plaintiff's only defense of this flawed theory is a legally incorrect argument that he is not required to plead any corrective disclosure whatsoever. That argument contradicts the Supreme Court's holding in *Dura* that a plaintiff cannot establish loss causation by simply pointing to an allegedly inflated purchase price. 544 U.S. at 342-43. Plaintiff's only response is to refer to *Dura*—controlling authority from 2005—as "dated" and then seek to transform the Ninth Circuit's

holding in *First Solar* that a corrective disclosure need not reveal the specific alleged fraud into a rule that no such disclosure need occur **at all**. Opp'n at 34. The court did not so hold. *First Solar* establishes that disclosure of the "underlying facts concealed by fraud" (there, "the revelation of an earnings miss") may support loss causation, even if the market did not "actually learn that the defendant engaged in fraud and react to the fraud itself." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018). The very passage that Plaintiff quotes to support his argument that short-sellers need not plead a corrective disclosure holds the opposite. In *In re Tesla*, the short-seller plaintiffs alleged "corrective (or partially corrective) statements" that caused their economic loss by forcing them to cover "to prevent further loss." Opp'n at 34 (quoting 2020 WL 1873441, at *37); *see also* Mot. at 17 n.14. This approach makes good sense: absent a corrective disclosure, it would be impossible to determine that the alleged fraud caused a plaintiff's loss, not any of the other "tangle of factors affecting price." *Dura*, 544 U.S. at 343.

## V.  PLAINTIFF FAILS TO PLEAD MARKET MANIPULATION.

The sole allegation Plaintiff identifies in support of his market manipulation claim—i.e., a Rule 10b-5(b) allegation based on "failing to disclose" after-hours trades—comes nowhere close to satisfying his pleading burden. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). His only supportive evidence is inexpert and speculative analysis set forth in anonymous Twitter posts. *See* Issue 14 (citing Twitter posts attributing after-hours trading to an ***admittedly*** "unknown individual"). Plaintiff also could not allege that this after-hours trading manipulated Tesla's stock price, given that the cited "analysis" relies on Mr. Musk's **public** Form 4 filings, *see id.*, and by definition, "the market is not misled when a transaction's terms are fully disclosed." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 390 (S.D.N.Y. 2010).

## VI.  CONCLUSION.

Plaintiff has already amended his complaint twice and identifies no additional facts or legal theories that would justify a third round of amendment. Dismissal with prejudice is more than appropriate. *See World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*, 66 F. Supp. 3d 1233, 1238 (N.D. Cal. 2014) (Donato, J.) (dismissing with prejudice where plaintiff "had two opportunities to plead this claim").

| | |
|---|---|
| Dated: November 6, 2020 | COOLEY LLP |
| | By: /s/ *Aarti Reddy*<br>    Aarti Reddy (274889) |
| | Attorneys for Defendants<br>TESLA, INC. and ELON MUSK |

236332475