Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN,<br><br>     Plaintiff,<br><br>     v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC.,<br><br>     Defendants. | Case No. 3:20-cv-03426-JD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR FRCP 11 SANCTIONS ON KRONENBERGER ROSENFELD LLP AND DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.**<br><br>Time:         10:00 A.M.<br>Date:         December 10, 2020<br>Courtroom:  11, 19th Floor<br><br>Judge: Hon. James Donato<br>SAC Filed: August 26, 2020 |

**I.      Counsel Misrepresents The Federal Rules of Civil Procedure *Again***

Counsel for Defendants Omar Qazi and Smick Enterprises, Inc. (together, "Qazi Defendants") is nothing if not creative.  Qazi Defendants' opposition brief employs a rhetorical device that most people would refer to as time travel, by conjuring up an outdated version of the Federal Rules of Civil Procedure ("Rules") from years ago.  Ironically referring to the *instant motion* as "untimely," counsel cites only "Fed. R. Civ. P. 6(d)"—with no further clarifications—on page 3 of the brief to claim that, "Rule 6(d) states that '[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a).'"  Perhaps that was true once.

But ever since 2016 when the Rules were last amended, Rule 5(b)(2)(E) has no longer been included in the list of service types that require a three-day grace period.

Rule 5(b)(2)(E) concerns service by "other electronic means that the person consented to in writing," which covers the e-mail service of this motion on October 4, 2020 at 8:30 P.M. Pacific Time, sent pursuant to counsel's written agreement to "e-mail service for all documents going forward in this case."[1]  ECF Nos. 51-1 at 10; 83-1 at 12.  The fact that the Committee Notes On Rules relating to the 2016 Amendment to the Federal Rules of Civil Procedure specifically state, "Rule 6(d) is amended to remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to act after being served" makes clear that there is no ambiguity: this motion was timely filed.[2]  Served on counsel for Qazi Defendants 22 days before being filed with the Court on October 26, 2020, Qazi Defendants had ample time to consider whether or not to withdraw their Special Motion to Strike Claims Under California's Anti-SLAPP Statute, Civ. Code Proc. § 425.16 (the "Anti-SLAPP Motion," ECF No. 75).  Despite their claims to the contrary, Plaintiff has fully complied with the timing requirements of Rule 11(c)(2).[3]  *See J.E. Dunn Construction Company v. Owell Precast LLC*, Case No. 4:20-cv-00158-BLW (D. Idaho August 3, 2020) (referring to argument based on "an outdated version of Federal Rule of Civil Procedure 56" as "unfounded").

---

[1] Based on counsel's misleading representation in ECF No. 51, the Court may have understandably misinterpreted this narrow point on page 2 of its September 2, 2020 Order Re Default and Civility (ECF No. 72).  The full extent of the specific agreement in question between Plaintiff and Qazi Defendants concerned e-mail service only.  At no point was there any agreement on a deadline for Qazi Defendants' response to the First Amended Complaint, nor was it ever clear to Plaintiff whether Qazi Defendants truly intended to respond at all until the response was finally filed well after it was due.  Counsel used the words, "Under this agreement, Defendants' responsive pleading would not have been" to preface *his own questionable interpretation* of the Rules, not the contents of the agreement.

[2] The Committee Notes on Rules also state, "Diminution of the concerns that prompted the decision to allow the 3 added days for electronic transmission is not the only reason for discarding this indulgence.  Many rules have been changed to ease the task of computing time by adopting 7-, 14-, 21-, and 28-day periods that allow 'day-of-the-week' counting.  Adding 3 days at the end complicated the counting, and increased the occasions for further complication by invoking the provisions that apply when the last day is a Saturday, Sunday, or legal holiday."

[3] While Qazi Defendants demand that Plaintiff needlessly comply with procedural requirements that are no longer in force and have not been for years, they admit in ECF No. 86 footnote 1 to their own failure to comply with the current procedural requirements of the California Anti-SLAPP statute itself, specifically, California Code of Civil Procedure § 425.16(j).

By including such an outdated citation in a filing before the Court, counsel for Qazi Defendants has failed to comply with ¶ 23 of the Standing Order for Civil Cases Before Judge James Donato, which states in part, "All case citations and factual statements must be completely accurate.  A citation to a case, statute or other authority is counsel's representation to the Court that the authority stands for the proposition asserted and is good law.  A quotation of a case or other authority is counsel's representation that the quoted language is complete and present in the authority cited."  A cursory Google search for "Rule 6" would have revealed that in fact, no reference to Rule 5(b)(2)(E) is present in the version of Rule 6(d) that has been in place for almost four years.  Attorney Karl Kronenberger, who signed the brief, also has the benefit of working with several experienced colleagues at his law practice who might have reminded him of the change.  Counsel admits that his Declaration, signed under penalty of perjury, was full of so many material factual errors that he was forced to make corrections in Qazi Defendants' reply brief in support of their Motion to Dismiss and Anti-SLAPP Motion.  ECF No. 86.

