UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON JACOB GREENSPAN,<br><br>    Plaintiff,<br><br>    v.<br><br>OMAR QAZI, et al.,<br><br>    Defendants. | Case No. 20-cv-03426-JD<br><br>**ORDER RE CONDUCT, SERVICE, AND DEFAULT MOTIONS**<br><br>Re: Dkt. Nos. 14, 77, 83, 96, 99 |

In the Court's experience, the civility and professionalism shown by counsel and their clients has measurably risen over the years. This is due in no small part to the promulgation of guidelines for professional conduct such as those adopted by this District. *See* https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct. Nothing is perfect, of course, especially during litigation, but the overall trend has been positive.

Unfortunately, this case is an exception. From the start, it has been apparent that pro se plaintiff Greenspan and defendant Qazi are unable to deal civilly with each other. The Court tried to get ahead of this problem with an early order on litigation conduct, to no good effect. *See* Dkt. No. 72. Multiple motions for sanctions and "contempt" have piled up since then, and there are ancillary motions for an award of service fees and entry of default that have the same flavor of dysfunctional interactions. *See* Dkt. Nos. 14, 77, 83, 96, 99. Overall, the parties' inability to handle their business in a professional manner has created a mountain of work that does nothing to promote the fair and efficient resolution of this lawsuit.

All of the pending motions are denied. Although the Court has concerns about some of the conduct engaged in by Qazi, his actions are best addressed on the merits of Greenspan's defamation and tort claims at trial or in other dispositive proceedings.

**DISCUSSION**

**I.    THE CONDUCT MOTIONS**

Greenspan has filed three motions about conduct issues: (1) a "contempt" motion (Dkt. No. 77); (2) a Rule 11 motion for sanctions (Dkt. No. 83); and (3) a "compliance" motion (Dkt. No. 99). All of these motions are based on the same premise: Qazi has made scurrilous comments about Greenspan online, in violation of the Court's conduct order. Greenspan alleges that Qazi "has published approximately 600 pages of aggressive insults and outrageous lies" on Qazi's personal website. Dkt. No. 99 at 1. Among other comments, Qazi is said to have posted that Greenspan is a "criminal," a "monster," and in need of psychiatric care. *Id*. at 5-6. Qazi is also said to have posted that Greenspan threatens people "until they want to kill themselves." Dkt. No. 77 at 2. These are representative examples of the most extreme remarks attributed to Qazi, and they capture the flavor of other comments that the Court will not catalog here. Greenspan includes in his motions more benign comments such as an alleged mischaracterization of Greenspan's legal claims. Dkt. No. 83 at 8. Greenspan also says that Qazi publicly disclosed confidential settlement communications, Dkt. No. 99 at 4-5, and filed a groundless anti-SLAPP motion under California law, Dkt. No. 83 at 5-6.

On the record before the Court, there is much that gives pause in the comments attributed to Qazi.[1] If the evidence on summary judgment or at trial supports Greenspan's accounting of the facts, Qazi may face substantial consequences on Greenspan's defamation and tort claims. But that determination is for another day. The conduct motions raise a panoply of factual disputes better suited for resolution in a merits proceeding on a fully developed record. That is all the more true for the anti-SLAPP dispute, which the Court has not ruled on. In addition, Greenspan seeks in effect an order requiring Qazi to be courteous, or at least circumspect, online. The parameters of an enforceable order along those lines would be difficult to determine. While the Court declines to intervene at this time, all parties are advised that it may act if the situation deteriorates.

---

[1] This is not to say that Greenspan is without fault. He frequently uses overheated and disparaging language about defendants that has no place in court filings.

That resolves the three conduct motions. An additional observation is warranted for the Rule 11 motion. Qazi's objection that the motion was premature, Dkt. No. 90 at 4, is not well taken. Rule 11(b) provides for a 21-day cooling off period between service and filing. Fed. R. Civ. P. 11(c)(2). This is designed to allow the parties reach a resolution without burdening the courts. A Rule 11 motion that is filed before the 21 days elapse will not be considered. *See Barber v. Miller*, 146 F.3d 707, 708-09 (9th Cir. 1998).

Qazi suggests that Greenspan jumped the gun by a few days when filing the sanctions motion. He did not. Qazi acknowledges that he consented in writing to service of documents by email on his lawyer, *see* Dkt. No. 90 at 2, and the record shows that Greenspan served a copy of his motion in this manner 22 days before filing it, *see* Dkt. No. 90-1 ¶ 2; Dkt. No. 83. Qazi says that Greenspan should have waited at least another three days under Rule 6(d), which extends deadlines for responding to documents served via certain methods described in Rule 5(b). But Rule 6(d) does not apply to electronic service by means that the other party has consented to in writing. This method of service is described in Rule 5(b)(2)(E), which is not listed in Rule 6(d) as a kind of service that allows for extra time to respond. *See* Fed. R. Civ. P. 6(d) (referring only to Rules 5(b)(2)(C), (D), and (F), which describe other kinds of service); *see also* Fed. R. Civ. P. 6, Committee Notes to 2016 Amendment ("Rule 6(d) is amended to remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to act after being served."). In addition, even if the motion had been a couple of days early, which is not the case, some leeway for a pro se litigant during a pandemic would excuse a technical application of the rules, especially when no meaningful prejudice would result to the responding party.

The question of possible disclosures of settlement communications also merits attention. Needless to say, settlement communications are expected to be private and confidential, and not subject to publication unless all parties agree. Settlement negotiations do not work otherwise. *See, e.g.*, *Monster Energy Co. v. Schechter*, 444 P.3d 97, 105 (Cal. 2019). The Court cannot tell from the rather murky record on this issue exactly what happened in breach of settlement confidentiality here. Even so, all parties and counsel are advised that all settlement

1  communications must be treated as confidential to the parties unless they expressly agree to waive
2  confidentiality.

