1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**AARON GREENSPAN**,

        Plaintiff,

    v.

**OMAR QAZI**, et al.,

        Defendants.

Case No. 3:20-cv-03426-JD

**DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CIV. PROC. CODE §425.16, AND MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Time:    TBD
Date:    TBD
Before:    The Hon. James Donato
Ctrm.:    11, 19th Floor

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on a date and time to bet set by the Court, in Courtroom 11 of the above-titled Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendants Omar Qazi ("Qazi") and Smick Enterprises, Inc. (collectively, "Smick Defendants"), by and through counsel, will and hereby do make the following motions:

- Special Motion to Strike Under Code of Civil Procedure ("CCP") §425.16 ("anti-SLAPP"): The Court should strike the following claims in Plaintiff's Third Amended Complaint ("TAC") as to the Smick Defendants pursuant to CCP §425.16: a) Count I for Defamation Per Se and b) Count III for Violation of the California Civil Anti-Stalking Statute. If they prevail, the Smick Defendants will seek their attorney's fees and costs under CCP §425.16(c)(1).

- Motion to Dismiss Pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6): The Court should dismiss all claims in the TAC against the Smick Defendants, which are not stricken under anti-SLAPP, pursuant to Rule 12(b)(6) for failure to state a claim. If they prevail on their motion to dismiss Counts IV, V, or VI, the Smick Defendants will seek their attorney's fees and costs under 17 U.S.C. §§505 and 1203.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the declaration of Karl S. Kronenberger in support of this motion, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

Respectfully Submitted,

DATED: March 12, 2021                    **KRONENBERGER ROSENFELD, LLP**


By:  ____s/ Karl S. Kronenberger____
            Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

   A.  Plaintiff ..................................................................................................................2

   B.  The Allegedly Defamatory Statements. .................................................................2

   C.  Alleged Copyright Infringement and Copyright Misuse ........................................3

   D.  Alleged Market Manipulation Statements ..............................................................3

   E.  Other Alleged Conduct by the Smick Defendants .................................................3

STATEMENT OF THE ISSUES ..........................................................................................4

ARGUMENT .......................................................................................................................4

   A.  Standard of Law .....................................................................................................4

   B.  Plaintiff's state law claims should be stricken under anti-SLAPP. ........................4

      1. The conduct at issue arises from protected activity ............................................5

      2. Plaintiff cannot show a probability of prevailing on his state law claims ......................7

         a. Plaintiff has not stated a claim for defamation per se ................................7

         b. Plaintiff has not stated a claim for stalking under Civil Code §1708.7 ..................10

   C. Plaintiff has not stated a claim for securities market manipulation ....................................11

   D. Plaintiff has not stated a claim for copyright infringement  ...............................................12

   E. Plaintiff has not alleged that the Smick Defendants intended to remove CMI in order to infringe, as is necessary to state a claim under 17 U.S.C. §1202(b)................................13

   F. Plaintiff has not alleged that Qazi intended to make misrepresentations in DMCA notices and counter notices in violation of 17 U.S.C. §512(f). ....................................................14

CONCLUSION....................................................................................................................15

i

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1

**TABLE OF AUTHORITIES**

2

**Cases**

*Alpha Capital Anstalt v. Oxysure Sys., Inc.*,
   252 F. Supp. 3d 332 (S.D.N.Y. 2017).................................................................... 12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................... 11

*Automattic Inc. v. Steiner*,
   82 F. Supp. 3d 1011 (N.D. Cal. 2015) ................................................................... 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................. 4

*Blazheiev v. Ubisoft Toronto Inc.*,
   No. 17-CV-07160, 2018 WL 3417481 (N.D. Cal. July 13, 2018) .......................... 10

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)............................................................................................... 13

*City of Carlsbad v. Shah*,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012).................................................................. 14

*de Fontbrune v. Wofsy*,
   409 F. Supp. 3d 823 (N.D. Cal. 2019) ................................................................... 13

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009) ................................................................................. 12

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019) ......................................................................................... 5, 6

*Fisher v. Dees*,
   794 F.2d 432 (9th Cir. 1986) ................................................................................. 13

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ............................................................ 12, 13

*Ganske v. Mensch*,
   480 F.Supp.3d 542 (S.D.N.Y. 2020)......................................................................... 1

*Grenier v. Taylor*,
   234 Cal. App. 4th 471 (2015) .................................................................................. 5

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir. 1999)...................................................................................... 12

*Herring Networks, Inc. v. Maddow*,
   445 F. Supp. 3d 1042 (S.D. Cal. 2020)................................................................. 5, 7

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ................................................................................... 5

*Hoang v. Tran*,
   No. B302608, 60 Cal. App. 3d 513, 274 Cal. Rptr. 3d 567, 585-86 (2021) .............. 9

*In re DMCA Subpoena to Reddit, Inc.*,
   441 F. Supp. 3d 875 (N.D. Cal. 2020) ................................................................... 13

