1  COOLEY LLP
   JOHN C. DWYER (136533) (dwyerjc@cooley.com)
2  3175 Hanover Street
   Palo Alto, CA  94304-1130
3  Telephone:   (650) 843-5000
   Facsimile:   (650) 849-7400
4
   AARTI REDDY (274889) (areddy@cooley.com)
5  REECE TREVOR (316685) (rtrevor@cooley.com)
   101 California Street, 5th Floor
6  San Francisco, CA  94111-5800
   Telephone:   (415) 693-2000
7  Facsimile:   (415) 693-2222
8  Attorneys for Defendants
   ELON MUSK and TESLA, INC.
9

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15  AARON GREENSPAN,                        Case No. 3:20-cv-03426-JD

16           Plaintiff,                     **NOTICE OF MOTION AND MOTION;
                                            MEMORANDUM OF POINTS AND
17      v.                                  AUTHORITIES IN SUPPORT OF TESLA
                                            DEFENDANTS' MOTION TO DISMISS
18  OMAR QAZI, SMICK ENTERPRISES, INC.,     PLAINTIFF'S THIRD SUPPLEMENTAL AND
    ELON MUSK, and TESLA, INC.,             AMENDED COMPLAINT**
19
             Defendants.                    Hearing Date: None Set (*See* ECF No. 106)
20                                          Courtroom:   11, 19th Floor
                                            Judge:       Hon. James Donato
21                                          Trial Date:  None Set
22                                          Date Action Filed:  May 20, 2020
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND ................................................................................................. 2

II.    THE TAC VIOLATES THIS COURT'S ORDER MANDATING COMPLIANCE
WITH RULE 8 ................................................................................................... 3

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL PER SE. ...................... 4

      A.      Mr. Musk Is Not Vicariously Liable for Mr. Qazi's Alleged Libel ............ 4

      B.      The Alleged Statements by Mr. Musk Are Not Actionable ....................... 5

IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL STALKING. .................. 8

V.     PLAINTIFF FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS. ...... 8

      A.      The TAC Fails to Plead Falsity ................................................................ 9

      B.      The TAC Fails to Raise a Strong Inference of Scienter .......................... 11

      C.      The TAC Fails to Plead Reliance ............................................................ 12

      D.      The TAC Fails to Plead Loss Causation. ................................................. 14

VI.   PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION ............... 15

VII.   CONCLUSION ................................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

5

*Art of Living Found. v. Does*,
 2011 WL 2441898 (N.D. Cal. June 15, 2011) ................................................................ 5

6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................. 8, 11

7

8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) ..................................................................................... 15

9

10

*Barnes-Hind, Inc. v. Super. Ct.*,
 181 Cal. App. 3d 377 (1986) ................................................................................... 7

11

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988) ........................................................................................... 12, 14

12

13

*Bidart v. Huber*,
 9 F. App'x 746 (9th Cir. 2001) ............................................................................... 5

14

15

*Blazheiev v. Ubisoft Toronto Inc.*,
 2018 WL 3417481 (N.D. Cal. July 13, 2018) ....................................................... 8

16

*In re BofI Holding, Inc. Sec. Litig.*,
 977 F.3d 781 (9th Cir. 2020) ................................................................................. 14

17

18

*Brown v. Comcast Corp.*,
 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) ....................................................... 5

19

20

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047, 1058 (9th Cir. 2011) ...................................................................... 3

21

*In re Century Aluminum Co. Sec. Litig.*,
 729 F.3d 1104 (9th Cir. 2013) ............................................................................... 11

22

23

*In re Cornerstone Propane Partners, L.P., Sec. Litig.*,
 355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................. 11

24

25

*Correia v. Santos*,
 191 Cal. App. 2d 844 (1961) ................................................................................... 6

26

*In re Cutera Sec. Litig.*,
 610 F.3d 1103 (9th Cir. 2010) ............................................................................... 10

27

28

*In re Daou Sys., Inc.*,
 411 F.3d 1006 (9th Cir. 2005) ........................................................................... 12, 14

**TESLA DEFS.' MOTION TO DISMISS TAC**
**CASE NO. 3:20-CV-03426-JD**

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336, 342 (2005) ........................................................................................14

*Eade v. InvestorsHub.com, Inc.*,
    2011 WL 13323344 (C.D. Cal. July 12, 2011) ........................................................7

*Eisenberg v. Alameda Newspapers, Inc.*,
    74 Cal. App. 4th 1359 (1999) ..................................................................................6

*Gilford Partners, L.P. v. Sensormatic Elecs. Corp.*,
    1997 WL 570771 (N.D. Ill. Sept. 10, 1997) ..........................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ................................................................................................12

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) ....................................................................................4

*Hoesl v. United States*,
    451 F. Supp. 1170 (N.D. Cal. 1978) .........................................................................5

*J.L. v. Children's Inst., Inc.*,
    177 Cal. App. 4th 388 (2009) ...................................................................................4

*Jones v. Intelli-Check, Inc.*,
    274 F. Supp. 2d 615 (D.N.J. 2003) .........................................................................13

*Krinsky v. Doe 6*,
    159 Cal. App. 4th 1154 (2008) .................................................................................7

*Lieberman v. Fieger*,
    338 F.3d 1076 (9th Cir. 2003) ...............................................................................6, 7

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ....................................................................................4

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010) ....................................................................15

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................10

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ..................................................................................14

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ....................................................................................9

