Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

AARON GREENSPAN,

    Plaintiff,

      v.

OMAR QAZI, SMICK ENTERPRISES, INC.,
ELON MUSK, and TESLA, INC.,

    Defendants.

Case No. 3:20-cv-03426-JD

**PLAINTIFF'S OPPOSITION TO QAZI DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD SUPPLEMENTAL AND AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CIV. PROC. CODE § 425.16**

Date: TBD
Time: TBD
Courtroom: 11, 19th Floor

Judge: Hon. James Donato
Complaint Filed: May 20, 2020
TAC Filed: February 12, 2021

1

2

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF ISSUES ................................................................................... 2

III.  FACTUAL BACKGROUND ................................................................................ 2

IV.   ARGUMENT ........................................................................................................ 2

    A.   Qazi Defendants' Frivolous "Anti-SLAPP" Special Motion to Strike ............................ 2

        1.   The Special Motion to Strike May Not Be Heard In Federal Court Because California Code of Civil Procedure § 425.16 Conflicts with the Federal Rules of Civil Procedure ........................................................ 2

        2.   Qazi Defendants' Anti-SLAPP Motion Plainly Contests Facts Alleged in the TAC, Invoking Rule 56 ............................................................ 3

        3.   Since Qazi Defendants Cannot Identify Any Legitimate Issue of Public Interest, They Attempt but Fail to Manufacture One ............................................ 4

    B.   Qazi Defendants' Motion To Dismiss Pursuant to Rule 12(b)(6) ................................... 8

        1.   Plaintiff Is Not a Public Figure or Limited Purpose Public Figure ........................... 8

        2.   Qazi Defendants Cannot Plead "Hyperbolic" "Opinion" When They Insist Their Statements Are "100% True" and "True Facts" ...................................... 8

        3.   Plaintiff Has Adequately Pled Stalking Pursuant to California Civil Code § 1708.7 .................................................................. 13

        4.   Plaintiff Has Adequately Pled Copyright Infringement ......................................... 14

        5.   Plaintiff Has Adequately Pled Violations of the DMCA ........................................ 14

        6.   Plaintiff Has Adequately Pled Market Manipulation ............................................. 15

V.    CONCLUSION .................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**

*Balla v. Hall*, Cal.App.4th Case No. D074804 (January 6, 2021) .................................... 9

*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 422, 425 ............................. 10

*Bolton v. City of Berkeley*, Case No. 19-cv-05212-WHO, 2019 WL 6250927, at *4 (N.D. Cal. Nov. 22, 2019) ................................................................... 13

*Capp v. County of San Diego*, 940 F. 3d 1046 (9th Cir. 2019) ......................................... 8

*Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................... 8

*Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1149 (2012) ................................................ 11

*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [1 Cal.Rptr.3d 390] ................................................................................................................ 6

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC et al*, Case No. 19-55348 (9th Cir. December 18, 2020) ............................................................................................................................ 14

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997).. 14

*Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).. 10

*Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1105 (C.D. Cal. 2015) ............ 14

*Ernst v. Kauffman*, Case No. 5:14-cv-00059 (D. Vermont April 20, 2016) ................................ 4

*Ferguson v. Waid*, Case No. 2:17-cv-01685-RSM (W.D. Washington May 11, 2018) .............. 11

*FilmOn.com, Inc. v. Doubleverify, Inc.*, 7 Cal. 5th 133, 150 (2019) .............................................. 6

*Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 190-191 ................................ 5

*Grenier v. Taylor*, 234 Cal. App. 4th 471, 481–82 (2015) ................................................. 5, 7

*Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ................................ 8

*Hoang v. Tran*, No. B302608, 60 Cal. App. 3d 513, 274 Cal. Rptr. 3d 567, 585-86 (2021) ......... 5

*Hooshmand v. Griffin*, Cal.App.1st Case No. A147316 (April 17, 2017) .................................... 10

*Information Control v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980)............. 8

*La Liberte v. Reid*, Case No. 19-3574 (2nd Cir. July 15, 2020) .................................................. 2

*Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 673 (10th Cir.), *cert. denied sub nom. AmeriCulture, Inc. v. Los Lobos Renewable Power, LLC*, 139 S. Ct. 591, 202 (2018) ................................................................................................................................ 3

*Makaeff v. Trump University, LLC*, 715 F. 3d 254 (9th Cir. 2013) .............................................. 3

*McSherry v. Block*, 880 F.2d 1049, 1052 n. 2 (9th Cir. 1989) ..................................................... 10

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) .................................................. 3

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) .............................................. 8

*Obsidian Finance Group, LLC v. Cox*, 740 F. 3d 1284, 1293 (9th Cir. 2014) ........................... 12

*Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1234 n. 5 (N.D. Cal. 2015) ..................... 10

*Penrose Hill, Limited v. Mabray*, Case No. 4:20-cv-01169-DMR (N.D. Cal. August 18, 2020) .. 7

*Planned Parenthood Federation of Am., Inc. v. Center for Medical Progress*, 890 F.3d 828, 833 (9th Cir. 2018).................................................................................................................... 3, 4

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477 (1977)..................................................... 15

*Todd v. Lovecruft*, Case No. 4:19-cv-01751-DMR (N.D. Cal. January 6, 2020) .......................... 3

*Todd v. Lovecruft*, Case No. 4:19-cv-01751-DMR (N.D. Cal. July 29, 2019) .............................. 7

*Tradeshift, Inc. v. BuyerQuest, Inc.*, Case No. 3:20-cv-01294-RS (N.D. Cal. May 20, 2020) .... 12

