1
2
3
4

Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

5
6
7

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

8
9
10
11
12
13
14
15

AARON GREENSPAN,

    Plaintiff,

       v.

OMAR QAZI, SMICK ENTERPRISES, INC.,
ELON MUSK, and TESLA, INC.,

    Defendants.

Case No. 3:20-cv-03426-JD

**PLAINTIFF'S OPPOSITION TO
TESLA DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S
THIRD SUPPLEMENTAL AND
AMENDED COMPLAINT**

Date: TBD
Time: TBD
Courtroom: 11, 19th Floor

16
17

Judge: Hon. James Donato
Complaint Filed: May 20, 2020
TAC Filed: February 12, 2021

18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF ISSUES ........................................................................................... 2

III. FACTUAL BACKGROUND ........................................................................................ 2

IV. ARGUMENT ................................................................................................................. 3

    A.  Plaintiff Has Adequately Pled Libel Per Se and Civil Stalking ........................................ 4

        1.  Vicarious Liability For Libel and Civil Stalking by Omar Qazi ..................... 4

        2.  TAC Statement No. 39: "Does the psych ward know..." ........................... 6

        3.  TAC Statement No. 40: "…a fake charity run by an online bully?" ........................ 8

        4.  TAC Statement No. 41: "Aaron Greenspan…the same nut…" ............................... 8

        5.  TAC Statement No. 42: "Greenspan is crackers, bananas…" ................................ 9

    B.  Plaintiff Has Adequately Pled California Civil Code § 1708.7 Stalking ......................... 9

    C.  Plaintiff Has Adequately Pled Section 10(b) and Rule 10b-5 Claims ........................... 10

        1.  Plaintiff Has Adequately Pled Falsity ....................................................... 10

        2.  Tesla Defendants' Scienter Has Already Been Established ..................................... 11

        3.  Plaintiff Has Adequately Pled Reliance ..................................................... 12

        4.  Plaintiff Has Adequately Pled Loss Causation .......................................... 14

    D.  Plaintiff Has Adequately Pled Manipulation and a Section 20(a) Violation ................. 15

V.  CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Art of Living Foundation v. Does 1-10*, Case No. 5:10-cv-05022-LHK
   (N.D. Cal. June 15, 2011) ........................................................................................ 8

*Auto Auction, Inc. v. Riding Motors*, 187 Cal. App.2d 693, 10 Cal.Rptr. 110, 113-14 (1960) ...... 5

*Capp v. County of San Diego*, 940 F. 3d 1046 (9th Cir. 2019) .......................................... 4

*CAR Transp. Brokerage v. Darden Restaurants*, 213 F. 3d 474 (9th Cir. 2000) .......................... 5

*Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................. 4

*Correa v. Quality Motor Co.*, 118 Cal. App.2d 246, 257 P.2d 738, 741 (1953) ......................... 5

*Crinkley v. Holiday Inns*, Inc., 844 F. 2d 156, 166 (4th Cir. 1988) .................................. 5

*Doe v. Uber Technologies, Inc.*, Case No. 3:19-cv-03310-JSC (N.D. Cal. November 22, 2019).. 6

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 346, 342 (2005) ............................................... 15

*Eisenberg v. Alameda Newspapers*, Inc., 74 Cal. App. 4th 1359 (1999) ....................................... 7

*Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605
(N.D. Cal. 2019) ............................................................................................................... 15

*Gienko, et al v. Padda, et al*, Case No. 1:00-cv-05070 (N.D. Ill. February 27, 2002) .................. 3

*Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) ......................................................... 12

*Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ............................... 4

*Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978), aff'd, 629 F.2d 586
(9th Cir. 1980)....................................................................................................................... 6

*In Re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-YGR (N.D. Cal. June 2, 2020).. 3

*In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) ...................................................... 15

*In re Diamond Foods, Inc. Securities Litigation*, Case No. 3:11-cv-05386-WHA
(N.D. Cal May 6, 2013) ....................................................................................................... 13

*In re Global Crossing Ltd. Securities Litigation*, 313 F. Supp. 2d 189, 212 ................................. 3

*In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010).......... 15

*In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC
(N.D. Cal. April 15, 2020) ................................................................................................... 15

*JL v. Children's Institute, Inc.*, 177 Cal. App. 4th 388, 403 (2009) ............................................ 5

*Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 747,
69 Cal.Rptr.2d at 643 ........................................................................................................... 5

*Kelley v. R.F. Jones Co.*, 272 Cal.App.2d 113, 77 Cal.Rptr. 170, 174 (1969) ............................ 5

*Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159 (2008) .............................................................. 8

*Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003)......................................................... 9

*Mattox v. News Syndicate Co.*, 176 F.2d 897, 901 & n. 5 (2 Cir.), *cert. denied*, 338 U.S. 858,
70 S.Ct. 100, 94 L.Ed. 525 (1949) ........................................................................................ 6

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ............................................................... 4, 8

*Mineworkers' Pension Scheme v First Solar, Inc.*, 881 F.3d 750 (9th Cir. 2018)...................... 15

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
320 F.3d 920, 934 n.12 (9th Cir. 2003) ............................................................................... 13

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111
(9th Cir. 2013)..................................................................................................................... 15

*Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) ......................... 8

*Purple Mountain Trust v. Wells Fargo & Company*, Case No. 3:18-cv-03948-JD
(N.D. Cal. January 10, 2020) ................................................................................................ 3

*Sawicki v. Stitch Fix, Inc.*, Case No. 3:18-cv-06208-JD (N.D. Cal. August 9, 2019) .................. 3

