COOLEY LLP
JOHN C. DWYER (136533) (dwyerjc@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:     (650) 849-7400

AARTI REDDY (274889) (areddy@cooley.com)
REECE TREVOR (316685) (rtrevor@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendants
TESLA, INC. and ELON MUSK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN,<br><br>          Plaintiff,<br><br>     v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC.,<br><br>          Defendants. | Case No. 3:20-cv-03426-JD<br><br>**TESLA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD SUPPLEMENTAL AND AMENDED COMPLAINT**<br><br>Hearing Date: None Set (*See* ECF No. 106)<br>Courtroom:<br>Judge:         Hon. James Donato<br>Trial Date:   None Set<br><br>Date Action Filed:  May 20, 2020 |

**TABLE OF CONTENTS**

Page

I. PLAINTIFF MISINTERPRETS RULE 8 AND IGNORES THIS COURT'S ORDER. .................................................................................................................. 1

II. PLAINTIFF'S LIBEL ARGUMENTS IGNORE CONTEXT AND DEFY CASE LAW. ............................................................................................................................ 2

    A. Nothing Suggests that Mr. Qazi Acted as Mr. Musk's Agent. ............................... 2

    B. Plaintiff's Efforts to Recast Mr. Musk's Opinions as Statements of Fact Fail. ......................................................................................................................... 3

III. PLAINTIFF'S CLAIM FOR CIVIL STALKING FAILS. ................................................. 6

IV. THE TAC FAILS TO ADEQUATELY PLEAD A CLAIM FOR SECURITIES FRAUD. ............................................................................................................................. 6

    A. The TAC's Falsity Allegations Are Fatally Speculative and Lack Particularity. ........................................................................................................... 6

    B. The TAC's Scienter Allegations are Deficient. ..................................................... 7

    C. The TAC Fails to Plead Reasonable Reliance. ...................................................... 9

    D. The TAC Fails to Plead Loss Causation. ............................................................... 9

V. PLAINTIFF FAILS TO PLEAD MARKET MANIPULATION. ................................... 10

VI. CONCLUSION. ................................................................................................................ 10

Defendants Tesla, Inc. and Elon Musk ("Tesla Defendants") respectfully submit this reply in support of their Motion to Dismiss Plaintiff's Third Supplemental and Amended Complaint ("Motion" and "TAC," respectively).

Plaintiff's Opposition to the Motion ("Opposition") doubles down on the TAC's myriad flaws. The Opposition, ECF No. 110, largely fails to engage with the Tesla Defendants' key arguments. Where it does, it relies on implausible allegations, inapposite authority, and rank speculation, even resorting to attacks on counsel's integrity.[1] After four operative pleadings, each of Plaintiff's baseless conspiracy theories still fails to state a claim. **First,** the TAC is a classic puzzle pleading that violates this Court's order regarding Rule 8, which Plaintiff does not even acknowledge. **Second,** Mr. Musk's casual interactions with Omar Qazi do not render him vicariously liable for Mr. Qazi's alleged libel. **Third**, Plaintiff's position that Mr. Musk's constitutionally-protected opinions were libelous assertions of fact is meritless. **Fourth**, the TAC fails to allege the elements of a civil stalking claim. And *finally*, the TAC does not remotely meet the pleading standards governing securities fraud claims.

## I. PLAINTIFF MISINTERPRETS RULE 8 AND IGNORES THIS COURT'S ORDER.

Plaintiff does not even try to argue that the TAC is a "short and plain statement" that complies with the Court's Rule 8 order. *See* ECF No. 108. He fails to cite that order or even acknowledge it, and instead mischaracterizes Rule 8's requirements by wrongly contending these requirements apply with less force in securities cases.[2] Opp'n at 3. Not so. The Private Securities Litigation Reform Act ("PSLRA") applies "*[in] addition to* the pleading requirements of Rule 8" in securities actions. *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012)

---

[1] In addition to his baseless claims that the Motion violates this Court's rules for professional conduct, there is no basis for Plaintiff's ongoing insinuation that undersigned counsel is likely to be a witness here. Opp'n at 3 n.2. Plaintiff's apparent attempt to disqualify counsel by naming her in the TAC is improper. If counsel has any knowledge of the facts relevant to this case, she acquired it during either her current representation or her previous role as in-house counsel at Tesla, and the attorney-client and work-product privileges would apply. Reddy Decl. ¶ 3.

