**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **AARON GREENSPAN**,<br><br>Plaintiff,<br><br>v.<br><br>**OMAR QAZI**, et al.,<br><br>Defendants. | Case No. 3:20-cv-03426-JD<br><br>**DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE, CIV. PROC. CODE §425.16, AND MOTION TO DISMISS THIRD AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Time: TBD<br>Date: TBD<br>Before: The Hon. James Donato<br>Ctrm.: 11, 19th Floor |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

ARGUMENT......................................................................................................................................1

    A. The Smick Defendants have shown that the Statements concern an issue of public interest; by contrast, Plaintiff has not satisfied his anti-SLAPP burden ..............................1

        1. The Ninth Circuit has held that federal courts can hear anti-SLAPP motions. ...............1

        2. Plaintiff is not entitled to discovery under Fed. R. Civ. P. 56(d)....................................1

        3. The Statements concern an issue of public interest where tens of thousands of people repeatedly sought out the Statements...................................................................2

        4. Plaintiff has not stated a defamation claim: all relevant factors show that the Statements comprise non-actionable rhetoric and hyperbole ............................................3

        5. Plaintiff has not stated a stalking claim under Civil Code §1708.7: the bulk of Plaintiff's stalking claim duplicates his defamation claim ..................................................6

    B. Plaintiff has not stated a copyright infringement claim: the critique and satire of Authoritas is classic fair use.. .........................................................................................7

    C. Plaintiff has not stated any DMCA claims: plaintiff has not plausibly alleged that CMI was removed, and Plaintiff does not even address his misrepresentation claims ................9

    D. Plaintiff has not alleged basic elements of a market manipulation claim ..........................10

CONCLUSION...................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 9
*Balla v. Hall*,
  59 Cal. App. 5th 652 (2021) ..................................................................................................... 5
*Bolton v. City of Berkeley*,
  No. 19-CV-05212-WHO, 2019 WL 6250927 (N.D. Cal. Nov. 22, 2019) ................................ 7
*de Fontbrune v. Wofsy*,
  409 F. Supp. 3d 823 (N.D. Cal. 2019) ...................................................................................... 7
*Desai v. Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) ................................................................................................... 10
*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) .................................................................................................. 8
*Dworkin v. Hustler Mag. Inc.*,
  867 F.2d 1188 (9th Cir. 1989) .................................................................................................. 6
*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 (2019) ............................................................................................................ 2, 3
*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) .................................................................................................... 8
*Gregory v. McDonnell Douglas Corp.*,
  17 Cal. 3d 596 (1976) ............................................................................................................... 5
*Hasbrouck v. Texaco, Inc.*,
  663 F.2d 930 (9th Cir. 1981) .................................................................................................... 1
*Herring Networks, Inc. v. Maddow*,
  445 F. Supp. 3d 1042 (S.D. Cal. 2020) ..................................................................................... 5
*Hooshmand v. Griffin*,
  No. A147316, 2017 WL 1376370 (Cal. Ct. App. Apr. 17, 2017) ............................................. 5
*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) .................................................................................................. 9
*Info. Control Corp. v. Genesis One Computer Corp.*,
  611 F.2d 781 (9th Cir. 1980) .................................................................................................... 5
*McGarry v. Univ. of San Diego*,
  154 Cal. App. 4th 97 (2007) ..................................................................................................... 5
*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ............................................................................................. 2, 3
*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) .................................................................................................... 3
*Peterson v. Gannett Co. Inc.*,
  No. CV-20-00106-PHX-MTL, 2020 WL 1935520 (D. Ariz. Apr. 22, 2020) .......................... 3
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir.) ............................................................................................................. 1
*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) .................................................................................. 10
*Steep Hill Lab'ys, Inc. v. Moore*,
  No. 18-CV-00373-LB, 2018 WL 1242182 (N.D. Cal. Mar. 8, 2018) ....................................... 7

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,
   786 F.2d 1400 (9th Cir. 1986) .................................................................................................. 8
*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ...................................................................................................... 4
*ZL Techs., Inc. v. Does 1–7*,
   13 Cal. App. 5th 603 (2017) ..................................................................................................... 5

## Statutes

17 U.S.C. §512(f) ............................................................................................................................ 9
17 U.S.C. §1202(b) ......................................................................................................................... 9
Civ. Proc. Code §425.16 ................................................................................................................. 1
Civil Code §1708.7 ................................................................................................................. i, 6, 7

