1    COOLEY LLP
     JOHN C. DWYER (136533) (dwyerjc@cooley.com)
2    3175 Hanover Street
     Palo Alto, CA  94304-1130
3    Telephone:     (650) 843-5000
     Facsimile:     (650) 849-7400
4
     AARTI REDDY (274889) (areddy@cooley.com)
5    REECE TREVOR (316685) (rtrevor@cooley.com)
     3 Embarcadero Center, 20th Floor
6    San Francisco, CA 94111-4004
     Telephone:     (415) 693-2000
7    Facsimile:     (415) 693-2222

8    Attorneys for Defendants
     TESLA, INC. and ELON MUSK
9

10                   UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14   AARON GREENSPAN,                          Case No. 3:20-cv-03426-JD

15                   Plaintiff,                 **NOTICE OF MOTION AND MOTION;
                                                MEMORANDUM OF POINTS AND
16          v.                                  AUTHORITIES IN SUPPORT OF TESLA
                                                DEFENDANTS' MOTION TO DISMISS
17   OMAR QAZI, SMICK ENTERPRISES, INC.,        PLAINTIFF'S FOURTH AMENDED
     ELON MUSK, and TESLA, INC.,                COMPLAINT**
18
                     Defendants.               Hearing Date: January 13, 2022; 10:00 am
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ................................................................................................ 2

II.     ARGUMENT ..................................................................................................... 3

    A.     Plaintiff Continues to Flout Rule 8's "Short and Plain" Requirement. ................ 3

    B.     Plaintiff Fails to State a Claim for Securities Fraud. ................................. 3

        1.    The 4AC is a defective puzzle pleading...................................... 4

        2.    The 4AC does not plead material misrepresentations or omissions. .......... 4

        3.    The 4AC fails to plead scienter. ............................................... 10

        4.    Plaintiff did not reasonably rely on the statements he challenges. ........... 11

        5.    Plaintiff does not plead that the alleged fraud caused his losses.............. 13

    C.     Plaintiff Fails to State a Claim for Market Manipulation. ..................................... 14

    D.     The Court Should Exercise Its Discretion to Dismiss Plaintiff's State Law
        Claims. ................................................................................................ 15

III.    CONCLUSION ................................................................................................. 15

Cooley LLP
Attorneys at Law
San Francisco

- i -

Tesla Defs.' Motion To Dismiss
Fourth Amended Complaint
Case No. 3:20-cv-03426-JD

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Alphabet, Inc. Sec. Litig.,*
1 F.4th 687 (9th Cir. 2021) ........................................................................... 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................... 3, 4, 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ...................................................................... 14, 15

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ................................................................................ 12, 13

*In re BofI Holding, Inc. Sec. Litig.,*
977 F.3d 781 (9th Cir. 2020) ........................................................................ 13

*City of Chicago v. Int'l Coll. of Surgeons,*
522 U.S. 156 (1997) ...................................................................................... 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
65 F. Supp. 3d 840 (N.D. Cal. 2014) .............................................................. 7

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.,*
963 F. Supp. 2d 1092 (E.D. Wash. 2013) ....................................................... 5

*Coe v. County of Cook,*
162 F.3d 491 (7th Cir. 1998) ........................................................................ 15

*In re Cutera Sec. Litig.,*
610 F.3d 1103 (9th Cir. 2010) ........................................................................ 8

*In re Daou Sys., Inc.,*
411 F.3d 1006 (9th Cir. 2005) ...................................................... 6, 9, 11, 13

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) .................................................................................. 3, 13

*Gilford Partners, L.P. v. Sensormatic Elecs. Corp.,*
1997 WL 570771 (N.D. Ill. Sept. 10, 1997) ............................................... 12

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014) ...................................................................................... 12

*Hampton v. root9B Techs., Inc.,*
897 F.3d 1291 (10th Cir. 2018) ...................................................................... 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

**TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD**

*Jones v. Intelli-Check, Inc.*,
    274 F. Supp. 2d 615 (D.N.J. 2003) ................................................................... 12

*Kipling v. Flex Ltd.*,
    2020 WL 2793463 (N.D. Cal. May 29, 2020) ...................................................... 9

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018)............................................................................. 13

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020).............................................................................. 11

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)................................................................................ 4

*Osher v. JNI Corp.*,
    256 F. Supp. 2d 1144 (S.D. Cal. 2003) ............................................................... 8

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ............................................................... 4

*In re Rigel Pharms., Inc. Sec. Litig.*,
    2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ..................................................... 4

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)......................................................................... 3, 11

*Stark Trading v. Falconbridge Ltd.*,
    552 F.3d 568 (7th Cir. 2009).............................................................................. 12

*Steginsky v. Xcelera, Inc.*,
    2015 WL 1036985 (D. Conn. Mar. 10, 2015) .................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................. 3

*Twinde v. Threshold Pharms. Inc.*,
    2008 WL 2740457 (N.D. Cal. July 11, 2008) ...................................................... 7

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018).............................................................................. 11

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011)................................................................ 14

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)................................................................................ 14

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)............................................................................... 8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

**Statutes**

15 U.S.C.
   § 78t(a) ................................................................................................................. 3
   § 78u-4(b)...................................................................................................... 1, 4, 11
   § 78u-5(c)(1) ...................................................................................................... 7. 9

