**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN, | Case No. 3:20-cv-03426-JD |
| Plaintiff, | |
| v. | **DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| OMAR QAZI, et al., | |
| Defendants. | Time:    10:00 a.m. PST<br>Date:    January 13, 2022<br>Before:  The Hon. James Donato<br>Ctrm.:   11, 19th Floor |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2022, at 10:00 a.m., in the above-referenced Court, located in Courtroom 11 of the above-titled Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendants Omar Qazi ("Qazi") and Smick Enterprises, Inc. (collectively, "Smick Defendants"), by and through counsel, will and hereby do move the Court to dismiss all federal claims in the Fourth Amended Complaint ("FAC") against the Smick Defendants pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. If they prevail on their motion to dismiss Counts IV, V, or VI, the Smick Defendants will seek their attorney's fees and costs under 17 U.S.C. §§505 and 1203 by subsequent motion.

Pursuant to the Court's direction in its Order Re Motions to Dismiss and Motion to Strike [D.E. No. 125] ("Prior Order"), the Smick Defendants direct this motion "only to the amended federal claims on which the Court's jurisdiction depends." However, the Smick Defendants reserve all rights to move to strike and move to dismiss all state law claims set forth in the FAC, including pursuant to Code of Civil Procedure §425.16 and Rule 12(b)(6).

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

Respectfully Submitted,

DATED: November 11, 2021

**KRONENBERGER ROSENFELD, LLP**

By: _____s/ Karl S. Kronenberger_____
Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.

---

Case No. 3:20-cv-03426-JD  |  1  |  **SMICK DEFENDANTS' NTC OF MTN AND MTN TO DISMISS FAC; MPA**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ....................................................................................................1

   A. Plaintiff ........................................................................................................................1

   B. The Allegedly Defamatory Statements .......................................................................1

   C. Alleged Copyright Infringement and copyright Misuse ..............................................2

   D. Alleged Securities Fraud .............................................................................................3

   E. Alleged Stalking by the Smick Defendants ................................................................3

   F. Prior Order Dismissing Third Amended and Supplemental Complaint .....................3

STATEMENT OF THE ISSUES ...........................................................................................3

ARGUMENT .........................................................................................................................4

   A. Rule 12(b)(6) Standard ................................................................................................4

   B. Plaintiff has not stated a claim for copyright infringement .........................................4

   C. Plaintiff has not alleged that the Smick Defendants intended to remove CMI in order to infringe, as is necessary to state a claim under 17 U.S.C. §1202(b) ...................7

   D. Plaintiff has not alleged that Qazi intended to make misrepresentations in DMCA notices and counter notices in violation of 17 U.S.C. §512(f) .....................................8

   E. Plaintiff has not stated a §10(b)/Rule 10b-5 claim against the Smick Defendants when he has not alleged a material misrepresentation or scienter .....................................9

   F. Plaintiff has not stated a claim for securities market manipulation ...........................10

   G. The Smick Defendants reserve their right to file an anti-SLAPP motion and a Rule 12(b)(6) mothing regarding Plaintiff's state law claims ...........................................11

CONCLUSION ....................................................................................................................11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
 785 F. Supp. 2d 799 (N.D. Cal. 2011) .................................................................................. 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................ 6

*Automattic Inc. v. Steiner*,
 82 F. Supp. 3d 1011 (N.D. Cal. 2015) .................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................ 6

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ................................................................................................................ 7

*City of Carlsbad v. Shah*,
 850 F. Supp. 2d 1087 (S.D. Cal. 2012) ................................................................................... 9

*de Fontbrune v. Wofsy*,
 409 F. Supp. 3d 823 (N.D. Cal. 2019) .................................................................................... 6

*Desai v. Deutsche Bank Sec. Ltd.*,
 573 F.3d 931 (9th Cir. 2009) ................................................................................................ 13

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
 983 F.3d 443 (9th Cir. 2020) .................................................................................................. 8

*Enttech Media Grp. LLC v. Okularity, Inc.*,
 2020 WL 6888722 (C.D. Cal. Oct. 2, 2020) ......................................................................... 10

*Fisher v. Dees*,
 794 F.2d 432 (9th Cir. 1986) .................................................................................................. 7

