1

2

3

4

Aaron Greenspan (*Pro Se*)
956 Carolina Street
San Francisco, CA  94107-3337
Phone: +1 415 670 9350
Fax: +1 415 373 3959
E-Mail: aaron.greenspan@plainsite.org

5

6

7

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

8

9

10

11

12

13

14

15

AARON GREENSPAN,

    Plaintiff,

       v.

OMAR QAZI, SMICK ENTERPRISES, INC.,
ELON MUSK, and TESLA, INC.,

    Defendants.

Case No. 3:20-cv-03426-JD

**PLAINTIFF'S OPPOSITION TO
TESLA DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S
FOURTH AMENDED
COMPLAINT**

16

17

Date: January 13, 2022
Time: 10:00 A.M. PST
Courtroom: 11, 19th Floor

Judge: Hon. James Donato
Complaint Filed: May 20, 2020
4AC Filed: August 13, 2021

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF ISSUES ....................................................................................2

III. FACTUAL BACKGROUND ..................................................................................2

IV. ARGUMENT ..........................................................................................................3

    A.   The 4AC Does Not Violate Federal Rule of Civil Procedure 8 ..................3

    B.   Plaintiff Has Adequately Pled a Claim for Securities Fraud ......................5

        1.   Note on Tesla Defendants' "*Twombly/Iqbal* Compulsion" .........................5

        2.   Legal Standards ...........................................................................................5

        3.   The 4AC Pleads Several Material Misrepresentations and Omissions .......6

        4.   Plaintiff Has Adequately Pled A Strong Inference of Scienter ...............11

        5.   Plaintiff Has Adequately Pled Reliance ...................................................13

        6.   Plaintiff Has Adequately Pled Loss Causation .........................................14

    C.   Plaintiff Has Adequately Pled Manipulation and a Section 20(a) Violation ..................15

    D.   Tesla Defendants Violated The Court's Order By Addressing State Claims .................15

V.  CONCLUSION .....................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................5

*Barker ex rel. US v. Col. Reg. Healthcare*, 977 F. Supp. 2d 1341, 1346 (M.D. Georgia 2013) .....5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............5

*Capp v. County of San Diego*, 940 F. 3d 1046 (9th Cir. 2019) ......................................................6

*Const. Laborers Pension For S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515 (S.D.N.Y. 2020) ..........4

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 346, 342 (2005) .............................................................15

*Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605
    (N.D. Cal. 2019) ..........................................................................................................................14

*Gienko, et al v. Padda, et al*, Case No. 1:00-cv-05070 (N.D. Ill. February 27, 2002) ...................4

*Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) ................................................................14

*In Re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-YGR
    (N.D. Cal. June 2, 2020) ..............................................................................................................4

*In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) ........................................................14

*In re Global Crossing Ltd. Securities Litigation*, 313 F. Supp. 2d 189, 212..................................4

*In re Rigel Pharms., Inc. Sec. Litig*, 2009 WL 5125344, at *7 (N.D. Cal. Dec. 21, 2009)............4

*Jacob v. Trump*, Case No. 3:21-cv-00261-JD, 2021 WL 121189, at *1
    (N.D. Cal. Jan. 13, 2021) ..........................................................................................3

*Jones v. Intelli-Check, Inc*. is therefore misguided.  274 F. Supp. 2d 615, 634 (D.N.J. 2003) .....13

*Lloyd v. CVB Financial Corp*., 811 F.3d at 1210 (9th Cir. 2016) .................................................15

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) ...................................................12

*Mineworkers' Pension Scheme v First Solar, Inc*., 881 F.3d 750 (9th Cir. 2018) .......................14

*Nevijel v. North Coast Life Ins. Co*., 651 F.2d 671, 673-74 (9th Cir. 1981) ..................................3

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp*.,
    320 F.3d 920, 934 n.12 (9th Cir. 2003) .............................................................13

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal*., 730 F.3d 1111 (9th Cir.
    2013)..........................................................................................................14

*Palm Tran, Inc. Amal. Tr. Union Local 1577 Pension Plan v. Credit Acceptance Corp. et al*,
    Case No. 2:20-cv-12698-LVP-EAS  (E.D. Mich. July 22, 2021) .................................4

*Prodanova v. HC Wainwright & Co., LLC*, Case No. 19-56048 (9th Cir. April 8, 2021) ............11

*SEC v. Milton*, Case No. 1:21-cv-06445 (S.D.N.Y. 2021) ............................................................15

*Sheet Metal Workers National Pension Fund v. Bayer AG*, Case No. 3:20-cv-04737-RS
    (N.D. Cal. October 19, 2021) ..................................................................................12

*Stark Trading v. Falconbridge Ltd*., 552 F.3d 568, 573 (7th Cir. 2009) ......................................13

*United States Securities and Exchange Commission v. Musk*, Case No. 1:18-cv-08865-AJN
    (N.D. Cal. October 16, 2018) ....................................................................................2

*United States Securities and Exchange Commission v. Tesla, Inc*., Case No. 1:18-cv-08947-AJN
    (N.D. Cal. October 16, 2018) ....................................................................................2

*Webb v. SolarCity Corp*., 884 F.3d 844, 856 (9th Cir. 2018).......................................................12

*Wilamowsky v. Take-Two Interactive Software, Inc*., 818 F. Supp. 2d 744 (S.D.N.Y. 2011).......14

