**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **AARON GREENSPAN**, | Case No. 3:20-cv-03426-JD |
| Plaintiff, | |
| v. | **DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)** |
| **OMAR QAZI**, et al., | |
| Defendants. | |
| | Time:     10:00 a.m. PST |
| | Date:     January 13, 2022 |
| | Before:   The Hon. James Donato |
| | Ctrm.:    11, 19th Floor |

**SMICK DEFENDANTS' REPLY ISO MTN
TO DISMISS FAC**

**INTRODUCTION**

In his Fourth Amended Complaint ("FAC"), Plaintiff Aaron Greenspan asserts claims against Defendants Omar Qazi and Smick Enterprises, Inc. (collectively, the "Smick Defendants") under federal copyright and securities laws. Instead of responding to the defects identified in the Smick Defendants' opening brief, Plaintiff spends most of his Opposition describing an alleged conspiracy among the Smick Defendants, the Tesla Defendants, and third parties. As a result, Plaintiff's Opposition does not cure the defects in his FAC, as summarized below.

- **No Copyright Infringement/Fair Use**: Contrary to Plaintiff's argument, the Smick Defendants' alleged bad faith, unconnected to their use of Plaintiff's autobiography *Authoritas*, is irrelevant to the fair use analysis. Moreover, Plaintiff concedes that the fourth fair use factor (*i.e.*, the effect on the market) is the single most important element, and that the Smick Defendants' alleged use of *Authoritas* did not usurp Plaintiff's market for his book—rather, the use allegedly tarnished Plaintiff's goodwill, which is not a cognizable harm under the Copyright Act.

- **No Removal of CMI**: Plaintiff's claim that the Smick Defendants removed copyright management information ("CMI") in violation of 17 U.S.C. §1202(b) fails because the Smick Defendants' alleged use of Plaintiff's material was a fair use. Moreover, Plaintiff now concedes that he cannot allege that the Smick Defendants actually removed or altered any CMI, which is a requirement for any §1202(b) claim.

- **No DMCA Claim**: Plaintiff's claim that the Smick Defendants violated 17 U.S.C. §512(f) fails because Plaintiff has not alleged that the Smick Defendants knowingly included false representations about fair use in their DMCA notices. To the contrary, the FAC's allegations indicate that the Smick Defendants understood that their DMCA notices and counter notices were accurate.

- **No §10(b)/Rule 10b-5 Claim**: Plaintiff's claim under §10(b) and Rule 10b-5 fails because Plaintiff has not explained how either of the two statements that he attributes to Omar Qazi is false.

- **No Market Manipulation Claim**: Plaintiff's claim for Market Manipulation fails where

1

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    Plaintiff has not identified any specific misleading statement attributable to the Smick

2    Defendants, let alone a statement that led to wash sales, matched orders, rigged prices, or

3    some other manipulative act.

4    Given that Plaintiff has not stated a federal claim in his fifth version of the Complaint, the

5    Court should dismiss Plaintiff's federal claims with prejudice and dismiss the state law claims

6    without prejudice for lack of jurisdiction.

7    **ARGUMENT**

8    **A.    The Smick Defendants' alleged bad faith, unconnected to any use of *Authoritas*, has no**

9    **bearing on the fair use analysis.**

10    In their opening brief, the Smick Defendants explained that the use of portions of Plaintiff's

11    autobiography, *Authoritas*, was a fair use because, among other reasons, the use had no effect on

12    the potential market for *Authoritas*. Plaintiff argues that the Court need not analyze the four

13    statutory fair use factors because the Smick Defendants acted in bad faith, and the fair use defense

14    is not available to those who act in bad faith. (Opp. at 5:24-7:8.) Plaintiff's argument fails for two

15    reasons.

16    First, so long as the statutory factors weigh in favor of fair use, the defendant's mental state

17    or good faith is irrelevant to the fair use analysis. As an example, the Supreme Court held:

18    Finally, regardless of the weight one might place on the alleged infringer's state of mind,

19    compare *Harper & Row,* 471 U.S., at 562, 105 S.Ct., at 2231 (fair use presupposes good

     faith and fair dealing) (quotation marks omitted), with *Folsom v. Marsh,* 9 F.Cas. 342, 349

20    (No. 4,901) (CCD Mass.1841) (good faith does not bar a finding of infringement); Leval

     1126–1127 (good faith irrelevant to fair use analysis), we reject Acuff–Rose's argument that

21    2 Live Crew's request for permission to use the original should be weighed against a finding

     of fair use. Even if good faith were central to fair use, 2 Live Crew's actions do not

22    necessarily suggest that they believed their version was not fair use; the offer may simply

     have been made in a good-faith effort to avoid this litigation. If the use is otherwise fair,

23    then no permission need be sought or granted. Thus, being denied permission to use a work

24    does not weigh against a finding of fair use.

