1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Michael T. Lifrak (Bar No. 232430)
2  michaellifrak@quinnemanuel.com
   Jeanine Zalduendo (Bar No. 243374)
3  jeaninezalduendo@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:    (213) 443-3000
5  Facsimile:    (213) 443-3100

6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (*pro hac vice forthcoming*)
7  alexspiro@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
8  New York, New York 10010
   Telephone:    (213) 849-7000
9  Facsimile:    (213) 849-7100

10 Attorneys for Defendants
   TESLA, INC. and ELON MUSK

11

12                       UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14                          SAN FRANCISCO DIVISION

15

16
   AARON GREENSPAN,                        Case No. 3:20-cv-03426-JD
17
                    Plaintiff,             **TESLA DEFENDANTS' REPLY IN**
18                                         **SUPPORT OF MOTION TO DISMISS**
                                           **PLAINTIFF'S FOURTH AMENDED**
19         vs.                             **COMPLAINT**

20 OMAR QAZI, SMICK ENTERPRISES, INC.,     Trial Date:  None set
   ELON MUSK, and TESLA, INC.,             Date Action Filed:  May 20, 2020
21
                    Defendants.
22

23

24

25

26

27

28

Defendants Tesla, Inc. and Elon Musk ("Tesla Defendants") respectfully submit this reply in support of their Motion to Dismiss Plaintiff's Fourth Amended Complaint (ECF No. 143, "Motion" and ECF No. 131, "4AC," respectively).

Rather than demonstrating how the allegations in the 4AC are sufficient to survive a motion to dismiss under any standard, let alone the heightened standard of the Private Securities Litigation Reform Act ("PSLRA"), Plaintiff's Opposition (ECF No. 147) is an angry diatribe of *ad hominem* attacks on Defendant Musk and his counsel, uncited accusations of the Tesla Defendants' purported bad acts, and new accusations not found in the 4AC that the Court must disregard. Despite having had more than a year to craft well plead claims against the Tesla Defendants, the 4AC continues to throw spaghetti at the wall to see what sticks, with little heed to the directives of the Court's June 23, 2021 Order. ECF No. 125. This endless cycle of hopelessly inadequate complaints, followed by merely cosmetic changes, lays bare Plaintiff's inability to state a claim and visceral desire to inflict embarrassment, cost, and distraction on Tesla Defendants. Plaintiff should be given no more chances to make his case. The 4AC should be dismissed with prejudice.

## I. THE 4AC FAILS TO STATE SECTION 10(B) AND RULE 10B-5 CLAIMS.[1]

### A. The 4AC Fails to Adequately Plead Falsity.

Plaintiff does not cite a single case demonstrating that his allegations regarding material misrepresentations or omissions are sufficiently pled under the PSLRA. For all 12 categories of alleged misstatements or omissions in the 4AC, Plaintiff engages in mere speculation as to why each *could be* misleading, but fails to offer any explanation or support as to why each actually is *both misleading and material*. The 4AC is a compilation of unsupported non-sequiturs. As to the purported "bad acts" Plaintiff does describe in the 4AC, there is simply no nexus between them and the purported misstatements and omissions to support any inference of falsity. The 4AC's allegations of falsity simply do not meet the PSLRA's heightened pleading requirements. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

---

[1]   Plaintiff's appeal to *Barker ex rel. U.S. v. Columbus Reg'l Healthcare Sys., Inc.*, 977 F. Supp. 2d 1341, 1345 (M.D. Ga. 2013) misses the point. Opp'n at 5. The Tesla Defendants do not argue at this stage that Plaintiff will not be able to prove his claims—although that is certainly true. Rather, the Tesla Defendants contend Plaintiff has not plausibly stated a cognizable claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   "Cash and Cash Equivalents" (Issue 1)

Plaintiff insists that Musk's hindsight recounting of the early years of the Model 3 program as a "make or break" time for Tesla, in which he even feared the possibility of bankruptcy, proves that Tesla's financial statements (most of which were filed after the period that Musk was recounting, *i.e.*, post 2018) are false.  Opp'n at 6.  Absent from the 4AC and Opposition, however, is any explanation of how Musk's comments (if true), mean that Tesla's cash and cash equivalent statements from and after the third quarter of 2018 *cannot also be true*.  Indeed, he admits that most companies obtain financing at quarter end.  *See* 4AC Issue 1 at 51:19-24.

