**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendants Omar Qazi
and Smick Enterprises, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **AARON GREENSPAN**,<br><br>     Plaintiff,<br><br>v.<br><br>**OMAR QAZI**, et al.,<br><br>     Defendants. | Case No. 3:20-cv-03426-JD<br><br>**DEFENDANTS OMAR QAZI AND SMICK ENTERPRISES, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Time:    10:00 a.m.<br>Date:    July 7, 2022<br>Before:  The Hon. James Donato<br>Ctrm.:   11, 19th Floor |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 7, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the above-titled Court, in Courtroom 11 on the 19th Floor of the San Francisco Courthouse, before the Honorable Judge James Donato, Defendants Omar Qazi ("Qazi") and Smick Enterprises, Inc. (collectively, "Smick Defendants"), will and hereby do move this Court to order Plaintiff Aaron Greenspan ("Greenspan") to pay the **$84,083.26** in attorney's fees incurred by the Smick Defendants in defending against Greenspan's three copyright claims, pursuant to 17 U.S.C. §505 and related provisions of the Copyright Act. The Smick Defendants will and hereby do further move the Court to order Greenspan to pay the **$28,378.93** in attorney's fees incurred by the Smick Defendants in defending against Greenspan's securities claims under this Court's inherent power to award attorney's fees for actions brought in bad faith.

The Court should grant the Smick Defendants' request for attorney's fees with respect to the copyright claims because Greenspan's copyright claims were objectively unreasonable (if not frivolous), the claims were asserted in bad faith, an award of fees is necessary to deter future baseless copyright litigation, and the policy objectives of the Copyright Act are best achieved by promoting fair use and parody. The attorney's fees requested were reasonably and necessarily incurred in this case because the hourly rates charged by the timekeepers were consistent with the prevailing rates in the area, the hours worked were not redundant or unnecessary, and the billing records are sufficiently detailed to permit the Court to apportion fees between copyright claims and time devoted to defending against unrelated claims.

The Court should grant the Smick Defendants' request for attorney's fees incurred in defending against Greenspan's securities claims because Greenspan acted in bad faith in pursuing those claims against the Smick Defendants under Rule 10b-5, in violation of 28 U.S.C. §1927. Greenspan's securities claims against the Smick Defendants were overtly baseless, predicated on two innocuous tweets on the @WholeMarsBlog Twitter account and a response to one of the account's followers. The Smick Defendants were forced to incur significant expense in defending themselves against versions of these claims across five versions of the Complaint, and multiple

1

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

vexatious filings, despite the fact that there were no factual allegations to support evidence of a material misrepresentation, scienter, a resulting economic loss, causation, or any effect on the securities market.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities and declarations, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

Respectfully Submitted,

DATED: June 2, 2022

**KRONENBERGER ROSENFELD, LLP**

By:     s/Karl S. Kronenberger
            Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.

2

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

STATEMENT OF ISSUES TO BE DECIDED ...............................................................4

ARGUMENT .....................................................................................................................4

    A.  The Court should award attorney's fees to the Smick Defendants as the prevailing parties to Greenspan's copyright claims because each of the relevant factors weighs in favor of an award............................................................................................................................4

        1.  Greenspan's copyright claims were not objectively reasonable ...................................6

        2.  Greenspan's litigation and non-litigation conduct evidence bad faith.........................7

        3.  A fee award would deter similar baseless copyright claims .........................................8

    B.  The Court should award fees to the Smick Defendants for defending against Greenspan's baseless securities claims. ..................................................................................................9

    C.  The Court should award fees as a percentage of the total hours spent defending this litigation, proportional to the percentage of the copyright and securities claims .............11

CONCLUSION.................................................................................................................15

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

Cases

3

*Cadkin v. Loose,*
  569 F.3d 1142 (9th Cir. 2009) ............................................................................... 15

4

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008) ................................................................................. 15

5

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991)................................................................................................. 13

6

*Del Campo v. Kennedy,*
  491 F.Supp.2d 891 (N.D. Cal. 2006) .................................................................... 10

7

*Democratic Party of Wash. State v. Reed,*
  388 F.3d 1281 (9th Cir. 2004) ............................................................................... 15

8

*Entertainment Research Group, Inc. v. Genesis Creative Group,*
  122 F.3d 1211 (9th Cir. 1997) ............................................................................... 10

9

*Epikhin v. Game Insight North America,*
  2016 WL 1258690 (N.D. Ca. March 31, 2016) ..................................................... 11

