QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael T. Lifrak (Bar No. 232430)
  michaellifrak@quinnemanuel.com
  Anthony P. Alden (Bar No. 232220)
  anthonyalden@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*pro hac vice forthcoming*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (213) 849-7000
Facsimile:     (213) 849-7100

Attorneys for Defendants
TESLA, INC. and ELON MUSK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON GREENSPAN,<br><br>Plaintiff,<br><br>v.<br><br>OMAR QAZI, SMICK ENTERPRISES, INC., ELON MUSK, and TESLA, INC.,<br><br>Defendants. | Case No. 3:20-cv-03426-JD<br><br>**DEFENDANTS ELON MUSK'S AND TESLA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)**<br><br>Time: 10:00 A.M.<br>Date: July 21, 2022<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................1

LEGAL STANDARD .....................................................................................................................3

I. PLAINTIFF'S PURPORTED EVIDENCE IS NOT NEWLY DISCOVERED AND DOES NOT SUBSTANTIATE HIS SECURITIES CLAIMS ..............................................3

    A. Plaintiff Does Not Show That The Purported Evidence Is "Newly Discovered" ..................................................................................................................4

    B. Plaintiff's Purportedly New Evidence Would Not Have Changed The Disposition Of The Case ..................................................................................................5

        1. The FOIA Documents Would Not Have Changed The Case's Disposition ..................................................................................................5

        2. The Alleged "Internal Documents" Do Not Show A Material Misrepresentation Or Omission ..................................................................................................6

        3. Plaintiff Does Not Allege The Other Elements Of Securities Fraud ...........11

II. THE COURT DID NOT ERR OR DENY PLAINTIFF DUE PROCESS .........................12

III. THE COURT DID NOT DISREGARD *IN RE TESLA SECURITIES LITIGATION* ..........13

IV. JUDGE DONATO WAS NOT REQUIRED TO RECUSE HIMSELF .............................13

CONCLUSION ..............................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bidart v. Huber*,
 9 F. App'x 746 (9th Cir. 2001) .................................................................................................. 11

*In re BofI Holding, Inc. Sec. Litig.*,
 977 F.3d 781 (9th Cir. 2020) ..................................................................................................... 12

*Bruzzone v. Intel Corp.*,
 No. 21-16108, 2022 WL 874645 (9th Cir. Mar. 24, 2022) .......................................................... 4

*Bryant v. U.S. Bank*,
 No. 1:16-CV-1688 AWI SKO (E.D. Cal. Oct. 12, 2017) ............................................................ 4

*Carroll v. Nakatani*,
 342 F.3d 934 (9th Cir. 2003) ..................................................................................................... 13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
 65 F. Supp. 3d 840 (N.D. Cal. 2014) .......................................................................................... 9

*Coastal Transfer Co. v. Toyota Motor Sales*,
 833 F.2d 208 (9th Cir. 1987) .............................................................................................. 4, 5, 6

*In re Cutera Sec. Litig.*,
 610 F.3d 1103 (9th Cir. 2010) ..................................................................................................... 9

*In re Daou Sys., Inc.*,
 411 F.3d 1006 (9th Cir. 2005) ............................................................................................. 8, 12

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) .............................................................................................................. 7, 11

*Gardner v. Martino*,
 563 F.3d 981 (9th Cir. 2009) ....................................................................................................... 3

*In re Gibson*,
 950 F.3d 919 (7th Cir. 2019) ..................................................................................................... 14

*Harvest v. Castro*,
 531 F.3d 737 (9th Cir. 2008) ....................................................................................................... 3

*J.L. v. Children's Inst., Inc.*,
 177 Cal. App. 4th 388 (2009) ................................................................................................... 11

*Jameson v. Young*,
 No. C 14-0011 RS(PR), 2015 WL 4365460 (N.D. Cal. July 16, 2015) .................................... 13

*Jones v. Intelli-Check, Inc.*,
 274 F. Supp. 2d 615 (D.N.J. 2003) ........................................................................................... 12

*Kipling v. Flex Ltd.*,
 No. 18-CV-02706-LHK, 2020 WL 2793463 (N.D. Cal. May 29, 2020) .................................. 10

*Kolek v. Engen*,
 869 F.2d 1281 (9th Cir. 1989) ................................................................................................... 13

*Kona Enters., Inc. v. Estate of Bishop*,
 229 F.3d 877 (9th Cir. 2000) ....................................................................................................... 3

*Lamb's Chapel v. Center Moriches Sch. Dist*,
 508 U.S. 384 (1993) .................................................................................................................... 1

*Laurino v. Syringa General Hosp.*,
   279 F.3d 750 (9th Cir. 2002) ........................................................................................ 1, 5

*Liteky v. United States*,
   510 U.S. 540 (1994) ......................................................................................................... 14