This is not the first time that counsel has actively misrepresented the Rules to this Court and to Plaintiff.  Plaintiff raised this same issue in the now-withdrawn Motion for FRCP 11 Sanctions against Qazi Defendants and their counsel filed on August 19, 2020.  ECF No. 66 at 10-11.  Such misrepresentations, especially when made with this frequency, generate needless conflict and make the work of the Court more difficult.  Whether owing to an intent to deceive or simple sloppiness, they violate Civil Local Rule 11-4(a)(4), which requires "Practice with the honesty, care, and decorum required for the fair and efficient administration of justice."  Such conduct is also the opposite of what is called for in Guideline for Professional Conduct 13(a): "A lawyer should always attempt to de-escalate any controversy and bring the parties together."  Time and again, counsel has added fuel to the fire, such as by making service more difficult.  At other times, Attorney Kronenberger and his colleagues simply sat back to watch it burn, withholding vital information that they later offered to the Court (only after being threatened with sanctions) as "supplemental declaration or briefing," but never actually provided.  ECF No.

73, footnote 3 at 6-7.  For these reasons, compounded by counsel's false Declaration, Mr. Kronenberger should be referred to the District's Standing Committee on Professional Conduct.

**II.      The Anti-SLAPP Motion Was And Is A Frivolous Cash Grab**

As for the facts underlying the instant motion, counsel for Qazi Defendants misstates Plaintiff's position.  It is not that "the anti-SLAPP motion is frivolous because the Smick Defendants seek the attorney's fees available to them by law should they prevail in their arguments."  Opposition at 1.  First, Qazi Defendants do not deny that their legal fees have *already* been reimbursed—by GoFundMe and (as-yet-undeclared) PayPal[4] donors, many of whom are anonymous—and that they have "not contracted to pay any contributors based on the outcome of the proceeding."  ECF No. 50.  The Anti-SLAPP Motion therefore appears to be Qazi Defendants' attempt to turn a stealth profit on this litigation.  Second, even after multiple warnings, counsel filed the Anti-SLAPP Motion based on a Declaration signed under penalty of perjury replete with now-admitted errors while knowing full well that the Motion addresses no legitimate issue of public interest in which Qazi Defendants made a meaningful contribution to any public debate.  Yet they still requested attorney's fees.  Put another way, counsel inartfully attempted to graft a state fee-shifting clause onto federal Rule 12(b)(6) while knowing that there was no substantive basis to make that combination stick.  Third, using a misleading footnote lacking any citations, counsel also attempted to sweep the factual disputes Qazi Defendants plainly raised in the Anti-SLAPP Motion under the rug, knowing that a Rule 56(d) challenge under *Planned Parenthood Federation of Am., Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018) could frustrate and/or prove fatal to their goal of securing fees for a second time.

This type of conduct has been found to be sanctionable in the past.  "Thus, in March 1983, Mr. Bader and Mr. Licht entered the securities litigation for the apparent purpose of obtaining fees for their work in the Eurobond dispute…  In the instant case, class plaintiffs and others were forced to expend considerable efforts to defend against Bader's wrongful actions. For these efforts, class plaintiffs and others may be awarded attorneys' fees and costs pursuant to

---

[4] *See* "Aaron Greenspan Legal Bills Organized By Omar Qazi" on PayPal, so far reflecting donations exclusively from anonymous donors, at https://www.paypal.com/pools/c/8t80xtlJWP.

section 1927 and Rule 11." *In re Itel Securities Litigation*, 596 F. Supp. 226, 229-234 (N.D. Cal. 1984).

      Attorney Kronenberger has already admitted through the corrections to his Declaration (ECF No. 75-1) that the Anti-SLAPP Motion was filed "without factual foundation."[5] *Golden Eagle Distrib. Corp., v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).  Even considering the filing "on the whole," the fundamental point Qazi Defendants make, distilled in their Anti-SLAPP Motion's reply brief, is entirely frivolous: that "satirizing critics of Tesla and Elon Musk (including Aaron Greenspan) is a topic of widespread public interest.  Thus, the Tweets themselves are of widespread public interest and satisfy prong one of anti-SLAPP." ECF No. 86 at 8.  This argument is backwards, and it leads to the perverse and incorrect conclusion that all tweets are "of widespread public interest and satisfy prong one of anti-SLAPP" because they are on Twitter and so is the public.  When Qazi Defendants' counsel argues for plaintiffs in anti-SLAPP matters, his firm cites *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 84 (2015), pointing out that "[b]y focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called 'synecdoche theory of public issue in the anti–SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.'" ECF No. 83-1 at 33-34.  Considering that Plaintiff independently raised this point with counsel via e-mail on August 31, 2020, it would appear that the parties were actually in agreement that the Anti-SLAPP Motion never should have been filed.