3   While sanctions will not be imposed at this time, the parties have reached the end of the
4  line for any more motions of this sort.  The docket already has too many of those on file, and the
5  moment has come for the Court to protect the "economy of time and effort for itself, for counsel,
6  and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  No sanctions, conduct, or
7  "civility" motions of any kind may be filed without the Court's prior approval.  A request to file
8  such a motion may not exceed three pages, and must state objectively compelling circumstances in
9  support of the request.  No exhibits, attachments or declarations may be filed with the request.
10 Requests that fail to identify compelling circumstances, or that do not follow these directions, will
11 be summarily denied.  No party may file a response or opposition to a request unless the Court
12 specifically calls for one.  Failure to conform to this order will result in monetary and other
13 sanctions, including professional conduct sanctions, and possible evidence or claim preclusion, or
14 dismissal under Rule 41(b).

15 **II.   COSTS OF SERVICE**

16   Greenspan's request for costs incurred in serving defendant Musk, Dkt. No. 14, is denied.
17 Federal Rule of Civil Procedure 4(d)(1) imposes a duty on parties to avoid unnecessary costs
18 associated with formal service of process, and allows a plaintiff to send the complaint and two
19 copies of a waiver of service to the defendant "by first-class mail or other reliable means."  Under
20 Rule 4(d)(2), if a defendant fails to sign and return the waiver "without good cause," then that
21 defendant is responsible for the costs of service as well as costs associated with bringing a motion
22 to recover these costs.  Greenspan says that he sent the required documents to Musk by email, and
23 that Musk failed to return the waiver form.  Dkt. No. 14 at 2-3.  Greenspan served Musk at a cost
24 of $927.93, and spent an additional $2.40 to mail Musk a copy of his motion for costs.  Dkt. No.
25 14 at 3.

26   The record shows that Musk did not breach the service expectations in Rule 4.  A member
27 of Tesla's information security team filed a declaration stating that Greenspan's emails were
28 blocked from reaching Musk and other Tesla personnel several months before Greenspan

4

1  attempted service because Greenspan had emailed a large volume of unsolicited messages that on
2  occasion featured confrontational language. *See* Dkt. No. 35-1 ¶¶ 3-4 (Rager Decl.); Dkt. No. 20-
3  12 (email from Greenspan accusing Musk of fraud, and stating that "I will e-mail this to you, the
4  Board, your auditors, your regulators, and your auditors' regulators every day until I receive an
5  answer."). Greenspan's emails were diverted to an inbox managed by Tesla's information security
6  team, and not delivered to Musk. Dkt. No. 35-1 ¶ 6. Consequently, although someone at Tesla
7  had the emails, Musk himself did not, and he did not receive the waiver of service request. *See id.*
8  ¶¶ 6-8 (explaining that emails were never forwarded to Musk); Dkt. No. 32-1 (Exh. 1 to Rager
9  Decl.) (showing email requesting waiver of service was diverted to Tesla security account).

10  This record is enough for the Court to conclude that Musk did not shirk his cooperative
11  service obligations. The parties also agree that Musk typically waives service in the course of
12  litigation in this District. *See, e.g.*, *Wochos v. Tesla, Inc., et al.*, Case No. 3:17-cv-05828-CRB,
13  Dkt. No. 25-1 (waiver of service); *Yeager v. Tesla, Inc., et al.*, Case No. 3:18-cv-04912-EMC,
14  Dkt. No. 9 (same). Greenspan is not entitled to a recovery of service costs.

### III. DEFAULT

16  Greenspan's request for leave to file an application for default against Smick, Dkt. No. 96,
17  is denied. This is Greenspan's fourth request for entry of default against Smick, a Delaware
18  corporation operated by Qazi. *See* Dkt. Nos. 15, 26, 45, 96. This time, Greenspan says that Smick
19  lacks capacity to defend itself because it has failed to register with the California Secretary of
20  State, file required corporate statements, and pay taxes, and that this allows for entry of default.

21  A "foreign corporation transacting intrastate business which has failed to qualify with the
22  Secretary of State" cannot "maintain" a civil action in California, and this issue may be raised by
23  way of an affirmative defense. *See United Med. Mgmt. Ltd. v. Gatto*, 49 Cal. App. 4th 1732,
24  1739-40 (1996). But a "foreign corporation transacting intrastate business which has failed to
25  qualify with the Secretary of State may nevertheless *defend* an action brought against it." *Id.* at
26  1739 (emphasis in original). The California Corporations Code indicates that one result of failing
27  to register with the Secretary of State is automatic consent to the jurisdiction of California courts
28  in any civil action against a corporation named as a defendant in California. *See* Cal. Corp. Code

§ 2203(a).  In addition, a corporation's failure to file statements does not automatically terminate its litigation capacity; the corporation must first have been assessed a monetary penalty for failing to file the statements, and the Secretary of State must then provide notice to the corporation that its corporate powers will be suspended if it does not seek relief within sixty days.  *See* Cal. Corp. Code § 2205.  The record does not show that this happened here.

A "foreign corporation which has qualified to do business does not forfeit its corporate powers merely because it has not paid its taxes.  The forfeit of corporate powers occurs only at the time of the notice of forfeiture by the Franchise Tax Board.  Thus, the mere failure to pay taxes does not prevent a foreign corporation from bringing or defending an action." *Gatto*, 49 Cal. App. at 1741 (citation omitted); *see also* Cal. Rev. & Tax Code § 23302.

Consequently, leave to apply for a default is denied.  No further requests for a default against Smick will be allowed.

**IT IS SO ORDERED.**

Dated:  January 25, 2021

JAMES DONATO
United States District Judge