*Krinsky v. Doe 6*,
   159 Cal. App. 4th 1154 (2008) ............................................................................. 7, 9

*Leidholdt v. L.F.P. Inc*,
   860 F.2d 890 (9th Cir. 1988) ................................................................................... 9

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) ................................................................................ 15

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Lieberman v. Fieger*,
   338 F.3d 1076 (9th Cir. 2003) ........................................................................... 10

*Madsen v. Buffum*,
   No. ED1201605, 2013 WL 12139139 (C.D. Cal. July 17, 2013)............................ 11

*Maloney v. T3Media, Inc.*,
   94 F. Supp. 3d 1128 (C.D. Cal. 2015) ................................................................. 5

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................................. 9

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ........................................................................... 5

*Obsidian Fin. Grp., LLC v. Cox*,
   740 F.3d 1284 (9th Cir. 2014) ........................................................................ 7, 8

*Peterman v. Republican Nat'l Comm.*,
   369 F. Supp. 3d 1053 (D. Mont. 2019)................................................................. 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ......................................................................... 4, 7

*Rudwall v. BlackRock, Inc.*,
   289 F. App'x 240 (9th Cir. 2008) ..................................................................... 10

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ........................................................................... 4

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   119 F. Supp. 3d 1213 (C.D. Cal. 2015) ......................................................... 11, 12

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*,
   804 F. App'x 668 (9th Cir. 2020) ..................................................................... 14

*Shropshire v. Canning*,
   No. 10-CV-01941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ...................... 15

*UMG Recordings, Inc. v. Augusto*,
   558 F. Supp. 2d 1055 (C.D. Cal. 2008) ............................................................. 15

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ............................................................................. 7

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
   770 F.3d 834 (9th Cir. 2014) ........................................................................... 11

*Weller v. Am. Broad. Companies, Inc.*,
   232 Cal. App. 3d 991 (1991) ............................................................................. 7

*ZL Techs., Inc. v. Does 1–7*,
   13 Cal. App. 5th 603 (2017) ............................................................................. 7

**Statutes**

15 U.S.C. §78j(b) ................................................................................................ 11
17 U.S.C. §505................................................................................................... 1
17 U.S.C. §512(f) ........................................................................................ 14, 15
17 U.S.C. §1202(b) ...................................................................................... 13, 14
17 U.S.C. §1203............................................................................................... 1
Code Civ. Proc. §425.16, *et seq.* ............................................................... 1, 4, 5
Civil Code §1708.7 ................................................................................. 4, 10, 11

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 4

**Regulations**

17 C.F.R. 240.10b-5.....................................................................................................11

**Other Authorities**

California Bill Analysis, A.B. 1548 Assem., 5/19/1993.................................................10

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3          The parties, who have opposing viewpoints about Tesla stock, have a history of raucous

4 public debate and exchanging insults on Twitter and other websites. Plaintiff claims that the Smick

5 Defendants' Tweets and other online statements defamed and harassed him. However, "[i]f the

6 Internet is akin to the Wild West, as many have suggested, Twitter is, perhaps, the shooting gallery,

7 where verbal gunslingers engage in prolonged hyperbolic crossfire. It is in this context of battle by

8 tweet that the conduct at issue in this defamation case was born." *Ganske v. Mensch*, 480 F.Supp.3d

9 542, 545 (S.D.N.Y. 2020).

10          The Smick Defendants' online posts, which stated that Plaintiff is a "rule breaker,"

11 "clown," and "criminal," who suffers from "paranoid delusions," who has cyberstalked,

12 threatened, and harassed others, who has engaged in "tax fraud" through a "fake charity," who

13 "stole DoD documents," and who "extorted $250,000 from Mark Zuckerburg," are classic

14 examples of non-actionable rhetoric and hyperbole occurring in a virtual "shooting gallery." While

15 such language may be distasteful to some, no reasonable reader would understand these statements

16 as assertions of fact. Plaintiff's stalking claim fails for similar reasons, including because the

17 Smick Defendants' alleged conduct did not plausibly put Plaintiff in reasonable fear for his safety.

18 Thus, the Court should strike Plaintiff's defamation and civil stalking claims against the Smick

19 Defendants.

20          Further, the Court should dismiss any claims against the Smick Defendants, which are not

21 stricken, pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff's market manipulation

22 claim fails because Plaintiff has not alleged either scienter or market manipulation. Plaintiff's

23 copyright claims fail because the use of portions of Plaintiff's autobiography was a fair use,

24 Plaintiff has not alleged that the Smick Defendants removed CMI from the "Purple Shirt

25 Photograph," and Plaintiff has not alleged that Qazi intended to make any misrepresentation in a

26 DMCA notice.

27          For these reasons, the Court strike portions of and dismiss the entirety of Plaintiff's Third

28 Amended Complaint as to the Smick Defendants.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## STATEMENT OF FACTS

While the Smick Defendants dispute Plaintiff's factual allegations, including claims that Qazi posted certain statements, Plaintiff's allegations are outlined below.