*O'Connor v. Franke*,
    2017 WL 1908154 (C.D. Cal. May 9, 2017) ............................................................8

**TESLA DEFS.' MOTION TO DISMISS TAC**
**CASE NO. 3:20-cv-03426-JSC**

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992) ...................................................................................7

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ...................................................................4

*In re Rigel Pharm., Inc. Sec. Litig.*,
    2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) .........................................................4

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ..............................................................................9, 12

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    86 A.D.3d 32 (N.Y. App. Div. 2011) ......................................................................7

*SEC v. McGinnis*,
    2013 WL 6500268 (D. Conn. Dec. 11, 2013) ..........................................................2

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) .................................................................................11

*Stark Trading v. Falconbridge Ltd.*,
    552 F.3d 568 (7th Cir. 2009) .................................................................................13

*Steginsky v. Xcelera, Inc.*,
    2015 WL 1036985 (D. Conn. Mar. 10, 2015) .........................................................12

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ..................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................9

*In re Tesla, Inc. Sec. Litig.*,
    477 F. Supp. 3d 903 (N.D. Cal. 2020) ...................................................................15

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .................................................................................12

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011)...............................................................14, 15

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................11

**Statutes & Rules of Court**

15 U.S.C.
    § 78t(a) ............................................................................................................... 9
    § 78u-4(b) ................................................................................................... 1, 9, 11
    § 78u-5(c) ......................................................................................................... 10

California Civil Code
    § 1708.7 ......................................................................................................... 1, 8

Fed. R. Civ. P.
    Rule 41(b) ....................................................................................................... 1, 4

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:   PLEASE TAKE NOTICE THAT** Defendants Tesla, Inc. and Elon Musk (collectively, "Tesla Defendants") hereby move this Court, pursuant to Rules 12(b)(6) and 41(b) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"), for an order dismissing Plaintiff Aaron Greenspan's Third Supplemental and Amended Complaint ("TAC") with prejudice.   The Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; the accompanying Declaration of Aarti G. Reddy ("Reddy Decl."), supporting exhibits, and the Request for Judicial Notice; all of the papers on file in this action; and such other and further evidence or argument that the Court may consider.

## STATEMENT OF RELIEF SOUGHT

The Tesla Defendants seek dismissal with prejudice of all claims asserted against them in the TAC for failure to comply with Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's TAC meets Rule 8's "short and plain" pleading requirements.

2.      Whether Plaintiff has stated a claim against the Tesla Defendants for libel per se under California law (Count II).

3.      Whether Plaintiff has stated a claim against the Tesla Defendants for violation of California Civil Code § 1708.7 (Count III).

4.      Whether Plaintiff has stated claims against the Tesla Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, and against Mr. Musk under Section 20 of the Exchange Act (Counts VII, VIII, and IX).

## MEMORANDUM OF POINTS AND AUTHORITIES

The TAC, like the three complaints before it, contains the same baseless and incendiary accusations Plaintiff has been making against the Tesla Defendants for years.   This pleading attempts to transform Plaintiff's conspiracy theories and Internet "research" into a federal lawsuit, seeks to hold the Tesla Defendants liable for the conduct of an unrelated third party (Mr. Qazi), and asserts that Mr. Musk's dismissive commentary to and about Plaintiff on the Internet somehow libeled him.   After

four attempts to plead claims against the Tesla Defendants—including with the benefit of the Tesla Defendants' motions to dismiss the First and Second Amended Complaints in hand—Plaintiff's TAC cannot survive dismissal. Despite this Court's order that Plaintiff streamline his complaint to comply with Rule 8(a), the TAC remains an overwrought, prolix, and confusing pleading that forces the reader to guess at Plaintiff's factual and legal theories. To the extent one can discern those theories at all, they fall far short of stating a claim under Rule 12(b)(6). The TAC should be dismissed with prejudice.

## I.    BACKGROUND

Plaintiff is a short-seller of Tesla stock who has dedicated years of his life to "exposing" alleged fraud by the Tesla Defendants. A self-described "data journalist," Plaintiff runs an online "legal information service," PlainSite, in partnership with his nonprofit, Think Computer Foundation. (¶¶ 25, 51, 161.) Since Plaintiff "became interested" in Tesla in 2018 (Ex. 1 at 55[1]), he has used both PlainSite and Twitter to further his short-seller agenda by putting his own misleading spin on Tesla-related news and court filings and by spreading misinformation about Tesla and Mr. Musk. (*See, e.g.*, Ex. 2 (Aug. 2018: "this stock has been manipulated by Elon Musk for days"), Ex. 4 (March 2019: alleging "a false, misleading and material tweet designed to manipulate stock price" by Tesla and Mr. Musk).)

Plaintiff's own pleadings reveal that far from relying on any alleged fraud, he formed his baseless suspicions even as he was investing in Tesla securities. (¶ 283; *see also* Ex. 5 (email accusing Mr. Musk of "lying" about numerous issues in August 2019).) And in January 2020, Plaintiff (through PlainSite) published and then tweeted a 107-page exposé about Tesla's purported misconduct, titled "Reality Check," which includes virtually every accusation in the TAC, ranging from Mr. Musk's purported ties to drug cartels to various accusations of accounting fraud. (*See* Ex. 1.) Concurrent with these efforts to "expose" the fraud at Tesla, Plaintiff repeatedly bet against Tesla stock by purchasing "put options," a short-selling strategy.[2] (¶ 283 & Ex. M.) This, of course, contradicts Plaintiff's claim that he "would not have purchased TSLA put options at the prices he did" had he known the stock price was

---

[1] All references to numbered exhibits are to the exhibits to the Reddy Declaration. References to exhibits with a letter designation are to the exhibits to the TAC, and ¶ references are to the TAC.