*Ugorji v. County of Lake*, Case No. 4:20-cv-01448-YGR (N.D. Cal. July 6, 2020) ................. 5, 7

*Underwager v. Channel 9 Austl.*, 69 F.3d 361 (9th Cir. 1995) ..................................................... 10

*Vern Sims Ford v. Hagel*, 42 Wn. App. 675, 683, 713 P.2d 736, 743 (1986) ............................. 11

*Warner Bros. Entertainment, Inc. v. RDR Books*, 575 F.Supp.2d 513, 542 (S.D.N.Y. 2008) ..... 14

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (Ct. App. 2003) ........................................ 4

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004) ................................................................ 6

*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th
      1561 ............................................................................................................................... 5, 6

## **Statutes**

18 U.S.C. § 1623 ........................................................................................................................ 15

California Code of Civil Procedure § 425.16 ............................................................................... 2

California Code of Civil Procedure § 425.16(c)(1) ...................................................................... 4

California Code of Civil Procedure § 425.16(e)(3) ...................................................................... 4

California Code of Civil Procedure § 425.16(g) .......................................................................... 3

## **Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 8

## **Other Authorities**

"Maria Ressa: Pushing back against online attacks,"
      https://www.youtube.com/watch?v=khYcd9bNPu4&t=125s .................................................. 13

California Bill Analysis, A.B. 1548 Assem., 5/19/1993 ............................................................. 13

Northern District of California Guideline for Professional Conduct 8 ....................................... 15

Standing Order for Civil Cases Before Judge James Donato ...................................................... 15

1

## I.     INTRODUCTION

2

3           Defendant Musk's decades-long grift has attracted all sorts of devoted followers and

4    defenders from the naïve to the merely greedy, but arguably none is more devoted than

5    Defendant Omar Qazi, whose conduct is part "Joker" (the Batman villain), part "Infowars" (the

6    Alex Jones conspiracy show).  If Twitter is the "virtual 'shooting gallery'" that Qazi and Smick

7    Enterprises, Inc. ("Qazi Defendants") claim, it is worth noting that shooting galleries have strict

8    safety rules.  To defend his idol, Defendant Qazi was banned for life for violating these rules by

9    targeting unarmed individuals, after which he *broke back in* by abusing a felon's identity.  This is

     part of a pattern.  Defendant Qazi was criminally charged for possession of a fake ID in 2012.

10          More recently also charged with felony narcotics possession, Defendant Qazi broadcasts

11   corporate propaganda and non-stop false accusations to an audience of approximately 20,000 on

12   Twitter (despite the lifetime ban), where he has focused his obsessive attention on Plaintiff and

13   Plaintiff's family.  On social media, to promote Defendant Tesla, he presents nonsense as

14   incontrovertible fact and implores his followers to demand government action to root out

15   Plaintiff's supposed "evil," a reference to Plaintiff's journalistic efforts.  Defendant Qazi offers

16   his followers "100%" "truth" and one "true story" after another, which they believe are

17   "#FACTS."  TAC ¶ 166.  In court, counsel spins this as "opinion" and "rhetoric," as if no person

18   would believe it.  Yet thousands do, as disinformation has infected virtually every aspect of

19   societal discourse, and millions of people believe and act upon conspiracy theories that would

20   have once been thought unimaginable.  The harm is real.

21          Taking his cues from Defendant Musk, Defendant Qazi believes that laws are for

22   others—just not him.  Both share an unsupported, oversimplified, absolutist view of the First

23   Amendment for themselves, but that view vanishes as soon as anyone else claims the right to

24   speak.  They also never tire of distraction.  In their motion, Qazi Defendants cherry-pick isolated

25   statements on Twitter (many by *other people*) to mislead the Court into believing that their

26   disinformation campaign has been innocuous and silly, while evading discussion of what is

27   actually written on the pages of the TAC.  Plaintiff has lived in fear and with considerable

28

anxiety for *years* due to Qazi Defendants' actions, including while this action has been pending. The Court should deny Defendants' Motions to Dismiss and the Special Motion to Strike under California Code of Civil Procedure ("CCP") § 425.16 (the "Anti-SLAPP Motion") in full.

## II.   STATEMENT OF ISSUES

1. Whether Plaintiff has stated a claim against Qazi Defendants for TAC Counts I, III, IV, V, VI (Defendant Qazi only), and VIII.

2. Whether Qazi Defendants' Anti-SLAPP Motion may be heard in federal court.

3. Whether the Anti-SLAPP Motion addresses a legitimate public issue directly connected to the Statements in the TAC.

## III.   FACTUAL BACKGROUND

The Complaint in this case was filed May 20, 2020.  ECF No. 1.  The FAC was filed on July 2, 2020.  ECF No. 20.  On August 3, 2020, Plaintiff filed a motion to clarify the applicability of the Private Securities Litigation Reform Act ("PSLRA") and lift any discovery stay.  ECF No. 60.  On August 7, 2020, the Court ordered that the PSLRA automatic discovery stay shall apply until any motions to dismiss are decided.  ECF No. 63.  Plaintiff filed the SAC on August 26, 2020 and the TAC on February 12, 2021.  ECF Nos. 70, 103.  Qazi Defendants filed their latest Anti-SLAPP Motion and Motion to Dismiss on March 12, 2021.  ECF No. 107.