*Silberg v. Anderson*, 786 P. 2d 365, 50 Cal.3d 205, 212 (Cal. Sup. Ct. 1990) ............................. 7

*Tomerlin v. Canadian Indem. Co.*, 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571, 575 (1964)... 5

*United States Commodity Futures Trading Commission v. Paron Capital Management, LLC et al*, Case No. 4:11-cv-04577-CW (N.D. Cal. November 5, 2012) ............................................... 2

*United States Securities and Exchange Commission v. Musk*, Case No. 1:18-cv-08865-AJN (N.D. Cal. October 16, 2018)....................................................................................... 2

*United States Securities and Exchange Commission v. Tesla, Inc.*, Case No. 1:18-cv-08947-AJN (N.D. Cal. October 16, 2018)....................................................................................... 2

*Unsworth v. Musk*, Case No. 2:18-cv-08048-SVW-JC (C.D. Cal. May 10, 2019) ...................... 4

*Wetzel v. Gulf Oil Corp.*, 455 F.2d 857, 863 (9th Cir. 1972)........................................................ 6

*Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744 (S.D.N.Y. 2011) ...... 14

**Statutes**

California Civil Code § 1708.7 ...................................................................................................... 9

California Civil Code § 2300 ......................................................................................................... 5

Private Securities Litigation Reform Act .............................................................................. 3, 10

**Rules**

Civil Local Rule 7-4(a)(4) ............................................................................................................ 2

Civil Local Rule 7-5(a) ................................................................................................................. 2

Federal Rule of Civil Procedure 8 ......................................................................................... 3, 10

Federal Rule of Civil Procedure 9(b) ........................................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 3

**Other Authorities**

*Fiddler on the Roof* (Joseph Stein (1964))................................................................................... 7

1

## I.      INTRODUCTION

2

3          "Baseless" "conspiracy theories" is how attorneys for Defendant Tesla, Inc. describe this

4   action, which alleges that Defendant Elon Musk and his company ("Tesla" and together, "Tesla

5   Defendants") artificially pumped Tesla's stock price to astronomical highs for years, making

6   Musk the richest man on Earth for a time.  Yet since just before the filing of the Third

7   Supplemental and Amended Complaint ("TAC"), Tesla's market capitalization has decreased by

8   *$200 billion*.  Tesla is still supposedly worth $644 billion—even with its CEO admitting that he

9   brought the company within weeks of bankruptcy (and covered it up with false SEC filings).

10         In retrospect many will say it was obvious that Tesla was always a Madoff- or Enron-

11  class fraud built on utopian nonsense and lies, but it has taken years of slow revelations for the

12  truth to emerge.  On July 5, 2018, "Is this real?" was the question concerning Tesla's financial

13  metrics posed not by a journalist, not by a Wall Street analyst, not by a short-seller, and not by an

14  anonymous social media critic, but by Tesla Senior Financial Analyst Scott Smith to Tesla

15  Production Engineering Manager Michael Bowling.  Defendant Tesla's internal financial

16  systems were so unreliable, so full of deliberately bad data intended to cover up hundreds of

17  millions of dollars of waste, and so poorly designed, that even Tesla's own analysts did not trust

18  their own numbers.  The company's current Vice President of Internal Audit even called the

19  reliability of inventory figures "very concerning."  TAC Exhibit A (ECF No. 103-1) at 51, 29.

20         "Is this real?" is a question that must be asked about every single financial metric

21  involving Tesla Defendants.  This action examines only a few.  Faced with the only litigation

22  thus far that cuts to the core of Tesla's fraud, counsel insists that the TAC is a "puzzle pleading"

23  that not even Harvard-trained lawyers can decipher.  It is not.  The TAC complies with federal

24  law, the Federal Rules of Civil Procedure ("Rules") and this Court's precedent to clearly allege

25  what happened in reality: Tesla's executives did not just make one false statement to paper over

26  one bad quarter—they made hundreds to deflect attention from a scam of truly epic proportions.

27  Preaching "zero emissions" and pseudoscientific nonsense—including the notable falsehood that

28  COVID-19, now responsible for the deaths of millions, is no more dangerous than the common

cold—Defendant Musk forged an enterprise so unsustainable, so unprofitable, and so doomed that it required fraud from top to bottom to keep up the illusion, and crucially, the stock.

To defend this pattern of deceit, counsel now peppers their motion with false statements of fact, highly misleading verbiage and inapposite precedent (much of it confusing short and long stock sales), all of which violates paragraph 23 of the Standing Order for Civil Cases Before Judge James Donato ("Paragraph 23").  On some pages, Tesla Defendants forget that the Private Securities Litigation Reform Act ("PSLRA") exists—just before they insist that it is all that matters.  Most of the TAC receives no response at all, because the documented facts alleged therein are incontrovertible.  Accordingly, the Court should deny Tesla Defendants' motion.

## II.    STATEMENT OF ISSUES

At issue is whether Plaintiff has stated a claim against Tesla Defendants for each claim in the TAC, Counts II, III, VII, VIII, and IX (Defendant Musk only).

## III.    FACTUAL BACKGROUND[1]

On September 28, 2019, among other concessions to settle charges of securities fraud brought by the United States Securities and Exchange Commission ("SEC"), Defendants Musk and Tesla each signed a consent decree and agreed to pay a $20 million fine.  *United States Securities and Exchange Commission v. Musk*, Case No. 1:18-cv-08865-AJN (N.D. Cal. October 16, 2018); *United States Securities and Exchange Commission v. Tesla, Inc.*, Case No. 1:18-cv-08947-AJN (N.D. Cal. October 16, 2018).  On PlainSite, Plaintiff posted public records concerning Tesla Defendants from various federal and state courts and government agencies, including filings authored by Tesla Defendants themselves, among millions of other records.