[2] Plaintiff suggests that the PSLRA does not apply to this action. This Court, like every other to have considered Plaintiff's argument to the contrary, has already rejected that reading and found the PSLRA applicable. ECF No. 63; *see also*, *e.g.*, *Willett v. Procopio*, 2018 WL 9539242, at *1 (S.D. Cal. July 25, 2018) (applying PSLRA and granting motion to dismiss pro se securities complaint). More generally, "[a]lthough *pro se* pleadings are liberally construed . . . a *pro se* plaintiff must still satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)." *Wingate v. U.S. Postal Serv.*, 2013 WL 3829272, at *8 (N.D. Cal. July 23, 2013) (citation omitted).

(emphasis added). Plaintiff's key authority merely notes that the heightened pleading standards in fraud cases may justify complaints that are longer than the norm, and actually supports the Tesla Defendants' argument by noting that "puzzle-pled complaints" like Plaintiff's "have been dismissed as failing to comply with the 'short and plain statement' requirement of Rule 8, as well as the PSLRA." *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *8 (N.D. Cal. June 2, 2020). The TAC is defective under Rule 8 not only because it is too long, but also because it is so rambling and incomprehensible that it fails to provide the Tesla Defendants with fair notice of the claims against them. *See* Mot. at 3-4. As the Motion explains, the TAC is far more problematic than the puzzle pleading at issue in *In re Apple*, which at least "set forth blocks of statements." 2020 WL 2857397, at *8. The TAC often does not do even that much, instead sending the Tesla Defendants and this Court on a fishing expedition through stacks of Tesla 10-Ks and 10-Qs and over one hundred hyperlinks scattered throughout his 78-page pleading. *See, e.g*, ¶ 269. That is not short, it is surely not plain, and it is reason enough to dismiss the TAC in full.

## II.  PLAINTIFF'S LIBEL ARGUMENTS IGNORE CONTEXT AND DEFY CASE LAW.

### A.  Nothing Suggests that Mr. Qazi Acted as Mr. Musk's Agent.

Plaintiff's Opposition confirms that he has failed to plead that Mr. Musk is vicariously liable for Mr. Qazi's actions. Plaintiff's own authority holds that his theory of ostensible agency must be based on plausible allegations that the ***principal*** acted in a manner that signaled agency authorization, such as by "transacting business solely through the agent" or remaining silent in the face of the agent's claims to act for the principal. Opp'n at 5 (quoting *CAR Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)). The allegations in the TAC that Plaintiff cites, such as that Tesla "shut down" its public relations department and that Mr. Musk told Mr. Qazi that his Twitter account was "awesome," do not come close to this standard. Opp'n at 4 (citing ¶¶ 138, 175). Plaintiff fails to cite a single case finding agency based on such attenuated connections. Plaintiff points to Mr. Qazi allegedly executing a Tesla confidentiality agreement to test Tesla software as support for his theory. Opp'n at 4. It would be an unprecedented and unfounded expansion of the law to find a principal-agent relationship based on such a routine corporate agreement. Moreover, the contract Plaintiff cites in fact undermines his claim that Mr.

Qazi was authorized to speak for the Tesla Defendants, as it allegedly "***restricts*** discussions with the media." ¶ 58 (emphasis added).