## Rules

Fed. R. Civ. P. 9(b) ....................................................................................................................... 10
Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1
Fed. R. Civ. P. 56(d) ................................................................................................................... i, 1

## Other Authorities

California Bill Analysis, A.B. 1548 Assem., 5/19/1993 ................................................................. 6

# INTRODUCTION[1]

Plaintiff argues that his ongoing quarrel with Omar Qazi ("Qazi") is a pattern of defamation, stalking, and infringement by Qazi. Plaintiff's description is belied by the TAC and the exhibits thereto, which show that the statements and conduct attributed to Qazi consist of juvenile name calling, heated exchanges, and coarse humor, which no reasonable person would understand as assertions of fact or credible threats. As such, the Court should strike Plaintiff's state law claims under anti-SLAPP and dismiss Plaintiff's federal claims under Fed. R. Civ. P. 12(b)(6).

# ARGUMENT

**A.  The Smick Defendants have shown that the Statements concern an issue of public interest; by contrast, Plaintiff has not satisfied his anti-SLAPP burden.**

**1.  The Ninth Circuit has held that federal courts can hear anti-SLAPP motions.**

Plaintiff argues that federal courts cannot hear anti-SLAPP motions. (Opp. 2:20-22.) However, the Ninth Circuit has held the opposite. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018). "District courts are bound by the law of their own circuit. They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be." *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) (internal citations omitted). Thus, this Court may hear the Smick Defendants' anti-SLAPP motion.

**2.  Plaintiff is not entitled to discovery under Fed. R. Civ. P. 56(d).**

Plaintiff argues that he should be allowed discovery under Fed. R. Civ. P. 56(d) before opposing the anti-SLAPP motion. To this end, Plaintiff argues that the Smick Defendants have denied several of the material allegations in the TAC, and thus Fed. R. Civ. P. 56(d) applies to the anti-SLAPP motion. (Opp. 3:21-22.) The problem with Plaintiff's argument is that the anti-SLAPP Motion assumes the truth of the TAC's allegations. Because the anti-SLAPP motion tests the legal sufficiency of the TAC while assuming the truth of the alleged facts, Plaintiff's request for discovery must be denied. *See Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 834.

---

[1] Capitalized terms have the same definitions as those set forth in the Smick Defendants' notice of motion and opening brief.

| Case No. 3:20-cv-03426-JD | 1 | SMICK DEFENDANTS' REPLY ISO MTN TO STRIKE AND DISMISS TAC |

### 3. The Statements concern an issue of public interest where tens of thousands of people repeatedly sought out the Statements.

Anti-SLAPP protects statements made in a public forum in connection with an issue of public interest. Plaintiff alleges that 20,000 people subscribed to the Smick Defendants' Twitter feed. (Opp. 1:11-12.) Plaintiff further alleges that Qazi used this Twitter feed to "focus[] his obsessive attention on Plaintiff and Plaintiff's family." (Opp. 1:12-13.) Thus, Plaintiff necessarily alleges that 20,000 people followed the Smick Defendants' Twitter feed to view Qazi's posts about Plaintiff.[2]

California courts have defined an issue of public interest as "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). Whether a statement contributes to a debate on an issue of public interest "does not turn on a normative evaluation of the substance of the speech." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019). While a statement that is not of interest to the public cannot become one merely because it refers to a subject of widespread interest, when the statement itself is of widespread public interest, prong one of anti-SLAPP is satisfied. *See id.* at 149-50. Here, by Plaintiff's own admission, tens of thousands of people voluntarily followed the Smick Defendants' Twitter feed based on their interest in seeing Plaintiff mocked. (Opp. 1:11-13.)

Plaintiff argues that the Statements do not concern an issue of public interest because the publication of the Statements was equivalent to "shouting lies and hate sufficiently loudly in a public square." (Opp. 6:18-19.) Not so. The difference here is that the viewers of the Statements voluntarily sought out the Smick Defendants' Twitter feed precisely to view the Statements—*i.e.*, Plaintiff admits that the primary purpose of the Twitter feed was to comment on Plaintiff. Thus, viewers followed the Smick Defendants' Twitter feed because they were interested in making fun of Tesla critics, and of Plaintiff in particular. Rather than being equivalent to "shouting lies and hate sufficiently loudly in a public square," the situation here is equivalent to holding an event called "making fun of Aaron Greenspan," which people voluntarily attend because of their interest

---

[2] Plaintiff admits some of the Statements were read by millions. (TAC ¶10.)