Securities Exchange Act of 1934
   Section 10(b) ........................................................................................................ 1
   Section 20 ......................................................................................................... 1, 3

**Other Authorities**

Civil Local Rule 3-4(c) ................................................................................................. 3

Federal Rules of Civil Procedure
   Rule 8 ........................................................................................................... 1, 2, 3
   Rule 9 ............................................................................................................... 3, 9
   Rule 12(b)(6) ........................................................................................................ 1
   Rule 41(b) ............................................................................................................ 1

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, on January 13, 2022 in Courtroom 11 of the above-captioned Court, Defendants Tesla, Inc. and Elon Musk (collectively, "Tesla Defendants") will and hereby do move this Court, pursuant to Rules 12(b)(6) and 41(b) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), for an order dismissing Plaintiff Aaron Greenspan's Fourth Amended Complaint ("4AC") with prejudice.  The Motion is based upon the below Memorandum of Points and Authorities; the accompanying Declaration of Aarti G. Reddy ("Reddy Decl.") and Request for Judicial Notice and Incorporation by Reference; all papers on file in this action; and such other and further argument that the Court may consider.

## STATEMENT OF RELIEF SOUGHT

The Tesla Defendants seek dismissal with prejudice of all claims asserted against them.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiff's 4AC meets Rule 8's "short and plain" pleading requirement.

2.     Whether Plaintiff has stated claims against the Tesla Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, and against Mr. Musk under Section 20 of the Exchange Act.

3.     Whether the Court should exercise supplemental jurisdiction over Plaintiff's state law claims against the Tesla Defendants and dismiss them with prejudice.

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff has had five attempts to plead a viable claim.  Nevertheless, the 4AC largely recycles the same allegations this Court previously held to be deficient in dismissing Plaintiff's Third Supplemental and Amended Complaint ("TAC," ECF No. 103).  Once again armed only with a series of wildly speculative and conspiratorial assertions, Plaintiff charges that the Tesla Defendants have engaged in multiple wide-reaching schemes to defraud the investing public and to attack Plaintiff personally.  These allegations do not satisfy Rule 8, much less the PSLRA's heightened standards.  The Court should again dismiss – this time with prejudice.

Cooley LLP
Attorneys at Law
San Francisco

I.    **BACKGROUND**

Tesla is a manufacturer of electric vehicles and other clean-energy technology.   ¶ 1.
Plaintiff is a self-described "data journalist" who has, for years, waged an online campaign aimed
at discrediting the Company.  ¶ 28.[1]  Since at least 2018, Plaintiff has authored tweets, accusatory
emails, and even a 107-page manifesto accusing Tesla and its CEO, Mr. Musk, of misleading
investors and assorted other misconduct.  ¶ 61, Exs. 4-7.  Plaintiff has never limited himself to
simply spreading his misinformation about Tesla and has instead sought to profit from doing so.
In 2018, approximately around the time he started tweeting his accusations against Tesla, Plaintiff
began purchasing put options – and continued to do so for years.  *See* ECF No. 131-1.  Under this
short-selling strategy, Plaintiff bet that Tesla's stock price would go down.  ¶ 252.

But Plaintiff lost his bet.  The supposed fraud Plaintiff fervently decried never materialized,
and Tesla's stock price steadily increased.  ¶ 14.  Meanwhile, each of Plaintiff's put options expired
worthless even as he continued to purchase more.   ¶ 252; ECF No. 131-1.  In 2020, Plaintiff filed
this lawsuit, seeking to recoup those losses.   In a series of five complaints and numerous other
filings, Plaintiff has alleged that the Tesla Defendants were deceiving investors about their finances
and products in violation of the federal securities laws, making libelous remarks about Plaintiff,
stalking Plaintiff, and even collaborating with drug lords.  This Court dismissed each of these
claims when it considered them in the TAC, describing them in such terms as "merely conclusory,"
"well short of the mark," and "entirely too vague and speculative to support an allegation of
securities fraud[.]"  ECF No. 125 at 8, 9, 11.  Although the Court granted Plaintiff leave to amend
since "this [was] the Court's first order on the adequacy of the complaint," it cautioned him that
"[t]he massive complaints filed to date are wholly inconsistent with Rule 8" and that further
disregard for that rule's requirements could result in dismissal.  *Id.* at 21-22.  Plaintiff later filed
the operative 73-page 4AC.  *See* ECF No. 131.

---

[1] All ¶ citations are to the 4AC, ECF No. 131. For the Court's convenience, the Tesla Defendants
also include citations to the page and approximate line numbers of the "Issues" alleged in Plaintiff's
securities claims.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

**TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD**

## II.   ARGUMENT

### A.   Plaintiff Continues to Flout Rule 8's "Short and Plain" Requirement.

Rather than heed this Court's admonition that "[c]omplaints running to 80 or more pages and accompanied by hundreds of pages of exhibits are typically not well-taken under Rule 8," Plaintiff has doubled down on his disregard for Rule 8 and this Court's orders.  ECF No. 125 at 7 (quoting ECF No. 101).  The Court previously limited Plaintiff's 4AC to 75 pages.  ECF No. 130 at 3.  While his 73-page 4AC technically falls within that limit, that is only because he sets forth his voluminous securities claims primarily in a 16-page single-spaced chart that is littered with hyperlinks to external sources that form the basis for many of his allegations.  And although the Court noted that Plaintiff might submit a chart to "help to state the [securities] claims in an organized fashion," *id.*, that was not an invitation for Plaintiff to make an end run around either this Court's multiple orders designed to ensure compliance with Rule 8 or Civil Local Rule 3-4(c)'s requirement that text "be double-spaced with no more than 28 lines per page[.]"  As Plaintiff's only federal claims against the Tesla Defendants are his securities claims, the entire 4AC should be dismissed based on this defect alone.