*Free Speech Sys., LLC v. Menzel*,
 390 F. Supp. 3d 1162 (N.D. Cal. 2019) .................................................................................. 6

*Google LLC v. Oracle Am., Inc.*,
 141 S. Ct. 1183 (2021) ............................................................................................................ 8

*In re DMCA Subpoena to Reddit, Inc.*,
 441 F. Supp. 3d 875 (N.D. Cal. 2020) ................................................................................ 7, 8

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) ................................................................................................ 6

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*,
 184 F. Supp. 2d 991 (N.D. Cal. 2001) .................................................................................. 11

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ................................................................................................ 11

*Lenz v. Universal Music Corp.*,
 815 F.3d 1145 (9th Cir. 2016) .............................................................................................. 10

*McLellan v. Fitbit, Inc.*,
 2018 WL 2688781 (N.D. Cal. June 5, 2018) .......................................................................... 6

*Monge v. Maya Mags., Inc.*,
 688 F.3d 1164 (9th Cir. 2012) ................................................................................................ 8

*Mulquin v. Nektar Therapeutics*,
 510 F. Supp. 3d 854 (N.D. Cal. 2020) .................................................................................. 12

*Nguyen Gardner v. Chevron Capital Corp.*,
 2015 WL 12976114 (N.D. Cal. Aug. 27, 2015) ...................................................................... 6

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) .................................................................................................. 12
*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
  868 F. Supp. 2d 962 (C.D. Cal. 2012) ...................................................................................... 8
*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) .................................................................................................. 11
*Peterman v. Republican Nat'l Comm.*,
  369 F. Supp. 3d 1053 (D. Mont. 2019) ..................................................................................... 7
*Rossi v. Motion Picture Ass'n of Am. Inc.*,
  391 F.3d 1000 (9th Cir.2004) ................................................................................................. 10
*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) ............................................................................ 12, 13
*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*,
  804 F. App'x 668 (9th Cir. 2020) ............................................................................................. 9
*Stebbins v. Polano*,
  2021 WL 2682339 (N.D. Cal. June 30, 2021) ........................................................................ 10
*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
  953 F.3d 638 (9th Cir. 2020) .................................................................................................... 8
*Usher v. City of Los Angeles*,
  828 F.2d 556 (9th Cir. 1987) .................................................................................................... 6
*Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*,
  447 F.3d 769 (9th Cir. 2006) .................................................................................................... 7

**Statutes**

15 U.S.C. §78 ................................................................................................................................ 12
17 U.S.C. §505 ................................................................................................................................ 1
17 U.S.C. §512(f) .................................................................................................................... 10, 11
17 U.S.C. §1202(b) ......................................................................................................................... 9
17 U.S.C. §1203 .............................................................................................................................. 1

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................................. 6
Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 3, 5, 6

**Regulations**

17 C.F.R. 240.10b-5 ...................................................................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The parties, who have rival views about Tesla, have a history of raucous public debate and exchanging insults on Twitter and other websites. In his Fourth Amended Complaint ("FAC"), Plaintiff accuses Defendants Omar Qazi and Smick Enterprises, Inc. (collectively, the "Smick Defendants") of defaming him, stalking him, infringing on his copyrights, and violating U.S. securities laws by making posts on social media. Pursuant to the Court's instruction, this brief only addresses Plaintiff's federal claims (i.e. Plaintiff's copyright and securities claims).

Plaintiff's federal claims fail. Plaintiff's securities claims against the Smick Defendants are based on a handful of innocuous social media posts. Plaintiff has not alleged that these social media posts contain any misrepresentations. Nor has Plaintiff alleged the materiality, scienter, or market manipulation necessary to support his securities claims.

Plaintiff's copyright claims also fail. The Smick Defendants' alleged use of portions of Plaintiff's autobiography was a fair use that lampooned the autobiography rather than usurping any market for it. Moreover, Plaintiff has not alleged that the Smick Defendants removed Copyright Management Information ("CMI") from Plaintiff's "Purple Shirt Photograph," and Plaintiff has not alleged that Qazi intended to make any misrepresentation in a DMCA notice.