*Zhang v. BProtocol Foundation et al*, Case No. 1:20-cv-02810-AKH (S.D.N.Y. February 22,
    2021)..........................................................................................................4

**Statutes**

15 U.S.C. § 78u-5(c)(1)(A)(i)..............................................................................................9, 10

18 U.S.C. § 207 ....................................................................................................................11

Private Securities Litigation Reform Act ......................................................................passim

**Rules**

Civil Local Rule 3-4(c)..............................................................................................................3

Civil Local Rule 7-4(a)(4) .........................................................................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Civil Local Rule 7-5(a) ..........................................................................................................3

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................5

Federal Rule of Civil Procedure 41(b) ...................................................................................5

Federal Rule of Civil Procedure 8 .......................................................................................3, 4

Federal Rule of Civil Procedure 9(b) .....................................................................................4

1

## I.     INTRODUCTION

2          This case is a modern-day version of Hans Christian Andersen's folktale "The Emperor's

3   New Clothes," as applied not to an emperor, but a "Technoking": the richest man on Earth, Elon

4   Musk.  Defendant Musk and his electric car company ("Tesla" and together, "Tesla Defendants")

5   have artificially pumped Tesla's stock price to astronomical highs for years, with Tesla now

6   sporting a market capitalization of over $1 trillion—even as its CEO admits that he "might

7   pump" securities and that he brought the company within weeks of bankruptcy, which was never

8   reflected in years of false filings with the Securities and Exchange Commission ("SEC").

9          Tesla Defendants achieved these remarkable milestones by employing a degree of

10   deception likely unparalleled in the history of capital markets.  Internal documents only brought

11   to light after the filing of the Fourth Amended Complaint ("4AC") reveal that Tesla is in fact not

12   so much part of a "pyramid" of companies run by Musk, as he described them to the *Wall Street

13   Journal*, but a mountain of fraud unto itself.  The United States Department of Justice

14   ("USDOJ"), Federal Trade Commission, National Highway Traffic Safety Administration,

15   Consumer Product Safety Commission, California Department of Motor Vehicles, and of course,

16   the SEC, are all presently investigating Tesla Defendants over matters the company has mostly

17   never explicitly disclosed.  To evade such investigations and their meddlesome subpoenas,

18   Defendant Musk's top staff began secretly using a domain name disconnected from all of his

19   known enterprises in 2018.  In response to the charges over his use of Twitter, which cost Tesla

20   Defendants $40 million in combined fines, Defendant Musk shut down Tesla's communications

21   team and secretly put a "design intern" from Germany—at the nexus of his bizarre relationship

22   with Defendant Omar Qazi—on Tesla's payroll, which has never been disclosed.  He had Tesla

23   acquire SolarCity to bail himself and his family out from ruin, bilked New York and California

24   taxpayers out of a billion and a half dollars in subsidies, and then secretly moved manufacturing

25   to China, gloating about progress at an empty factory in New York all the while.  At the same

26   time, Tesla lied about its most important metric, car sales, feeding investors an inflated

27   "deliveries" figure it never fully defined, while telling key regulators and vendors its *real* sales

28

numbers.  This allowed Musk to steamroll Tesla's Board of Directors into offering him the most aggressive executive compensation plan ever, with option grants based on Tesla's stock price.

So Musk then rigged TSLA, every which way he could.  Being a clever man, he found a lot of ways, and being a rich man, he paid a lot of enablers, from politicians to auditors worldwide.  In retrospect many will say it was obvious that Tesla was always a Madoff- or Enron-class fraud built on utopian greenwashing, but it has taken years of revelations for the truth to emerge.  On July 5, 2018, "Is this real?" was the question about Tesla's financials posed by Senior Financial Analyst Scott Smith to Production Engineering Manager Michael Bowling.

The answer, sadly, is "no."  Tesla's cars and batteries may be real, but its "profits," "AI," and even its rabid "fans" are part of an elaborate sham.  Even without the benefit of discovery, the documents prove it.  Accordingly, the Court must deny Tesla Defendants' motion to dismiss.

## II.    STATEMENT OF ISSUES

At issue is whether Plaintiff has stated a claim against Tesla Defendants for each claim in the 4AC, Counts II, III, VII, VIII, and IX (Defendant Musk only).

## III.    FACTUAL BACKGROUND

On September 28, 2018, among other concessions to settle charges of securities fraud brought by the SEC, Defendants Musk and Tesla each signed a consent decree and agreed to pay a $20 million fine.  *SEC v. Musk*, Case No. 1:18-cv-08865-AJN (N.D. Cal. October 16, 2018); *SEC v. Tesla, Inc.*, Case No. 1:18-cv-08947-AJN (N.D. Cal. October 16, 2018).

The Complaint in this case was filed May 20, 2020.  ECF No. 1.  The First Amended Complaint was filed on July 2, 2020.  ECF No. 20.  Plaintiff filed the Second Amended Complaint on August 26, 2020, the Third Amended Complaint on February 12, 2021, and the 4AC on August 13, 2021.  ECF Nos. 70, 103, 131.  The Court issued an Order granting leave to amend the Third Amended Complaint on June 23, 2021.  ECF No. 125.  That Order was modified by a subsequent Order on July 27, 2021.  ECF No. 130.  Tesla Defendants filed their latest Motion to Dismiss on November 11, 2021.  ECF No. 143.