25    *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994); *see Equals Three, LLC v. Jukin*

26    *Media, Inc.*, 139 F. Supp. 3d 1094, 1106 (C.D. Cal. 2015) ("If using a song after requesting and

27    being denied a license does not show bad faith, then neither does failing to obtain a license and

28    continuing to use footage after being sent a demand letter."). As discussed below, the fair use factors

2                 **SMICK DEFENDANTS' NTC OF MTN AND**
                                                                         **MTN TO DISMISS FAC; MPA**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   all support a finding of fair use in this case. Thus, the Smick Defendants' alleged motivation in

2   displaying portions of *Authoritas* is irrelevant.

3          Second, even if the Smick Defendants' alleged bad faith were relevant to the fair use

4   analysis, that bad faith must be connected to the alleged copyright infringement. *See Harper & Row*

5   *Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985) (describing bad faith actor as

6   "a chiseler who infringes a work for personal profit"). Here, Plaintiff's laundry list of alleged bad

7   faith conduct by the Smick Defendants is unconnected to the display of *Authoritas*, let alone to the

8   misuse of *Authoritas* for personal profit. Rather, the Smick Defendants' alleged bad faith conduct

9   includes being arrested on criminal charges, operating a "tax-evading unregistered corporation,"

10  harassing Plaintiff and his family, falsely accusing Plaintiff of "serial rape and possession of child

11  pornography," smearing Plaintiff's reputation, and vilifying Plaintiff before an audience of tens of

12  millions. (Opp. at 6:9-7:1.) Thus, even if bad faith were relevant to the fair use defense, the bad

13  faith alleged by Plaintiff is unconnected to the use of *Authoritas*.

14         To the extent Plaintiff argues that the Smick Defendants' criticism of Plaintiff through the

15  use of *Authoritas* reflects bad faith, such an argument fails under the express language of the

16  Copyright Act. The Act's preamble states that the fair use doctrine is designed to protect "criticism."

17  17 U.S.C. §107; *see also Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 452 (9th Cir.

18  2020) ("The purpose and character of a parody fits squarely into preamble examples—particularly

19  'criticism' and 'comment'—and has 'an obvious claim' to transformative use."). Thus, the use of

20  *Authoritas* to criticize does not reflect bad faith.

21         In summary, Plaintiff has not explained why the Smick Defendants' alleged bad faith, which

22  is unconnected to their alleged use of *Authoritas*, is relevant to the fair use inquiry.

23  **B.     The statutory fair use factors show that the use of *Authoritas* was a fair use.**

24         In their opening brief, the Smick Defendants explained why the statutory fair use factors

25  show that the use of *Authoritas* is a fair use. While Plaintiff argues that all four factors weigh against

26  fair use, his claims are neither plausible nor persuasive.

27         **First Factor (Purpose of Use):** Plaintiff argues that the purpose of the Smick Defendants'

28  use of *Authoritas* was a "weapon to discredit Plaintiff's research on Defendant Tesla," which was

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

"driven by Defendants' commercial interests." (Opp. at 7:17-22.) This argument is not plausible. The use of *Authoritas* is facially a juvenile criticism of Plaintiff and not a secret plot to buoy a trillion-dollar corporation

**Second Factor (Nature of Work):** Plaintiff argues that while *Authoritas* is a non-fiction book, it is full of "creative expression," and while it is a published work, the lack of a marketing campaign or book tour renders it akin to an unpublished manuscript. (Opp. at 8:12-17.) Despite Plaintiff's argument, the fact remains that *Authoritas* is a published non-fiction work for sale through multiple channels, available at libraries, and offered in multiple media. (FAC ¶¶195, 207.)

**Third Factor (Amount Used):** Plaintiff argues that the Smick Defendants used "far more than necessary to make a 'fair' critique of Plaintiff and/or Plaintiff's writing." (Opp. at 8:18-19.) While Plaintiff cites the amount taken (*i.e.*, over 30 full-page excerpts and almost 100 smaller excerpts), Plaintiff does not explain why this is an unfair amount or why this amount is more than was needed to lampoon Plaintiff. Moreover, Plaintiff does not address the lack of public recognition of *Authoritas* or the fact that the overriding purpose of the use was to parody the original, both of which are relevant to evaluating the third fair use factor. *See Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 980–81 (C.D. Cal. 2012).