Plaintiff also complains that Tesla has "no response to th[e] simple math" depicted in the chart at page 51, lines 5-9 of the 4AC.  However, with no source citation for the chart, and no explanation as to why the stated "known interest yields" listed renders Tesla's stated cash and cash equivalents misleading, there is nothing for Tesla to respond to.  The "math" is nothing more than unexplained, untethered numbers.  Moreover Plaintiff's allegation regarding Tesla's purported "weekly cash meetings" lacks explanation of why such meetings occurred and the time period they occurred to tie them to the statements in Issue 1.  These "speculative allegations … are no substitute for factual allegations demonstrating Defendants' actual assumptions were false, and accordingly do not rise to the level of particularity required by the PSLRA." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, *Inc.*, 65 F. Supp. 3d 840, 853 (N.D. Cal. 2014).

### 2.   "Customer Deposits" and "Revenue" (Issue 2)

As described in the Motion, Issue 2 asserts the fanciful theory that Tesla intentionally designed an application that causes customers to make thousands of dollars in unintended purchases, for the specific purpose of artificially increasing Tesla's deposits and revenue figures.  Mot. at 5. To substantiate this allegation, the 4AC cites to social media posts of customers claiming to have made unintended purchases amounting to approximately $24,000.  *See* 4AC Issue 2 at 52:12-22. While Plaintiff quibbles over the number of complaints on Twitter about this issue (five or three), (Opp'n at 6-7), he misses the salient point—the impact of this issue, even if true (and Plaintiff's

TESLA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT

1   allegations are not), is not material, as required by Section 10(b) and Rule 10b-5.[2]  *See Basic Inc. v.*

2   *Levinson*, 485 U.S. 224, 231–32 (1988) ("'[T]here must be a substantial likelihood that the

3   disclosure of the omitted fact would have been viewed by the reasonable investor as having

4   significantly altered the 'total mix' of information made available.'").

5         More fundamentally, neither the 4AC nor the Opposition explain how the amounts

6   associated with unintended purchases were fraudulently reported as "customer deposits" and

7   recognized as revenue—the very sort of "basic details" necessary to maintain this claim.  *Daou*, 411

8   F.3d at 1016-17.  There is simply no discernible nexus between Plaintiff's allegations concerning

9   unintended purchases and Tesla's "customer deposits" or "total revenues."[3]  Plaintiff's allegations

10  are implausible, irrelevant, and immaterial to the claims.

11                    **3.   Registration Problems (Issue 3)**

12        The 4AC fails to allege even a single fact to substantiate that Tesla delays booking certain

13  expenses associated with its end-of-quarter sales.  *See* 4AC Issue 3 at 53:21-54:4.  Nor does the

14  Opposition do anything to clarify why, how, or to what extent the conclusory allegations regarding

15  delayed vehicle registrations would allow Tesla to reduce its "cost of revenues" line item.  And

16  although the Opposition's new allegations (which should be disregarded, *Schneider,* 151 F.3d at

17  1197 n.1) attempt to suggest something untoward about Tesla's efforts to deliver as many vehicles

18  as possible prior to the end of each quarter (Opp'n at 8), Plaintiff still fails to explain what that is,

19  or how this renders Tesla's stated "cost of revenues" misleading.  Given these many shortcomings,

20  the allegations supporting Issue 3 come nowhere close to satisfying the PSLRA.  *See City of*

21  *Dearborn*, 65 F. Supp. 3d at 853.

22                    **4.   Vehicle Deliveries (Issue 4)**

23

24

25  [2]  "[U]nsubstantiated . . . consumer complaints" are not sufficient to show falsity in any event.
     *Curry v. Yelp Inc.*, 14-CV-03547, 2015 WL 7454137, at *6 (N.D. Cal. Nov. 24, 2015).

26  [3]  Recognizing the flaws in his allegations, Plaintiff levels new allegations about supposed
     corrective actions.  These are not contained in the 4AC and must be disregarded.  *See Schneider v.*

27  *Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (plaintiff cannot avoid dismissal of
     complaint by alleging new facts in opposition to a motion to dismiss).  In any event, Plaintiff's extra-

28  pleading allegations only undermine his claims by demonstrating that Tesla took steps to ensure that
     Tesla customers have a mechanism to remedy any unintended purchases.  Opp'n at 7.