10

*Fantasy, Inc. v. Fogerty,*
  94 F.3d 553 (9th Cir. 1996) ................................................................................... 10

11

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994)........................................................................................... 9, 10

12

*Gates v. Deukmeijian,*
  987 F.2d 1392 (9th Cir. 1992) ........................................................................ 15, 16

13

*Glacier Films (USA), Inc. v. Turchin,*
  896 F.3d 1033 (9th Cir. 2018) ......................................................................... 12, 13

14

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC,*
  925 F.3d 1140 (9th Cir. 2019) ................................................................................. 9

15

*Gonzales v. Transfer Techs., Inc.,*
  301 F.3d 608 (7th Cir. 2002) ................................................................................. 12

16

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,*
  995 F.2d 414 (3d Cir. 1993)................................................................................... 17

17

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)............................................................................................... 15

18

*Hiken v. Dept. of,*
  2012 WL 3686747 (N.D. Cal. Aug. 21, 2012) ...................................................... 15

19

*Johnson v. Storix, Inc.,*
  716 Fed. Appx. 628 (9th Cir. 2017)....................................................................... 17

20

*Inhale, Inc. v. Starbuzz Tobacco, Inc.,*
  755 F.3d 1038 (9th Cir. 2014) ................................................................................. 9

21

*Kirtsaeng v. John Wiley & Sons, Inc.,*
  579 U.S. 197 (2016)..................................................................................... 9, 10, 12

22

*Maljack Productions Inc. v. GoodTimes Home Video Corp.,*
  81 F.3d 881 (9th Cir. 1996) ................................................................................... 11

23

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) ............................................................................... 15

24

*Pinkham v. Camex, Inc.,*
  84 F.3d 292 (8th Cir. 1996) ............................................................................. 16, 17

25

*Seltzer v. Green Day, Inc.,*

26

27

28

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

725 F.3d 1170 (9th Cir. 2013) ................................................................. 9
*Shame on You Productions, Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018) ................................................................. 16
*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ............................................................ 9, 10
*Stern v. Does*,
    978 F. Supp. 2d 1031 (C.D. Cal. 2011) ............................................... 10
*Thomas v. City of Tacoma*,
    410 F.3d 644 (9th Cir. 2005) ................................................................. 16
*Traditional Cat Ass'n, Inc. v. Gilbreath*,
    340 F.3d 829 (9th Cir. 2003) ................................................................. 16
*Unicom Systems, Inc. v. Farmers Group Inc.*,
    2009 WL 10670614 (C.D. Cal. June 29, 2009) ...................................... 9
*Virgin Records Am., Inc. v. Thompson*,
    512 F.3d 724 (5th Cir. 2008) ................................................................... 9
*Wages v. I.R.S.*,
    915 F.2d 1230 (9th Cir. 1990) ............................................................... 14
*Webb v. Sloan*,
    330 F.3d 1158 (9th Cir. 2003) ............................................................... 16

Statutes
17 U.S.C. §505 .................................................................................... 1, 5, 8, 9
17 U.S.C. §1203(b)(5) ................................................................................... 9
28 U.S.C. §1927 ................................................................................... *Passim*

Rules
Federal Rules of Civil Procedure 12(b)(6) .................................................. 10



## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Defendants Omar Qazi ("Qazi") and Smick Enterprises, Inc. (collectively, "Smick Defendants") request that the Court award them **$84,083.26** in attorney's fees pursuant to 17 U.S.C. §505 and related provisions of the Copyright Act. This sum reflects the attorney's fees that the Smick Defendants incurred in defending against Plaintiff Aaron Greenspan ("Greenspan")'s copyright claims. The Smick Defendants further request that the Court award them **$28,378.93** in attorney's fees incurred in defending against Greenspan's securities claims.

This is an exceptional case, which justifies an award of attorney's fees. Greenspan's aggressive litigation tactics and copious filings caused the Smick Defendants to incur a staggering $200,000 in legal expenses—all in defending against claims that were ultimately dismissed at the pleadings stage.

Regarding Greenspan's copyright claims, a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright. Thus, a successful defendant can recover its attorney's fees under the Copyright Act where such an award furthers the Act's purpose. Greenspan's copyright claims were based on a clearly satirical use of sections of Greenspan's autobiography, *Authoritas,* and a photograph of Greenspan in a purple shirt, to make fun of Greenspan. The policy objectives of the Copyright Act are best achieved by promoting such fair use. Thus, an award of fees is justified here and necessary to deter future baseless copyright litigation.