*N. Cent. Distrib., Inc. v. Bogenschutz*,
   No. 1:17-cv-01351-AWI-EPG, 2018 WL 4027048 (E.D. Cal. Aug. 21, 2018) ........................ 13

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F. Supp. 2d 1105 (N.D. Cal. 2013) .................................................................................. 7

*School Dist. No. 1J v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) ............................................................................................... 13

*SEC v. Talbot*,
   530 F.3d 1085 (9th Cir. 2008) ............................................................................................ 9

*Soladigm, Inc. v. Min Ming Tarng*,
   No. 5:11-cv-05416 EJD, 2013 WL 428017 (N.D. Cal. Feb. 1, 2013) ........................................ 4

*Stark Trading v. Falconbridge Ltd.*,
   552 F.3d 568 (7th Cir. 2009) ............................................................................................. 12

*Taylor v. Vermont Dept. of Educ*,
   313 F.3d 768 (2d Cir. 2002) .............................................................................................. 14

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
   818 F. Supp. 2d 744 (S.D.N.Y. 2011) ................................................................................... 12

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ....................................................................................... 9, 13

*Ybarra v. Bastian*,
   647 F.2d 891 (9th Cir. 1981) .............................................................................................. 13

**Rules / Statutes**

15 U.S.C. § 78u-5(c)(1)(A)(i) .................................................................................................. 9, 10

15 U.S.C. § 78u-5(c)(1)(B)(i) ....................................................................................................... 9

Fed. R. Civ. P. 59(e) ................................................................................................................... 3

Fed. R. Civ. P. 60 ...................................................................................................................... 14

Fed. R. Civ. P .60(b) ......................................................................................................... 1, 3, 14

Fed. R. Civ. P. 60(b)(1) ............................................................................................................. 12

Fed. R. Civ. P. 60(b)(2) ....................................................................................................... 3, 4, 5

Fed. R. Civ. P. 60(b)(3) ............................................................................................................... 6

Rule 9 ......................................................................................................................................... 10

Rule 10b .................................................................................................................................... 6

Rule 10b-5(b) ............................................................................................................................. 7

**Other Authorities**

*https://shop.tesla.com/product/cyberwhistle* ............................................................................. 5

Dan Mihalascu, *Tesla Cyberwhistle Launches At $50 A Pop, Sells Out In Hours*, INSIDEEVS (Dec.
   1, 2021) https://insideevs.com/news/551829/tesla-cyberwhistle-sold-out-2hours/ ...................... 5

## PRELIMINARY STATEMENT

"[L]ike some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad after being repeatedly killed and buried," Plaintiff's wildly speculative, unsupported, and largely incoherent claims return again to "stalk" the Court. *Lamb's Chapel v. Center Moriches Sch. Dist*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring). Even though the Court has extended Plaintiff "every consideration as a *pro se* litigant, including the extraordinary opportunity of filing five massive complaints," Plaintiff "has not been able to plausibly allege those claims." ECF No. 171 at 2. "A sixth try"—in the form of Plaintiff's most recent motion under Rule 60(b)—"is not warranted." *Id.*

Like his Fourth Amended Complaint ("4AC"), Plaintiff's motion "essentially double[s] down on the infirmity of the allegations, without materially changing them." *Id.* at 3. This time, however, Plaintiff cites the evidence of unnamed "Confidential Witnesses" who conveniently surfaced only "[a]fter the filing of the 4AC"—though no details are provided about their miraculous appearance and Plaintiff flatly refuses to identify them. ECF No. 178 at 5. "[T]he court is entitled to be skeptical of self-serving allegations, especially when they are wholly insubstantial." *Laurino v. Syringa General Hosp.*, 279 F.3d 750, 755 (9th Cir. 2002) (Kozinski, J., dissenting). Even if the Court were to credit these newly conjured sources, it would still make no difference—they do not support the alleged facts, and the alleged facts do not support Plaintiff's legal conclusions.

Plaintiff had over four years and five attempts to state a valid claim. He filed thousands of pages of purported evidence, which the Court carefully considered. Nothing in Plaintiff's motion overcomes the fundamental deficiencies identified by the Court. Defendants should not be forced to spend even more money and time responding to Plaintiff's incoherent theories, which seem to be motivated by a personal vendetta of some sort. The Court should deny Plaintiff's motion.

## BACKGROUND

Tesla is a manufacturer of electric vehicles and other clean-energy technology. ¶ 1.[1] Plaintiff is a self-described "data journalist" who has, for years, waged an online campaign aimed

---

[1] All ¶ citations are to the 4AC, ECF No. 131.

at discrediting Tesla. ¶ 28. Since at least 2018, Plaintiff has authored tweets, accusatory emails, and even a 107-page manifesto accusing Tesla and its CEO, Mr. Musk, of misleading investors and assorted other misconduct. ¶ 61, Exs. 4-7. Plaintiff has never limited himself to simply spreading his misinformation about Tesla; instead, has had sought to profit from doing so. In 2018, approximately around the time he started tweeting his accusations against Tesla, Plaintiff began purchasing put options—and continued to do so for years. *See* ECF No. 131-1. Under this short-selling strategy, Plaintiff bet that Tesla's stock price would go down. ¶ 252. But Plaintiff lost his bet. The supposed fraud Plaintiff fervently decried was never revealed, and Tesla's stock price steadily increased. ¶ 14. Meanwhile, each of Plaintiff's put options expired worthless even as he continued to purchase more. ¶ 252; ECF No. 131-1.