      Critics of billionaires and corporations, such as journalists, are exactly the type of party the Anti-SLAPP statute is supposed to *protect*.  Referring to a prolonged harassment and disinformation campaign as "satir[e]" is disingenuous at best; the Anti-SLAPP Motion is just Qazi Defendants' campaign's latest component.  "[A] full award is justified because it is part of an entrenched campaign of harassment." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, Case No. 20-cv-00546-WHA (N.D. Cal. October 27, 2020).  Qazi Defendants cite zero

---

[5] Counsel does not appear to have corrected the errors in the Anti-SLAPP Motion itself.

cases where journalistic work was properly subject to a Special Motion to Strike under California Code of Civil Procedure § 425.16, let alone in a federal court.  In other words, their filing has no legal merit, making it sanctionable under Rule 11.

To be clear, not once did Defendant Qazi ever respond directly to a public concern Plaintiff raised about Defendants Tesla, Inc. or Elon Musk with a thoughtful, reasoned, evidence-based argument.  Instead, he lobbed *ad hominem* bombshells and worse for years in an attempt to get Plaintiff to stop talking, or at the very least, stop being heard.  Counsel knows that this is not the kind of conduct California's anti-SLAPP statute protects, as Kronenberger Rosenfeld LLP is presently representing a plaintiff in several defamation lawsuits involving the exact same group of websites that Defendant Qazi linked to from his own sites to harass Plaintiff—to the point where Plaintiff's name even appears in Kronenberger Rosenfeld LLP's court filings in at least one of those other lawsuits because images of those websites appear in counsel's exhibits.  *See* Declaration of Jeffrey M. Rosenfeld In Support Of Plaintiff's Second Ex Parte Application For Expedited Discovery And Related Orders, *Tzuhsin Yang v. John Does 1 To 20*, Case No. CGC-18-570963 (San Francisco County Superior Court January 16, 2019) at 20.  It cannot simultaneously be true that counsel's other client, Tzuhsin Yang, was truly harmed by the defamatory and malicious "false assertions of fact" alleged in those complaints if the same type of harassing libel on the same websites is merely a constructive part of public debate, as they also now suggest.

Although Plaintiff is representing himself at present, Plaintiff's time is valuable and responding to Qazi Defendants' frivolous Anti-SLAPP Motion has required considerable time for legal research, writing, editing, and communication with opposing counsel.  "Consider the case of *Rynkiewicz v. Jeanes Hospital*.  There the defendants moved to dismiss the pro se plaintiff's ADEA claim even though there was no legal basis for that motion.  In denying the motion and imposing sanctions, the trial judge wrote, 'I see no reason why the fact that plaintiff is proceeding pro se should redound to the benefit of defendants' attorney insofar as Rule 11 sanctions are concerned.'  That no fees were incurred was immaterial.  The court therefore

awarded the pro se litigant the amount of a reasonable attorney's fee." Jeremy D. Spector, *Awarding Attorney's Fees to Pro Se Litigants Under Rule 11*, 95 Mich. L. Rev. 2308, 2316 (1997).  Assuming that Attorney Kronenberger's hourly rate is "reasonable," this is precisely what Plaintiff has requested.

Finally, Plaintiff must clarify that this request for Rule 11 sanctions applies only to the Anti-SLAPP Motion, and not to Qazi Defendants' Motion to Dismiss, even though both were filed in the same document.  Should the court grant sanctions, Plaintiff would not object to the Motion to Dismiss being re-filed independently should the Court decide to strike the combined filing from the record, so long as there is no impact to the case schedule.

### III.    Conclusion

Counsel's pattern of lies and deception simply must end.  Counsel claims that no sanctions are necessary to "deter similar conduct."  Opposition at 7.  Were this true, such conduct would have ceased months ago—perhaps after the filing of Plaintiff's *first* Motion for Sanctions under Rule 11.  Yet by September 23, 2020, counsel still did not understand the need to, for example, avoid making false statements, replying "What is the point you are trying to make?" to Plaintiff's written concerns.  ECF No. 77-1 at 30.

Actual sanctions are therefore necessary to help clarify that point.

Dated: November 16, 2020                    Respectfully submitted,

_/s/ Aaron Greenspan_
Aaron Greenspan
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org