### A.    Plaintiff

Plaintiff is an investor who has held options in Tesla stock, and who claims that Tesla "is the largest Ponzi scheme in history." (TAC ¶¶3, 24.) Over the last decade, Plaintiff has been covered by major news outlets about a variety of topics, including: 1) Plaintiff's claim that he created Facebook, b) Plaintiff's lawsuit against a movie studio, in which he claimed that the movie *The Social Network* defamed him by omission, c) Plaintiff's testimony before UK Members of Parliament claiming that Facebook overstates its user numbers, and d) Plaintiff's analysis of lawsuits filed against Tesla and Musk. (Kronenberger Decl. ¶¶2–7 & Exs. A–F.)

### B.    The Allegedly Defamatory Statements

Plaintiff alleges that since January 2019, the Smick Defendants have posted false and disparaging statements about Plaintiff using the following platforms and accounts:

- @tesla_truth Twitter account, posting as "Steve Jobs" and later as "Steve Jobs Ghost";
- @PlainShite Twitter account, posting as "Plain Shite";
- @WholeMarsLog Twitter account, later renamed @WholeMarsBlog; and
- The websites plainshit.com, plainshit.org, plainsiite.org, vagfoundation.org, wholemars.net and wholemars.org (collectively, the "Websites").

Plaintiff claims the Smick Defendants published statements on these accounts and Websites that:

- Falsely accused Plaintiff of fraud, including in connection with Plaintiff's "fake charity";
- Falsely accused Plaintiff of stalking, harassment, extortion, identity theft, and cyberstalking;
- Falsely accused Plaintiff of sexual fixations, possessing child pornography, and rape;
- Falsely claimed that Plaintiff did not create Facebook;
- Falsely claimed that Plaintiff suffers from mental illness;
- Falsely implied that Plaintiff sent a Tesla fan a death threat and would resort to violence;
- Falsely claimed that a social media platform Plaintiff created in college stole passwords; and
- Falsely claimed that Plaintiff's FaceCash business was shut down for regulatory violations

2

1    (collectively, the "Statements"). (TAC ¶161.)

2    **C.      Alleged Copyright Infringement and Copyright Misuse**

3          Plaintiff also alleges that Qazi posted lengthy passages from Plaintiff's autobiography on

4    Twitter and one of the Websites. (TAC ¶¶226–28.) After Plaintiff sent a DMCA takedown notice,

5    Qazi allegedly sent a counter notice, claiming the removal of this material was a result of mistake

6    or misidentification. (TAC ¶¶253–54.) Plaintiff further alleges that Qazi removed the copyright

7    notice from a photo of Plaintiff wearing a purple shirt and then repeatedly published the photo on

8    <vagfoundation.org>. (TAC ¶¶240, 244.) Finally, Plaintiff alleges that the Smick Defendants

9    issued three DMCA takedown notices regarding material that Plaintiff had published—two of the

10   notices concerned a video of a Tesla driving through a stoplight, and one concerned a fundraising

11   website. (TAC ¶¶249, 256, 259.)

12   **D.      Alleged Market Manipulation Statements**

13         Plaintiff alleges that the Smick Defendants published thousands of social media messages

14   to a broad Twitter audience, which included Tesla shareholders, to drive up the price of Tesla

15   stock. (TAC ¶286.)

16   **E.      Other Alleged Conduct by the Smick Defendants**

17         Plaintiff also alleges that the Smick Defendants:

18   •   Called Plaintiff pretending to be "the phone company." (TAC ¶36);

19   •   Altered an application for a harassment restraining order to state that Plaintiff was seeking

20       protection from "Little Billy Watkins," age 5. (TAC ¶42);

21   •   Sent texts and a fax to Plaintiff falsely accusing him of possessing child pornography. (TAC

22       ¶¶43–44);

23   •   Created a Twitter account impersonating Plaintiff's father, and later Plaintiff's disabled

24       brother, and then posted the statement "I hate my brother" on the account. (TAC ¶¶69–73);

25   •   Left Plaintiff's father a 50-second voicemail and sent him an email with false statements about

26       Plaintiff (Plaintiff does not specify the contents of these messages). (TAC ¶87);

27   •   Sent Plaintiff's disabled brother the Facebook message, "hi simon[;] how are you?" (TAC ¶91,

28       Ex. C at 27);

- Called Plaintiff's father and falsely claimed to work for Quinn Emanuel. (TAC ¶¶121–22);

- Created an account in Plaintiff's name on a pornographic website. (TAC ¶102); and

- Published photographs of Plaintiff's parents as banner and background images for the @WholeMarsBlog Twitter account (TAC ¶¶128, 135).