[2] "'Put options' give the holder the right to sell an underlying asset at a specified price (the strike price). . . . Investors buy puts if they think the share price of the underlying stock will fall[.]" *SEC v. McGinnis*, 2013 WL 6500268, at *2 n.5 (D. Conn. Dec. 11, 2013).

**TESLA DEFS.' MOTION TO DISMISS TAC**
**CASE NO. 3:20-cv-03426-JD**

1   "artificially and falsely inflated." (¶ 283.)

2        Unable to convince the public of Tesla's "fraud," Plaintiff now pursues his conspiracy theories

3   through a federal lawsuit, asserting various California state-law claims and alleging violations of the

4   federal securities laws.  For the reasons set forth below, each of those claims fail.

5   **II.     THE TAC VIOLATES THIS COURT'S ORDER MANDATING COMPLIANCE WITH
          RULE 8.**

6

7        The TAC should be dismissed with prejudice because—at 78 pages and well over 300 pages

8   of exhibits—it is hardly a "short and plain" statement, as required by Federal Rule of Civil Procedure

9   8.  The Court recently directed Plaintiff to streamline his pleadings, explaining that "[c]omplaints

10  running to 80 or more pages and accompanied by hundreds of pages of exhibits are typically not well-

11  taken under Rule 8, and may be summarily dismissed on that basis."  ECF No. 101 (hereinafter the

12  "Rule 8 Order"); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058

13  (9th Cir. 2011) (citation omitted) (affirming denial of leave to amend after plaintiff ignored order to

14  comply with Rule 8).  Despite shortening his TAC, Plaintiff has not made a genuine attempt to comply

15  with the Rule 8 Order.  "[H]undreds of page of exhibits" remain and a full 25 pages of the TAC contain

16  single-spaced allegations densely packed into charts.   Some of the reduction in page length is

17  attributable to Plaintiff's having resized or deleted photographs rather than deleting superfluous

18  allegations, and (most importantly) the TAC's claims continue to be indecipherable, denying the Tesla

19  Defendants fair notice of the claims against them.  For example, in an obvious end-run around the

20  Rule 8 Order, Plaintiff has compensated for the TAC's reduction in length by peppering it with over

21  ***one hundred*** hyperlinks that the Tesla Defendants and the Court must review in an attempt to decipher

22  his claims.  (*See, e.g.*, ¶ 271, Issues 29 (linking to the entirety of a technical article as supposed

23  evidence of scienter); 18; 24.)  Further, in the 35 categories of single-spaced "issues" that comprise its

24  securities fraud claims, the TAC challenges innumerable statements, many of which are unspecified,

25  and names as "liable parties" various non-parties whose role in any alleged wrongdoing is not

26  described.  (*See, e.g.*, ¶ 268, Issue 6; ¶ 269, Issues 7-10.)

27        The securities fraud claims also amount to incomprehensible "puzzle pleading" that

28  impermissibly leaves it "up to [D]efendants and the court to try to figure out exactly what the

**TESLA DEFS.' MOTION TO DISMISS TAC
CASE NO. 3:20-CV-03426-JD**

misleading statements are, and to match the statements up with the reasons they are false or misleading." *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1111 (N.D. Cal. 2013) (citation omitted) (noting puzzle pleading is non-compliant with Rule 8(a)). For instance, in the first three "Issues" he raises, Plaintiff alleges that ***all*** "balance sheet, income statement and statement of cash flows ('financial statement') figures and references thereto associated with 'cash and cash equivalents'" in up to two years' worth of SEC filings was fraudulent. (¶ 269, Issues 1-3.) The term "cash and cash equivalents" appears at least ***87*** times in those filings, and it is impossible for the Tesla Defendants or the Court to determine which "figures and references thereto" were misleading and why. If "extensive block quotes with multiple statements" are deficient under Rule 8, Plaintiff's rote citations to unidentified statements often buried in years of SEC filings, with little or no explanation as to what made these statements fraudulent, are more deficient still. *In re Rigel Pharm., Inc. Sec. Litig.*, 2009 WL 5125344, at *7 (N.D. Cal. Dec. 21, 2009).

In sum, the TAC is "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom [Plaintiff] [is] suing for what wrongs[.]" *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (affirming dismissal of complaints that "*including attachments*, exceeded 70 pages in length, were confusing and conclusory and not in compliance with Rule 8." (emphasis added)). Because Plaintiff has now amended his operative pleading three times, and has disregarded both the letter and the spirit of this Court's order requiring compliance with Rule 8, the Court should dismiss this action with prejudice.[3] *See* Fed. R. Civ. P. 41(b).

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL PER SE.

### A.   Mr. Musk Is Not Vicariously Liable for Mr. Qazi's Alleged Libel.

Plaintiff alleges that Mr. Musk is vicariously liable for Mr. Qazi's actions under an ostensible agency theory. (¶¶ 175, 212.) Ostensible agency only exists when the alleged principal takes some action that causes third parties to reasonably and justifiably believe that another person is acting as his agent. *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 403-04 (2009). Plaintiff alleges a handful

---

[3] The Court need not even reach any other arguments. Rule 8 "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *McHenry*, 84 F.3d at 1179.

of interactions between Mr. Musk and Tesla enthusiast Mr. Qazi that do not approach that standard.