## IV.   ARGUMENT

### A.   Qazi Defendants' Frivolous "Anti-SLAPP" Special Motion to Strike

#### 1.   The Special Motion to Strike May Not Be Heard In Federal Court Because California Code of Civil Procedure § 425.16 Conflicts with the Federal Rules of Civil Procedure

Several circuit courts, including the Ninth Circuit, have held that some or all of CCP § 425.16 conflicts with the Federal Rules of Civil Procedure ("Rules").  The number of circuit courts that have ruled that various state anti-SLAPP motions cannot be heard in federal court is growing at a steady clip.  "The Fifth, Eleventh, and D.C. Circuits hold that they are inapplicable in federal court on the ground that they conflict with Federal Rules of Civil Procedure 12 and 56." *La Liberte v. Reid*, Case No. 19-3574 (2nd Cir. July 15, 2020).  As of mid-2020, the

Second Circuit is now added to this list.  "We hold (for the first time) that California's anti-SLAPP statute is inapplicable in federal court because it conflicts with Federal Rules of Civil Procedure 12 and 56."  *Id*.  In addition, the Tenth Circuit has ruled that New Mexico's anti-SLAPP statute "simply does not define the scope of any state substantive right or remedy . . . . the statute is procedural in all its aspects."  *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 673 (10th Cir.), *cert. denied sub nom. AmeriCulture, Inc. v. Los Lobos Renewable Power, LLC*, 139 S. Ct. 591, 202 (2018).

As part of a rapidly evolving stance,[1] the Ninth Circuit has adopted a hybrid approach to handling anti-SLAPP motions, having ruled that federal courts should "review anti-SLAPP motions to strike under different standards depending on the motion's basis."  *Planned Parenthood Federation of Am., Inc. v. Center for Medical Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  Motions that contest facts must be treated as motions for summary judgment under Rule 56; those that do not must be evaluated as motions to dismiss under Rule 12(b)(6).[2]  *Id* at 834.

Today, a notable circuit split has formed while Ninth Circuit precedent has shifted ever closer to yet another outright mandate that anti-SLAPP special motions to strike cannot be heard in federal court due to the inherent conflicts, some of which the Ninth Circuit has already acknowledged.  "*Metabolife* also explained that…§ 425.16(g), issuing an automatic stay of discovery, conflicted with the Federal Rules of Civil Procedure."  *Planned Parenthood* at 833.

### 2.    Qazi Defendants' Anti-SLAPP Motion Plainly Contests Facts Alleged in the TAC, Invoking Rule 56

Qazi Defendants begin their motion(s) by stating plainly in their Statement of Facts that they "dispute Plaintiff's factual allegations."  ECF No. 107 at 8.  Accordingly, under the "hybrid

---

[1] For a detailed examination of the Ninth Circuit's evolution on this "murky" matter, see *Todd v. Lovecruft*, Case No. 4:19-cv-01751-DMR (N.D. Cal. January 6, 2020).

[2] This notably fragmented approach follows dissents by Judges Kozinski and Paez in *Makaeff v. Trump University, LLC*, 715 F. 3d 254 (9th Cir. 2013), in which Judge Kozinksi wrote, "Federal courts must ignore state rules of procedure because it is Congress that has plenary authority over the procedures employed in federal court, and this power cannot be trenched upon by the states," while Judge Paez wrote, "I agree that California's anti-SLAPP statute is 'quintessentially procedural,' and its application in federal court has created a hybrid mess that now resembles neither the Federal Rules nor the original state statute."  *Id*. at 273, 275.

mess" of *Planned Parenthood*, the Court must evaluate the anti-SLAPP motion as a motion for summary judgment.[3]  Yet Plaintiff has had no opportunity to conduct discovery despite the Ninth Circuit's mandate that plaintiffs in such situations "must" be granted discovery.  ECF No. 63. *See* the contemporaneously filed Declaration of Aaron Greenspan ("Greenspan Declaration").

Qazi Defendants' legal strategy is a "frivolous" gimmick under CCP § 425.16(c)(1) intended to make Plaintiff, the victim of concerted campaign of harassment, pay his harasser's *already paid for* legal fees on account of mandatory fee-shifting.  ECF No. 50.  This should be recognized for exactly what it is: a cynical abuse of the Court to achieve the exact opposite of what the California legislature intended to promote by passing the anti-SLAPP statute.  Citizens like Plaintiff must be permitted to speak about matters of vital importance to society, such as abusive billionaires and corporations who bend laws, free of constant libel and harassment.

### 3.    Since Qazi Defendants Cannot Identify Any Legitimate Issue of Public Interest, They Attempt but Fail to Manufacture One

Most of Qazi Defendants' statements in the TAC were made in a public forum.  That does not mean that any of them in any way pertain to an "issue of public interest" as required by CCP § 425.16(e)(3).  Qazi Defendants deliberately conflate Plaintiff's research on Defendants Tesla and Musk, which *does* concern issues of public interest, with their own *ad hominem* attacks on Plaintiff himself ("criticizing, and satirizing vocal critics" on page 6 of their motion), which are "a mere effort 'to gather ammunition for another round of [private] controversy'" (bracketed text in original).  *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (Ct. App. 2003).  *See also Ernst v. Kauffman*, Case No. 5:14-cv-00059 (D. Vermont April 20, 2016) (denying anti-SLAPP motion involving *ad hominem* statements).  Fabrications such as "Aaron Greenspan is a serial rapist" (Statement No. 10) do not in any way further the public interest.