---

[1] Civil Local Rule 7-4(a)(4) states that "a brief or memorandum of points and authorities filed in support…must contain: A succinct statement of the relevant facts."  For the third time, Tesla Defendants' Motion to Dismiss lacks any such section, substituting mere "Background" for "*Factual* Background."  Heading aside, Civil Local Rule 7-5(a) "requires that 'factual contentions' made in support of a motion 'must be supported by a declaration and by appropriate references to the record.'"  *United States Commodity Futures Trading Commission v. Paron Capital Management, LLC et al*, Case No. 4:11-cv-04577-CW (N.D. Cal. November 5, 2012).  Yet counsel's declaration, ECF No. 108-1, contains no statements or references to the record to, for example, support supposed "facts" about Plaintiff, for example, "spreading misinformation," being "unable to convince the public," or pursuing "conspiracy theories."  The Court should strike and/or disregard this section of the brief, or the entire brief, as non-compliant.

1    The Complaint in this case was filed May 20, 2020.  ECF No. 1.  The FAC was filed on

2    July 2, 2020.  ECF No. 20.  On August 3, 2020, Plaintiff filed a motion to clarify the

3    applicability of the Private Securities Litigation Reform Act ("PSLRA") to this action and lift

4    any applicable discovery stay.  ECF No. 60.  On August 7, 2020, the Court ordered that the

5    PSLRA automatic discovery stay shall apply until any motions to dismiss are decided.  ECF No.

6    63.  Plaintiff filed the SAC on August 26, 2020 and the TAC on February 12, 2021.  Tesla

7    Defendants filed their latest Motion to Dismiss on March 12, 2021.  ECF No. 108.

8    **IV.    ARGUMENT**

9        Tesla Defendants move to dismiss the TAC pursuant to Federal Rules of Civil Procedure

10   8 and 12(b)(6).[2]  Central to deciding the motion is the role of the PSLRA in this case.  Neither

11   Congress nor the Supreme Court intended for the PSLRA to apply to *pro se* securities actions.

12   ECF No. 60.  Nonetheless, Plaintiff drafted the TAC to comply with the PSLRA.  *Sawicki v.*

13   *Stitch Fix, Inc.*, Case No. 3:18-cv-06208-JD (N.D. Cal. August 9, 2019).  *Purple Mountain Trust*

14   *v. Wells Fargo & Company*, Case No. 3:18-cv-03948-JD (N.D. Cal. January 10, 2020).  Tesla

15   Defendants now spill considerable ink to protest that PSLRA compliance violates Rule 8.  This is

16   not so.  "[T]he Ninth Circuit has cautioned against applying a strict requirement for a 'short'

17   statement under Rule 8 in light of the heightened pleading standards of Rule 9(b) and

18   PSLRA" (citations omitted).  *In Re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-

19   YGR (N.D. Cal. June 2, 2020).  Tesla Defendants' arguments are therefore frivolous at best.[3]

20       The Ninth Circuit has also "emphasized that *pro se* pleadings, such as the FAC in this

21

22   ───────────────────
     [2] Tesla Defendants fail to disclose that Aarti Reddy, who signed their motion, was a witness to

23   the proceedings at issue.  Her involvement violates California Rule of Professional Conduct 3.7.
     [3] It is "perfectly understandable" to "err[] on the side of detail and prolixity in an effort to

24   explain the facts" given the PSLRA's heightened pleading standard, even while keeping Rule 8
     in mind.  *In re Global Crossing Ltd. Securities Litigation*, 313 F. Supp. 2d 189, 212.  *See also*

25   *Gienko, et al v. Padda, et al*, Case No. 1:00-cv-05070 (N.D. Ill. February 27, 2002) (permitting
     complaint of 386 pages total under Rule 8).  Notably, Tesla Defendants had no problem with the

26   82-page or 110-page First and Second Amended Complaints, to which far more pages were
     attached.  Only now do they protest the 78-page TAC, *by attaching 200 pages of their own*.

27   When asked why they cited a Ninth Circuit case that pre-dates the PSLRA by 10 years, counsel
     clarified by e-mail that their citation is inapposite as "*Hatch* did not involve securities claims."

28   Their gripe about "over one hundred hyperlinks" is especially odd considering that the same
     exact hyperlinks still required review when written out rather than embedded.

───────────────────

case, are to be liberally construed on a motion to dismiss." *Capp v. County of San Diego*, 940 F. 3d 1046 (9th Cir. 2019). "A pro se complaint should not be dismissed unless the court finds it 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)." *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016).

### A.    Plaintiff Has Adequately Pled Libel Per Se and Civil Stalking

Defendant Musk's Twitter account is atypical. Today, it is followed by over 50 million accounts worldwide. It is also disclosed as a source of "material information to the public," i.e. facts. TAC ¶ 179, Exhibit K (ECF No. 103-11) at 3. This is relevant to the legal standard for evaluating libel claims, found in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), yet absent from Tesla Defendants' brief. "In *Milkovich* [], the Supreme Court distinguished between 'pure' opinions—which do not imply facts capable of being proven true or false and are thus protected by the First Amendment—and statements that may imply a false assertion of fact, which are actionable even if couched as a statement of 'opinion.'" *Unsworth v. Musk*, Case No. 2:18-cv-08048-SVW-JC at 6 (C.D. Cal. May 10, 2019). Tesla Defendants claim that everything stated by Defendant Musk on Twitter (whether on his own behalf or on behalf of Defendant Tesla or both) is "opinion." This is incompatible with their disclosures, but even if it were true, "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich* at 18.