Plaintiff emphasizes his allegation that Mr. Qazi tweeted under the handle @tesla_truth, asserting that this "ability to use the TESLA registered trademark" supports a finding of agency. Opp'n at 5-6. Plaintiff identifies no legal authority supporting his position that a Twitter user who repurposes a company's mark can be considered an agent of that company. Instead, Plaintiff cites only inapposite cases in which the alleged agent used the alleged principal's trademark to act as if authorized by the principal and ***as a result of some action by the principal***—neither of which is alleged here. The agent in *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988), for example, operated a hotel using the Holiday Inn name as a franchisee of the principal, and the agent in *Doe v. Uber Technologies, Inc.*, 2019 WL 6251189, at *2 (N.D. Cal. Nov. 22, 2019), drove a car adorned with an Uber decal issued by Uber. Here, by contrast, Plaintiff does not plausibly allege that Mr. Qazi represented that he acted on the Tesla Defendants' behalf. Instead, he actually pleads that the @tesla_truth account claimed to speak for "Steve Jobs," suggesting (if anything) an association with the deceased Apple founder, not with Tesla. ¶ 28. The TAC likewise fails to allege that the Tesla Defendants took any action that caused or encouraged Mr. Qazi to use the Tesla mark. This is fatal to his claim. As Plaintiff himself notes, "the ostensible authority of an agent cannot be based solely upon the agent's conduct." Opp'n at 5 (quoting *CAR*, 213 F.3d at 480).

### B.   Plaintiff's Efforts to Recast Mr. Musk's Opinions as Statements of Fact Fail.

"It is for the court to decide whether a statement is actionable defamation in the first instance as a matter of law." *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) (cleaned up). Faced with the First Amendment's formidable protection again libel claims for "statements that cannot reasonably be interpreted as stating actual facts," Plaintiff goes to great lengths to contort the challenged comments into factual assertions. *Id.* (cleaned up). Each of these efforts fails. Considering the "totality of the circumstances," Mr. Musk's statements were at most "'loose, figurative' language," and no reasonable observer could have thought otherwise. *Id.* at 1074-75.

***Figurative and hyperbolic comments on Plaintiff's unreasonable behavior.*** **(¶ 182, Statements 39, 41-42).** Plaintiff ignores longstanding case law cited in the Motion establishing that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TESLA DEFS' REPLY ISO MTD TAC
CASE NO. 3:20-CV-03426-JD

three of the four challenged statements by Mr. Musk—ranging from Mr. Musk's tweeted opinion that Plaintiff was "crackers, bananas, barky & ten cards short of a full deck" to his emailed comment that Plaintiff was a "nut" who "sued Facebook"—were hyperbolic statements of constitutionally-protected opinion. Mot. at 5-6 (collecting authorities). Plaintiff likewise fails to respond to case law establishing that readers give less credence to allegedly defamatory remarks published on online forums. *See* Mot. at 7. Plaintiff instead attempts to deflect from these legal principles, but all of his arguments are unpersuasive. *First*, Plaintiff argues that "imputation of severe psychological problems . . . [are] generally defamatory," but the case on which he relies is inapposite and only illustrates how rarely that may be true. Opp'n at 6 (quoting *Hoesl v. United States*, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978)). The defendant in *Hoesl* was **a psychiatrist** who prepared and circulated to the plaintiff's employer a report wrongly diagnosing the plaintiff with a mental disability. 451 F. Supp. at 1171. When a psychiatrist describes a patient as mentally ill, that is a clear assertion of a fact, or could at least reasonably be viewed as one. Mr. Musk's characterizations of Plaintiff—using terms like "nut" and "psych ward"—bear no resemblance to *Hoesl*'s "unambiguous and considered publication," by a mental health professional, regarding "a specified mental disorder." *Id.* at 1172-73. Indeed, Plaintiff fails to identify a single case in which a court found libelous a layperson's casual dismissal of someone as mentally ill.