Case No. 3:20-cv-03426-JD     2     **SMICK DEFENDANTS' REPLY ISO MTN TO STRIKE AND DISMISS TAC**

1   in the content.

2         Plaintiff also argues that while the Statements may have been of "widespread interest,"
3   they were not of "public interest," and that those two concepts differ. (Opp. 6:15-18.) Not so. As
4   long as a statement contributes in some manner to a debate of widespread interest that statement
5   is of public interest. *See FilmOn.com Inc.*, 7 Cal. 5th at 150-51; *Nygard, Inc*, 159 Cal. App. 4th at
6   1042. Importantly, anti-SLAPP is "not concerned with the social utility of the speech at issue, or
7   the degree to which it propelled the conversation in any particular direction." *FilmOn.com, Inc.* 7
8   Cal. 5th at 151. Here, Plaintiff admits that an enormous audience was interested in the repeated
9   and "obsessive" lampooning of Plaintiff. Regardless of the social utility of such content, the
10  Statements contributed to the public's interest in that subject matter. (TAC ¶54; Opp. 1:10-13.)

11        The Statements also concern an issue of public interest because Plaintiff has repeatedly
12  thrust himself into the public eye. While Plaintiff admits that he was repeatedly covered by major
13  news outlets for his claims that he invented Facebook, Plaintiff argues that this coverage occurred
14  over a decade ago. (Opp. 4:24-25.) However, "once attained, an individual does not
15  lose public figure status." *Peterson v. Gannett Co. Inc.*, No. CV-20-00106-PHX-MTL, 2020 WL
16  1935520, at *6 (D. Ariz. Apr. 22, 2020) (citing *Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th
17  Cir. 1995) ("[E]very court of appeals that has specifically decided this question has concluded that
18  the passage of time does not alter an individual's status as a limited purpose public figure.").)
19  Moreover, Plaintiff admits that he notified multiple journalists about the instant dispute. While
20  Plaintiff claims that he notified these journalists to warn them about Defendants' alleged conduct
21  (and not to obtain media coverage), his argument is simply not credible.

22        In summary, the Statements concern an issue of public interest because 20,000-plus people
23  sought out the Statements, and because Plaintiff has repeatedly thrust himself into the public eye.

24      **4.**    **Plaintiff has not stated a defamation claim: all relevant factors show that the**
25            **Statements comprise non-actionable rhetoric and hyperbole.**

26        Plaintiff has not met his anti-SLAPP burden of stating a claim for defamation. In
27  determining whether a statement is non-actionable opinion or rhetoric, courts look at: a) the general
28  tenor of the entire work, b) the figurative or hyperbolic language within the work, and c) whether

the statement in question is susceptible of being proved true or false. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). Plaintiff argues that these factors reflect a "coordinated disinformation campaign" to destroy Plaintiff's reputation. (Opp. 8:22-23.) In reality, the TAC shows the opposite: juvenile name-calling and coarse online feuding.

<u>Tenor of the Entire Work</u>: Plaintiff argues that websites like "Victims of Aaron Greenspan" are "[l]ike the most advanced state disinformation units." (Opp. 10:20-11:5.) Contrary to Plaintiff's argument, no reasonable person would believe that a website named <vagfoundation.org>, which states, "Plain Shit 'It's plain to see: This fraudulent charity is FULL OF SHIT'" and "Aaron Greenspan Did Not Invent Facebook. He is a failure," contains assertions of fact. (TAC Ex. F.) The same is true for Twitter accounts authored by "Steve Jobs Ghost" and "Plain Shite." The tenor of these sites reflects juvenile taunting rather than an advanced "disinformation campaign."

<u>Figurative and Hyperbolic Language</u>: Plaintiff argues that the Smick Defendants cherrypicked seven examples of hyperbolic statements, which do not reflect the language of the websites and Twitter feeds as a whole. However, other examples of hyperbolic language abound, such as:

- Omar Qazi: "I did make the joke post about Aaron getting beat up by kids or whatever with his contact info I got from PlainSite. Did it for fun because he posted tweeted about me. Deleted it later that day. Nothing personal against Aaron."
- Plain Shite: "DONT MAKE FUN OF ME I WILL SUE YOU."
- Plain Shite: "Yes, it's true. I invented Facebook. If you'd like to hear more about it, follow me on Twitter."
- Steve Jobs Ghost: "does this guy look like he invented facebook."
- Steve Jobs Ghost: "LMFAOOOOO I'm dying[;] what a fucking moron."