### B.   Plaintiff Fails to State a Claim for Securities Fraud.

The 4AC fails to allege any of the four key elements of a Rule 10b-5(b) claim: a material misrepresentation or omission, scienter, reliance, or loss causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  To avoid dismissal, Plaintiff must meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA") by "specifiy[ing] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" and "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" for scienter.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (second alteration in original).  Plaintiff's claims do not satisfy the basic plausibility pleading standards that govern all federal complaints, much less the heightened requirements of Rule 9 and the PSLRA.[2]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

---

[2] Because Plaintiff has failed to plead a primary securities law claim, his Section 20(a) claim fails. *See* 15 U.S.C. § 78t(a); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

**TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD**

1  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014).

2  ### 1.  The 4AC is a defective puzzle pleading.

3  The 4AC should be dismissed in its entirety as an improper puzzle pleading that

4  impermissibly "place[s] 'the burden [] on the reader to sort out the statements and match them with

5  the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiff['s] claims." *Primo v.*

6  *Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1111-12 (N.D. Cal. 2013) (citation omitted;

7  second alteration in original).  For instance, in his first "Issue" Plaintiff challenges nine statements

8  concerning "cash and cash equivalents" from three years of SEC filings.  *See* Issue 1 at 49:18-50:3.

9  Plaintiff claims that each of these statements was false or misleading based on, *inter alia*, a 2019

10  *Financial Times* article and Tesla's "fail[ure] to distinguish between cash accessible for use in the

11  United States and cash restricted for use only within the People's Republic of China[.]"  *Id.* at

12  50:19-20.  This litany of allegations about the Tesla Defendants' supposed fraud does not clearly

13  explain which statements each allegation pertains to, or why and how the statement was false or

14  misleading.  Such "puzzle pleading" is unacceptable.  *Primo*, 940 F. Supp. 2d at 1111-12; *see also*

15  *In re Rigel Pharms., Inc. Sec. Litig.*, 2009 WL 5125344, at *7 (N.D. Cal. Dec. 21, 2009).

16  ### 2.  The 4AC does not plead material misrepresentations or omissions.

17  The PSLRA demands dismissal of a private securities complaint that does not plead "the

18  reason or reasons why the statement is misleading[.]"  15 U.S.C. § 78u–4(b)(1)(B).  The 4AC does

19  not clear this bar.  Plaintiff's allegations of falsity are conclusory, speculative, or otherwise do not

20  support even "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

21  Indeed, they are largely unchanged in substance from the allegations in the TAC.  Further,

22  numerous statements that Plaintiff challenges are simply not actionable as a matter of law because

23  they are statutorily-protected, puffery incapable of objective verification, or not even attributable

24  to the Tesla Defendants.  The Court should therefore dismiss the claims in their entirety.

25  **"Cash and Cash Equivalents" (Issue 1).**  Plaintiff contends that Tesla's financial

26  statements "exaggerate[ed] its cash balances" in every Form 10-Q and 10-K that the Company filed

27  between the third quarter of 2018 and the second quarter of 2020.  Issue 1 at 50:6.  Plaintiff's

28  allegations fail the basic test of plausibility. Plaintiff asserts Tesla's publicly-reported cash balances

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

were a whopping "90% lower than reported throughout 2019 and part of 2020." Issue 1 at 51:3-4. Such a dramatic claim is "inherently implausible," and Plaintiff offers no serious explanation or "fair showing of the facts" to lend it credibility. ECF No. 125 at 12. Plaintiff's primary support is a *Financial Times* article in which the author attempted to "reverse engineer" Tesla's cash balances with multiple layers of assumptions and inferences. *See* Ex. 3. The article's author in fact disclaims the article's conclusions by stating he was "not going to pretend this is a slam-dunk, particularly given all the assumptions which underlie [its] inputs[.]" *Id.* This speculative lay analysis of a third-party journalist does not create a plausible inference of fraud. *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1302-03 (10th Cir. 2018) (blog post authored by "cybersecurity expert" did not show falsity). Plaintiff also cites two comments by Mr. Musk suggesting that Tesla experienced financial hardship and "dark[] days" between 2017 and 2019. *See* Issue 1 at 50:14-16. This is a far cry from "an admission that [the Tesla Defendants] signed false financial statements" or exaggerated its cash balances. *Id.* These assertions are mere conclusory allegations that do not even survive the *Iqbal* standard, and clearly fall short of the PSLRA's heightened pleading requirements.