For these reasons, the Court should dismiss Plaintiff's federal claims under Fed. R. Civ. P. ("Rule") 12(b)(6). Additionally, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims or should permit the Smick Defendants to address those claims through a special motion to strike under Code of Civil Procedure §425.16 ("anti-SLAPP") and a motion to dismiss under Rule 12(b)(6).

## STATEMENT OF FACTS

**A.   Plaintiff**

Plaintiff is an investor who has held put options in Tesla stock, and who claims that Tesla "is the largest Ponzi scheme in history." (FAC ¶¶3, 27.)

**B.   The Allegedly Defamatory Statements**

Plaintiff alleges that since January 2019, the Smick Defendants have posted false and

disparaging statements about Plaintiff on Twitter and various websites, including statements that:

- Falsely accused Plaintiff of fraud, including in connection with Plaintiff's "fake charity";
- Falsely accused Plaintiff of stalking, harassment, extortion, identity theft, and cyberstalking;
- Falsely accused Plaintiff of sexual fixations, possessing child pornography, and rape;
- Falsely claimed that Plaintiff suffers from mental illness;
- Falsely implied that Plaintiff sent a Tesla fan a death threat and would resort to violence;
- Falsely claimed that a social media platform Plaintiff created in college stole passwords;
- Falsely claimed that Plaintiff's FaceCash business was shut down for regulatory violations;
- Falsely claimed that Plaintiff had endorsed Adolph Hitler.

(collectively, the "Statements"). (FAC ¶139.)

### C. Alleged Copyright Infringement and Copyright Misuse

Plaintiff alleges that Qazi posted lengthy passages from Plaintiff's autobiography, *Authoritas*, on Twitter and other websites. (FAC ¶¶196-98.) The Smick Defendants' alleged use of *Authoritas* included the addition of titles such as "How Never to Get Laid," "Aaron Greenspan on his Hair," and "Yer a Wizard Aaron," and it ends with the following statement: "The sad story of a smart coder who failed time and time again because of his terrible social skills. He has never changed. He doesn't know how to talk to people, only threaten them. That's why he'll always be a huge loser, in my opinion." (Second Amended Complaint [D.E. 70] ("SAC") Ex. U.) After Plaintiff sent DMCA takedown notices regarding this use of *Authoritas,* Qazi allegedly sent counter notices, claiming the removal of the material was a result of mistake or misidentification. (FAC ¶¶229-30.)

Plaintiff also alleges that the Smick Defendants sent three DMCA takedown notices regarding material that Plaintiff had published as "part of a journalistic endeavor" — two of the notices concerned a video of a Tesla driving through a stoplight, and one concerned a fundraising website for Smick Enterprises. (FAC ¶¶225-235.)

Finally, Plaintiff alleges that Qazi removed the copyright notice from a photo of Plaintiff wearing a purple shirt and then repeatedly published the photo on <vagfoundation.org>. (FAC ¶¶210-222.)

### D. Alleged Securities Fraud

Plaintiff alleges that Qazi published the following two tweets, which Plaintiff alleges were misleading or fraudulent and violated federal securities laws:

- "I wish I had the words to describe how amazing AutoPilot is. It's the eigth *[sic]* wonder of the world."

- "So did Tesla lie about having the lowest probability of injury of any car? No, it didn't, and nobody is saying it did. The Government's own numbers above confirm what Tesla is saying. The NHTSA just only wants people to use the star rating. But Teslas are more safe *[sic]*."

(FAC ¶245 (No. 10).) Plaintiff also alleges that the Smick Defendants engaged in market manipulation in violation of federal securities laws by publishing, "that is why we do it," in response to a third-party comment that thanked Qazi for his "funny, informative, thought provoking & aggressive tweets against Tesla FUD [that] inspired me to purchase Tesla shares in April & March of 2019." (FAC ¶258.)

### E. Alleged Stalking by the Smick Defendants

Plaintiff alleges that the Smick Defendants engaged in various other conduct that constitutes stalking in violation of Civil Code §1708.7. (FAC ¶¶169-192.)