1

## IV.  ARGUMENT

2

### A.  The 4AC Does Not Violate Federal Rule of Civil Procedure 8

3

Judge Donato improperly adopted a legally baseless hint offered up by Tesla

4

Defendants—but not Qazi Defendants—in their prior motions to dismiss: that Plaintiff's

5

pleadings somehow violated Federal Rule of Civil Procedure ("Rule") 8.[1,2]  In ECF No. 125, the

6

Court's Order dismissing the Third Amended Complaint with leave to amend, Judge Donato

7

cited only two cases to support the specious proposition that Rule 8 could even be at issue here:

8

one case from 1981, fourteen years prior to the passage of the "demanding" PSLRA, *Nevijel v.*

9

*North Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981); and another that Judge Donato

10

himself ruled on involving a complaint "831 pages long" that named "2,438 individual plaintiffs

11

in 81 countries who 'yearn for a life in the shining city upon a hill,'" *Jacob v. Trump*, Case No.

12

3:21-cv-00261-JD, 2021 WL 121189, at *1 (N.D. Cal. Jan. 13, 2021).  In contrast, the 4AC is a

13

very manageable 73 pages long, having already been limited by the Court to 75 pages, and

14

throughout this action has involved only *one* plaintiff and *four* defendants.  ECF No. 130.  The

15

suggestion that there is some similarity between *Jacob* and this case is nonsensical, and the fact

16

that no more compelling or recent citations could be found is consistent with Judge Donato's

17

interpretation of Rule 8 here being unique across the entirety of the federal judiciary.[3]

18

"[T]he Ninth Circuit has cautioned against applying a strict requirement for a 'short'

19

---

20

[1] Tesla Defendants' Notice of Motion gives no notice that they move the Court for dismissal under Rule 8, citing only Rule 41(b).  Their arguments regarding Rule 8 are therefore waived.

21

[2] Civil Local Rules 7-4(a)(4) and 7-5(a) respectively require a "succinct statement of the relevant facts," and facts to be accompanied by citations to a declaration, affidavit, or part of the record.

22

Tesla Defendants have once again failed to comply with both.  *See also* ECF No. 67 at 3, n. 1; ECF No. 80 at 3, n. 1; ECF No. 110 at 2, n. 1.  The phrase "waged an online campaign aimed at

23

discrediting the Company" is Tesla Defendants' disingenuous and unsupported opinion, not a fact.  "The supposed fraud Plaintiff fervently decried never materialized" is similarly Tesla

24

Defendants' misleading opinion.  "[E]ach of Plaintiff's put options expired worthless" is a false statement.  Their motion should be struck for repeated, willful attempts to mislead the Court.

25

[3] Tesla Defendants protest the 4AC's single-spaced chart, citing Civil Local Rule 3-4(c) except

26

the portion that reads "Unless a Judge's standing order or other instruction from the court requires otherwise…"  On this matter, the Court wrote, "Greenspan may wish to file with the

27

complaint a chart that will help to state the claims in an organized fashion.  An order from another case is attached that describes this approach and the contents of the chart."  ECF No.

28

130.  That "order from another case" includes, on page 2, a single-spaced chart.  ECF No. 130-1.

---

statement under Rule 8 in light of the heightened pleading standards of Rule 9(b) and

PSLRA" (citations omitted).  *In Re Apple Inc. Securities Litigation*, Case No. 4:19-cv-02033-

YGR (N.D. Cal. June 2, 2020).  On July 22, 2021, while this litigation was ongoing, plaintiffs

suing Credit Acceptance Corporation for securities fraud under the PSLRA in the Eastern

District of Michigan filed an amended complaint weighing in at ***209 pages***.  *Palm Tran, Inc.*

*Amal. Tr. Union Local 1577 Pension Plan v. Credit Acceptance Corp. et al*, Case No. 2:20-cv-

12698-LVP-EAS  (E.D. Mich. July 22, 2021).  A motion to dismiss was subsequently filed, in

which the phrase "Rule 8" is nowhere to be found, as PSLRA complaints are routinely lengthy.[4]

Similarly, in *Zhang v. BProtocol Foundation et al* in the Southern District of New York,

excluding exhibits, plaintiffs filed a ***190-page*** Second Amended Complaint listing 102 separate

causes of action in September 2020.  No mention is made of Rule 8 anywhere as the PSLRA

supersedes such concerns.  Case No. 1:20-cv-02810-AKH (S.D.N.Y. February 22, 2021).

Tesla Defendants have also accused Plaintiff of filing an incomprehensible "puzzle

pleading."  This argument similarly fails.  "The Amended Complaint is far from the 280-page

complaint in *Bahash* where the lengthy quotations and canned allegations made any analysis a

Sisyphean task."  *Const. Laborers Pension For S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515

(S.D.N.Y. 2020).  Notably, PSLRA charts such as the one discussed above were developed to

avoid confusing pleadings such as the *In re Rigel Pharms., Inc. Sec. Litig* complaint cited by

Tesla Defendants from 2009, which lacked any mechanism clearly tying statements to legal

rationales.  2009 WL 5125344, at *7 (N.D. Cal. Dec. 21, 2009).  Since Plaintiff adopted the

Court's suggestion to use a chart here, there is no need to "'search through' the Complaint" to tie

statements to each other.  *Id*.  Nor does citing the *Financial Times*—a respected newspaper

largely responsible for exposing the recent accounting and securities frauds at Wirecard—

somehow make the complaint incomprehensible to multiple Harvard-educated attorneys.