**Fourth Factor (Effect on the Market):** Plaintiff does not challenge that the fourth factor is the single most important factor. Nor does Plaintiff argue that the Smick Defendants' use of *Authoritas* has usurped Plaintiff's market for the book. Instead, Plaintiff argues that the use of *Authoritas* has destroyed Plaintiff's goodwill through its biting criticism. (Opp. at 9:4-8.) However, as this Court has found, "a diversion or suppression of demand from criticism is not a cognizable copyright harm." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 886 (N.D. Cal. 2020). (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 593 (1994)).

Thus, despite Plaintiff's arguments, the relevant factors weigh in favor of fair use.

**C.   Plaintiff admits that Defendant did not remove or alter CMI, and thus Plaintiff has not stated a claim under 17 U.S.C. §1202(b).**

Plaintiff claims that the Smick Defendants violated 17 U.S.C. §1202(b) by removing CMI from Plaintiff's "Purple Shirt Photograph." To state a §1202(b) claim, a plaintiff must allege that

KRONENBERG ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    the defendant knew or had reason to know that the removal of CMI would induce, enable, facilitate,

2    or conceal an infringement. *See* 17 U.S.C. §1202(b). For the reasons set forth above, the Smick

3    Defendants' alleged use of the Purple Shirt Photograph was a fair use. Thus, the Smick Defendants

4    could not have intended to induce infringement. Plaintiff's §1202(b) claim fails for this reason.

5        Moreover, Plaintiff now concedes that he cannot allege that the Smick Defendants actually

6    removed or altered CMI, given that the original version of the Purpose Shirt Photograph, which the

7    Smick Defendants allegedly copied, lacked CMI. "Section 1202(b) always requires removal or

8    alteration of copyright management information in order to apply." *Falkner v. Gen. Motors LLC*,

9    393 F. Supp. 3d 927, 938 (C.D. Cal. 2018). Thus, copying or displaying a version of a work that

10   lacks CMI—even where a subsequent version of that work contained CMI—is not a violation of

11   §1202(b). *See Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, No. CV 16-1968-GW(JEMX),

12   2017 WL 10350547, at *12 (C.D. Cal. Nov. 13, 2017) ("Therefore, a reasonable jury could

13   conclude that Defendants removed or acquired the Logo from one of these settings, and thus never

14   removed or altered CMI, or displayed the Logo with knowledge that CMI had been removed or

15   altered."). Plaintiff argues that the Smick Defendants deliberately omitted CMI that they knew was

16   on a subsequent version of the Purple Shirt Photograph. (Opp. at 10:2-3.) However, this allegation

17   does not create a claim under §1202 because Plaintiff cannot allege that the Smick Defendants

18   removed or altered CMI from the version of the Purple Shirt Photograph that they copied.

19   **D.    Plaintiff has not alleged that the Smick Defendants made knowing misrepresentations**

20   **in their DMCA notices and counter notices.**

21       Plaintiff argues that the Smick Defendants violated 17 U.S.C. §512(f) by issuing DMCA

22   notices and counter notices that misrepresented their understanding of fair use. However, as the

23   above analysis shows, fair use is often a complex issue on which Plaintiff and the Smick Defendants

24   could reasonably disagree. With that in mind, Plaintiff's FAC does not contain sufficient allegations

25   that the Smick Defendants submitted DMCA notices while subjectively understanding that the

26   notices contained misrepresentations about fair use.

27       In response to this pleading flaw, Plaintiff reiterates his position that Qazi submitted

28   takedown notices because "he was angry." (Opp. at 10:22-23.) However, "[u]nder § 512(f), a

copyright owner may be held liable for damages caused by an erroneous invocation of the notice and takedown provision only if the owner did not possess a subjective good faith belief that its copyright was being infringed." *UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1065 (C.D. Cal. 2008), *aff'd,* 628 F.3d 1175 (9th Cir. 2011). Even if Qazi submitted the DMCA notices out of anger, that does not mean that he submitted them with an understanding that they contained misrepresentations about fair use.