1    The 4AC and Opposition postulate that Tesla's purportedly "incomplete" disclosures

2 regarding deliveries *could* imply scenarios under which Tesla is delivering vehicles to itself at little

3 or no cost.  *See* Issue 4 at 55:9-17; Opp'n at 8.  But noticeably absent are any facts suggesting this

4 actually occurs, let alone any quantification of the purported self-deliveries and the corresponding

5 purchase prices to measure the materiality of any alleged omission.  *See Cal. Pub. Emps.' Ret. Sys.*

6 *v. Chubb Corp.*, 394 F.3d 126, 156 (3d Cir. 2004) ("[A]necdotal examples of profitable customers

7 lost or policies renewed at flat or slightly raised rates does not demonstrate that the rate initiative

8 was failing.").  And although Plaintiff argues that "investors want to know" more regarding Tesla's

9 deliveries data (Opp'n at 8), he utterly fails to explain what, if any, information omitted from Tesla's

10 disclosures renders them false or misleading.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d

11 997, 1006 (9th Cir. 2002) (To satisfy the PSLRA, "the plaintiffs' complaint must specify the reason

12 or reasons why the statements made by [complaint] were misleading or untrue, not simply why the

13 statements were incomplete.").

14    **5.  Accounts Receivable (Issue 5)**

15    Plaintiff insists in a single sentence that the allegations in Issue 5 meet the PSLRA's pleading

16 requirements, but offers no support why that conclusion is valid.  Opp'n at 8.  Issue 5 is based

17 entirely on the conjecture that perhaps Tesla's accounts receivable balance is too high, lacking any

18 substantiating allegations that the balance is in fact materially overstated.  That one investor and one

19 journalist are of the opinion that Tesla's accounts receivable balance seems high does not make it

20 so, and it certainly does not imply anything improper.  *See* 4AC Issue 5 at 57:8-12; *Hampton v.*

21 *root9B Techs., Inc.*, 897 F.3d 1291, 1302-03 (10th Cir. 2018) (blog post authored by "cybersecurity

22 expert" did not show falsity).

23    **6.  Goodwill Warranty Repairs (Issue 6)**

24    Plaintiff's argument in support of Issue 6 begins by again presenting information not

25 contained in the 4AC, which should be ignored.  Opp'n at 9; *Schneider,* 151 F.3d at 1197 n. 1.

26 Plaintiff next clarifies that he never alleged that "goodwill" on service invoices is the same as

27 "goodwill" on Tesla's balance sheet, but rather that Tesla's warranty costs were underreported due

28 to the incorrect designation.  Opp'n at 9.  But Plaintiff misses the point.  The 4AC fails to explain

1    (a) why any particular repair requires billing as warranty service, as opposed to another designation,

2    or (b) why the use of the "goodwill" notation on service invoices necessarily means that the repair

3    is not in fact booked to Tesla's warranty reserve, as Plaintiff claims.  *See* 4AC Issue 6 at 58.  And

4    regardless, the 4AC still fails to allege that this particular accounting decision resulted in a material

5    misstatement.  *See* Mot. at 6-7.

6              **7.  "Robotaxis" (Issue 7)**

7         Plaintiff argues that Musk's forward-looking statements regarding "robotaxis" do not

8    warrant protection under 15 U.S.C.§78u-5(c)(1)(A) because they were not accompanied by

9    cautionary statements.  Opp'n at 9.  The 4AC concedes, however, that among his remarks at Investor

10   Autonomy Day 2019, Musk offered cautionary statements, only Plaintiff has classified them as a

11   "joke."  4AC Issue 7 at 59:5-7.[4]  Regardless, the safe harbor applies even without cautionary

12   language where the forward-looking statement is immaterial, or made without actual knowledge of

13   falsity, neither of which Plaintiff has sufficiently alleged.  15 U.S.C.§78u-5(c)(1).  The Opposition

14   also does not tie the purported evidence of falsity to the complained of misleading statements.  For

15   example, there is no explanation in the 4AC or Opposition as to how Tesla's statements to regulators

16   about "Full Self-Driving" or "autonomous driving" or "SAE Level 2" or "SAE Level 5," renders

17   the Tesla Defendants' statements regarding "robotaxis" false or misleading.  4AC Issue 7 at 59:2-4.