Greenspan's securities fraud claims fared no better. Greenspan based his market manipulation claim on two tweets on the @WholeMarsBlog Twitter account, and one response on that account stating, "that is why we do it," when a follower thanked the account for "funny, informative, thought provoking & aggressive tweets against Tesla FUD [that] inspired me to purchase Tesla shares in April & March of 2019." (FAC 258.) And after the Court dismissed the claims in Greenspan's Third Amended Complaint, it instructed Greenspan that he was not permitted to add any new claims or parties without leave of the Court should he choose to refile.

1

1   [D.E. No. 125 at 22:1-2.] Greenspan nevertheless asserted a new securities claim against the Smick

2   Defendants in his Fourth Amended Complaint. An award of attorney's fees is necessary to prevent

3   such baseless and vexatious litigation pursuant to 28 U.S.C. §1927.

4       Greenspan's actions both within and outside of this litigation suggest that he will continue

5   to file similar meritless claims unless he is deterred from doing so. For these reasons, the Court

6   should award the Smick Defendants a total of **$112,462.19** in attorney's fees.[1]

7                                    **BACKGROUND**

8       Greenspan first filed his 63-page Complaint (which contained 200 pages of exhibits) on

9   May 20, 2020. [D.E. No. 1.] Count five of this Complaint was a copyright infringement claim

10  against the Smick Defendants, primarily based on the Smick Defendants' use of the Purple Shirt

11  Photograph to make fun of Greenspan. [D.E. No. 1 at 42:8.] There were 5 other counts against the

12  Smick Defendants in the original Complaint: libel per se (count 1), intentional infliction of

13  emotional distress (count 3), declaratory judgment that Qazi be held in contempt (count 4), market

14  manipulation (count 8), and injunctive relief (count 10). The copyright claims therefore

15  represented about 16.67% of the total claims in the original Complaint. So, too, did the securities

16  claims.

17      On July 20, 2020, Greenspan filed his First Amended Complaint, a document which

18  (together with its exhibits) totaled 1,606 pages. [D.E. No. 20.] This pleading asserted seven claims

19  against the Smick Defendants, two of which were copyright claims, alleging separate counts for

20  infringement and for removal of copyright management information ("CMI"). The copyright

21  infringement claims were based primarily on the Smick Defendants' alleged use of portions of

22  Greenspan's autobiography, *Authoritas,* to make fun of Greenspan. The CMI claim was based on

23  the Smick Defendants' alleged used of the Purple Shirt Photograph. In the First Amended

24  Complaint, 28.5% of Greenspan's claims against the Smick Defendants were copyright claims,

25  and 14.29% were securities claims.

26

27  ───────────────
    [1] Additionally, the Smick Defendants will submit a request for those fees incurred in the
    preparation of this fee motion and its accompanying reply at the time they submit their reply in
28  support of this motion.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

In Greenspan's 1,889-page Second Amended Complaint filed on August 26, 2020, he added an additional claim against the Smick Defendants for DMCA misrepresentation. [D.E. No. 70.] This amendment resulted in a total of three copyright counts and five non-copyright counts against the Smick Defendants—meaning 37.5% of Greenspan's claims were copyright claims, and 12.5% were for securities claims.

In his Third Amended Complaint, filed on February 12, 2021, Greenspan asserted six claims against the Smick Defendants; three of which arose under the Copyright Act. [D.E. No. 103.] This was also true in the Fourth Amended Complaint. [D.E. No. 131.] Thus, from February 12, 2021 onward, 50% of Greenspan's claims against the Smick Defendants were copyright claims. As for the securities claims, Greenspan asserted a second securities claim against the Smick Defendants, for the very first time, in his Fourth Amended Complaint. [D.E. 131.] Thus, securities claims made up 16.67% of Greenspan's claims against the Smick Defendants in the Third Amended Complaint, and 33.33% of his claims in the Fourth. These time periods are summarized as follows:

| Date Range | Percentage of Asserted Claims Arising Under Copyright Law | Securities Claims |
|---|---|---|
| May 20, 2020 – July 19, 2020 | 16.67% | 16.67% |
| July 20, 2020 – August 25, 2020 | 28.5% | 14.29% |
| August 26, 2020 – February 11, 2021 | 37.5% | 12.5% |
| February 12, 2021 – August 12, 2021 | 50% | 16.67% |
| August 13, 2021 – Present | 42.86% | 28.57% |

The Smick Defendants moved to dismiss all of Greenspan's copyright claims in the Fourth Amended Complaint, arguing primarily that the alleged infringement and other violations were protected fair use. [D.E. No. 144.] On May 19, 2022, the Court dismissed all of Greenspan's copyright claims with prejudice. [D.E. No. 171.] In doing so, the Court stated, "[a]s discussed in

3

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

the prior dismissal order, the challenged conduct was well within fair use as commentary and criticism." [D.E. No. 171 at 3:22-23.]