In 2020, Plaintiff filed this lawsuit, seeking to recoup those losses. In a series of five complaints and numerous other filings, Plaintiff has alleged that the Tesla Defendants have (a) deceived investors about their finances and products in violation of the federal securities laws, (b) made libelous remarks about Plaintiff, (c) stalked Plaintiff, and even (d) collaborated with drug lords. After carefully considering the Third Amended Complaint, the Court dismissed Plaintiff's claims in a thorough and well-reasoned 22-page order. ECF No. 125. The Court described Plaintiff's allegations in such terms as "merely conclusory," "well short of the mark," and "entirely too vague and speculative to support an allegation of securities fraud." ECF No. 125 at 8, 9, 11. Nonetheless, the Court granted Plaintiff leave to amend because "this [was] the Court's first order on the adequacy of the complaint." *Id.* at 21. It cautioned, however, that "[t]he massive complaints filed to date are wholly inconsistent with Rule 8" and that further disregard for that rule's requirements could result in dismissal. *Id.*

Disregarding of the Court's order, on August 13, 2021, Plaintiff filed a 73-page 4AC. *See* ECF No. 131. On October 20, 2021, Plaintiff moved to file a supplemental complaint, ECF No. 141, which the Court correctly denied on October 26, 2021 because "Greenspan has already filed hundreds of pages of pleadings in this case, and a total of five complaints." ECF No. 142 (Text Order). On May 19, 2022, the Court correctly dismissed the 4AC because it "did not adduce additional facts that might have made the securities or copyright claims plausible, and did not

1   otherwise fix the problems discussed at length in the prior dismissal order." ECF No. 171 at 2. On
2   June 15, 2022, Plaintiff filed a motion to set aside the judgment under F.R.C.P. 60(b). ECF No.
3   178.

## LEGAL STANDARD

The "extraordinary remedy" of relief from final judgment under Federal Rules of Civil Procedure 59(e) and 60(b) should only be granted in "highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Relief under Rule 60(b) is to be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (quotation omitted); *see also Gardner v. Martino*, 563 F.3d 981, 991-92 (9th Cir. 2009) ("Relief under Rule 60(b)(6) will not be granted unless the moving party is able to show both injury and circumstances beyond its control prevented timely action to protect its interest.").

## ARGUMENT

### I.  PLAINTIFF'S PURPORTED EVIDENCE IS NOT NEWLY DISCOVERED AND DOES NOT SUBSTANTIATE HIS SECURITIES CLAIMS

While Plaintiff glibly tosses out several arguments for relief from judgment, the primary one seems to be Federal Rule of Civil Procedure 60(b)(2): "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To avail himself of this subsection, however, Plaintiff must identify "(i) 'newly discovered evidence' within the meaning of Rule 60(b); (ii) that, with the exercise of due diligence, could not have been discovered earlier; and (iii) that earlier production of which would have likely changed the disposition of the case." *Bruzzone v. Intel Corp.*, No. 21-16108, 2022 WL 874645, at *1 (9th Cir. Mar. 24, 2022). Plaintiff meets none of these requirements—he "does not adequately describe the new evidence, explain when [he] discovered the evidence, why the evidence could not have been discovered sooner, or how the evidence would have changed the disposition of the case." *Bryant v. U.S. Bank*, No. 1:16-CV-1688 AWI SKO, at *2 (E.D. Cal. Oct. 12, 2017).

**A.     Plaintiff Does Not Show That The Purported Evidence Is "Newly Discovered"**

Plaintiff does not meet his burden of showing that the cited evidence "constituted 'newly discovered evidence' within the meaning[] of Rule[] 60(b)(2)." *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211 (9th Cir. 1987).  Under Rule 60(b)(2), only new evidence that could not have been previously discovered with due diligence may be considered.  *Id.* at 212 ("Evidence is not 'newly discovered' … if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence.").