## STATEMENT OF THE ISSUES

1.      Whether the Court should strike Plaintiff's First Cause of Action for Defamation Per Se and Third Cause of Action for Violation of Civil Code §1708.7 under CCP §425.16?

2.      Whether the Court should dismiss the unstricken claims under Rule 12(b)(6)?

## ARGUMENT

### A.      Standard of Law

Anti-SLAPP provides for striking state law claims where: (1) the defendant makes a prima facie showing that the plaintiff's claims arise from protected activity, and (2) if such a showing is made, the plaintiff fails to establish a reasonable probability of prevailing on his claim. *See Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). Federal courts review anti-SLAPP motions under Rule 12(b)(6) if the motion only challenges the legal sufficiency of the plaintiff's claim. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). With their anti-SLAPP motion, the Smick Defendants challenge the legal sufficiency of Plaintiff's state law claims.

The Smick Defendants further move to dismiss all remaining claims pursuant to Rule 12(b)(6). Under Rule 12(b)(6), courts ask whether the plaintiff has alleged sufficient facts to state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.      Plaintiff's state law claims should be stricken under anti-SLAPP.

The Court should strike Plaintiff's state law claims under anti-SLAPP because Plaintiff's claims arise from protected activity, and Plaintiff has not stated viable claims.[1]

---

[1] While the Smick Defendants rely on external evidence regarding the first prong of anti-SLAPP, such reliance should not transform this motion into a summary judgment motion because the evidence does not bear on the legal sufficiency of Plaintiff's claims. *See Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 833 ("when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**1.    The conduct at issue arises from protected activity.**

Under CCP §425.16(e)(3), a statement is protected if it is made in a public forum in connection with an issue of public interest. Both elements are satisfied here.

Public Forum: Publicly-accessible websites qualify as public fora under anti-SLAPP. *See Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017). Because the Statements at issue were published on Twitter and other publicly-accessible Websites, they were made in public fora.

Issue of Public Interest: California's anti-SLAPP law does not define "an issue of public interest." *See Grenier v. Taylor*, 234 Cal. App. 4th 471, 481–82 (2015). However, the public interest requirement must be construed broadly to encourage participation by all segments of our society in vigorous public debate related to issues of public interest. *See Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1048 (S.D. Cal. 2020). California courts have defined an issue of public interest as "any issue in which the public is interested. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). Given this broad meaning, California courts have found that a public issue is implicated if the subject of the statement or activity underlying the claim (1) is a person in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involves a topic of widespread, public interest. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010).

A party seeking protection under §425.16(e)(3) must identify the public issue implicated and show a functional relationship between the speech and the issue. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149-50 (2019). While a statement that is not of interest to the public cannot become one merely because it refers to a subject of widespread interest, when the statement itself is of widespread public interest, prong one of anti-SLAPP is satisfied. *See id.* at 150–52 ("a statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue" (brackets in original)).

---

12(b)(6) standard and consider whether a claim is properly stated").

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Importantly, whether a statement contributes to a debate on an issue of public interest "does not turn on a normative evaluation of the substance of the speech," *Id*. at 150–51 (2019):

> "We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest."

The Statements here involve an issue of public interest for two reasons. First, while the Statements may not be tasteful to some, making fun of, criticizing, and satirizing vocal critics of Tesla and Musk have become topics of widespread public interest. (Kronenberger Decl. ¶8 & Ex. G.) To that end, Plaintiff concedes that the Statements were "read by a wide audience of at least 10,000-20,000 Twitter followers," exposing Plaintiff "to hatred and ridicule by countless individuals." (TAC ¶¶8, 107; D.E. No. 70 ("SAC") ¶60.) Plaintiff also alleges that Qazi and Musk worked as a tag team, hurling accusations and falsehoods about Plaintiff to Musk's millions of followers. (TAC ¶¶10, 138.) The Twitter account @WholeMarsBlog, to which many of the Statements were allegedly published, has over 18,000 followers. (Kronenberger Decl. ¶9 & Ex. H.) The Statements contributed to the topic of criticizing Tesla critics by making fun of, taunting, and satirizing Plaintiff, who is an admitted critic of Tesla. Further, Plaintiff concedes that the value of Tesla's stock is also an issue of public interest, and many of the Statements were allegedly published to promote Tesla's stock. (TAC ¶54; *see also* TAC ¶¶37, 156.) Thus, the Statements themselves are of widespread public interest.

The Statements also concern an issue of public interest because Plaintiff has repeatedly thrust himself into the public eye. Plaintiff has solicited attention from major news outlets over the course of a decade, including about the Statements, his intent to bring this lawsuit, his criticism of Tesla and Musk, and his claim that he came up with the idea for Facebook, which resulted in Plaintiff bringing a lawsuit for "defamation by omission." (Kronenberger Decl. ¶¶2–7 & Ex. A–F.) Moreover, Plaintiff has authored and sells his autobiography, which purportedly enjoys sufficient public interest to be harmed by the alleged copyright infringement. (TAC ¶¶225–26.)