Indeed, the only allegations about the relationship between the Qazi Defendants and Mr. Musk are a handful of online exchanges between them, their occasional appearance at the same events, that Mr. Qazi used the word "Tesla" in his Twitter handle, and that Mr. Musk signed Mr. Qazi's car. No reasonable observer would rely on these "facts" to mean Mr. Qazi was legally authorized to speak for Tesla or Mr. Musk. *See Bidart v. Huber*, 9 F. App'x 746, 748 (9th Cir. 2001) (rejecting ostensible agency theory of libel in part because "nothing suggests that the public somehow relied upon [the alleged agent's] apparent authority [to speak].").  As Plaintiff concedes, "Tesla has legions of die-hard fans," so it is hardly salient that Mr. Musk interacted with one of them on occasion.  (¶ 178.)  Indeed, given that even close friendship cannot be a basis for agency liability, the banal interactions alleged in the TAC are plainly insufficient. *See Brown v. Comcast Corp.*, 2016 WL 9109112, at *4 (C.D. Cal. Aug. 12, 2016) (to find agency authority based on mere friendship "could lead to absurd results.").

## B.   The Alleged Statements by Mr. Musk Are Not Actionable.

Mr. Musk's alleged statements assert "constitutionally protected opinions rather than verifiable facts," and thus are not actionable. *Art of Living Found. v. Does*, 2011 WL 2441898, at *7 (N.D. Cal. June 15, 2011).  To ascertain whether a statement "implies an assertion of fact," courts in the Ninth Circuit consider: (1) its broad context, which includes its "general tenor," "setting," and "format"; (2) its specific context, such as "figurative or hyperbolic language used and the reasonable expectations of the audience"; and (3) whether it is "sufficiently factual to be . . . proved true or false." *Id.* at *5.  Plaintiff has failed to plead an actionable claim under these standards.

***Mr. Musk's October 9, 2019 Email.***  Plaintiff emailed what he called a "Notice of Intent to Sue and Evidence Preservation Notice" to Mr. Musk and Mr. Qazi, copying numerous other individuals and organizations.  (¶ 61, Ex. D.)  Plaintiff demanded, *inter alia*, that Tesla "export" evidence and "shut down all social media accounts" of essentially anyone who ever worked for a Musk-affiliated company.  (*Id.*)  Mr. Musk responded to that email, tongue-in-cheek, "Does the psych ward know you have a cell phone? Just curious."  (¶ 63.)  Mr. Qazi posted Mr. Musk's comment to Twitter (¶ 65), and Plaintiff, remarkably, republished it (Ex. 1 at 55).

"California courts have refused to hold defamatory . . . an imputation of mental disorder which

**TESLA DEFS.' MOTION TO DISMISS TAC
CASE NO. 3:20-cv-03426-JD**

is made in an oblique or hyperbolic manner." *Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978), *aff'd*, 629 F.2d 586 (9th Cir. 1980).  Indeed, the Ninth Circuit has rejected defamation claims premised on the words "Looney Tunes," "crazy," "nuts," and "mentally imbalanced" because they are expressions of opinion, "constitutionally-protected by the First Amendment," and no "reasonable viewer would" interpret them as factual. *Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003).  Here, Mr. Musk plainly was not asserting that Plaintiff was hospitalized with a mental illness, but reacting to Plaintiff's campaign against Tesla, and to his emailed demand.  (¶ 63.)  Like the references in *Lieberman*, Mr. Musk's hyperbolic "psych ward" epithet was an expression of opinion, "not provable as false," and thus not actionable.  338 F.3d at 1080; *see also Correia v. Santos*, 191 Cal. App. 2d 844, 853 (1961) (reference to "insanity" did not describe "plaintiff as a person who was mentally ill but as one who was unreasonable in his actions and his demands").[4]  Plaintiff suggests that because others "harass[ed]" him on the Internet and referenced Mr. Musk's remarks, they interpreted them as factual.  (¶ 185.)  This circular logic fails, both here and where Plaintiff reprises it as to the other allegedly libelous statements he challenges.  (*See, e.g.*, ¶ 202.)  Neither legal authority nor common sense supports the proposition that an opinion, repeated frequently, must be a fact.

***Mr. Musk's October 12, 2019 Tweet.***  Plaintiff alleges that Mr. Qazi tweeted a link to a Medium article discussing Plaintiff's use of PlainSite (which is jointly run by Plaintiff's nonprofit) to criticize Tesla and "[a]ttack[] [p]eople [o]nline" and reported that a *L.A. Times* reporter had donated to Plaintiff's nonprofit.  (¶¶ 77, 82.)  Mr. Musk allegedly responded, tagging the Twitter handle of the owner of the *L.A. Times*: "are you aware that one of your senior journalists (Russ Mitchell) is openly funding a fake charity run by an online bully?"  (¶ 81.)  Mr. Musk's words, again, are not actionable.

Plaintiff appears to suggest that Mr. Musk's "fake charity" comment was a false factual assertion that the organization was not a registered 501(c)(3) nonprofit.  (¶¶ 78, 82.)  But that is not what Mr. Musk wrote.  As Plaintiff concedes, the article on which Mr. Musk was commenting ***acknowledged*** that his foundation is a "NonProfit" and urged people to submit to the IRS a form used

---

[4] Mr. Musk's response to Plaintiff's pre-litigation demand is also absolutely privileged. *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1378 (1999) (describing absolute privilege for "communications *preliminary* to a *proposed* judicial proceeding" (citation omitted)).