Instead, Qazi Defendants cling to the hope that a brief period of media attention paid to Plaintiff a decade ago, or perhaps an unrelated lawsuit closed in 2014, qualify him as being in the

---

[3] Qazi Defendants ask the Court to misconstrue *Planned Parenthood* and sidestep summary judgment analysis by ignoring the word "only" in their footnote 1.  Motion at 4.  By their own black-and-white admission that they challenge the underlying facts, Qazi Defendants challenge *more* than "**only** the legal sufficiency of a claim" (emphasis added).  *Planned Parenthood* at 833.

"public eye" today regarding falsely alleged "criminal" acts and sexual perversions, the subject of the Statements.  They rely on their Exhibits C from 2007, D from 2012, and E from another country[4] to justify their libel and harassment in the United States from 2019 to present, even as none of their Statements at issue "contributed to the debate" on Tesla's business practices whatsoever.[5]  *Ugorji v. County of Lake*, Case No. 4:20-cv-01448-YGR (N.D. Cal. July 6, 2020).  Plaintiff's life is so far afield from the types of accusations leveled on the Smick Sites that Qazi Defendants literally had to concoct their own fake "victim" "testimony" to make it *appear* that the public actually had any interest in a person most had never heard of.  TAC ¶¶ 96, 125.

In the end, "a defendant charged with defamation cannot, through his or her own conduct, create a defense by making the claimant a public figure."  *Grenier v. Taylor*, 234 Cal. App. 4th 471, 481–82 (2015).  Thus, Qazi Defendants' citation to *Hoang v. Tran*, No. B302608, 60 Cal. App. 3d 513, 274 Cal. Rptr. 3d 567, 585-86 (2021) is inapposite.  Unlike Mr. Hoang, Plaintiff is not a public figure, not a billionaire, and most importantly, has been repeatedly accused of *specific* crimes by Qazi Defendants that readers *have* interpreted as fact.  Qazi Defendants have even erroneously referred to specific transactions and a specific IRS form in connection with one of Plaintiff's supposed "crimes"—the opposite of *Hoang*, where the court cited to *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 190-191 to point out that the language regarding Mr. Hoang was "broad, unfocused and wholly subjective."  TAC ¶¶ 104, 166.

Qazi Defendants' attempt to define their "narrow dispute by its slight reference to the broader public issue"—and here, the references to the broader public issue of Tesla's business practices in the Statements are all but non-existent—represents a prime example of the "oft-rejected, so-called 'synecdoche theory of public issue in the anti-SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.'"  *World Financial Group, Inc. v. HBW*

---

[4] While Qazi Defendants' Exhibit E is an article from 2019, it is from the United Kingdom as Plaintiff is relatively unknown and no American media covered his testimony there.  While Exhibit F is an article that briefly quoted Plaintiff in 2019, it is not about him.  Their Exhibit G is an article that neither quotes Plaintiff nor concerns Plaintiff directly in any way.

[5] Counsel even went so far as to perjure himself when trying to connect *this* action to the media previously.  He later admitted to "some errors" and "confusion" in writing.  ECF No. 86 at 6.

*Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561 [92 Cal.Rptr.3d 227].  *See also Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [1 Cal.Rptr.3d 390].  "[T]he focus of the anti-SLAPP statute must be on the specific nature of the speech rather than on generalities that might be abstracted from it. [Citation.]"  *World* at 1572.  While Qazi Defendants twist themselves into a pretzel to suggest that the public interest issue here is actually "criticizing, and satirizing vocal critics," a clever euphemism for bullying and disinformation, they still completely fail to explain how their particular Statements advance the public's understanding of even *that* purported debate.  That is because their Statements are "too tenuously tethered to the issues of public interest…, and too remotely connected to the public conversation about those issues."  *FilmOn.com*, *supra*, at 140.  "'[S]ome degree of closeness'" is required.  *Id*. at 150.  Labeling Qazi Defendants' stream of lies targeting Plaintiff, to which Plaintiff has rarely responded, a "heated online debate" meets neither the "closeness" threshold connecting the Statements to any actual issue of public interest, nor the definition of the word "debate," since the discussion has been almost entirely one-sided.[6]

    To accept Qazi Defendants' argument on page 6 of its motion that "there is widespread public interest in the [libelous] Statements" *because* they "were read by a wide audience" is to accept two plainly false premises: first, that "widespread interest" and "public interest" are the same;[7] and second, that anyone shouting lies and hate sufficiently loudly in a public square automatically makes it "of public interest."  If dangerous enough, the fact that statements are fabrications may itself be of public interest, but that is a separate matter.  "[I]t is not enough that the statement refer to a subject of *widespread* public interest; the statement *must in some manner itself contribute to the public debate*."  *FilmOn.com*, 7 Cal. 5th at 150 (quoting *Wilbanks v. Wolk*,

---

[6] While Qazi Defendants' Exhibit H notes that the @WholeMarsBlog Twitter account had posted "73.8K Tweets" between May 2020 and February 3, 2021, Plaintiff's personal account is locked and the @PlainSite account has posted half as many tweets in roughly ten years since October 2011, with only a very few involving Defendant Qazi to highlight his propaganda efforts and to flatly refute his lies.  This hardly constitutes "prolonged hyperbolic crossfire," per their motion.

[7] This theory of "public interest" is backward as it relates to journalism and book authorship.  Here, Plaintiff sustained *ad hominem* attacks over a public safety issue.  TAC ¶ 28.  Journalists and authors "inject themselves" into public debates daily simply by writing about them.  For that to serve as a blanket waiver for libel and harassment claims would defeat the legislature's intent.