#### 1.    Vicarious Liability For Libel and Civil Stalking by Omar Qazi

Tesla Defendants ignore most of the TAC to claim that there are "only" four alleged ties between Defendants Qazi and Musk. Motion at 5. This is factually false, ignoring at least TAC ¶¶ 57-58, 97, 114, 138, 140, and 175-178—most notably, the crystal clear allegation that Defendant Qazi is party to a confidential contract with Defendant Tesla. A contract is more than a "banal interaction" or "friendship." The allegations in the TAC are plenty for Defendant Qazi

to qualify at least as an ostensible agent of Tesla Defendants under Cal. Civil Code § 2300.[4]

> "[T]o establish ostensible authority, the principal's consent need not be express. *See Tomerlin v. Canadian Indem. Co*., 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571, 575 (1964). While it is true that the ostensible authority of an agent cannot be based solely upon the agent's conduct, see *Kaplan*, 59 Cal.App.4th at 747, 69 Cal.Rptr.2d at 643, it is not true that the principal must make explicit representations regarding the agent's authority to the third party before ostensible authority can be found. For example, ostensible authority may be proven through evidence of the principal transacting business solely through the agent, *see Kelley*, 77 Cal.Rptr. at 174, 272 Cal.App.2d at 120, the principal knowing that the agent holds himself out as clothed with certain authority but remaining silent, *see Krieger*, 181 F.3d at 1121, the principal's representations to the public in general, *see Kaplan*, 59 Cal.App.4th at 747, 69 Cal.Rptr.2d at 643, and the customs and usages of the particular trade in question, *see Correa v. Quality Motor Co*., 118 Cal. App.2d 246, 257 P.2d 738, 741 (1953); *Auto Auction, Inc. v. Riding Motors*, 187 Cal. App.2d 693, 10 Cal.Rptr. 110, 113-14 (1960) (finding that a car salesman had ostensible authority to close an automobile sale based on the circumstances of the case 'as well as in the light of the customs and usages of the particular trade of which we may take judicial notice')."

*CAR Transp. Brokerage v. Darden Restaurants*, 213 F. 3d 474 (9th Cir. 2000).

Defendant Qazi's ability to use the TESLA registered trademark(s)—next to the word "truth," no less, and a second time when he participated in the "Third Row Tesla" group that produced corporate marketing materials involving Defendant Musk himself—without adverse consequence is enough to "allow a third person to believe that the agent possesses" "authority" "in dealings with third persons." *JL v. Children's Institute, Inc*., 177 Cal. App. 4th 388, 403 (2009). *See also Crinkley v. Holiday Inns, Inc*., 844 F. 2d 156, 166 (4th Cir. 1988) ("Holiday Inns retained a significant degree of control over the operation of the Holiday Inn-Concord. This control included the use of the Holiday Inns trade name and trademarks..."). TAC ¶¶ 112-114.[5]

Far less than what is alleged here has been enough to establish agency:

> "Uber at least negligently allowed others to believe that the assailant was an authorized Uber driver. First, through its advertising, Uber intentionally

---

[4] Defendants Musk and Qazi also appeared in a March 26, 2021 post-TAC conversation in a *Washington Post* article suggesting that they committed securities fraud, including potential violations of both Tesla Defendants' SEC consent decrees. Greenspan Declaration Exhibit B.
[5] On March 27, 2021, also post-TAC, Defendant Qazi videotaped himself expressing his desire to work as a paid salesperson for Tesla Defendants, stating, "I'll sell them all fuckin' Teslas. I'll pull in those referrals!" *See* https://www.youtube.com/watch?v=VSOayMTw5Zw&t=1396s.

encouraged its customers to identify the Uber decal as indicating that a driver with a decal is a safe and authorized Uber driver.  Second, Uber provided the assailant with the Uber decal and then failed to take any action to reclaim the decal after it suspended the assailant's app access.  These allegations are sufficient at the pleading stage to support a plausible inference that Uber created the impression that the assailant was Uber's agent" (citations omitted).

*Doe v. Uber Technologies, Inc.*, Case No. 3:19-cv-03310-JSC (N.D. Cal. November 22, 2019).

Here, Defendant Musk intentionally encouraged Defendant Qazi to keep posting on social media about himself and Tesla products, competitors, and critics (often short-sellers), but "failed to take any [corrective] action" even after Defendant Qazi's suspension by Twitter.  *Id.*  In fact, Tesla Defendants intervened *on Defendant Qazi's behalf* with Twitter's CEO.  TAC ¶ 97.

### 2.    TAC Statement No. 39: "Does the psych ward know..."

Defendant Musk has significant financial incentive to make the world think his critics, including Plaintiff, are crazy.  Regardless of whether he literally meant that Plaintiff was hospitalized, his October 9, 2019 statement was one among dozens by all Defendants made across multiple venues to suggest that Plaintiff suffers from mental illness.  TAC Statement Nos. 33, 36, 38.  In the end, enough people believed the underlying false assertion, stated by a billionaire as a statement of fact, for it to cause real and ongoing harm to Plaintiff.  TAC ¶ 202.  Moreover, when not attacking his critics, Defendant Musk knows the power of his own words, and openly worries that any casual remark he makes "can really move the market," because of several situations where his words have been so persuasive as to do exactly that.  TAC ¶ 290.