Plaintiff's attempts to distinguish the significant case law supporting the Tesla Defendants' Motion likewise fail. *Lieberman*, which held nonactionable the phrases "Looney Toons" and "mentally unbalanced," is on all fours with the instant dispute. *Id.* Plaintiff's only response is that *Lieberman* involved "over-the-top commentary." Opp'n at 9 (citing 338 F.3d at 1080). But the Ninth Circuit's reasoning in *Lieberman* did not turn on those specific concerns and instead illustrates the more general proposition that context may show that a suggestion of mental illness is not literal. For instance, according to Plaintiff, Mr. Musk stated that Plaintiff "sued Zuckerberg" to provide "evidence" for the characterization of Plaintiff as a "nut." Opp'n at 9. But filing a frivolous lawsuit against Mark Zuckerberg would indicate unreasonable behavior and demands, not mental illness, and that is exactly what Mr. Musk was conveying.

*Second*, the Court should reject Plaintiff's argument that because others have allegedly

echoed Mr. Musk's sentiments "by the dozen," "[p]lenty of reasonable viewers . . . actually *did* read his statement[s] as fact." Opp'n at 7. One may easily repeat an opinion and express that one shares it, including by repeating it verbatim. Nothing in the TAC supports Plaintiff's argument that simply because others on Twitter expressed the view that Plaintiff was "crazy," ¶ 202, they believed him to be mentally ill. Plaintiff's own allegations are that Mr. Musk's Twitter followers made these statements "to harass Plaintiff," suggesting that their comments were insults or attacks, not factual claims. ¶ 185. In any event, the actions of the "dozen[s]" of users to whom Plaintiff refers cannot reveal anything about how Mr. Musk's statements would have been construed by the ***average*** reader, since Plaintiff asserts in the same breath that Mr. Musk has "over 50 million" Twitter followers. Opp'n at 7; *see also S.F. Bay Guardian, Inc. v. Super. Ct.*, 17 Cal. App. 4th 655, 660 (1993) ("The fact that [plaintiff] furnished declarations of a few people who stated that they did not recognize the [statement] as a joke does not raise a question of fact as to the view of the average reader."). Plaintiff goes on to assert that Mr. Musk's wealth and prominence afford him a bully pulpit. Opp'n at 7. But beyond the folk wisdom of Anatevka's sagest milkman, Plaintiff offers no authority in support of the argument that such factors can convert an obviously hyperbolic statement into an assertion of fact. *See id.* (citing Sheldon Harnick et al., *Fiddler on the Roof* (1964)).

*Third*, Plaintiff attempts to bypass the litigation privilege that attached to Mr. Musk's response to Plaintiff's email literally ***threatening a lawsuit*** by dismissively asking, "Does the psych ward know you have a cell phone?" Opp'n at 7. Plaintiff asserts that the privilege is "*not* absolute." *Id.* The California Supreme Court disagrees: "This privilege is absolute in nature." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). Plaintiff further contends that the privilege does not apply because Mr. Musk's statement was not "aimed at resolution," Opp'n at 7, but California law requires only "that the communication be connected with, or have some logical relation to, the action" and contains no "test of a participant's motives, morals, ethics or intent." *Silberg v. Anderson*, 50 Cal. 3d 205, 219-20 (1990).

**Mr. Musk's October 12, 2019 Tweet (¶ 182, Statement 40).** Rather than engage with the Tesla Defendants' arguments regarding the fourth challenged statement, Mr. Musk's characterization of Plaintiff's foundation as "a fake charity," Plaintiff dismisses them as

"immaterial." Opp'n at 8. But Plaintiff cannot dodge the key legal inquiry into whether, given "[t]he context in which the statement appears," it was an assertion of fact. *Knievel*, 393 F.3d at 1075. As the Motion explains, the TAC alleges that Mr. Musk was commenting on an article that *acknowledged* the foundation's nonprofit status, and thus his comments expressed his opinion that Plaintiff had improperly weaponized his nonprofit to attack Tesla. *See* Mot. at 6-7; ¶ 77. That readers of the statement filed complaints with the IRS actually *supports* the Tesla Defendants' argument that Mr. Musk's use of "fake" conveyed the opinion that Plaintiff's organization was unjustly tax-exempt, and was urging others to contest the foundation's 501(c)(3) status by drawing the IRS's attention to its activities. Likewise, because the article acknowledged that the foundation was tax-exempt, Mr. Musk's statement cannot be construed as alleging that Plaintiff was engaged in criminal tax avoidance.