(TAC Ex. C.) No reasonable person would believe that websites that feature such language contain assertions of fact.

<u>Specific Statements</u>: Disregarding the mocking tenor of the various websites, Plaintiff argues that reasonable viewers would understand the Statements as assertions of fact because they are accompanied by language such as "true facts" and "true story." (Opp. 9:6-16.) However,

whether a statement is couched as opinion or fact is not dispositive; rather the dispositive question is whether a reasonable fact finder could conclude that the statement declares or implies a provably false assertion of fact. *See McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 113 (2007). "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole . . .'" *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (quoting *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601 (1976)) (ellipsis in original). Thus, a court must analyze the extent of figurative and hyperbolic language and the reasonable expectations of the audience in that particular situation. *See Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1050–51 (S.D. Cal. 2020). Crude and ungrammatical language, satirical tone, and juvenile name-calling all provide additional support for the conclusion that offensive statements are nonactionable opinion. *See ZL Techs., Inc. v. Does 1–7*, 13 Cal. App. 5th 603, 624 (2017). Here, no reasonable person would understand the Statements as assertion of facts, regardless of nearby references to "true facts" or "true story," when the Statements were published on websites like <vagfoundation.org> and by Steve Jobs Ghost in close proximity to juvenile and coarse language, like "Plain Shit 'It's plain to see: This fraudulent charity is FULL OF SHIT.'"

Plaintiff cites to *Balla v. Hall*, 59 Cal. App. 5th 652 (2021) to support his argument that the Statements are not hyperbole or rhetoric. However, in *Balla*, the defendant published his statements on the "Solana Beach Community Forum" on Facebook, using a fake but credible persona, and accused the plaintiff of specific lobbying misconduct. *See id.* at 658, 660, 664. There is no indication in *Balla* that the Solana Beach Community Forum (or the defendant's post there) contained the crude and juvenile language, satirical tenor, and name-calling at issue here. Plaintiff also cites to *Hooshmand v. Griffin*, No. A147316, 2017 WL 1376370, at *3 (Cal. Ct. App. Apr. 17, 2017), but the same distinction exists there. In *Hooshmand*, the statements at issue were published on reputable consumer review websites that contained hallmarks of reliability. Those hallmarks are not present with <vagfoundation.org> and Steve Jobs Ghost's Twitter posts.

In summary, Plaintiff argues that the Statements put "democracy itself at risk" because they "are *exactly* the same as those used by the Russian Federation and other state actors to interfere in elections and other matters of national security." (Opp. 12:21-22.) Plaintiff's argument is simply not plausible. No reasonable person would understand the Statements as anything more than online taunting in a virtual shooting gallery. Thus, Plaintiff has not satisfied his burden of demonstrating a legally sufficient defamation claim.

### 5. Plaintiff has not stated a stalking claim under Civil Code §1708.7: the bulk of Plaintiff's stalking claim duplicates his defamation claim.

Plaintiff has not met his anti-SLAPP burden of stating a claim for civil stalking under Civil Code §1708.7. When a stalking claim is based on the same set of facts as a defamation claim, the stalking claim should be considered duplicative and dismissed. *Cf.* California Bill Analysis, A.B. 1548 Assem., 5/19/1993 ("The tort of 'stalking' is not dissimilar from some existing torts. In that sense, AB 1548 is a modest *extension* of existing law. However, clearly, no existing tort clearly makes actionable the conduct proscribed by AB 1548." (emphasis added)); *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1193, n.3 (9th Cir. 1989) (false light privacy claim duplicative of libel claim). Plaintiff offers no authority or argument to dispute this principle. Moreover, Plaintiff does not challenge that the bulk of his stalking claim is based on Qazi's alleged defamation.