**"Customer Deposits" and "Revenue" (Issue 2).** In Issue 2, Plaintiff contends that the Company's 10-K and 10-Qs filed during the first half of 2020 overstated "customer deposits" on the balance sheets and "revenue" in the income statements because they include funds that Tesla "stole … from customers." *See* Issue 2 at 51:26-52:10. Although his theory of deception is difficult to follow, Plaintiff appears to contend that certain customers made unintentional mobile app purchases for items such as Tesla's full self-driving software, and that Tesla fraudulently reported these payments as "customer deposits" and recognized the cash as revenue. *Id.* The claim lacks any well-pled factual allegations. Plaintiff cites three comments from "Tesla customers on social media" about unintentional in-app purchases totaling about $24,000. This does not make plausible any broader pattern and falls far short of any conceivable materiality standard. *See City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1127 (E.D. Wash. 2013) ("[A] single, anecdotal allegation of one improper loan is insufficient to render Defendants' representations about conservative credit practices and underwriting guidelines false."). Moreover, the 4AC contains no well-pled allegations that Tesla recorded these transactions as deposits or revenues or,

Cooley LLP
Attorneys at Law
San Francisco

- 5 -

Tesla Defs.' Motion To Dismiss
Fourth Amended Complaint
Case No. 3:20-cv-03426-JD

1     if it did, that doing so would run afoul of Generally Accepted Accounting Principles ("GAAP").

2        Further, the Ninth Circuit has made clear that, "[w]hen pleading irregularities in revenue

3     recognition, plaintiffs should allege," *inter alia* "such basic details as the approximate amount by

4     which revenues and earnings were overstated" "the dates of any of the transactions" and the

5     "products involved in the contingent transaction[s]." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016-

6     17 (9th Cir. 2005) (citation omitted). Plaintiff offers none of this detail.

7        **Warranty Costs, Accounts Receivable, and Cost of Revenues (Issues 3, 5 and 6)**.

8     Plaintiff's scattershot attack on the Company's financial statements continues in Issues 3, 5 and 6,

9     alleging that it understated "warranty costs" and "cost of revenues" and overstated "accounts

10     receivables" in its SEC filings. Issues 3, 5 and 6 at 53:6-54:16, 56:14-58:14. As to each, Plaintiff

11     fails to provide the basic facts of the alleged financial misstatements – such as the amount by which

12     each line item was overstated or understated, the detail of any such transactions, or the GAAP rules

13     allegedly violated – or even how any of the challenged statements were false or misleading.

14     Instead, the 4AC offers disjointed and speculative allegations of wrongdoing that are "not clearly

15     connected to an actionable false or misleading statement." ECF 125 at 11.

16        In Issue 3, for example, Plaintiff posits that Tesla has delayed registering vehicles in order

17     to "artificially decrease[]" its costs. Issue 3 at 53:21-23. Yet Plaintiff fails to explain his theory or

18     plead any facts to support an inference that a delay in vehicle registrations would somehow allow

19     Tesla to reduce its "cost of revenues" line item. He does not allege any facts showing, from an

20     accounting perspective, a connection between vehicle registrations and expense recognition.

21     Moreover, as with his other challenges to the Company's financial statements, Plaintiff does not

22     even attempt to quantify the alleged understated costs, failing, as a result, to adequately allege the

23     materiality of any of the alleged misstatements. As to Issue 5, Plaintiff posits that Tesla has

24     misreported its accounts receivable because its "explanations" for "its extremely large accounts

25     receivable balance" are not "consistent with each other or with reality" and have "attracted

26     considerable notice" from third parties – with no further explanation of the alleged fraud at all. *See*

27     Issue 5 at 57:4-12. And as to Issue 6, Plaintiff contends that Tesla somehow misstated warranty

28     costs by "engag[ing] in a scheme to record warranty repairs as 'goodwill' for years." Issue 6 at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

58:2-3.  Again, the 4AC fails to cite any accounting report, email, or confidential witness supporting the claim that any improper accounting occurred regarding these costs.  Plaintiff does not even articulate a basis for his belief that a reference to "goodwill" on a repair invoice equates to the "goodwill" line item on an SEC filing, nor does he explain how such a misclassification would have understated warranty costs, or by what amount, or why this amount would have been material. All of these "speculative allegations … are no substitute for factual allegations demonstrating Defendants' actual assumptions were false, and accordingly do not rise to the level of particularity required by the PSLRA."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 853 (N.D. Cal. 2014).

**Vehicle Deliveries (Issue 4).**    Plaintiff alleges that "Tesla leads investors to think 'delivered' means 'sold'" and that its published vehicle delivery figures were false or misleading as a result.  Issue 4 at 55:8-17.  Yet Plaintiff concedes that Tesla explained exactly what "delivered" meant in *the same documents* where Plaintiff contends the Company misled investors about that term's meaning.  Specifically, he pleads that in the same quarterly press releases containing the challenged statements, Tesla also explained that "we only count a car as delivered if it is transferred to the customer and all paperwork is correct[.]"  *Id.*  This is not fraud.  *See Twinde v. Threshold Pharms. Inc.*, 2008 WL 2740457, at *7 (N.D. Cal. July 11, 2008) (dismissing claim that documents falsely stated that a study decisively evaluated safety of defendant's new drug because "[i]n the same paragraph" as the challenged statement, the company disclosed that "[t]he safety and efficacy of [the drug] for the treatment of symptomatic [disease] will need to be demonstrated in subsequent trials" (citation omitted)).  Furthermore, Tesla's quarterly SEC filings specifically identify the accounting rule governing the recognition of revenues from its automotive sales and explain:  "A majority of our automotive sales revenue is recognized when control transfers upon delivery to customers."  Ex. 1 at 78.  The 4AC fails to allege that this was either the improper accounting standard to apply or that Tesla applied it improperly.