### F. Prior Order Dismissing Third Amended and Supplemental Complaint

On June 23, 2021, the Court entered an Order Re Motions to Dismiss and Motion to Strike, [D.E. No. 125] ("Prior Order"), whereby it: a) dismissed all of Plaintiff's federal claims against all Defendants; b) dismissed all of Plaintiff's state law claims against Elon Musk and Tesla, Inc. (collectively, the "Tesla Defendants"); c) declined to exercise supplemental jurisdiction over Plaintiff's state law claims against the Smick Defendants; and d) granted Plaintiff leave to file a Fourth Amended Complaint. The Court noted that "[n]o new parties or claims may be added without the Court's prior approval." (Prior Order at 22:1-2.)

## STATEMENT OF THE ISSUES

1. Whether the Court should dismiss Plaintiff's federal claims under Rule 12(b)(6)?

//

//

# ARGUMENT

### A.   Rule 12(b)(6) Standard

In its Prior Order, the Court explained the standard for deciding Rule 12(b)(6) motions:

> Well-established standards govern the motions to dismiss. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule, and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In evaluating a motion to dismiss, the Court assumes that the plaintiff's allegations are true and draws all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a pro se plaintiff, Greenspan gets a liberal construction of his complaint and the benefit of any doubts, but he still must satisfy the requirements of Rule 8 and state facts sufficient to allege a plausible claim. *See Nguyen Gardner v. Chevron Capital Corp.*, No. 15-cv-01514-JD, 2015 WL 12976114, at *1 (N.D. Cal. Aug. 27, 2015).

(Prior Order at 6:4-22.)

### B.   Plaintiff has not stated a claim for copyright infringement.

Plaintiff alleges that the Smick Defendants infringed the copyright in Plaintiff's autobiography, *Authoritas*, by publishing extended passages from the book on multiple Twitter accounts and websites. (FAC ¶196.) The fair use doctrine bars Plaintiff's claim. Though fair use is a mixed question of law and fact, it may be decided on a motion to dismiss if there are no material facts in dispute. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174 (N.D. Cal. 2019).

The Copyright Act outlines four non-exclusive factors for analyzing fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *See Free Speech Sys., LLC*, 390 F. Supp. 3d at 1173-74. The effect

Case No. 3:20-cv-03426-JD                    4                    SMICK DEFENDANTS' NTC OF MTN AND
                                                                    MTN TO DISMISS FAC; MPA

of the alleged infringement on the market value of the copyrighted work is undoubtedly the single most important element. *See de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 843 (N.D. Cal. 2019). This Court has noted that a use that has no demonstrable effect on the potential market for, or value of, a copyrighted work need not be prohibited to protect the incentive to create. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 885–86 (N.D. Cal. 2020). Moreover, "a diversion or suppression of demand from criticism is not a cognizable copyright harm." *Id.* at 886 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 593 (1994). "[T]he role of the courts is to distinguish between "[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it." *Id.* (quoting *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986) (brackets in original)).

Plaintiff claims that the harm to *Authoritas's* market is shown by the fact that "*Authoritas* frequently sold between 1-4 e-book units per month from April 2008 through June 2020," but only had one sale (to Qazi) since July 2020. (FAC ¶207.) However, it is obvious that any decrease in sales did not result from infringement, but from a lack of interest in *Authoritas* after a decade on the market. Plaintiff fails to identify the level of sales immediately before the alleged infringement, instead adopting a 12-year timeframe for his sales average. Even then, Plaintiff describes his sales obliquely, stating that he "frequently" sold "between 1-4 e-book units per month." (FAC ¶207.) Even if Plaintiff had lost sales from the alleged infringement, those lost sales did not occur as a result of market displacement, but from the biting criticism of Plaintiff's autobiography. *See Peterman v. Republican Nat'l Comm.*, 369 F. Supp. 3d 1053, 1066 (D. Mont. 2019). Thus, the single most important fair use factor weighs heavily in favor of fair use.