---

[4] It is "perfectly understandable" to "err[] on the side of detail and prolixity in an effort to explain the facts" given the PSLRA's heightened pleading standard, even while keeping Rule 8 in mind.  *In re Global Crossing Ltd. Securities Litigation*, 313 F. Supp. 2d 189, 212.  *See also Gienko, et al v. Padda, et al*, Case No. 1:00-cv-05070 (N.D. Ill. February 27, 2002) (permitting complaint of 386 pages total under Rule 8).  It may be beneficial to future litigants for the Court to clarify its stance on PSLRA-related exhibits in the Civil Local Rules or its Standing Order.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Plaintiff Has Adequately Pled a Claim for Securities Fraud**

**1.      Note on Tesla Defendants' "*Twombly/Iqbal* Compulsion"**

At the outset, Plaintiff must note that a certain mentality exists at large law firms such as Cooley LLP that has had a negative impact on the justice system writ large.  Commentary on this trend sets the stage for interpreting Tesla Defendants' brief—a masterwork of denial and distraction from facts that Defendants are not only aware of, but have tried to cover up.

> "Since *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case, hoping to convince the Court that it now has the authority to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations.  These motions, which bear a close resemblance to summary judgment motions, view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as 'bare recitals.'  They almost always, either expressly or, more often, implicitly, attempt to burden the plaintiff with establishing a reasonable likelihood of success on the merits under the guise of the 'plausibly stating a claim' requirement.  While these cautious lawyers, who have been encouraged by *Twombly* and *Iqbal*, have parsed the *Twombly* decision to extract every helpful syllable, they often ignore a less well known (or at least less frequently cited) admonition from *Twombly*: '[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'  *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation marks omitted).  Finding the *Twombly/Iqbal* urge irresistible, many lawyers fail to appreciate the distinction between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge.
>
> This Court obviously understands that not all motions to dismiss suffer from this *Twombly/Iqbal* compulsion, but many do, and the present one certainly does.  Accordingly, it is denied."

*Barker ex rel. US v. Col. Reg. Healthcare*, 977 F. Supp. 2d 1341, 1346 (M.D. Georgia 2013).

**2.      Legal Standards**

Tesla Defendants move to dismiss the 4AC pursuant to Rules 12(b)(6) and 41(b) and the PSLRA.[5]  Neither Congress nor the Supreme Court intended for the PSLRA, a law targeting

---

[5] Tesla Defendants fail to disclose that Aarti Reddy, who signed their motion, was a witness to the proceedings at issue.  Her involvement violates California Rule of Professional Conduct 3.7.

unscrupulous lawyers, to apply to *pro se* actions. ECF No. 60. The Ninth Circuit has "emphasized that *pro se* pleadings, such as the FAC in this case, are to be liberally construed on a motion to dismiss." *Capp v. County of San Diego*, 940 F. 3d 1046 (9th Cir. 2019).

### 3.    The 4AC Pleads Several Material Misrepresentations and Omissions

Tesla Defendants misled investors with successive lies and deliberate omissions of fact.

**"Cash and Cash Equivalents" (Issue 1).** Counsel for Tesla Defendants argue that what their client, Defendant Musk, has already admitted to in broad daylight on more than one occasion is "inherently implausible." Defendant Musk is not a "third-party" "lay[man]" conducting "speculative…analysis." He is, officially, the CEO and "Technoking" of Defendant Tesla. Tesla Defendants are blind to the words on the page of the 4AC detailing his consistent admissions from November 2018 to November 2020 that Tesla was "bleeding money like crazy," faced "death," and "was about a month" from bankruptcy *for three years*. 4AC ¶ 245, Issue 1. Simply put, Tesla's financial statements never reflected any of these near-fatal conditions. Tesla Defendants further ignore the table at the top of 4AC page 51, comparing known interest yields with reported cash balances each quarter. They have no response to this simple math, and similarly, nothing at all to say about Tesla's weekly cash meetings. They instead plug their ears, shouting tired, boilerplate responses such as the word "conclusory."

**"Customer Deposits" and "Revenue" (Issue 2).** Plaintiff's allegations are not "difficult to follow." Tesla Defendants stole money from their customers by deliberately designing the Tesla mobile app to increase the likelihood of customers purchasing software upgrades ***for a perpetual "beta" product that does not work*** totaling thousands of dollars each, entirely by mistake. When upset customers realized their cards had been charged, usually weeks later, Tesla Defendants refused to return their money. This kind of "dark pattern" is, as of recently, under scrutiny by the Federal Trade Commission. *See* Greenspan Declaration Exhibit P.