The FAC actually indicates the contrary—*i.e.*, that Qazi understood that his DMCA notices were legitimate. Plaintiff claims that after Qazi issued a takedown notice regarding the Autopilot Moving Violation Video on November 4, 2019, he created a website that same day "to purportedly show that the Autopilot Moving Violation Video was subject to copyright." (FAC ¶¶225-26.) Plaintiff includes no allegation regarding Qazi's mental state as to this notice. When Qazi issued a second takedown notice regarding the Autopilot Moving Violation Video nearly a year later, on September 18, 2020, Plaintiff alleges that Qazi claimed that the photograph "was suddenly subject to copyright despite no notice to that effect." (FAC ¶231.) Yet, this takedown notice (the same one Plaintiff claims was motivated by Qazi's "anger") was for the same Autopilot Moving Violation Video for which Qazi created a website with a copyright notice a year earlier. (*compare* ¶¶FAC 225-226 *and* ¶¶231-232.) Thus, Plaintiff's own allegations indicate that Qazi subjectively understood that the Autopilot Moving Violation Video was protected by copyright law and that the fair use doctrine did not apply.

Other than general allegations of animus between Plaintiff and the Smick Defendants, the FAC offers no other allegations regarding misrepresentations about fair use in the various DMCA notices. Thus, the FAC does not plausibly allege that the Smick Defendants believed that Plaintiff's use was a protected fair use but submitted takedown notices anyway. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016).

Finally, Plaintiff has not alleged any injury resulting from the Smick Defendants' DMCA notices. Plaintiff argues that "[t]he actual, forced removal of content based upon a false pretext is a *de facto* injury." (Opp. at 11:5-6.) While such a *de facto* injury may be sufficient to establish Article III standing, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), it is not sufficient to establish

6

SMICK DEFENDANTS' NTC OF MTN AND MTN TO DISMISS FAC; MPA

1    statutory standing under §512, which separately requires an injury to the plaintiff. *See Weinberg v.*
2    *Dirty World, LLC*, No. CV 16-9179-GW(PJWX), 2017 WL 5665022, at *5 (C.D. Cal. Apr. 24,
3    2017); *see also Fahmy v. Jay-Z*, No. 207CV05715CASPJWX, 2016 WL 409644, at *2 (C.D. Cal.
4    Feb. 1, 2016) (distinguishing Article III standing and statutory standing). Moreover, Plaintiff does
5    not actually identify any materials that were removed as a result of the allegedly fraudulent
6    takedown notices. (FAC ¶238.) *See UMG Recordings, Inc. v. Bright House Networks, LLC*, No.
7    8:19-CV-710-MSS-TGW, 2020 WL 11567025, at *4 (M.D. Fla. Dec. 29, 2020) (§512(f) claim
8    failed where no takedown occurred)).

9        In short, Plaintiff's Opposition does not address the gaps in the FAC's allegations regarding
10   Qazi's mental state in issuing DMCA notices or Plaintiff's injury. Thus, Plaintiff's §512(f) claim
11   fails.

12   **E.    Plaintiff has not explained how either of the two statements attributed to the Smick**
13   **Defendants is false, as necessary to state a claim under §10(b) and Rule 10b-5.**

14       Plaintiff argues that the following two statements, allegedly published by the Smick
15   Defendants on social media, violate §10(b) and Rule 10b-5 of the Securities Exchange Act:[1]

16   •   "I wish I had the words to describe how amazing AutoPilot is. It's the eigth *[sic]* wonder
17       of the world."

18   •   "So did Tesla lie about having the lowest probability of injury of any car? No, it didn't,
         and nobody is saying it did. The Government's own numbers above confirm what Tesla
19       is saying. The NHTSA just only wants people to use the star rating. But Teslas are more
         safe *[sic]*."

20       To be misleading, a statement must be "capable of objective verification." *Retail Wholesale*
21   *& Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir.
22

23   _____

24   [1] Plaintiff's Count VII for violation of section 10(b) of the Exchange Act and Rule 10b-5 appears
     for the first time against Omar Qazi in the FAC. However, the Court instructed Plaintiff that he
25   could not add new claims or parties without leave of the Court. (Prior Order at 22:1-2.) Plaintiff
     argues that this fact is "objectively false" because the Third Amended Complaint included the
26   same claims, the same parties, and the same argument that Defendant Qazi is an agent of
     Defendants Tesla and Musk. (Opp. at 11 n. 6.) However, Count VII in the Third Amended
27   Complaint was for "Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against
     Defendants Elon Musk and Tesla, Inc." Qazi was not identified as a responsible party in this prior
28   claim.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

2017). While Plaintiff argues that the first statement "is not mere puffery," nobody would believe that comparing an autopilot system to the wonders of the ancient world is capable of objective verification. Rather, the statement is facially an opinion and puffery.