18             **8.  Solar Roof Production (Issue 8)**

19        Rather than disputing the inadequacy of the 4AC's allegations in Issue 8, the Opposition

20   merely regurgitates these allegations, along with new, unpleaded ones, and nakedly asserts that

21   Tesla is liable under the PSLRA.  Opp'n at 9-10.  However, such conclusory allegations do not, in

22   fact, satisfy the PSLRA.  *Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001) ("It is not sufficient

23   simply to allege that a statement was false.  Plaintiffs must state with particularity all facts upon

24   which their belief" that a statement is false is based).  Even worse, Plaintiff fails to address the

25   materiality of the statements (only one of which actually mentioned the origin of solar roof tiles), or

26

27   ───────────────
     [4]    Separately, as Plaintiff acknowledges, "COVID-19 rendered public 'robotaxis' practically
     impossible," making subsequent inaccuracy in Musk's April and May 2019 statements unknowable
28   at the time and thus lacking in scienter.  4AC 59:7-8; *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir.
     2000) ("[A]llegations that defendants should have anticipated future events and made certain
     disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.").

1   point to any allegations in the 4AC that demonstrate the statements were false when made.  *See*

2   *Basic*, 485 U.S. at 231–32.

3             **9.   Tesla Semi Production (Issue 9)**

4             Contrary to Plaintiff's assertions, Tesla Defendants have not admitted that the challenged

5   statements of Issue 9 are false.  Opp'n at 10.  In the first instance, two of the "statements" are

6   irrelevant or not false on their face:  one was a slogan on a banner that did not even refer to the Tesla

7   Semi; and the second was a caption to a photo that literally describes what the photo contains—a

8   Tesla semi loaded with Tesla cars.  *See* 4AC Issue 9 at 61:13-15.  These kinds of statements "cannot

9   provide the basis for a securities violation" because they are not "objectively verifiable" in any

10  meaningful sense.  *In re Terravia Holdings, Inc. Sec. Litig.*, No. 16-CV-06633-JD, 2020 WL

11  553939, at *5 (N.D. Cal. Feb. 4, 2020) (citing *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc*.,

12  774 F.3d 598, 606 (9th Cir. 2014)).  And again, Plaintiff conveniently overlooks that the safe harbor

13  for forward-looking statements applies without cautionary language where the statement is

14  immaterial, or made without actual knowledge of falsity, and Plaintiff has failed to allege the

15  contrary.  15 U.S.C.§78u-5(c)(1).

16            **10. "Autopilot" (Issue 10)**

17            Plaintiff does not address any of the Tesla Defendants' arguments why the 4AC's allegations

18  regarding Issue 10 fail to show falsity or misrepresentation.  *See* Mot. at 9.  There is simply no

19  discernible nexus between the purported reasons for falsity, and the seven "Autopilot" statements

20  (only five of which are attributable to the Tesla Defendants) raised by Issue 10.  4AC Issue 10 at

21  62:12-63:19.  Lacking a substantive response, Plaintiff again resorts to *ad hominem* attacks against

22  Defendant Musk, which is evidence of little more than Plaintiff's own ill will towards the Tesla

23  Defendants.  Opp'n at 10.

24            **11. Scrap and Raw Materials (Issue 11)**

25            Plaintiff's allegations regarding Issue 11 are contradictory.  If, as Plaintiff alleges, Tesla's

26  internal database used to record amounts of scrap material did not function properly, causing

27  discrepancies between actual and counted scrap, then all of Plaintiff's other allegations regarding

28  purported misstatements in amounts of scrap have a reasonable (non-fraudulent) explanation,

1    undermining Plaintiff's claims.  *See* 4AC Issue 11 at 64:14-16.  Regardless, Issue 11 is devoid of

2    any well-plead facts, and Plaintiff does not explain how the 12 purported scrap-related omissions

3    are material, nor how each specifically relates to or renders misleading the statements in Tesla's 10-

4    Q for the third quarter of 2018.  *See Basic*, 485 U.S. at 231–32.

5                    **12. Product Liability Disclosures (Issue 12)**

6          Plaintiff again fails to address any of the arguments raised by the Motion, and instead

7    marshals new facts not presented in the 4AC that must be disregarded.  *See Schneider,* 151 F.3d at

8    1197 n.1.  Contrary to Plaintiff's assertion, whether or not Tesla had "extensive" field experience

9    installing solar panels does not render Tesla's risk disclosure false or misleading, let alone materially

10   so.  Opp'n at 11.  The purpose of this kind of disclosure is to inform investors of the risk of liability,

11   which, as Plaintiff concedes, Tesla's 2019 and 2020 10-K's expressly stated were "particularly

12   pronounced."  4AC Issue 12 at 65:23.  And Plaintiff points to no standard that required Tesla to

13   disclose additional information.  *Scandlon v. Blue Coat Sys., Inc.,* No. C 11–4293 RS, 2013 WL

14   5313168, at *3 (N.D. Cal. Sept. 23, 2013) ("a failure by the company to have disclosed every

15   potentially negative detail does not render the positive assessments as fraudulent.").