Greenspan's securities claims included both a market manipulation claim (present from the outset of the case), and a separate claim for violation of section 10(b) and Rule10-b5 claim, which was asserted against the Smick Defendants for the first time in the Fourth Amended Complaint. [D.E. 131 at Count VII.] The claim for market manipulation was based on two tweets, one which stated: "I wish I had the words to describe how amazing AutoPilot is. It's the eight [*sic*] wonder of the world," and the other which stated, "So did Tesla lie about having the lowest probability of injury of any car? No, it didn't, and nobody is saying it did. The Government's own numbers above confirm what Tesla is saying. The NHTSA just only wants people to use the star rating. But Teslas are more safe [*sic*]." The Court had previously noted that these facts were insufficient to support a claim for market manipulation. [D.E. No. 125 at 21:1-12]. Nevertheless, Greenspan chose to reassert these securities claims based on the same facts.

Together with their exhibits, Greenspan's 76 filings in this case have totaled 7,531 pages. He has filed ten requests for judicial notice, three requests for sanctions and/or orders of contempt, and eighteen other motions.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should award the Smick Defendants $84,083.26 in attorney's fees pursuant to 17 U.S.C. §505 and related provisions of the Copyright Act?

2. Whether the Court should award the Smick Defendants $28,378.93 in attorney's fees incurred in defending securities claims brought in bad faith, pursuant to the bad faith exception, the Court's inherent power, and 28 U.S.C. §1927?

## ARGUMENT

**A.   The Court should award attorney's fees to the Smick Defendants as the prevailing parties to Greenspan's copyright claims because each of the relevant factors weighs in favor of an award.**

The Court should award attorney's fees to the Smick Defendants because the Smick Defendants prevailed on each of Greenspan's three copyright claims, because Greenspan's

copyright claims were not reasonable, and because an attorney's fees award furthers the purpose of the Copyright Act. For claims brought under the Copyright Act, a court has discretion to allow for the recovery of costs and reasonable attorney's fees. *See* 17 U.S.C. §505. This is also true for claims brought under the Digital Millennium Copyright Act. *See* 17 U.S.C. §1203(b)(5) (the court "in its discretion may award reasonable attorney's fees to the prevailing party"). While an award of fees is not automatic, courts have held that "an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception." *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008), quoted in *Unicom Systems, Inc. v. Farmers Group Inc.*, 2009 WL 10670614 at *1 (C.D. Cal. June 29, 2009). The statutes themselves offer no bright line rule as to how a court should exercise this discretion, instead leaving it for each court to determine on a case-by-case basis. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994). Nevertheless, in exercising this discretion, courts "may not treat prevailing plaintiffs and prevailing defendants any differently." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016).

Importantly, "[a] successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1149 (9th Cir. 2019) (quoting *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014)). "When a fee award encourages a defendant to litigate a meritorious fair use claim against an unreasonable claim of infringement, the policies of the Copyright Act are served." *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013), Thus, "[t]he question presented in a case where a defendant makes a winning fair use defense is whether the successful defense of the action furthered the purposes of the Copyright Act." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180 (9th Cir. 2013).

In determining whether to award fees (whether to a prevailing plaintiff or prevailing defendant), courts consider several non-exclusive factors, including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. *See Fogerty*, 510 U.S. at 534 n. 19. Even a party who advances objectively reasonable positions may therefore be compelled to pay attorney's fees. *See Kirtsaeng*, 579 U.S. at 208-09. While litigation misconduct weighs in favor of an award of fees,

"blameworthiness is not a prerequisite to awarding fees to a prevailing defendant." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). Courts weigh these factors against the degree of success obtained by the prevailing party. *See Fantasy, Inc.*, 94 F.3d at 559. In determining the degree of success, "a dismissal with prejudice under Federal Rules of Civil Procedure 12(b)(6) is considered a dismissal on the merits." *del Campo v. Kennedy*, 491 F.Supp.2d 891, 902 (N.D. Cal. 2006).