"Much, if not all, of the documentation [Plaintiff] cites is dated prior to the court's dismissal order."  *Soladigm, Inc. v. Min Ming Tarng*, No. 5:11-cv-05416 EJD, 2013 WL 428017, at *2 (N.D. Cal. Feb. 1, 2013).  *See, e.g.*, ECF No. 179, Ex. B ("May 2020 Tesla Early Access Program Contract"); Ex. E ("Internal January 2014 Microsoft Dynamics AX Spreadsheet Excerpt"); Ex. L ("Internal November 12, 2021 Tesla Knowledge Base Article").  "Since [Plaintiff] does not explain otherwise, the court can only presume that the documentation was either already in [Plaintiff]'s possession or easily available to him prior to its submission now."  *Soladigm*, 2013 WL 428017, at *2.  "To the extent any of it was not, [Plaintiff] has not described diligence in seeking it."  *Id.*

Plaintiff alleges that he conveniently came into possession of "newly discovered evidence" from unnamed "Confidential Witnesses" at an unidentified time—yet safely "[a]fter the filing of the 4AC."  Mot. 5 (cleaned up).  The Court has reason to be skeptical.  Plaintiff does not provide the date when he supposedly came into possession of the evidence, nor *any* basis to believe it was "newly discovered."  Plaintiff also does not name the alleged witnesses; indeed, he flatly *refuses* to do so.  *Id.* at 8 n.6 ("Plaintiff intends to refuse to identify his Confidential Witness sources if asked.").[2]  Nor does Plaintiff specify their positions within Tesla or how they received the

---

[2] Plaintiff conveniently tries to lay the blame for his dubious refusal at the feet of the Tesla Defendants and their counsel, claiming that "Tesla Defendants and Attorney Spiro have an extensive and documented history of putting the physical safety of whistleblowers at risk by deploying armed agents of law enforcement, as well as private investigators." *Id.* Plaintiff offers no support for this false allegation. Plaintiff then asserts that "Tesla Defendants even created a Tesla 'Cyberwhistle' to intimidate potential Confidential Witnesses." *Id.* This claim is risible. The "Cyberwhistle" is a Cybertruck-shaped whistle.  *See* https://shop.tesla.com/product/ cyberwhistle ("Inspired by

confidential information. He fails to describe how these supposed witnesses contacted Plaintiff (whether through email or a discreet drop-off in an alley), or to present any evidence of receiving the information (such as an email establishing contact or a text message arranging a meeting in an alley). Most suspiciously, Plaintiff does not explain how these purported witnesses knew to divulge—of *all* the information available at Tesla—*precisely* the information that supposedly corroborates Plaintiff's allegations.

The facial implausibility of Plaintiff's self-serving tale—which comes from the same person who "says he created an early version of Facebook," ECF No. 125 at 3:5-6—means "the court is entitled to be skeptical of" Plaintiff's "self-serving allegations, especially when they are wholly insubstantial." *Laurino*, 279 F.3d at 755. Because Plaintiff has failed to meet his burden to show that the evidence "constituted 'newly discovered evidence' within the meaning[] of Rule[] 60(b)(2)," the motion should be denied. *Coastal Transfer,* 833 F.2d at 211.

### B. Plaintiff's Purportedly New Evidence Would Not Have Changed The Disposition Of The Case

In addition to being "new," evidence must also be material, such that the "production of it earlier would have been likely to change the disposition of the case." *Id*. Even were the Court inclined to credit Plaintiff's conveniently timed new evidence, it would have made no difference to the outcome.

#### 1. The FOIA Documents Would Not Have Changed The Case's Disposition

Plaintiff (Mot. 5-7) cites to evidence obtained through a FOIA request after the 4AC was filed. *First*, it is simply untrue that "Plaintiff could not have obtained these documents any sooner." Mot. 6. Plaintiff filed multiple FOIA requests well before filing the 4AC. *See* ECF No. 149, Ex. M

---

Cybertruck, the limited-edition Cyberwhistle is a premium collectible made from medical-grade stainless steel with a polished finish. The whistle includes an integrated attachment feature for added versatility."). The purpose for this whistle—corroborated by the fact that it sold out in "less than two hours"—is commercial. *See* Dan Mihalascu, *Tesla Cyberwhistle Launches At $50 A Pop, Sells Out In Hours*, INSIDEEVS (Dec. 1, 2021) https://insideevs.com/news/551829/tesla-cyberwhistle-sold-out-2hours/ ("Tesla releasing more 'cyber' products ahead of the Cybertruck's launch looks like a no-brainer seeing as other companies like Mattel have already capitalized on people's fascination with the electric truck.").

(June 1, 2021 response to Plaintiff's February 19, 2021 FOIA request). Yet, he waited until *after* filing the 4AC (on August 13, 2021; ECF No. 131) to file this particular request (on October 22, 2021). There was no reason the October 2021 requests could not have been made sooner.