Because there is widespread public interest in the Statements, and because Plaintiff has placed himself in the public eye, the Smick Defendants have satisfied anti-SLAPP's first prong.

6

**2.**      **Plaintiff cannot show a probability of prevailing on his state law claims.**

Because the anti-SLAPP motion attacks the TAC, Plaintiff must show that each challenged cause of action is legally sufficient to sustain a favorable judgment. *See Planned Parenthood Fed'n of Am.*, 890 F.3d at 834. Plaintiff cannot do this.

**a.**      **Plaintiff has not stated a claim for defamation per se.**

To state a defamation claim, a plaintiff must identify a provably false statement. *See Weller v. Am. Broad. Companies, Inc.*, 232 Cal. App. 3d 991, 1001 (1991). "When a defamation action arises from debate or criticism that has become heated and caustic, as often occurs when speakers use Internet chat rooms or message boards, a key issue before the court is whether the statements constitute fact or opinion." *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1174 (2008). To answer this question, courts consider: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). Courts also consider the reasonable expectations of the audience in the particular situation. *See Herring Networks, Inc.*, 445 F. Supp. 3d at 1050–51. Where the language used is loose, figurative, or hyperbolic, this tends to negate the impression that a statement contains an assertion of verifiable fact. Crude and ungrammatical language, satirical tone, and vituperative, juvenile name-calling all provide additional support for the conclusion that offensive statements are nonactionable opinion. *See ZL Techs., Inc. v. Does 1–7*, 13 Cal. App. 5th 603, 624 (2017).

In  *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1293 (9th Cir. 2014), the Ninth Circuit reviewed blog posts accusing individuals of "illegal activity," including "corruption," "fraud," "deceit on the government," "money laundering," "harassment," "tax crimes," and "fraud against the government," and claiming that one individual paid off "media" and "politicians" and may have hired a hit man to kill her. *Id.* at 1293. The court found that: (1) the general tenor of the blog posts negated the impression that the author was asserting objective facts, (2) hyperbolic language, such as "immoral," "really bad," "thugs," and "hired a hit man to kill her," or that "the entire bankruptcy court system is corrupt," dispelled any reasonable expectation that the statements

asserted facts, and (3) in the context of a non-professional website with consistently hyperbolic language, the posts were not sufficiently factual to be proved true or false. *See id.* at 1293–94.

Similarly, the Statements here are non-actionable rhetoric, opinion, and hyperbole made in the context of a virtual "shooting gallery." No reasonable person would understand the Statements as assertions of fact. First, the general tenor of the Twitter accounts authored by "Steve Jobs Ghost" and Websites, such as "vagfoundation.org," negate the impression that the publishers were asserting objective facts. Second, the Statements must be viewed in the context of the ongoing online disputes in which they were posted, which include regular insults about Plaintiff couched in loose and figurative language from multiple authors, such as:

- Plain Shite: "Don't EVER mention Facebook to me! You will make me angry 😡 And when I get angry I like to do things. Like stalk, bully, and slander people online. Don't mess with me.  I'll do it to you too."

- Plain Shite: "Norman, supposedly a 'dog' frequently appears in videos and tweets in an effort to artificially drive up Tesla's stock price. Today we are announcing we are suing Norman for securities fraud. My daddy will help me file the lawsuit today. We wont rest until he's in doggy jail."

- Steve Jobs Ghost: "to the police: if I am found dead in mysterious circumstances, it was almost certainly aaron greenspan[;] he killed me for saying he didn't invent facebook (he didn't)."

- EV Customer Advocate: "Aaron is Criminal Minds (the TV show) level nuts. Like shackles in the basement type."

- Whole Mars Catalog: "to be clear there doesn't appear to be any evidence Aaron Greenspan is a rapist in a sexual sense[;] by all accounts he is still a virgin . . ."

- Hen @hentesla: "Do you think he realises that half the accounts following him are just second accounts from Tesla fans that want to laugh at him after he's blocked them?"

- ALEX @ajtourville: "Please tell Omar to tell his attorney to ask Aaron if he could hurry it up and file his reply to Elon's & Tesla's motion to dismiss Aaron's complaint... we need a good laugh. 😂 ."

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    Such posts establish a general tenor where no reasonable viewer would understand the Statements

2    as assertions of fact.

3           Third, as summarized below, the specific Statements at issue use loose, figurative, and

4    hyperbolic language, further negating any impression of an assertion of fact.

5           <u>Crimes</u>: Plaintiff alleges that some of the Statements falsely accuse him of fraud, stalking,

6    harassment, extortion, identity theft, and cyberstalking (*e.g.*, "It took a lot of hard work to break

7    every single one of these rules with our fraudulent charity, but we pulled it off"; "To conclude, is

8    anyone surprised Aaron Greenspan is a complete fraud?"; "Have you been a victim of harassment,

9    intimidation, sexual assault, identity theft or cyberstalking by Aaron Greenspan?"). Courts have

10   held that loose online accusations of criminal conduct, including fraud, may well be understood as

11   non-actionable hyperbole. *See, e.g.*, *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal.