**TESLA DEFS.' MOTION TO DISMISS TAC**
**CASE NO. 3:20-cv-03426-JD**

to report complaints about tax-exempt organizations. (¶ 77.)  It makes no sense that the article would have encouraged readers to report abuse of 501(c)(3) status if it was also making the factual assertion that Plaintiff's foundation was not actually registered with the IRS at all.  Given this context, "fake charity" much more plausibly refers to opinions that, for instance, Plaintiff's nonprofit "[a]ttacks [p]eople [o]nline" (*id.*), does not serve a useful social purpose, has been weaponized to hurt Tesla, and thus ***should not have*** 501(c)(3) status.  All of these logical interpretations are not facts, but constitutionally protected opinions.  *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159-60 (2008) ("fake medical degree" was a non-actionable opinion); *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) ("phony" and "fake" were "unprovable" opinions).

This conclusion is reinforced by the context of Mr. Musk's statement:  a comment on Twitter, an online forum in which readers "expect to see strongly worded opinions rather than objective facts[,]" *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697 (2012), since they "give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts," *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 44 (N.Y. App. Div. 2011); *see also Eade v. InvestorsHub.com, Inc.*, 2011 WL 13323344, at *6 (C.D. Cal. July 12, 2011) (collecting cases) ("Courts generally have found that internet bulletin boards and chat room postings lend themselves to constitutional protection.").  For this reason too, the claim fails.

***Mr. Musk's October 22, 2019 Email***.  Plaintiff contends that Mr. Musk libeled him by allegedly referring to Plaintiff as having "major issues" and being "the same nut . . . that claimed he was the founder of Facebook and sued [Mark] Zuckerberg" in an email to Twitter's CEO.  (¶ 182.) This statement is not actionable.  First, for the reasons discussed above, Mr. Musk's use of "nut" and "major issues" is hyperbole that cannot reasonably be interpreted as a factual assertion that Plaintiff is mentally ill.  *Lieberman*, 338 F.3d at 1079–80.  Second, that plaintiff claimed to have founded a company or filed a lawsuit does not inherently "expose[] [him] to hatred, contempt, ridicule, or obloquy" and thus is not libel *per se*.  *Barnes-Hind, Inc. v. Super. Ct.*, 181 Cal. App. 3d 377, 386–87 (1986).  Plaintiff contends that Mr. Musk omitted various details of his claims against Facebook (¶ 194), but nothing supports the inference that those omissions injured Plaintiff.  Third, the statements regarding Facebook and Zuckerberg are "substantially true."  *Summit Bank*, 206 Cal. App. 4th at 697.

Plaintiff claims that he developed "The Facebook" and that he began and settled legal proceedings against Facebook—none of which materially differs from the alleged statement.  (¶¶ 194, 227.)

*Mr. Musk's July 3, 2020 Tweet*.  Plaintiff claims that Mr. Musk's references on Twitter to him as "crackers, bananas, barky & ten cards short of a full deck" are libelous because they promoted a factual "narrative that Plaintiff is mentally ill."  (¶¶ 182, 200.)  But again, this was a hyperbolic opinion statement on a platform where hyperbole is the norm, and thus protected by the First Amendment.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL STALKING.

California Civil Code § 1708.7(a) requires Plaintiff to plead with "independent corroborating evidence" that the Tesla Defendants (1) "engaged in a pattern of conduct the intent of which was to follow, alarm, . . . or harass" Plaintiff, resulting in reasonable fear for his or a family member's safety or substantial emotional distress; (2) intentionally "made a credible threat"; and (3) that Plaintiff "clearly and definitively" demanded that the Tesla Defendants stop that pattern of conduct.

Here again, the TAC principally alleges conduct by Mr. Qazi for which the Tesla Defendants are not liable.  (¶¶ 205-11.)  As for the Tesla Defendants, Plaintiff offers nothing beyond "conclusions" that "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiff claims, without any supporting facts, that Tesla (1) hires "convicted felons" and others to "monitor" "critics and whistleblowers," and (2) "[u]pon information and belief . . . ordered that Plaintiff be surveilled, investigated and/or baselessly referred to law enforcement."  (¶¶ 215-217.)  He identifies no harassing "conduct" by the Tesla Defendants, describes no "credible threat" that could produce "reasonable fear," alleges no demand that the Tesla Defendants stop the unspecified conduct, and omits "independent corroborating evidence" of any kind.  Cal. Civ. Code § 1708.7(a).  Plaintiff's lack of specificity, as shown by his pleading on "information and belief," requires dismissal.  *See Blazheiev v. Ubisoft Toronto Inc.*, 2018 WL 3417481, at *8 (N.D. Cal. July 13, 2018) (no claim because plaintiff did not explain "*how* Defendants had stalked him"); *O'Connor v. Franke*, 2017 WL 1908154, at *6 (C.D. Cal. May 9, 2017) (no claim where Plaintiff alleged that "she 'hope[s] [d]iscovery will give her answers' as to" alleged stalking (alterations in original; citation omitted)).