---

121 Cal. App. 4th 883, 898 (2004)).” *Penrose Hill, Limited v. Mabray*, Case No. 4:20-cv-01169-DMR (N.D. Cal. August 18, 2020). Qazi Defendants’ citation to their Exhibit G, nominally to support the notion that Tesla’s critics are of public interest across the board, in fact demonstrates the opposite. The article states that “Elon Musk has regularly taunted these critics.” The focus is on Musk, a billionaire CEO, because *his* actions (here, harassing unnamed others) are of interest. Their Exhibit H similarly contains nothing to suggest that anything posted by Qazi Defendants is of public interest. ECF No. 107-1 at 26. “[P]rivate information is not turned into a matter of public interest simply by its communication to a large number of people.” *Grenier* at 482.[8]

     Qazi Defendants’ argument that Plaintiff attempted to thrust himself into the public eye by informing journalists of the threat to sue is similarly unavailing. Three individuals were CCed on the warning letter, TAC Exhibit D (ECF No. 103-4), because Defendants had also been harassing *those specific individuals*, and continue to do so. TAC ¶ 81. To date, none of the journalists involved (Lora Kolodny and Russ Mitchell) have written about this lawsuit. On April 5, 2021, *Defendant Qazi* even asked, “Where’s the story about what aaron greenspan has done?” Even were such a story to materialize, the facts of this case cannot make Plaintiff a public figure.

     Furthermore, even though Qazi Defendants call Plaintiff a “criminal” and variations thereof, there are no criminal proceedings pending against Plaintiff, nor have there ever been.

> “Even if the topic was relevant, defendants fail to show that Rotow’s statements were made in connection with any *particular* criminal matter… These allegations are insufficient to show that Rotow’s statements related to any issue in a criminal proceeding prosecuted by the District Attorney’s office or under consideration by the courts. Accordingly, defendants fail to show protected activity under section 425.16(e)(2)” (emphasis in original).

*Ugorji*, *supra*. Qazi Defendants clearly fail to meet their burden in the first step of the anti-SLAPP analysis, and so their frivolous motion must be denied, with fees awarded to Plaintiff.

---

[8] When arguing for the plaintiff in *Todd v. Lovecruft*, Case No. 4:19-cv-01751-DMR (N.D. Cal. July 29, 2019), counsel for Qazi Defendants wrote, “Lovecruft cannot turn her private dispute with Todd regarding Zcash into a public matter by simply publishing rape accusations on the internet.” Counsel went on, stating, “‘Public interest’ does not equate with mere curiosity” and “The assertion of a broad and amorphous public interest that is generally connected to a specific dispute is not sufficient.” Counsel further argued, “Finally, a defendant cannot, through their own conduct, create a defense by making the plaintiff a public figure.”

**B.     Qazi Defendants' Motion To Dismiss Pursuant to Rule 12(b)(6)**

Qazi Defendants move to dismiss Plaintiff's TAC pursuant to Rule 12(b)(6).  The Ninth Circuit has "emphasized that *pro se* pleadings, such as the FAC in this case, are to be liberally construed on a motion to dismiss."  *Capp v. County of San Diego*, 940 F. 3d 1046 (9th Cir. 2019).  "A pro se complaint should not be dismissed unless the court finds it 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)."  *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016).

**1.     Plaintiff Is Not a Public Figure or Limited Purpose Public Figure**

Plaintiff has already noted that there is a public debate about Defendant Tesla's unlawful business practices separate and apart from the TAC's Statement Nos. 1-38.  In the context of these Statements by Qazi Defendants, Plaintiff is neither a public figure nor a limited purpose public figure.  Plaintiff did not inject himself into or otherwise solicit this unwanted discussion, which has no bearing on any public debate.  Furthermore, Qazi Defendants have acted with malice, with Defendant Qazi having admitted from the start that he "hadn't researched many details," even as he continued to post a cascade of false statements about Plaintiff in an effort "to fuck with him" due to Defendant Qazi's "out of control revenge impulse."  TAC ¶ 59.

**2.     Qazi Defendants Cannot Plead "Hyperbolic" "Opinion" When They Insist Their Statements Are "100% True" and "True Facts"**

Qazi Defendants rely on the notion that their Statements are "non-actionable rhetoric, opinion, and hyperbole."[9]  Motion at 8.  Nonsense.  Ultimately at the behest of and with the explicit approval of Tesla Defendants, Qazi Defendants engaged in a coordinated disinformation campaign to destroy Plaintiff's reputation by convincing others that Plaintiff was a mentally ill

---

[9] Unlike the circumstances in *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999), Plaintiff contests that Qazi Defendants' statements were made as part of a "heated" "debate."  Since Plaintiff did not address most of the statements, there was no debate at all.  Readers could not expect "emphatic language on both sides" because there was only one side; when Plaintiff did respond, he used succinct, calm verbiage.  *Information Control v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980).  Furthermore, the court in *Nicosia* concluded that "Accusations of criminal activity, like other statements, are not actionable if the underlying facts are disclosed."  *Id.* at 1103.  Qazi Defendants never disclosed underlying facts as there are none.

sexual predator, had violated (as opposed to *secured*) a restraining order, that his work was unreliable, and that he posed a danger to society for having accurately uncovered the identity of Defendant Qazi himself after Qazi began harassing journalists and other critics of Defendant Musk using several fake social media accounts.  For these violations and others (including copyright infringement and impersonation), Defendant Qazi was banned from Twitter.