Tesla Defendants cite to *Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978), *aff'd*, 629 F.2d 586 (9th Cir. 1980) to support their assertion that such language, falsely imputing psychiatric problems to Plaintiff, is "not actionable."  Not only does *Hoesl* actually state that, "The imputation of severe psychological problems to an individual is generally held defamatory on its face.  *Mattox v. News Syndicate Co.*, 176 F.2d 897, 901 & n. 5 (2 Cir.), *cert. denied*, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949) (L.Hand, J.) (general rule that publication that person is insane or of unstable mind is libelous per se)," but it also emphasizes context, citing *Wetzel v. Gulf Oil Corp.*, 455 F.2d 857, 863 (9th Cir. 1972) to point out that an

1   "allegedly false charge that the plaintiff had committed a crime" is useful in determining whether

2   "words such as 'nut' and 'crazy' are libelous per se." *Id*. at 862.  This is significant given

3   Defendant Musk's stated belief that short-sellers are criminals, and his explicit support of

4   Defendant Qazi's attacks on Plaintiff as a supposed "criminal."  TAC ¶¶ 31, 57, 175.

5          Defendant Musk's Twitter usage cannot be evaluated using the same rubric that applies

6   to unregulated accounts.  When he tweets, he communicates facts to over 50 million people at a

7   time.  Tesla Defendants' argument that "***no*** 'reasonable viewer would'" (emphasis added)

8   interpret his epithets as factual is belied by basic mathematics, disclaimers aside.  Plenty of

9   reasonable viewers, many of them investors, actually *did* read his statement as fact, with many

10  going on to repeat it.  Examples can be found in TAC ¶¶ 107, 202, and by the dozen on Twitter,

11  even today.  Tesla Defendants' conclusory declaration of "circular logic" misreads Plaintiff's

12  argument, which is not that repeating an opinion makes it factual, but rather, that A) Defendant

13  Musk's statement at least implied a supposed fact to begin with; and B) Defendant Musk's

14  statements are unusually persuasive due to his wide reach on Twitter and his wealth.  This

15  dynamic is perhaps best described by *Fiddler on the Roof*'s main character Tevye, who when

16  referring to his fellow villagers' imagined trust in him as a "rich man," sings, "…it won't make

17  one bit of difference if I answer right or wrong / When you're rich, they think you really know!"

18         The "psych ward" comment was also not privileged, as pre-litigation privilege is *not*

19  absolute.  The communication must have "some connection or logical relation to the action."

20  *Silberg v. Anderson*, 786 P. 2d 365, 50 Cal.3d 205, 212 (Cal. Sup. Ct. 1990).  "Psych ward[s]"

21  have no connection to Tesla.  Since Defendant Musk's response was not aimed at resolution or

22  the "ascertainment of truth," privilege did not attach.  *Id*. at 33.  "Applying the privilege in such a

23  context may actually serve to undermine or defeat the purposes of the privilege itself.  (citation

24  omitted)"  *Eisenberg v. Alameda Newspapers*, Inc., 74 Cal. App. 4th 1359 (1999).

25         The fact that Plaintiff included Defendant Musk's statement in a detailed analysis of

26  Musk's history of attacking critics and whistleblowers does not mean that the statement was not

27  harmful.  The opposite is true: Plaintiff re-published it on his own terms in self-defense.

28

---

### 3.     TAC Statement No. 40: "…a fake charity run by an online bully?"

Tesla Defendants' counsel proffer a number of their own immaterial opinions about what their client *might* have meant by "fake charity."  Yet actual readers of TAC Statement No. 40 interpreted it as a fact that one way or another, Plaintiff had violated federal law.  They responded accordingly, reporting Think Computer Foundation to the Internal Revenue Service ("IRS").  Unlike the knockoff "Phantom of the Opera" "theater production" cited in *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992)—a work of art not provably true or false—the provable fact that the IRS audited and approved of the Foundation's existence and operations is plain for all to see in TAC Exhibit E (ECF No. 103-5) on page 5.  Not for the first time, Defendant Musk made a false factual statement via a regulated medium to millions.[6]

In addition to asking if Dr. Soon-Shiong was "aware" of certain facts, Defendant Musk also implicitly encouraged disciplinary action against Dr. Soon-Shiong's employee, a respected journalist, for donating $50.00 to a campaign to make public records in state courts more readily accessible.  TAC ¶ 82.  The word "aware" is defined as "having knowledge or perception of a situation or fact" per Oxford Languages.  Greenspan Declaration Exhibit H.  Asking a third party to take decisive action further "impl[ies] an assertion of objective fact."  *Milkovich*, *supra*, at 18.

### 4.     TAC Statement No. 41: "Aaron Greenspan…the same nut…"

The Ninth Circuit rubric in *Underwager* turns on context and whether a given statement conveys a fact that is provably true or false—not a list of specific words.  Even the citation, *Art of Living Foundation v. Does 1-10*, Case No. 5:10-cv-05022-LHK (N.D. Cal. June 15, 2011) contains the heading "***In Context***, Statements are Constitutionally Protected Opinions" (emphasis added).  There, Judge Kho's analysis included the facts that that discussion involved

---

[6] All Defendants cite to *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1159 (2008) to argue that the phrases "crooks" and "fake medical degree" are "non-actionable opinions," but that is not what the court in *Krinksy* held.  What *Krinksy* actually says about the phrase "fake medical degree" is, "No reasonable reader would have taken this post seriously; it obviously was intended as a means of ridiculing Seifer and plaintiff."  Tesla Defendants went beyond "ridicule" by involving a newspaper owner, the SEC, and the IRS.  Some even took Defendant Musk's post seriously enough to write derivative articles based on it.  TAC ¶ 191.