### III. PLAINTIFF'S CLAIM FOR CIVIL STALKING FAILS.

Plaintiff has evidently abandoned his attempt to hold the Tesla Defendants vicariously liable for Mr. Qazi's alleged conduct and now apparently contends only that they are directly liable for civil stalking. Opp'n at 9-10; *see also Mortg. Elec. Registration Sys., Inc. v. Koeppel*, 2020 WL 1233925, at *3 (N.D. Cal. Mar. 13, 2020) (noting that a court may treat arguments not addressed in opposition to a motion to dismiss as conceded). Plaintiff argues that "California Civil Code § 1708.7(a)(3)(A)(ii) is fulfilled by 'reckless disregard for the safety of the plaintiff or that of an immediate family member,'" but this is false. Opp'n at 9. Plaintiff has not plausibly alleged such reckless disregard, but even if he had, the statute does not impose liability for a defendant's state of mind alone. It requires a "credible threat" *made with* such reckless disregard, and Plaintiff identifies none. Cal. Civ. Code § 1708.7(a)(3)(A). Nor does he identify any "independent corroborating evidence," citing instead the TAC's allegations that Mr. Musk libeled Plaintiff. Cal. Civ. Code § 1708.7(a)(1). For these reasons alone—as well as the myriad other defects identified in the Motion—the stalking claim fails as matter of law. *See* Mot. at 8.

### IV. THE TAC FAILS TO ADEQUATELY PLEAD A CLAIM FOR SECURITIES FRAUD.

#### A. The TAC's Falsity Allegations Are Fatally Speculative and Lack Particularity.

Plaintiff's efforts to salvage the TAC's falsity allegations confirm that, in addition to being

1  a textbook puzzle pleading, the TAC fails to "specify each statement alleged to have been
2  misleading" with the requisite "particularity." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551
3  U.S. 308, 321 (2007). *See* Mot. at 9-10. For instance, Plaintiff argues that Issue 17 in the TAC
4  identifies a misleading statement by "'Adam Jonas' on 'Bloomberg Television' on 'October 30,
5  2019.'" Opp'n at 10. But this example merely illustrates just how difficult Plaintiff's pleadings are
6  to comprehend. The referenced statement by Mr. Jonas is listed in Issue 17 as "supporting
7  evidence," whereas the "[s]tatement(s) [m]ade [m]isleading" are listed as "[e]ach statement made
8  by a proxy for Defendants." The TAC nowhere actually alleges (much less with particularity) who
9  those "proxies" were or what statements they made. Plaintiff likewise misses the point in arguing,
10 with regard to Issue 28, that he did not "err[]" by indicating that Mr. Musk made a misleading
11 statement about production of the Tesla Semi in both 2019 and 2020. Opp'n at 10. The relevant
12 flaw (of many) in Issue 28 is not that it indicates inconsistent dates, it is that it ***does not anywhere***
13 ***identify a particular challenged statement***, leaving the Tesla Defendants and the Court to
14 determine the relevant statements. Plaintiff then argues that "[l]isting every date on which Elon
15 Musk lied to investors would, in fact, violate Rule 8," while offering no evidence that makes the
16 allegation that Mr. Musk lied at all plausible.  Opp'n at 10-11.