The only conduct that Plaintiff asserts to support his stalking claim, which is not also offered to support his defamation claim, is the following:

- Qazi allegedly called Plaintiff pretending to be "the phone company." (TAC ¶36);

- Qazi allegedly altered Plaintiff's application for a harassment restraining order to state that Plaintiff was seeking protection from "Little Billy Watkins," age 5. (TAC ¶42);

- Qazi allegedly sent texts and a fax to Plaintiff falsely accusing him of possessing child pornography; eight minutes later, Qazi stated that he just wanted to "mess with [Plaintiff] a little bit." (TAC ¶¶43–45);

- Qazi allegedly created a Twitter account impersonating Plaintiff's father, and later Plaintiff's disabled brother, and then posted the statement "I hate my brother" on the account. (TAC ¶¶69–73);

- Qazi allegedly left Plaintiff's father a 50-second voicemail and sent him an email with false statements about Plaintiff (Plaintiff does not specify the contents of the statements). (TAC ¶87);
- Qazi allegedly sent Plaintiff's disabled brother the Facebook message, "hi simon[;] how are you?" (TAC ¶91, Ex. C at 27);
- Qazi allegedly called Plaintiff's father and falsely claimed to work for Quinn Emanuel. (TAC ¶¶121–22);
- Qazi allegedly created an account in Plaintiff's name on a pornographic website. (TAC ¶102); and
- Qazi allegedly Published photographs of Plaintiff's parents as banner and background images for the @WholeMarsBlog Twitter account (TAC ¶¶128, 135).

This conduct does not support a plausible stalking claim. To state a claim under section 1708.7, Plaintiff must allege that Qazi "made a credible threat towards him *with the intent* to place him in reasonable fear." *Bolton v. City of Berkeley*, No. 19-CV-05212-WHO, 2019 WL 6250927, at *4 (N.D. Cal. Nov. 22, 2019) (emphasis in original). None of the above-referenced conduct reflects a credible threat or an intent to put Plaintiff in reasonable fear for his safety, nor has Plaintiff adequately alleged that he reasonably experienced fear. The fact that Qazi allegedly made statements about Plaintiff that were "false and unfounded [and] outrageous," does not mean they were threats. *Steep Hill Lab'ys, Inc. v. Moore*, No. 18-CV-00373-LB, 2018 WL 1242182, at *11 (N.D. Cal. Mar. 8, 2018), *aff'd,* 744 F. App'x 443 (9th Cir. 2018) (brackets in original).

Because Plaintiff has not alleged that Qazi made any credible threats that placed Plaintiff in reasonable fear of his safety, Plaintiff's section 1708.7 claim fails.

**B. Plaintiff has not stated a copyright infringement claim: the critique and satire of *Authoritas* is classic fair use.**

The Smick Defendants' alleged use of portions of *Authoritas* is a fair use. In analyzing fair use, the effect of the alleged infringement on the market value of the copyrighted work is undoubtedly the single most important factor. *See de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 843 (N.D. Cal. 2019). Plaintiff has not alleged that the Smick Defendants' use of *Authoritas*

siphoned off any demand for the book. In fact, Plaintiff completely ignores this factor in his Opposition. Moreover, Plaintiff concedes that any decrease in the commercial demand for *Authoritas* was caused by the "discrediting [of] Plaintiff," and not by supplanting demand. (Opp. at 14:24; TAC ¶232.) "Biting criticism suppresses demand; copyright infringement usurps it. Thus, infringement occurs when a parody supplants the original in markets the original is aimed at, or in which the original is, or has reasonable potential to become, commercially valuable." *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986). Because Plaintiff has not alleged that the Smick Defendants' publication supplanted any demand for *Authoritas*, Plaintiff's copyright infringement claim is barred by the fair use doctrine.

The other fair use factors support this conclusion. In particular, the Smick Defendants' alleged use of *Authoritas* comprises a satire and/or a caustic review, which are both common types of fair use.³ *See Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986) ("A common type of fair use is the quotation of a passage in a book review, as with the case here."). While satire is afforded less leeway than parody under the fair use doctrine, it may still enjoy fair use protection depending on the balance of the remaining factors, like the extent of its commerciality. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994). As discussed above, Plaintiff has not alleged any cognizable commercial effect on *Authoritas*. Further tipping the scales in favor of fair use is the fact that the allegedly infringing work includes commentary and criticism—that Plaintiff did not find the commentary educational because of its "use of expletives" is irrelevant. (TAC ¶229.)