**Robotaxis (Issue 7).**    The 4AC's allegations regarding various 2019 statements about "robotaxis" run squarely into the PSLRA's safe harbor for forward-looking statements about future plans or objectives.  15 U.S.C. § 78u-5(c)(1)(A)(i), (c)(1)(B)(i).   Each of these challenged

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

statements is a classic forward-looking prediction: "[t]here **will** be autonomous robotaxis from Tesla **next year**," "it **will** work in Downtown San Francisco and Downtown Manhattan this year," "what's **expected** by the end of the year," and "autonomous driving **will** transform Tesla into a company with a $500 billion market cap[.]"  Issue 7 at 58:16-23 (emphases added).  The fact that the Company may not have met its predictions is not proof of fraud, as the "safe harbor is designed to protect companies and their officials when they merely fall short of their optimistic projections." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021) (internal quotation marks and citation omitted).  Absent well pled factual allegations that these projections were made with "actual knowledge" that they could not be met, the claim must be dismissed.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010).  Plaintiff fails to allege that Mr. Musk made these statements in 2019 with actual knowledge of their falsity, since all of the supposed evidence of falsity that Plaintiff cites dates from 2020 or even 2021.  *Id*; *see also Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1160 (S.D. Cal. 2003) (email allegedly sent by CEO weeks after forward-looking statement was made did not support inference of actual knowledge).

**Location of Solar Roof Production (Issue 8).**  Plaintiff appears to contend that Tesla misled investors on two occasions that its solar roof parts came from New York.  This claim fails.  First, the 4AC does not allege that Tesla **ever** claimed these parts were exclusively made in New York.  *See* Issue 8 at 60:7-61:12.  Neither challenged statement suggests this; in fact, the first statement does not mention the parts' origin at all.  Second, the 4AC does not allege that this fact was at all material to investors.  Third, Plaintiff offers no plausible evidence that these statements in 2019 and 2020 were false when made.  Plaintiff claims that Tesla shut down a solar tile factory "due to COVID-19" and canceled customer orders "in May 2020," but these later statements neither contradict the challenged statements nor establish that they were false when made.  Issue 8.

**Tesla Semi Production (Issue 9).**  Plaintiff next challenges four statements concerning the future production of the Tesla Semi vehicle.  All of these statements were forward-looking, and Plaintiff fails to plead either that the statements were false or that they were made with actual knowledge of falsity.  Issue 9 at 61:12-62:10.  The challenged statements were made in 2019 and January 2020, yet Plaintiff's only allegations of falsity (or actual knowledge thereof) are later-in-

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

**TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD**

1   time statements from September 2020 and March 2021, and the fact that Tesla did not later hit its

2   targets. *Id.* Moreover, one challenged statement made on the Q1 2019 earnings call was introduced

3   by meaningful cautionary language and that the Company would be making forward-looking

4   statements. Ex. 2 at 4. It is therefore presumptively non-actionable. 15 U.S.C. § 78u-5(c)(1)(A)(i).

5       **Autopilot (Issue 10).** Plaintiff's claims regarding Tesla's Autopilot are neither plausible

6   nor particularized. Plaintiff lists seven challenged statements (two of which are not even

7   attributable to the Tesla Defendants), but he does not specify why and how each is misleading.

8   Instead, he asserts broadly – and with absolutely no evidence – that Tesla's training process for

9   Autopilot is a "myth" and that the Company's "quarterly 'Vehicle Safety Report'" is flawed. FAC

10   Issue 10 at 62:11-64:5. These allegations "are not clearly connected to an actionable false or

11   misleading statement" and thus fall far short of what the PSLRA and Rule 9 require. ECF No. 125

12   at 11; *see also Kipling v. Flex Ltd.*, 2020 WL 2793463, at *19 (N.D. Cal. May 29, 2020) (rejecting

13   allegation that "Defendants were not experiencing any successes on [a new] contract or its

14   automation process" as "conclusory" and "insufficiently particularized" (citation omitted)).

15       **Scrap and Raw Materials (Issue 11).** It is difficult to discern Plaintiff's allegations

16   regarding the purported "amount of scrap, waste and theft of raw materials at Tesla's factories[.]"

17   Issue 11 at 64:5-65:19. Issue 11 describes a hodgepodge of supposed facts, many of which – like

18   that an internal Tesla database suffered an unspecified "poor design" that led to "discrepancies,"

19   and that there was a "practice of deliberately hiding NCM figures from Tesla's CFO" – are simply

20   too conclusory to satisfy applicable pleading standards. *Id.* As for the remaining allegations,

21   Plaintiff again in no way describes how or by how much their purported omission actually rendered

22   Tesla's disclosures regarding various line items misleading. *See Daou*, 411 F.3d at 1016-17.

23       **Product Liability Disclosures (Issue 12).** Finally, Plaintiff alleges that the Company's

24   risk disclosure regarding product liability claims in its 2018 and 2019 10-Ks was misleading,

25   though it is difficult to understand the theory. The risk disclosure states, in part: "Our risks in this

26   area are particularly pronounced given the relatively limited number of vehicles and energy storage

27   products delivered to date and limited field experience of our products." Issue 12 at 65:23-27.