The remaining factors also weigh in favor of fair use or are neutral. For the first factor, courts consider whether the defendant changed the plaintiff's copyrighted work and/or used the plaintiff's work in a different context such that the plaintiff's work was transformed into a new creation. *See Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). As part of this inquiry, courts also look at whether the defendant's use was commercial in nature. *See id.* Here, the Smick Defendants used *Authoritas* to lampoon Plaintiff, not to describe Plaintiff's experience at Harvard college. Moreover, the Smick Defendants' use of *Authoritas* contains some

transformative commentary. (SAC [D.E. 70-21] Ex. U.) While Plaintiff attempts to convert the Smick Defendants' use into a commercial endeavor by pointing to the presence of banner ads (FAC ¶199), this conclusion is not reasonable or plausible. Finally, nobody would confuse the Smick Defendants' alleged use of *Authoritas* on websites like <kidneystone.vagfoundation.com> as the same work or the same commercial context as Plaintiff's e-book listing on Amazon. (SAC [D.E. 70-21] Ex. U.) *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. at 884 (use of religious organization's copyrighted ad and chart on social media was transformative, as would support fair use; while user copied materials largely in their original and unaltered states, he used them for criticism and commentary in manner fundamentally at odds with organization's original purposes).

For the second fair use factor, courts look at whether the work is fiction versus non-fiction and whether the work serves an artistic versus a utilitarian function. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021). Creative works are closer to the core of intended copyright protection than informational works, making it more difficult to establish fair use protection when the former works are copied. *See Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 455 (9th Cir. 2020). Here, *Authoritas* is a non-fiction work, which describes Plaintiff's life at Harvard College. (FAC ¶197.) Thus, this factor weighs in favor of fair use.

The third fair use factor — i.e., the amount of the work used — is "a flexible one, rather than a simple determination of the percentage of the copyrighted work used." *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1179 (9th Cir. 2012). "[T]he extent of permissible copying varies with the purpose and character of the use." *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 650 (9th Cir. 2020). Courts look at the following three factors in evaluating this factor: 1) the degree of public recognition of the original work; 2) the ease of conjuring up the original work in the chosen medium; and 3) whether the overriding purpose was to parody the original or whether it had another purpose. *See Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 980–81 (C.D. Cal. 2012). Here, these factors weigh in favor of fair use in that: 1) there is little public recognition of *Authoritas*, given that it has sold only 1-4 copies per month for the last twelve years; 2) it is difficult to lampoon an autobiography without

using exact excerpts; and 3) the only purpose of the Smick Defendants' alleged use of *Authoritas* was to lampoon the work. (FAC ¶201 (alleging purpose of Smick Defendants' alleged use of *Authoritas*)). While Plaintiff alleges that the Smick Defendants copied extended passages from *Authoritas*, Plaintiff does not explain why this was more than reasonably necessary to communicate the message — i.e. to lampoon Plaintiff. Thus, this factor is neutral.

Based on the above analysis of the fair use factors, Plaintiff's copyright infringement claim is barred by the fair use doctrine.

**C.  Plaintiff has not alleged that the Smick Defendants intended to remove CMI in order to infringe, as is necessary to state a claim under 17 U.S.C. §1202(b).**

Plaintiff claims that the Smick Defendants violated 17 U.S.C. §1202(b) by removing CMI from Plaintiff's "Purple Shirt Photograph." To state a §1202(b) claim, a plaintiff must allege that the defendant knew or had reason to know that the removal of CMI would induce, enable, facilitate, or conceal an infringement. *See* 17 U.S.C. §1202(b). Because the Smick Defendants' alleged use of the Purple Shirt Photograph was a fair use, they could not have intended to induce infringement.

Moreover, Plaintiff has not plausibly alleged that the Smick Defendants removed CMI from the Purple Shirt Photo because the CMI was in Plaintiff's website footer and not on the photograph when the Smick Defendants supposedly copied the photograph. *See SellPoolSuppliesOnline.com, LLC v. Ugly Pools Arizona, Inc.*, 804 F. App'x 668, 670–71 (9th Cir. 2020). Plaintiff has tried to obfuscate his prior allegation that the Smick Defendants first copied the Purple Shirt Photograph before Plaintiff affixed CMI to the photograph. (*compare* First Amended Complaint [D.E. 20] ¶228 (alleging removal of CMI before 07/02/20) *with* FAC ¶¶215-217 (alleging affixation of CMI to actual photograph on July 19, 2020.) However, nothing in the FAC suggests that the Smick Defendants accessed the new version of the Purple Shirt Photograph after July 19, 2020, as opposed to continuing to use the old version that never had CMI.

Even if Plaintiff could allege that the Smick Defendants removed CMI from the new version of the Purple Shirt Photograph, his §1202 claim would still fail. "The first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1102

(S.D. Cal. 2012). While courts in the Ninth Circuit have not addressed whether this principle applies to a §1202(b) claim, the reasoning logically extends.