Tesla Defendants write "Plaintiff cites three comments," but this is obviously wrong. In 4AC ¶ 245, Issue 2, Plaintiff cites *five* individuals making comments in public about this well-documented problem: (1) "Nassim Nicholas Taleb;" (2) "@CamBirch;" (3) "@mpj510;" (4)

1    "@Maykou1st;" and (5) "At least one other [deleted] public request" by @BeckyQuick.  This

2    renders Tesla Defendants' citation about "a *single*, anecdotal allegation of *one* improper loan"

3    (emphasis added) inapposite.  Motion at 5.  Tesla Defendants' argument that Plaintiff should

4    have cited Generally Accepted Accounting Principles ("GAAP") best practices for recording

5    *stolen property* on a company's balance sheet is laughable.  There are no such best practices or

6    Accounting Standards Updates because such practices are unlawful and impermissible.

7         Plus, Plaintiff has indeed offered in the 4AC the details Tesla Defendants claims are

8    lacking.  The "products involved in the contingent transaction[s]" are "extremely expensive

9    software add-ons, such as 'Full Self-Driving' for approximately $4,000 or more."  4AC ¶ 245,

10   Issue 2.  This also covers "such basic details as the approximate amount."  Motion at 11.  Tesla

11   Defendants' representation, that "Plaintiff offers none of this detail," is yet another falsehood.

12        Notably, on August 24, 2021, just after the filing of the Third Amended Complaint in this

13   action and one day after Defendant Musk referred to the "Full Self-Driving" beta as "not great"

14   in a response to Defendant Qazi's @WholeMarsBlog Twitter account, ***Tesla Defendants***

15   ***updated their "OTA Upgrade Purchase Refund Request" "Knowledge Article" about this very***

16   ***issue in an internal system***.  Company policy—which demonstrates both knowledge of the issue

17   and counsel's intent to mislead the Court—allows consumers 48 hours to request a refund,

18   though this is still not enough time to detect missing funds.  Shockingly, in three sections entitled

19   "Empathize with the situation," "Focus on the benefits of these upgrades," and "Clarify any

20   questions or misunderstanding, reinforce the value of our upgrades," ***the policy also encourages***

21   ***Tesla employees to attempt to convince victims that that they wanted their funds stolen!***

22        **Registration Problems (Issue 3).**  Again, Tesla Defendants refuse to acknowledge what

23   is plainly written on the page: "Defendant Tesla has been counting revenues from vehicle sales

24   while pushing associated expenses, including taxes due, into later quarters by neglecting to

25   register cars with state Departments of Motor Vehicles."  4AC ¶ 245, Issue 3.  Tesla Defendants

26   do not deny that this has happened; they simply claim that more facts are needed.

27        Fortunately, more have surfaced.  On November 26, 2021, Defendant Musk sent an e-

mail to "everybody" at Tesla about the company's efforts to game quarterly numbers as a result of being "publicly traded."  Greenspan Declaration Exhibit Q.  In part, the e-mail stated:

> "What has happened historically is that we sprint like crazy at end of quarter to maximize deliveries, but then deliveries drop massively in the first few weeks of the next quarter.  In effect, looked at over a six month period, we won't have delivered any extra cars, but we will have spent a lot of money and burned ourselves out to accelerate deliveries in the last two weeks of each quarter!"

This matches the allegations in the 4AC: "the vast majority of Defendant Tesla's vehicle sales take place in the last two weeks of the third month of the quarter (at the very end)." Conveniently omitted from Defendant Musk's admission to what is commonly referred to as channel stuffing are the company's *extralegal* efforts to "maximize deliveries" "at end of quarter," including but not limited to the practices identified in 4AC ¶ 245, Issue 3 already investigated and cited by the New Jersey Motor Vehicle Commission.

**Vehicle Deliveries (Issue 4).**  Tesla Defendants deliberately misrepresent Plaintiff's position in their memorandum.  The 4AC is clear about the glaring loopholes in Tesla's limited, vague disclosure.  Issue 4 is an *omission*, meaning that the company disclosure is misleading because it is *incomplete*.  Tesla Defendants argue (incorrectly) that certain quarterly SEC filings define the term "delivery"—with the phrase "upon delivery," emphasizing that such disclosures employ circular logic.  There is nothing "decisive" about unspecific "paperwork" being "correct" when that could mean anything.  Simply put, investors want to know that Defendant Tesla is being paid by actual customers—not related parties—for new cars it has sold without promises to quickly buy them back.  Nothing the company has disclosed makes this clear at all.  Defendant Musk's company-wide e-mail does, however, make clear the extraordinary efforts made to game delivery numbers each quarter, specifically on account of Tesla being a "publicly traded" company, i.e. to boost its stock price.  Plaintiff is not required to make allegations about any specific "accounting standard" in order to adequately allege an omission under the PSLRA.

**Accounts Receivable (Issue 5).**  Tesla Defendants have almost nothing to say about the allegations in Issue 5, except to repeat them and bemoan the lack of "further explanation."  This Issue meets the PSLRA's requirements for adequate pleading of a securities claim.

1
2
3
4
5
6
7
8
9

**"Goodwill" Warranty Repairs (Issue 6).**  Internally, in a document dated November 12, 2021, Defendant Tesla acknowledges the "legal and financial ramifications for the customer and the company" associated with "goodwill" repairs—even as its lawyers deny any linkage in their brief filed at roughly the same time.  Defendant Tesla maintains a byzantine hierarchy of guides and knowledge base articles that service technicians are supposed to use in order to decide when the "Goodwill" designation is appropriate.  These documents collectively reveal that Tesla instructs technicians to assign any warranty repairs mandated by any government policy as "Goodwill," and that the profusion of recent company regulations around its use have been motivated by its massive overuse in the past, consistent with the allegations in the 4AC.

10
11
12
13

Contrary to Tesla Defendants' representations, Plaintiff never articulated a belief that service "Goodwill" is the same as the "Goodwill" line item on Tesla's balance sheet.  Rather, Plaintiff stated that Defendant Tesla materially underreported its warranty costs, which Defendant Tesla does not deny here and internally admits.  These are reported separately.