As to the second statement, Plaintiff has still not explained how the statement is false. Rather, Plaintiff circularly argues that the statement "knowingly misrepresented NHTSA's position." However, Plaintiff does not explain what NHTSA's position was or how the statement misrepresented it.

Moreover, Plaintiff cannot plausibly explain how these two statements were material to reasonable investors. A statement is material if there is a substantial likelihood that a reasonable investor would have acted differently if the statement had not been made or the truth had been disclosed. *See Mulquin v. Nektar Therapeutics*, 510 F. Supp. 3d 854, 865 (N.D. Cal. 2020). Materiality depends on whether a reasonable investor would have viewed the information as having significantly altered the total mix of information available. *See In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1012 (S.D. Cal. 2011). A reasonable investor would not have relied on these two statements, which were published on a Twitter feed authored by "Steve Jobs Ghost," described as a "bottomless font of Muskolatry" (FAC ¶57), and containing posts like an altered version of Plaintiff's restraining order application, seeking protection from "Little Billy Watkins," age "5." (FAC ¶46.) While Plaintiff argues that a single investor wrote that he relied on the Smick Defendants' other statements, Plaintiff has not alleged—nor could he—that reasonable investors relied on the two above-referenced statements.

Finally, Plaintiff has not adequately pled Qazi's scienter—*i.e.*, Plaintiff has not "state[d] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) ("The PSLRA's 'strong inference' requirement has teeth. It is an exacting pleading obligation that presents no small hurdle for the securities fraud plaintiff." (cleaned up)). The state of mind required to meet the scienter element is an intent to defraud or deliberate recklessness regarding the falsity of the challenged statements. *See Nguyen*, 962 F.3d at 414. The FAC contains no allegations that Qazi acted with an intent to defraud in making the two statements at issue.

8

1    For all of these reasons, Plaintiff has not stated a claim under §10(b) and Rule 10b-5.

2  **F.    Plaintiff has not identified any misleading statements attributable to the Smick**

3  **Defendants as necessary to state a claim for Market Manipulation.**

4    Plaintiff argues that he has stated a claim for Market Manipulation under §10(b) of the

5  Securities Exchange Act and Rule 10b-5 because "the government has recently begun to include

6  social media in the long list of such devices." (Mot. at 12:26-27.) While social media may be used

7  to commit market manipulation, the term "manipulation" still refers to a limited set of practices

8  such as wash sales, matched orders, or rigged prices, which are intended to mislead investors by

9  artificially affecting market activity. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938–39

10  (9th Cir. 2009). The gravamen of manipulation is deception of investors into believing that prices

11  at which they purchase and sell securities are determined by the natural interplay of supply and

12  demand, not rigged by manipulators. *See ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp.

13  3d 1213, 1237 (C.D. Cal. 2015).

14    Here, Plaintiff vaguely attributes 160,000 social media posts to the Smick Defendants, but

15  he has not identified any specific misleading statement, let alone a misleading statement that led to

16  wash sales, matched orders, rigged prices, or some other manipulative act. Nor has Plaintiff alleged

17  any deception of investors by the Smick Defendants' statements nor a plausible allegation that the

18  Smick Defendants intended to mislead investors in publishing any specific statement. Plaintiff's

19  allegations of the Smick Defendants' bad faith generally is insufficient. *See Anschutz Corp. v.*

20  *Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 816 (N.D. Cal. 2011) (Plaintiff must state with

21  particularity facts giving rise to a strong inference that the defendant acted with scienter). For all of

22  these reasons, Plaintiff's claim for Market Manipulation fails.

23  **CONCLUSION**

24    For the reasons set forth above, the Court should dismiss all of Plaintiff's federal claims under

25  Rule 12(b)(6) with prejudice and dismiss all of Plaintiff's state law claims without prejudice for lack

26  of jurisdiction.

27  //

28  //

Case No. 3:20-cv-03426-JD                              9            SMICK DEFENDANTS' NTC OF MTN AND
                                                                    MTN TO DISMISS FAC; MPA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

DATED: December 22, 2021

**KRONENBERGER ROSENFELD, LLP**

By: _____s/Karl S. Kronenberger_____
            Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick
Enterprises, Inc.

10

**SMICK DEFENDANTS' NTC OF MTN AND
MTN TO DISMISS FAC; MPA**