16               **B.  The 4AC Does Not Adequately Allege Scienter.**

17         Plaintiff's Opposition does nothing to clarify how the 4AC's 13 points of "evidence" of

18   scienter relate in any way to the purportedly false and misleading statements.  *See, e.g.,* 4AC ¶ 249

19   (h) (Defendant Musk's statements regarding the collapse of Solyndra); and (k) ("the fact that

20   Defendant Musk personally approves every Tesla purchase order.").[5]  Even assuming that the Tesla

21   Defendants have "admitted" to making false statements (Opp'n at 6, 9-11)—which they have not[6]—

22   Plaintiff has still failed to support any inference in the 4AC, let alone a *strong* one, that the Tesla

23   Defendants did so knowingly.  Opp'n at 11; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,

24   999-1000 (9th Cir. 2009) (inferences of scienter must be "more cogent or compelling than an

25   alternative innocent inference").  Rather, Plaintiff's diatribe centers on a compilation of new

---

5    Nor does the fact that the SEC has investigated the Tesla Defendants for unrelated matters raise
an inference of scienter with regard to the purportedly false and misleading statements at issue here.
*See* ECF No. 125 at 15.

6    That the Tesla Defendants recognize that certain of its forward-looking projections were not
borne out, largely due to COVID-19 as Plaintiff concedes, is not an admission of falsity.

1  allegations not alleged in the 4AC.  *See, e.g.,* Opp'n fns. 6-8 (comments regarding Tesla's attorneys

2  and Ghislaine Maxwell).  Even if the Court could consider them (and it cannot), these facts are

3  analogous to those this Court has already held "lack a clearly discernable logical connection with

4  scienter," and thus would be of no benefit to a further amended complaint.  ECF No. 125 at 15.

5          Nor are the many offensive, unsupported, and irrelevant accusations Plaintiff slings at

6  Defendant Musk, "factors the Court must take into consideration" for scienter.  Opp'n at 12.  The

7  generalized allegations throughout the 4AC and Opposition that Defendant Musk is a bad person do

8  nothing to demonstrate scienter as to the three years' worth of challenged statements in the 4AC.  A

9  securities plaintiff must plead with particularity facts supporting a compelling inference of scienter

10 "with respect to ***each*** act or omission." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also In*

11 *re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 931 (C.D. Cal. 2002) (same).  Here,

12 Plaintiff needs to allege that each statement attributed to Tesla and Musk was made with scienter.

13 The 4AC still does not come close.

14         Finally, Plaintiff's desperate attempt to show scienter based on Musk's efforts to secure

15 compensation is conclusory, and the Ninth Circuit routinely disregards such allegations.  Courts

16 "will not conclude that there is fraudulent intent merely because a defendant's compensation was

17 based in part on such successes." *In re Rigel Pharm., Inc. Sec. Litig.,* 697 F.3d 869, 884 (9th Cir.

18 2012) (allegations of "higher salaries, bonuses, and stock options" inadequate).

19         **C.  The 4AC Fails to Plead Reasonable Reliance.**

20         Plaintiff's reliance argument is inherently illogical, and not supported by cases addressing

21 reliance for short sellers of a security.  Plaintiff argues reliance based on the fraud-on-the-market

22 theory, *i.e.*, that "[a]t each point when [he] purchased put options, he was relying on the presumption

23 that the market had incorporated all available information and 'trade[d] in ignorance that the price

24 was affected by [some] alleged manipulation.'"  Opp'n at 13-14 (citation omitted).  But, in reality,

25 Plaintiff purchased put options precisely *because* he assumed the market *had not* yet incorporated

26 information on what he believed was Tesla Defendants' fraud, and he wanted to capitalize on the

27 drop in Tesla's stock price when it did.  Plaintiff does not deny this (Opp'n at 13), and he is not

28 entitled to rely on the fraud-on-the-market theory as a result.  "An investor . . . sells short ***because***

*he believes* the price of a stock overestimates its true value," whereas the premise of the fraud-on-the-market presumption is that investors rely on the market to *reflect* a stock's true value.  *See Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 823 (3d Cir. 1988) (emphasis added) (short-seller was not entitled to fraud-on-the-market presumption); *Ganesh, L.L.C. v. Computer Learning Ctrs., Inc*., 183 F.R.D. 487, 491 (E.D. Va. 1998) ("[G]ambling on a predicted loss is precisely what a short-seller seeks to do. . . [S]hort-sellers . . . cannot logically use a fraud on the market theory to obviate the need for positive proof of individual reliance.").