Here, the relevant factors support an award of attorney's fees to the Smick Defendants. As an initial matter, the Smick Defendants prevailed on all three copyright claims. Thus, in weighing the other factors described more fully below, this Court should bear in mind, as *Fantasy, Inc.* dictates, that the Smick Defendants' degree of success in defending against Plaintiff's copyright claims in this case was absolute. Additionally, the Smick Defendants advanced an important purpose of the Copyright Act (and that of the Digital Millennial Copyright Act) by ensuring that critics and parody artists can create critical works without the chilling effect posed by the threat of onerous litigation.

### 1.   Greenspan's copyright claims were not objectively reasonable.

A claim is unreasonable from the outset of litigation if the party asserting the claim "should have known from the outset that its chances of success in [the] case were slim to none." *SOFA Entertainment, Inc. v. Dodger Prods., Inc.*, 709 F.3ss 1273, 1280 (9th Cir. 2013). Similarly, a claim can become unreasonable over the course of litigation when a party continues to pursue a claim after it becomes clear that the claim cannot prevail. *See Entertainment Research Group, Inc. v. Genesis Creative Group*, 122 F.3d 1211, 1229 (9th Cir. 1997) (objective unreasonableness developed when a party continued to pursue claims despite producing "no evidence at all . . . even after three years and numerous depositions."). In particular, a copyright claim is not reasonable when the defendant has an obvious fair use defense. *See Stern v. Does*, 978 F. Supp. 2d 1031, 1049 (C.D. Cal. 2011). Courts look to both factual and legal components of the case when determining whether a claim or defense was objectively unreasonable. *Fogerty*, 510 U.S. at 534 n.19.

Greenspan's copyright claims centered around the Smick Defendants' use of excerpts of *Authoritas* and the Purple Shirt Photograph to criticize and make fun of Greenspan. The Smick

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Defendants' alleged use of *Authoritas* included the addition of titles such as "How Never to Get Laid," "Aaron Greenspan on his Hair," and "Yer a Wizard Aaron," and it ends with the following statement: "The sad story of a smart coder who failed time and time again because of his terrible social skills. He has never changed. He doesn't know how to talk to people, only threaten them. That's why he'll always be a huge loser, in my opinion." [D.E. 70 at Ex. U.] As the Court noted, the challenged conduct was well within fair use as commentary and criticism. [D.E. No. 171 at 3:22-23.] Moreover, "[n]othing in the [Fourth Amended Complaint] provide[d] a good reason to revisit the Court's conclusions about the fair use elements of the nature of the work, the amount and substantiality of the portion used, and the effect of the use on the market." [D.E. No. 171 at 3:23-24.] Greenspan's copyright claim regarding the removal of CMI fared no better, when Greenspan admittedly affixed the CMI to the Purpose Shirt Photograph after he asserted his original CMI claim.

Thus, Greenspan filed his copyright claims without any legal basis and continued to litigate them after the Court found that they lacked merit. In fact, Greenspan's copyright claims were sufficiently threadbare to warrant a decision on the merits at the motion to dismiss stage, even though Greenspan's factual allegations were accepted as true, and even though fair use is a mixed question of law and fact.

Because Greenspan filed and continued to litigate objectively unreasonable copyright claims, this factor weighs in favor of an award of attorney's fees.

**2.      Greenspan's litigation and non-litigation conduct evidence bad faith.**

A court may infer a party's bad faith or improper motive both from a party's conduct in the litigation and from the actions that led to the lawsuit in the first place. *See Epikhin v. Game Insight North America*, 2016 WL 1258690 at *6 (N.D. Ca. March 31, 2016). A party brings a copyright claim for an improper purpose when it seeks to secure benefits other than merely redressing legitimate copyright grievances. *See, e.g.*, *Maljack Productions Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996).

This factor weighs in favor of awarding attorney's fees here. During this litigation, Greenspan filed numerous legally unjustified motions, such as a baseless motion for sanctions that

he later withdrew (but not until after forcing the Smick Defendants to prepare and file their opposition to it). (D.E. 66.) Greenspan also repeatedly threatened to file bar complaints against defense counsel, and on several occasions accused defense counsel of violating the ethical rules. Kronenberger Decl. ¶4.