*Second*, even if credited, Plaintiff's information would "not have been likely to change the disposition of the case." *Coastal Transfer,* 833 F.2d at 211. In the 4AC, Plaintiff claimed that Tesla's financial statements "exaggerate[ed] its cash balances" in every Form 10-Q and 10-K that the Company filed between the third quarter of 2018 and the second quarter of 2020. ECF No. 131, Issue 1 at 50:6. Plaintiffs only "new" evidence is an email from the SEC, stating: "With respect to Item 3 of the subpoena to Tesla ('Tesla's cash balance (by day)'), you explained that until recently, Tesla's systems may not have automatically summarized cash balance information on a daily basis. We asked you to keep us apprised of your efforts to identify documents responsive to Item 3." Mot. 6 (presumably quoting ECF No. 179, Ex. A at 9). Plaintiff fails to explain how this double-hearsay about daily cash balance summaries resulted in exaggerated cash balances, when, or by how much. We are left to guess.

Plaintiff also cites to an SEC statement that states that there was a "possible" violation of Section 10(b) about an unidentified subject. Mot. 7 (presumably quoting ECF No. 179, Ex. A at 3). But "possible" violations about subjects having nothing to do with this case "are not statements of fact capable of verification," and do not fulfill the particularity requirement of Rule 9 or the PSLRA, or even the *Iqbal* standard. ECF No. 125 at 9.[3]

### 2. The Alleged "Internal Documents" Do Not Show A Material Misrepresentation Or Omission

Plaintiff then turns to supposed internal documents purportedly supplied by unidentified confidential witnesses. Mot. 7-11. But these documents do not support any of the four key elements

---

[3] Plaintiff claims that counsel's arguments concerning the 4AC's lack of specificity constituted "fraud … misrepresentation, or misconduct" in violation of Rule 60(b)(3) because the 4AC specified the exact figures in SEC filings that were false. Mot. 6. But simply pointing to figures (however exact) from SEC filings does not satisfy the specificity requirement for securities fraud because figures do not suggest falsity or scienter. Regardless, the Court properly agreed with counsel's arguments. ECF Nos. 125, 171.

of a Rule 10b-5(b) claim: a material misrepresentation or omission, scienter, reliance, and loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). The Court's dismissal of Plaintiff's 4AC remains entirely correct.

Plaintiff's factual allegations do not show a material misrepresentation or omission. Each suffers from similar errors. *First*, they are entirely conclusory, unsupported by any evidence. *Second*, they constitute improper "puzzle" pleadings, because they impermissibly "place 'the burden [] on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiff['s] claims.'" *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1111-12 (N.D. Cal. 2013). *Third*, even if connected to each allegation, the "new" evidence does not support them. *Fourth*, the provenance of most of the evidence is unclear. There is no indication that most originated with Tesla. *See* ECF No. 179, Exs. E, F, H, J, K. *Fifth*, the supposedly new evidence simply parrots the allegations already found in the 4AC.

**"Cash and Cash Equivalents" (Issue 1)**: Plaintiff claims that "[e]xported data shows that for years, Tesla routinely and materially overstated its available cash to investors." Mot. 8. But the new exhibit (ECF No. 179, Ex. E) on which Plaintiff relies shows nothing of the sort. *Id*. In fact, the exhibit—an unmarked spreadsheet of unknown provenance—purportedly shows data from only one year, 2014, which is outside the relevant date range of the complaint (which runs from the third quarter of 2018 to the second quarter of 2020; *see* ECF No. 131, Issue 1 at 50:6).

**"Customer Deposits" and "Revenue" (Issue 2)**: Although his theory of deception is difficult to follow, Plaintiff appears to contend that certain customers made unintentional mobile app purchases for items, such as Tesla's full self-driving software, and that Tesla fraudulently reported these payments as "customer deposits" and recognized the cash as revenue. Mot. 8. There is no clear link between the refund rate (which Plaintiff claims, without explanation, was "high" for only two months in 2021) and supposedly fraudulent consumer deposits. Nor does Plaintiff connect the "puzzle" piece to the relevant exhibit (ECF No. 179, Ex. F)—another unmarked spreadsheet of

unknown provenance—which purports to contain data from *2021*, whereas the behavior of which Plaintiff complains ended in *2020*.[4]

**Registration Problems (Issue 3)**:   In his 4AC, Plaintiff posited that Tesla has delayed registering vehicles in order to artificially decrease its costs.  Plaintiff now claims that "Tesla representatives have the ability to set legal requirements to a setting of 'IGNORE,' and often do." Mot. 8.  But Plaintiff fails to explain how this has anything to do with his claim.  And Plaintiff's new exhibit, ECF No. 179, Ex. G, is nothing more than two cropped, blurry, partially redacted screenshots of unknown origin with various fields on them.   Suffice it to say, this does not come close to moving the needle towards plausibility, let alone satisfying the PSLRA requirements.