12   1999) (in context, defendant's assertions on her website that plaintiff was a "fraud," a "criminal,"

13   and had acted illegally were mere hyperbole); *see also Hoang v. Tran*, No. B302608, 60 Cal. App.

14   3d 513, 274 Cal. Rptr. 3d 567, 585-86 (2021).

15          <u>Sex, Rape, and Child Pornography</u>: Plaintiff alleges that the Statements falsely accuse him

16   of possessing child pornography, having sexual fixations, and rape (*e.g.*, "The only thing that has

17   been revealed here is that Aaron Greenspan has child pornography at his house. I do not."). As to

18   the rape Statements, Plaintiff omits from the TAC the portion of the posts that states, "to be clear

19   there doesn't appear to be any evidence Aaron Greenspan is a rapist in a sexual sense[;] by all

20   accounts he is still a virgin . . ." (TAC Ex. C at 50.) In the context of a heated online debate,

21   accusations of farfetched sexual deviance are not taken seriously. *See, e.g.*, *Krinsky*, 159 Cal. App.

22   4th at 1176–77 (no reasonable reader would take internet post seriously, though unquestionably

23   vulgar and insulting); *Leidholdt v. L.F.P. Inc*, 860 F.2d 890, 894 (9th Cir. 1988).

24          <u>Inventing Facebook</u>: Plaintiff alleges that the Statements falsely claim that Plaintiff did not

25   invent Facebook. These Statements are opinions as to what it means to create a business concept.

26          <u>Mental Health</u>: Plaintiff alleges that the Statements falsely imply that Plaintiff is mentally

27   ill (*e.g.*, "What a psychopath," and "I am trying to diagnose his various mental conditions, and

28   believe he may have narcissistic personality disorder."). Loose criticisms of a person's mental

health in online disputes are not taken seriously by reasonable people. *See, e.g.*, *Lieberman v. Fieger*, 338 F.3d 1076, 1079–80 (9th Cir. 2003) (attorney's reference to psychiatrist as "Looney Tunes," "crazy," "nuts," and "mentally imbalanced," were not actionable).

Miscellaneous Statements: Finally, Plaintiff claims that a few other Statements defamed him, namely: a) that Harvard shut down Plaintiff's college social media project for stealing student passwords, b) that Plaintiff admitted he was willing to resort to violence to silence Tesla critics, and c) that Plaintiff maintained servers in New Jersey, the same state from which a Tesla fan received a death threat. Plaintiff admits that the first Statement is true—*i.e.*, that Harvard shut down his website. (TAC ¶161 No. 32.) The other Statements are rhetoric and hyperbole.

Because no reasonable person would understand the Statements as assertions of fact, they do not support a defamation claim.

  **b.**  **Plaintiff has not stated a claim for stalking under Civil Code §1708.7.**

To state a claim for stalking under Civil Code §1708.7, a plaintiff must allege that: (1) the defendant engaged in a pattern of conduct with the intent to follow, alarm, or harass the plaintiff; (2) as a result, the plaintiff reasonably feared for his or her safety; and (3) the defendant either made a credible threat with intent to place the plaintiff in reasonable fear or violated a restraining order. *See Blazheiev v. Ubisoft Toronto Inc.*, No. 17-CV-07160, 2018 WL 3417481, at *7 (N.D. Cal. July 13, 2018). Courts may decide, as a matter of law, that a defendant's conduct did not amount to a "credible threat," and that a stalking claim lacks plausibility. *See id.*

As an initial matter, Plaintiff's stalking claim is, in part, duplicative of his defamation claim and must be dismissed as to that portion. When a privacy claim is based on the same facts as a simultaneous libel claim, the privacy claim is superfluous and must be dismissed. *See Rudwall v. BlackRock, Inc.*, 289 F. App'x 240, 242 (9th Cir. 2008). The same rule seemingly applies to stalking claims because, in enacting section 1708.7, legislators sought to create a claim for conduct that was not already proscribed by other existing tort laws. *See* California Bill Analysis, A.B. 1548 Assem., 5/19/1993. Plaintiff's stalking claim thus repeats his libel claim.

Moreover, Plaintiff has not alleged a credible threat or a violation of a restraining order. First, Plaintiff claims that Qazi violated a restraining order by "altering, misconstruing and publicly

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   posting" Plaintiff's application for a restraining order against a third party. (TAC ¶209.) Plaintiff

2   does not allege Qazi violated a restraining order. Rather, Plaintiff alleges that Qazi made a farcical

3   version of Plaintiff's application for a restraining order, changing it to seek protection from "Little

4   Billy Watkins," age 5. (TAC ¶42.)

5          Second, Plaintiff claims that Qazi, Musk, Tesla, and restrained third party Diego

6   MasMarques, Jr. conspired to violate a restraining order. However, formulaic recitations and

7   conclusory statements do not adequately allege a conspiracy. *See United Bhd. of Carpenters &*

8   *Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (bare

9   assertions of an "agreement" or the identification of persons as "co-conspirators" will not suffice).