## V.   PLAINTIFF FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS.

The federal securities laws protect an innocent investor who suffers losses by trading in

reliance on representations that are later proven false or misleading.  Not surprisingly, Plaintiff—a short-seller who for years has bet against Tesla and tried to persuade the public that the Tesla Defendants were committing fraud—does not state a viable claim for securities fraud.  To state a Rule 10b-5 claim, a plaintiff must allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citation omitted).  Importantly, Plaintiff must satisfy Rule 9(b)'s and the PSLRA's heightened pleading standards.  *Id.* at 414.  Plaintiff's claims fail on virtually all of these elements.[5]

### A.    The TAC Fails to Plead Falsity.

Even after three amendments, none of the alleged "Issues" pled in the TAC remotely resemble viable securities fraud claims.[6]  First and foremost, for the reasons explained above, Plaintiff's securities claims are improper puzzle pleadings and should be dismissed on that basis alone.  But even setting aside their Rule 8 deficiencies, Plaintiff has not satisfied the PSLRA because he has failed to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); 15 U.S.C. § 78u-4(b)(1)-(2).  At times Plaintiff does not even *try* to identify any allegedly actionable statement. For example, Plaintiff pleads that "[e]ach statement made by a proxy for Defendants Musk and Tesla who did not disclose their full relationship to investors" was misleading.  (¶ 271, Issue 17.)  But Plaintiff does not allege what those statements were, when and where they were made, which "proxies" made them, or any credible basis that these various media personalities are "proxies" for the Tesla Defendants.  (*Id.*)  Elsewhere, Plaintiff confusingly asserts that Mr. Musk made a misleading statement that production of the Tesla Semi truck would begin in 2019, but lists the date of the alleged misstatement as June 10, ***2020***.  (¶ 270, Issue 28.)  Because Plaintiff does not identify the challenged statement, but merely provides a hyperlink to a news article that attributes numerous remarks to Mr. Musk (*id.*), the Tesla Defendants are left with no way to even respond to Plaintiff's claim.

---

[5] Because Plaintiff has failed to plead a primary securities law claim, his Section 20(a) claim fails.  *See* 15 U.S.C. § 78t(a); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

[6] Due to space constraints, the Tesla Defendants cannot individually address the myriad defects in each of Plaintiff's "Issues," but reserve the right to respond in their Reply to individual issues raised by Plaintiff in his Opposition.

Moreover, to the extent any specific statement can be deciphered in the TAC's 35 "Issues," Plaintiff fails to offer any coherent explanation of fraud. Instead, he supports his claims by pleading (for example) that one Issue has "attracted considerable notice" from other commentators (¶ 270, Issue 11) and that "[i]nconsistency is a recurring theme throughout Tesla's financials." (¶ 271, Issue 20.) These assertions and others like them are mere conclusory allegations that do not even survive the *Iqbal* standard, and clearly defy the PSLRA's heightened pleading requirements.

Plaintiff also attacks statements that are plainly protected by the PSLRA safe harbor or otherwise non-actionable. The PSLRA's safe harbor extends to forward-looking statements (1) that are accompanied by "meaningful cautionary statements," *or* (2) that are not "made with actual knowledge" of their falsity. 15 U.S.C. §§ 78u-5(c)(1)(A)(i), (c)(1)(B)(i); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). Plaintiff challenges Mr. Musk's statement that his "best guess for demand of Model 3 worldwide" was "in a strong economy . . . on the order of 700,000 or 800,000 units a year" but as low as "40% less" in a recession. (¶ 271, Issue 21.) This "best guess" for future demand is a quintessential forward-looking statement, and it was preceded by cautionary language that Tesla would "make forward-looking statements" for which "[a]ctual events or results could differ materially[.]" (*See* Ex. 7 at 4.) That ends the inquiry, but in an unavailing effort to show Mr. Musk knew his prediction to be false, Plaintiff cites a 2019 tax application that he claims shows that Tesla "never expected to deliver more than 250,000 Model 3 vehicles per year[.]" (¶ 271, Issue 21.) But Plaintiff does not plausibly allege that these "deliveries" were equivalent to the "demand" that Mr. Musk was projecting. In any event, he does not allege facts supporting his conclusory assertion that Mr. Musk was "personally aware" of this application. (*Id.*) Plaintiff alleges only that Mr. Musk approved Tesla's purchase orders, then details his opinion that Mr. Musk "routinely makes up false figures" and must have known of the purported discrepancy because he "has discussed [tax subsidies] repeatedly on his Twitter account[.]" (*Id.*; *cf. Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter[.]"). *See also* ¶ 271, Issue 23 & Ex. 6 at 40 (attacking forward-looking statement regarding robotaxis accompanied by cautions that "we won't have regulatory approval everywhere").)

10

**B.    The TAC Fails to Raise a Strong Inference of Scienter.**

To adequately allege scienter under the PSLRA's heightened pleading standards, Plaintiff "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999); *see also* 15 U.S.C. § 78u–4(b)(2).  Although a court should view scienter allegations "holistically, even such a comprehensive perspective . . . cannot transform a series of inadequate allegations into a viable inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).  After three rounds of amendments, Plaintiff does not come close to meeting these standards.