The entire point of a disinformation campaign is to present lie *as fact*.  Whether telling his followers that he would reveal the "***true facts*** about who [Plaintiff] really is" (emphasis added) or through essays with titles like "The ***true story*** behind the @WholeMarsBlog Twitter account" (emphasis added), or Twitter handles such as "@tesla_truth," Qazi Defendants have always claimed to be sharing the truth.  TAC ¶ 60.  On October 9, 2020, Defendant Qazi posted on Twitter another "true story" containing false statements about Defendant Musk's history as an entrepreneur.  One reader responded to this with an animated image in which a man held up a sign containing the word "#FACTS."  TAC ¶ 166.  It is impossible for Qazi Defendants to maintain that their statements are "opinion" and "hyperbole" in this Court when they have publicly defended those same statements as factual, true, and worth filing complaints to federal government agencies about on an ongoing basis for years.  TAC ¶¶ 78, 166.

Qazi Defendants insist that *everything* is "rhetoric and hyperbole," including falsely accusing Plaintiff of sending death threats from a non-existent server in New Jersey.  California courts have recognized the assertion of truth as a dispositive factor in determining liability for libel claims, even when hyperbolic speech is invoked as a defense.  "Hall contends that courts 'frequently find . . . name calling, exaggeration, and ridicule to be nonactionable speech.'  But the insults used by Hall (e.g. 'a fraud') were in reference to the specific deal he alleged existed among plaintiffs; they were not the gist of his statements."  *Balla v. Hall*, Cal.App.4th Case No. D074804 (January 6, 2021).  In fact, speech on the internet is frequently defamatory:

> "Hall argues that '`online blogs and message boards are places where readers
> expect to see strongly worded opinions rather than objective facts.`'  But even
> were we to accept the premise, online speech can still be defamatory.  Only the
> Facebook posts would appear to constitute speech of that type here, and Hall took
> steps to lend special credence to his claims by creating the Jones persona and

reiterating his assertions in multiple publications. (See *Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 429 [fact that speech is 'broadcast across the Internet by an anonymous speaker does not ipso facto make it nonactionable opinion'].)"

*Id.* Another California appellate court reached the same conclusion:

"[W]e reject Griffin's assertion that her reviews were merely 'hyperbolic critiques,' consisting solely of nonactionable 'opinions and conclusions.' While Griffin freely utilized loaded language and many of her assertions are nonactionable opinion, we note she, herself, essentially proclaimed on more than one occasion that what she said was true… Griffin cannot repeatedly assert she was setting the factual record straight, and then turn around and claim she was lampooning Hooshmand with factually groundless opinion. As the trial court concluded, some of her assertions may reasonably be understood as statements of fact which are probably *[sic]* true or false.

[A]s we explained in *Bently*, not all Internet postings can—or should—be excused as unchecked railing that any reasonable person would ignore. (*Id.* at pp. 431- 433.) Nor does the fact a poster attempts to hide in anonymity categorically exempt him or her from the reach of defamation law. (*Id.* at p. 433.) When false factual statements on the Internet are injurious to their target, the law provides recourse."

*Hooshmand v. Griffin*, Cal.App.1st Case No. A147316 (April 17, 2017).[10]

Evidence abounds that real people believed the messages spewed by the Qazi Defendants' disinformation campaign, often because they were delivered without any attribution whatsoever. Qazi Defendants established a "general tenor" on Twitter, their personal websites, and on the Smick Sites, of conveying consistent, factual information over the course of almost two years.[11] *Underwager v. Channel 9 Austl.*, 69 F.3d 361 (9th Cir. 1995). Like the most advanced state disinformation units, and as alluded to in *Balla*, they used various tactics to ensure that readers would take those false statements seriously: repetition; numerous fake

---

[10] While this is an unpublished opinion, "Federal courts may consider depublished California state court decisions. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ('[W]e may consider unpublished state decisions, even though such opinions have no precedential value'); *McSherry v. Block*, 880 F.2d 1049, 1052 n. 2 (9th Cir. 1989) ('While the depublication order may constitute a factor as to whether we are bound by the Appellate Department's construction, we do not necessarily find that factor decisive.')." *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1234 n. 5 (N.D. Cal. 2015).

[11] The continuing violations doctrine should apply to Statement No. 1 given the 37 other enumerated statements closely related in subject matter and time cited in the TAC.

---

accounts (to amplify the message); websites without attribution (to eliminate the distraction of

the content being any identifiable person's opinion); a mix of true statements about unrelated

topics and false statements; humor; and calls to act, via the filing of government forms.  The

Smick Sites, such as the website dedicated to the fake "Victims of Aaron Greenspan

Foundation," offered (and still offers) no identity of or contact information for anyone.[12]  The

statements on the home page, presented as facts with minimal fanfare—the only graphics, a logo

and Plaintiff's family—simply state that Plaintiff has "victims" who have provided "testimony"

regarding a litany of supposed "crimes": "harassment, intimidation, extortion, sexual assault,

identity theft, or cyberstalking."  TAC ¶¶ 89, 96, 125.  The sites also encourage action: joining a

mailing list and/or alerting federal authorities.  This is more than "hyperbole" or "opinion."

> "Mr. Waid asserts that '[a]ccusations of criminal activity, even in the form of
> opinion, are not constitutionally protected. . . . No First Amendment protection
> enfolds false charges of criminal behavior.'  Dkt. #73 at 15 (citing *Vern Sims
> Ford*, 42 Wn. App. at 683).  ***Plaintiff admits that her statements were not
> intended to be taken as hyperbole, but as true factual statements***…  The Court
> agrees with Mr. Waid's analysis and concludes as a matter of law that Ms.
> Ferguson made statements of fact, not opinion, when she stated that Mr. Waid
> engaged in fraudulent and criminal activity" (emphasis added).