"obviously critical blogs," as opposed to e-mail here; and "heated discussion," as opposed to an e-mail thread Plaintiff did not know about concerned with what was "accurate." TAC ¶ 182.

*Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) is also plainly distinguishable from the instant case. In *Lieberman*, which involved over-the-top commentary on a television show episode, "The [district] court determined that no reasonable viewer would have taken as factual Fieger's colorful expressions, such as 'Looney Tunes,' 'crazy,' and 'nuts.'" In contrast, here, one influential billionaire (Defendant Musk) privately told another influential billionaire (Twitter CEO Jack Dorsey) that it was "accurate" that Plaintiff was a "nut" with "major issues," clearly conveying that Plaintiff was mentally ill. The supposed evidence, that Plaintiff "sued Zuckerberg" over the origins of Facebook, is false, and further lacks the crucial context of settlement. TAC ¶ 194. Plaintiff never sued Mark Zuckerberg, specifically because of potential for reputational damage. The parties' settlement was largely intended to *avoid* a lawsuit.

### 5.    TAC Statement No. 42: "Greenspan is crackers, bananas…"

Within one day of the First Amended Complaint in this case being filed, Defendant Musk retaliated, broadcasting four different euphemisms for mental illness to tens of millions of people: "[Plaintiff] is crackers, bananas, barky & ten cards short of a full deck."[7] His followers got the message, literally and figuratively, treating his statement as fact and repeating across social media the provable falsehood that Plaintiff is mentally ill. The implication was that Tesla Defendants' false disclosures should be trusted, not the critic(s). "Because Twitter contains both opinion and news, it does not follow that statements on Twitter are presumptively opinion." *Unsworth* at 8. This is especially so for accounts that investors rely upon for factual information.

### B.    Plaintiff Has Adequately Pled California Civil Code § 1708.7 Stalking

Tesla Defendants deliberately misstate the law and ignore the pleadings in the TAC that satisfy its requirements. California Civil Code § 1708.7(a)(3)(A)(ii) is fulfilled by "reckless disregard for the safety of the plaintiff or that of an immediate family member," which is

---

[7] Defendant Musk was replying to a post by Defendant Qazi asking to help "spread the word" about his GoFundMe legal defense fundraising campaign, suggesting factual material.

applicable here, restraining order aside.  TAC ¶ 107.  Plaintiff also "clearly and definitively" told
Tesla Defendants to cease and desist by e-mailing Defendant Musk and the Board of Directors of
Defendant Tesla on August 7, 2019, informing them that "this kind of behavior is A) unlawful
and B) unacceptable."  TAC ¶¶ 47, 220.  *See also* ECF No. 107-1 at 6.  "Independent
corroborating evidence" is found throughout the TAC but especially in ¶¶ 57, 175-178, and 182.

### C.      Plaintiff Has Adequately Pled Section 10(b) and Rule 10b-5 Claims

#### 1.      Plaintiff Has Adequately Pled Falsity

Tesla Defendants previously complained that Plaintiff had not pled enough detail about
their unlawful acts.  Now, faced with immense detail backed by a cache of leaked internal
documents in TAC Exhibit A (ECF No. 103-1)—and even more since the TAC—they argue that
there is too much, painting the TAC as an "incomprehensible 'puzzle pleading,'" as though it is
cryptic scribble that Harvard-educated counsel *formerly employed by Tesla* finds baffling despite
years of legal training and company experience.  Motion at 3.  There are no pages-long
quotations here.  Not only does Plaintiff's pleading comply with the PSLRA whether or not it
applies, but it makes the facts comprehensible and stays well within the confines of Rule 8.

Tesla Defendants have clearly analyzed the TAC in detail, but their sweeping arguments
are so detached from reality that they might as well have read a completely different document.
They falsely claim that Plaintiff has not tried to "identify any allegedly actionable statement" or
the associated who/what/where/why/when in Issue No. 17—which identifies "Adam Jonas" on
"Bloomberg Television" on "October 30, 2019" so that he could help his employer, Morgan
Stanley, earn "lucrative banking deal fee revenue," among other "analysts."  They suggest
Plaintiff erred by citing a date in 2020 instead of 2019 in Issue No. 28, but there is no mistake.
Defendant Musk has lied repeatedly about the Tesla Semi every year since November 16, 2017
when he first announced the 2019 production target, as indicated directly in the Issue's text.  For
the purposes of this claim and Plaintiff's transactions, the 2020 date is most relevant.  Listing
every date on which Elon Musk lied to investors would, in fact, violate Rule 8.  As for a
"coherent explanation of fraud," it is found in the TAC's second, third and fourth paragraphs.

As for Issue No. 21, Tesla Defendants again abuse the word "only" to falsely state that "Plaintiff alleges only that Mr. Musk approved Tesla's purchase orders…" which by itself goes well beyond "general awareness," as it is extremely unusual for the CEO of a publicly traded company to approve each and every purchase order.  Yet this is still not *only* what is alleged. Plaintiff also alleges that "Defendant Musk was personally aware of the CAEATFA program and Defendant Tesla's applications."  Nor is Defendant Musk's penchant for false figures merely Plaintiff's "opinion."  Tesla Defendants seem to forget their consent decrees, $40 million in combined fines, and inability to publicly deny having committed securities fraud. TAC ¶ 5.

Notably, Tesla Defendants have *absolutely nothing* to say about the documents in TAC Exhibit A (ECF No. 103-1), definitively showing hundreds of millions of dollars of undisclosed waste, bypassing of internal financial controls, and willingness to jeopardize public safety.