17     The Opposition does not contest that Mr. Musk's forward-looking statements regarding his
18 "best guess" for vehicle demand and prediction that "[t]here will be autonomous robotaxis from
19 Tesla next year" were accompanied by meaningful cautionary language, and thus protected by the
20 PSLRA safe harbor. Issues 21, 23; *see also* Mot. at 10. Moreover, Plaintiff's arguments only
21 illustrate that nothing about those statements were knowingly false when made. Plaintiff's evidence
22 of such falsity for Mr. Musk's January 30, 2019 statement regarding vehicle demand is the opinion
23 of a journalist published "on April 2, 2021." Opp'n at 11. That is outside the pleadings, but more
24 importantly, it says nothing about Mr. Musk's state of mind over two years earlier. Such forward-
25 looking statements are not actionable as a matter of law.

26     **B.     The TAC's Scienter Allegations are Deficient.**

27     Plaintiff's leading rebuttal as to scienter is to claim that Mr. Musk "*has already been found*
28 *to have acted with scienter.*"  Opp'n at 11 (citing *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903,

929 (N.D. Cal. 2020)). This argument fails, and the *In re Tesla* order has absolutely no bearing on the matters before this Court. To start, that order denied **dismissal** of a securities complaint brought by **different** plaintiffs challenging **different** statements. A denial of a motion to dismiss does not reflect factual findings.

Moreover, Plaintiff's effort to find some sort of blanket scienter to apply to all of the three years' worth of challenged statements in the TAC flies in the face of PSLRA requirements. It is not enough to assert simply that a defendant is a bad actor. A securities plaintiff must plead with particularity facts supporting a compelling inference of scienter "with respect to **each** act or omission." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 931 (C.D. Cal. 2002) (same). Rather, a plaintiff must allege that a defendant acted with scienter with regard to each statement attributed to that defendant. The TAC does not, and Plaintiff all but concedes as much by failing to even attempt to do so in his Opposition.

Indeed, the complaint in *In re Tesla* only illustrates how dramatically the TAC here falls short. The plaintiffs in that case challenged statements regarding plans to take Tesla private. In pleading scienter, they pointed to "numerous detailed factual allegations," including nearly-contemporaneous emails stating that going private was a "non-starter" and "really difficult." 477 F. Supp. 3d at 929 (citation omitted). Plaintiff's Opposition fails to cite any similarly "detail[ed]" or "factual" allegations because the TAC contains none. Mot. at 13. Further, in pleading scienter, the *In re Tesla* complaint relied in large part on a settlement that had been entered into with the SEC relating to **the same statements challenged in the Plaintiffs' complaint**. 477 F. Supp. 3d at 930-31. That settlement has nothing to do with the statements here.

Only speculative allegations of motive and opportunity remain, along with an *ad hominem* characterization of Mr. Musk as "a liar." Opp'n at 12. Plaintiff's allegations of scienter based on Mr. Musk's efforts to secure handsome compensation and present Tesla as profitable are again conclusory, and Ninth Circuit courts routinely disregard such allegations. *See* Mot. at 13-14. A plaintiff cannot plead scienter based only on "motive and opportunity to enhance a company's business prospects." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002). Likewise, courts "will not conclude that there is fraudulent intent merely because a defendant's compensation

was based in part on such successes." *Rigel*, 697 F.3d at 884.

### C.     The TAC Fails to Plead Reasonable Reliance.

Confronted by the fact that he accused Tesla of fraud before purchasing his first put options, *see* ECF No. 108-3, and his own admission that he suspected various other fraudulent acts even as he continued trading, ¶ 283, Plaintiff attempts to plead reliance by asking this Court to examine only whether he "invest[ed] while aware of ***all*** of Tesla's fraudulent activities impacting the stock price at that time." Opp'n at 14 (emphasis added). Plaintiff fails to cite a single case in support of such a theory. With good reason: that is not the law.  Rather, the law is clear and intuitive: "no one who saw through the fraud would be able to sue for fraud, for he could not have relied directly or indirectly." *See Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009)