Plaintiff argues that the Smick Defendants' publication cannot be a fair use because it included more than 10% of *Authoritas*, including the work's "heart." (TAC ¶¶227, 236; Opp. 14:4-12.) Plaintiff's argument fails. The fact that a satire or critique evokes the heart of a work does not take it outside the scope of fair use. *See Campbell*, 510 U.S. at 588. The more important question is whether the Smick Defendants used *Authoritas* for a purpose other than the drudgery in working up something fresh; if so, the purpose and character of that use weigh in favor of a fair use finding.

---

³ Contrary to Plaintiff's argument, parody is a type of satire. *See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 n.7 (9th Cir. 1997).

*See id.* at 580. Because the Smick Defendants used *Authoritas* to lampoon Plaintiff, and not as a substitute for authoring their own creative work, the fair use defense bars Plaintiff's copyright infringement claim.

**C.   Plaintiff has not stated any DMCA claims: plaintiff has not plausibly alleged that CMI was removed, and Plaintiff does not even address his misrepresentation claims.**

Plaintiff alleges that the Smick Defendants violated 17 U.S.C. §1202(b) by removing CMI from the Purple Shirt Photograph. (TAC ¶¶238-247.) But as Plaintiff concedes, the Smick Defendants' alleged use of the Purple Shirt Photograph began before Plaintiff affixed CMI to the photograph. Plaintiff has not alleged any facts that suggest that the Smick Defendants re-accessed Plaintiff's website after he posted a new version of the photograph with CMI, downloaded the new version of the photograph, and removed the CMI, as opposed to continuing to use the original version of the Purple Shirt Photograph. "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Moreover, to state a claim under 17 U.S.C. §1202(b), a plaintiff must allege that the defendant knew or had reason to know that the removal of CMI would induce, enable, facilitate, or conceal an infringement. Plaintiff has not alleged such intent by the Smick Defendants. Rather, the TAC's only allegation regarding the Purple Shirt Photograph was that it appeared on websites like <kidneystone.vagfoundation.org> and "Worst Guy Ever." (TAC ¶¶244, 246.) For the reasons discussed above, such use of the Purple Shirt Photograph was a fair use that would not induce, enable, facilitate, or conceal an infringement.

Finally, while Plaintiff has asserted a claim for DMCA misrepresentations under 17 U.S.C. §512(f), Plaintiff fails to address this claim in his Opposition. By contrast, in their opening brief, the Smick Defendants explained that Plaintiff had not plausibly alleged that Qazi made any knowing or material misrepresentations in the takedown notices and counter notice at issue. Thus, the Court should grant the motion to dismiss Plaintiff's §512(f) claim as unopposed.

**D.   Plaintiff has not alleged basic elements of a market manipulation claim.**

To state a claim for market manipulation, a plaintiff must describe the defendant's manipulative acts and explain what effect they had on the market for the securities at issue. *See ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1240 (C.D. Cal. 2015). Further, a plaintiff must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct. *See id.* at 1235.

Plaintiff argues that the Smick Defendants engaged in manipulative acts by establishing a "collection of pseudonymous social media accounts" for the "purpose of increasing Tesla, Inc.'s stock price" and harassing "anyone that might impede that objective." (Opp. 15:15-17.) As an initial matter, such conduct does not amount to a "manipulative act." In the context of market manipulation claims, a "manipulative act" is "virtually a term of art," referring to practices like wash sales, matched orders, or rigged prices, which are intended to mislead investors by artificially affecting market activity. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938–39 (9th Cir. 2009). Pseudonymously operating social media sites for the purpose of praising Tesla simply does not fall within the scope of "manipulative acts."

Even assuming that such conduct could support a market manipulation claim, Plaintiff has alleged no facts indicating that the Smick Defendants engaged in that conduct with the intent to deceive, manipulate, or defraud, let alone with the particularity required by Fed. R. Civ. P. 9(b). The Tweets identified in the TAC simply do not evidence manipulation or an intent to deceive. (TAC ¶¶286-287.) Thus, the Court should dismiss Plaintiff's market manipulation claim.

### CONCLUSION

For the reasons set forth above, the Court should strike Plaintiff's state law claims under California's anti-SLAPP statute and dismiss all of Plaintiff's remaining claims under Rule 12(b)(6).

Respectfully Submitted,

DATED: April 23, 2021

**KRONENBERGER ROSENFELD, LLP**

By:   s/Karl S. Kronenberger
          Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.