28   Plaintiff's primary argument appears to be that the risk factor was misleading because the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

Company's field experience with its products "was not in any way 'limited.'" *Id.* at 66:2-3. This challenge is nonsensical, as the risk factor emphasized that the risk of product liability suits was "particularly pronounced" due to the limited experience with the products. The statement was not downplaying the risk due to the "limited" field experience, but *emphasizing* it. Indeed, the challenged statement specifically warned the market of the very issue Plaintiff claimed was omitted: that Tesla *was* vulnerable to product liability suits. The plain language of the risk factor thus fatally undercuts Plaintiff's theory. Successful challenges to risk factors in securities cases typically allege that a company describes as theoretical in its filings a risk that had in fact "already come to fruition." *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021). If Plaintiff is pursuing that theory, the 4AC falls short there as well, as the very same risk factor made clear that product liability suits were not just a theoretical risk: "We have experienced and we expect to continue to face claims arising from or related to misuse or claimed failures of new technologies that we are pioneering, including Autopilot in our vehicles." Ex. 1 at 22.

### 3.   The 4AC Fails to Plead Scienter.

In re-pleading scienter, Plaintiff has made no effort to remedy the defects identified by this Court in its Order dismissing the TAC. The 4AC should be dismissed for this independent reason.

<u>First</u>, in its last dismissal order, the Court observed that Plaintiff failed to plead scienter because his complaint was replete with "conclusory and speculative allegations about the Tesla [D]efendants' fraudulent intentions" and because "many of the statements about scienter also lack particularity." ECF 125 at 14. The 4AC does not remedy either of these defects. Plaintiff recycles many of the same defective allegations pled in his defective TAC. *Compare, e.g.*, Issue 9 at 62:8-10 ("The persistent promise of the future product has been used to pump Defendant Tesla's stock price and secure large deposits from interested customers.") *with* TAC Issue 28 at 68:4-15 (same); Issue 10 at 63:7-9 (claiming the "neural network" used for developing autopilot is a "myth") *with* TAC Issue 29 at 68:16-69:5 (same). Indeed, in many instances, Plaintiff has re-pled *the very same allegations that this Court specifically cited as deficient*. *Compare* Issue 3 at 54:6-7 ("Tesla knew that its practices were illegal and likely to cause its customers to break various state laws") *with*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

ECF No. 125 at 14 (citing same at TAC Issue 6).[3]  Plaintiff likewise still relies on the same generic allegations of scienter, including that "Tesla's constant need for outside cash has created a clear incentive … to defraud the market." ¶ 248; *see also* TAC ¶ 277 (alleging same).  This is plainly deficient, as allegations of "motive to boost the company's profitability and stock prices … are not 'specific' or 'particularized.'"  *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *Rigel Pharms.*, 697 F.3d at 884 ("routine corporate objectives" do not suggest scienter).

Plaintiff also continues to resort to the same kinds of *ad hominem* attacks that this Court has already rejected.  *See, e.g.*, ¶ 248 (claiming that Mr. Musk believes "that lying is necessary for survival" and cataloging SEC correspondence unrelated to Plaintiff's claims); ECF No. 125 at 16 (finding allegations of "Musk's known lack of respect for the SEC" and "t-shirts bearing subversive slogans" were "misdirected").  None of these allegations relate to the 4AC's claims of fraud, much less to "***each*** act or omission" it challenges.  15 U.S.C. § 78u–4(b)(2)(A) (emphasis added).

Second, Plaintiff's scienter allegations fail because "[a]llegations that are implausible do not create a strong inference of scienter."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020).  Plaintiff repeatedly advances far-fetched and illogical allegations of scienter, including that Tesla – which produced half a million cars in 2020 and is one of only a handful of companies to reach a market capitalization of one trillion dollars – is a "barely profitable" "Ponzi scheme" that "happens to produce cars." ¶¶ 3, 247.  Such assertions defy credibility and common sense.

### 4. Plaintiff did not reasonably rely on the statements he challenges.

Plaintiff must allege that "but for the fraud, [he] would not have engaged in the transaction at issue[.]" *Daou*, 411 F.3d at 1025.  Far from relying on the alleged fraud, Plaintiff chose to short

---

[3] *Compare* Issue 4 at 55:25-26 ("The choice not to report sales is deliberate, as every other publicly traded automobile manufacturer reports sales.") *with* ECF No. 125 at 14 (citing same at TAC Issue 7); Issue 7 at 59:14-16 ("after lying yet again" about autonomous driving capabilities, Tesla defendants announced intent to raise additional capital "on the basis of claims about autonomy that Defendants knew to be false") *with* ECF No. 125 at 14 (citing similar at TAC Issue 23); Issue 11 at 65:15-16 (unspecified emails were "deliberately modified to minimize the appearance of any problems") *with* ECF No. 125 at 15 (citing same at TAC Issue #30); ¶ 262 ("Defendants Musk and Tesla were charged with securities fraud by the SEC") *with* ECF No. 125 at 15 (citing same at Issue #32).  Plaintiff even continues to plead that the denial of a motion to dismiss in *In re Tesla, Inc. Securities Litigation*, is "evidence" of scienter, despite this Court's finding that the decision is "distinguishable" and "is of no help to Greenspan here."  ECF No. 125 at 14.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

**TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD**

1   Tesla stock because he believed the Company was "the largest Ponzi scheme in history" and that

2   the stock would drop when the "truth" came out. ¶ 3.  That is the opposite of reasonable reliance.