### D. Plaintiff has not alleged that Qazi intended to make misrepresentations in DMCA notices and counter notices in violation of 17 U.S.C. §512(f).

Plaintiff claims that Qazi violated 17 U.S.C. §512(f) by making misrepresentations in three DMCA takedown notices and in one counter notice. To state a claim under §512(f) as to a takedown notice, a plaintiff must allege that the defendant knowingly and materially misrepresented that copyright infringement occurred, that the service provider relied on such misrepresentation, and that the plaintiff was injured as a result. *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026–27 (N.D. Cal. 2015). "In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153-54 (9th Cir. 2016) (quoting *Rossi v. Motion Picture Ass'n of Am. Inc.,* 391 F.3d 1000 (9th Cir.2004)). "A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Id.*

Where the alleged misrepresentation concerns the defendant's failure to consider fair use, the plaintiff must allege that the defendant subjectively believed that the plaintiff's use was a protected fair use but submitted a takedown notice anyway. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016); *Enttech Media Grp. LLC v. Okularity, Inc.*, No. 220CV06298RGKEX, 2020 WL 6888722, at *5 (C.D. Cal. Oct. 2, 2020). The test is similar for a §512(f) claim regarding fair use in a counter notice: a plaintiff must allege that the defendant did not have a subjective good faith belief that his use of the plaintiff's material was a fair use but submitted a counter notice anyway. *See Stebbins v. Polano*, No. 21-CV-04184-JSC, 2021 WL 2682339, at *3 (N.D. Cal. June 30, 2021) (dismissing §512(f) claim where plaintiff did not allege a knowing misrepresentation even though plaintiff alleged that the counter notice was false, frivolous, and undertaken as part of a pattern of harassment).

Plaintiff has not alleged that Qazi made knowing and material misrepresentations in the three takedown notices and one counter notice at issue. As to the counter notice, Qazi's alleged

use of *Authoritas* qualifies for fair use protection (as discussed above). Thus, Qazi could not have made a misrepresentation as to the fair use of *Authoritas*. As to the three takedown notices, Plaintiff alleges that his use of Qazi's materials was "part of a journalistic endeavor" protected by the fair use doctrine, and that Qazi made false statements regarding the same. (FAC ¶¶227-228, 233-234, 236-237.) However, Plaintiff has not alleged that Qazi failed to consider the fair use doctrine or that his determination that the doctrine did not apply was made in bad faith as opposed to an unknowing, but perhaps unreasonable, mistake. Nor has Plaintiff alleged that he was injured as a result of the DMCA notices. Thus, Plaintiff's §512(f) claim fails.

### E. Plaintiff has not stated a §10(b)/Rule 10b-5 claim against the Smick Defendants when he has not alleged a material misrepresentation or scienter.

"To plead a claim under Section 10(b) and Rule 10b-5, the plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."[1] *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014). A statement is false "when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). "[V]ague and amorphous statements do not give rise to liability for securities fraud, since reasonable investors do not consider such puffery material when making an investment decision." *In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1005 (N.D. Cal. 2001). Rather, misleading statements must be capable of objective verification. *See Khoja*, 899 F.3d at 1008. Plaintiff accuses Qazi of making two misrepresentations:

- "I wish I had the words to describe how amazing AutoPilot is. It's the eigth *[sic]* wonder of the world."

- "So did Tesla lie about having the lowest probability of injury of any car? No, it didn't, and nobody is saying it did. The Government's own numbers above confirm what Tesla is saying. The NHTSA just only wants people to use the star rating. But Teslas are more safe *[sic]*."

---

[1] Plaintiff's Count VII for violation of section 10(b) of the Exchange Act and Rule 10b-5 appears for the first time against the Smick Defendants in the FAC. However, the Court instructed Plaintiff that he could not add new claims or parties without leave of the Court. (Prior Order at 22:1-2.)