14
15
16
17
18
19
20
21
22
23

**"Robotaxis" (Issue 7).**  15 U.S.C. § 78u-5(c)(1)(A)(i) states that a "forward-looking statement" must be "identified as a forward-looking statement, and [be] accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement."  Tesla Defendants identify no such "meaningful cautionary statements" as no such statements were made.  Given that a dispute over material facts exists, the claim cannot be dismissed.  Defendant Musk knew or should have known that his "robotaxi" and "FSD" claims were false because at the time he made them, he was aware that Defendant Tesla had not begun and had no plans to begin securing the required regulatory approvals necessary anywhere worldwide, and was personally involved as Tesla fabricated a "FSD" demo video, hiding a crash.  Greenspan Declaration Exhibits I, J, L.

24
25
26
27

**Status and Location of Solar Roof Production (Issue 8).**  To be liable under the PSLRA for a misleading statement, Defendant Tesla did not ever need to claim that its products were made exclusively *in* New York, especially as the *only* claims the company ever made about origin all referred exclusively *to* New York.  Yet the New York manufacturing facility in Buffalo

28

never produced a single functional product sold in the marketplace.  Panasonic Solar North America submitted its Form ETA-9042 referenced in the 4AC on March 6, 2020.  Greenspan Declaration Exhibit N.  Thereafter, Defendant Tesla never bothered to update investors about the new location of solar manufacturing: China.  In fact, its next quarterly update slide deck for Q1 2020 boasted about new a "milestone" achieved in its Buffalo factory—a factory that by April 29, 2020, when that update was published, had been emptied out and was totally non-functional.

No reasonable reader of even the Q4 2019 investor update would have believed that by "Solarglass tiles are made in our Gigafactory New York," Defendant Tesla actually meant "Non-functional, defective, unsellable Solarglass tiles are made in our Gigafactory New York, which we are in the process of decommissioning in order to move production overseas, resulting in 403 layoffs at our partner, Panasonic."  Yet that was the reality, rendering the statement misleading.

**Tesla Semi Production (Issue 9).**  Tesla Defendants admit that three of the four challenged statements were not accompanied by meaningful cautionary language as required by the PSLRA.  15 U.S.C. § 78u-5(c)(1)(A)(i).  Tesla Defendants also admit that the statements were false, as "Tesla did not later hit its targets."  Motion at 14.  In sum, the Tesla Semi is a fake truck essentially no different than the infamous Nikola Motors fake truck that led to criminal charges—as well as SEC civil charges—against Nikola's former CEO, who shares an attorney with Defendant Musk.  The truck cannot function without a battery breakthrough, also missing.

**"Autopilot" (Issue 10).**  In drafting the allegations concerning so-called "Autopilot" in the 4AC, Plaintiff relied on public statements by Tesla employee Andrej Karpathy, whose presentations directly contradict prior representations by Defendant Musk.  The notion that Defendant Musk lied is entirely "plausible" as he is a habitual liar—one of several reasons why he was charged with securities fraud by the SEC.  *See also* Greenspan Declaration Exhibit L.

**Scrap and Raw Materials (Issue 11).**  Notably, Tesla Defendants do not make any effort to deny that they failed to disclose $197,835,756.89 worth of scrapped parts to investors.  Out of serious, material omissions clearly labeled (a) through (k), the only one they quibble with is (g).  This is not enough to secure dismissal.  *See* Greenspan Declaration Exhibit H.

**Product Liability Disclosures (Issue 12).**  In fact, Defendant Tesla had *extensive* field experience with its energy storage products (e.g. solar panels), having installed them at homes nationwide and at large retailers such as Wal-Mart.  When panels caught fire, homeowners and Wal-Mart sued.  Thanks to this extensive experience, Tesla Defendants knew even more lawsuits—and possibly deaths—were likely.  Yet they never disclosed "Project Titan", its codename for defective solar products posing serious fire risks.  Solar panels in 2016-2019 were not a "new technolog[y] that [Tesla was] pioneering," so such issues were never covered by disclosures.  Nor would a known defect in component parts be fairly characterized as a "misuse or claimed failure[]."  The explicit reference to Autopilot in this disclosure highlights just how little it had to do with the legacy business of solar panels.  *See* Greenspan Declaration Exhibit O.

### 4.    Plaintiff Has Adequately Pled A Strong Inference of Scienter

"To support a 'strong inference' of scienter under the PSLRA, a complaint must allege that the defendant made false or misleading statements with an 'intent to deceive, manipulate, or defraud,' or with deliberate recklessness."  *Prodanova v. HC Wainwright & Co., LLC*, Case No. 19-56048 (9th Cir. April 8, 2021).  Tesla Defendants—who already paid the SEC $40 million to settle securities fraud charges—admit in their brief to making a plethora of false and misleading statements, contending that they were only proven to be false *after* being made.  Yet the strong inference remains that Tesla Defendants knew the statements were false at the time.  The 4AC also contains numerous new allegations regarding the SEC's dialogue with Tesla Defendants, which would never have been disclosed but for Freedom of Information Act requests filed by Plaintiff and a *Wall Street Journal* reporter.[6]  Greenspan Declaration Exhibit M.  In addition, Tesla Defendants have been hiding the fact that the USDOJ has opened a ***criminal investigation*** that has already resulted in the receipt of at least one grand jury subpoena by Defendant Tesla.[7]

Considering the established facts that Defendant Musk is a drug-abusing serial libel