To avoid this obvious problem, Plaintiff argues that the Tesla Defendants' fraud was "successive," such that while he may have been aware of certain fraud, he was not yet aware of the frauds that followed.  4AC at ¶ 253; Opp'n at 13.  But this is not the law, as Plaintiff concedes. Opp'n at fn. 9.  And Plaintiff admits that, even though he acquired more knowledge regarding the Tesla Defendants' purported fraud over time (4AC at ¶ 253), he continued purchasing put options. 4AC Ex. A.  Whatever reliance Plaintiff claims he continued to maintain until March of 2020 cannot have been *reasonable*.  *See Basic*, 485 U.S. at 231-32.  Plaintiff's contrary arguments seek to transform the securities laws into "investor's insurance" for his short sales, permitting him to trade in reliance on his suspicions of fraud, then disclaim them after they prove unprofitable.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

### D.  The 4AC Fails to Plead Loss Causation.

Plaintiff's theory of loss causation depends on the speculative chain of inferences that the Tesla Defendants had been committing fraud for years, and *had that fraud ever been revealed*, Tesla's stock would have declined and Plaintiff's put options would not have expired worthless. Mot. at 13; ¶ 252.  This flawed theory is predicated on the argument that Plaintiff is not required to plead any corrective disclosure whatsoever.  But this squarely contradicts the Supreme Court's holding in *Dura* that a plaintiff cannot establish loss causation by simply pointing to an allegedly inflated purchase price. 544 U.S. at 342-43.  Contrary to Plaintiff's contention, nothing in *Dura* supports the notion that its holding was limited to "long securities purchases."  Opp'n at 15.

Plaintiff seeks to transform the Ninth Circuit's holding in *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018) into a rule that no corrective disclosure need

1   occur *at all*.  Opp'n at 14-15.  The court did not so hold.  Rather, *First Solar* establishes that

2   disclosure of the "underlying facts concealed by fraud" (there, "the revelation of an earnings miss")

3   may support loss causation, even if the market did not "actually learn that the defendant engaged in

4   fraud and react to the fraud itself."  881 F.3d at 753-54.  Here, Plaintiff fails to allege that the

5   "underlying facts concealed by fraud" were ever disclosed.

6        Nor is the disclosure requirement a rigid application of loss causation that would reject "any

7   theory."  Opp'n at n. 11.  Because absent some corrective or factual disclosure, it is impossible for

8   Plaintiff to allege that the purported fraud, and not some other "tangle of factors affecting price,"

9   caused Tesla's stock to remain high and his options to expire worthless.  *Dura*, 544 U.S. at 343.

10       Faced with dispositive controlling authority, Plaintiff desperately argues that "it is more than

11  'plausible' that Tesla Defendants caused [his] losses," because Tesla's value is "more than the rest

12  of the automotive industry," Defendant Musk's "obsession with short-sellers," and his "really crazy

13  but also high risk" compensation plan.  Opp'n at 15.  But even if true, these facts do not demonstrate

14  that Plaintiff's losses were caused by the Tesla Defendants' purported misstatements; there is simply

15  no nexus.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (noting that loss

16  causation requires plaintiffs to allege facts that, if true, support a theory that is facially plausible).

17       Because no amendment could cure the defects in Plaintiff's allegations, his claims should be

18  dismissed with prejudice.  *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)

19  (affirming dismissal with prejudice because Plaintiffs "cannot cure the flaws in their pleading").

20  **II.     PLAINTIFF FAILS TO STATE A CLAIM FOR MARKET MANIPULATION**

21       Plaintiff's only response to the Tesla Defendants' argument that it has not properly pled a

22  claim for market manipulation is to assert that all Defendants used social media as a manipulative

23  device in a manner "far beyond identical conduct" for which Nikola CEO was recently indicted.

24  Plaintiff's failure to offer any explanation of what such conduct was, or how the 4AC sufficiently

25  supports the claim, compels dismissal of the claim.

26  **III.    CONCLUSION**

27       Despite having received many opportunities to sufficiently allege claims, the 4AC still fails

28  to do so.  This Court should dismiss the 4AC with prejudice.

1  DATED:  December 23, 2021                QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP

2

3

4                                           By  */S/ Michael T. Lifrak*
                                                Michael T. Lifrak

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28