Greenspan's bad faith and improper motivation are further evidenced by his actions regarding the Purple Shirt Photograph. Although the Smick Defendants had allegedly been using this photograph for some time prior to Greenspan's initiation of this lawsuit, he did not undertake efforts to secure a copyright or to affix CMI until *after* he became aware of the alleged infringement. At that point, Greenspan sued the Smick Defendants for removing CMI that had not even existed at the time when they first shared the photograph in question. Greenspan then sought to obfuscate his conduct in his pleadings. (*compare* First Amended Complaint [D.E. 20] ¶228 (alleging removal of CMI before 07/02/20) *with* Fourth Amended Complaint ¶¶215-217 (alleging affixation of CMI to actual photograph on July 19, 2020.) [D.E. No. 131] Such conduct demonstrates that Greenspan's primary motivation was not a genuine desire to protect his copyrighted works, but rather to manufacture expensive litigation against the Smick Defendants.

### 3. A fee award would deter similar baseless copyright claims

Courts also consider deterrence in deciding whether to award fees under the Copyright Act. More specifically, courts factor in the need "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims . . . even if the losing position was reasonable in a particular case." *Kirtsaeng*, 579 U.S. at 208-09.

Although the Ninth Circuit has stopped short of adopting a presumptive entitlement to fees for the prevailing party in copyright claims when the monetary stakes for the losing party would otherwise be small, it has held that "the policy underlying the presumption—that 'willful infringements involving small amounts of money' may not be 'adequately deterred' absent an award of fees—is a principle that bears on the calculus of whether to award fees." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1039 (9th Cir. 2018) (quoting *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610 (7th Cir. 2002)). In other words, deterrence (one of the factors articulated in *Fogerty*) plays a more important role in situations where the ultimate monetary award to a

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

plaintiff would be relatively small compared to the attorney's fees incurred in defending against such a claim.

Here, even if Greenspan prevailed on his copyright infringement claims, he had little hope of recovering more than nominal damages. Greenspan admitted that there is essentially no market for *Authoritas* or the Purple Shirt Photograph, with only a handful of copies of the former sold before the filing of this suit. By contrast, Greenspan's overly-aggressive litigation imposed significant attorney's fees on the Smick Defendants.

Furthermore, as a pro se litigant, Greenspan has not incurred any attorney's fees. As in *Glacier Films*, the minimal financial consequences of Greenspan's tactics to date merit an award of fees to deter him from weaponizing the legal system against future opponents. Otherwise, the Smick Defendants will have paid and lost more in successfully defending against Greenspan's meritless copyright actions than Greenspan could have recovered in the first place. This outcome would not advance the purposes of the Copyright Act.

In summary, the Court should award attorney's fees to the Smick Defendants both because each of the *Fogerty* factors weighs in favor of such an award, because the Smick Defendants enjoyed total success on their copyright defenses, and because the purposes of the Copyright Act and DMCA are best served by deterring baseless litigation, which results in a chilling effect on legal creative expression and authorship.

**B.** **The Court should award fees to the Smick Defendants for defending against Greenspan's baseless securities claims**.

While there is no specific statutory basis under Rule 10b-5 for an award of attorney's fees, it is within the Court's discretion to award fees under its inherent authority if a litigant "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). Additionally, 28 U.S.C. 1927 provides that an attorney or other person admitted to conduct cases "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section may be imposed on a pro se plaintiff. *See Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

In *Wages*, the Ninth Circuit affirmed an award of sanctions under §1927, finding that the pro se plaintiff:

> "attempt[ed] to file an amended complaint that did not materially differ from one which the district court had already concluded did not state a claim, and by continually moving for alterations in the district court's original judgment despite that court's clear unwillingness to change its mind, [the plaintiff] evidenced bad faith in multiplying the proceedings in this case 'unreasonably and vexatiously.'"

*Id.*

The same has been true throughout this case. Greenspan filed [D.E. 66] and withdrew [D.E. 74] a motion for sanctions (but not until after the Smick Defendants were forced to incur expenses in responding to it). Three weeks later, he filed a motion for an order to show cause why the Smick Defendants and their counsel should not be held in contempt. [D.E. 77.] Two weeks after filing his reply in support of that motion, he filed another motion for sanctions. [D.E. 83.] A month after the Court denied these motions, he filed a motion to compel compliance with the Court's prior order, reasserting the same arguments raised in his prior motions for sanctions and contempt. [D.E. 99.] When this was denied, he then sought leave to file a motion for a temporary restraining order against the Smick Defendants. [D.E. 113.] He filed multiple applications for default against the Smick Defendants, including after the clerk noted defects in service. [D.E. 15, 26, 45]. After these were denied, he filed a motion seeking leave to file another application for default against the Smick Defendants. [D.E. 96.] He filed a motion to lift the discovery stay [D.E. 60], but then renewed the request later despite the Court's denial. [D.E. 162.] He filed an emergency motion requesting an order to preserve evidence. [D.E. 134.] He filed a total of five variations of the Complaint, but still sought leave to file a supplemental complaint while briefing was underway to resolve the Fourth Amended Complaint. [D.E. 141.] Despite the Court's admonition that requests for judicial notice were "rarely appropriate" for purposes of resolving a motion to dismiss [D.E. 128], Greenspan nevertheless continued to file such requests. [D.E. 150, 159, 169.] Despite the Court's order that "no new parties or claims" could be added to Greenspan's Fourth Amended Complaint absent Court approval [D.E. 125 at 21:1-2], Greenspan nevertheless asserted a new securities claim against the Smick Defendants in the Fourth Amended Complaint. As in *Wages*,