**Vehicle Deliveries (Issue 4)**:   Plaintiff claims that Tesla's system for tracking deliveries is complicated.  Mot. 8-9.  But even if Tesla had different internal definitions of the word "delivered" for different purposes, or a faulty computer system—neither of which Plaintiff has plausibly alleged—that comes nowhere close to showing a deliberate misrepresentation.  Plaintiff's claim in the 4AC is that "Tesla leads investors to think 'delivered' means 'sold'" and that its published vehicle delivery figures were false or misleading as a result.  Issue 4 at 55:8-17.  Yet, Tesla's quarterly SEC filings specifically identify the accounting rule governing the recognition of revenues from its automotive sales, explaining:  "A majority of our automotive sales revenue is recognized when control transfers upon delivery to customers."  ECF No. 143, Ex. 1 at 39.  Plaintiff fails to allege that Tesla misled investors, and his new evidence does not remedy his failure to state a claim.

**Accounts Receivable (Issue 5)**:   Plaintiff posits that Tesla did not disclose that it broke down its accounts receivable into "Automotive Manual," "Storage," "Energy Trade Manual," "Pay Per Use," "Solar," "Solar Manual," "Non-Trade," and "Energy Storage Unapplied Accrual."  Mot. 9. Plaintiff fails to explain what difference this makes or to identify how this information is material: no reasonable jury could hold that that "there is a substantial likelihood that a reasonable investor

---

[4]   Further, the Ninth Circuit has made clear that, "[w]hen pleading irregularities in revenue recognition, plaintiffs should allege," *inter alia* "such basic details as the approximate amount by which revenues and earnings were overstated" "the dates of any of the transactions" and the "products involved in the contingent transaction[s]."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016-17 (9th Cir. 2005) (citation omitted).  Plaintiff offers no such details.

would consider" the specific break-down of accounts receivable "important in deciding whether to buy or sell securities." *SEC v. Talbot*, 530 F.3d 1085, 1097 (9th Cir. 2008).

**"Goodwill" Warranty Repairs (Issue 6)**: Plaintiff claims that "Tesla acknowledges the 'legal and financial ramifications for the customer and the company' associated with 'goodwill' repairs." Mot. 9. Plaintiff does not state *where* Tesla supposedly so acknowledges. Regardless, this cannot revive Plaintiff's claim in the 4AC that Tesla somehow misstated warranty costs by recording warranty repairs as "goodwill." There is no allegation that any improper accounting occurred regarding these costs. Plaintiff does not even articulate a basis for his belief that a reference to "goodwill" on a repair invoice equates to the "goodwill" line item on an SEC filing; nor does he explain how such a misclassification would have understated warranty costs, or by what amount, or why this amount would have been material. All of these "speculative allegations … are no substitute for factual allegations demonstrating Defendants' actual assumptions were false, and accordingly do not rise to the level of particularity required by the PSLRA." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, *Inc.*, 65 F. Supp. 3d 840, 853 (N.D. Cal. 2014).

**"Robotaxis" (Issue 7)**: Tesla's alleged statements about "robotaxis" run squarely into the PSLRA's safe harbor for forward-looking statements about future plans or objectives. 15 U.S.C. § 78u-5(c)(1)(A)(i), (c)(1)(B)(i). That Tesla may not have met its predictions is not proof of fraud, because the "safe harbor is designed to protect companies and their officials when they merely fall short of their optimistic projections." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021) (quotation omitted). Absent well pled factual allegations that these projections were made with "actual knowledge" that they could not be met, the claim fails. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108, 1112-13 (9th Cir. 2010). That Plaintiff is not in possession of documents regarding the development of robotaxis does not mean that such documents do not exist. The absence of evidence is not evidence of absence.

**Status and Location of Solar Roof Production (Issue 8)**: Plaintiff appears to contend that Tesla misled investors that its solar roof parts came from New York. Mot. 10. While Plaintiff argues that certain invoices "contradict Tesla's SEC disclosures," he fails to identify the disclosures or explain how they contradict them. Regardless, this claim fails. First, there is no allegation that

Tesla ever claimed these parts were exclusively made in New York. Second, Plaintiff does not allege that this fact was at all material to investors. Third, Plaintiff offers no plausible evidence that these statements were false when made.

**Tesla Semi Production (Issue 9)**: Plaintiff next challenges statements concerning the future production of the Tesla Semi vehicle. Mot. 10. Plaintiff offers no new evidence on this issue. Regardless, all of these statements were forward-looking, and Plaintiff fails to plead either that the statements were false or that they were made with actual knowledge of falsity. They are therefore presumptively non-actionable. 15 U.S.C. § 78u-5(c)(1)(A)(i).

**"Autopilot" (Issue 10)**: Plaintiff cites to complaints about autopilot and a NHTSA investigation (Mot. 10), but they are neither new, ECF No. 141 (describing NHTSA study), nor "clearly connected to an actionable false or misleading statement" and thus fall far short of what the PSLRA and Rule 9 require. ECF No. 125 at 11; *see also Kipling v. Flex Ltd.*, 2020 WL 2793463, at *19 (N.D. Cal. May 29, 2020) (rejecting allegation that "Defendants were not experiencing any successes on [a new] contract or its automation process" as "conclusory" and "insufficiently particularized" (citation omitted)).