10  Except for conclusory allegations that Qazi coordinated with MasMarques, the TAC contains no

11  details about the supposed conspiracy. (*e.g.*, TAC ¶¶96, 106.)

12         Finally, Plaintiff claims, without any detail, that his years-long public feud with Qazi has

13  caused him to fear for his and his family's safety. (TAC ¶¶205, 211.) Conclusory allegations of

14  fear do not satisfy section 1708.7's reasonable fear element. *See Madsen v. Buffum*, No.

15  ED1201605, 2013 WL 12139139, at *2 (C.D. Cal. July 17, 2013). Plaintiff's claim that he fears

16  for his safety lacks factual support and is not plausible given Plaintiff's voluntary involvement in

17  online warfare with Qazi and others. (TAC ¶¶28, 32, 33, 35, 39, 47, 59, 61 & Exs. C at 4, D.)

18         For all of these reasons, the Court should strike Plaintiff's section 1708.7 claim.

19  **C.     Plaintiff has not stated a claim for securities market manipulation.**

20         To state a claim for market manipulation under section 10(b) of the Exchange Act, 15

21  U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5, a plaintiff must allege: (1) manipulative

22  acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of

23  manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered

24  by the defendant's use of the mails or any facility of a national securities exchange. *See*

25  *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1236 (C.D. Cal. 2015); *ATSI*

26  *Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). While some courts have

27  applied a "relaxed Rule 9(b)" standard for market manipulations claims, even under the relaxed

28  standard a plaintiff must identify what manipulative acts were performed, which defendants

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue. *See ScripsAmerica, Inc.* 119 F. Supp. 3d at 1240.

Manipulation refers to practices such as wash sales, matched orders, or rigged prices, which are intended to mislead investors by artificially affecting market activity. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938–39 (9th Cir. 2009). The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators. *See ScripsAmerica, Inc.*, 119 F. Supp. 3d at 1237 (quoting *Gurary v. Winehouse,* 190 F.3d 37, 45 (2d Cir. 1999)). Allegations of misrepresentations alone cannot support a claim of market manipulation. Rather, a plaintiff must identify wash sales, matched orders, rigged prices, or some other manipulative act intended to mislead investors by artificially affecting market activity. *See id.* at 1236; *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 342–43 (S.D.N.Y. 2017).

Plaintiff has not alleged manipulation by the Smick Defendants. Plaintiff identifies a single Tweet as the alleged manipulation: "Buy FSD. Buy acceleration boost. Buy accessories for your car. Place a $100 order for a Cybertruck or other new vehicle. Buy solar, powerwall, a freaking t-shirt I don't care! Let's push Tesla over the edge to profitability!" (TAC ¶286.) This Tweet does not reflect market manipulation. In fact, rather than deceiving readers, the Tweet overtly represents that the author's goal is to increase Tesla's stock price. Moreover, Plaintiff has not alleged the Smick Defendants' scienter. Thus, Plaintiff's market manipulation claim fails.

### D.   Plaintiff has not stated a claim for copyright infringement.

Plaintiff claims that the Smick Defendants infringed the copyright in Plaintiff's autobiography, *Authoritas*, by publishing extended passages from the book on the Twitter accounts and Websites. (TAC ¶226.) The fair use doctrine bars Plaintiff's infringement claim. Though the fair use defense is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174 (N.D. Cal. 2019).

The Copyright Act outlines four non-exclusive factors for analyzing fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and

substantiality of the portion used; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *See id.* The effect of the alleged infringement on the market value of the copyrighted work is undoubtedly the single most important element. *See de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 843 (N.D. Cal. 2019). As this Court has noted, a use that has no demonstrable effect upon the potential market for, or the value of, a copyrighted work need not be prohibited to protect the incentive to create. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 885–86 (N.D. Cal. 2020). "[A] diversion or suppression of demand from criticism is not a cognizable copyright harm. There is a crucial difference between '[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it.'" *Id.* (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 593 (1994) (brackets in original)). "[W]hen a lethal parody, like a scathing theater review, kills demand for the original, it does not produce a harm cognizable under the Copyright Act." *Campbell*, 510 U.S. at 591–92. "[T]he role of the courts is to distinguish between "[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it. *Id.* (quoting *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986) (brackets in original)).