*First*, many of Plaintiff's allegations of scienter merely repackage his speculative claims of falsity.  For instance, Plaintiff alleges an unpled June 10, 2020 "statement" by Mr. Musk that production of Tesla's Semi vehicle would begin in 2019 was false." (¶ 271, Issue 28.)  He then alleges Mr. Musk made this statement with scienter because the Tesla Defendants "have made false promises about the Tesla Semi for years."  (*Id.*)  This allegation and others like it are tautological:  Plaintiff speculates the statement was false and then contends that Mr. Musk knew it was false because it was false.  (*See, e.g.*, ¶ 269, Issue 10 (alleging that scienter for false statements about Tesla vehicles' residual value was shown because "Defendant Musk has made numerous false statements about Tesla vehicles appreciating in value.").)  This is hardly "factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

*Second*, the only purported "evidence" of scienter in the TAC is Plaintiff's strained interpretation of social media posts, news articles, and filings in other lawsuits.  These allegations do not survive "the strong mandate in the PSLRA to avoid speculation" and "conjecture," *In re Cornerstone Propane Partners, L.P., Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005), much less to "create [] an inference of scienter more cogent or compelling than an alternative innocent inference," *Zucco*, 552 F.3d at 999–1000.  For instance, Plaintiff cites a handful of Twitter posts about accidental purchases as the basis for his speculation that Tesla "intentionally designed" its mobile app "to encourage accidental one-tap purchases[.]"  (¶ 268; Issue 4.)  Even taking these anecdotal complaints as true, they reveal nothing about the Tesla Defendants' state of mind or their intent

**TESLA DEFS.' MOTION TO DISMISS TAC
CASE NO. 3:20-cv-03426-JD**

regarding revenue recognition.  (*See also* ¶ 270, Issue 12 (alleging scienter based solely on fact that "Tesla has been sued" by others).)

> **Third**, Plaintiff's "motive" and "opportunity" allegations are mostly personal attacks on Mr. Musk's character.  Plaintiff claims, *inter alia*, that Mr. Musk "routinely makes up false figures"; was "motivated" by a belief that "lying is necessary;" and has "animosity toward short-sellers" and "links to Mexican drug cartels." (¶¶ 271, Issue 21; 278-279.)  The remainder of his motive allegations are precisely the generalizations that the Ninth Circuit has rejected, including those related to Mr. Musk's "compensation package," "Tesla's constant need for outside cash," and desire "to give the illusion of profitability" or "quell investor fears."  (¶ 271, Issues 19, 27, ¶¶ 277-278); *see Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("motive to boost the company's profitability and stock prices . . . are not 'specific' or 'particularized'"); *Rigel Pharm.*, 697 F.3d at 884 (allegations of "higher salaries, bonuses, and stock options" inadequate).

### C.  The TAC Fails to Plead Reliance.

> To plead reasonable reliance, Plaintiff must allege that "but for the fraud, [he] would not have engaged in the transaction at issue[.]"  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  Far from relying on the alleged fraud, Plaintiff chose to short-sell Tesla securities **because** he suspected the company was "the largest Ponzi scheme in history" (¶ 3) and believed the stock would drop when the "truth" came out.  That is the opposite of reliance. Plaintiff's claims fail for this independent reason.

> In securities fraud cases, courts recognize a rebuttable presumption of reliance on the integrity of market prices where a plaintiff plausibly alleges that the stock was traded in an efficient market.  *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).  The logic of this presumption is straightforward: if a company commits fraud and its stock goes up, an unsuspecting investor who purchases stock "rel[ies] on the price of the stock as a reflection of its value," and by extension, relies on the fraud.  *Id.* at 244 (citation omitted).  But it is equally straightforward that, when an investor instead trades based on the belief that defendant's fraud **has already tainted the market price**, he is not relying on the belief that the market "reflects all public, material information."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).  "Courts do not presume reliance where a plaintiff voluntarily transacts with her deceivers after detecting the alleged fraud," *Steginsky v. Xcelera, Inc.*, 2015 WL 1036985, at *7

(D. Conn. Mar. 10, 2015), or where she "affirmatively believed that [the fraud] had been . . . withheld from the market[,]" *Gilford Partners, L.P. v. Sensormatic Elecs. Corp.*, 1997 WL 570771, at *8 (N.D. Ill. Sept. 10, 1997) (holding that short-seller was not entitled to fraud on the market presumption).

This is consistent with the well-settled legal rule that "no one who saw through [an alleged] fraud," as Plaintiff believed he had, "would be able to sue for fraud, for he could not have relied directly or indirectly" on the allegedly fraudulent statement. *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009); *see also Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 634 (D.N.J. 2003) (plaintiff failed to plead reliance where "[i]t was [the plaintiff's] hope that when others acquired the same awareness of [the defendant's] past misstatements, there would be heavy selling resulting in a drop in the market and profit on his short position" (citation omitted)).

Applying these principles here, it is clear that Plaintiff has failed to plead reliance. Plaintiff alleges that he knew about the purported fraud described in the TAC since at least October 2018.[7] (¶ 283.) Far from relying on any statements by the Tesla Defendants, Plaintiff was complaining that Tesla's stock price was "manipulated" and that "Elon Musk ha[d] a habit of communicating false information" as early as August 2018—***before he purchased his first put options in September 2018***.[8] Plaintiff publicly complained about the same fraud alleged in the TAC even as he was actively purchasing put options over the next two years. (*See* Ex. M; Ex. 1 (January 7, 2020 "Reality Check" report cataloging, *inter alia*, alleged safety issues, misclassifications of vehicle repairs, and connections to Pablo Escobar).) Perhaps the clearest indication of Plaintiff's belief that he could profit by exposing Tesla's "fraud" is that he bought two sets of puts in March 2020, ***months after*** he, by his own admission, first suspected that ***every*** Issue in the TAC was fraudulent and had already published those claims in *Reality Check*. (¶ 283.) Plaintiff cannot plausibly have "relied" on Tesla's supposed fraud, nor may he avail himself of the fraud on the market presumption. Even if the presumption were

---

[7] Plaintiff's TAC provides a chart purporting to detail his "aware[ness]" of Tesla's allegedly fraudulent practices in relation to his put option transactions, and alleges that his "knowledge . . . was acquired gradually over time" such that "at no time when Plaintiff purchased TSLA put options was Plaintiff fully aware of Defendants' fraud." (¶ 283.) But Plaintiff's "awareness" is not at issue—reasonable reliance is. By confirming that he purchased put options long after he first suspected Tesla was committing fraud, Plaintiff's own allegations ***refute*** any inference of reasonable reliance.