*Ferguson v. Waid*, Case No. 2:17-cv-01685-RSM (W.D. Washington May 11, 2018).

Qazi Defendants previously cited to *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1149

(2012), but even that court had to acknowledge, "The only statement which might arguably fall

outside the scope of nonactionable opinion or epithet is the statement Mateo is a criminal."  *Id*. at

1150.  Qazi Defendants have stated that Plaintiff is a "criminal" dozens of times, even though

Plaintiff—unlike Darren Chaker (and unlike Defendant Qazi)—has no criminal record at all.

Qazi Defendants' statements falsely alleging that Plaintiff possesses child pornography

(Statement No. 6) and is a "serial rapist" (Statement No. 40) are distinguished from Qazi

Defendants' citations because these particular false allegations involve serious, potentially life-

shattering crimes for both victims and perpetrators.  Lodging false allegations of such crimes is

---

[12] Before Plaintiff correctly identified Defendant Qazi as the person behind the network of fake
accounts, this was also true for his various Twitter accounts, including @tesla_truth.  TAC ¶ 28.

obviously different in "general tenor" from mere adolescent insults involving sexual matters. Qazi Defendant's attempt to spin the "general tenor" of their Statements now using seven select quotes[13] out of thousands belies the fact that reasonable viewers found them to be factual, with readers reacting by comparing Plaintiff to various murderers and violent criminals.

These circumstances are also distinguishable from those in *Obsidian Finance Group, LLC v. Cox*, 740 F. 3d 1284, 1293 (9th Cir. 2014). In *Obsidian*, the critical domain name "obsidianfinancesucks.com" was obviously unofficial and the website's appearance was far less professional than Defendant Qazi's, which uses a standard WordPress template. Defendant Qazi also enjoys the blessing of a billionaire, literally used the word "truth" in one Twitter handle, and on his Smick Sites still gives the genuine appearance that "victims" have created a non-profit organization dedicated to protecting the public from Plaintiff. The defendant in *Obsidian* wrote in "somewhat run-on[,] almost 'stream of consciousness'-like sentences," while Defendant Qazi has written hundreds of proper paragraphs, however false. *Id.* at 1294. The sites are not similar.

That Defendant Qazi once (after a delay) qualified *one* of his statements falsely alleging the crime of rape did nothing to correct the dozens of other similar statements, at least one flagging the @TwitterSafety account, falsely connecting Plaintiff to "child pornography," "sexual assault," "sexual harassment," and "creepy" "stalk[ing] and harass[ing] college aged girls." See TAC ¶ 89 and Statement Nos. 1, 3, 12, 19, 26, 29.

If this degree of coordinated, provably false disinformation, resulting in real damage, is exempt from civil liability because it can be considered "opinion" or "hyperbole", then democracy itself is at risk. These tactics are *exactly* the same as those used by the Russian Federation and other state actors to interfere in elections and other matters of national security. They successfully target the very "reasonable people" that Qazi Defendants deliberately ignore.[14]

---

[13] Some of these quotes appear to be from non-party individuals other than Defendant Qazi who have no involvement in this litigation. It is unclear why they are included in the motion at all.

[14] Only by actively ignoring the words on the TAC's pages can one argue that Qazi Defendants' statements are not libelous, yet it would hardly be the first time for counsel. "[The] motion ignores critical portions of the complaint" is how Judge Seeborg described the situation before denying counsel's motion to dismiss in *Tradeshift, Inc. v. BuyerQuest, Inc.*, Case No. 3:20-cv-01294-RS (N.D. Cal. May 20, 2020) on the same day this action was initially filed.

### 3.   Plaintiff Has Adequately Pled Stalking Pursuant to California Civil Code § 1708.7

Qazi Defendants pair a non-precedential Ninth Circuit opinion with bill analysis to suggest that stalking is equivalent to invasion of privacy, "which deals almost exclusively with the 'publication' of otherwise private information, pictures, or material."  California Bill Analysis, A.B. 1548 Assem., 5/19/1993.  It is not.  Each depends upon different sets of facts.

Beyond merely writing the Statements intended to harm Plaintiff, Qazi Defendants "engaged in a pattern of conduct the intent of which was to follow, alarm, or harass the plaintiff."  *Bolton v. City of Berkeley*, Case No. 19-cv-05212-WHO, 2019 WL 6250927, at *4 (N.D. Cal. Nov. 22, 2019).  Qazi Defendants say that this pattern posed no "credible threat;" Plaintiff's Declaration and the TAC say otherwise.  Plaintiff even reported Defendant Qazi to law enforcement more than once, fearing both being framed for crimes involving child pornography and violent attacks by Qazi Defendants' readership.  TAC ⁋ 211.  The claim incorporates the TAC's preceding text by reference and therefore contains far more than a "formulaic" or "conclusory" recitation of facts describing the conspiracy to violate the active restraining order described in TAC ⁋ 26 and attached as TAC Exhibit B.  *See also* TAC ⁋⁋ 96, 106, 133, 166.

The notion that Plaintiff's fear is "not plausible" because on a select few occasions he defended himself from the most dangerous falsehoods lodged by Qazi Defendants is simply wrong.  Qazi Defendants' actions, including contacting Plaintiff's family, have been terrifying.  After the TAC was filed, Defendant Qazi authored an essay (featuring a bizarre, altered photograph of Plaintiff) entitled, "I'm Afraid Of What Aaron Greenspan And His Charity Will Do To Silence Me," styling Plaintiff again as a likely murderer.  In the words of internationally recognized journalist Maria Ressa, the victim of ceaseless on-line attacks, "The end goal of these attacks is to dehumanize the target.  That sets the stage for violence."  *See* "Maria Ressa: Pushing back against online attacks," https://www.youtube.com/watch?v=khYcd9bNPu4&t=125s.