As for forward-looking statements, Plaintiff has shown that Defendant Musk knew the statements he was making were false when he made them.  The argument that "deliveries" are not "plausibly" "equivalent" to demand died on April 2, 2021, when *Bloomberg* journalist Dana Hull, whom Defendant Tesla has previously referred to as "sensible," pointed out, "The quarterly delivery figure is widely seen as a barometer of demand."  Greenspan Declaration Exhibit E.

## 2.    Tesla Defendants' Scienter Has Already Been Established

Defendant Musk is the rare executive with the dubious honor of being sued so often for securities fraud that *he has already been found to have acted with scienter*—a fact counsel omits. "Plaintiff's Consolidated Complaint adequately pleads scienter.  Plaintiff has demonstrated with particularity that Mr. Musk was in a position, as the CEO of Tesla, to know that the statements he made were not true."  *In re Tesla, Inc. Securities Litigation* at 34.  Defendant Musk's motives included "a motive to target short-sellers, perhaps by making misleading statements."  *Id*.  This is pled here in TAC ¶ 279(h).  The government also took action against Tesla Defendants.  "Mr. Musk's [SEC] settlement provides some support for Plaintiff's allegation of scienter."  *Id*. at 33.

Tesla Defendants' arguments about scienter strain belief.  They moan about "conjecture," having forgotten their ire on page 3 over the "*one hundred* hyperlinks" (emphasis in original) to

authoritative sources.  Defendant Musk is a liar who admits his rationale for lying on video repeatedly: in TAC ¶ 279(b) and in Issue No. 1.  He has long believed that Tesla's existence would cease were it not for his lying.  On this point, he is correct, but as with much of life, there is a tradeoff, for the lies that all but guarantee success in the marketplace also guarantee "a strong inference of scienter" in court.  *Gompper v. VISX, Inc*., 298 F.3d 893, 897 (9th Cir. 2002).

In the end, attempting to secure the payout of the most aggressive executive compensation plan in recorded history—one worth billions of dollars for one man—is more than a humdrum goal of trying to "boost the company's profitability."  Tesla Defendants' endless lies have always been necessary as a matter of survival because, as Defendant Musk acknowledged on September 22, 2020, "It's not like Tesla's profitability is crazy high.  Our average profitability for the last four quarters was maybe 1%.  It's not like we're minting money.  Our valuation makes it seem like we are, but we're not."  TAC ¶ 277.  With that valuation fluctuating near $1 trillion, this blatant admission that Tesla is even now only on the cusp of supposed profitability speaks to the incredible motive to commit fraud.[8]  Finally, Defendant Musk cannot deny relationships with the families of multiple narcotrafficking kingpins.  TAC Issue No. 33.

### 3.    Plaintiff Has Adequately Pled Reliance

Tesla Defendants call the TAC's allegations "the opposite of reliance"—because their characterization is the opposite of truth.  Yet again, Tesla Defendants misrepresent Plaintiff's position in violation of both the Northern District of California's Guidelines for Professional Conduct and Paragraph 23.  The TAC does not *at any point* state that Plaintiff "chose to short-sell Tesla securities *because* he suspected the company was 'the largest Ponzi scheme in history'" (emphasis in original).  Motion at 12.  Plaintiff did come to that conclusion, but years after first investing.  Tesla Defendants' false claim is especially shocking because the TAC

---

[8] Tesla Defendants cite *Webb v. SolarCity Corp*., 884 F.3d 844, 856 (9th Cir. 2018), yet Defendant Musk is still in court regarding SolarCity.  In *Webb*, the Court was "skeptical that Defendants-Appellees were motivated to help Musk avoid a hypothetical margin call, concerning which we see no evidence" and doubtful that he worried about his "relationship with Goldman Sachs."  *Id*. at 856-857.  Since then, Plaintiff's work has surfaced transcripts of Tesla Director Kimbal Musk admitting to concern over margin calls and of SolarCity's former CEO admitting that Goldman Sachs would not back the merger.  Greenspan Declaration Exhibit G.

*explicitly* states, "Plaintiff invested in TSLA put options because he believed that Defendant Tesla's business was fundamentally overvalued by the market." TAC ¶ 24. It continues, "When Plaintiff began purchasing Tesla, Inc. securities he had no knowledge of any alleged fraud involving Defendant Tesla except for limited knowledge from news reports of Defendant Musk's August 2018 false 'funding secured' tweet." *Id*. Tesla Defendants knowingly offer the Court a counter-factual narrative, with no evidence to support their baseless view.[9] The TAC begins with the key allegation that "Defendant Tesla has never earned an annual profit" because that was always the foremost consideration in Plaintiff's mind when making his investment decisions. TAC ¶ 2. Plaintiff believed that the price of TSLA stock would fall when the market realized that it was a structurally unprofitable company, and that any effect that "funding secured" had on price was resolved when the matter was formally closed by the SEC.

Thus, Plaintiff invoked the fraud-on-the-market theory outlined in *Basic* in TAC ¶ 265. "*Basic* 'created a rebuttable presumption of investor reliance based on the theory that investors presumably rely on the market price, which typically reflects the misrepresentation or omission.' *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp*., 320 F.3d 920, 934 n.12 (9th Cir. 2003)." *In re Diamond Foods, Inc. Securities Litigation*, Case No. 3:11-cv-05386-WHA (N.D. Cal May 6, 2013).