Crucially, given his longstanding belief in Tesla's supposed "fraud," whatever reliance Plaintiff claims in the TAC cannot have been ***reasonable***. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). A plaintiff must "trade in ignorance of the fact that the price was affected by the alleged manipulation." *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999). Plaintiff believed he had discovered fraud that the market had not yet detected and shorted Tesla stock based on that belief—even if he also believed that the stock was overvalued for other reasons.[3] *See* Mot. at 12-13. His contrary arguments seek to transform the securities laws into "investor's insurance" for his short sales, permitting him to trade in reliance on his suspicions of fraud, then disclaim them after they prove unprofitable. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

### D.     The TAC Fails to Plead Loss Causation.

Plaintiff's theory of loss causation depends on the speculative chain of inferences that the Tesla Defendants had been committing fraud for years, and had that fraud ever been revealed, Tesla's stock would have declined and Plaintiff's put options would not have expired worthless. Mot. at 14; ¶ 282. Plaintiff's only defense of this flawed theory is a legally incorrect argument that he is not required to plead any corrective disclosure whatsoever. That argument contradicts the Supreme Court's holding in *Dura* that a plaintiff cannot establish loss causation by simply pointing

---

[3] There is no danger of Plaintiff's purported slippery slope where no investor could establish reliance if a company had ever disclosed an earlier fraud. Most investors trade in reliance on the belief that the company is telling the truth, whereas Plaintiff here traded in reliance on the (mistaken) belief that the Tesla Defendants were lying.

to an allegedly inflated purchase price. 544 U.S. at 342-43. Plaintiff's only response is to refer to *Dura*—controlling authority from 2005—as "narrow" and then seek to transform the Ninth Circuit's holding in *First Solar* that a corrective disclosure need not reveal the specific alleged fraud into a rule that no such disclosure need occur *at all*. Opp'n at 15. The court did not so hold. *First Solar* establishes that disclosure of the "underlying facts concealed by fraud" (there, "the revelation of an earnings miss") may support loss causation, even if the market did not "actually learn that the defendant engaged in fraud and react to the fraud itself." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018). The very passage that Plaintiff quotes from *In re Tesla* to support his argument that short-sellers need not plead a corrective disclosure holds the opposite. *See* Opp'n at 15 (quoting 477 F. Supp. 3d at 933). In that case, the short-seller plaintiffs *did* allege that "the stock prices went down as [d]efendants subsequently released partial corrective disclosures," thus supporting their claim that the "false statements were the proximate cause" of their loss. *Id.* at 934. This approach makes good sense: absent a corrective disclosure, it is impossible for Plaintiff to allege that the alleged fraud, and not any of the other "tangle of factors affecting price," caused Tesla's stock to remain high and his options to expire worthless. *Dura*, 544 U.S. at 343.

## V. PLAINTIFF FAILS TO PLEAD MARKET MANIPULATION.

The allegations Plaintiff identifies in support of his market manipulation claim come nowhere close to satisfying Rule 8 or the PSLRA's requirements. His only supportive evidence of a Rule 10b-5(b) allegation based on "failing to disclose" after-hours trades is inexpert and speculative analysis set forth in anonymous Twitter posts. *See* Issue 14 (citing Twitter posts attributing after-hours trading to an ***admittedly*** "unknown individual"). His other claim of market manipulation is a literal conspiracy theory alleging that various proponents of Tesla in the media were acting in cahoots with the Tesla Defendants, with no allegations whatsoever that would make this theory plausible. *See* Issue 15.

## VI. CONCLUSION.

Plaintiff has now filed four complaints in this action. Nothing justifies a fifth. This Court should dismiss the TAC with prejudice.

| | |
|---|---|
| Dated: April 23, 2021 | COOLEY LLP<br><br>By: */s/ Aarti Reddy*<br>      Aarti Reddy<br><br>Attorneys for Defendants<br>Tesla, Inc. and Elon Musk |

248849308