3          In securities fraud cases, courts recognize a rebuttable presumption of reliance on the

4   integrity of market prices where a plaintiff plausibly alleges that the stock was traded in an efficient

5   market.  *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).  The logic of this presumption is

6   straightforward: if a company commits fraud and its stock goes up, an unsuspecting investor who

7   purchases stock "rel[ies] on the price of the stock as a reflection of its value," and, by extension,

8   relies on the fraud.  *Id.* at 244-45 (citation omitted).  But when an investor instead trades based on

9   the belief that defendant's fraud has ***already*** tainted the market price, he is not relying on the belief

10  that the market "reflects all public, material information."  *Halliburton Co. v. Erica P. John Fund,*

11  *Inc.*, 573 U.S. 258, 268 (2014).  "Courts do not presume reliance where a plaintiff voluntarily

12  transacts with her deceivers after detecting the alleged fraud," *Steginsky v. Xcelera, Inc.*, 2015 WL

13  1036985, at *7 (D. Conn. Mar. 10, 2015), or where she "affirmatively believed that [the fraud] had

14  been … withheld from the market[,]" *Gilford Partners, L.P. v. Sensormatic Elecs. Corp.*, 1997 WL

15  570771, at *8 (N.D. Ill. Sept. 10, 1997).  These principles comport with the well-settled rule that

16  "no one who saw through [an alleged] fraud," as Plaintiff claimed he had, "would be able to sue

17  for fraud, for he could not have relied directly or indirectly" on the allegedly fraudulent statement.

18  *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009).

19         Here, far from relying on any statements by the Tesla Defendants, Plaintiff was complaining

20  as early as July and August 2018 – shortly ***before*** he claims to have purchased his first put options

21  in September 2018 –that the Company was "enabling fraud" and evoked "smoke and mirrors," and

22  that Mr. Musk was "violating securities laws."  Exs. 5-7.  In other words, "[i]t was [Plaintiff's]

23  hope that when others acquired the same awareness of [the Tesla Defendants'] past misstatements,

24  there would be heavy selling resulting in a drop in the market and profit on his short position."

25  *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 634 (D.N.J. 2003) (citation omitted) (finding

26  short-seller who believed he had discovered fraud could not show reliance).  Plaintiff continued to

27  publicly complain about the same fraud alleged in the 4AC even as he purchased put options over

28  the next two years.  *See* ECF No. 131-1; Ex. 4 (Jan. 7, 2020 "Reality Check" report cataloging,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

*inter alia*, alleged misclassifications of vehicle repairs and Tesla Semi delays). These judicially-noticeable facts put the lie to Plaintiff's claim that "he had no knowledge of any alleged fraud," save for one tweet by Mr. Musk, when he began purchasing put options. Moreover, Plaintiff's claim that he was aware of fraud at Tesla "severs the link between the alleged misrepresentation and … his decision to trade," thus conclusively rebutting the presumption. *Basic*, 485 U.S. at 248.

### 5.     Plaintiff does not plead that the alleged fraud caused his losses.

Finally, Plaintiff cannot allege a "causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered[.]" *Daou*, 411 F.3d at 1025. Plaintiff offers a highly speculative theory of loss causation that posits that the Tesla Defendants have been committing various acts of fraud for years, and, had that fraud ever been revealed, Tesla's stock would have declined and Plaintiff's put options would not have expired worthless. ¶ 252. Precedent dictates this theory must fail for at least two reasons.

First, the 4AC fails to allege the linchpin of loss causation: any form of corrective disclosure that "provided new information to the market" related to the challenged statements that was "not yet reflected in the company's stock price." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 795 (9th Cir. 2020). Plaintiff alleges that Tesla stock price has been "artificially inflated for years, causing the expiration of TSLA put options that otherwise would have been valuable." ¶ 252. But the Supreme Court rejected this very theory in *Dura*, holding that plaintiffs cannot demonstrate loss causation merely by showing that "the price *on the date of purchase* was inflated because of the misrepresentation." 544 U.S. at 342 (citation omitted). The Court explained that "an initially inflated purchase price *might* mean a later loss," but that such a loss could be the result of factors other than the alleged fraud. *Id.* The Court thus affirmed that a plaintiff must allege losses ***because the truth came to light*** about a misrepresentation. *Id.* at 342-43. In other words, because "it is the underlying facts concealed by fraud that affect the stock price[,]" some revelation of either the fraud or related facts, and a resulting loss, is necessary to establish loss causation. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). Plaintiff pleads none.