1  The first statement is puffery. And Plaintiff does not explain how the second statement is false
2  and/or not opinion. These statements cannot support a §10(b)/10b-5 claim.
3        Moreover, Plaintiff cannot plausibly explain how these two statements were material. A
4  statement is material if there is a substantial likelihood that a reasonable investor would have acted
5  differently if the statement had not been made or the truth had been disclosed. *See Mulquin v.*
6  *Nektar Therapeutics*, 510 F. Supp. 3d 854, 865 (N.D. Cal. 2020). A reasonable investor would not
7  have relied on these two statements, which were published on a Twitter feed authored by "Steve
8  Jobs Ghost," described as a "bottomless font of Muskolatry" (FAC ¶57), and containing posts like
9  an altered version of Plaintiff's restraining order application, seeking protection from "Little Billy
10 Watkins," age "5." (FAC ¶46.)
11       Moreover, Plaintiff has not adequately pled Qazi's scienter — i.e., Plaintiff has not
12 "state[d] with particularity facts giving rise to a strong inference that the defendant acted with the
13 required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see also Nguyen v. Endologix, Inc.*, 962 F.3d
14 405, 414 (9th Cir. 2020) ("The PSLRA's 'strong inference' requirement has teeth. It is an exacting
15 pleading obligation that presents no small hurdle for the securities fraud plaintiff." (cleaned up)).
16 The state of mind required to meet the scienter element is an intent to defraud or deliberate
17 recklessness regarding the falsity of the challenged statements. *See Nguyen*, 962 F.3d at 414. The
18 FAC contains no allegations that Qazi acted with an intent to defraud in making the two statements.

19 **F.    Plaintiff has not stated a claim for securities market manipulation.**

20       To state a claim for market manipulation under section 10(b) of the Exchange Act, 15
21 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5, a plaintiff must allege: (1) manipulative
22 acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of
23 manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered
24 by the defendant's use of the mails or any facility of a national securities exchange. *See*
25 *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1236 (C.D. Cal. 2015). A
26 plaintiff must identify what manipulative acts were performed, which defendants performed them,
27 when they were performed, and what effect the scheme had on the market for the securities at
28 issue. *See ScripsAmerica, Inc.* 119 F. Supp. 3d at 1240. "Section 10(b) market manipulation

claims, as other claims under the Exchange Act, must be pled with 'exacting' particularity." *See Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 811 (N.D. Cal. 2011).

Manipulation refers to practices such as wash sales, matched orders, or rigged prices, which are intended to mislead investors by artificially affecting market activity. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938–39 (9th Cir. 2009). The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators. *See ScripsAmerica, Inc.*, 119 F. Supp. 3d at 1237. Allegations of misrepresentations alone cannot support a market manipulation claim. *See id.* at 1237-47. Rather, a plaintiff must identify wash sales, matched orders, rigged prices, or some other manipulative act intended to mislead investors by artificially affecting market activity. *See id*.

Plaintiff vaguely attributes 160,000 social media posts to the Smick Defendants (and the other Defendants) and alleges that they misleadingly promoted Tesla products, Tesla stock, and denigrated short-sellers. (FAC ¶256.) However, Plaintiff has not identified any specific misleading statement by the Smick Defendants, any deception of investors by the Smick Defendants' statements, nor a plausible allegation of the Smick Defendants' scienter. Thus, Plaintiff's market manipulation claim fails.

**G.   The Smick Defendants reserve their right to file an anti-SLAPP motion and a Rule 12(b)(6) motion regarding Plaintiff's state law claims.**

In its Prior Order, the Court stated, "A motion to dismiss the fourth amended complaint should be directed only to the amended federal claims on which the Court's jurisdiction depends. The state law claims will be taken up later as warranted." (Prior Order at 22:4-6.) Based on this instruction, the Smick Defendants have only addressed Plaintiff's federal claims in this brief. However, the Smick Defendants reserve the right to move to strike and/or move to dismiss Plaintiff's state law claims, including under anti-SLAPP and Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, the Court should dismiss all of Plaintiff's federal claims under Rule 12(b)(6). Additionally, the Court should decline to exercise supplemental jurisdiction

over Plaintiff's state law claims or should permit the Smick Defendants to address the state law claims through an anti-SLAPP motion and/or a motion to dismiss under Rule 12(b)(6).

Respectfully Submitted,

DATED: November 11, 2021

**KRONENBERGER ROSENFELD, LLP**

By:     s/Karl S. Kronenberger
          Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.