---

[6] Subsequent FOIA requests by Plaintiff revealed that acting on behalf of Tesla Defendants, attorney Alex Spiro submitted requests for "confidential treatment" to the SEC in a failed attempt to have some of these documents withheld from Plaintiff using the PSLRA as a pretext.
[7] Defendant Tesla's contact for the USDOJ appears to be an attorney who resigned his position at the SEC just weeks ago, a likely violation of 18 U.S.C. § 207.

lawsuit defendant who relies upon and consorts with convicted felons,[8] routinely directs sexually inappropriate tweets to sitting United States Senators and his sixty-four million other followers, and cannot publicly deny having committed securities fraud, the phrase "deliberate recklessness" seems an understated way to describe his antics.  These are just some of the factors the Court must take into consideration when conducting a holistic analysis of Defendants' scienter.

> "When determining whether there are sufficient allegations of scienter, courts 'must consider the complaint in its entirety' and inquire 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.' *Id*. at 322-23 (emphasis in original)... The existence of a motive is relevant, but not dispositive, to establishing scienter.  *See Matrixx Initiatives, Inc*. *v*. *Siracusano*, 563 U.S. 27, 48 (2011)."

*Sheet Metal Workers National Pension Fund v*. *Bayer AG*, Case No. 3:20-cv-04737-RS (N.D. Cal. October 19, 2021).  In the past, the Ninth Circuit has found that "a lack of stock sales can detract from a scienter finding."  *Webb v*. *SolarCity Corp*., 884 F.3d 844, 856 (9th Cir. 2018).  Ironically, Defendant Musk, SolarCity's former Chairman—who publicly stated, "I might pump, but I don't dump" on July 21, 2021—has now sold approximately ***$10 billion*** worth of his stake in Tesla with stated plans to dump another $10 billion.  By comparison, since its inception, Defendant Tesla has generated approximately ***$6 billion of cumulative losses***.  Such activity is entirely consistent with Ponzi scheme behavior; to allege otherwise defies credibility and common sense.  By any standard, $20 billion, as a small part of the most aggressive executive compensation plan in history, described by Defendant Musk in e-mails as "really crazy" and "high risk"—the opposite of a "routine corporate objective"—is a sizable motive.  Motion at 16.

---

[8] Through his wealth manager Jared Birchall using a false identity, Defendant Musk paid convicted felon James Howard-Higgins $50,000 for false information about a critic.  Musk also confirmed meeting now-indicted sex trafficker Ghislane Maxwell at judo practice—which Musk publicly admitted to training in on May 7, 2020 in an interview with Joe Rogan—on May 28, 2016 in an undisclosed e-mail exchange with the now-deceased serial rapist, child molester and sex trafficker Jeffrey E. Epstein, also a convicted felon at the time.  (Defendant Tesla has also been sued repeatedly for human trafficking.)  In 2020, Defendant Musk lied publicly about his relationship with Maxwell, claiming, "Don't know Ghislaine at all" in response to a 2014 photograph of them at a party.  Based on public reports, Epstein also introduced Tesla Director Kimbal Musk to a former girlfriend.  Finally, S&P Global recently reported that Defendant Tesla had to abandon its interest in a Mexican mine in Sonora due to issues involving drug cartels, among others.  Greenspan Declaration Exhibit R.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.    Plaintiff Has Adequately Pled Reliance

Tesla Defendants' argument concerning reliance depends upon actively ignoring the fraud-on-the-market doctrine outlined in 4AC ¶ 241 and in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and upon their deliberate truncation of a sentence in 4AC ¶ 27, which reads, "When Plaintiff began purchasing Tesla, Inc. securities he had no knowledge of any alleged fraud involving Defendant Tesla ***except for limited knowledge from news reports of Defendant Musk's August 2018 false 'funding secured' tweet***" (emphasis added).  Tesla Defendants omit the bold portion in their brief, feigning shock that Plaintiff knew of Defendant Musk's "funding secured" fraud, which received international media attention.  Yet Plaintiff had no way of predicting future successive fraudulent acts.  *Basic* "created a rebuttable presumption of investor reliance based on the theory that investors presumably rely on the market price, which typically reflects the misrepresentation or omission." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 n.12 (9th Cir. 2003).

From August 2018 forward, Defendant Musk presided over a series of additional, sequential, and discrete fraudulent acts at Tesla, many ongoing.  Tesla Defendants' attempt to shoehorn in an inapposite reference to *Jones v. Intelli-Check, Inc.* is therefore misguided.  274 F. Supp. 2d 615, 634 (D.N.J. 2003).  Plaintiff had no expectation that there would be "heavy selling" based on the "funding secured" fraud long after SEC charges were settled.  Rather, Plaintiff believed that the stock was overvalued and destined to return to a fair, lower valuation over time, a belief that Plaintiff now holds in tandem with Defendant Musk, who publicly wrote "Tesla stock price is too high imo" on May 1, 2020 when it traded 88% lower than it does today.

The key point in *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009) is that "plaintiffs would not have a claim under Rule 10b-5, or any other securities law requiring proof of reliance, because they were never deceived."  Plaintiff has pled that he was deceived *repeatedly*.  4AC ¶ 245, Issue Nos. 1-12.  And unlike *Jones*, there was no all-revealing "article in Barron's" that outlined even half of Tesla's fraudulent aspects.  At each point when Plaintiff purchased put options, he was relying on the presumption that the market had incorporated all

available information and "trade[d] in ignorance of the fact that the price was affected by [some] alleged manipulation." *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999).[9]  Only after March 2020 did Plaintiff realize that Tesla Defendants were willing to deploy outright lies and accounting fraud *ad infinitem* to raise ever more investor money—over $40 billion so far.