1   Greenspan's repeated revisitations of the same issue, his ongoing assertion of meritless claims,

2   and his needless amplification of litigation filings all warrant an award of fees for the Smick

3   Defendants' expenses in defending against Greenspan's baseless securities claims.

4   **C.    The Court should award fees as a percentage of the total hours spent defending this**

5   **litigation, proportional to the percentage of the copyright and securities claims.**

6       "District courts have two tasks in applying §505: first, deciding whether an award of

7   attorney's fees is appropriate and, second, calculating the amount of the award." *Cadkin v. Loose*,

8   569 F.3d 1142, 1148 (9th Cir. 2009). Thus, assuming the Court decides to award attorney's fees

9   to the Smick Defendants, it must then determine what amount to award. The discretion afforded

10   to the Court in calculating the reasonableness of such fees is broad. *See Gates v. Deukmejian*, 987

11   F.2d 1392, 1398 (9th Cir. 1992).

12       In conducting this analysis, courts first consider the reasonableness of the hourly billing

13   rate, primarily by examining the prevailing market rates for work performed by attorneys of

14   comparable skill, experience, and reputation in the forum where the district sits. *Camacho v.

15   Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Next, they assess the reasonableness of

16   the hours worked, excluding hours which are "excessive, redundant, or otherwise unnecessary."

17   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, in making this assessment, courts

18   "should defer to the winning lawyer's professional judgment as to how much time he was required

19   to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Thus,

20   for a court to deny compensation, "it must appear that the time claimed is obviously and

21   convincingly excessive under the circumstances." *Hiken v. Dept. of Def.*, 2012 WL 3686747 at *7

22   (N.D. Cal. Aug. 21, 2012). The reasonableness of the time spent is assessed by reviewing billing

23   entries. In reviewing these entries, courts have held that parties may make redactions to preserve

24   secrecy of work product and privilege, so long as these redactions "do not impair the ability of the

25   court to judge whether the work was an appropriate basis for fees." *Democratic Party of Wash.

26   State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).

27       Additionally, fees must be appropriately apportioned. Generally, "a party entitled to

28   attorney's fees as a prevailing party on a particular [copyright] claim, but not on other claims in

11

the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any 'related claims.'" *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003). Claims are related when they "involve a common core of facts or are based on related legal theories." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005), quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Fees incurred in pursuing or defending against unrelated claims should generally not be included. However, courts can appropriately award attorney's fees for time spent on general matters of legal defense, even when that time is not spent *specifically* litigating the copyright claim or defense. *See, e.g.*, *Shame on You Productions, Inc. v. Banks*, 893 F.3d 661, 670 (9th Cir. 2018). In *Shame on You Productions*, the Ninth Circuit upheld an award of fees that included billing entries for time spent preparing motions responsive to the plaintiff's motions to compel discovery and for sanctions. *Id.* Noting that "even losing motions may be compensable" and that the underlying motions had been granted "only in part," the court affirmed the district court's determination that hours spent on these motions contributed to the defendants' overall success. *Id.*

In some instances, the interwoven nature of the claims or of certain aspects of the litigation make it impracticable to administer an hour-by-hour apportionment. In such cases, courts may elect to administer a percentage-based calculation—provided they articulate their reasons for selecting these specific percentage deductions. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). Courts have used this method to resolve apportionment issues in situations where the prevailing party has incurred expenses both for allowable copyright claims, and disallowed unrelated claims, but where it was difficult for the court to allocate time on an hour-by-hour basis. In *Pinkham v. Camex, Inc.*, the plaintiff brought both diversity and copyright claims. 84 F.3d 292, 294 (8th Cir. 1996). The cases were consolidated for trial, and the plaintiff ultimately prevailed in both claims. *Id.* However, in awarding attorney's fees for the copyright action, the district court agreed with the plaintiff that "nearly all of the work was necessary to both actions," ultimately determining that only 10% of the total time billed was billed *solely* to the benefit of the diversity case. *Id.* Because the remaining 90% was necessary to the copyright case (even though some of that amount included work that was equally necessary to the diversity case), the court apportioned

90% of the total fees incurred to the copyright action. *Id.* Affirming, the Eighth Circuit noted, "the determination that 90% of the billed time was necessary to both actions is sufficient to recover for all the time spent in joint preparation." *Id.*; *see also Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993).