**Scrap and Raw Materials (Issue 11)**: Plaintiff criticizes personnel decisions (Mot. 10-11), but this does not describe a false or misleading statement or omission—simply a decision with which Plaintiff disagrees.

**Product Liability Disclosures (Issue 12)**: The import of Plaintiff's statement (Mot. 11) is hard to discern. Plaintiff's argument appears to be that Tesla's risk disclosure regarding product liability claims was misleading. But Tesla did not downplay these risks; to the contrary, it *emphasized* them. ECF No. 70, Ex. 18 at 59. Additionally, there is no allegation that this omission was fraudulent, material, or relied upon by investors.

**Omar Qazi**: Plaintiff claims throughout his motion (e.g., Mot. 11-12) that various parties are ostensible agents of Tesla, including Defendant Qazi. This is plainly false. Ostensible agency exists only when the alleged principal takes some action that causes third parties to reasonably and justifiably believe that another person is acting as his agent. *J.L. v. Children's Inst., Inc.*, 177 Cal. App. 4th 388, 403-04 (2009). A review of both the Early Access Program ("EAP") contract and the

EAP guidelines (ECF No. 179, Exs. C-D) reveal no bases for establishing an agency relationship—and Plaintiff points to none. Indeed, the EAP contract—which is not new, ECF No. 141—expressly states: "You understand and agree that participation in the EAP is voluntary and does not create a legal partnership, agency, or employment relationship between you and Tesla." ECF No. 179, Ex. C. Nor do stray lines from a YouTube video taken out of context create an ostensible agency relationship.

No reasonable observer would rely on these "facts" to mean Mr. Qazi or other EAP participants were legally authorized to speak for Tesla or Mr. Musk. *See Bidart v. Huber*, 9 F. App'x 746, 748 (9th Cir. 2001) (rejecting ostensible agency theory of libel in part because "nothing suggests that the public somehow relied upon [the alleged agent's] apparent authority [to speak]"). As the Court wrote, an agency relationship "requires factual allegations which plausibly demonstrate that Musk or Tesla authorized Qazi or Smick to act on their behalf, or that they acted in a manner that might reasonably lead an observer to believe this were the case." ECF No. 125 at 8. Now, as then, Plaintiff accrues no facts to justify such a claim.

### 3. Plaintiff Does Not Allege The Other Elements Of Securities Fraud

Beyond failing to show a material misrepresentation or omission, Plaintiff does not provide any new evidence to support the other elements of securities fraud: scienter, reliance, or loss causation. *Dura*, 544 U.S. at 341-42.

*First*, in its initial dismissal order, the Court observed that Plaintiff failed to plead scienter because his complaint was replete with "conclusory and speculative allegations about the Tesla [D]efendants' fraudulent intentions," and "many of the statements about scienter also lack particularity." ECF No. 125 at 14. In its final dismissal order, the Court correctly held that the 4AC still did not adequately allege scienter. ECF No. 171. Plaintiff's motion fails to address this fundamental defect in any manner.

*Second*, Plaintiff offers no reason to revisit the Court's finding of lack of reliance. ECF No. 171. Plaintiff must allege that "but for the fraud, [he] would not have engaged in the transaction at issue." *Daou*, 411 F.3d at 1025. Far from relying on the alleged fraud, Plaintiff chose to short Tesla stock because he believed the company was "the largest Ponzi scheme in history" and that the stock

would drop when the "truth" came out. ¶ 3. That is the opposite of reasonable reliance. The well-settled rule is that "no one who saw through [an alleged] fraud," as Plaintiff claimed he had, "would be able to sue for fraud, for he could not have relied directly or indirectly" on the allegedly fraudulent statement. *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009). "It was [Plaintiff's] hope that when others acquired the same awareness of [the Tesla Defendants'] past misstatements, there would be heavy selling resulting in a drop in the market and profit on his short position." *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 634 (D.N.J. 2003) (citation omitted) (finding short-seller who believed he had discovered fraud could not show reliance).

*Third*, Plaintiff is completely silent on the Court's findings concerning causation. ECF No. 171. The 4AC failed to allege the linchpin of loss causation: any form of corrective disclosure that "provided new information to the market" related to the challenged statements that was "not yet reflected in the company's stock price." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 795 (9th Cir. 2020). And the factual predicate of Plaintiff's claim (that the alleged fraud concealed **negative** information) is incompatible with pleading loss causation in analogous short-selling contexts. *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 759 (S.D.N.Y. 2011).

For these reasons, Plaintiff's alleged new evidence would have made no difference to the result: the evidence does not allege a material misrepresentation or omission, and Plaintiff does not even address the other elements required for securities fraud.