Here, Plaintiff tacitly concedes that the alleged infringement did not displace the market for *Authoritas*, alleging that his "reputation and goodwill" were harmed, not that he lost sales. (TAC ¶237.) Even if Plaintiff had lost sales of *Authoritas* from the alleged infringement, any lost sales did not arise from market displacement but from the biting criticism of Plaintiff's autobiography. *See Peterman v. Republican Nat'l Comm.*, 369 F. Supp. 3d 1053, 1066 (D. Mont. 2019) ("even in the unlikely situation that the Work's value to Peterman had decreased because of the RNC's use, any decrease in value is not displacement"). Thus, Plaintiff's copyright infringement claim is barred by the fair use doctrine. [2]

**E.    Plaintiff has not alleged that the Smick Defendants intended to remove CMI in order to infringe, as is necessary to state a claim under 17 U.S.C. §1202(b).**

---

[2] Because Plaintiff's copyright registration only covers the text (and not photographs) of his book, Plaintiff's copyright claims relating to photographs and other elements fail for this reason as well. (TAC ¶225 & Ex. H.)

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Plaintiff claims that the Smick Defendants violated 17 U.S.C. §1202(b) by removing CMI from Plaintiff's "Purple Shirt Photograph." To state a claim under 17 U.S.C. §1202(b), a plaintiff must allege that the defendant knew or had reason to know that the removal of CMI would induce, enable, facilitate, or conceal an infringement. *See* 17 U.S.C. §1202(b). As discussed above, the Smick Defendants' alleged uses of *Authoritas* and the Purple Shirt Photograph were fair uses. Thus, the Smick Defendants could not have intended to induce infringement.

Moreover, Plaintiff has not plausibly alleged that the Smick Defendants removed CMI from the Purple Shirt Photo because the claimed CMI was in Plaintiff's website footer and not on the Purple Shirt Photograph when the Smick Defendants supposedly copied the photograph. *See SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670–71 (9th Cir. 2020). Plaintiff has tried to obfuscate his prior allegations that the Smick Defendants first copied the Purple Shirt Photograph before Plaintiff affixed CMI to the photograph. (*compare* TAC ¶244 *with* FAC [D.E. No. 20] ¶212.) However, there is nothing in the TAC that suggests the Smick Defendants accessed the new version of the Purple Shirt Photograph after July 19, 2020, as opposed to continuing to use the old version that never had CMI.

Even if Plaintiff could allege that the Smick Defendants removed CMI from the new version of the Purple Shirt Photograph, his §1202 claim would still fail. "The first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1102 (S.D. Cal. 2012). While courts in the Ninth Circuit have not addressed whether this principle applies to a §1202(b) claim, the reasoning logically extends to this claim.

For all of these reasons, Plaintiff's §1202(b) claim fails.

## F. Plaintiff has not alleged that Qazi intended to make misrepresentations in DMCA notices and counter notices in violation of 17 U.S.C. §512(f).

Plaintiff claims that Qazi violated 17 U.S.C. §512(f) by making misrepresentations in three DMCA takedown notices and in one DMCA counter notice. To state a claim under §512(f), a plaintiff must allege that the defendant knowingly and materially misrepresented that copyright infringement has occurred, that the service provider relied on such misrepresentation, and that the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

plaintiff was injured as a result. *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026–27 (N.D. Cal. 2015). "Under § 512(f), a copyright owner may be held liable for damages caused by an erroneous invocation of the notice and takedown provision only if the owner did not possess a subjective good faith belief that its copyright was being infringed." *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008), *aff'd*, 628 F.3d 1175 (9th Cir. 2011); *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016).

Plaintiff has not plausibly alleged that Qazi made knowing and material misrepresentations in the three takedown notices and one counter notice at issue. Regarding Qazi's counter notice, a representation by a defendant in a counter notice that he believes his use was a "fair use" is not a sufficient allegation, by itself, of a misrepresentation under §512(f). *See Shropshire v. Canning*, No. 10-CV-01941-LHK, 2011 WL 90136, at *6 (N.D. Cal. Jan. 11, 2011). Moreover, because Qazi's alleged use of Plaintiff's book qualifies for fair use protection (as discussed above), Qazi could not have made a misrepresentation (intentional or unintentional) as to the fair use doctrine.

Regarding Qazi's three DMCA takedown notices, Plaintiff does not argue that Qazi lacks rights in the subject works. Rather, Plaintiff appears to argue that Plaintiff's uses of Qazi's works were fair uses, and that Qazi misrepresented that Plaintiff's uses were infringing in the takedown notices. However, Plaintiff has not alleged that Qazi knowingly misrepresented his good faith belief that Plaintiff's uses did not constitute fair uses. Thus, Plaintiff's §512(f) claim fails.

## CONCLUSION

For the reasons set forth above, the Court should strike Plaintiff's state law claims under California's anti-SLAPP statute and dismiss all of Plaintiff's remaining claims under Rule 12(b)(6).

Respectfully Submitted,

DATED: March 12, 2021

**KRONENBERGER ROSENFELD, LLP**

By: _____s/Karl S. Kronenberger_____
           Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.