[8] *See* Exs. 2, 3 (August 2018 tweets from Plaintiff's @PlainSite account asserting that "Elon Musk has a habit of communicating false information," and "[Tesla] stock has been manipulated by Elon Musk for days").

available to Plaintiff here, it would be conclusively rebutted because his belief that Tesla was engaged in fraud "severs the link between the alleged misrepresentation and . . . his decision to trade[.]" *Basic*, 485 U.S. at 248.

### D. The TAC Fails to Plead Loss Causation.

Finally, Plaintiff cannot allege a "causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered[.]" *Daou Sys.*, 411 F.3d at 1025. Plaintiff offers a highly speculative theory of loss causation that posits that the Tesla Defendants have been committing various acts of fraud for years, and, if that fraud had ever been revealed, Tesla's stock would have declined and Plaintiff's put options would not have expired worthless. (¶ 282.)

*First*, the TAC fails to allege the linchpin of loss causation: any form of corrective disclosure that "provided new information to the market" related to the challenged statements that was "not yet reflected in the company's stock price." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 795 (9th Cir. 2020)). Plaintiff alleges that Tesla's stock price has been "artificially inflated for years, causing the expiration of TSLA put options that otherwise would have been valuable." (¶ 282.) But the Supreme Court rejected this very theory in *Dura Pharmaceuticals, Inc. v. Broudo*, holding that plaintiffs cannot demonstrate loss causation merely by showing that "the price **on the date of purchase** was inflated because of the misrepresentation." 544 U.S. 336, 342 (2005) (citation omitted). In so holding, the Court explained that "an initially inflated purchase price *might* mean a later loss," but that "is far from inevitably so," because such a loss could be the result of other factors. *Id.* The Court thus affirmed that loss causation requires a showing that plaintiff sustained losses **because the truth came to light** about a misrepresentation. *Id.* at 342–43. In other words, because "it is the underlying facts concealed by fraud that affect the stock price[,]" some revelation of either the fraud or related facts, and a resulting loss, is necessary to establish loss causation. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). Plaintiff pleads none.

*Second*, courts have recognized that the factual predicate of Plaintiff's claim—that the alleged fraud concealed **negative** information—is incompatible with pleading loss causation in analogous short-selling contexts. A short-seller stands to make money when a company's stock price goes down and lose money when the stock price goes up. *See Wilamowsky v. Take-Two Interactive Software,*

**TESLA DEFS.' MOTION TO DISMISS TAC
CASE NO. 3:20-cv-03426-JD**

*Inc.*, 818 F. Supp. 2d 744, 753 (S.D.N.Y. 2011).  These principles establish the only way that Plaintiff could plausibly plead loss causation: (1) that Tesla concealed ***positive*** information when he purchased his put options; (2) the revelation of that positive information drove the stock price ***up***; and (3) his put options expired worthless as a result.  Instead, Plaintiff posits that Tesla was concealing negative information and Tesla's stock price would eventually drop if that information was revealed.  When no such revelation came and his put options expired, he lost money, and brought this lawsuit.[9]  But "allowing [Plaintiff] to state a claim under these circumstances would permit a short seller in ***any*** standard misrepresentation case to either win big in the marketplace" when the truth came out and the stock dropped "or win in court by transform[ing] a private securities action into a partial downside insurance policy." *Id.* at 759 (internal quotation marks and citation omitted).  That is precisely why, in every other case permitting a securities claim by short-sellers, the court has required those plaintiffs to plead a corrective disclosure.

## VI.   PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION.

Plaintiff's market manipulation claim must be dismissed because he has failed to allege reliance, loss causation, or scienter, as set forth above.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101-02 (2d Cir. 2007).  Further, Plaintiff fails to specifically allege any manipulative conduct attributable to the Tesla Defendants and that was "intended to mislead investors by artificially affecting market activity."  *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010) (citation omitted).  Even assuming the Qazi Defendants' alleged conduct (*see* ¶¶ 286-287) constitutes market manipulation, Plaintiff asserts no basis for holding the Tesla Defendants vicariously liable.  Nor can he rely on his Rule 10b-5 allegations; a market manipulation claim "cannot be based solely upon misrepresentations or omissions." *ATSI Comm'cns*, 493 F.3d at 101.

## VII.   CONCLUSION

For the foregoing reasons, the TAC should be dismissed with prejudice.

---

[9] Short-sellers have sometimes pled loss causation "by alleging that false statements forced investors to cover transactions at a significant loss" as a result of the fraud's price inflation. *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 933 (N.D. Cal. 2020). But this is not Plaintiff's theory.

Dated:  March 12, 2021

COOLEY LLP

By: */s/ Aarti Reddy*
　　　Aarti Reddy

Attorneys for Defendants
Tesla, Inc. and Elon Musk

245369450

**TESLA DEFS.' MOTION TO DISMISS TAC
CASE NO. 3:20-CV-03426-JD**