Qazi Defendants' charge of "online warfare" lacks any factual or other basis.  Motion at 11.  As TAC Exhibit C shows, Plaintiff has hardly *ever* responded to Qazi Defendants' provocations, which is why there is not a single example in the record of Plaintiff describing

Defendant Qazi in terms comparable to how Qazi has described Plaintiff.  Such examples do not exist.  Counsel may be confused, as their clients made many posts while *impersonating* Plaintiff.

### 4.    Plaintiff Has Adequately Pled Copyright Infringement

In an attempt to argue that copying over 10% of *Authoritas* with an explicitly-stated aim to usurp sales is "fair use," Qazi Defendants conflate "parody (in which the copyrighted work is the target) and satire (in which the copyrighted work is merely a vehicle to poke fun at another target)."  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc*., 109 F.3d 1394, 1400 (9th Cir. 1997).  They do not bother to argue that their supposed "book reviews" are authored in the style of the original work, as parodies are, because this is untrue; rather, they explicitly admit that Qazi Defendants engaged in non-protected satire.  Motion at 6.  "The effort to treat *Boldly* as lampooning *Go!* or mocking the purported self-importance of its characters falls flat."  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC et al*, Case No. 19-55348 (9th Cir. December 18, 2020).

*Authoritas* is an original, creative work.  This is "a case where the addition of minimal narration, an introduction, or text did not change the essential character of the original work."  *Equals Three, LLC v. Jukin Media, Inc*., 139 F. Supp. 3d 1094, 1105 (C.D. Cal. 2015).  This is further a case "used 'to get attention' or to 'avoid the drudgery in working up something fresh.'"  *Id*.  With over 30 excerpts of pages, and almost 100 more copied-and-pasted excerpts, Qazi Defendants copied far more than was necessary to criticize Plaintiff or his writing.  In the Ninth Circuit, a "parodist is permitted a fair use of a copyrighted work if it takes no more than is necessary to 'recall' or 'conjure up' the object of his parody."  *Dr. Seuss v. Penguin* at 1400.  Qazi Defendants cannot even claim to "add[] a productive purpose to the original material."  *Warner Bros. Entertainment, Inc. v. RDR Books*, 575 F.Supp.2d 513, 542 (S.D.N.Y. 2008).  They simply duplicated it wholesale to use as another tool of harassment, and for commercial purposes at that: discrediting Plaintiff to boost Defendant Tesla's stock price.  This weighs heavily against fair use.  Overall, Qazi Defendants' posts of *Authoritas* fail the fair use test.

### 5.    Plaintiff Has Adequately Pled Violations of the DMCA

Qazi Defendants confuse the Purple Shirt Photograph and *Authoritas*, which are separate,

separately registered, mutually exclusive works.  TAC Exhibit H.  Their motion contains no

argument at all to explain why copying of the Purple Shirt Photograph constitutes fair use.  Qazi

Defendants copied the Purple Shirt Photograph multiple times, before and after Copyright

Management Information was affixed and embedded.  It does not follow that "continuing

infringement" theory applies to DMCA violations, as the DMCA requires a *separate* notification

and series of actions and/or responses for each and every digital infringement notice, which

might take place on any number of servers or domains.  In this case, in an attempt to escape

United States jurisdiction, Qazi Defendants infringed Plaintiff's copyright on various servers

across Eastern Europe and the former Soviet Union, leading to an unnecessary cat-and-mouse

game that remains unresolved.  TAC ¶¶ 244, 247.  Each time Qazi Defendants changed servers,

it required extra deliberate effort to infringe, as well as effort by Plaintiff to file a DMCA notice.

### 6.    Plaintiff Has Adequately Pled Market Manipulation

"Congress meant to prohibit the full range of ingenious devices that might be used to

manipulate securities prices."  *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477 (1977).

Qazi Defendants' collection of pseudonymous social media accounts were established for the

express purpose of increasing Tesla, Inc.'s stock price and harassment of anyone that might

impede that objective.  In their motion, Qazi Defendants admit at least the former.

## V.    CONCLUSION

Qazi Defendants have failed to show why Plaintiff's claims should not go forward.  Their

Motion to Dismiss and Anti-SLAPP Motion should be denied and sanctions should be

imposed.[15]  After the filing of the TAC, Qazi Defendants *further* willfully deleted images of e-

mail messages from Defendant Musk and his counsel they had intentionally shared on the

@WholeMarsBlog Twitter account, and they have refused to explain why.

---

[15] After admitting in ECF No. 86 to "ERRORS" in the Declaration of Karl S. Kronenberger
made under penalty of perjury, Qazi Defendants now make two more factually inaccurate
statements in their motion on page 10, lines 8-9: Plaintiff's product was ultimately *not* "shut
down" by the Harvard College administration; and in the TAC Plaintiff did not "admit" that it
was.  Such conduct violates 18 U.S.C. § 1623, Northern District of California Guideline for
Professional Conduct 8 and paragraph 23 of the Standing Order for Civil Cases in this Court.

1

Dated: April 8, 2021                    Respectfully submitted,

2

3

4

5

Aaron Greenspan
956 Carolina Street

6

San Francisco, CA  94107-3337
Phone: +1 415 670 9350

7

Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28