 After Plaintiff's initial judgment that TSLA was overvalued, beyond "funding secured," Defendant Musk presided over a series of additional, sequential, and discrete fraudulent acts, many still ongoing. The key point in *Stark Trading v. Falconbridge Ltd*., 552 F.3d 568, 573 (7th Cir. 2009) is that "plaintiffs would not have a claim under Rule 10b-5, or any other securities law requiring proof of reliance, because they were never deceived." Plaintiff has pled that he was deceived *repeatedly*. TAC ¶ 281, Issue Nos. 1-35. And unlike *Jones v. Intelli-Check, Inc*., 274 F. Supp. 2d 615, 634 (D.N.J. 2003), there was no all-revealing "article in Barron's" that outlined even half of the fraudulent aspects of Tesla Defendants' operations. At each point when Plaintiff

---

[9] Counsel attached three @PlainSite Twitter posts to her Declaration as exhibits: two from August 2018 *about the then-ongoing "funding secured" scandal*, and one from March 2019, remarking on the high number of securities lawsuits filed against Tesla Defendants, with 17 of the 38 referenced involving the "funding secured" scandal. ECF Nos. 108-3, 108-4, 108-5.

purchased put options, he was relying on the presumption that the market had incorporated all available information.  As TAC ¶ 283 makes clear, *at no point did Plaintiff invest while aware of all of Tesla's fraudulent activities impacting the stock price at that time*.  The scale of deception by Tesla Defendants may raise an issue of first impression: sequential fraud.  In situations where multiple, different frauds take place in sequence, one can be aware of Fraud A without having any idea that Fraud B has already started taking place.[10]  Only after March 2020 did Plaintiff realize that Tesla Defendants were willing to deploy lies, accounting tricks and marketing gimmicks *ad infinitem* to raise ever more investor money—over $25 billion so far.

Tesla Defendant's argument that Plaintiff "knew about the purported fraud…since at least October 2018" is once again false.  Motion at 13.  In 2018, it would have been impossible for Plaintiff to know that Defendant Tesla would group Model 3 and Model Y "deliveries" as "Model 3/Y" to obscure poor sales; the Model Y *had not yet been announced*.  Nor did Plaintiff know then that there would be no promised "robo-taxis" *in 2020*, or that Tesla was hiding out-of-control Non-Conforming Material levels, because *key documents had not yet been made public*.

Plaintiff's purchases of put options in March 2020 do not reflect Plaintiff's "belief that he could profit by exposing Tesla's 'fraud,'" or some change of heart about the company's structural inability to turn a legitimate profit from operations, but rather, the fact that in March 2020, markets were in free-fall due to the sudden realization that COVID-19 would have an unavoidable, catastrophic impact on the entire global outlook, and that stocks were overvalued.

### 4.    Plaintiff Has Adequately Pled Loss Causation

While corrective disclosures *can* proximately lead to losses, they are not *necessary*.  Harm to short-sellers often comes from *lack* of disclosure—not from the typical fallout, e.g. share price declines, from disclosure itself.[11]  "To prove loss causation, plaintiffs need only show

---

[10] Even if Fraud A has artificially elevated a stock's price on a given date and a plaintiff shorts it accordingly, ignorance regarding secret Fraud B to elevate the stock price even further still meets *Halliburton*'s test and provides for a valid claim regarding Fraud B.  Otherwise, the disclosure of *any* fraud would improperly eliminate standing for all claims going forward in perpetuity.

[11] Tesla Defendants refer to the court in *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744 (S.D.N.Y. 2011) to discuss Tesla hypothetically "concealing positive

a 'causal connection' between the fraud and the loss, *Nuveen*, 730 F.3d at 1119; *Daou*, 411 F.3d at 1025, by tracing the loss back to 'the very facts about which the defendant lied,' *Nuveen*, 730 F.3d at 1120. 'Disclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss.' *Id*." *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750 (9th Cir. 2018).

Tesla Defendants mis-apply the Supreme Court's narrow holding in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 346, 342 (2005), which applies to *long* securities purchases, and overlook precedent from their own case just decided in this very Court that contradicts their argument:

> "Plaintiff has adequately pled that the stock price increases and decreases were related to Defendants' false statements and corrective (or partially corrective) statements... Because of this allegedly artificial rise in price, short sellers betting against Tesla were forced to sell their stocks to prevent further loss."

*In re Tesla, Inc. Sec. Litigation*, Case No. 3:18-cv-04865-EMC at 37 (N.D. Cal. April 15, 2020). For longs, the actionable issue is often the true disclosure making the stock go down. For shorts, it is often the false disclosure making the stock go up. With TSLA shares recently so inflated as to make a chronically unprofitable company worth more than *the rest of the industry combined*, Tesla Defendants' active promotion of that inflation, and Defendant Musk's obsession with short-sellers, it is evident that Tesla Defendants substantially caused Plaintiff's losses. TAC ¶ 9.

### D.   Plaintiff Has Adequately Pled Manipulation and a Section 20(a) Violation

All 35 enumerated Issues speak to overt market manipulation, but TAC Issue Nos. 14, 15 and 16 in particular speak directly to "rigged prices" and "artificially affecting market activity." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 389 (S.D.N.Y. 2010).

## V.   CONCLUSION

In light of their heavy use of inapposite citations and persistent misrepresentation of both facts and law, Tesla Defendants' Motion to Dismiss should be denied in full.

---

information," and in so doing they again abuse the word "only." This action would constitute a "downside insurance policy" only in the absence of fraud, which is abundant here. Besides, "it would be a mistake to apply the loss causation standard so rigidly as to reject any theory that does not precisely align with the facts of previous cases." *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605 (N.D. Cal. 2019).

Dated: April 8, 2021                    Respectfully submitted,

Aaron Greenspan
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org