Second, courts have recognized that the factual predicate of Plaintiff's claim – that the alleged fraud concealed ***negative*** information – is incompatible with pleading loss causation in

Cooley LLP
Attorneys at Law
San Francisco

analogous short-selling contexts.  A short seller stands to make money when a company's stock price goes down and lose money when the stock price goes up.  *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 753 (S.D.N.Y. 2011).  These principles establish the only way that Plaintiff could plausibly plead loss causation: (1) that Tesla concealed ***positive*** information when he purchased his put options; (2) the revelation of that positive information drove the stock price ***up***; and (3) his put options expired worthless as a result.  Instead, Plaintiff posits that Tesla was concealing negative information and Tesla's stock price would eventually drop if that information was revealed.  When no such revelation came and his options expired, he lost money, and brought this lawsuit.  But "allowing [Plaintiff] to state a claim under these circumstances would permit a short seller in *any* standard misrepresentation case to either win big in the marketplace" when the truth came out and the stock dropped "or win in court by transform[ing] a private securities action into a partial downside insurance policy." *Id.* at 759 (internal quotation marks and citation omitted).  That is why, in every other case permitting a securities claim by a short-seller, the court has required plaintiffs to plead a corrective disclosure.

### C.    Plaintiff Fails to State a Claim for Market Manipulation.

Plaintiff's market manipulation claim must be dismissed because he has failed to allege reliance, loss causation, or scienter, as set forth above.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101-02 (2d Cir. 2007).  Moreover, Plaintiff has failed even to allege a manipulative practice, a term of art that refers to "market activity," "such as wash sales, matched orders, or rigged prices" aimed at "deceiving investors as to how other market participants have valued a security."  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011) (citations omitted).  He likewise fails to "plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants," including "what manipulative acts were performed … when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue."  *ATSI*, 493 F.3d at 102.

The 4AC's discussion of market manipulation simply asserts without elaboration that the Tesla Defendants engaged in "manipulative conduct."  *See, e.g.*, ¶¶ 262, 266 ("Defendants' market manipulation caused Plaintiff's losses.").  Plaintiff's sole allegations of manipulative conduct by

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

1   the Tesla Defendants – as opposed to by Mr. Qazi – is that they "circulat[ed] internal projections

2   to Wall Street analysts in advance of public disclosure," and that Mr. Musk at some unspecified

3   time engaged in (wholly legal) after-hours trading. ¶¶ 263-264.  These allegations do not constitute

4   market manipulation, nor are they pled with particularity.  *ATSI*, 493 F.3d at 102.

5            This leaves only Plaintiff's claim that the Tesla Defendants are somehow liable for Mr.

6   Qazi's alleged "160,000 social media messages full of false and misleading information[.]" ¶¶ 256,

7   7.  This Court already noted that "[i]t is questionable that an enthusiastic promotion of a company

8   and its products by an outside admirer could, by itself, constitute market manipulation."  ECF No.

9   125 at 21.  More importantly, Plaintiff does not plausibly allege that the Tesla Defendants are

10  vicariously liable for his actions.  The 4AC contains only "conclusory allegations that Tesla and

11  Musk were acting 'in concert' with the Smick defendants," and its other claims do not adequately

12  allege an agency relationship.  *Id.* at 16.  It pleads the same types of facts that this Court already

13  rejected as insufficient for vicarious liability, such as that Mr. Musk interacts with Mr. Qazi on

14  Twitter, that Mr. Qazi has attended Tesla events, and that Mr. Musk "allow[ed]" Mr. Qazi to

15  correspond with one of his attorneys.  ¶ 151.  None of this supports any type of agency relationship.

### D.   The Court Should Exercise Its Discretion to Dismiss Plaintiff's State Law Claims.

17           In accordance with the Court's order dismissing the TAC, this Motion is "directed only to"

18  Plaintiff's securities claims "on which the Court's jurisdiction depends."  ECF No. 125 at 22.

19  However, the 4AC's state law claims are virtually indistinguishable from those in the TAC that the

20  Court already dismissed.  The Court should exercise its discretion to reach and dismiss Plaintiff's

21  state law claims as well, since "when a state-law claim is clearly without merit, it invades no state

22  interest – on the contrary, it spares overburdened state courts additional work that they do not want

23  or need – for the federal court to dismiss the claim on the merits rather than invite a further, and

24  futile, round of litigation[.]"  *Coe v. County of Cook*, 162 F.3d 491, 496 (7th Cir. 1998).  Such a

25  decision would well serve "the values of judicial economy, convenience, fairness, and comity[.]"

26  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (citation omitted).

### III.   CONCLUSION

28           For all of the foregoing reasons, the Court should dismiss the 4AC with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -

TESLA DEFS.' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT
CASE NO. 3:20-CV-03426-JD

1   Dated: November 11, 2021                    COOLEY LLP

2                                                By:/s/ Aarti Reddy
                                                    Aarti Reddy
3

4                                                Attorneys for Defendants
                                                 TESLA, INC. and ELON MUSK
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   257488505

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                - 16 -
                                        TESLA DEFS.' MOTION TO DISMISS
                                        FOURTH AMENDED COMPLAINT
                                        CASE NO. 3:20-CV-03426-JD