Tesla Defendants' argument that their Exhibits 5-7 somehow "put the lie to Plaintiff's claim"—which they truncated to change its meaning—is false.  Exhibit 5 concerns an isolated disclosure not even mentioned in the 4AC, while Exhibits 6 and 7 concern "funding secured," with Exhibit 7 even confirming that Plaintiff was concerned with "truly insane valuations" given that Defendant Tesla was "pro-forma bankrupt," as Defendant Musk later finally admitted.[10]

### 6.    Plaintiff Has Adequately Pled Loss Causation

While corrective disclosures *can* proximately lead to losses, they are not *necessary*.  Harm to short-sellers often comes from *lack* of disclosure.[11]  "To prove loss causation, plaintiffs need only show a 'causal connection' between the fraud and the loss, *Nuveen*, 730 F.3d at 1119; *Daou*, 411 F.3d at 1025, by tracing the loss back to 'the very facts about which the defendant lied,' *Nuveen*, 730 F.3d at 1120.  'Disclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss.'  *Id*."  *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).  The lack of a revelatory disclosure is not proof that no fraud took place; rather, it

---

[9] The scale of deception by Tesla Defendants may raise an issue of first impression: sequential fraud.  In situations where multiple, different frauds take place in sequence, one can be aware of Fraud A without having any idea that Fraud B has already started taking place.  Even if Fraud A has artificially elevated a stock's price on a given date and a plaintiff shorts it accordingly, ignorance regarding secret Fraud B to elevate the stock price even further still meets *Halliburton*'s test and provides for a valid claim regarding Fraud B.  Otherwise, the disclosure of *any* fraud would improperly eliminate standing for all claims going forward in perpetuity.

[10] In 2018, it would have been impossible for Plaintiff to know that Tesla Defendants would falsely promise "robo-taxis" *in 2019*, or that Tesla was hiding out-of-control Non-Conforming Material levels, because key documents had not yet been made public.

[11] Tesla Defendants refer to *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744 (S.D.N.Y. 2011) to discuss "concealing positive information."  This action would constitute a "downside insurance policy" only in the absence of fraud, which is abundant here.  Besides, "it would be a mistake to apply the loss causation standard so rigidly as to reject any theory that does not precisely align with the facts of previous cases."  *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605 (N.D. Cal. 2019).

may signal that fraud is ongoing.  "Fraud simply causes a delay in the revelation of those facts.
The 'ultimate issue' under either theory 'is whether the defendant's misstatement, as opposed to
some other fact, foreseeably caused the plaintiff's loss.'  *Lloyd*, 811 F.3d at 1210."  *Id*. at 754.

Tesla Defendants mis-apply the Supreme Court's limited holding in *Dura Pharm*., *Inc*. *v*.
*Broudo*, 544 U.S. 346, 342 (2005)—written with long securities purchases in mind—which holds
that an inflated purchase price *alone* does not cause an economic loss.  The 4AC adequately
alleges what *Dura* requires for short-selling: the opposite of drops in price on corrective
disclosures, or a stock soaring even higher after purchase, alongside plausibly causative false and
misleading statements and omissions.  4AC ¶¶ 14-15, 245.  With its shares so inflated as to value
Tesla, Inc. *more than the rest of the automotive industry*, and given Defendant Musk's obsession
with short-sellers and his "really crazy but also high risk" compensation plan, it is more than
"plausible" that Tesla Defendants caused Plaintiff's losses.  Greenspan Declaration Exhibit S.

### C.      Plaintiff Has Adequately Pled Manipulation and a Section 20(a) Violation

All Defendants' use of social media as a manipulative "device" in this action goes far
beyond identical conduct that Nikola's CEO was recently charged and indicted for.  *SEC v*.
*Milton*, Case No. 1:21-cv-06445 (S.D.N.Y. 2021).  Tesla Defendants' arguments therefore fail.

### D.      Tesla Defendants Violated The Court's Order By Addressing State Claims

The Court ordered Tesla Defendants to tailor their motion "only to the amended federal
claims on which the Court's jurisdiction depends."  ECF No. 125 at 22.  They devoted an entire
section to "State Law Claims" nonetheless, urging dismissal.  Motion at 15.  These claims must
not be dismissed.  Tesla Defendants are vicariously liable for the instructions they gave their
Early Access Program contractor, Defendant Omar Qazi, who acted on them, harming Plaintiff.

### V.      CONCLUSION

The 4AC is pled in exacting detail, beyond even what the PSLRA requires.  Each claim
in this action is backed by documentary evidence, but should the Court require additional detail,
Plaintiff respectfully requests leave to amend to fill in any remaining gaps.  As for scienter,
Defendant Musk defines the term.  Tesla Defendants' efforts to escape liability must be denied.

1    Dated: December 9, 2021              Respectfully submitted,

2

3

4

5                                        Aaron Greenspan
                                         956 Carolina Street
6                                        San Francisco, CA  94107-3337
                                         Phone: +1 415 670 9350
7                                        Fax: +1 415 373 3959
                                         E-Mail: aaron.greenspan@plainsite.org
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28