Finally, while courts do consider the financial position of the losing party in calculating an award of attorney's fees, this is a relative analysis undertaken with reference to the finances of the prevailing party. In *Johnson v. Storix, Inc.*, the Ninth Circuit considered an award of attorney's fees against a *pro se* individual plaintiff who was suing a company. 716 Fed. Appx. 628, 632 (9th Cir. 2017). In remanding, the court noted that a fee award in the amount of $543,704 was excessive, in part, because of the relative financial strength of the parties. *Id*. Notably absent from the court's opinion in *Johnson* was any suggestion that a pro se litigant's financial position is necessarily stronger than that of an individual defendant.

Here, the Smick Defendants have supplied detailed, minimally redacted billing records in support of their application for attorney's fees. *See* Kronenberger Decl. ¶4, Exhibit A. These records outline the work that was performed in the case, supported by narratives contained in the billing entries. Additionally, defense counsel has attested that their fees are consistent with the prevailing hourly rates for attorneys of like experience and expertise. *Id.* at ¶7 Although much of this work was incurred in defending against ancillary motions (such as Greenspan's motions for sanctions), the Court can appropriately award fees associated with these motions to the Smick Defendants because, just as in *Shame on You Productions*, such motions contributed to the overall success of the defense in this case. Moreover, unlike in *Shame on You Productions*, the Smick Defendants actually prevailed in defending against Greenspan's motions.

Because this case involves copyright claims, securities claims, and unrelated claims (such as state law claims for defamation and civil stalking), the Court must apportion the total fees incurred by the Smick Defendants in defending this case, and award only those fees incurred in connection with the copyright and securities claims. However, much of the time spent in this case cannot easily be apportioned. For example, defense counsel devoted significant time to reviewing the thousands of pages contained in Plaintiff's various pleadings and their attendant exhibits, but

13

this expenditure benefitted each of the Smick Defendants' defenses in the case. Thus, as in *Pinkham*, the Court could appropriately apportion to the non-copyright claims only those fees which were incurred exclusively in the defense of the unrelated claims.

The Smick Defendants request that the Court award fees on a proportional basis relative to the percentage of the outstanding claims against the Smick Defendants that were for copyright and securities actions:

| Date Range | Percentage of Asserted Claims Arising Under Copyright Law | Percentage of Asserted Claims Arising Under Securities Law | Total Fees | Requested Fees (copyright) | Requested Fees (securities) |
|---|---|---|---|---|---|
| May 20, 2020 – July 19, 2020 | 16.67% | 16.67% | $7,526.75 | $1,254.71 | $1,254.71 |
| July 20, 2020 – August 25, 2020 | 28.57% | 14.29% | $34,814.75 | $9,946.57 | $4,975.03 |
| August 26, 2020 – February 11, 2021 | 37.5% | 12.5% | $64,114.00 | $24,042.75 | $8,014.25 |
| February 12, 2021 – August 12, 2021 | 50% | 16.67% | $21,240.63 | $36,849.26 | $6,142.77 |

14

| August 13, 2021 – Present | 42.86% | 28.57% | 27,974.75 | $11,989.97 | $7,992.17 |
|---|---|---|---|---|---|
| **TOTAL** | | | **$176,911.50** | **$84,083.26** | **$28,378.93** |

An award of **$112,462.19** fairly reflects the work performed that was specific to the copyright and securities claims. The Smick Defendants also seek their fees in preparing this motion, in an amount to be determined once they have drafted their reply in support of this motion.

### CONCLUSION

For the foregoing reasons, the Court should order Greenspan to pay the Smick Defendants' **$112,462.19** in attorney's fees, in addition to all amounts incurred in preparing this fee motion and its accompanying reply.

Respectfully Submitted,

DATED: June 2, 2022

**KRONENBERGER ROSENFELD, LLP**

By: _____s/Karl S. Kronenberger_____
           Karl S. Kronenberger

Attorneys for Defendants Omar Qazi and Smick Enterprises, Inc.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108