## II.     THE COURT DID NOT ERR OR DENY PLAINTIFF DUE PROCESS

Plaintiff's claim that the lack of a hearing violated the Fifth Amendment's Due Process Clause (Mot. 13-14) is baseless. As an initial matter, reconsideration of a legal ruling under Rule 60(b)(1) is appropriate only "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, Plaintiff points to no newly discovered evidence, manifest injustice, or intervening change in controlling law. Plaintiff also could have raised this issue before, but did not. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (a motion for reconsideration may not be used to present

arguments that were presented initially or "could reasonably have been raised" during the initial motion). Plaintiff's due process argument can be dismissed for these reasons alone.

Regardless though, Plaintiff's argument fails on the merits. "An opportunity to be heard … does not necessarily include an opportunity to present one's arguments orally." *Partington v. Gedan*, 961 F.2d 852, 865 (9th Cir. 1992). *See also Ybarra v. Bastian*, 647 F.2d 891, 893 (9th Cir. 1981) ("Federal due process does not require hearings without any possible substance."); *N. Cent. Distrib., Inc. v. Bogenschutz*, No. 1:17-cv-01351-AWI-EPG, 2018 WL 4027048, at *14 (E.D. Cal. Aug. 21, 2018) ("[B]riefing and evidence from Defendants constituted an opportunity for Defendants to be heard."). The Ninth Circuit has squarely rejected Plaintiff's very argument, holding that "the granting and affirming of judgment on the pleadings" does not violate "due process under the Fifth Amendment" because the Constitution imposes "[n]o fixed format" for submitting argument. *Kolek v. Engen*, 869 F.2d 1281, 1287-88 (9th Cir. 1989). Plaintiff here was given notice and multiple opportunities to be heard through five separate complaints. "Because the plaintiff was given notice and an opportunity to be heard, plaintiff's due process rights were not violated." *Jameson v. Young*, No. C 14-0011 RS (PR), 2015 WL 4365460, at *4 (N.D. Cal. July 16, 2015).

### III.   THE COURT DID NOT DISREGARD *IN RE TESLA SECURITIES LITIGATION*

Plaintiff (Mot. 14) cites to a recent decision in *In re Tesla Securities Litigation*, Case No. 3:16-cv-04865-EMC. But the Court has correctly observed that case has nothing to do with this one. ECF No. 125 at 15 ("*In re Tesla* is also distinguishable on the facts. It involved statements and circumstances entirely different from those at issue here."). That case deals with Mr. Musk's statements in 2018 concerning taking Tesla private, which Plaintiff himself admits are irrelevant. ECF No. 60 at 3 ("The Tesla Defendants have already been fined a combined $40 million for violations of securities laws alleged by the Securities and Exchange Commission *separate and apart from those raised here*.") (emphasis added). The Court's prior decision was correct.

### IV.   JUDGE DONATO WAS NOT REQUIRED TO RECUSE HIMSELF

Finally, Plaintiff's allegations of purported bias (Mot. 14-15) are easily dismissed. The Court has considered—and rejected—nearly identical allegations. ECF No. 130 at 2-3. And rightly

so. Plaintiff's complaint that Defendants' counsel has retained Solutus Legal Search—of which His Honor's wife is just one employee of many—at some unidentified point in the past is entirely too speculative to require dismissal. Courts have repeatedly held that the activities of a judge's relatives are not attributable to the judge. *See, e.g.*, *In re Gibson*, 950 F.3d 919, 927 (7th Cir. 2019) ("The fact that a relative [of the presiding judge] works at a law firm representing a party is not enough" in itself to create an appearance of partiality); *Taylor v. Vermont Dept. of Educ*, 313 F.3d 768, 795 (2d Cir. 2002) ("The fact that a judge's offspring is employed by a party does not require recusal *per se*.").

In reality, Plaintiff is simply unhappy with the Court's rulings. What the Court wrote before applies equally now: "while it is evident that Greenspan disagrees with some of the Court's decisions, 'judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion.'" ECF No. 130 at 3 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (citation omitted). Nothing has changed since then that can form the basis for a Rule 60(b) motion. Fed. R. Civ. P. 60.

## CONCLUSION

Plaintiff's motion for relief should be denied. The Court and Defendants have wasted more than enough time and resources on Plaintiff's fanciful and unsupported theories.

Respectfully submitted,

*/s/ Michael T. Lifrak*
Michael T. Lifrak (Bar No. 232430)
Anthony P. Alden (Bar No. 232220)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000
(213) 443-3100 (fax)
michaellifrak@quinnemanuel.com
anthonyalden@quinnemanuel.com

Alex Spiro
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
(212) 849-7100 (fax)
alexspiro@quinnemanuel.com

*Attorneys for Defendants Tesla, Inc. and Elon Musk*

I, Kyle K. Batter, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(h)(3), I hereby attest that Michael T. Lifrak, Anthony P. Alden, and Alex Spiro have concurred in the filing of the above document.